1

**ORIGINAL**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

2

3

TODD SOKOLOWSKI,

4

    PLAINTIFF,                    CIVIL ACTION NUMBER:

5

    -VS-                          07-1709 (NLH)

6

IAMS COMPANY, ET AL,

7

    DEFENDANTS

8

9

        TELEPHONE CONFERENCE CALL

10

11   **FRIDAY, JULY 6, 2007**

12

13   **MITCHELL H. COHEN UNITED STATES COURTHOUSE**
**1 JOHN F. GERRY PLAZA,**
**CAMDEN, NEW JERSEY, 08101**

14

15   **B E F O R E:**
THE HONORABLE NOEL L. HILLMAN, UNITED STATES
DISTRICT COURT JUDGE, DISTRICT OF NEW JERSEY,

16   SITTING AT CAMDEN, NEW JERSEY.

17

    **A P P E A R A N C E S:**

18

NEWMAN, CREED & ASSOCIATES
19   BY:  KEVIN E. CREED, ESQUIRE
ATTORNEY FOR PLAINTIFF, TODD SKOLOWSKI

20

WEXLER, TORISEVA, WALLACE, L.L.P.,
21   BY:  MARK J. TAMBLYN, ESQUIRE
ATTORNEY FOR PLAINTIFF MENU FOODS

22

23   TRUJILLO, RODRIGUEZ & RICHARDS, L.L.P.,
BY:  LISA J. RODRIGUEZ, ESQUIRE,
24   ATTORNEY FOR PLAINTIFF MENU FOODS

25

Dockets.Justia.com

1    KAMBER & ASSOCIATES,
     BY: SCOTT A. KAMBER, ESQUIRE,
2    ATTORNEY FOR PLAINTIFF MENU FOODS

3    BERGER & MONTAGUE, P.C.,
     BY: RUSSELL D. PAUL, ESQUIRE
4    AND
     BRIAN D. WRIGHT, ESQUIRE,
5    ATTORNEY FOR PLAINTIFF MENU FOODS

6    GIBBONS, P.C.,
     BY: FRANCIS M. HADDEN, ESQUIRE,
7    ATTORNEY FOR DEFENDANT IAMS CORPORATION

8    FARUKI, IRELAND & COX, P.L.L.
     BY: D. JEFFREY IRELAND, ESQUIRE,
9    AND
     BRIAN D. WRIGHT, ESQUIRE,
10   ATTORNEY FOR DEFENDANT IAMS CORPORATION

11

12

13

14                    STEPHEN J. DANER, C.C.R., RPR
                      OFFICIAL COURT REPORTER
15

16

17

18

19

20

21

22

23

24

25

                  U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

3

1    (The following takes place telephonically before the

2    Honorable Noel L. Hillman, United States District

3    Court, District of New Jersey, sitting at Camden,

4    New Jersey, July 6, 2007)

5          THE COURT:  This is Judge Hillman.

6          Could I get appearances, please?

7          MR. HADDEN: Frank Hadden, from the Gibbons

8    firm, on behalf of Iams.

9          MR. IRELAND: Jeff Ireland and Brian Wright,

10   from Faruki, Ireland and Cox, on behalf of the

11   defendant, the Iams Company.

12         MR. PAUL: Russell Paul, from Berger and

13   Montague, on behalf of plaintiff.

14         MR. TAMBLYN: Your Honor, Mark Tamblyn,

15   Wexler, Toriseva and Wallace, in Sacramento, on

16   behalf of plaintiffs.

17         MR. KAMBER: Scott Kamber, Kamber and

18   Associates, on behalf of plaintiffs.

19         MR. CREED: Kevin Creed, Newman, Creed and

20   Associates, on behalf of plaintiffs.

21         MS. RODRIGUEZ: Also Lisa Rodriguez on

22   behalf of plaintiffs.

23         THE COURT: We have heard of her, right?

24         If you could for Mr. Daner's purposes and

25   everyone else involved in the process here, to state

1    your name before you speak so that we can get the

2    accurate, an accurate transcript and record here.

3           Let me see, I received a letter from the,

4    joint letter from Mr. Hadden and Mr. Paul, which

5    lists, I think all of you on here, or most of you on

6    here are cc's.

7           There are just two issues that I had.

8           First of all, let me thank all of you for

9    your efforts to reach a resolution.  This helps

10   advance the ball substantially, and it's appreciated

11   by me personally, and I think for the efficient

12   adjudication of these various matters that this is

13   as I said a significant advance, so thank all of

14   you.

15          Thanks to all of you.

16          My question, first question had to do with

17   the second letter which I realized is probably the

18   most complicated set of circumstances, but I,

19   frankly, felt a little muddle-headed at the end of

20   it.   There's a lot in there.

21          I wanted to suggest to you that perhaps it

22   would benefit from some headings.  I know it's

23   delineated with first, second, and third, and

24   finally, but perhaps a way to kind of lay out the

25   options, if you will, to a recipient in an outline

1    kind of form through the use of just a simple

2    heading.

3          MR. PAUL: We completely agree, and I will

4    say it's definitely in one of our drafts that the

5    defendants would not --

6          THE COURT:  We don't have the best

7    equipment here so speak as slowly and not to loudly.

8    Let me turn the volume -- it came across a little

9    distorted.  Repeat it.

10          MR. PAUL: I will say that we strongly agree

11    that there should be headings that were definitely

12    in one of our earlier drafts.  The defendants did

13    not agree at the time so that got dropped in the

14    course of the negotiations.

15          THE COURT:  Perhaps I can hear from Iams

16    about whether they would reconsider some simple

17    headings to make it a little more comprehensible to

18    a lay person.

19          MR. IRELAND: Certainly to the extent you

20    are asking us to reconsider that, we will absolutely

21    do so.  In the course of discussing the letter not

22    only with the plaintiff's counsel but also with the

23    customer service people who are ultimately

24    responsible for sending out the letter and

25    responding to questions about it, they thought it

6

1  was more consistent with the way they have done

2  things in the past to not have headings.  It's as

3  simple as that.

4       If the Court would like us to consider, you

5  know, interjecting some headings, we will certainly

6  do so.

7       THE COURT:  I think it might be worthwhile

8  and I appreciate you having another discussion with

9  them.  It may be easier for someone on the --

10  discussing this with the recipient of the letter to

11  say, oh, so you want to go with option 3, or you're

12  in the circumstances of option 3.  Have you

13  considered that paragraph, or you're invoking the

14  options described in option 1, or whatever it may

15  be?  It may actually be a simple roadmap for them to

16  have more meaningful discussions.

17       So I would, I appreciate you raising it

18  with them again, and if you could discuss that again

19  with the plaintiffs, I would appreciate it.

20       MR. IRELAND: We will do that.

21       THE COURT:  The other issue is, since we

22  are still in the early stages of the MDL and I have

23  not designated liaison counsel or otherwise sorted

24  through those issues, and while I recognize that

25  there are a number of plaintiff's counsel involved

1  in this process, and are on this phone call, I don't

2  want to be in a situation of finding out that

3  there's a plaintiff's lawyer who has a case that I

4  clearly have jurisdiction over against Iams, who has

5  not had an opportunity to at least review this and

6  interpose any objections.

7          Are there individual lawyers who now have a

8  case pending before me against Iams who were not

9  involved in this, and if so, would you object to me

10 filing under the MDL number the letter and the final

11 four versions, and giving notice through that

12 mechanism to those lawyers so that they might have a

13 week to raise any objections?

14         MR. PAUL: I think I would like to ask Mark

15 Tamblyn to respond because he knows a lot of cases

16 involved.

17         MR. TAMBLYN: We would certainly have no

18 objections to that at all.  And I think that's why

19 counsel -- I am aware of other firms that have one

20 or more cases against Iams and/or Proctor & Gamble,

21 and I can provide the names of those firms to Your

22 Honor.

23         My firm also has a case against Proctor &

24 Gamble, and I have been involved in this process.

25 So we can figure out the best way to -- I guess Your

1    Honor's idea is to communicate that through the ECF.

2            THE COURT: At a minimum.  In a perfect

3    world we would try to assemble a list and also send

4    them hard copies.

5            MR. TAMBLYN: I'm happy to assemble the list

6    with the information I have and go and update it

7    through pacer.  But I'm also happy to call the

8    lawyers involved as well.

9            THE COURT:  That's very helpful and much

10   appreciated.

11           Part of that involves asking Iams, despite

12   their substantial efforts here to delay until the

13   16th to recommence the reimbursement program.

14           I just want to put this on the record, give

15   people an opportunity to comment, if at all, and

16   then, then, then issue the go.

17           Would -- Mr. Hadden, do you see any

18   problems with asking you to delay a week to make

19   sure that everyone who is a stakeholder here had a

20   chance to comment?

21           MR. HADDEN: It's not such a problem, but a

22   concern.  Iams had agreed to stand down from its

23   settlement portion of the reimbursement program

24   voluntarily while we attempted to work this out with

25   plaintiff's counsel.

1          We have been involved in extensive

2    negotiations in a compressed period of time, but it

3    was with the reassurance that we received, that a

4    majority of cases were represented by the attorneys

5    that were involved in this process.  My concern is

6    that, and I understand the Court's desires to look

7    down the road and prevent any future issues that it

8    may feel it doesn't want to deal with, but it places

9    us in a position perhaps where -- as new attorneys

10   come in, are these issues going to be reopened for

11   Iams, where we will be asked to once again change

12   our process and enter new negotiations?  It feels

13   like more than just multiple bites at the apple, and

14   feels as if plaintiffs are being offered the

15   opportunity to come at us with multiple

16   perspectives, multiple times and get multiple

17   maximum effects.  I'm not sure that that places Iams

18   in a fair position.

19          THE COURT:  Well, I'm supposed to be fair

20   to both sides, and certainly within my ability to

21   say this achieves the result that I wanted to

22   achieve, and unless the objection is substantial and

23   truly meaningful, and I'm not suggesting I'm going

24   through the process just to go through the process,

25   but I just want to make sure that everybody who

1    should have a chance, has a chance.  But ultimately

2    I have to make a call about the substance of the

3    communication.  At some point it would become

4    trivial or not worth the effort, and indeed

5    burdensome.

6         I'm not suggesting opening up the whole

7    process or starting from scratch, or even making

8    wholesale changes that are unwarranted.  Only fair

9    notice, and only the most important issues that

10    ultimately would be important to you to be

11    considered.

12         MR. HADDEN: I appreciate the Court's

13    concern. The particular, the competing interest is

14    the fact that us changing our process, changes our

15    communications with our customers in the lifeblood

16    of our business is our relationship with customers,

17    our ability to respond to their needs and concerns,

18    and communicate freely with them, and we have put a

19    stop to that and did it voluntarily.

20         I guess Iams believes, and have some

21    confidence in the system it has in place.

22         The communication it generated over time,

23    and the efforts that we have made to not only comply

24    with what we think our legal requirements are to the

25    cases's that address these issues, but Your Honor's

1    concerns and all of the plaintiff's attorneys that

2    we have been negotiating with.  I'm just concerned,

3    number 1, I appreciate Your Honor's request that

4    we'll stand down and extend that further.  I would

5    ask Your Honor to reconsider that request and allow

6    us to go ahead with what we have accomplished in a

7    very short period of time, making what I believe are

8    substantial concessions, perhaps.  I know

9    plaintiff's counsel feel the same way.  But in light

10   of the effort made, in light of what we have

11   accomplished, if Your Honor could allow Iams to go

12   forward with its program, get things back where they

13   were in the sense with the new communications in

14   place and allow us to continue to do business and to

15   communicate with our customers.  I think that would

16   be helpful.  And is important to the company.

17          That's why, Your Honor, we did ask for

18   permission to go ahead with the Court's approval to

19   go ahead and recommence the program.

20          I understand Your Honor's interest in

21   placing this perhaps on the electronic system, and I

22   think there's no disagreements with that, but we

23   would ask for Your Honor's permission to go ahead

24   and move forward with our program in light of

25   everything that's been accomplished to date.

1          MR. CREED: Your Honor, if the Court is

2    asking until the 16th, how long will it take for the

3    letter go out?  I don't think we should consider

4    that no program should be reinstituted until after

5    people received those letters.  The vast majority of

6    the people won't receive the letter until the 11th

7    or 12th or the 13th, then that would be prudent they

8    could begin the program again on the 16th.  The

9    whole reason we are going through this exercise is

10   to make sure people are aware of their rights and

11   they -- I would suspect it would be, defeat that

12   purpose and the defendants are calling people

13   starting Monday or Tuesday, and they haven't gotten

14   the letter, yet.

15          THE COURT: Well  --

16          MR. HADDEN: The following Monday would be

17   the appropriate time.

18          THE COURT: My sense is it's not actually

19   how it works. These are, that the customer service

20   representative have these various options available

21   to them and they're used in almost a reactive way

22   when they get the calls into the call center.  They

23   identify which category they fall into.  Some are

24   proactive in the sense that they had prior

25   communications and would reach out, but it's

1   actually the sending of the letter prior to full

2   opportunity to comment, that's the problem I'm

3   trying to avoid because this may very well be the

4   solution to the larger problem.  But once I endorse

5   it, it becomes a benchmark for not only

6   communications between Iams and its customers, but

7   Menu Foods and its customers, and the class as a

8   whole.

9        So I have an independent institutional

10   interest, and I believe a fiduciary obligation under

11   the cases to insure that this communication, these

12   communications, although agreed to by the parties in

13   this particular case, are the right thing to do for

14   all of the cases.  And the best way for me to do

15   that, or to raise my comfort level, is to maximize

16   the various stake holders' exposure to this

17   proposal, and to use it as an opportunity for

18   someone to bring any defects to my attention.

19        This is just one of a bunch of cases, and

20   only one defendant among many defendants.

21        MR. HADDEN: It may help Your Honor's

22   comfort level if you heard what we had heard over

23   the past week and-a-half from plaintiff's counsel

24   identifying how broad their client base is and what

25   proportion of this class they think they already

1   represent.  That may give Your Honor a greater

2   comfort level than you currently have.

3            THE COURT:  Well, let me -- was it Mr.

4   Tamblyn who offered to identify other potential

5   plaintiff's lawyers in cases against Iams?

6            MR. TAMBLYN: Yes, Your Honor.  I have had

7   conversations very recently with a group of

8   attorneys that have, I believe a case in Wisconsin

9   against Proctor and Gamble and Iams that is moving

10  very rapidly in the Southern District of New York

11  before Judge Rakoff.

12           THE COURT: Right.

13           MR. TAMBLYN: That's the Wolf Holderstein

14  firm.  Larry Drewry in Chicago, and Progressive, Log

15  Rhythm in Chicago.  I am not aware, although I will

16  look at my chart, but I'm not aware of other

17  plaintiff's counsel who has cases against Iams and

18  Proctor and Gamble, other than that group of

19  attorneys working together.

20           We are all communicating with each other,

21  but I learned very recently that given the

22  proceedings moving very rapidly in the Southern

23  District of New York and the pace there, that the

24  Wolf Holderstein firm would like to, I think they

25  would appreciate input, if Your Honor is inviting

1    that.  So I would be remiss to say that, you know,

2    that there are other counsel out there that, that I

3    would speak for before Your Honor that would not

4    want to have that input.  And, so it's not a broad

5    universe of firms, but I am aware of a couple firms

6    that have those cases, and particularly the case

7    that's moving in New York.

8         MR. KAMBER: I can confirm with what Mr.

9    Tamblyn has said that it is consistent with Your

10   Honor, should give you some comfort.  And certainly

11   is the plaintiff's who have been involved in this

12   process, have been in consultation with many other

13   cases around the country, both with attorneys

14   formally with cases against Iams, and many attorneys

15   who have clients who purchased products from Iams,

16   but have not amended their complaints bringing in

17   Proctor and Gamble and Iams.

18        It is fair to say both through this process

19   and the other processes which we engaged in before

20   Your Honor, that between Mr. Paul's group and my

21   self, and the other attorneys on the line, there

22   certainly is a very broad cross-section, but I do

23   agree with Mr. Tamblyn's sentiments that given, you

24   know, only putting on ECF only a week here, and

25   given Iams should have some comfort knowing the vast

1    majority of the cases and clients in the country

2    have been represented in the discussions with them,

3    that I think that it would certainly be better safe

4    than sorry to allow some additional times so that

5    any other cases might be able to be heard from, and

6    in particular, I think the Southern District of New

7    York situation, because I think that, they probably

8    have a slightly, because of Judge Rakoff's most

9    recent scheduling order, that they have a slightly

10   different prospective, possibly, than those people

11   who are on the phone and who are before Your Honor.

12          THE COURT:  Well, let me take that last

13   part, last.

14          Mr. Hadden, certainly Iams knows by whom

15   its been sued.

16          MR. IRELAND: On behalf of Iams, and of

17   course we do, Your Honor.  I don't have the list in

18   front of me.  I'm not in my office in Dayton, but I

19   think there's 17 or so cases in which Iams has been

20   identified as, or Proctor and Gamble has been

21   identified as a defendant.  We are certainly under

22   the impression, as was Hadden in the discussions

23   over the last week when talking to plaintiff's

24   lawyers who represented the vast majority of the

25   putative class in the cases before you.

1          THE COURT: I'm just -- I'm just, the gap

2     I'm trying to close is just the gap involving Iams

3     and Proctor and Gamble.  Between the -- closing the

4     gap between the vast majority and all.

5          Is there a way that counsel for

6     Iams/Proctor and Gamble could work with Mr. Tamblyn

7     to identify all of the lawyers in those 17 cases?

8          MR. IRELAND: The answer to that, Your

9     Honor, is, yes, and the only thing we would ask for,

10    as Mr. Hadden alluded to, we would like to move this

11    process along as swiftly as possible.  I think the

12    plaintiff's lawyers would tell you that, given that

13    we were in Camden on Wednesday, due to the storm it

14    took us an entire day to get back to Dayton, that we

15    negotiated, we negotiated over the weekend, and

16    didn't meet your timetable of Tuesday, but we did

17    get something to you on Thursday, working around the

18    4th of July holiday, and we did voluntarily agree to

19    do what you had asked, and we just would like a

20    procedure to move along as quickly as possible so

21    that we don't get tied down to objections and briefs

22    and things that will delay our going forward with

23    this aspect of our program, which I think everyone

24    agrees at its heart is a pretty good program.

25          MR. HADDEN: To just add a point.  We've

1  heard in the past that the plaintiff's counsel are

2  fairly well connected to -- that there is free

3  communication.  I know in the Workman case there was

4  an offer to put together a list of plaintiff's

5  counsel and things like that, and a list of who is

6  representing people and who they are.  So it sounds

7  like a pretty good network that is available to

8  counsel.

9          I would think if the papers were filed

10 electronically on the system the word could go out

11 through plaintiff's counsel that they are there, and

12 let us move forward, and the papers have been filed.

13 They are available.  And whatever results from the

14 network, results.

15         MR. KAMBER: I think the most efficient part

16 of the way to deal with the problem would be to put

17 on ECF.  I think it's fairly certain based on the --

18 putting it on ECF is, based upon the phone

19 conversation and all of us reporting to the various

20 firms with which we are working, I would agree with

21 defendants that I think in a relatively short order

22 everybody would, who had not yet commented, would

23 certainly be able to comment.  And I think we should

24 be able to, you know, in a week to 10 days be able

25 to have the certainty that the gap that Your Honor

1  is concerned about, is closed, and in fact that all

2  firms have been heard from.

3      MR. HADDEN: The concern is, if we allow the

4  period to pass, if Iams is prevented from

5  recommencing the program it voluntarily stepped away

6  from, that if any objection is raised, or any

7  comment or different prospective is brought to bear,

8  that that is going to delay the process further, and

9  to be in an extended period of time before it can be

10  raised, assessed, responded to, and/or negotiated.

11      So, and I appreciate the Court's concern.

12  I appreciate the Court's interest in trying to avoid

13  a problem down the line, but I think the competing

14  balance here, and competing interest is Iams'

15  ability to communicated freely with its customers

16  with notice, and it seems that we worked that out

17  with people who represent the majority of cases

18  directed against this company, and they are

19  satisfied with the outcome.  They have agreed to it.

20      Let me rephrase that.  Both parties having

21  agreed to it.  We would like to move forward on that

22  basis.

23      THE COURT:  Well, I'm caught between a rock

24  and a hard place.  I, my authority is limited to

25  cases in controversy.  I had an application to

1   enjoin the Iams Company, and they were consistent

2   with their other efforts, which I think were

3   undertaken in good faith, voluntarily agreed to

4   suspend their conduct, and to engage in a dialog

5   with the individual plaintiff's counsel who filed

6   the application with me, who are working very

7   closely with other interested stake holders on the

8   plaintiff's side.  And they have reached an

9   agreement.

10          One view of this is that I no longer have

11   before me -- Mr. Paul, you correct me if I'm wrong,

12   but I don't have a pending matter, application with

13   regard to the Iams Company.

14          I appreciate you reporting back to me, but

15   my sense of this is that, consistent with the

16   restraint that I need to exercise when it comes to

17   the rights of the defendants to settle their

18   differences with others, that it would probably be

19   wrong for me to try to put a halt to this simply

20   because there are larger issues at stake.  I say

21   that, mindful that if, and I think Iams should take

22   this into consideration, if it turns out an

23   objection is made later that something about this is

24   not completely accurate, or that it is, again,

25   misleading in some way, that we will be back where

1  we were, and I will have another application, and I
2  may agree with whoever makes that application.
3          I thought we would be in a better position
4  to front those issues now, and better able to
5  consider those applications if they came later
6  having done more of the work up front.  But maybe
7  I'm worrying about something that will never happen.
8  So -- I can't stop you from sending this out, or
9  certainly shouldn't, sua sponte.  So I'm not going
10  to -- I'll order it be filed on the ECF.  I'm going
11  to allow you to proceed as you indicated you want
12  to.  But I want you to know that if I get an angry
13  letter or angry phone call on Monday or Tuesday,
14  maybe all I'll be able to say is, I told you so.
15  But maybe it won't happen at all.  But I want you to
16  know if it does, then I would, obviously, entertain
17  any application that I received that would raise the
18  issue which I believe is an important principle
19  here, that those who are in the putative class have
20  as much information as possible about their legal
21  options.
22          If you are confident that this gets it
23  done, and if those representatives of the individual
24  plaintiffs who have cases against Iams believe this
25  gets it done, then I think it would be wise for me

1   just at this point to let it go.

2          So, I'm going to have this filed on ECF.

3   There being no pending motion before me to preclude

4   Iams in engaging in its settlement portions of its

5   reimbursement program, they are free to withdraw

6   their voluntary restraints and go forward.  I don't

7   know what else to do.

8          MR. KAMBER: In the beginning of the call

9   you referred to under exhibit D, the D letter to

10  wanting to put captions in that letter.  The --

11         THE COURT:  Hold on.  Mr. Daner didn't

12  quite follow you there.

13         MR. KAMBER: I was referring in the

14  beginning of the call, Your Honor had mentioned you

15  thought that headings would be good to add to the

16  exhibit D letter.

17         THE COURT:  Yes.

18         MR. KAMBER: I assume that will be done

19  before Iams is giving the opportunity to send the

20  letter out?

21         THE COURT:  It was the suggestion.  I still

22  believe that that would be helpful.  I mean, if,

23  again, you all have agreed, had initially agreed not

24  to do it, and I raised it in the form of a request.

25  I still think that it's, it would be helpful to Iams

1    and everyone involved to do that, and I don't think

2    they have to be elaborate or long.  I think as much

3    clarity as post is a good thing, and I think that's

4    potentially a weakness in this letter which is why I

5    raised it.  I could see somebody saying, do you know

6    at the end of the letter I don't think anybody knows

7    what their rights are.  It's confusing to me. And

8    maybe someone will say that Monday or Tuesday and

9    I'll have to deal with it.

10            So I encourage you to do it.  I'm not

11   ordering it.  I don't have anyone objecting to it.

12            MR. HADDEN: Just very briefly.

13            I appreciate Your Honor's concern about its

14   fiduciary obligation, and I appreciate Your Honor's

15   attempt to find an appropriate balance.  I would

16   submit to Your Honor that working with plaintiff's

17   attorneys who are heavily involved in this

18   litigation, and who I believe speak of, strongly

19   from their position on behalf of many others, that

20   we did work hard and work together to reaching what

21   was submitted to the Court.  At the same time I

22   think Iams does not want to put the Court in a

23   position where you said you feel you've been put

24   between a rock and a hard place.  Iams cannot

25   guarantee Your Honor that there will not be an angry

1    letter or complaint raised.  We can't guarantee that

2    an attorney somewhere or a party representative may

3    come forward with an individual instance where

4    something didn't go to way it was supposed to go.

5    We can't guarantee that.

6         I think what we have submitted to Your

7    Honor is the program that we have in place, the

8    intentions behind it, the efforts, written efforts

9    to express information, and provide folks so they

10   can make the right decisions with multiple

11   suggestions without talking to counsel.  That's what

12   we can do.  We can't offer the Court a guarantee,

13   and I appreciate Your Honor understands that.  But I

14   am just concerned that if something, if someone does

15   raise their own problem or their own issue that Your

16   Honor's going to look to Iams and say, as you

17   mentioned, I told you so.  I'm not sure we are in a

18   position to guarantee that someone won't find a

19   problem somewhere with some aspects of some letter

20   or some particular circumstance or something didn't

21   work the way it was supposed to.

22         THE COURT:  I understand, and it would have

23   to be reasonable.  I'm just trying to, if someone

24   knows about it and keeps their mouth shut, it makes

25   it difficult to come a week later or two weeks later

1  and say, do you know what, I don't like this.  In my

2  perfect world we would try to figure out -- we would

3  send these copies to those lawyers who have brought

4  suit again Iams, who have not been involved in the

5  negotiations process, and say, this is happening and

6  it's happening soon.  Speak now or not be heard

7  later.

8         And so, if Mr. Tamblyn and counsel for Iams

9  could compare notes and compare lists and send this

10  out to those other individuals, and I know you don't

11  want to upset an apple cart that has been carefully

12  loaded, but I just think we would be in a better

13  situation.

14         But, I'm just --

15         MR. HADDEN: I was just pointing out that

16  Iams has heard Your Honor's  concern and take your

17  suggestion and your thoughts seriously, and will

18  move forward accordingly.

19         THE COURT:  All right.

20         Anything else?

21         I'm going to direct that this submission

22  and the proposed letters to be used by Iams be filed

23  on the ECF file, the master MDL, and as well as a

24  transcript of this phone conference.

25         I wish all of you well and good luck, and I

1    appreciate all the hard work that went in by both

2    sides, and we will hope for the best.

3            (At which time the matter was concluded)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    **C E R T I F I C A T E.**

2

3

4

5    I, Stephen J. Daner, C.C.R., Official United States

6    Court Reporter and Certified Court Reporter of the

7    State of New Jersey, do hereby certify that the

8    foregoing is a true and accurate transcript of the

9    testimony as taken stenographically by and before me

10   at the time, place and on the date hereinbefore set

11   forth.

12   I do further certify that I am neither a relative

13   nor employee nor attorney nor counsel of any of the

14   parties to this action, and that I am neither a

15   relative nor employee of such attorney or counsel

16   and that I am not financially interested in this

17   action.

18

19

20

21

22

23   _____
     STEPHEN J. DANER, C.C.R..
24   Certificate No. 30X100151400
     Date: July 9, 2007
25