Steven J. Hyman (SH 2097)
Alan E. Sash (AS 8804)
McLaughlin & Stern, LLP
260 Madison Avenue
New York, New York 10016
Tel:(212) 448-1100
Fax:(212) 448-0066
asash@mclaughlinstern.com

Abbey Spanier Rodd & Abrams, LLP
212 East 39th Street
New York, New York 10016
Tel: (212) 889-3700
Fax: (212) 684-5191

*Attorneys for Proposed Interim Class*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---------------------------------x
                                 :  Civil Action No. 07-2867 (NLH)
In Re Pet Foods Products         :
Liability Litigation             :  MDL DOCKET NO. 1850
                                 :
                                 :  ALL CASES
---------------------------------x

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO APPOINT
INTERIM CLASS COUNSEL FOR PUTATIVE CLASS MEMBERS

## Table of Contents

|  | Page |
|---|---|

HISTORY OF THE ACTION ............................................................................................. 2

    A.    Factual Background ............................................................................................. 2

    B.    Procedural History ............................................................................................... 4

ARGUMENT ....................................................................................................................... 4

    A.    The Standard Applied to the Selection Of Interim Class Counsel ..................... 4

    B.    The Firms Should be Appointed As Interim Class Counsel .............................. 6

        1.    Identification and Investigating Potential Claims ..................................... 6

        2.    Counsel's Relevant Experience. ................................................................ 6

        3.    Counsel's Knowledge of Applicable Law ................................................ 7

        4.    The Resources Counsel Will Commit ....................................................... 7

        5.    Additional Factors ..................................................................................... 7

    C.    The Proposed Class Counsel Structure ............................................................... 8

CONCLUSION .................................................................................................................... 9

## Table of Authorities

**Cases**                         **Page**

*Hill v. The Tribune Co.*,
   No. 05 C 2602, et al., 2005 U.S Dist. LEXIS 23931 (N.D. Ill. Oct. 13, 2005) .......................... 5

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   240 F.R.D. 56 (E.D.N.Y. 2006) ............................................................................... *passim*

*Parkinson v. Hyundai Motor Am.*,
   No. CV 06-345AHS (MLGX) et al., 2006 U.S. Dist. LEXIS 59055
   (C.D.Cal. August 7, 2006) .......................................................................................... 4, 5, 6

**Statutes**

28 U.S.C. §1407 ............................................................................................................................ 4

**Rules**

Federal Rules of Civil Procedure

    Fed. R. Civ. P. 23(a) and (b) ....................................................................................... 7
    Fed. R. C. P. 23(g) ....................................................................................................... 1
    Fed. R. Civ. P. 23(g)(1)(C)(i) ...................................................................................... 8
    Fed. R. Civ. P. 23(g)(1)(C)(i)-(ii) ............................................................................... 5
    Fed. R. Civ. P. 23(g)(1)(C)(ii) ..................................................................................... 8
    Fed. R. Civ. P. 23(g)(2)(a) ........................................................................................... 4

The law firms of McLaughlin & Stern, LLP and Abbey Spanier Rodd & Abrams, LLP (together, "the Firms") seek appointment, pursuant to Rule 23(g) of the Federal Rules of Civil Procedure, as interim class counsel for the plaintiffs in this consolidated multidistrict litigation proceeding.

By appointing the Firms as interim counsel, the Court will ensure that the Class has excellent representation by counsel with highly relevant, recent experience in the area of pet food litigation. The Firms are currently in the final stages of two actions involving Greenies, a dog treat that has caused serious harm and injury to dogs across the country.[1] The Greenies cases received national media attention, and as a result Alan E. Sash, a partner at McLaughlin & Stern, was on a national television program in connection with the Menu Foods recall.

More generally, the firms have extensive experience in the legal field. McLaughlin & Stern is one of New York's oldest law firms, having been formed in 1898. Abbey Spanier has been litigating class actions since 1964 and has recovered billions of dollars for investors and consumers who have been defrauded by major corporations. The firm resume of Abbey Spanier is attached to the Certification of Alan E. Sash as Exhibit A.

Moreover, the Firms have shown their desire to help the Class in this Action. As the result of a mailing by Defendant Menu Foods Income Fund, the Firms have received dozens of calls from potential Class members. The Firms have advised these potential Class members, helping them to make informed decisions as to the appropriate course of action regarding harm to their pets from the defective and dangerous Menu Foods products their pets consumed.

While the Firms are seeking to be appointed interim counsel in this Action, the Firms do not intend to exclude all other firms applying for the same position in the case. Rather, the Firms

---

[1] The Greenies cases are *Glass v. S&M Nutec, LLC*, No. 06-cv-853 (W.D. Mo.) (GAF) and *Knutsen v. Petco Animal*

1

realize that this Action involves thousands of injured pets and very well may take years to come to a conclusion. In order to provide the best possible representation to the Class, as more fully discussed below, the Firms will propose to the Court a leadership structure that will be administered and controlled by the Firms but will consist of multiple committees of firms, each given specific functions and areas of focus.

Due to the collective experience of the Firms, their shown concern for the class, and the reasonable and inclusive leadership structure proposed, the Firms respectfully submit that the Court should appoint the Firms as interim lead counsel for this consolidated multidistrict litigation.

## HISTORY OF THE ACTION

### A.   Factual Background

On March 16, 2007, Defendant Menu Foods Income Fund ("Menu Foods") announced that it was recalling nearly one hundred brands of dog and cat food that it had manufactured at its facilities in Emporia, Kansas and Pennsauken, New Jersey, as a result of consumer complaints that pets had died of acute kidney failure after consuming the recalled brands of pet food.

According to the Food and Drug Administration (the "FDA"), Menu Foods waited nearly one month after it became aware that animals were dying from their product to announce the recall. Menu Foods received several complaints from consumers on and after February 20, 2007. Beginning on February 27, 2007, Menu Foods performed internal testing and fed its food to between forty and fifty animals. On March 2, 2007, the first of those animals exhibited signs of kidney failure and died and eight more died soon thereafter. Menu Foods also continued to receive complaints that animals were suffering from acute renal failure as a result of eating its

---

*Supplies Stores, Inc.*, 07-CV-06114 (RJH).

food. Menu Foods notified Defendant ChemNutra, Inc. ("ChemNutra") of the contamination eight days before the recall. However, Menu Foods did not announce the recall until March 16, 2007. In that time, while Defendants continued to profit, animals were sickened and killed by contaminated pet food.

On March 23, 2007, ABC News reported that investigators determined that a rodent-killing chemical -- called aminopterin -- had made its way into the wheat gluten in the tainted pet food that killed the animals.

By late March or early April 2007, Menu Foods stated that it had received nearly 200,000 calls from consumers regarding the tainted pet food, and the media estimated that 39,000 animals were injured or killed from the defective pet food.

On March 30, 2007, the FDA announced that it had not found rat poison in Menu Foods' products, but rather that it had found Melamine, a toxic substance that is used to manufacture plastic. Menu Foods, in a press conference on that same day, said that the Melamine was found in the same suspect wheat gluten supplied to Menu Foods by ChemNutra. ChemNutra had outsourced the production of the wheat to China.

On April 5, 2007, Defendants expanded their recall of pet food. In response to a press release issued by ChemNutra on April 3, 2007, Menu Foods voluntarily expanded its recall for selected "cuts and gravy" pet food products manufactured as far back as November 8, 2006.

B.  **Procedural History**

Plaintiff Linda Tinker, who is represented by the Firms, filed her class action complaint on March 26, 2007 in the United States District Court for the District of New Jersey. On April 23, 2007, the Firms filed an amended complaint that included seven additional named plaintiffs.

The Complaint named Menu Foods Income Fund (a Canadian corporation), Menu Foods, Inc., and ChemNutra, Inc., as defendants and sought damages, a court supervised medical monitoring fund, and attorneys' fees.

In addition to the Complaint filed on behalf of the Firms' clients, nearly one hundred other complaints were filed against the above-named defendants in courts throughout the country. These complaints named various subsidiaries of Menu Foods Income Fund, the company that imported the tainted wheat gluten, dozens of retailers including Wal-Mart Stores, Inc.,[2] and numerous other manufacturers of pet food.

On June 19, 2007, after several plaintiffs filed motions with the Judicial Panel on Multidistrict Litigation pursuant to 28 U.S.C. §1407, all related actions against Menu Foods were transferred to this Court.

## ARGUMENT

A.  **The Standard Applied to the Selection Of Interim Class Counsel**

The appointment of interim class counsel is authorized by Federal Rule of Civil Procedure 23(g)(2)(a). *Parkinson v. Hyundai Motor Am.*, No. CV 06-345AHS (MLGX) et al., 2006 U.S. Dist. LEXIS 59055, at *5 (C.D.Cal. August 7, 2006). "In cases . . . where multiple

---

[2] In an unrelated employment class action against Wal-Mart Stores, Inc., Abbey Spanier obtained a $78 million jury verdict against Wal-Mart, and an express finding (for which the plaintiffs are seeking an additional $74 million) that Wal-Mart did not act in good faith in failing to pay class members for missed rest breaks and "off the clock" work. In addition, Wal-Mart is represented herein by Shook, Hardy & Bacon, LLP, the attorneys for the defendants in the Greenies related actions discussed above.

overlapping and duplicative class actions have been transferred to a single district for the coordination of pretrial proceedings, designation of interim class counsel is encouraged, and indeed is probably essential for efficient case management." *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006) (citing MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.11 (2004)). "Generally such counsel has the responsibility for 'protecting the interests of the class during pre-certification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement.'" *Id.* "Although neither the federal rules nor the advisory committee notes expressly so state, it appears to be generally accepted that the considerations set out in Rule 23(g)(1)(C), which governs appointment of class counsel once a class is certified, apply equally to the designation of interim class counsel before certification." *Air Cargo*, 240 F.R.D. at 57; *Parkinson v. Hyundai Motor Am.*, No. CV 06-345AHS (MLGX) et al., 2006 U.S. Dist. LEXIS 59055, at *5-6 (C.D.Cal. Aug. 7, 2006); *Hill v. The Tribune Co.*, No. 05 C 2602, et al., 2005 U.S Dist. LEXIS 23931, at *15-17 (N.D. Ill. Oct. 13, 2005).

In deciding which firm to appoint as interim counsel for the Class, the Court should consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(C)(i)-(ii). The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(C)(ii).

**B.   The Firms Should be Appointed As Interim Class Counsel**

The Firms respectfully submit that the Firms should be appointed interim class counsel due to their demonstrated consideration of the best interests of the Class and their recent experience with class actions that are highly similar to this Action.

**1.   Identification and Investigating Potential Claims.**  The Firms have recently learned of reports that one defendant in this action continued to sell recalled Menu Foods products long after the announcement of the recall. If this is the case, the Firms will discuss with their clients a potential lengthening of the class period with regard to this defendant. Certification of Alan E. Sash ("Sash Cert.") at ¶3.

**2.   Counsel's Relevant Experience.**  The Firms have recent, highly relevant experience in the litigation of similar actions and, accordingly, should be appointed as interim class counsel. *See Parkinson*, 2006 U.S. Dist. LEXIS 59055, at *7 (in an action for vehicle defects and misrepresentations, the court appointed firms that had the most experience in litigating actions concerning vehicle defects and misrepresentations). The Firms have, on two previous occasions, acted as co-counsel in the matter of *Glass v. S&M NuTec, LLC*, 06-0853-CV-W (GAF), currently venued in the United States District Court for the Western District of Missouri and *Knutsen v. Petco Animal Supplies Stores, Inc.*, 07-CV-06114 (RJH), currently venued in the United States District Court for the Southern District of New York. Both of these cases are still pending and involve the same alleged defective dog treat called "Greenies." Since these actions were commenced, the original owners of the company that made Greenies sold the company to Mars, Inc. and the Greenies product has been reformulated. Like this case, the Greenies litigations involved hundreds of people from over twenty states claiming that their dogs died or were injured from "Greenies." The Firms' work on these cases has yielded substantial

experience and knowledge regarding causation on a class-wide basis and class certification under Federal Rule of Civil Procedure 23(a) and (b). Sash Cert. At ¶4. In addition to the legal hurdles the Firms have faced in the Greenies cases, the Firms also presided over the discovery process. Sash Cert. at ¶5.

3. **Counsel's Knowledge of Applicable Law.** The Firms are well versed in applicable law from the above-shown highly relevant experience. In the Greenies cases, we had to familiarize ourselves with many federal and state laws. In addition, we had to review and analyze FDA and USDA regulations.

4. **The Resources Counsel Will Commit.** As a result of decades of class action litigation, the Firms are aware of the resources required to litigate an action of this nature and are capable of expending the resources necessary to effectively prosecute the case.

5. **Additional Factors.** In addition to the four enumerated factors of Fed. R. Civ. P. 23(g)(1)(C)(i), courts are permitted to consider any other relevant factors in the selection of interim class counsel. Fed. R. Civ. P. 23(g)(1)(C)(ii). The Firms respectfully submit that the Court should consider the Firms' commitment to the interests of the Class, both financially and in the Firms' counseling of absent Class members. The Firms have avoided excessive cost to the Class by refraining from submitting duplicative briefing at the venue selection stage of this Action. The Firms can also keep expenses for the Class low by avoiding the hiring of liaison counsel, as Alan E. Sash of Mclaughlin & Stern is admitted to practice in the State of New Jersey and in this District. With regard to counseling putative Class members, the Firms have received dozens of calls from putative Class members and advised them of all options, and all courses of action, available in this difficult situation. Sash Cert. at ¶9.

C.  **The Proposed Class Counsel Structure**

This putative class action involves thousands of pets across the country that have been injured or died from defective pet food products manufactured, distributed or sold by Defendants. The class action also includes claims on behalf of pet owners for damages suffered from the purchase of defective products and from costly efforts to diagnose and confirm whether or not their pets were harmed by the defective products. Coordination of nearly 100 cases for pretrial proceedings will be a huge task, and the Firms respectfully submit that such a task will require in some instances the mobilization of the resources of other firms in addition to the two undersigned firms. *See Air Cargo*, 240 F.R.D. at 58 ("[G]iven the complexity of the case and the sheer numbers of litigants and counsel involved here, one firm does not appear to be enough to carry out the functions of interim class counsel."). Accordingly, the Firms recommend a committee structure over which the Firms would preside.

The Firms propose the following three committees, each with a specialized function:

(i)  Executive Committee. The Executive Committee will include a maximum of four firms (the Firms and two additional firms), and will be responsible for making all major strategic decisions, apportioning work among plaintiffs' firms, communicating with Defendants and the Court, setting and coordinating meetings between counsel, and governing the two committees below. This Committee will determine the distribution of all work not expressly within the province of the two committees below.

(ii)  Discovery Committee. This committee will be charged with handling all aspects of discovery, including but not limited to drafting and responding to discovery requests and handling discovery disputes. The Discovery Committee will submit all work to the Executive Committee for comments before service and/or filing.

(iii)  Brief Writing Committee. The Brief Writing Committee will write all necessary memoranda of law in support of and/or in opposition to all motions (except for motions regarding discovery disputes, which will be best handled by the Discovery Committee). This Committee will also coordinate the filing and service of all such memoranda of law and accompanying papers. The Brief

8

Writing Committee will submit all work to the Executive Committee for comments before service and/or filing.

The purpose of creating these committees will be to distribute work such that many plaintiffs' firms can work together to protect the interests of the Class, yet to avoid duplication of effort and keep the number of firms small enough to avoid the inefficiencies inherent in large groups. *See Air Cargo*, 240 F.R.D. at 58 (discussing the difficulties involved when too many or too few firms share the work in a multidristrict litigation); Manual for Complex Litigation 4th, §10.22, at p. 4 (noting that instituting special procedures for coordination of counsel will avoid significant inefficiencies).

## CONCLUSION

For the foregoing reasons, we respectfully submit that the law firms of McLaughlin & Stern, LLP and Abbey Spanier Rodd & Abrams, LLP should be appointed Interim Class Counsel.

Dated: New York, New York
September 4, 2007

Respectfully submitted,

McLaughlin & Stern, LLP

By: _____
Alan E. Sash (AS 8804)
260 Madison Avenue
New York, New York 10016
Tel:(212) 448-1100
Fax:(212) 448-0066
asash@mclaughlinstern.com

Abbey Spanier Rodd & Abrams, LLP
Stephen T. Rodd
Orin Kurtz
212 East 39th Street
New York, New York 10016
Tel: (212) 889-3700
Fax: (212) 684-5191

9