Exhibit 2

Dockets.Justia.com

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK CASHMAN, and                        )
CIRO AIELLO; individually and on         )
behalf all others similarly situated,    )
                                         )
          Plaintiffs,                    )
                                         )        Case No. 07-cv-3236
     v.                                  )
                                         )
MENU FOODS MIDWEST                       )
CORPORATION, MENU FOODS                  )
INCOME FUND, MENU FOODS                  )
LIMITED, MENU FOODS INC.,                )
MENU FOODS HOLDINGS, INC.,               )
THE PROCTER & GAMBLE                     )
COMPANY, THE IAMS COMPANY,               )
CHEMNUTRA INC., and JOHN                 )
DOES 1 through 100,                      )
                                         )
          Defendants.

**PLAINTIFFS' FIRST REQUEST FOR THE
PRODUCTION OF DOCUMENTS TO ALL DEFENDANTS**

Plaintiffs hereby request that Defendants respond to this First Set of Requests for

Production of Documents (the "Requests"), within thirty (30) days from the date of service of

these Requests, in accordance with Rule 34 of the Federal Rules of Civil Procedure and the

Definitions and Instructions set forth below.

**I.       DEFINITIONS**

1.      "USDA" shall mean the United States Department of Agriculture, any agency,

office, committee, subcommittee or advisory committee thereof, and any person, employee or

agent acting as a representative thereof.

2.    "APHIS" shall mean the USDA's Animal and Plant Health Inspection Service, any committee, subcommittee, or advisory committee thereto, and any person, employee, or agent acting as a representative thereof.

3.    "Menu Foods" shall mean defendants MENU FOODS MIDWEST CORPORATION, MENU FOODS INCOME FUND, MENU FOODS LIMITED, MENU FOODS INC., MENU FOODS HOLDINGS, INC and shall include their corporations, parents, subsidiaries, divisions, subdivisions, affiliates, managers, directors, officers, employees, agents, and representatives, as well as its predecessors in interest or name.

4.    "P&G" shall mean defendants THE PROCTER & GAMBLE COMPANY and THE IAMS COMPANY and shall include their corporations, parents, subsidiaries, divisions, subdivisions, managers, directors, officers, employees, agents, representatives or affiliates, as well as its predecessors in interest or name.

5.    "ChemNutra" shall mean defendant CHEMNUTRA INC and shall include its corporations, parents, subsidiaries, divisions, subdivisions, managers, directors, officers, employees, agents, representatives or affiliates, as well as its predecessors in interest or name.

6.    The "adultered" or "adultered product" shall mean any pet food or any component of it containing any melamine, aminopterin or any other potentially dangerous or hazardous ingredient that is not supposed to be in it. This includes but is not limited to any ingredient not included in the product label or specification.

7.    "Communication(s)" shall mean the transmission, sending, or receipt of information of any kind (in the form of facts, ideas, inquiries, or otherwise), by or through any means including, but not limited to, speech, writings, language (machine, foreign or otherwise), computer electronics of any kind (including, but not limited to, e-mail or instant messaging),

magnetic tape, videotape, photographs, graphs, symbols, signs, magnetic or optical disks, floppy disks, compact discs, CD-ROM discs, other removable or transportable media, sound, radio, or video signals, telecommunication, telephone, teletype, facsimile, telegram, microfilm, microfiche, photographic film of all type, or other media of any kind.

8.      "Concerning" shall mean evidencing, reflecting, incorporating, effecting, including, or otherwise pertaining, either directly or indirectly, or being in any way logically or factually connected with, the subject matter of the inquiry or request.

9.      The "Complaint" shall mean the complaint filed on April 23, 2007, in the above captioned action.

10.     The "Court" shall mean the United States District Court for the Southern District of New York.

11.     "Custodian" shall mean a person who has custody of information or a document prior to collection for production.

12.     "Defendants" shall mean Menu Foods, P&G, ChemNutra, and John Does 1 through 100 and shall include their respective corporations, parents, subsidiaries, divisions, subdivisions, affiliates, managers, directors, officers, employees, agents and representatives as well as their respective predecessors in interest or name.

13.     The term "Document(s)" is synonymous and equal in scope to usage of this term in Fed. R. Civ. P. 34(a) and to the terms "[w]ritings and recordings," "photographs," "original" and "duplicate" defined in Fed. R. Evid. 1001. Document means the original (or an identical duplicate if the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description that are fixed in

any medium upon which intelligence or information can be recorded or retrieved – including, but not limited to documents fixed in tangible media or electronically or digitally stored on disk or tape in a native format. This includes, without limitation, all Electronic Data, Active Files, and Communications. "Document(s)" further includes the original and each non-identical copy of any book, pamphlet, periodical, letter, memorandum, diary, calendar, telex, electronic mail message, instant message, telegram, cable, report, record, contract, agreement, study, handwritten note, draft, working paper, chart, paper, print, record, drawing, sketch, graph, index, list, tape, stenographic recording, tape recording, photograph, microfilm, invoice, bill, order form, receipt, financial statement, accounting entry sheet or data processing card, or any other written, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced, reproduced, or stored, which is in your possession, custody, or control.

14.     The term "Electronic Data," means the original (or identical duplicate when the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Electronic Data includes, by way of example only, computer programs (whether private, commercial or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, instant messaging, operating systems, source code of all types, peripheral drivers, batch files, ASCII files, and any and all miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether such Electronic Data consists in an Active File, Deleted File, or file

fragment. Electronic Data includes any and all items stored on computer memories, hard disks, floppy disks, CD-ROMs, DVDs, removable media such as Zip disks, Snap servers, Jaz cartridges, and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, on or in any other vehicle for digital data storage or transmittal. The term electronic data also includes the file, folder tabs or containers and labels appended to, or associated with, any physical storage device associated with each original or copy thereof.

15.    "Employee(s)" shall mean any person who acted or purported to act on behalf of another person or persons, including, but not limited to, all past and present directors, officers, executives, agents, representatives, attorneys, accountants, independent contractors, advisors, and consultants of such other person or persons.

16.    "FDA" shall mean the Food and Drug Administration, any agency, office, committee, subcommittee or advisory committee thereof, and any person, employee or agent acting as a representative thereof.  This includes but is not limited to the Center for Veterinary Medicine.

17.    "Person" shall mean any natural person acting in any capacity or any entity or organization, including divisions, departments, and other units therein, and shall include, but not be limited to, a public or private corporation, partnership, association, joint venture, committee, proprietorship, trust, estate, any government or governmental body, including, but not limited to, any commission, board, bureau, or agency.

18.    "Policy" as used herein, means any rule, procedure, practice, or course of conduct, whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by any of the Defendants.

19.    "Regulatory Agency" or "Regulatory Agencies" shall mean any agency, domestic or foreign to the United States, which has or purports to have authority to regulate pet food or pet food products, any ingredient thereof, the importation of the same, or the manufacturer of the same, including without limitation: (i) the FDA, the USDA, or any other federal agency; (ii) any state agency, including but not limited to the New York State Agriculture Commission and California Department of Food and Agriculture; (iii) any foreign agency, including but not limited to the Canadian Food Inspection Agency and the European Food Inspection Service; and (iv) any other regulatory or oversight body, including but not limited to the United States Senate, any of its committees, or any of its members.

20.    "Pet Food" and "Pet Food Product" shall mean any product designed for consumption of by (i) any animal, excluding humans; (ii) any fish; or (iii) any bird.  It includes each ingredient of any pet food, including but not limited to wheat gluten.

21.    "Recalled Pet Food" shall mean all pet food products that have been recalled as identified in Menu Foods' press releases dated March 16, 2007, April 5, 2007, April 10, 2007, April 17, 2007, May 3, 2007, and May 22, 2007.  All of the Defendants' recalled pet foods have also been listed on the FDA's website at:

http://www.accessdata.fda.gov/scripts/petfoodrecall/#All.

## II.    INSTRUCTIONS

1.    You shall produce all of the requested documents that are in your possession, custody, or control, including (by way of illustration only and not limited to) documents in the possession, custody, or control of your affiliates, divisions, subdivisions or subsidiaries, and your present or former attorneys, accountants, directors, officers, partners, employees, and other representatives and agents, as well as your present or former independent contractors over which or whom you have had control, and any other persons acting on your behalf.

482414v2                                                    6

2.    All documents withheld or redacted on the grounds of privilege or attorney work product shall be described on a privilege log.  Any privilege logs shall be produced on a rolling basis and shall not delay the production of nonprivileged documents because of the preparation of a privilege log, however, a privilege log for documents redacted on privilege or attorney work product grounds shall be produced of the redacted document.  Privilege Logs shall be produced in both .PDF and Excel Spreadsheet format, and shall contain, at least, the following information for each document withheld or redacted on the grounds of privilege or attorney client work product:  Bates Range, Date, Applicable Privilege, Subject, and Names associated with the document (with Author, Recipient, Carbon Copy Recipient, and Blind Carbon Copy Recipient if apparent from the document).

3.    Notwithstanding the assertion of an objection, any purportedly privileged or otherwise protected document containing non-privileged or otherwise unprotected information shall be produced, with the purportedly privileged or otherwise protected portion excised (and clearly marked to so indicate).

4.    If any otherwise responsive document was, but no longer is, in existence or in your possession, custody, or control, you shall identify the document, its current or last known custodian(s), and the address and location of the document, and describe, in full, the circumstances surrounding its disposition from your possession, custody, or control.

5.    When producing or otherwise identifying documents on a "Custodian" basis, as that term is defined above, you are to identify the person who created the document, each person who has received or edited the document, and the last person who was in possession thereof (or continues to be in possession thereof), as well as all drafts or versions from the original creation through the date of production.

6.    The use of a verb in any tense shall be construed as the use of the verb in all other tenses, whenever necessary to bring into the scope of the specification all responses that might otherwise be construed to be outside the scope.

7.    The use of any singular word includes both the singular and the plural of that word, and vice versa.   The use of any masculine or feminine pronoun includes both the masculine and feminine.

8.    "Concerning" or "relate to" shall be construed broadly and to include concerning, referring to, consisting of, received from, addressed to, sent to, alluding to, responding to, announcing, explaining, evaluating, discussing, showing, describing, studying, reflecting, analyzing, consulting, or identifying.

9.    "And" and "or" are to be considered both conjunctively and disjunctively.   The singular form of a noun or pronoun includes the plural form and vice versa.   "Or" is understood to include and encompass "and."

10.    "Any" is understood to include and encompass "all."   The word "all" also includes "each," and vice versa.

11.    "Including" shall mean including but not limited to.

12.    This discovery request shall be deemed continuing so as to require the production of any additional responsive documents Defendants may become aware of between the time of their initial responses and the time of trial.

## III.    RELEVANT TIME PERIOD

Unless otherwise specified herein, you shall produce documents dated, prepared, or obtained during the time period of **January 1, 2006** through the present-day, or which refer or relate to all or any portion of that period whenever prepared.

482414v2                                    8

## IV.  DOCUMENTS REQUESTED

### REQUEST NO. 1

All Documents concerning the procurement, supply, production, specifications, testing, analysis, quantity, and quality of wheat gluten used in the Recalled Pet Food.  This request includes but is not limited to:

(i)  all agreements, amendments, understandings and other communications between Menu Foods and ChemNutra;

(ii)  all agreements, amendments, understandings and other communications between any Defendants; and

(iii)  all agreements, amendments, understandings and other communications between any of the Defendants and any supplier of the wheat gluten, including but limited with XuZhou Anying Biologic Technology Co. Ltd. ("XuZhou")

### REQUEST NO. 2

All documents concerning or relating to the analysis, testing and/or certification of the wheat gluten used in the Recalled Pet Food.  This request includes but is not limited to compliance with any contractual requirements, industry standards, and/or regulatory specifications or requirements for the wheat gluten.

### REQUEST NO. 3

All documents concerning or relating to any evaluation or due diligence of the suppliers of the wheat gluten used in the Recalled Pet Food, including but not limited to the wheat gluten from XuZhou.  This request includes but is not limited to: (i) inspections of any facilities making, processing and/or testing the wheat gluten; (ii) testing, analysis or other evaluation of the wheat gluten; and (iii) any other background check or evaluation of each supplier.

**REQUEST NO. 4**

All documents concerning or relating to the reasons for the recall of the Recalled Pet Food.

**REQUEST NO. 5**

All documents referring or relating the recall of the Recalled Pet Food, including the specific reasons for the recall.

**REQUEST NO. 6**

All documents referring or relating to the actual or purported adulteration of the Recalled Pet Food.

**REQUEST NO. 7**

All documents concerning the testing of the Recalled Pet Food, including but not limited to, tests to determine whether the Recalled Pet Food was adultered, and whether it was safe for consumption. This request includes, but is not limited to, tests conducted by Defendants, any third party at the direction or on behalf of any of the Defendants, or conducted by a third party and provided to any of the Defendants.

**REQUEST NO. 8**

To the extent not covered by the above requests, all documents referring or relating to the testing, analysis and safety or fitness for consumption of the Recalled Pet Food.

**REQUEST NO. 9**

All communications among any of the Defendants regarding the adulteration of the Recalled Pet Food.

482414v2

10

**REQUEST NO. 10**

All documents and communications (including voice tapes) referring or relating to any complaints or inquiries from pet owners and/or consumers regarding pet illness or death and/or any reaction to consuming any Recalled Pet Food.

**REQUEST NO. 11**

All documents referring or relating to any complaints or reports, including but not limited to those from veterinarians, regulators, retail stores, pet food producers, distributors, importers, exporters, pet shelters, pet societies, and pet owners, regarding pet illness or death from consuming any Recalled Pet Food.

**REQUEST NO. 12**

All documents concerning and/or reflecting the number of animals that became ill and/or died, and whose illness and/or death may be a result of consuming any Recalled Pet Food.

**REQUEST NO. 13**

All documents referring or relating to any settlements or attempts to settle claims with pet owners purportedly affected by any Recalled Pet Food.

**REQUEST NO. 14**

All documents referring or relating to any and all illnesses or death caused by the Recalled Pet Food, including but not limited to pet kidney failure or death during the Relevant Period.

**REQUEST NO. 15**

All documents exchanged between any of the Defendants, referring or relating to the adultered wheat gluten, melamine, the Recalled Pet Food, or any other facts alleged in the Complaint.

**REQUEST NO. 16**

All documents concerning or relating to any other potential adulteration of the Recalled Pet Food, including but not limited to the presence of aminopterin or any other potentially dangerous or hazardous ingredient that is not supposed to be in the product. This request includes but is not limited to any ingredient not included in the designated product label or product specification.

**REQUEST NO. 17**

All documents referring or relating to the adultered wheat gluten, including without limitation documents concerning Defendants' decision to procure it, to discontinue using it, warnings, labeling, and compliance with applicable regulations and/or industry standards.

**REQUEST NO. 18**

All documents referring or relating to the safety, adulteration, fitness, or merchantability standards of production or manufacture of any of the Recalled Pet Food.

**REQUEST NO. 19**

All documents referring or relating to any deviations from the usual or ordinary manufacture, testing or analysis of any of the Recalled Pet Foods.

**REQUEST NO. 20**

All correspondence between any of the Defendants and all testing facilities regarding the Recalled Pet Food.

**REQUEST NO. 21**

All studies and/or analyses conducted by Defendants or any third party to determine the effects of the adulteration of the wheat gluten used in the Recalled Pet Food containing melamine or any other adulteration in the Recalled Pet Food.

**REQUEST NO. 22**

All risk analyses conducted by Defendants, or by any other Person on behalf of any Defendants, regarding the Recalled Pet Food.

**REQUEST NO. 23**

All communications with any regulatory agency concerning or regarding any adultered pet food or any of the Recalled Pet Food. This includes but is not limited to all correspondence, correspondence logs, reports, inspection reports, test results, field tests, studies, search warrants, warning letter, and Wells notices.

**REQUEST NO. 24**

All contracts between the Defendants related to production and distribution of the Recalled Pet Food, including any amendments thereto.

**REQUEST NO. 25**

All Documents reflecting the identification of all of Defendants' current and former employees or agents who, in the course of their employment or agency duties, have or had communications with any Regulatory Agency and/or any supplier of wheat gluten used in the Recalled Pet Food or regarding the Recalled Pet Food.

**REQUEST NO. 26**

Copies of the product label for each Recalled Pet Food.

**REQUEST NO. 27**

All documents concerning or reflecting whether the Recalled Pet Food contained any ingredients that were not on the product label, or were otherwise not consistent with the labeling of the product.

482414v2                                          13

**REQUEST NO. 28**

Copies of all testimony and presentations, whether written or oral, and whether public or private, provided by any of the Defendants or agent of any of the Defendants, concerning or related to Pet Food Recall.  This request includes but is not limited to any testimony before any Regulatory Agency.

**REQUEST NO. 29**

Copies of all complaints or arbitration demands filed by or against any of the Defendants concerning or relating to the Pet Food Recall.  Excluded from this request are complaints filed in the United States by pet owners complaining about the illness or death of their pet (or those similarly situated).

**REQUEST NO. 30**

All documents reflecting all communications with any public relations firm for any of the Defendants, concerning or relating to the adulteration of pet food and/or the Recalled Pet Food.

**REQUEST NO. 31**

All documents reflecting communications with industry associations, including the Pet Food Institute, concerning or relating to adulteration of pet food and/or the Recalled Pet Food.

**REQUEST NO. 32**

For the Recalled Pet Food products, during the years 2005 and 2006, documents reflecting the following categories of documents:

       i.      Gross sales for each product;

      ii.     Costs of production and sale for each product;

     iii.    Profit or loss for each product; and

     iv.    Profit margin for each product.

**REQUEST NO. 33**

All documents reflecting all sales by any officer or director of any of the Defendants of any stock, bond, unit, trust, option, other security or ownership interest of any of the Defendants.

**REQUEST NO. 34**

With respect to the answers served and filed by Defendants, dated June 29, 2007, produce each of the following categories of documents:

        (i)     all documents referred to in the answer;

        (ii)    all documents supporting each paragraph in the answer; and

        (iii)   all documents supporting each affirmative defense.

**REQUEST NO. 35**

All insurance policies relating to any claims in the litigation or the recall of the Recalled Pet Food.

**REQUEST NO. 36**

All indemnification agreements, contribution agreements, hold harmless agreement or similar agreements between any defendant(s) and any other entity concerning any possible liability as a result of any claims asserted in this litigation or the Recalled Pet Food.

**REQUEST NO. 37**

All Documents concerning Defendants' document retention or destruction policies in effect during the Relevant Time Period, including, without limitation, any such Policies concerning electronically stored documents and e-mail, including any changes to such Policy, including but not limited to any actual, suggested or contemplated Policy, plan, program, procedure, instruction, direction or request concerning the destruction, alteration, removal,

concealment, non-disclosure, secrecy or confidentiality of any of the Documents requested herein.

Dated: July 3, 2007                              Respectfully submitted,

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**

_____
Gregory Mark Nespole, Esq. (GN6820)
Martin E. Restituyo, Esq. (MR0856)
270 Madison Avenue
New York, NY 10016
Telephone:  212-545-4600
Facsimile:  212-686-0114

**LARRY D. DRURY LTD.**
Larry D. Drury, Esq.
205 W. Randolph Street, Suite 1430
Chicago, IL 60606
Telephone: (312) 346-7950
Facsimile: (312) 346-5777

**PROGRESSIVE LAW GROUP, LLC**
Noah Golden-Krasner, Esq.
354 West Main Street
Madison, WI 53703
Telephone: (608) 258-8511
Facsimile: (608) 442-9494

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MARK CASHMAN, and CIRO AIELLO; individually and on behalf all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 07-cv-3236 |
| v. | ) ) | |
| MENU FOODS MIDWEST CORPORATION, MENU FOODS INCOME FUND, MENU FOODS LIMITED, MENU FOODS INC., MENU FOODS HOLDINGS, INC., THE PROCTER & GAMBLE COMPANY, THE IAMS COMPANY, CHEMNUTRA INC., and JOHN DOES 1 through 100, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## PLAINTIFFS' FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS

Plaintiffs hereby request that Defendants respond to this Plaintiffs' First Set of

Interrogatories To All Defendants (the "Interrogatories"), within thirty (30) days from the date of

service of these Interrogatories, in accordance with Rule 33 of the Federal Rules of Civil

Procedure, Local Civil Rule 33.3, and the Definitions and Instructions set forth below.

**I.     DEFINITIONS**

1.     "Menu Foods" shall mean defendants MENU FOODS MIDWEST

CORPORATION, MENU FOODS INCOME FUND, MENU FOODS LIMITED, MENU

FOODS INC., MENU FOODS HOLDINGS, INC. and shall include their corporations, parents,

subsidiaries, divisions, subdivisions, affiliates, managers, directors, officers, employees, agents,

and representatives, as well as its predecessors in interest or name.

2.      "P&G" shall mean defendants THE PROCTER & GAMBLE COMPANY and THE IAMS COMPANY and shall include their corporations, parents, subsidiaries, divisions, subdivisions, managers, directors, officers, employees, agents, representatives or affiliates, as well as its predecessors in interest or name.

3.      "ChemNutra" shall mean Defendant CHEMNUTRA INC. and shall include its corporations, parents, subsidiaries, divisions, subdivisions, managers, directors, officers, employees, agents, representatives or affiliates, as well as its predecessors in interest or name.

4.      "Defendants" shall mean Menu Foods, P&G, ChemNutra, and John Does 1 through 100 and shall include their respective corporations, parents, subsidiaries, divisions, subdivisions, affiliates, managers, directors, officers, employees, agents and representatives as well as their respective predecessors in interest or name.

5.      The "adultered" or "adultered product" shall mean any pet food or any component of it containing any melamine, aminopterin or any other potentially dangerous or hazardous ingredient that is not supposed to be in it.  This includes but is not limited to any ingredient not included in the product label.

6.      "USDA" shall mean the United States Department of Agriculture, any agency, office, committee, subcommittee or advisory committee thereof, and any Person, employee or agent acting as a representative thereof.

7.      "FDA" shall mean the Food and Drug Administration, any agency, office, committee, subcommittee or advisory committee thereof, and any person, employee or agent acting as a representative thereof.  This includes but is not limited to the Center for Veterinary Medicine.

8.     "Regulatory Agency" or "Regulatory Agencies" shall mean any agency, domestic

or foreign to the United States, which has or purports to have authority to regulate pet food and

pet food products, any ingredient thereof, the importation of the same, or the manufacturer of the

same, including without limitation: (i) the FDA, the USDA, or any other federal agency; (ii) any

state agency, including but not limited to the New York State Agriculture Commission and

California Department of Food and Agriculture; (iii) any foreign agency, including but not

limited to the Canadian Food Inspection Agency and the European Food Inspection Service; and

(iv) any other regulatory or oversight body, including but not limited to the United States Senate,

any of its committees, or any of its members.

9.     "Pet Food" and "Pet Food Product" shall mean any product designed for

consumption of by (i) any animal, excluding humans; (ii) any fish; or (iii) any bird.  It includes

each ingredient of any pet food, including but not limited to wheat gluten.

10.     "Recalled Pet Food" shall mean all pet food products that have been recalled as

identified in Menu Foods' press releases dated March 16, 2007, April 5, 2007, April 10, 2007,

April 17, 2007, May 3, 2007, and May 22, 2007.  All of the defendants' recalled pet foods have

also been listed on the FDA's website at:

http://www.accessdata.fda.gov/scripts/petfoodrecall/#All.

11.     "Communication(s)" shall mean the transmission, sending, or receipt of

information of any kind (in the form of facts, ideas, inquiries, or otherwise), by or through any

means including, but not limited to, speech, writings, language (machine, foreign or otherwise),

computer electronics of any kind (including, but not limited to, e-mail or instant messaging),

magnetic tape, videotape, photographs, graphs, symbols, signs, magnetic or optical disks, floppy

disks, compact discs, CD-ROM discs, other removable or transportable media, sound, radio, or

video signals, telecommunication, telephone, teletype, facsimile, telegram, microfilm,

microfiche, photographic film of all type, or other media of any kind.

      12.     "Concerning" shall mean evidencing, reflecting, incorporating, effecting,

including, or otherwise pertaining, either directly or indirectly, or being in any way logically or

factually connected with, the subject matter of the inquiry or request.

      13.     The "Complaint" shall mean the complaint filed on April 23, 2007, in the above

captioned action, and any subsequently filed amended complaint.

      14.     The "Court" shall mean the United States District Court for the Southern District

of New York.

      15.     "Custodian" shall mean a person who has custody of information or a document

prior to collection for production.

      16.     The term "Document(s)" is synonymous and equal in scope to usage of this term

in Fed. R. Civ. P. 34(a) and to the terms "[w]ritings and recordings," "photographs," "original"

and "duplicate" defined in Fed. R. Evid. 1001. Document means the original (or an identical

duplicate if the original is not available), and any non-identical copies (whether non-identical

because of notes made on copies or attached comments, annotations, marks, transmission

notations, or highlighting of any kind) of writings of every kind and description that are fixed in

any medium upon which intelligence or information can be recorded or retrieved – including, but

not limited to documents fixed in tangible media or electronically or digitally stored on disk or

tape in a native format. This includes, without limitation, all Electronic Data, Active Files, and

Communications. "Document(s)" further includes the original and each non-identical copy of

any book, pamphlet, periodical, letter, memorandum, diary, calendar, telex, electronic mail

message, instant message, telegram, cable, report, record, contract, agreement, study,

handwritten note, draft, working paper, chart, paper, print, record, drawing, sketch, graph, index, list, tape, stenographic recording, tape recording, photograph, microfilm, invoice, bill, order form, receipt, financial statement, accounting entry sheet or data processing card, or any other written, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced, reproduced, or stored, which is in your possession, custody, or control.

17.    The term "Electronic Data," means the original (or identical duplicate when the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means.  Electronic Data includes, by way of example only, computer programs (whether private, commercial or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, instant messaging, operating systems, source code of all types, peripheral drivers, batch files, ASCII files, and any and all miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether such Electronic Data consists in an Active File, Deleted File, or file fragment. Electronic Data includes any and all items stored on computer memories, hard disks, floppy disks, CD-ROMs, DVDs, removable media such as Zip disks, Snap servers, Jaz cartridges, and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, on or in any other vehicle for digital data storage or transmittal. The term electronic data also includes the file, folder tabs or containers and labels appended to, or associated with, any physical storage device associated with each original or copy thereof.

5

18.    "Employee(s)" shall mean any person who acted or purported to act on behalf of another person or persons, including, but not limited to, all past and present directors, officers, executives, agents, representatives, attorneys, accountants, independent contractors, advisors, and consultants of such other person or persons.

19.    "Person" shall mean any natural person acting in any capacity or any entity or organization, including divisions, departments, and other units therein, and shall include, but not be limited to, a public or private corporation, partnership, association, joint venture, committee, proprietorship, trust, estate, any government or governmental body, including, but not limited to, any commission, board, bureau, or agency.

20.    "Policy" as used herein, means any rule, procedure, practice, or course of conduct, whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by any of the Defendants.

## II.    **INSTRUCTIONS**

1.    Each Interrogatory refers to information in the custody, control and possession of the Defendants, or known to the Defendants, as well as in the custody, control and possession of or known to the Defendants' counsel, representatives, agents, servants, investigators, consultants and other third parties retained by the Defendants.

2.    You shall respond to each Interrogatory fully, in writing and under oath, unless it is objected to, in which event the reasons for the objection shall be stated in lieu of a response. The responses are to be signed by the persons making them and the objections signed by the attorney making them in accordance with the Federal Rules of Civil Procedure.

3.    When asked to identify a "Person" or "Persons", or if the response involves a Person or Persons, for each natural Person please state the full name, business title and the current or last known home and business addresses and telephone numbers.  For all other

6

Persons, including businesses and Regulatory Agencies, please state the full name, current or last known address and telephone numbers. For Persons located outside of the United States, please state the full name, current or last known address and phone number of any office, and the name, address and telephone number of any agent or other representative located within the United States.

4.      When asked to identify a "Regulatory Agency", please state the full name, address and phone number of the Regulatory Agency and each Person at the Regulatory Agency who is the primary contact at that Regulatory Agency.

5.      For each Interrogatory, identify any Person(s) providing information and state whether the response is based on the personal knowledge of the Person(s) providing the information. If the response is not based on the personal knowledge of the Person(s) providing the information, identify the sources (e.g. Persons and Documents) of that information.

6.      When asked to identify a Communication, or if the response involves a Communication, for each Communication please state the parties to the Communication, the nature of the Communication (e.g., written, oral or recorded), the witnesses to the Communication and the substance of the Communication.

7.      When asked to identify a Document, or when a response involves a Document, please state the person who wrote, composed or created the Document, the intended recipients, the date originated, the date sent, the date received, all Persons having copies of the Document and the subject matter and content. In lieu of identifying a Document, a copy of the Document may be attached to these responses.

8.      When asked to "state" or "describe," please provide all principal or material facts about the subject matter of the Interrogatory, including a specification of dates of all events that

relate to the subject matter of the Interrogatory, identify all Persons with knowledge of the facts that relate to the subject matter, and identify all Documents that refer to, relate to or contain information concerning the subject matter.

9.    If you object to any Interrogatory, please set forth all reasons for the objection.  If you object to any part of any Interrogatory, please respond to the remaining part or parts completely.

10.    All Documents or information withheld or redacted on the grounds of privilege or attorney work product shall be described on a privilege log.  Any privilege logs shall be produced on a rolling basis and shall not delay the production of nonprivileged Documents or information because of the preparation of a privilege log, however, a privilege log for Documents redacted or information withheld on privilege or attorney work product grounds shall be promptly produced.  Privilege Logs shall be produced in both PDF and Excel Spreadsheet format, and shall contain, at least, the following information for each document withheld or redacted on the grounds of privilege or attorney client work product:  Bates Range, Date, Applicable Privilege, Subject, and Names associated with the Document (with Author, Recipient, Carbon Copy Recipient, and Blind Carbon Copy Recipient if apparent from the document).  For information regarding oral communications that is withheld on the grounds of privilege, please provide:  (i) the name of the Person making the Communication and the names of Persons present while the Communication was made and, where not apparent, the relationship of the Persons present to the Person making the Communication; (ii) the date and place of Communication; and (iii) the general subject matter of the Communication.

11.    This is a continuing request for discovery.  You are under a duty to supplement your response to and compliance with these Interrogatories if you obtain information upon the

8

basis of which you learn or have reason to believe (a) that your response or compliance was incorrect or incomplete when made, or (b) that your response or compliance, although correct and complete when made, is no longer correct and complete.

## III.   RELEVANT TIME PERIOD

Unless otherwise specified herein, these Interrogatories seek information originating in or concerning the time period of **January 1, 2006** through the present-day (the "Relevant Time Period").

## IV.   INTERROGATORIES

### INTERROGATORY NO. 1

Identify each Person that had primary responsibility for the testing, analysis, determination of the safety for consumption, and/or compliance with applicable contractual, regulatory or industry standards of the Recalled Pet Food.

### INTERROGATORY NO. 2

Identify each Person from whom Defendants purchased wheat gluten.

### INTERROGATORY NO. 3

Identify each supplier, manufacturer and/or distributor of wheat gluten used by Defendants in the Recalled Pet Food.

### INTERROGATORY NO. 4

Identify each Person who had responsibility for selecting the supplier or source of wheat gluten used by Defendants.

### INTERROGATORY NO. 5

Identify the Persons who were responsible for purchasing on behalf of Defendants any adulterd product that was used in or became part of the Recalled Pet Food.

**INTERROGATORY NO. 6**

      Identify each Person who had primary responsibility for quality control, including testing, analysis and/or compliance with contractual, regulatory and/or industry standards, for the wheat gluten used or procured by Defendants.

**INTERROGATORY NO. 7**

      Identify each Person that had primary responsibility for the Defendants for the testing, analysis, determination of the safety for consumption, and/or compliance with applicable contractual, regulatory or industry standards of any adultered Pet Food.

**INTERROGATORY NO. 8**

      Identify each Person who had primary responsibility for the Defendants' quality control, including testing, analysis and/or compliance with contractual, regulatory and/or industry standards for Pet Food, including the Recalled Pet Food.

**INTERROGATORY NO. 9**

      Identify each Person who conducted tests, analysis or studies that determined Defendants' Pet Food Product was adultered, the locations of the testing sites, and each Person responsible for the testing.

**INTERROGATORY NO. 10**

      Identify each Person, including but not limited to any laboratory, university, veterinary hospital, business or Regulatory Agency that conducted any tests or analysis that found any adulteration of any Pet Food Product that was manufactured, marketed, sold or distributed by any of the Defendants, including the Recalled Pet Food.

**INTERROGATORY NO. 11**

Identify each Person who participated in Defendants' decision to recall the Recalled Pet Food.

**INTERROGATORY NO. 12**

Identify each Regulatory Agency with whom Defendants had Communications with regarding adulterated Pet Food, including the Recalled Pet Food.

**INTERROGATORY NO. 13**

Identify each Person or entity who contacted any of the Defendants with a report or a complaint concerning any pet that may have become ill or died as a result of consuming any Recalled Pet Food.

**INTERROGATORY NO. 14**

Identify each owner of a pet that may have become ill or died as a result of consuming any Recalled Pet Food and the total number of such owners in each state.

**INTERROGATORY NO. 15**

Identify the existence, custodian, location and general description of all documents regarding or concerning any illness or death of any pet that may have been caused by consuming any Recalled Pet Food.

**INTERROGATORY NO. 16**

Identify each Person with whom Defendants settled or attempted to settle any claims or potential claims related to the Recalled Pet Food.

**INTERROGATORY NO. 17**

Identify each Pet Food that was manufactured, marketed, sold or distributed by Defendants that was adulterated.

11

**INTERROGATORY NO. 18**

Identify each public relations firm, advertising agency, and Industry Association with whom Defendants have communicated regarding the Pet Food Recall.

**INTERROGATORY NO. 19**

Identify the Person most knowledgeable about the collection of information from owners of pets in the United States that may have died or became ill as the result of consuming Recalled Pet Food.

**INTERROGATORY NO. 20**

Identify each Person who provided information, otherwise participated in or contributed to the preparation of the responses to these Interrogatories.

Dated: July 6, 2007                                  Respectfully submitted,

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**

_____
Gregory Mark Nespole
Martin E. Restituyo
270 Madison Avenue
New York, NY 10016
Telephone: 212-545-4600
Facsimile: 212-686-0114

**LARRY D. DRURY LTD.**
Larry D. Drury, Esq.
205 W. Randolph Street, Suite 1430
Chicago, IL 60606
Telephone: (312) 346-7950
Facsimile: (312) 346-5777

**PROGRESSIVE LAW GROUP, LLC**
Noah Golden-Krasner, Esq.
354 West Main Street
Madison, WI 53703
Telephone: (608) 258-8511
Facsimile: (608) 442-9494