## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: PET FOOD PRODUCTS LIABILITY LITIGATION | Civil Action No. 07-2867 (NLH) <br><br> MDL Docket No. 1850 |
| THIS DOCUMENT RELATES TO: <br><br> ALL CASES | **MEMORANDUM OF LAW IN SUPPORT OF MAJORITY PLAINTIFFS' MOTION FOR APPOINTMENT OF INTERIM CO-LEAD AND LIAISON COUNSEL PURSUANT TO FED. R. CIV. P. 23(G)** <br><br> Date: September 26, 2007 <br> Time: 11:00 a.m. <br> Courtroom: 3A <br><br> The Honorable Noel L. Hillman |

## I.    PRELIMINARY STATEMENT

The law firms of Wexler Toriseva Wallace LLP, Berger & Montague, P.C., Coughlin Stoia Geller Rudman & Robbins LLP, and Hagens Berman Sobol Shapiro LLP (collectively, the "Proposed Co-Lead Counsel") respectfully seek appointment as Interim Co-Lead Class Counsel on behalf of the putative class in this consolidated multidistrict litigation. These four firms represent the majority of the named plaintiffs in the consolidated cases. In addition, the majority of cases, the majority of law firms, and the majority of represented pet owners (and specifically named plaintiffs) involved in this litigation endorse the leadership structure proposed herein.

This case arises out of one of the most massive tainted food recalls ever seen. Defendant Menu Foods is a Canadian corporation doing business in the United States ("Recall"). Menu Foods is in the business of manufacturing, distributing, and/or selling pet food under a large variety of brands and labels. Many of the companies that purchased product from Menu Foods

Dockets.Justia.com

for resale have also been named in this litigation, including Procter & Gamble, Wal-Mart, Target, and Nutro Products. As of January 2007, Menu Foods supplied all of the private-label wet pet food products sold by 17 of the top 20 North American food retailers. Other defendants, such as Del-Monte Pet Products, are outside Menu Foods' distribution chain, but (like Menu Foods) used contaminated wheat gluten purchased from Las Vegas-based ChemNutra, Inc. in their pet food.

In March 2007, Menu Foods recalled more than 50 brands of dog food and more than 40 brands of cat food that had sickened and/or killed dogs and cats. Menu Foods reportedly produced the food during a three-month period between December 3, 2006 and March 6, 2007. Within a month after Menu Food's initial recall, four other pet food manufacturers initiated recalls of their products due to contamination – Hill's Pet Nutrition on March 30, 2007; Nestle Purina on March 31, 2007; Del Monte Pet Products on April 2, 2007; and Sunshine Mills, Inc. on April 5, 2007. The scope of the recalls expanded through May 2007 to include additional brand names and products.

The recall was initiated based on facts derived from Menu Foods' own "palatability" studies and complaints from consumers, distributors and retailers across the United States; extensive laboratory testing of the products; narcropsies of deceased pets; and investigation by the United States Food and Drug Administration of contaminated wheat gluten utilized by Menu Foods and imported by ChemNutra, Inc. from the Chinese company Xuzhou Anying Biologic Technology Development Co. Ltd. The initial Menu Foods recall comprised an astonishing 60 million units of pet food in pouches and sold under an estimated 100 brand names.

Within days of the recall, the first class action complaints were filed against Menu Foods and various affiliates in the distribution chain, including distributors, repackagers and retailers. Eventually, dozens of putative class actions were filed in federal and state courts throughout the country with approximately 270 named plaintiffs. Plaintiffs brought claims on behalf of all persons who purchased any cat or dog food that was produced by Menu Foods (or produced

2

and/or sold by any entity using melamine-contaminated wheat gluten or rice protein), and whose cat or dog became ill or died or sought veterinary treatment as a result of eating these products.

Pursuant to Rule 23(g), movants request an interim lead counsel structure consisting of the following four firms: Wexler Toriseva Wallace LLP, Berger & Montague, P.C., Coughlin Stoia Geller Rudman & Robbins LLP, and Hagens Berman Sobol Shapiro LLP.

In a case of this size and magnitude, the Class would be best served by the four firm leadership structure proposed. Not only do these firms represent and have the support of the majority of the named plaintiffs and co-counsel, they also have a proven track record of experience, knowledge and commitment of resources – which are unmatched by any alternate firm or consortium. Proposed Co-Lead Counsel have decades of experience litigating some of the largest class actions and complex litigation in the United States and have recovered billions of dollars in settlements on behalf of plaintiff classes. Attorneys for these firms, who are specifically dedicated to this litigation, include leaders of the class action bar who are nationally recognized for their efforts on behalf of plaintiffs in consumer class actions as well as other landmark class action cases. Their experience and resources ensure that they will be able to meet the demands of prosecuting this complex, multi-party case.

Importantly, the Proposed Co-Lead Counsel have also informally exercised cooperative and inclusive leadership in this case. In the period since the first cases were filed, this group of firms has collaborated with other plaintiffs' counsel (specifically seeking the input of firms filing competing interim lead counsel motions) and has worked both adversarially and, where possible, cooperatively with defense counsel to protect the interests of the putative class and to advance the litigation. Together, these firms will fairly and adequately represent class members and use their experience, knowledge and extraordinary resources to litigate this case efficiently and economically.

As described more fully below, it is in the best interest of the putative class for the Court to appoint Wexler Toriseva Wallace LLP, Berger & Montague, P.C., Coughlin Stoia Geller Rudman & Robbins LLP, and Hagens Berman Sobol Shapiro LLP as co-lead counsel  This

motion also proposes that Lisa J. Rodriguez, of Trujillo Rodriguez & Richards, LLC, be
appointed liaison counsel.

## II.    THE PROPOSED CO-LEAD AND LIAISON COUNSEL ARE BEST ABLE TO FAIRLY AND ADEQUATELY REPRESENT THE INTERESTS OF THE CLASS

FED. R. CIV. P. 23(g)(2)(A) permits the court to designate interim counsel "to act on
behalf of the putative class before determining whether to certify the action as a class action."
FED. R. CIV. P. 23(g)(2)(A). The judge "must choose the class counsel when more than one
class action has been filed and consolidated or centralized, or more than one lawyer seeks the
appointment." *Manual for Complex Litigation (Fourth)* § 21.272 (2005) (the "*Manual*").

FED. R. CIV. P. 23(g)(1)(C)(i) requires that to determine the appointment of class counsel,
the court must consider:

> [T]he work counsel has done in identifying or investigating potential claims in the
> action, counsel's experience in handling class actions, other complex litigation,
> and claims of the type asserted in the action, counsel's knowledge of the
> applicable law, and the resources counsel will commit to representing the class.

FED. R. CIV. P. 23(g)(1)(C)(i). The Court may also consider "any other matter pertinent to
counsel's ability to fairly and adequately represent the interests of the class." FED. R. CIV. P.
23(g)(1)(C)(ii). In this regard, courts have evaluated whether proposed interim class counsel
worked cooperatively with opposing counsel and the court and commands the respect of
colleagues. *Manual* § 10.224 (2004). While no single factor is determinative, *Manual* at §
21.272, "the court must appoint the applicant best able to represent the interests of the class."
*Allen v. Stewart Title Guar. Co.*, No. 06-cv-2426, 2007 U.S. Dist. LEXIS 1897, at *3-*4 (E.D.
Pa. Jan. 9, 2007) (quoting FED. R. CIV. P. 23(g)(2)(B)).

Here, approximately 204 of 270 (75%) named plaintiffs representing 71 of the 116 (61%)
cases pending in this litigation support the appointment of Wexler Toriseva Wallace LLP, Berger
& Montague, P.C., Coughlin Stoia Geller Rudman & Robbins LLP, and Hagens Berman Sobol
Shapiro LLP as interim co-lead counsel. These four firms enjoy support from the majority of
cases, the majority of law firms, and the majority of represented pet owners (and specifically

named plaintiffs) involved in this litigation ("Majority Plaintiffs"). The private ordering that led to this majority support required tremendous skill, diligence, and cooperation.

Proposed Co-Lead Counsel has from the outset displayed leadership, performed substantial work that has benefited the putative class and greatly influenced the course of this litigation. Furthermore, each firm possesses extraordinary qualifications, experience, and substantial resources. Together, the achievements and capacity of the Proposed Co-Lead Counsel far exceed any other applicant submitting a Rule 23(g) motion.

In addition, Ms. Rodriguez and her firm are eminently qualified and are well-respected both in this District and throughout the country as possessing the highest degree of expertise and professionalism. Additionally, the firm has served as liaison counsel in numerous class actions in both New Jersey Federal and State Courts. They have proven to be a highly effective and reliable resource for Proposed Co-Lead Counsel and Majority Plaintiffs.

A.    **Private Ordering Has Led To The Emergence of the Proposed Co-Lead and Liaison Counsel Firms**

"Private ordering" is a consensus building process for determining who among various attorneys should serve as interim lead counsel. *See generally Manual* § 21.272 (2004). The "private ordering" process has led to the leadership structure proposed in this motion.

Proposed Co-Lead Counsel has maintained majority support throughout this litigation and now has the support of approximately 204 of 270 (75%) named plaintiffs, 71 of 116 (61%) cases, and 60 of 106 (57%) plaintiffs' firms involved in this litigation.[1] In litigation of this magnitude, achieving this majority support from some of the most experienced, well-resourced plaintiffs' firms in the country is a significant achievement. Among the firms supporting Proposed Co-Lead Counsel are the most prominent plaintiffs' firms in the nation and are exceedingly qualified to serve as lead counsel in their own right. Several of the supporting firms

---

[1]    Attached as Exhibit A to the accompanying Appendix of Exhibits in Support of Majority Plaintiffs' Motion for Appointment of Interim Co-Lead and Liaison Counsel ("Appendix") is a detailed chart listing all plaintiff firms, and corresponding cases, supporting the leadership structure proposed by this motion.

have been retained by hundreds of clients residing throughout the United States, and have established relationships with animal rights advocacy groups. These firms have shown the utmost confidence in Proposed Co-Lead Counsel by choosing to allocate their talents and resources towards supporting Proposed Co-Lead Counsel's efforts to manage this litigation. *See* Appendix, Exh. A.

**B.    The Proposed Co-Lead Counsel Has Performed Substantial Work To Investigate Claims In This Case And Has Achieved Significant Benefits For The Class**

Proposed Co-Lead Counsel have been at the forefront of this litigation since the initial complaints were filed in March 2007. Proposed Co-Lead Counsel demonstrated early leadership in this litigation by coordinating plaintiffs' counsel throughout the nation and providing substantive research that both broadened and deepened counsels' understanding of the Recall and pending litigation.

Most importantly, Proposed Co-Lead Counsel initiated and has already achieved significant benefits for potential class members. Proposed Co-Lead Counsel filed numerous motions with both the Panel and the transferee court on behalf of the putative class. Courts have viewed such activity favorably in assessing motions to appoint lead counsel. *See, e.g., In re Verisign, In. Secs. Litig.*, No. C 02-02270 JW, 2005 U.S. Dist. LEXIS 10438, at *34 (N.D. Cal. Jan. 13, 2005) (appointing lead counsel based, in part, on the firm that performed "the most amount of work in this case." The court determined which firm performed the most work after a cursory review of the docket revealed that one firm filed "the vast majority of documents [] on behalf of Plaintiffs . . . "); *In re Cardinal Health, Inc. ERISA Litig.*, 225 F.R.D. 552, 556 (S.D. Ohio 2005) (appointing as lead counsel the firm that demonstrated a "consistent commitment to this case by filing several well-argued briefs with the Court on a range of issues, including consolidation versus coordination . . . "). Proposed Co-Lead Counsel's work, more than any other firm or group of firms, has positioned this litigation to secure maximum recovery and protections for aggrieved pet owners.

1.    **Proposed Co-Lead Counsel Convened All Plaintiffs' Counsel And Has Been The Primary Representative For Plaintiffs In Communications With Defense Counsel**

The Proposed Co-Lead Counsel made an early impact in this litigation by convening some of the most experienced and respected plaintiffs' firms in the nation. On April 11, 2007, in Chicago, Illinois, Proposed Co-Lead Counsel organized and presided over a meeting that included nearly every plaintiffs' firm that had filed cases concerning the pet food recall. *See* Appendix, Exh. B (Letter to All Plaintiffs' Counsel sent March 30, 2007). The Proposed Co-Lead Counsel convened this meeting to discuss the scope, nature, and direction of the litigation, as well as to begin sharing information collected during the first few weeks of the litigation. Given the magnitude of the Recall, Proposed Co-Lead Counsel believed it was critical to avoid overlapping efforts, to capitalize on the experience and resources of particular firms, and to proceed with the litigation as expeditiously as possible and at the outset of the case. This meeting consisted of approximately 60 attorneys representing over 30 plaintiffs' firms, most of whom attended by traveling to Chicago from other states. At least another 25 attorneys participated in this meeting by phone. All those in attendance received confidential materials prepared by Proposed Co-Lead Counsel, consisting of then-current information on root cause, Recall statistics, expert information, and current case and counsel listings.

The overwhelming attendance and participation at this meeting indicated plaintiffs' counsel's recognition of the importance of coordinating efforts. Many firms expressed gratitude that Proposed Co-Lead Counsel initiated this meeting and sought to coordinate work early in the litigation.

At this meeting, Proposed Co-Lead Counsel informed other plaintiffs' counsel that counsel for Menu Foods had made contacts with Proposed Co-Lead Counsel on several occasions in the weeks prior to the meeting. Proposed Co-Lead Counsel also reported to other plaintiffs' counsel on the substance of separate meeting they attended earlier in the morning with Menu Foods' counsel. Within the first few weeks of the litigation, Proposed Co-Lead Counsel and defense counsel had sustained an ongoing dialogue on such issues as Menu Foods' insurance

coverage, the rapid expansion of the Recall and corresponding litigation. All of this information was timely conveyed to other plaintiffs' counsel attending the meeting.

Proposed Co-Lead Counsel continued to communicate with defense counsel in the months following the meeting in Chicago to determine what, if any, agreements could be reached in order to proceed efficiently and in the best interest of class members. Proposed Co-Lead Counsel continued to keep other plaintiffs' counsel, who wished to be contacted, informed of these discussions through ongoing conference calls and periodic electronic communications. Inevitably in large-scale litigation, there is a small minority who choose to boycott Proposed Co-Lead Counsel's efforts to demonstrate leadership by "opting-out" of private ordering. Despite the occasionally obstructive efforts of these counsel, Proposed Co-Lead Counsel have persisted in acting in the best interests of the class and have proven their ability to build, maintain, and grow consensus.

**2.    The Proposed Co-Lead Counsel Filed and Argued Before The Panel To Designate The District Of New Jersey As The Transferee Forum**

Jared Workman and Mark and Monah Cohen, clients of Berger & Montague, P.C., were the first plaintiffs to file in the District of New Jersey, recognizing the unique nexus New Jersey had to the litigation. They filed on March 23, 2007. Soon after, Proposed Co-Lead Counsel advanced the consolidation and transfer of actions underlying this multidistrict litigation ("MDL"). Shirley Sexton, a client of Wexler Toriseva Wallace LLP, was the first movant in the MDL, filing her Motion for Transfer and Coordination or Consolidation under 28 U.S.C. § 1407 on March 26, 2007. Twelve plaintiffs represented by Hagens Berman filed their 28 U.S.C. § 1407 motion on March 28, 2007. Christina Troiano, a client of Coughlin Stoia, filed her 28 U.S.C. § 1407 motion on March 30, 2007. Although Proposed Co-Lead Counsel initially considered other transferee venues, Proposed Co-Lead Counsel quickly concluded that New Jersey had a distinct nexus to this litigation and became strong advocates for New Jersey as the transferee forum.

8

Proposed Co-Lead Counsel argued before the Panel on May 31, 2007 in Las Vegas on behalf of all other plaintiffs who favored this judicial District, which was a substantial majority. All original advocates of the District of New Jersey, including opponents of this motion, agreed that it was appropriate for Kenneth A. Wexler of Wexler Toriseva Wallace LLP to make the argument for New Jersey. Hagens Berman separately advocated New Jersey at the hearing. Due largely to Proposed Co-Lead Counsel's coordination of Majority Plaintiffs in the months leading up to the May 31, 2007 hearing and Proposed Co-Lead Counsel's presentation to the Panel, the Panel ordered that the then approximately 100 cases involved in this litigation be transferred to this District. *See*, Appendix Exh. C (Transfer Order, June 19, 2007).

### 3.   Proposed Co-Lead Counsel Has Achieved Substantial Protections For The Class

Proposed Co-Lead Counsel's efforts, specifically before this Court, have already resulted in significant protections for potential class members nationwide. These successes were a product of Proposed Co-Lead Counsel's strong relationship with Majority Plaintiffs and Proposed Co-Lead Counsel's ability to work productively and efficiently with defense counsel.

Proposed Co-Lead Counsel learned that Menu Foods, and later Procter & Gamble, were each contacting represented pet owners, offering to settle claims, and seeking releases from liability without providing essential information about ongoing litigation related to the Recall. In response, Proposed Co-Lead Counsel filed two separate motions with this Court to review and to consider potential curative communications. Proposed Co-Lead Counsel, with the aid of their co-counsel, succeeded in ceasing or limiting these communications, by presenting these important motions to the Court.

Specifically, on May 7, 2007, Proposed Co-Lead Counsel filed a Motion for Order to Show Cause Why a Protective Order to Supervise or Limit Communications with Absent Class Members Should Not Issue against Menu Foods in this Court.[2] In this motion, Proposed Co-

---

[2]   *See Workman et al. v. Menu Foods Ltd. et al.*, No. 1:07-CV-01338-NLD-AMD (D.N.J.). [Dkt. No. 10].

Lead Counsel provided alarming facts to the Court describing Menu Foods' extensive data collection campaign, a campaign which sought information from plaintiffs and class members regardless of their representation by counsel. Proposed Co-Lead Counsel informed the Court that Menu Foods elicited information from pet owners pertaining to: their social security numbers, the cause of their pet's death, veterinary information and expenses, pet's diagnosis and treatment information, pet food product information, and information on pet's pre-existing health condition and medications. In addition, Menu Foods asked pet owners to send opened and unopened pet food, as well as any documents describing veterinary visits and expenses (*i.e.*, evidence). Menu Foods' communications omitted material information concerning the potential impact on putative class members' legal rights, including their ability to participate in any class action settlement or judgment. Furthermore, Menu Foods was communicating with and sought information from pet owners who were already represented by counsel.

Proposed Co-Lead Counsel appeared before this Court on three occasions to argue that Menu Foods' communications campaign was harmful to the class and warranted immediate court intervention. The Court expressed deep concern over the facts Proposed Co-Lead Counsel presented to it:

> I am disturbed that plaintiffs, having raised this issue in its papers about such contacts, that [Menu Foods], represented by counsel, would not undertake efforts to exclude [represented] people from this mass mailing and not make efforts to exclude those people from subsequent efforts to contact them.

*See*, Appendix, Exh. D (Transcript, May 18, 2007, at 61-62). Defense counsel revealed to the Court that Menu Foods had sent communications to over 19,000 pet owners despite being aware that such communications were potentially improper. *Id.* at 44-46.

In response to the issues Proposed Co-Lead Counsel first brought to the Court's attention, the Court urged Proposed Co-Lead Counsel to suggest additional communications to clear up "anything about the prior communication that was in your view misleading or coercive, or otherwise violative of the general rules concerning communications with putative class

members." *Id.* at 82. Proposed Co-Lead Counsel immediately convened a number of Majority Plaintiffs to collaborate in drafting curative communications that would address the Court's concerns. Proposed Co-Lead Counsel submitted a draft to the Court on May 21, 2007.[3]

It is noteworthy that, while Proposed Co-Lead Counsel was actively addressing the concerns of this Court by developing curative communication, certain plaintiffs' counsel unsupportive of this Rule 23(g) motion drafted and submitted a letter to the Court to disrupt the curative process. *See*, Appendix, Exh. E (Letter of Michael Ferrara, May 22, 2007).[4]

Proposed Co-Lead Counsel appeared before the Court again on May 23, 2007 to discuss the curative letters. At this hearing, the Court reiterated its concerns over Menu Foods' communications with pet owners and described the communications as an "aggressive campaign to settle with as many putative class members as it can." *See*, Appendix, Exh. F (Transcript May 23, 2007, at 24-25). Menu Foods' Counsel demonstrated a willingness to reach an accord with plaintiffs to "shut down" Menu Foods' communications program. *Id.* at 34.

To that end, Proposed Co-Lead Counsel worked directly with Menu Foods' counsel late into the evening after the May 23 hearing and the following morning to negotiate an agreement regarding Menu Foods' future communications. Proposed Co-Lead Counsel and an attorney working with Blim & Edelson, LLC, Mr. Scott Kamber, provided input during the negotiations. The agreement reached by Proposed Co-Lead Counsel and Menu Foods' counsel was directly incorporated into the Court's Consent Order, entered on June 6, 2007. Thereafter, Proposed Co-Lead Counsel continued to provide defense counsel with important information to facilitate Menu Foods' compliance with the Consent Order. *See*, Appendix, Exh. G (Letter of Mark J. Tamblyn, June 4, 2007).

---

[3]    *See Workman et al. v. Menu Foods Ltd. et al.*, No. 1:07-CV-01338-NLD-AMD (D.N.J.). [Dkt. No. 20].

[4]    While other plaintiffs' counsel opposing this current motion did not initiate motions to protect potential class members, Proposed Co-Lead Counsel recognize and appreciate their meaningful efforts and contributions in their subsequent involvement in this motion practice. The firm of Blim & Edelson, LLC submitted several additional affidavits from its clients concerning communications they received from Menu Foods.

In addition, based on information obtained specifically by movant Hagens Berman Sobol Shapiro LLP, Proposed Co-Lead Counsel also determined that Procter & Gamble engaged in communications similar to that of Menu Foods. In response, Proposed Co-Lead Counsel, with substantial assistance from Newman Creed & Associates and their clients, again quickly initiated efforts to bring these improper communications to the Court's attention.[5] Proposed Co-Lead Counsel and the Newman Creed firm filed an Emergency Motion Pursuant to Federal Rule 23(d) For a Protective Order to Supervise or Limit Procter & Gamble's Communications with Class Members.[6]

On June 27, 2007, Proposed Co-Lead Counsel appeared before this Court to argue the motion and reached an agreement with Procter & Gamble's counsel to draft curative communications that could address the misleading information provided to putative class members. Proposed Co-Lead Counsel collaborated with Procter & Gamble's counsel over the course of several days to devise an appropriate curative response. The letters corrected erroneous information provided to pet owners by Procter & Gamble and fully inform pet owners of their legal rights and options for seeking redress. Proposed Co-Lead Counsel, together with defense counsel, filed these curative letters with the Court on July 5, 2007. *See*, Appendix, Exh. H (Letter to the Honorable Noel L. Hillman, July 5, 2007). These curative communications, now approved by the Court, were also intended to serve as a model communication for use by Menu Foods. Previously, on June 22, 2007, Proposed Co-Lead Counsel wrote to Menu Foods' counsel to begin the process of jointly crafting a curative communication. *See*, Appendix, Exh. I (Letter of Russell Paul, June 22, 2007).

It is noteworthy that, whereas Proposed Co-Lead Counsel investigated claims made by represented pet owners against Procter & Gamble, recognized the potential for Procter &

---

[5]    Proposed Co-Lead Counsel also acknowledge and appreciate assistance provided by Joseph DePalma of the firm Lite DePalma Greenberg & Rivas, LLC in the preparation and filing of this motion.

[6]    *See Sokolowski v. Menu Foods, Inc. et al.*, No. 1:07-CV-01709-NLH-AMD (D.N.J.). [Dkt. No. 7].

Gamble's communications to violate pet owners' legal rights, and immediately prepared a motion to limit Procter & Gamble's communications, other plaintiffs' counsel did "not share the concerns voiced by Plaintiff Todd Sokolowski." *See*, Appendix, Exh. J (Letter of Blim & Edelson, June 27, 2007). Other plaintiffs' counsel admit knowing that Iams communicated with pet owners represented by counsel, yet "was satisfied with [Iams'] explanation. . . . [and did] not understand Iams to have engaged in bad faith or acted otherwise improperly." *Id.* Rather than supporting Proposed Co-Lead Counsel's efforts to bring improper communications to this Court's attention, other plaintiffs' counsel chose to correspond with this Court for the sole purpose of criticizing the speed with which Proposed Co-Lead Counsel responded to pet owners' claims and to accuse Proposed Co-Lead Counsel of acting "for the purpose of positioning than for any substantive reason." *Id.*

However, despite the antagonistic maneuvering by other plaintiffs' counsel, Proposed Co-Lead Counsel included the opponents of this motion in their discussions with Procter & Gamble's counsel. Proposed Co-Lead Counsel worked alongside other plaintiffs' counsel, who originally "did not share the concerns," to craft these curative letters. Though efforts by other plaintiffs' counsel might have originally been misplaced, Proposed Co-Lead Counsel recognizes their contributions to develop the instructive language contained in these letters after realizing that the Court shared Proposed Lead-Counsel's concerns.

At a hearing on July 6, 2007 to review the proposed curative letters, this Court explicitly acknowledged the work performed in response to the motion initiated by Proposed Co-Lead Counsel.

> THE COURT: First of all, let me thank all of you for your efforts to reach a resolution. This helps advance the ball substantially, and it's appreciated by me personally, and I think for the efficient adjudication of these various matters that this is as I said a significant advance, so thank all of you.

*See*, Appendix, Exh. K (Transcript of Telephone Conference Call, July 6, 2007, at 4:8-14). This Court also expressed appreciation at Proposed Co-Lead Counsel's commitment to ensuring other plaintiffs' counsel had an opportunity to respond to the proposed curative letters. *Id.* at 8:5-10,

25:8-13.

Similar to Proposed Co-Lead Counsel's efforts regarding Menu Foods' communications, Proposed Co-Lead Counsel efforts on behalf of Procter & Gamble's consumers again resulted in substantial protections for putative class members. Proposed Co-Lead Counsel's numerous achievements in this litigation are indicative of this coalition's strong leadership, experience and interest in working collaboratively with each other, Majority Plaintiffs, other plaintiffs' counsel and defense counsel.

### C.    Proposed Co-Lead Counsel Have Acted In a Lead Role in Ongoing Discussions with Defense Counsel

Proposed Co-Lead Counsel's leadership and proven ability to work with other parties have led to continuous communications with defense counsel concerning several important issues in the case. Courts have held that counsel's ability to work cooperatively with opposing counsel and the court is a consideration for appointing interim class counsel. *See*, *e.g.*, *Manual* § 10.224 (2004). Furthermore, Proposed Co-Lead Counsel has attempted to elevate the tenor of the overall litigation by forming productive relationships with other plaintiffs' counsel who at times have been unsupportive of Proposed Co-Lead Counsel's efforts in this litigation.

Proposed Co-Lead Counsel have represented Majority Plaintiffs and coordinated with other plaintiffs' counsel in meetings with defense counsel as early as April 11, 2007, when Proposed Co-Lead Counsel discussed potential transferee forums and discussed the magnitude of the litigation with Menu Foods' defense counsel. Since that time, Proposed Co-Lead Counsel has met directly with defense counsel on several occasions, and has frequently conferred with the defense by phone. Each of these meetings bolstered trust and confidence between all parties. In the past few weeks, defense counsel contacted Proposed Co-Lead Counsel directly to discuss evidence preservation matters. These discussions are continuing. Proposed Co-Lead Counsel

has included other plaintiffs' counsel in these discussions and they are continuing in an efficient

manner towards a resolution that will likely benefit all parties.

### D.    The Proposed Co-Lead Counsel Is Comprised Of Some Of The Most Experienced And Reputable Firms In The Plaintiffs' Bar

Proposed Co-Lead Counsel anticipated the need for a cohesive group of some of the most

talented and well-resourced plaintiffs' firms in the country in order to meet the demands of this

complex litigation.  Each of the four firms included in the Proposed Co-Lead Counsel has

decades of experience representing plaintiffs in class actions, complex litigation, and litigating

consumer protection claims.  Furthermore, the combined capacity and credentials of these four

firms make them uniquely equipped to manage this litigation as interim co-lead counsel.  They

will continue the cooperative approach with all plaintiffs' counsel that they have exhibited from

the outset of the litigation, including through the establishment of working committees that will

incorporate all interests.  *See, Manual for Complex Litigation* (Fourth), § 10.221 (2204).

#### 1.    Wexler Toriseva Wallace LLP

Wexler Toriseva Wallace LLP ("Wexler") has a well-established reputation for

prosecuting with success some of the most complex and innovative class action lawsuits in the

country.  *See* Declaration of Kenneth A. Wexler Regarding Majority Plaintiffs' Motion for

Appointment of Interim Co-Lead Counsel and Liaison Counsel Pursuant to FED. R. CIV. P. 23(g)

("Wexler Decl."), Exh. A (Wexler firm resume).  Wexler maintains offices in Chicago, Illinois,

Sacramento, California and Wheeling, West Virginia, which together are exclusively dedicated

to representation of injured consumers, victims of unfair competition and violations of antitrust

laws, and those harmed by defective products.

The following lists a few of Wexler's recent representative actions:

- *In re Pharmaceutical Indus. Average Wholesale Price Litig.*, MDL No. 1456 (D. Mass).  WTW was appointed co-lead counsel after the consolidation of fourteen (14) nationwide class actions against pharmaceutical manufacturers.  Defendant drug companies allegedly published fictional prices, called Average Wholesale Prices ("AWPs") that resulted in overpayment by consumers and third party payors.  WTW was a critical part of the trial team against four of the largest defendants in the

litigation. Judge Patti B. Saris of the District of Massachusetts recently approved a settlement with a single defendant for $70 million. Judge Saris praised WTW and their co-counsel at final approval of the settlement, saying that she wanted "to express appreciation again to class counsel for taking this case."

- *Paxil® (Nichols v. SmithKline Beecham Corp.*, Case No. 00-CV-6222 (E.D. Pa).) WTW served as co-lead counsel in this case involving alleged efforts by GlaxoSmithKine, including "sham" patent litigation, to keep generic versions of Paxil® off the market. This case is believed to be one of the first, *if not the first*, to allege misuse of patents to delay generic competition in a pharmaceutical market brought under Section 2 of the Sherman Act rather than Section 1. The case settled for $65 million in cash. The favorable response to this hard-fought settlement was overwhelming -- over 60,000 consumers filed claims.

- *In re Hypodermic Prods. Antitrust Litig.*, MDL No. 1730 (D.N.J.). WTW was appointed co-lead counsel in this MDL litigation on behalf of pharmacies and other indirect purchasers of hypodermic products manufactured by Becton Dickenson, such as disposable syringes and associated needles, disposable blood collection tubes and holders, IV catheter devices and their associated needles. This case is pending before the Honorable Jose L. Linares.

- *In re Webloyalty .com, Inc., Marketing and Sales Practices Litig.*, MDL No. 07-01820-JLT (D. Mass.). WTW plays a lead role in this consumer MDL litigation concerning deceptive internet marketing and selling strategies, unauthorized charges on consumers' credit cards, and non-cancellation of memberships. This case is currently pending in the District of Massachusetts, before the Honorable Joseph L. Tauro.

- *In re Live Concert Antitrust Litig.*, MDL No. 1745 (C.D. Cal.). WTW serves as co-lead class counsel in this MDL litigation pending in the Central District of California. This antitrust class action seeks damages and injunctive relief on behalf of all purchasers of tickets to rock concerts promoted by Clear Channel.

- *In re BP Prods. North America, Inc. Antitrust Litig.*, MDL No. 1801 (N.D. Ill.). WTW was appointed co-lead counsel in this MDL litigation against BP Products North America, Inc. WTW represents indirect purchasers of propane who were injured by BP's unlawful manipulation of the price of TET physical propane after it cornered the TET propane market in February 2004.

- *Online Merchant Systems, LLC v. Overture Services, Inc. and Yahoo, Inc.*, No. 05-4833 (C.D. Cal.). WTW served co-lead counsel in this consumer class action on behalf of an online advertiser asserting that Yahoo's online advertising system caused online advertisers to pay more than they otherwise would have for the same advertising space, and that the class's bidding behavior was altered as a result of Yahoo's unlawful conduct. Plaintiffs recently obtained a favorable settlement in this matter.

*See*, Wexler Decl., Exh. A.

### 2.    Berger & Montague, P.C.

Berger & Montague has been engaged in the practice of complex and class action litigation from its Philadelphia office for over 35 years. The firm has been recognized by courts throughout the country for its ability and experience in handling major complex litigation, particularly in the fields of securities, antitrust, mass torts, civil and human rights, and consumer litigation. In numerous precedent-setting cases, the Berger firm has played a principal or lead role. The firm has achieved the highest possible rating by its peers and opponents as reported in Martindale-Hubbell. Currently, the firm consists of 66 highly qualified lawyers; 18 paralegals; several professional investigators; and an experienced support staff.

Berger & Montague has extensive experience in handling class actions and in handling claims of the type asserted in this particular action. The firm has been involved in a series of notable class actions, some of them among the most important in the last 35 years of civil litigation. For example, the firm was one of the principal counsel for plaintiffs in the Drexel Burnham Lambert/Michael Milken securities and bankruptcy litigation. Claimants in these cases recovered approximately $2 billion in the aftermath of the collapse of the junk bond market and the bankruptcy of Drexel in the late 1980's. The firm was also among the principal counsel engaged in the trial of the Exxon Valdez Oil Spill in Anchorage, Alaska, a trial resulting in a record punitive damages award of $5 billion against Exxon. Berger & Montague was lead counsel in the School Asbestos Litigation, in which a national class of secondary and elementary schools recovered in excess of $300 million to defray the costs of asbestos abatement. The case was the first mass tort property damage class action certified on a national basis.

Berger & Montague has extensive experience and a considerable reputation in the area of consumer class actions, as evidenced by the following list of representative cases:

- *In re Educational Testing Service Praxis Principles of Learning and Teaching: Grades 7-12 Litigation*: The firm served on the plaintiffs' steering committee and obtained an $11.1 million settlement on behalf of persons who were incorrectly scored on a teacher's licensing exam. (MDL No. 1643 (E.D. La. 2006))

- *Block v. McDonald's Corporation*: The firm served as co-lead counsel and obtained a settlement of $12.5 million with McDonald's stemming from its failure to disclose the use of beef fat in its french fries. (No. 01-CH-9137 (Cir. Ct. Cook Cty., Ill. 2002))

- *Fitz, Inc. v. Ralph Wilson Plastics Co.*: The firm served as sole lead counsel and obtained, after 7 years of litigation, a claims-made settlement whereby fabricators could obtain full recoveries for their losses resulting from defendants' defective contact adhesives. (No. 1-94-CV-06017 (D.N.J. 2000))

- *Parker v. American Isuzu Motors, Inc.*: The firm served as sole lead counsel and obtained a claims-made settlement whereby class members recovered up to $500 for economic damages resulting from accidents caused by faulty brakes. (No. 3476 (CCP Phila. Cty. 2007))

- *Crawford v. Philadelphia Hotel Operating Co.*: The firm served as co-lead counsel and obtained a claims-made settlement whereby persons who contracted food poisoning at a business convention recovered $1,500 each. (No. 040300070 (CCP Phila. Cty. 2005))

- *In re TJX Companies Retail Security Breach Litigation*: The firm is currently serving as co-lead counsel in this pending litigation brought on behalf of persons and entities whose personal and financial data was compromised in the largest computer theft of personal data in history. (No. 1:07-cv-10162-WGY, D. Mass. 2007)

Berger & Montague is also renown in the areas of securities litigation, having been co-lead counsel in the Melridge Securities Litigation in the Federal District Court in Oregon, in which an $88.2 million jury verdict was obtained, and having served as lead counsel in numerous other major class action cases, including those against Waste Management (settlement for investors of $220 million) and Rite Aid (settlements totaling $334 million), to name only two.

In addition to its distinction in securities litigation, the firm has served as lead or co-lead counsel on many of the most significant civil antitrust cases over the last 30 years, including *In*

*re Corrugated Container Antitrust Litigation* (recovery in excess of $366 million), the Infant

Formula case (recovery of $125 million), and the Retail Drug price fixing case (settlement of

more than $700 million). More recently, the firm, through its membership on the litigation

Executive Committee, helped to achieve a $1.25 billion settlement with the largest Swiss banks

on behalf of victims of Nazi aggression whose deposits were not returned after the Second World

War. The firm has also played an instrumental role in bringing about a $4.37 billion settlement

with German industry and government for the use of slave and forced labor during the

Holocaust.

The *National Law Journal* in October, 2005 selected Berger & Montague as one of the 12

top plaintiffs' litigation firms in the U.S. based on its most recent performance and its track

record of successes in the last 3-to-5 year period. *See* Savett Decl., Exh. A.

### 3.    Coughlin Stoia Geller Rudman & Robbins LLP

As demonstrated by Coughlin Stoia's firm resume and numerous commendations by

federal district court judges throughout the nation, a true and correct which is attached to the

accompanying Declaration of Paul J. Geller as Exhibit A, Coughlin Stoia has substantial and

extensive experience in complex class action litigation and has successfully represented plaintiffs

in such actions throughout the nation.

Coughlin Stoia is a 180-lawyer law firm with offices in San Diego, San Francisco, Los

Angeles, New York, Long Island, Boca Raton, Washington, D.C., Houston, and Philadelphia

(www.csgrr.com). The firm is actively engaged in complex litigation, emphasizing securities,

consumer, privacy, insurance, healthcare, human rights, employment discrimination and antitrust

class actions. Coughlin Stoia's unparalleled experience and capabilities in these fields are based

upon the talents of its attorneys who have successfully prosecuted virtually thousands of class

action lawsuits. As a result, Coughlin Stoia attorneys have been responsible for recoveries of

*more than $45 billion* for hundreds of thousands of class members.

Some of the firm's current consumer cases include:

- *HMO Emergency Services Compensation Litigation.* Coughlin Stoia has been at the forefront of one of the most important cases concerning the amount of payments made by HMOs to Florida physicians who perform emergency services to HMO patients. The class actions brought on behalf of non-contracting Florida health care providers allege that four of the largest HMOs operating in Florida have repeatedly and unlawfully reduced the amount of payments made to these providers despite in violation of Florida law.

- *Home Loan Lenders Overcharging Consumers.* Coughlin Stoia attorneys represent customers of Wells Fargo, Washington Mutual and Countrywide, alleging that these banks have improperly overcharged home-loan customers hundreds of dollars for work that costs only a few dollars per loan.

- *Dell's Bait and Switch Scheme.* Plaintiffs have sued Dell, Inc. and its financing partners, Dell Financial Services and CIT Bank, in connection with their bait and switch sales and financing practices. The class action complaint alleges that Dell uses its advertisements to lure customers in, promising low-price computers. At the point of sale, Dell engages in one of several bait and switch schemes, including substituting lesser quality computer components for those ordered and paid for by customers, increasing the purchase price without adequate notice to customers, and canceling orders when Dell does not want to honor advertised deals. This class action also alleges illegal financing behavior, including Dell switching or failing to adequately disclose the terms of Dell's financing agreement, including less favorable financing plans, hidden charges and fees, and much higher interest rates.

- *eBay Shill Bidding Litigation.* Coughlin Stoia attorneys represent a plaintiff and class members in litigation against auction company eBay. The class action alleges unlawful shill bidding by eBay in its online auctions. Plaintiff alleges that eBay's practice of increasing winning bids, when an eBay customer uses eBay's proxy bidding tool, violates numerous California auction and consumer laws.

- *Cellphone Termination Fee Cases.* Coughlin Stoia attorneys are co-lead counsel in a lawsuit against the six major wireless telephone service providers in California. The plaintiffs allege that the early termination fee provisions in defendants' contracts are illegal penalties under California Law, designed to unfairly tether consumers to long term contracts and prevent customers from changing their wireless service providers.

- *Tenet Healthcare Cases.* Coughlin Stoia attorneys are co-lead counsel in a class action alleging a fraudulent scheme of corporate misconduct, resulting in the overcharging of uninsured patients by the Tenet chain of hospitals. The firm's

> attorneys represent uninsured patients of Tenet hospitals nationwide who were
> overcharged by Tenet's admittedly "aggressive pricing strategy" which resulted in
> price gouging of the uninsured. Judge McCoy of the Los Angeles, California
> Superior Court granted preliminary approval of a settlement between plaintiffs
> and Tenet.

Coughlin Stoia is also lead counsel in the massive securities fraud class action *In re
Enron Corp. Secs Litig.*, Case No. H-01-3624 (S.D. Tex.) pending against Enron Corp.
("Enron") and other responsible parties. In appointing Coughlin Stoia sole lead counsel to
represent the interests of Enron investors, the Court found that the firm's zealous prosecution and
level of "insight" set it apart from its peers. Ever since, Coughlin Stoia and lead plaintiff The
Regents of the University of California have aggressively pursued numerous defendants,
including many of Wall Street's biggest banks and law firms. Despite each defendant's claim
that as a matter of law it could not be found liable for plaintiffs' losses, Coughlin Stoia and The
Regents have thus far obtained settlements in excess of $7.2 billion for the benefit of investors.

### 4.    Hagens Berman Sobol Shapiro LLP

Hagens Berman Sobol Shapiro LLP ("Hagens Berman") has substantial and extensive
experience in complex class action litigation, including consumer class actions, as well as
complex commercial litigation and has successfully represented plaintiffs in such actions
throughout the nation. Hagens Berman has offices in Boston, Chicago, Los Angeles, Phoenix,
San Francisco and Seattle. In the majority of its cases, Hagens Berman plays a principal or lead
role.

Since its founding in 1993, Hagens Berman .has represented plaintiffs in securities,
investment fraud, product liability, tort, antitrust, consumer fraud, employment, environmental,
civil and human rights, and ERISA cases. HBSS is particular skilled at managing multi-state and
nationwide class actions through an organized, coordinated approach that implements an

efficient and aggressive prosecutorial strategy in order to place maximum pressure on the defendants.

This year Hagens Berman was identified as one of the nation's leading plaintiffs' law firms when it was recognized by the National Law Journal ("NLJ") as such and placed on NLJ's "Plaintiffs Hot List." The National Law Journal named the firm's managing partner, Steve Berman, who leads the firm's efforts on behalf of the class in this case, as the top litigator in the state of Washington in April 2000. He has been named one of the nation's 100 most influential lawyers on multiple occasions.

The following is a representative list of Hagens Berman's role in nationwide class actions, including consumer class actions. Hagens Berman's experience is more fully set forth in its firm resume, attached to the Declaration of Steve W. Berman ("Berman Decl.") as Exhibit A.

- *In re Pharmaceutical Indus. Average Wholesale Price Litig.:* Hagens Berman was appointed co-lead counsel after the consolidation of numerous nationwide class actions against pharmaceutical manufacturers. The suit claims that since the earl 1990s, most of the nation's major pharmaceutical companies have engaged in the fraudulent reporting of fictitious average wholesale price (AWP) for certain prescription pharmaceuticals. The fictitious AWPs result in inflated drug prices and billions of dollars in illegal profits reaped at the expense of American consumers. In this role, Hagens Berman has negotiated and settled with several defendants and served as lead counsel in a month-long trial against several defendants. The case in ongoing. (MDL No. 1456 (D. Mass))

- *In re Visa-MasterCard Antitrust Litigation:* Hagens Berman served as co-lead counsel and recovered the largest antitrust settlement in history, valued at $ 27 billion. (CV-96-5238-JG-MJM (E.D.N.Y. 2003)).

- *Enron ERISA Litigation*: Hagens Berman was appointed co-lead counsel in the ERISA litigation that recovered in excess of $ 350 million on behalf of former Enron employees. (No. H-01-3913 (S.D. Tex.)).

- *Tenet Healthcare Litigation:* Hagens Berman obtained a settlement – the first of its kind – on behalf of a class of 2 million uninsured patients in 19 services. (JCCP No. 4289 (Sup. Ct. of Cal., Los Angeles County)).

- *In re Boeing Securities Litigation:* Hagens Berman served as co-lead counsel in this case that resulted in a $ 92.5 million settlement on behalf of Boeing stockholders. (No. C-97-1715-TSZ (W.D. Wash. 2001)).

As part of its identification and investigation of potential claims on behalf of the class, early on Hagens Berman associated with the Animal Law Offices of Adam P. Karp. Mr. Karp's unique practice, devoted to animal law, will benefit the class. Mr. Karp filed one of the first class action cases against Menu Foods arising out of the contaminated pet food, *Sugget v. Menu Foods, Iams Company and Eukanuba,* CV 07-00457 RSM (W.D. Wash.). Mr. Karp is a Bellingham, Washington attorney with extensive experience in the area of animal rights, including animal injury and death. He is a nationally-recognized leader in the developing field of animal law. Mr. Karp is a frequent speaker and author on animal law topics throughout the United States. He has also lectured on animal law and the Harvard, Vanderbilt, Yale and Vermont law schools. Mr. Karp is a regular guest on radio and television programs related to legal issues related to pet loss. One relevant area Mr. Karp's work has focused on is the valuation of companion animals. A copy of the firm resume of the Animal Law Offices of Adam P. Karp is attached to the Berman Declaration as Exhibit B. Mr. Karp supports the appointment of the Proposed Co-Lead Counsel. See, Appendix, Exh. A.

### 5.    Trujillo Rodriguez & Richards, LLC

Trujillo Rodriguez & Richards LLC is a small firm with a big firm practice. The Firm and its lawyers have repeatedly made headlines for successful representation of clients in complex matters. For example, the Firm obtained a widely reported judgment of $120 million against Thorn Americas, Inc., in the New Jersey Superior Court. The Firm also represented concerned citizens in negotiating a settlement of potential environmental claims. The settlement resulted in the creation of a program to abate the discharge of pollutants into the rivers and creeks in the Philadelphia area. The Firm also has an active antitrust practice. For example, the Firm's lawyers obtained a $50 million settlement as co-lead counsel in a multi-district antitrust

23

matter involving the pricing of laser vision correction procedures. In the securities area, the Firm most recently served as co-counsel for the Pennsylvania Public School Employers' Retirement System, the Pennsylvania State Employers' Retirement System, the State Workers' Insurance Fund and the Tobacco Settlement Investment Board in litigation arising from the funds' purchase of Time Warner and AOL securities, which resulted in a $23 million settlement for the funds.

Trujillo Rodriguez & Richards, LLC also has extensive experience and reputation in consumer class actions, a representative list includes:

- *Thorn v. Rent-A-Center*:
  The Firm served as co-lead counsel in an action against this rent-to-own company who charged exorbitant prices for consumer goods, obtaining a $120 million judgment.

- *Muhammad v. County Bank of Rehoboth Beach, Delaware*:
  The Firm serves as co-lead counsel on behalf of consumers challenging the lending practices of pay-day lenders. Recently, the Supreme Court of New Jersey struck down the Lender's contracts finding the class action arbitration bar to be unconscionable.

- *Agostino v. Quest*:
  The Firm is currently serving as co-counsel in this case challenging the billing practices of the countries largest laboratory testing facility.

- *Dal Ponte v. American Mortgage*:
  The Firm is co-lead counsel in this case and has recently reached a settlement with defendant to recover improperly charged loan origination points.

- *Little v. Kia Motors*:
  The Firm is currently serving as New Jersey counsel in this certified class action against Kia to recover for the faulty brake system which effects the automobiles' use, value and safety.

In addition, Ms. Rodriguez regularly serves as liaison counsel in actions pending in New Jersey, including:

*In re Mercedes Benz Antitrust Litigation,* (D.N.J.), *In re Electrical Carbon Antitrust Litigation* (D.N.J.) and *In re Bulk Graphite Products Antitrust Litigation* (D.N.J.); *Furstenau v. AT&T Corp.* (D.N.J.); *In re Honeywell ERISA Litigation* (D.N.J.); and *In re Merck/Vioxx/ERISA Litigation* (D.N.J.).

III.  **CONCLUSION**

For the foregoing reasons, Majority Plaintiffs respectfully request that, pursuant to

Federal Rule 23(g), this Court appoint Wexler Toriseva Wallace LLP, Berger & Montague, P.C.,

Coughlin Stoia Geller Rudman & Robbins LLP, and Hagens Berman Sobol Shapiro LLP as

interim co-lead counsel on behalf of the putative Class.  Majority Plaintiffs also respectfully

request that this Court appoint Trujillo Rodriguez & Richards, LLC as liaison counsel.

Dated:  September 5, 2007                      Respectfully submitted,

**TRUJILLO RODRIGUEZ & RICHARDS LLC**

By: _____ /s Lisa J. Rodriguez _____
Lisa J. Rodriguez
8 Kings Highway West
Haddonfield, NJ 08033
Telephone:  (856) 795-9002
Facsimile:  (856) 795-9887

***Proposed Liaison Counsel for Plaintiffs***

Kenneth A. Wexler
Mark J. Tamblyn
**WEXLER TORISEVA WALLACE LLP**
55 West Monroe Street, Suite 3300
Chicago, IL 60603
Telephone:  (312) 346-2222
Facsimile:  (312) 346-0022

Sherrie R. Savett
Russell D. Paul
**BERGER & MONTAGUE PC**
1622 Locust Street
Philadelphia, PA 19103
Telephone:  (215) 875-3000
Facsimile:  (215) 875-4604

Paul J. Geller
Stuart A. Davidson
**COUGHLIN STOIA GELLER RUDMAN &
ROBBINS LLP**
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL 33432-4809
Telephone: (561) 750-3000
Facsimile: (561) 750-3364

Steve W. Berman
Jeniphr Breckenridge
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

***Proposed Interim Co-Lead Counsel for Plaintiffs***