# EXHIBIT E

Dockets.Justia.com

xaMay. 22. 2007; 3:03PM    0056                    (FAX)415576177dNo. 2686    P. 2/41/003

# Audet & Partners, LLP

### Attorneys-at-Law

221 Main Street, Suite 1460
San Francisco, CA 94105
Telephone: 415.568.2555
Facsimile: 415.568.2556
Toll Free: 800.965.1461
www.audetlaw.com

## FACSIMILE TRANSMISSION COVER SHEET

| | | |
|---|---|---|
| **TO:** | Telephone No. | Fax No. |
| Lisa J. Rodriguez | (856) 795-9002 | (856) 795-9887 |

**FROM:** William M. Audet

**DATE:** May 22, 2007

**TOTAL PAGES: 3**
*(including this cover page)*

**RE:** *Workman, et al. v. Menu Foods, et al.*, 07-cv-1338

## FACSIMILE CONFIDENTIALITY NOTICE

The documents accompanying this facsimile transmission may contain confidential information which is legally privileged. The information is intended only for the use of the individual or entity named below. If you are not the intended recipient, or the person responsible for delivering it to the intended recipient you are hereby notified that any disclosure copying distribution or use of any of the information contained in this transmission is strictly PROHIBITED. If you have received this transmission in error, please immediately notify us by telephone and mail the original transmission to us. Thank you.

# THE
# FERRARA
# LAW FIRM

**LAWYERS HELPING PEOPLE
SINCE 1971**

Michael A. Ferrara, Jr., Esquire+
Niki A. Trunk, Esquire

+Certified by The Supreme Court Of
New Jersey as a Certified Civil Trial
Attorney

+Board Certified in Civil Trial Law By
The National Board of Trial Advocacy

All Attorneys Are Admitted to Practice
In New Jersey and Pennsylvania.

May 22, 2007

**VIA HAND DELIVERY**

The Honorable Noel L. Hillman
United States District Court
District of New Jersey
Mitchell H. Cohen U.S. Courthouse
1 John F. Gerry Plaza, Room 6020
Camden, NJ 08101

Re:    **Workman, et al. v. Menu Foods, et al.**
       **Case No.:   07-cv-1338**

Dear Judge Hillman:

My firm serves as local counsel with a number of firms that have filed class action cases throughout the United States, including this District. We wish to address to the Court our concerns with the current proposed "solicitation" letter submitted by a limited number of Plaintiffs' counsel.

Without notifying my firm (and dozens of other firms with pending class cases in this and other Districts), a limited number of Plaintiffs' counsel unilaterally filed the current motion before your Honor. While we have no objection to certain aspects of the motion, from our viewpoint, the proposed letter submitted by a limited number of self-selected counsel (who have yet to obtain any court-approved leadership role) may create more problems than it solves.

For example, a number of the firms listed as signatories to the letter apparently have been included in this self-appointed leadership structure for "political" reasons undisclosed to this Court. To allow a self-selected group of firms to be the "only" plaintiffs' firms listed as signatories to such an important letter is totally inappropriate.

601 Longwood Avenue
Route 38 & Longwood Avenue
Cherry Hill NJ 08002

**Phone: 856.779.9500
Toll Free 877.NJLEGAL
Fax: 856.661.0369**

Website: www.ferraralawfirm.com

mferrara@ferraralawfirm.com
ntrunk@ferraralawfirm.com

The Honorable Noel L. Hillman
May 22, 2007
Page 2

As such, on behalf of my firm's clients (as well as the dozens of other firms intentionally excluded from this process), we object to the distribution of the proposed letter to class members without full and fair representation by all counsel with pending MDL cases.

Very respectfully,

Michael A. Ferrara, Jr.

cc:    William M. Audet, Esquire
       Scott A. Kamber, Esquire
       Lisa J. Rodriquez, Esquire
       Jason Holfield, Esquire
       Frank Jablonski, Esquire
       Jeremy Hutchinson, Esquire
       Thomas M. Ferlauto, Esquire
       John Blim, Esquire
       Larry Drury, Esquire
       Gerald H. Hanson, Esquire

# EXHIBIT F

*1*

```
 1              UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW JERSEY
 2

 3     _____

       JARED WORKMAN, ET AL,
 4
               PLAINTIFFS,          CIVIL ACTION NUMBER:
 5
                 -vs-                     07-1338
 6
       MENU FOODS,
 7
               DEFENDANT.
 8     _____
              MITCHELL H. COHEN UNITED STATES COURTHOUSE
 9            ONE JOHN F. GERRY PLAZA
              CAMDEN, NEW JERSEY 08101
10            MAY 23, 2007

11     B E F O R E:       THE HONORABLE NOEL L. HILLMAN
                          UNITED STATES DISTRICT JUDGE
12
       A P P E A R A N C E S:
13
       TRUJILLO RODRIGUEZ & RICHARDS, LLC
14     BY: LISA J. RODRIGUEZ, ESQUIRE

15     BERGER & MONTAGUE
       BY: RULLELL D. PAUL, ESQUIRE
16
       WEXLER TORISEVA WALLACE
17     BY: KENNETH A. WEXLER, ESQUIRE

18     THE FERRARA LAW FIRM
       BY: MICHAEL A. FERRARA, JR., ESQUIRE
19
       KAMBER & ASSOCIATES, LLC
20     BY: SCOTT A. KAMBER, ESQUIRE.
       ATTORNEYS FOR THE PLAINTIFFS
21
       HILL WALLACH
22     BY: GERALD H. HANSON, ESQUIRE

23     PRETZEL & STOUFFER
       BY:  EDWARD B. RUFF, ESQUIRE
24     ATTORNEYS FOR THE DEFENDANT
                              LISA MARCUS, CSR, CRR
25                            OFFICIAL COURT REPORTER
                              NEW JERSEY CSR # 1492
```

*UNITED STATES DISTRICT COURT*

*CAMDEN, NEW JERSEY*

---

*2*

```
 1          DEPUTY CLERK:  ALL RISE.

 2          THE COURT:  GOOD AFTERNOON, EVERYONE.  PLEASE BE

 3   SEATED.

 4          I'LL TAKE APPEARANCES IN A MINUTE.  THERE'S NOT NEARLY

 5   AS MANY PEOPLE OUT THERE AS I WAS LED TO BELIEVE.  I THOUGHT

 6   WE WOULD BE SWARMED.  ARE THEY HIDING SOMEWHERE?  ARE THEY OUT

 7   IN THE HALL?  I WAS GOING TO JOKE WHO SAYS IT'S HARD TO GET

 8   PEOPLE TO CAMDEN.

 9          I WANT TO MAKE IT CLEAR THAT I'M HERE, AT LEAST FOR THE

10   NEXT 20 MINUTES OR SO, SITTING IN THE WORKMAN MATTER NOT ANY

11   OTHER MATTER.  BUT THAT HAVING BEEN SAID, I HAVE REASON TO

12   BELIEVE THAT THERE MAY BE PEOPLE HERE WHO HAVE OTHER CASES

13   PENDING BEFORE ME AND WHEN WE GET TO CERTAIN ISSUES, WE'LL
```

24  GOT -- THERE'S A MENTION IN -- I'VE NOW GOT ALL OF THESE

25  AFFIDAVITS.  I BELIEVE THAT THERE'S A MENTION IN THE


*UNITED STATES DISTRICT COURT*

*CAMDEN, NEW JERSEY*

---

22


1  PLAINTIFFS MOST RECENT SUBMISSION IN WHICH THERE'S A THIRD

2  LAWYER WHO WAS COMPLAINING ABOUT THIS.

3        DO I REMEMBER THAT CORRECTLY, MR. PAUL?

4            MR. PAUL:  YES, YOUR HONOR.  THERE'S AN AFFIDAVIT OF

5  A MR. TAMBLYN, AN ATTORNEY IN THIS CASE.

6            THE COURT:  AND DOES HE REPRESENT -- DOES HE NOT

7  REPRESENT A NAMED PARTY?

8            MR. PAUL:  YES, I BELIEVE MS. SEXTON, SHIRLEY SEXTON.

9            THE COURT:  IS THAT ONE OF THE AFFIDAVITS I JUST

10  REFERRED TO?

11            MR. PAUL:  IT'S IN THE DECLARATION OF MARK TAMBLYN

12  FILED WITH THAT LETTER.

13            THE COURT:  IN THAT CASE, MR. RUFF WOULD STAND

14  CORRECTLY, WOULD HE NOT, ABOUT CONTACTS WITH SOMEONE WHO IS A

15  NAMED PARTY?

16            MR. PAUL:  I BELIEVE SO, YOUR HONOR.

17            MR. RUFF:  I WAS TRYING TO GET TO ALL OF THAT.

18            THE COURT:  OKAY.  SO THAT'S ANOTHER STRIKE, RIGHT?

19  THIS IS A NAMED PARTY THAT MENU FOODS DOESN'T KNOW WHO'S SUING

20  THEM?

21            MR. RUFF:  YOUR HONOR, I CAN SHOW YOU THE E-MAIL THAT

22  WAS SENT AT 9:48.

23            THE COURT:  I HAVE NO DOUBT YOU SENT IT, SIR.

24            MR. RUFF:  AND --

25            THE COURT:  I HAVE NO DOUBT THAT WAS AN ATTEMPT.  THE


*UNITED STATES DISTRICT COURT*

*CAMDEN, NEW JERSEY*

---

23


1  ATTEMPT IS FAILING.

2            MR. RUFF:  THE ONLY THING I CAN EXPLAIN IS THAT WHEN

3  I ASKED ABOUT THIS, THE ONLY THING THAT I CAN SAY IS THAT I

4  WAS ADVISED -- AND I DID ADVISE THE COURT THERE WAS A HOLIDAY

5  IN CANADA ON THIS PAST MONDAY.  THE PERSON WHO SUBMITTED AND

6  IS RESPONSIBLE FOR THIS FROM CRAWFORD IS APPARENTLY A CANADIAN

7  CRAWFORD REPRESENTATIVE. WE DID SEND E-MAILS TO MR. HACKETT

8  ON FRIDAY, I DON'T KNOW IF HE COMPLETELY SHUT DOWN THE BLASTER

9  MESSAGE THAT I HAD INFORMED THE COURT OF ON FRIDAY BY MONDAY.

10 AND, OBVIOUSLY, ACCORDING TO MS. SEXTON AND TO MR. JANKE,

11 THERE WAS A BLASTER MESSAGE THAT WAS RECEIVED BY BOTH OF

12 THOSE, ONE ON MAY 19TH AND, ACCORDING TO MR. JANKE, ONE ON

13 MAY 18TH, WHICH COULD HAVE BEEN DONE BEFORE I LEFT THIS

14 COURTROOM. IN FACT, ALL OF THE CONTACTS HERE COULD HAVE BEEN

15 DONE BEFORE I LEFT THE COURTROOM AS TO OTHER AFFIDAVITS. AND

16 THEN THE TWO CONTACTS ON MAY 21ST WAS THE MONDAY THAT THE

17 COURT HOLIDAY -- I MEAN, THE HOLIDAY IN CANADA. I DON'T KNOW

18 THEIR SYSTEM. I DON'T KNOW HOW IT'S SET UP TO DO THAT. ALL I

19 CAN TELL YOU IS THAT I TOOK TO HEART WHAT THE COURT HAD SAID,

20 IMMEDIATELY SENT THAT OUT. I CALLED THE CHUBB REPRESENTATIVE,

21 WHO IS THE INSURANCE REPRESENTATIVE WHO'S WORKING WITH MENU

22 REGARDING THE WHOLE CRAWFORD SETUP, AND I TOLD THEM THAT

23 PURSUANT TO THE COURT'S CONTACT, NO SETTLEMENT AND NO CONTACT

24 WITH ANY PUTATIVE CLASS MEMBER, GO THROUGH THE REPRESENTATIVE

25 NAMES AND ANYONE THAT YOU HAVE AS FAR AS A LETTER FROM AN

*UNITED STATES DISTRICT COURT*

*CAMDEN, NEW JERSEY*

24

1  ATTORNEY THAT SAYS, YOU KNOW, I WANT TO SETTLE THIS CLAIM. SO

2  THOSE ARE, YOU KNOW, WHAT WE KNEW AND THAT'S WHAT I SAID TO

3  THE INDIVIDUALS AS SOON AS I GOT OUT OF HERE.

4       THE COURT: ALL RIGHT. WHAT IS YOUR CLIENT'S

5  INTENTIONS REGARDING THIS TELEPHONE CAMPAIGN? IS IT

6  CONTINUING TODAY? ARE PEOPLE BEING --

7       MR. RUFF: AS FAR AS I KNOW, IT'S SHUT DOWN. I

8  HAVEN'T TALKED TO BRETT HACKETT --

9       THE COURT: HACKETT WAS THE NAME I WAS LOOKING FOR.

10      MR. RUFF: -- BUT AS FAR AS I KNOW, IT WAS SHUT DOWN.

11 I DON'T WANT TO SAY THAT, YOU KNOW, AND THEN RUN THE WRATH OF

12 THE COURT. AS FAR AS I KNEW, THEY WEREN'T GOING TO DO ANY

13 KIND OF SETTLEMENTS PURSUANT TO THE COURT'S DIRECTION. AND AS

14 FAR AS, YOU KNOW, ANYBODY WHO WAS PURPORTED TO BE REPRESENTED

15 OR A NAMED PARTY, THEY WERE NOT TO RECEIVE ANY FURTHER

16 CONTACT. I DON'T KNOW IF, AS TO NOT THOSE PEOPLE, IF THAT --

17 IF THE BLASTER MESSAGES ARE STILL GOING ON.

18      THE COURT: ALL RIGHT. WELL, WE'RE GOING TO FIX

19 THAT. I FILED THOSE AFFIDAVITS IN THIS CASE. AS I SAID TO

20 YOU, I'M CONCERNED ABOUT THIS CONDUCT AND WHAT APPEARS TO BE A

21 PATTERN OF NOT ONLY MISCONDUCT BUT A PATTERN OF MISCONDUCT AND

22 ABUSE OF THE PROCESS HERE. IT'S CLEAR TO ME THAT MENU FOODS

23  HAS TAKEN ADVANTAGE OF THE STAY, THE INTERIM PERIOD OF TIME

24  BETWEEN THE FILING OF THESE ACTIONS AND THE MOTIONS BEFORE THE

25  MDL, TO ENGAGE IN A AGGRESSIVE CAMPAIGN TO SETTLE WITH AS MANY

*UNITED STATES DISTRICT COURT*

*CAMDEN, NEW JERSEY*

---

*25*

1   PUTATIVE CLASS MEMBERS AS IT CAN.  THAT STANDING ALONE IS NOT

2   WRONG, BUT I BELIEVE THAT THERE IS SUFFICIENT RECORD EVIDENCE

3   HERE THAT THEY ARE ABUSING THAT RIGHT.  THEY FILED PAPERS WITH

4   ME IN WHICH THEY ASSERTED THAT THEY HAD NOT ENGAGED IN ANY

5   CONDUCT PROACTIVELY TO SOLICIT SETTLEMENTS.  IT IS NOW CLEAR

6   TO ME THAT THEY WERE PREPARING TO DO EXACTLY THAT.  AND IT WAS

7   ONLY ON THE DAY OF THE HEARING, WHEN THEY KNEW THAT I WAS

8   CONSIDERING THE CONTENT OF THE POSSIBLE COMMUNICATIONS WITH

9   PUTATIVE CLASS MEMBERS, WAS IT DISCLOSED TO ME THAT THEY WERE

10  ENGAGING IN THIS AGGRESSIVE CAMPAIGN.  I EXPRESSED CONCERNS

11  ABOUT A TELEMARKETING CAMPAIGN.

12      I NOW HAVE AFFIDAVITS IN WHICH PEOPLE WHO ARE

13  REPRESENTED BY COUNSEL ARE BEING CONTACTED REPEATEDLY AND FEEL

14  HARASSED.  IT'S ONE THING FOR TWO PEOPLE TO SIT DOWN AT THE

15  TABLE AND VOLUNTARILY AGREE TO SETTLE THEIR CASE, IT'S ANOTHER

16  THING TO HARASS PEOPLE ON WEEKENDS THROUGH AUTOMATED PHONE

17  CALLS AFTER THEY RECEIVED A WRITTEN SUBMISSION, WHICH I

18  BELIEVE IS INCOMPLETE AND AFTER I EXPRESSED CONCERNS ABOUT IT

19  BEING INCOMPLETE, AND SOLICITED FROM THE PLAINTIFFS SOME

20  SUGGESTIONS AS TO HOW IT MIGHT BE FIXED.  SO AT THE SAME TIME

21  WE'RE IN THIS COURTROOM TRYING TO DECIDE WHAT THE FINAL

22  COMMUNICATION OF THE SUM TOTAL OF COMMUNICATION SHOULD BE,

23  YOUR CLIENT IS BLASTING PHONE CALLS REPEATEDLY TO REPRESENTED

24  PERSONS OVER THE WEEKEND, THAT'S PRECISELY THE KIND OF ABUSIVE

25  CONDUCT THAT THEY TALKED ABOUT IN GULF OIL AND THESE CASES.

*UNITED STATES DISTRICT COURT*

*CAMDEN, NEW JERSEY*

---

*26*

1       AND I'M GOING TO ENTER AN ORDER TODAY ENJOINING YOUR

2   CLIENT FROM ENGAGING IN ANY TELEPHONE SOLICITATION TO PUTATIVE

3   CLASS MEMBERS FOR A PERIOD OF 10 DAYS UNTIL I CAN GET TO THE

4   BOTTOM OF WHAT THE CONTENT OF THOSE COMMUNICATIONS ARE AND

5   FIND OUT WHO KNEW ABOUT THIS AND WHAT ADVICE WAS GIVEN AS TO

6   REPRESENTED PERSONS, REPRESENTED PARTIES. AND I'LL SAY IT

7   AGAIN, IT'S ABSOLUTELY CLEAR FROM THE CASE LAW THAT YOU HAVE A

8   RIGHT, YOUR CLIENT HAS A RIGHT, WHEN I SAY YOU, I MEAN THE

9   COLLECTIVE YOU AND YOUR CLIENT, TO SETTLE CASES. BUT YOU

10  DON'T HAVE A RIGHT TO MISLEAD PEOPLE AND TO ABUSE THEM AND TO

11  HARASS THEM INTO SETTLEMENTS WHEN THEY HAVE NOT YET BEEN FULLY

12  INFORMED AS TO SAY WHAT THEIR RIGHTS MIGHT BE.

13        NOW, I WOULD LIKE YOU TO SUBMIT, AS SOON AS YOU CAN, AS

14  I SAID, I WANT TO KNOW THE NAMES AND BAR ADMISSIONS OF ALL THE

15  LAWYERS WHO ADVISED MENU FOODS ON ITS COMMUNICATIONS WITH THE

16  PUTATIVE CLASS, I WANT TO KNOW THE CONTENT OF THE TELEPHONE

17  MESSAGES, I WANT TO KNOW WHAT SCRIPTS ARE GIVEN TO THE PEOPLE

18  WHO ARE CALLING PEOPLE LIVE ON THE PHONE AND WHAT THEY'RE

19  BEING TOLD TO SAY AND IN PARTICULAR ANYTHING THAT THEY'RE

20  BEING TOLD TO SAY IN RESPONSE TO ANY QUESTIONS BY THE PARTIES

21  THEY'RE CONTACTING, IF THEY SAY THIS, YOU SAY THAT KIND OF

22  THING, AND I WANT TO SET THIS DOWN FOR A HEARING IN 10 DAYS.

23        NOW, MR. RUFF, ARE THERE ANY OTHER ISSUES YOU WANT TO

24  ADDRESS WITH ME?

25        MR. RUFF: NO, SIR.


                    UNITED STATES DISTRICT COURT
                      CAMDEN, NEW JERSEY


                              27


1         THE COURT: I WANT TO RETURN TO THE FORM CONTENT OF

2   THE CURATIVE LETTER, I KNOW YOU WILL HAVE SOME OPINIONS ON

3   THAT. BUT BEFORE I LET YOU ADDRESS THAT, IF YOU DON'T --

4   PERHAPS THE DIVIDE AND CONQUER TECHNIQUE MIGHT WORK IF THE

5   PLAINTIFFS CAN'T AGREE ON CONTENT, SO WE'LL SEE WHAT THEY HAVE

6   TO SAY FIRST.

7         MR. PAUL, CAN WE DISCUSS WHAT YOU WANT TO SEND OUT?

8         MR. PAUL: ABSOLUTELY, YOUR HONOR.

9         THE COURT: LET ME START OUT BY SAYING THAT I HAVE

10  SOME SYMPATHY FOR THE POSITION THAT THIS SHOULD BE MORE I'LL

11  CALL IT NEUTRAL. MY THOUGHT IS THAT PERHAPS THE LETTER OUGHT

12  TO COME FROM EITHER OR AT LEAST THE CONTENT OF IT OUGHT TO

13  HAVE INPUT FROM THE BROADER RANGE OF LAWYERS REPRESENTING

14  PLAINTIFFS. I'M CONCERNED ABOUT THE POINTS RAISED IN MR.

15  EDELSON'S LETTER TO ME. AND ALL OF THAT HAS MADE ME THOUGHT

16  THAT PERHAPS IT PERHAPS COULD COME FROM THE CLERK -- I COULD

17  DIRECT THE CLERK OF THE COURT TO SEND IT SO THAT IT WOULD COME

18  FROM HERE. AND MY THOUGHT WAS THAT WE WOULD -- IT SEEMS TO ME

19  THAT THE LETTER THAT THE DEFENDANTS HAVE PROPOSED THAT WOULD

20  BE PRESENTED AT A SETTLEMENT ADOPTS MANY OF THE THINGS THAT

21  YOU PROPOSED OR MANY OF THEM AT LEAST, SO I THINK IT SHOULD

21  LITTLE CONFUSED ABOUT DOING THIS IN TERMS OF IN A WAY THAT'S

22  TOO COMPLICATED OR EVEN IN WAY THAT WILL HAVE THE OPPOSITE

23  EFFECT, WHICH IS TO -- IF THEY WERE INCLINED AND IT WAS THE

24  BEST THING FOR THEM TO DO TO WADE OUT THE PROCEDURAL MANEUVER

25  TOWARDS A CLASS ACTION, I HATE TO SCARE THEM AWAY FROM IT IF

*UNITED STATES DISTRICT COURT*
*CAMDEN, NEW JERSEY*

31

1  THAT WAS THE BEST THING FOR THEM IF ONE WERE TO BE ACTUALLY BE

2  CREATED AT SOME POINT.  AND I THINK ONE OF THE THINGS THAT

3  GULF OIL TEACHES IS THAT WE'RE NOT SUPPOSED TO PUSH PEOPLE ONE

4  WAY OR THE OTHER, WE'RE SUPPOSED TO LET THEM HAVE ALL THE

5  INFORMATION AND LET THEM DECIDE FOR THEMSELVES.

6        AND I WONDER PERHAPS, YOU KNOW, SOMETIMES SOME OF THESE

7  THINGS CAN BE WRITTEN IN A WAY THAT'S MORE UNDERSTANDABLE TO A

8  LAYPERSON.  AND I THINK PERHAPS IN SOME CLASS ACTION

9  SETTLEMENTS I'VE SEEN THERE IS AN EFFORT TO EXPLAIN THINGS IN

10  A PLAIN ENGLISH KIND HAVE WAY.  AND I'M WONDERING WHETHER

11  THERE SOME WAY TO SAY -- MAYBE YOU CAN HELP ME GO THROUGH IT

12  NOW.  WHAT ARE THE OPTIONS OF SOMEBODY WHO LIVES IN CAMDEN WHO

13  BOUGHT EUKANUBA PET FOOD, NEVER GAVE ITS PET ANYTHING OTHER

14  THAN EUKANUBA?  YOUR CLIENT MAKES EUKANUBA, RIGHT?

15        MR. RUFF:  CAN I MAKE ONE SUGGESTION?

16        THE COURT:  SURE.

17        MR. RUFF:  YOUR HONOR, MAY I JUST ADDRESS THE COURT

18  FOR ONE SECOND?

19        THE COURT:  SURE.  YOU CAN DO IT FROM THERE, I CAN

20  HEAR YOU.  YOU'RE NOT SHY.

21        MR. RUFF:  NO, I'M NOT.  I'M JUST TRYING TO -- YOUR

22  HONOR, I THINK THE INTENTION, AT LEAST IT WAS DIRECTED TO ME,

23  WAS PURE OF HEART FROM THE STANDPOINT OF TRYING TO GATHER

24  INFORMATION, THAT'S THE WAY I UNDERSTOOD IT FROM THE START.  I

25  THINK YOUR HONOR KNOWS WHERE MY ADVICE WAS ON THIS FROM THE

*UNITED STATES DISTRICT COURT*
*CAMDEN, NEW JERSEY*

32

1  START AS FAR AS THE WHOLE PROCESS REGARDING DATA COLLECTION OR

2  TRYING TO SETTLE THE CASE OR UNTIL WE HAD AN MDL SO YOU CAN

3  APPROVE OF THIS, UNTIL YOU COULD DO EVERYTHING.  AND I -- TO

4    SAY I FORESAW ALL THIS COMING IS AN UNDERSTATEMENT, AND I

5    DON'T -- MAY I JUST STAND OVER THERE, SIR?

6         I RESPECT EVERYTHING THAT THE COURT HAS SAID IN THIS

7    REGARD AND IT'S NOT SOMETHING THAT, WITHOUT DISCLOSING

8    ATTORNEY/CLIENT COMMUNICATIONS, HAS NOT BEEN STATED BY MYSELF.

9    SEEING WHERE THIS HAS GONE AND HOW IT'S MUSHROOMED, WOULD

10   THERE BE -- AND YOUR HONOR HAD TALKED ABOUT POTENTIALLY THE

11   LAST TIME SEEKING GROUNDS OF CONSENSUS, ET CETERA.  I'M

12   PREPARED, IF YOUR HONOR IS WILLING, TO STRONGLY SUGGEST TO MY

13   CLIENT TO STOP THE WHOLE THING.  IF I MAY SAY, THAT IT'S BEEN

14   MY THOUGHT FROM THE START.  AND ADVICE OF COUNSEL SOMETIMES,

15   YOU KNOW, IF YOU CAN READ BETWEEN THE LINES WHERE I'M GOING ON

16   THIS, IS NOT ALWAYS -- AND I THINK I'VE MENTIONED THIS TO

17   SCOTT AND I'VE MENTIONED IT TO KEN WEXLER, IN FACT I RODE THE

18   PLANE OUT WITH --

19        THE COURT:  STOP THE EFFORT TO SETTLE THE CASES.

20        MR. RUFF:  STOP IT.  IF I CAN SAY, WE STOP -- BECAUSE

21   I'M JUST SEEING THIS MUSHROOM IN THE HEARING ON THE 5TH INTO

22   ATTORNEY/CLIENT ISSUES.  IF I CAN SAY THERE WILL BE NO FURTHER

23   COMMUNICATIONS, WHATEVER'S BEEN GLEANED WILL NOT BE USED FOR

24   ANYTHING FURTHER.

25        THE COURT:  HOLD ON THERE BECAUSE --


                    UNITED STATES DISTRICT COURT

                       CAMDEN, NEW JERSEY


                                                        33


1         MR. RUFF:  AND I CAN TELL YOU THAT WE ARE NOT GOING

2    TO DO THIS AFTER TODAY, THAT CRAWFORD IS SHUT DOWN.  FRANKLY,

3    YOUR HONOR, I DON'T KNOW IF I'VE BEEN SOMEWHAT THE SACRIFICIAL

4    LAMB SUCH THAT, YOU KNOW, THIS WAS WHERE THIS WAS LEADING OR

5    WHATEVER, BUT ALL I'M SUGGESTING IS THAT IF THIS CAN BE -- IF

6    WE CAN WALK OUT OF HERE TODAY AND I WILL TELL THE CLIENT THIS

7    HAS TO BE DONE, IT'S MY STRONG RECOMMENDATION, AND I CAN

8    REPORT TO YOU AND ALL THE FINE PLAINTIFF'S COUNSELS HERE

9    TOMORROW THAT IT IS SHUT DOWN AND CRAWFORD IS NO LONGER

10   OPERATING AND WE OBVIATE ALL OF THIS DISCUSSION, AS I

11   INDICATED BEFORE IS A FINE AND INTELLECTUAL DISCUSSION, I

12   WOULD BE PREPARED TO DO ALL OF THAT.

13        THE COURT:  WELL, IT'S AN INSTRUCTIVE SUGGESTION.  I

14   MADE IT CLEAR LAST TIME, AND I'LL MAKE IT CLEAR NOW, I WILL DO

15   NOTHING TO INTERFERE WITH YOUR CLIENT'S RIGHT TO SETTLE CASES.

16   THE CASE LAW IS ABSOLUTELY CLEAR, YOU HAVE A RIGHT TO

17   COMMUNICATE WITH PEOPLE WHO ARE WILLING TO DO IT.  BUT I HAVE

18   AN OBLIGATION TO PROTECT THE PUTATIVE CLASS AND TO PREVENT

19   ABUSIVE CONDUCT, AND I HAVE A RIGHT TO MANAGE AND POLICE THE

20  CONDUCT OF LAWYERS WHO APPEAR BEFORE ME.  SO --

21        MR. RUFF:  I DON'T WANT TO --

22        THE COURT:  -- I NEED TO BALANCE THOSE TWO THINGS.

23  BUT I CAN TELL YOU I THINK IT WOULD BE A MUCH BETTER WORLD IF

24  WE ALL DID WHAT I THOUGHT WE WERE DOING WHEN I ENTERED THOSE

25  STAYS, WHICH WAS TO STAND DOWN.

UNITED STATES DISTRICT COURT

CAMDEN, NEW JERSEY

34

1        MR. RUFF:  YOUR HONOR, I --

2        THE COURT:  I CAN'T ORDER YOU TO DO IT, BUT IT MAY

3  VERY WELL BE A WISE THING.  YOU HAVE TO TELL ME WHETHER YOUR

4  CLIENT WANTS TO DO THAT.

5        MR. RUFF:  I DON'T WANT TO START A --

6        THE COURT:  JUST SO YOU KNOW, I'M STILL GOING TO MAKE

7  INQUIRY, I STILL WANT TO KNOW WHETHER THERE WERE LAWYERS

8  INVOLVED IN ADVISING MENU FOODS AS TO CONTACT THE REPRESENTED

9  PERSONS, I CAN'T LET THAT ISSUE DROP.

10        MR. RUFF:  WELL, YOUR HONOR, THE THING THAT I'M

11  GETTING INTO REGARDING THAT, IT'S GOING TO INVOLVE THE

12  DISCUSSION OF WHAT WAS TOLD TO THE CLIENT.

13        THE COURT:  RIGHT.  WELL, HERE'S THE DEAL ON THAT.

14        MR. RUFF:  AND I'M WILLING TO SAY THAT IF I CAN REACH

15  AN ACCORD WITH YOU AND THE OTHER SIDE, IF WE CAN SHUT THAT

16  DOWN, INCLUDING THE HEARING ON THE 5TH, I'M TRYING TO REACH --

17        THE COURT:  HERE'S MY THOUGHT ON THAT.  THE RULE IS

18  DESIGNED TO PROTECT THE CLIENT ULTIMATELY FROM NOT HAVING THE

19  FULL ADVICE OF THEIR LAWYER, IT'S DESIGNED TO PROTECT THE

20  CLIENT.  IF THOSE LAWYERS SAY WE DROP IT, JUDGE, THERE'S NO

21  NEED FOR YOU TO MAKE FURTHER INQUIRY INTO THAT, I'VE SPOKEN TO

22  MY CLIENT, THEY'RE GOING TO GIVE ME ALL THE INFORMATION.

23  YOU'RE GOING TO HAVE TO TURN OVER ALL THE INFORMATION THAT YOU

24  GOT FROM REPRESENTED PERSONS, IT SEEMS TO ME THAT THAT'S AN

25  ABSOLUTE OBLIGATION.  YOU CAN'T VIOLATE THE RULE AND GAIN THE

UNITED STATES DISTRICT COURT

CAMDEN, NEW JERSEY

35

1  BENEFIT FROM IT.

2        MR. RUFF:  I AGREE 100 PERCENT.

3        THE COURT:  I'M NOT GOING TO PURSUE IT IF THE LAWYERS

4   SAY MY CLIENT'S FINE, I'M FINE, WE WERE -- YOU'LL HAVE TO

5   DISCUSS IT WITH THEM LATER.

6        MR. WEXLER:  IS THE CLIENT FINE WITH THAT?

7        MR. RUFF:  I CAN'T HEAR MR. WEXLER.

8        MR. WEXLER:  IS THE CLIENT FINE WITH THAT?

9        MR. RUFF:  WELL, I HAVE TO GO OUT IN THE HALL RIGHT

10  NOW.  I'M PREPARE TO -- I SEE WHERE THIS IS GOING.  IF YOU'RE

11  THE TRANSFEREE JUDGE AND I'M GOING TO BE BEFORE YOU, I DON'T

12  WANT TO START OFF ON THE WRONG FOOT AND THAT'S BEEN PART OF MY

13  COMMENTS AS WELL.  YOUR HONOR, I'VE ALWAYS PRIDED MYSELF ON

14  BEING STRAIGHT UP AND I'VE TALKED TO COUNSEL STRAIGHT UP ON

15  ALL OF THESE THINGS, AND WHAT I'M SUGGESTING IS IF I CAN

16  AVOID, INCLUDING THAT HEARING ON THE 5TH, AND I WILL THEM IT'S

17  DONE TODAY BY OUR CONSENT AND THAT MEANS CRAWFORD IS SHUT DOWN

18  TOMORROW, I'M GOING TO WALK OUT OF HERE RECOMMENDING THAT.  IN

19  FACT, I WAS EVEN GOING TO TRY TO GET TO MY BLACKBERRY AND JUST

20  SAY ARRANGE A CONFERENCE CALL THIS MINUTE.

21       THE COURT:  LET ME HEAR FROM THE PLAINTIFFS.  IT

22  SEEMS TO ME IT WOULD BE APPROPRIATE TO ADJOURN THIS MATTER

23  UNTIL TOMORROW SO THOSE DISCUSSIONS COULD BE HAD.  BUT I WANT

24  TO ARE CLEAR THAT IF A LAWYER BELIEVES THERE'S BEEN SOME

25  HANKY-PANKY WITH ONE OF THEIR CLIENTS AND INTERFERENCE IN

UNITED STATES DISTRICT COURT

CAMDEN, NEW JERSEY

36

1   THEIR ATTORNEY/CLIENT RELATIONSHIP, I CAN'T ABANDON THAT.

2   THOSE AFFIDAVITS HAVE BEEN FILED WITH ME AND THOSE COMPLAINTS

3   HAVE BEEN MADE, I NEED THOSE LAWYERS TO RELEASE ME FROM MY

4   OBLIGATION NOT TO PURSUE THAT.  I'M HAPPY FOR THAT EVENT.

5   AGAIN, IT'S THE CLIENT'S INTERESTS THAT NEED TO BE PROTECTED.

6   IF THE LAWYER SAYS I'VE SPOKEN TO MR. RUFF AND ANYTHING THAT

7   WAS GLEANED IS BEING TURNED OVER OR I UNDERSTAND HOW IT COULD

8   HAVE BEEN DONE BY MISTAKE.  I ACCEPT THE FACT THAT THEY'RE

9   SHUTTING THIS THING DOWN, MY CLIENT IS VERY HAPPY NOT TO GET

10  ANY MORE AUTOMATED TELEPHONE CALLS, THEN I DON'T FEEL I HAVE A

11  NEED TO PURSUE IT ANY FURTHER.  BUT NOW THAT IT'S BEEN RAISED

12  TO ME, I CAN'T LET IT DROP, I DON'T THINK I CAN UNLESS THEY

13  TELL ME TO.  SO YOU NEED TO WORK THAT OUT.

14       THE SECOND THING IS TO THE EXTENT THAT THIS EFFORT DID

15  GLEAN INFORMATION THAT COULD BE USED FOR LITIGATION PURPOSES

16  LATER, IT MUST BE PRESERVED BY YOUR CLIENT AND TURNED OVER

17  WHEN ORDERED TO DO SO BY THE APPROPRIATE JUDGE AT THE

18  APPROPRIATE TIME.  IF YOU HAVE INFORMATION FROM SOMEONE WHO IS

19  REPRESENTED, THAT SHOULD GO NOW.  IF IT'S SOMEONE WHO BECOMES

20  REPRESENTED LATER OR IT BECOMES AN ISSUE IN THE MULTIDISTRICT

21  LITIGATION OR BEFORE THE JUDGE WHO GETS THE CASES, THAT SHOULD

22  BE TURNED OVER.

23          MR. RUFF:  I WILL DO THAT, YOUR HONOR.  AND I'M NOT

24  TRYING TO TAKE ISSUE, BUT IN JUST LOOKING AT THE AFFIDAVITS,

25  IT APPEARS THAT THERE WAS NO INFORMATION THAT WAS TURNED OVER.


UNITED STATES DISTRICT COURT

CAMDEN, NEW JERSEY

37

1  IN ANY CASE THAT I GET FROM MR. PAUL OR MR. WEXLER OR MR.

2  KAMBER THAT, YOU KNOW, WE GET A LIST OF WHO THOSE PEOPLE ARE,

3  BELIEVE ME, IT'S GOING -- I WILL TELL THEM TO TURN IT OVER

4  IMMEDIATELY.

5          THE COURT:  ALL RIGHT.  LET ME HEAR FROM MR. PAUL.

6  AND THEN I'LL INVITE THEN ANYONE WHO IS ALSO HERE ON BEHALF OF

7  PUTATIVE CLASS MEMBERS TO IDENTIFY THEMSELVES, TO INDICATE ON

8  THE RECORD WHETHER THEY'RE COUNSEL IN ANY CASE PENDING BEFORE

9  ME AND THEN TO MAKE ANY APPLICATION THEY WANT TO MAKE.

10          MR. PAUL, PLEASE GO FIRST.

11          MR. PAUL:  YOUR HONOR, I JUST WANTED TO GET SOME

12  FURTHER CLARIFICATION, I'M NOT EXACTLY SURE WHAT MR. RUFF IS

13  PROPOSING.  THERE WILL BE ABSOLUTELY NO COMMUNICATIONS GOING

14  FORWARD, THERE WILL BE NO SETTLEMENTS.  INDEED, HE HAS STATED

15  ON THE RECORD THAT THERE HAVE BEEN NO SETTLEMENTS THUS FAR.

16  BUT IS HE SAYING THAT MENU FOODS WILL NOT, UNTIL SOME POINT IN

17  THE FUTURE OR NOT AT ALL, COMMUNICATE WITH PUTATIVE CLASS

18  MEMBERS AND THEY WILL NOT SETTLE DIRECTLY WITH PET OWNERS

19  WHOSE PETS HAVE BEEN HARMED?

20          THE COURT:  WELL, I THINK HE'S MADE A -- I THINK SOME

21  OF THIS IS OFF THE CUFF, BUT I THINK HE WANTS TO DISCUSS WHAT

22  THE PARAMETERS OF THAT AGREEMENT WOULD BE.  I DON'T KNOW THAT

23  I NEED TO HEAR THE DETAILS OF IT.

24          MR. RUFF:  I THINK I COULD SAY THAT MY INTENT, AND I

25  MADE THIS COMMENT TO MR. WEXLER AND MR. PAUL WHEN WE WERE IN


UNITED STATES DISTRICT COURT

CAMDEN, NEW JERSEY

38

1  OUR FIRST MEETING, MY INTENT WAS IF THERE WAS GOING TO BE

2  COMMUNICATION, WAS THE COMMUNICATION WOULD BE THROUGH THE

3  APPROVAL OF THE COURT. I WOULD SEEK TO HAVE, ONCE WE GET A

4  TRANSFEREE COURT, AND THAT IS STILL THE WISH OF MENU TO DO

5  THAT, MY AGREEMENT WITH COUNSEL WOULD BE SUBJECT TO APPROVAL

6  BY THE CLIENT, BUT IT WOULD BE MY STRONG RECOMMENDATION TO DO

7  SO, TO INFORM COUNSEL HERE'S WHAT IS GOING TO BE -- HERE'S

8  WHAT WE'RE GOING TO DO SO THAT THERE WON'T BE ANY

9  COMMUNICATIONS UNTIL THEY WERE KNOWN AND A TIME PERIOD WITHIN

10  WHICH THE MOTIONS HAD TO BE MADE, MOTIONS WOULD BE ADDRESSED.

11      THE COURT: HE'S RESERVING THE RIGHT FOR HIS CLIENT

12  TO CRANK CRAWFORD UP AFTER THEY GET RID OF THAT CRANKY JUDGE

13  IN CAMDEN.

14      MR. RUFF: NO. NO. NO. THAT'S NOT IT. I'M SAYING

15  THAT IF IT WAS YOU THAT WAS THE TRANSFEREE JUDGE, THAT WE

16  BRING THE MOTION SAYING, YOU KNOW, HERE'S WHAT WE PLANNED ON

17  COMMUNICATION, WHATEVER.

18      THE COURT: THAT'S FINE. BUT ISN'T IT BETTER TO

19  RESOLVE ONCE AND FOR ALL THE ISSUE OF --

20      MR. RUFF: I DON'T KNOW IF AT SOME POINT IN THE

21  FUTURE THEY WANT TO SETTLE. BUT IF THIS INVOLVES STOPPING

22  SETTLEMENTS, ANY COMMUNICATION UNTIL WE GET THE TRANSFEREE

23  JUDGE, UNTIL WE'RE BEFORE -- ALL THE CASES ARE BEFORE THERE

24  AND THAT PROPER NOTICE IS GIVEN TO THE OTHER SIDE, THAT'S

25  WHAT --

*UNITED STATES DISTRICT COURT*

*CAMDEN, NEW JERSEY*

---

*39*

1      THE COURT: I'VE SAID AND STARTED OUT HERE SAYING I'M

2  CONCERNED ABOUT THAT. I JUST GOT THESE 40 CASES, I HAVE NO

3  IDEA WHETHER I'M GOING TO BE THE ONE AT THE END OF THE DAY.

4  AND I'M RELUCTANT TO PUSH THINGS TOO FAR ALONG IF I'M NOT IF

5  JUDGE, THE OTHER JUDGE MAY FEEL VERY DIFFERENTLY ABOUT SOME OF

6  THESE THINGS. SO I WOULDN'T BE TOO CONCERNED ABOUT RESERVING

7  THE RIGHT TO RAISE THIS LATER. I THINK WHAT HE'S SAYING NOW

8  UNTIL THE MULTIDISTRICT PANEL RULES, CRAWFORD WILL CEASE ALL

9  COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS AND WILL NOT ENGAGE

10  IN ANY SETTLEMENT DISCUSSIONS, WHICH IS A SMALLER SUBSET OF

11  THOSE DISCUSSIONS.

12      MR. DEPALMA: YOUR HONOR, I DON'T THINK HE SAID

13  THAT -- JOSEPH DEPALMA, I'M APPEARING TODAY ON THE NUNEZ CASE.

14      THE COURT: OKAY.

15      MR. DEPALMA: I THINK WHAT I UNDERSTOOD HIM TO SAY

16  IT'S NOT UNTIL THE MDL PANEL RULES, IT'S UNTIL HE IS ABLE TO

17  SEEK A FURTHER ORDER OF A COURT THAT THE MDL PANEL SENDS THESE

18  CASES TO.  RIGHT?

19        MR. RUFF:  I'M SAYING TILL WE GET TO A TRANSFEREE

20  JUDGE.

21        THE COURT:  AND THEN AT THAT POINT WOULD YOU -- YOU

22  WOULD MAKE APPLICATION BEFORE COMMUNICATIONS BEGAN AGAIN.

23        MR. RUFF:  CORRECT.

24        THE COURT:  SEEKING THE APPROVAL OF THE COURT FOR

25  THAT COMMUNICATION.


                UNITED STATES DISTRICT COURT

                  CAMDEN, NEW JERSEY

---

                                              40


1         MR. RUFF:  ABSOLUTELY.  THAT'S WHAT I'M SUGGESTING IF

2  THAT'S AGREEABLE TO THE OTHER SIDE.

3         MR. PAUL:  I JUST WANT TO ASK MR. RUFF IF HE'S

4  IMPLYING THAT THE SLATE AT THAT POINT WILL BE WIPED CLEANED,

5  THAT ALL PRIOR COMMUNICATIONS WILL NOT THEN BE UTILIZED TO

6  CONDUCT SETTLEMENTS AND THEY'LL HAVE TO START ALL OVER AGAIN?

7         MR. RUFF:  IF YOUR THOUGHT IS THAT, I'M IN AN

8  AGREEABLE MODE.

9         MR. DEPALMA:  YOUR HONOR, IS THIS AN APPROPRIATE TIME

10  JUST FOR A BRIEF INTERJECTION?

11        THE COURT:  YES.

12        MR. DEPALMA:  AGAIN, JOSEPH DEPALMA ON THE NUNEZ

13  CASE.

14        THE COURT:  WELCOME, SIR.

15        MR. DEPALMA:  I THINK GIVEN THE HYPOTHETICAL THAT

16  WE'RE ALL FACED WITH, WHICH IS THAT MENU FOODS MAY, AFTER

17  COUNSEL SPEAKS WITH HIS CLIENT, COME BACK AND TELL EVERYBODY

18  HERE TODAY THAT THERE'S GOING TO BE A TOTAL STAND DOWN FROM

19  FURTHER COMMUNICATIONS.  THAT HYPOTHETICAL, IF IT'S ANSWERED

20  IN THE WAY WE ALL HOPE IT WILL BE ANSWERED, ALLEVIATES

21  EVERYTHING THAT I REALLY NEED TO SAY TODAY ABOUT THE LETTER,

22  THE CONTENTS AND HOW IT CAME ABOUT.  IT WOULD SEEM TO ME BEST,

23  AT LEAST FROM MY POINT OF VIEW, THAT AS YOUR HONOR SUGGESTED,

24  IT MAY BE WISE TO ADJOURN THIS HEARING FOR ANOTHER DAY, TO

25  GIVE MENU FOODS THE ABILITY TO ANSWER THE HYPOTHETICAL


                UNITED STATES DISTRICT COURT

                  CAMDEN, NEW JERSEY

---

1  QUESTION.  AND IF IT COMES BACK AND IT'S GOING TO STAND DOWN

2  FROM ALL COMMUNICATIONS AND THIS LETTER ISN'T EVEN GOING TO GO

3  OUT --

4          THE COURT:  RIGHT.

5          MR. DEPALMA:  -- YOU DON'T EVEN NEED TO HEAR FROM ME.

6  THAT'S MY INITIAL COMMENT.

7          THE COURT:  OKAY.  I AGREE WITH THAT.

8          MR. RUFF:  NOT TO SAY I WOULDN'T LIKE TO STAY IN

9  CAMDEN OVERNIGHT, YOUR HONOR, BUT I DIDN'T BRING A CHANGE OF

10  CLOTHES.  SO IF YOU'LL ALLOW ME TO GO OUT NOW AND MAKE A CALL

11  WHILE ALL COUNSEL ARE HERE, I'D PREFER TO GET YOU AN ANSWER.

12  I'M A GUY THAT GIVES -- TRY TO GET THINGS DONE SOONER THAN

13  LATER.  SO IF I CAN -- IT'S 4:20 NOW, IF I CAN GET THE PEOPLE

14  BEFORE 4:30, SOME ON TORONTO TIME, SO IS THE SAME AS EASTERN

15  TIME IN NEW JERSEY, I WOULD LIKE TO BE ABLE TO REPORT TO --

16          THE COURT:  LET ME GIVE THESE TWO GENTLEMEN AN

17  OPPORTUNITY TO ENTER THEIR APPEARANCES.  AND THEN I WANT TO

18  GIVE MR. PAUL ANOTHER OPPORTUNITY TO SPEAK HERE BECAUSE THIS

19  IS HIS APPLICATION AND HE HAS TO BE COMFORTABLE WITH

20  ADJOURNING THIS AND COMFORTABLE WITH PROCEEDING THIS WAY.  I

21  AM, BUT I WANT TO MAKE SURE HE HAS AN OPPORTUNITY TO RAISE ANY

22  QUESTIONS HE WANTS TO RAISE.

23      YES, SIR.

24          MR. FERRARA:  GOOD AFTERNOON, YOUR HONOR.

25          THE COURT:  GOOD AFTERNOON.

UNITED STATES DISTRICT COURT

CAMDEN, NEW JERSEY

---

42

1          MR. FERRARA:  IF IT PLEASE THE COURT, MICHAEL

2  FERRARA.  I HAVE TWO CASES OF THE 40 PENDING, JUDGE, ONE IS

3  BONIER.  JUDGE, I WAS THE ONE WHO HAND DELIVERED THIS LETTER

4  FROM MR. EDELSON TO YOUR HONOR TODAY.

5          THE COURT:  THANK YOU, SIR.

6          MR. FERRARA:  HE COULDN'T BE HERE, BUT SCOTT KAMBER

7  FROM THE NEW YORK BAR CAME DOWN.  HE'S NOT ADMITTED HERE BUT

8  WITH YOUR HONOR'S PERMISSION I WOULD LIKE FOR HIM TO SPEAK.

9          THE COURT:  OKAY.  AND IS HE FROM?

10          MR. FERRARA:  NEW YORK.

11          MR. KAMBER:  KAMBER & ASSOCIATES IN NEW YORK, YOUR

12  HONOR.

13          THE COURT:  STEP UP, SIR, PLEASE.

14          MR. KAMBER:  MR. EDELSON COULDN'T BE HERE TODAY, HE

15  HAD JUST GOTTEN A COPY OF THE LETTER, PROPOSED PLAINTIFF'S

16  LETTER YESTERDAY, AND I'VE BEEN WORKING WITH MR. EDELSON AND

# EXHIBIT G

# W E X L E R | T O R I S E V A | W A L L A C E

Limited Liability Partnership
Chicago, IL • Wheeling, WV • Sacramento, CA

June 4, 2007

## VIA ELECTRONIC MAIL (PDF) AND FACSCIMILE (312) 346-8242

Edward B. Ruff, III
PRETZEL & STOUFFER
One South Wacker Drive, Suite 2500
Chicago, IL 60606

        Re:   *Pet Food Products Liability Litigation,* MDL No. 1850

Dear Ed:

    Attached is a list that identifies named representative plaintiffs in federal suits against Menu Foods, compiled by Wexler Toriseva Wallace LLP as of June 4, 2007. We believe that Menu Foods and/or its related entities likely possess the most current information on the cases brought against them. Accordingly, this list should be cross-checked against Menu Foods' own information in ascertaining who among Menu Foods' contact list is also a named plaintiff, for purposes of preventing further contacts with known represented parties.

        Very truly yours,

        MARK J. TAMBLYN

MJT/rlf
Enclosures

cc:   Russell D. Paul

Contact Information:

| Mark J. Tamblyn | 1610 Arden Way | (916) 568-1100 |
| mjt@wtwlaw.us | Suite 290 | (916) 568-7890 fax |
| | Sacramento, CA 95815 | www.wtwlaw.us |

## Named Plaintiffs in Pending Federal Cases
### Against Menu Foods
*In Re Pet Food Products Liability Litigation,* MDL Docket No. 1850

### *A*

Adams, Michelle
Aiello, Cirio
Amro, Heather

### *B*

Barbi, Shane
Barbi, Sia
Bartilucci, Steve
Berndl, Leslie
Birney, Audrey
Birney, George
Blaszkowski, Renee
Boehm, Gregory
Bonier, Janice
Brankov, Camilla
Brazilian, Mara
Britton, Guy
Brown, Carol
Bruski, Gary
Bullock, Jim
Byers, Kay
Byers, Loren

### *C*

Calvin, Sarah
Carestio, Lynne
Carter, David
Cashman, Mark
Cohen, Mark
Cohen, Mona
Colliard, John
Colquitt, Steve
Conner, James
Connerton, Megan
Conti, Chantelle
Cooper, Kirby
Cutler, Cheri
Cutter, Marianna

### *D*

Davis, Patricia
deBarathy, Luke
Dicaprio, Mary
Diedrich, Diana
Dineen, Lerae
Donnelly, Stephen

### *E*

Englander, Jayne
Englander, Mitch

### *F*

Ferrarese, Maria Teresa
Finestone, Kelly
Ford, Hayley
Foxe, Sonja
Freeman, Steven

### *G*

Gagliardi, Troy
Golding, Mark
Grady, Lois
Gray, Sandra L.
Guercioni, Olivia
Guthrie, Nancy

### *H*

Hart, Jennifer
Heller, Stacey
Hicks, Dinitrise
Hidalgo, Julie
Hirni, Jennifer
Hollub, Amy
Holt, LizaJean

1

Howe, Dawn

## I

Ingles, Sherry

## J

Jackson, Deena
Jackson, Nick
James, Don
Johnson, Christina
Johnson, Jacqueline
Johnson, Paul Randolph
Johnson, Suzanne E.

## K

Keller, Dixie
Klemann, Craig R.
Klimes, Larry
Kohler, Alicia
Kohler, Charles
Kornelius, Audrey
Kramer, Shannon J.
Krosschell, Wendy

## L

Labbate, Jason
Lavoie, Paul
Light, Barbara
Long, Matt

## M

Majerczyk, Dawn
Matthews, Tammy
McCullough, Michele
McGuriman, Judy
Mello, Kimberly
Migliore, Laura
Mitchell, Cecily
Mitchell, Maria
Mitchell, Terrence
Moran, Gail

Moses, Jim
Moses, Terri
Mueller, Richard
Mullen, Deborah A.

## N

Nash, Frances
Navarrete, Tammy
Nunez, Alexander

## O

Osborne, Lauri A.

## P

Palmer, Elizabeth
Payne, Robert
Percy, Helen
Picus, Margaret
Pirches, Karen
Pittsonberger, Jayme
Puett, Sheryl

## Q

[None]

## R

Rapp, David
Reeves, Daniel Ray
Richard, Jennifer
Richard, Paul
Robinson, Sheree A.
Robinson, Toinette
Rodrigues, Lidia
Rozman, Stephanie
Rusiecki, Jeff

## S

Schneider, Peggy
Scott, Richard
Sexton, Shirley

Shingle, Sandra
Sims, Charles Ray
Sims, Pamela
Smith, Barbara
Sokolwski, Todd
Steinsapir, Kaye
Streczyn, Marion
Suggett, Michele
Swarberg, Diane

## _T_

Thomas, Gary
Thomson, Suzanne
Tinker, Linda
Tompkins, Emily
Townsend, Dennis Lee
Townsend, Glenna
Trautmann, Robert
Troiano, Christina
Turturro, Kami

## _U_

Ullman, Phyllis A.

## _V_

[None]

## _W_

Wahl, Ken
Washington, Sheila R.
Weitz, Linda
Whaley, Tom
Whitt, Megan
Widen, Barbara
Wilson, Larry
Workman, Jared

## _X_

[None]

## _Y_

[None]

## _Z_

[None]

3

# EXHIBIT H



FRANCIS MCGILL HADDEN
Director

Gibbons P.C.
1700 Two Logan Square
18th & Arch Streets
Philadelphia, Pennsylvania 19103-2768
Direct: (215) 446-6276 Fax: (215) 446-6305
fhadden@gibbonslaw.com

July 5, 2007

**OVERNIGHT MAIL**
The Honorable Noel L. Hillman
United States District Court,
District of New Jersey
Mitchell H. Cohen U. S. Courthouse
Room 6020
1 John F. Gerry Plaza
Camden, NJ 08101

   Re: <u>Sokolowski v. The Iams Company, et al.</u>
      United States District Court
      Case Number 1:07-cv-1709
      Our File No. 106344-59701

Dear Judge Hillman:

This letter reports on discussions held between Iams and plaintiffs' counsel regarding ongoing company communications with customers who have contacted Iams regarding the Menu Foods Recall. We are pleased to advise that we have reached agreement regarding those communications. Plaintiffs' counsels' agreement is represented by Mr. Paul's signature on this letter. This letter outlines the agreement and attaches copies of the agreed-upon communications. In light of the agreement, Iams anticipates that plaintiffs will withdraw the pending Motion for Protective Order. Iams also plans to end its voluntary suspension and recommence the settlement portion of its reimbursement program on Monday, July 9, 2007.

The first letter attached (Exhibit A) will be addressed to customers who sought reimbursement and subsequently received a check from REM containing the erroneous language. The letter makes clear that the language was a mistake, that the check does not represent a settlement and that customers do not give up any potential claims they may have against the company by cashing the check.

The second letter (Exhibit B) will be addressed to customers who seek reimbursement and who have in the past received or submitted a release . This letter advises customers of the existence of the class action litigation, provides additional information about potential claims, the impact of settlement and other legal rights to enable customers to make informed decisions based upon several options, and suggests that customers consult with counsel regarding any questions they may have on these matters.

The third letter attached (Exhibit C) will be addressed to customers who seek and receive reimbursement for veterinary bills without being asked to sign a release or otherwise give up any

# GIBBONS P.C.

The Honorable Noel L. Hillman
July 5, 2007
Page 2

potential claims they may have against the company. The letter advises that accepting reimbursement does not effect their rights in any way.

The fourth letter attached (Exhibit D) will be addressed to customers who seek and receive reimbursement for veterinary bills now and possibly, in addition, in the future and similarly advises that accepting reimbursement does not effect their rights in any way.

Iams is confident that the agreed-upon communications are appropriate under the law and meet or exceed all legal requirements. This agreement will enable Iams to continue to fulfill its mission to support its customers and communicate with them during this difficult time. We are pleased that the parties have reached agreement on these issues and look forward to recommencing our program.

Thank you for the Court's consideration. We remain available to provide additional information or answer any questions Your Honor may have.

Respectfully submitted,

GIBBONS P.C.

Francis McGill Hadden
Director

BERGER & MONTAGUE, P.C.

Russell D. Paul

FMH/mah
Attachments

cc:   Brian Wright, Esquire (via e-mail)
      D. Jeffrey Ireland, Esquire (via e-mail)
      Bruce Newman, Esquire (via e-mail)
      Lisa Rodriguez, Esquire (via e-mail)
      Joseph DePalma, Esquire (via e-mail)
      Mark J. Tamblyn, Esquire (via e-mail)
      Scott Kamber, Esquire (via e-mail)

Dear _____:

First and foremost, we want to repeat our profound regret for the loss of your pet.  We appreciate your patience in this difficult situation.

While the cause of the reported illnesses has not been definitively determined, we are reimbursing your veterinarians bills associated with the Menu Foods recall.  Payment in the amount of _____ has been requested and you should receive a check within the next six weeks. Cashing the check does not affect your rights in any way.

Should a health concern arise in the next four months, we will consider providing reimbursement for veterinarian bills that are demonstrated to be linked to the Menu Foods recall.  Please use the following toll-free number, (800) 782-0923, to contact us during the next four months for consideration for reimbursement.

Again, we are deeply saddened by the loss of your pet.


Sincerely,


Marti Hissong
Manager Consumer Relations
Iams/Eukanuba

Dear _____ :

First and foremost, we want to repeat our profound regret for the loss of your pet. We appreciate your patience in this difficult situation.

While the cause of the reported illnesses has not been definitively determined, we are reimbursing your veterinarians bills associated with the Menu Foods recall. Payment in the amount of _____ has been requested and you should receive a check within the next six weeks. Cashing the check does not affect your rights in any way.

Again, we are deeply saddened by the loss of your pet.

Sincerely,


Marti Hissong
Manager Consumer Relations
Iams/Eukanuba

[THE IAMS COMPANY]

Dear _____:

This letter follows up on a check that we sent you previously as reimbursement for veterinary and other expenses associated with your purchases of recalled Iams or Eukanuba products. The check incorrectly stated on its face that it was "for full and final settlement." Iams does not intend the check to represent the full and final settlement of any claim you might have regarding our recalled products, but only reimbursement for your veterinary and other expenses. You have not released any claims you may have against any Company, including The Iams Company or The Procter & Gamble Company, by accepting reimbursement. Cashing the check does not affect your rights in any way. After cashing this check, you may still seek to recover additional amounts by either participating in a class action or by bring your own action related to the recalled pet food.

We cannot give you any legal advice. If you have any questions about this letter or the check you received, please consult an attorney. If you are currently represented by an attorney, please do not contact us but forward this letter to the attorney who should feel free to contact us directly.

Sincerely,


Marti Hissong
Manager Consumer Relations
Iams/Eukanuba


Error! Unknown document property name.Error! Unknown document property name.

**EXHIBIT B**

Re: Important Notice to Customers of Legal Rights

Dear:

This letter supplements earlier communications we had concerning your claim for reimbursement. While our earlier communications explained P&G Pet Care's reimbursement program, this letter provides additional information about your legal rights. This letter does not offer legal advice, but rather it contains additional information so that you may make an informed decision about your options. If you have any questions, then please contact an attorney.

If you are currently represented by a lawyer regarding any claim you may have in this matter, then it is not appropriate for us to communicate with you about your case. If you are represented by a lawyer, you received this letter because we were not aware of that representation, and we ask that you please pass this letter along to your lawyer immediately and ask your lawyer to respond to the letter. If you are contacted by us (whether by phone or email) at any time after you are represented by a lawyer, then please state that you are represented by a lawyer, end the contact, and inform your lawyer.

You have already contacted us and we either have responded or currently are responding to your claim; however, there are options that you may want to consider and discuss with an attorney before you settle your claim with us.

First, you may be eligible to participate in a class action lawsuit. The recall of various pet food products has led to numerous class action lawsuits filed in federal and state courts throughout the United States and Canada. It is our expectation that those federal class actions will soon be consolidated into a single action in the United States District Court for the District of New Jersey and are referred to as In re Pet Food Products Liability Litigation, MDL Docket No. 1850. If a class action lawsuit moves forward and your pet was harmed by the recalled pet food, you may be eligible to share in any recovery achieved in that class action. The recovery sought by plaintiffs in the class action includes the initial veterinary expenses incurred by pet owners. Also, plaintiffs may seek other expenses, including emotional distress, continued veterinary expenses and medical monitoring of your pet, autopsy and funeral expenses, although the recovery of these additional categories of expenses may vary from state-to-state.

If you wish to participate in a class action lawsuit instead of seeking settlement directly from P&G Pet Care, then it is not necessary for you to do anything at this time and it is important that you should not sign or return the release that we sent you earlier. If you already signed and returned a release but you now wish to participate in a class action lawsuit, then please sign the attached form and return the form and any payment you received from P&G Pet Care in the enclosed self-addressed envelope. If you return the attached form and the payment you received from P&G Pet Care, then we

will not enforce any release that you signed and returned previously and you will retain any potential claims you may have against P&G Pet Care. You may then be eligible to participate in the class action lawsuits or resolve your claim with P&G Pet Care in the future. You may contact an attorney of your choice to discuss your legal options at any time.

Second, P&G Pet Care remains committed to settling claims by paying its customers for any reasonable expenses incurred as a result of dogs and cats consuming one of our products that was recalled and you may resolve your claim directly with P&G Pet Care. If you wish to do so and have already signed and returned a release and received money, then it is not necessary for you to do anything more. You may wish, however, to discuss with an attorney whether the amount of money you received is adequate. If you have not signed and returned a release and you wish to continue to seek a settlement directly from P&G Pet Care in full and final settlement of your claims, then return the release to us in the enclosed self-addressed envelope and we will send you a settlement check in the amount stated in our previous letter. Again, you may wish to speak with an attorney before doing so. Please note that if you sign a release and accept a settlement directly from P&G Pet Care, then you will be releasing all claims relating to any damages sustained as a result of the Menu Foods recall and you may not be permitted to participate in the above-mentioned class action lawsuits.

Third, you can retain your own attorney to pursue your own case regarding the recalled pet food.

Finally, you can do nothing. You are not required to seek reimbursement from P&G Pet Care or to contact any attorney associated with the class actions. Even if you do nothing at this time, you may be eligible to participate in a class action in the future.

If you have any additional questions regarding the full extent of your options, then you should speak to an attorney. If you are currently represented by an attorney, then please forward this communication to them immediately and ask your attorney to contact us directly.

Again, we are deeply saddened by your pet's illness.

Sincerely,


Marti Hissong
Manager Consumer Relations
Iams/Eukanuba

# EXHIBIT I

1622 LOCUST STREET  |  PHILADELPHIA, PA 19103-6305  |  phone 215/875-3000  |  fax 215/875-4604  |  www.bergermontague.com

## Berger&Montague,P.C.
ATTORNEYS AT LAW

Russell D. Paul

WRITER'S DIRECT DIAL    215/875-4601
WRITER'S DIRECT FAX    215/875-4636
WRITER'S DIRECT E-MAIL    RPAUL@BM.NET

June 22, 2007

Via E-Mail and Regular Mail

Amy W. Schulman, Esquire
DLA Piper US LLP
1251 Avenue of the Americas
New York, NY  10020-1104

Carlos F. Ortiz, Esquire
Steven F. Gooby, Esquire
DLA Piper US LLP
379 Thornall Street, 8th Floor
P.O. Box 2940
Edison, NJ 08837-2226

Edward B. Ruff, III, Esquire
Pretzel & Stouffer Chartered
One South Wacker Drive, Suite 2500
Chicago, IL 60606-4673

       Re:    Workman, et al. v. Menu Foods, et al.
              Civil Action No. 07-cv-1338

Dear Counsel:

      We note that attorneys with DLA Piper US LLP have entered their appearance in the above-reference matter on June 12, 2007.[1]  As I am sure you are all aware, three hearings were held before Judge Hillman on May 18, 23 and 24, 2007 that resulted in the entry of a Consent Order on June 4, 2007 relating to, *inter alia*, Menu Foods' communications with pet owners.

      In a conference call held by Judge Hillman on June 5, 2007 in which I participated on

---

[1] Judge Hillman consolidated the 44 cases filed against Menu Foods in the District of New Jersey from the bench at the hearing on May 18, 2007.



# Berger&Montague,P.C.
### ATTORNEYS AT LAW

Amy W. Schulman, Esquire
Carlos F. Ortiz, Esquire
Steven G. Gooby, Esquire
Edward B. Ruff, III, Esquire
June 22, 2007

behalf of plaintiffs and Ed Ruff and David Lillehaug participated on behalf of Menu Foods, Judge Hillman directed that counsel continue to work diligently to collectively formulate an acceptable curative communication from Menu Foods to affected pet owners should Menu Foods desire to move the Court to communicate with affected pet owners in the future.

Please contact me immediately so that we can begin to work together on this important matter.

Very truly yours,

Russell D. Paul

RDP:lb

cc:     Sherrie Savett, Esq.
        Mark Tamblyn, Esq.
        Jeniphyr Breckenridge, Esq.
        Stuart Davidson, Esq.
        David Lillehaug, Esq.

416888

# EXHIBIT J

## BLIM & EDELSON, LLC  ATTORNEYS AT LAW

THE MONADNOCK BUILDING · 53 WEST JACKSON BOULEVARD
SUITE 1642 · CHICAGO, ILLINOIS 60604

TEL: (312) 913-9400
FAX: (312) 913-9401
WWW.BLIMLAW.COM

June 27, 2007

The Honorable Noel L. Hillman
United States District Court; District of New Jersey
Mitchell H. Cohen U.S. Courthouse
1 John F. Gerry Plaza; Room 6020
Camden, NJ 08101

1709

Re:  *Sokolowoski v. Menu Foods Limited*, No. 07-CV-~~1338~~

Dear Judge Hillman:

Yesterday afternoon I received the briefs concerning a pending emergency motion for a protective order concerning The Iams Company ("Iams"). My firm similarly had been investigating the issue of whether Iams was improperly communicating with represented individuals. Based on the results of that investigation, we do not share the concerns voiced by Plaintiff Todd Sokolowski.

Although many of my firm's clients have interacted with Iams, it appears as though Iams has been careful to avoid speaking to people who are represented by counsel. I have uncovered only one example to the contrary, and even there, the facts seem to support Iams' overall position. Approximately two weeks ago, one of our clients reported to me that a woman from REM (Iams' claims adjuster) had called her home and questioned her husband about the loss of her pet. At the end of the conversation, REM's representative asked my client's husband whether my client was represented by counsel. When he said that she was, the REM representative apologized, admitted that she should have begun with that question, and invited me to telephone her.

I accepted the invitation and telephoned REM. The woman I spoke to admitted all of the pertinent facts stated above. She appeared forthright and apologetic. She said that she had been instructed not to speak to represented individuals and that "she is only human" and had made a mistake. She further confirmed that Iams would not use any information she had gathered and would make no further attempts to contact my client. I told her I was satisfied with her explanation.

Based on this experience, and in speaking to numerous other clients of my firm, I do not understand Iams to have engaged in bad faith or acted otherwise improperly. We have contacted other firms that represent large numbers of clients who have told us that they have similar views.

I further question the "emergent" nature of Sokolowski's filing – coming immediately after the issuance of the JPML's assignment order. By doing this unilaterally and at this speed, it appears that Sokolowski's counsel has filed this motion more for the purpose of positioning than for any substantive reason.

That being said, I do not profess to speak for all of individuals pursuing claims against Iams. They very well may have different experiences. Nevertheless, I thought this letter might be helpful to the court.

Respectfully,

/s/ Jay Edelson

Jay Edelson

# EXHIBIT K

1

**ORIGINAL**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

RECEIVED
WALSH, CLERK

JUL -9 A 10:34

UNITED STATES
DISTRICT COURT

2

3

4    TODD SOKOLOWSKI,

5         PLAINTIFF,                    CIVIL ACTION NUMBER:

6         -VS-                          07-1709 (NLH)

7    IAMS COMPANY, ET AL,

8         DEFENDANTS

9

10            TELEPHONE CONFERENCE CALL

11    FRIDAY, JULY 6, 2007

12

13    MITCHELL H. COHEN UNITED STATES COURTHOUSE
      1 JOHN F. GERRY PLAZA,
14    CAMDEN, NEW JERSEY, 08101

15    B E F O R E:
      THE HONORABLE NOEL L. HILLMAN, UNITED STATES
16    DISTRICT COURT JUDGE, DISTRICT OF NEW JERSEY,
      SITTING AT CAMDEN, NEW JERSEY.

17

18    A P P E A R A N C E S:

19    NEWMAN, CREED & ASSOCIATES
      BY:  KEVIN E. CREED, ESQUIRE
20    ATTORNEY FOR PLAINTIFF, TODD SKOLOWSKI

21    WEXLER, TORISEVA, WALLACE, L.L.P.,
      BY:  MARK J. TAMBLYN, ESQUIRE
22    ATTORNEY FOR PLAINTIFF MENU FOODS

23    TRUJILLO, RODRIGUEZ & RICHARDS, L.L.P.,
      BY:  LISA J. RODRIGUEZ, ESQUIRE,
24    ATTORNEY FOR PLAINTIFF MENU FOODS

25

3

1    (The following takes place telephonically before the

2    Honorable Noel L. Hillman, United States District

3    Court, District of New Jersey, sitting at Camden,

4    New Jersey, July 6, 2007)

5        THE COURT:  This is Judge Hillman.

6        Could I get appearances, please?

7        MR. HADDEN: Frank Hadden, from the Gibbons

8    firm, on behalf of Iams.

9        MR. IRELAND: Jeff Ireland and Brian Wright,

10    from Faruki, Ireland and Cox, on behalf of the

11    defendant, the Iams Company.

12        MR. PAUL: Russell Paul, from Berger and

13    Montague, on behalf of plaintiff.

14        MR. TAMBLYN: Your Honor, Mark Tamblyn,

15    Wexler, Toriseva and Wallace, in Sacramento, on

16    behalf of plaintiffs.

17        MR. KAMBER: Scott Kamber, Kamber and

18    Associates, on behalf of plaintiffs.

19        MR. CREED: Kevin Creed, Newman, Creed and

20    Associates, on behalf of plaintiffs.

21        MS. RODRIGUEZ: Also Lisa Rodriguez on

22    behalf of plaintiffs.

23        THE COURT: We have heard of her, right?

24        If you could for Mr. Daner's purposes and

25    everyone else involved in the process here, to state

4

1   your name before you speak so that we can get the

2   accurate, an accurate transcript and record here.

3        Let me see, I received a letter from the,

4   joint letter from Mr. Hadden and Mr. Paul, which

5   lists, I think all of you on here, or most of you on

6   here are cc's.

7        There are just two issues that I had.

8        First of all, let me thank all of you for

9   your efforts to reach a resolution.  This helps

10  advance the ball substantially, and it's appreciated

11  by me personally, and I think for the efficient

12  adjudication of these various matters that this is

13  as I said a significant advance, so thank all of

14  you.

15       Thanks to all of you.

16       My question, first question had to do with

17  the second letter which I realized is probably the

18  most complicated set of circumstances, but I,

19  frankly, felt a little muddle-headed at the end of

20  it.  There's a lot in there.

21       I wanted to suggest to you that perhaps it

22  would benefit from some headings.  I know it's

23  delineated with first, second, and third, and

24  finally, but perhaps a way to kind of lay out the

25  options, if you will, to a recipient in an outline

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

1   kind of form through the use of just a simple

2   heading.

3           MR. PAUL: We completely agree, and I will

4   say it's definitely in one of our drafts that the

5   defendants would not --

6           THE COURT:  We don't have the best

7   equipment here so speak as slowly and not to loudly.

8   Let me turn the volume -- it came across a little

9   distorted.  Repeat it.

10          MR. PAUL: I will say that we strongly agree

11  that there should be headings that were definitely

12  in one of our earlier drafts.  The defendants did

13  not agree at the time so that got dropped in the

14  course of the negotiations.

15          THE COURT:  Perhaps I can hear from Iams

16  about whether they would reconsider some simple

17  headings to make it a little more comprehensible to

18  a lay person.

19          MR. IRELAND: Certainly to the extent you

20  are asking us to reconsider that, we will absolutely

21  do so.  In the course of discussing the letter not

22  only with the plaintiff's counsel but also with the

23  customer service people who are ultimately

24  responsible for sending out the letter and

25  responding to questions about it, they thought it

1    in this process, and are on this phone call, I don't

2    want to be in a situation of finding out that

3    there's a plaintiff's lawyer who has a case that I

4    clearly have jurisdiction over against Iams, who has

5    not had an opportunity to at least review this and

6    interpose any objections.

7            Are there individual lawyers who now have a

8    case pending before me against Iams who were not

9    involved in this, and if so, would you object to me

10   filing under the MDL number the letter and the final

11   four versions, and giving notice through that

12   mechanism to those lawyers so that they might have a

13   week to raise any objections?

14           MR. PAUL: I think I would like to ask Mark

15   Tamblyn to respond because he knows a lot of cases

16   involved.

17           MR. TAMBLYN: We would certainly have no

18   objections to that at all.  And I think that's why

19   counsel -- I am aware of other firms that have one

20   or more cases against Iams and/or Proctor & Gamble,

21   and I can provide the names of those firms to Your

22   Honor.

23           My firm also has a case against Proctor &

24   Gamble, and I have been involved in this process.

25   So we can figure out the best way to -- I guess Your

8

1    Honor's idea is to communicate that through the ECF.

2          THE COURT: At a minimum.  In a perfect

3    world we would try to assemble a list and also send

4    them hard copies.

5          MR. TAMBLYN: I'm happy to assemble the list

6    with the information I have and go and update it

7    through pacer.  But I'm also happy to call the

8    lawyers involved as well.

9          THE COURT:  That's very helpful and much

10   appreciated.

11          Part of that involves asking Iams, despite

12   their substantial efforts here to delay until the

13   16th to recommence the reimbursement program.

14          I just want to put this on the record, give

15   people an opportunity to comment, if at all, and

16   then, then, then issue the go.

17          Would -- Mr. Hadden, do you see any

18   problems with asking you to delay a week to make

19   sure that everyone who is a stakeholder here had a

20   chance to comment?

21          MR. HADDEN: It's not such a problem, but a

22   concern.  Iams had agreed to stand down from its

23   settlement portion of the reimbursement program

24   voluntarily while we attempted to work this out with

25   plaintiff's counsel.

9

1   We have been involved in extensive

2 negotiations in a compressed period of time, but it

3 was with the reassurance that we received, that a

4 majority of cases were represented by the attorneys

5 that were involved in this process.  My concern is

6 that, and I understand the Court's desires to look

7 down the road and prevent any future issues that it

8 may feel it doesn't want to deal with, but it places

9 us in a position perhaps where -- as new attorneys

10 come in, are these issues going to be reopened for

11 Iams, where we will be asked to once again change

12 our process and enter new negotiations?  It feels

13 like more than just multiple bites at the apple, and

14 feels as if plaintiffs are being offered the

15 opportunity to come at us with multiple

16 perspectives, multiple times and get multiple

17 maximum effects.  I'm not sure that that places Iams

18 in a fair position.

19   THE COURT:  Well, I'm supposed to be fair

20 to both sides, and certainly within my ability to

21 say this achieves the result that I wanted to

22 achieve, and unless the objection is substantial and

23 truly meaningful, and I'm not suggesting I'm going

24 through the process just to go through the process,

25 but I just want to make sure that everybody who

24

1  letter or complaint raised.  We can't guarantee that

2  an attorney somewhere or a party representative may

3  come forward with an individual instance where

4  something didn't go to way it was supposed to go.

5  We can't guarantee that.

6       I think what we have submitted to Your

7  Honor is the program that we have in place, the

8  intentions behind it, the efforts, written efforts

9  to express information, and provide folks so they

10  can make the right decisions with multiple

11  suggestions without talking to counsel.  That's what

12  we can do.  We can't offer the Court a guarantee,

13  and I appreciate Your Honor understands that.  But I

14  am just concerned that if something, if someone does

15  raise their own problem or their own issue that Your

16  Honor's going to look to Iams and say, as you

17  mentioned, I told you so.  I'm not sure we are in a

18  position to guarantee that someone won't find a

19  problem somewhere with some aspects of some letter

20  or some particular circumstance or something didn't

21  work the way it was supposed to.

22       THE COURT:  I understand, and it would have

23  to be reasonable.  I'm just trying to, if someone

24  knows about it and keeps their mouth shut, it makes

25  it difficult to come a week later or two weeks later

1    and say, do you know what, I don't like this.  In my

2    perfect world we would try to figure out -- we would

3    send these copies to those lawyers who have brought

4    suit again Iams, who have not been involved in the

5    negotiations process, and say, this is happening and

6    it's happening soon.  Speak now or not be heard

7    later.

8            And so, if Mr. Tamblyn and counsel for Iams

9    could compare notes and compare lists and send this

10   out to those other individuals, and I know you don't

11   want to upset an apple cart that has been carefully

12   loaded, but I just think we would be in a better

13   situation.

14           But, I'm just --

15           MR. HADDEN: I was just pointing out that

16   Iams has heard Your Honor's concern and take your

17   suggestion and your thoughts seriously, and will

18   move forward accordingly.

19           THE COURT:  All right.

20           Anything else?

21           I'm going to direct that this submission

22   and the proposed letters to be used by Iams be filed

23   on the ECF file, the master MDL, and as well as a

24   transcript of this phone conference.

25           I wish all of you well and good luck, and I

26

1   appreciate all the hard work that went in by both

2   sides, and we will hope for the best.

3            (At which time the matter was concluded)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25