Jay Edelson
Blim & Edelson, LLC
53 West Jackson Blvd., Suite 1642
Chicago, IL 60604
(312) 913-9400

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IN RE PET FOODS PRODUCTS | ) | MDL Docket No. 1850 |
| LIABILITY LITIGATION | ) | Master Docket:  3:07 CV 2867 (NLH)(AMD) |
| | ) | All Cases |
| | ) | |

## AFFIDAVIT OF JAY EDELSON

Jay Edelson, being first duly sworn on oath, states as follows:

1.      I am a partner at Blim & Edelson, LLC ("B&E").  A copy of my firm's resume is attached hereto as Exhibit 1.

2.      My firm concentrates its practice on complex high-stakes plaintiffs' class action litigation.  I have had leadership roles in numerous state-wide, national, and international class action cases over the past ten years.

3.      Some of the more significant cases in which I have been lead or co-lead include:

          A.     *Pulcini v. Bally Total Fitness Corp.*, No. 05 CH 10649 (Cook County, Ill.)

                 (A global settlement of four class action lawsuits against five defendants

                 provided the class with over $40 million in benefits);

1

Dockets.Justia.com

   B. *Zurakov v. Register.com*, No. 01-600703 (N.Y.Cty, New York)

    (settlement of class action brought on behalf of an international class

    alleging deceptive practices in registering internet domain names awarded

    relief with a collective face value in excess of $17 million.)

   C *Holloway v. J.C. Penney*, No. 97 C 4555, (N.D.Ill.) (one of the primary

    attorneys in a multi-state class action suit alleging that the defendant

    illegally denied life insurance benefits to plaintiffs' class.  The settlement

    resulted in a multi-million dollar cash award to the class.)

4. I have also had significant involvement in mass-tort cases, including:

   A. *Aaron v. Chicago Housing Authority*, 99 L 11738, (Cook County, Illinois)

(part of team representing a group of public housing residents bringing suit

    over contamination-related injuries.  Case settled on a mass basis for over

    $10,000,000)

   B. *Januszewski v. Horseshoe Hammond*, No. 2:00CV352JM (N.D.Ind.) (was

    part of team of attorneys in mass suit alleging that defendant riverboat

    casino caused injuries to its employees arising from exposure to second-

    hand smoke.)

**B&E's Clients In The Instant Litigation**

5. B&E represents approximately 700 clients in this litigation.

6. Those clients reside in the majority of the states and have claims against every major

defendant in the MDL proceeding.

7. The vast majority of B&E's clients have pets that were either injured or killed as a

result of eating defendants' contaminated food.  The rest either incurred damages as a result of being forced to undergo precautionary screening tests or not being able to use previously bought recalled  food.  In addition to the average pet owner, we have clients in this action who run animal sanctuaries, breed animals, and rely on trained working dogs due to disabilities.

**B&E's Litigation Efforts**

8.        In the first three days following Menu Foods' March 16, 2007 recall -- including a holiday weekend before the press took particular notice of that event -- my firm screened inquiries from approximately a half-dozen consumers, investigated the few publicly-available facts concerning the recall, researched the factual and legal history of such recalls, and compiled information on Menu Foods business practices and corporate structure.  On the fourth day after the recall, March 20, 2007, we filed one of the first class action lawsuits against Menu Foods.

9.        Over the next two weeks, we began working with animal rights groups (including People for the Ethical Treatment of Animals), congressional offices, bar associations and other organizations.

10.       During this time, we also started to collaborate with the other plaintiffs' attorneys who had filed lawsuits or were representing injured clients.  We participated in multiple phone conferences and in-person meetings with attorneys from approximately half-a-dozen attorneys such as Scott Kamber, Ilan Chorowsky (affilliated with Progressive Law Group), Michael Kelly of Kirtland & Packard, LLC, John Jacobs of the Jacobs Law Firm, Chtd., and Gino DiVito of Tabet, DiVito and Rothstein.  We began discussing ways to share information for the collective interest of the our respective clients and putative classes.

11.       Those efforts were interrupted when a mass number of filings followed the press

attention the initial lawsuits were receiving.  A group of attorneys lead by Wexler Toriseva

Wallace LLP (the "Wexler Group") quickly announced that they were hosting a meeting of all

plaintiffs' attorneys at the Peninsula Hotel in Chicago, Illinois.

12.    Although the stated purpose of that meeting was to start organizing informal

collaborative efforts, no true effort was made to effectuate this purpose.  Rather, it appeared to be

little more than a thinly disguised way to establish the position of certain attorneys and

contributed (intentionally or not) only to a fracturing of the informal joint efforts in which the

early firms were engaged.

13.    On April 3, 2007, after developing a more complete factual record, my firm amended

its complaint to include claims of fraud, consumer fraud, and spoliation of evidence.

14.    Legal commentators, including the National Law Journal, have commended my firm

for advancing these theories.

15.    We have continued our active involvement since filing the amended complaint.  In

addition to procedural litigation tasks, such as briefing and arguing early motion to stay by Menu

Foods, submitting a brief to the MDL Panel on whether these cases should be centralized and the

issue of the most appropriate venue, we have contributed in several other significant ways.

16.    First, we have assembled a massive factual and legal database, along with a collection

of fact and opinion witnesses, essential to successfully prosecuting this case.  In addition to the

public interest groups and governmental offices who have been providing information to it, we

began working more and more with other similarly minded plaintiffs' firms.

17.    Based on this work, we been privy to a significant amount of information not generally

available to the public, including information about when the defendants started to learn their pet

food was likely contaminated and problems with the effectuation of the various recalls (including

recalled products being sold for weeks after the recalls were announced, and complaints about

food that was not initially recalled).

18.        We also had a key role in winning the most significant plaintiff's victory to date.  In

*Workman v. Menu Foods Limited*, No. 07-CV-1338, Workman's counsel (the Wexler Group),

working without the benefit of consultation with all of the other plaintiffs firms in these cases,

filed a motion regarding Menu Foods improper communications with the putative class.

Workman's counsel argued in their motion that, because of these communications, *they* should

be able to send a letter to all members of the putative class supposedly informing them of their

rights.

19.        However, as we explained in our own filing, the proposed letter was as misleading as

Menu Foods' communications and did more harm than good.

22.        We further presented evidence, in the form of affidavits from four of our clients,

establishing that Workman's counsel was significantly understating the nature and extent of

Menu Foods communications with class members.  As we demonstrated, Menu Foods was

repeatedly calling putative class members -- often through the use of automated telephone calls

and  messages -- including class members who it had been told were represented by counsel.  We

also marshaled evidence demonstrating that Menu Foods was intentionally giving misleading

and incorrect legal advice to persons it knew were represented.

23.        We argued that Menu Foods should be prevented from communicating with any

member of the class and that no "corrective" letter be sent out, unless it came from the Court

itself and was both neutral and accurate, a position that ultimately prevailed.

24.    I have also been one of the leading negotiators on the issue of the preservation and/or destruction of certain of the recalled products currently being stored by defendants.  Because my firm has taken the lead on pursuing a spoliation claim against Menu Foods, I have unique insight into some of the relevant facts issues.

25.    Finally, along with Mr. Audet, Mr. Kamber, and certain attorneys from the Wexler Group, I have been involved in some preliminary communications with various defendants (as well as work arising out of those communications) which could potentially lead to resolution of some or all of these cases.

**B&E's Additional Advocacy Efforts**

26.    My firm has also had what is unquestionably the leading role in efforts outside of the litigation, including writing an editorial in USA Today about the pet food crisis, providing testimony  for the hearing of the U.S. Senate Subcommittee on Agriculture Appropriations on "Pet Food Contamination," contributing drafts of model legislation to the office of United States Senator Richard Durbin and providing consultation to numerous individuals and public interest groups around the country working on similar legislative efforts.

27.    These public education, legislative, and advocacy efforts have enhanced our ability to litigate this case in numerous ways, including allowing us to combat defendants' public relations machine.

28.    After our efforts to focus media attention on the inadequate scope of the initial recall -- and our publicized explanation that it would bring fraud claims against any company withholding information from the public -- more than a dozen additional recalls were announced. Similarly, it now appears that -- after we made public that Menu Foods had admitted to

destroying recalled products returned to it by consumers received (an admission that gave rise to

our spoliation claim) -- Menu Foods began to preserve the recalled food it was receiving.

29.        Our legislative and public awareness efforts have yielded other, albeit less direct,

benefits.  First, we have established relationships with numerous public interest groups and

governmental agencies that have provided invaluable assistance in researching the facts of this

case.  Second, this knowledge and understanding of the facts has, in turn, prepared us  to be

especially effective in the discovery phase of this case.  Third, we have become highly sensitive

to the particular concerns of the class members in this litigation.  Unlike class members in a more

conventional consumer or securities cases, the members of the instant putative class are much

more emotionally invested in this case and tend to have very strong views about the appropriate

remedies (which must needs extend far beyond the merely financial).

Pursuant to 28 USC § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: September 1, 2007

EXHIBIT 1

# BLIM & EDELSON, LLC
53 W. Jackson Blvd.; Suite 1642
Chicago, Illinois 60604
312-913-9400
312-913-9401 (fax)
www.blimlaw.com

## FIRM RESUME

Since its inception in 2001, Blim & Edelson, LLC has concentrated its practice on plaintiffs'-side class actions and other complex civil litigation. Currently over 95% of its work is spent prosecuting plaintiff's-side consumer class actions.

The firm is currently lead or co-lead counsel in class action cases brought in state and federal court in Illinois, Pennsylvania, Michigan, Indiana, California, New York and Massachusetts. In total, our attorneys have litigated dozens of large class actions throughout the country, and have secured relief for our clients amounting to more than one hundred million dollars.

Our attorneys have prosecuted class actions against health clubs, dating agencies, life and health insurance companies, alarm installation companies, telephone companies, debt collection agencies, publishers, advertising companies, and internet-based companies, among others. We place a special emphasis on emerging technology class actions (including, for example, cases against on-line companies, cell phone content providers, cell phone companies, and domain name registration companies).

Additionally, our firm has been involved in a number of high-profile "mass tort" class and mass actions, including cases against Menu Foods for selling contaminated pet food, hospitals for failing to warn former patients of the possibility of contracting hepatitis C from past blood transfusions , and suits involving damages arising from second hand smoke.

The firm's cases frequently involve important legal issues, and regularly receive attention from local, national, and international media. Our cases and attorneys have been reported in the Chicago Tribune, USA Today, the Wall Street Journal, the New York Times, the LA Times, by the Reuters and UPI news services, and BBC International. Our attorneys have appeared on numerous national television and radio programs, including on ABC World News, CNN, Fox News, NPR, and CBS Radio, as well as television and radio programs outside of the United States. We have also been called upon to give congressional testimony and other assistance in hearings involving our cases.

## OUR ATTORNEYS

**JOHN BLIM** is a graduate of Northwestern University School of Law, where he received his J.D. degree *cum laude* in 1994. He is a member of the Order of the Coif by virtue of having graduated in the top 10% of his law school class. He served as an associate articles editor on the *Northwestern University Law Review* from 1993 to 1994. Mr. Blim was also a member of the winning team and voted Best Speaker in the law school's moot court competition. From 1994 to 2000, he was a litigation associate at nationally recognized law firms, including Sidley & Austin. In April 2000 he started his own private practice in Chicago, focusing on civil litigation and complex plaintiff's class actions. In July 2001, Jay Edelson joined Mr. Blim to create Blim & Edelson, LLC.

**JAY EDELSON** is a 1996 graduate of the University of Michigan Law School. From 1997to 2000, he was a litigation associate focusing on class action and other complex litigation, working first for large defense firms and then a prominent plaintiff's class action firm. In July 2001, he became a founding member of Blim & Edelson. In April of 2007, Mr. Edelson provided testimony to the Subcommittee on Agriculture Appropriations, Senate Committee on Appropriations, U.S. Senate Hearing on "Pet Food Contamination" in connection with one of the class action cases he is prosecuting.

**MYLES MCGUIRE** graduated from Marquette University Law School in 2000. He joined the firm in 2004, after spending several years counseling high-tech companies. His practice concentrates, nearly exclusively, on consumer protection law and class actions. He is admitted to practice in Wisconsin and Illinois.

## NOTABLE CASES

### GENERAL CONSUMER PROTECTION CLASS ACTIONS

**Pulcini v. Bally Total Fitness Corp., No. 05 CH 10649 (Cook County, Ill.)**
B&E was lead counsel in four class action lawsuits brought against two health clubs and three debt collection companies. A global settlement provided the class with over $40 million in benefits, including cash payments, debt relief, and free health club services.

**Kozubik v. Capital Fitness, Inc., 04 CH 627 (Cook County, Ill.)**
B&E was lead counsel in state-wide suit against a leading health club chain, which settled in 2004, providing the over 150,000 class members with between $11 million and $14 million in benefits, consisting of cash refunds, full debt relief, and months of free health club membership.

**Kim v. Riscuity, No. 06 C 01585 (N.D.Ill)**
B&E was lead counsel in suit against a debt collection company accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with full debt relief and return of all money collected.

**Jones v. TrueLogic Financial Corp., No. 05 C 5937 (N.D.Ill)**
B&E was lead counsel in suit against two debt collectors accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with approximately $2 million in debt relief.

**Fertelmeyster v. Match.com, No. 02 CH 11534 (Cook County, Illinois)**
B&E was sole class counsel in a state-wide class action suit brought under Illinois consumer protection statutes. The settlement provided the class with a collective award with a face value in excess of $3,000,000

**Cioe v. Yahoo!, Inc., No. 02 CH 21458 (Cook County, Illinois)**
B&E was sole class counsel in a state-wide class action suit brought under state consumer protection statutes. The settlement provided the class with a collective award with a face value between $1,600,000 and $4,800,000.

**Cioe v. Lycos, No. 02 CH 21456 (Cook County, Illinois)**
B&E was sole class counsel in a state-wide class action suit settled under state consumer protection statutes.

**Gavrilovic v. Vintacom Media Group, Inc., No. 04 CH 11342 (Cook County, Illinois);**
B&E was sole class counsel in a state-wide class action suit settled under state consumer protection statutes.

**McArthur v. Spring Street Networks, 100766/2004 (NY Cty.)**
B&E was lead counsel in a nationwide class action suit settled under New York consumer protection statutes.

**California Reconveyance Cases**
Jay Edelson was part of a team of attorneys who settled a series of state court class action cases under California's Reconveyance Statute. Cases settled for a collective amount of over $10,000,0000.

### "NEW TECHNOLOGY" CONSUMER PROTECTION CLASS ACTIONS

**Shen v. Distributive Networks LLC. No. 06 C 4403 (N.D.Ill.)**
B&E was lead counsel in a class action alleging that defendant violated federal law by sending unsolicited text messages to the cellular telephones of consumers throughout the country. The settlement – which is the first of its kind in the country – provided each class member with up to $150 in cash.

**Zurakov v. Register.com, No. 01-600703 (N.Y.Cty, New York)**
B&E was lead counsel in a class action brought on behalf of an international class of over one million members against Register.com for its deceptive practices in registering internet domain names. In November, 2003, the New York Supreme Court (trial division) granted final approval of a settlement that

required Register.com to fully disclose its practices and provided the class with a relief with a collective face value in excess of $17 million.

## INSURANCE CLASS ACTIONS CASES

### Holloway v. J.C. Penney, No. 97 C 4555, (N.D.Ill.)
Jay Edelson was one of the primary attorneys in a multi-state class action suit alleging that the defendant illegally denied life insurance benefits to plaintiffs' class. The case settled in or around December of 2000, resulting in a multi-million dollar cash award to the class.

### Ramlow v. Family Health Plan (Wisc.Cir.Ct.):
Jay Edelson was co-lead counsel in a class action suit challenging defendant's termination of health insurance to groups of self-insureds. The plaintiff won a temporary injunction, which was sustained on appeal, prohibiting such termination and eventually settled the case ensuring that each class member would remain insured.

## MASS/CLASS TORT CASES

### Aaron v. Chicago Housing Authority, 99 L 11738, (Cook County, Illinois)
Jay Edelson was part of team representing a group of public housing residents bringing suit over contamination-related injuries. Case settled on a mass basis for over $10,000,000.

### Sturman v. Rush Presbyterian-St.Luke's Medical Center, 2000 L 11069 (Cook County, Ill.)
Blim & Edelson is part of team of attorneys in suit against hospital and national association of blood banks alleging failure to warn of risks of hepatits C infection as a result of past blood transfusions.

### Januszewski v. Horseshoe Hammond, No. 2:00CV352JM (N.D.Ind.)
Jay Edelson was part of team of attorneys in mass suit alleging that defendant riverboat casino caused injuries to its employees arising from exposure to second-hand smoke.