**KAMBER & ASSOCIATES, LLC**
Scott A. Kamber
11 Broadway, 22nd Floor
New York, NY 10004
Tel: (646) 964-9600
(Proposed) Lead Counsel

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| IN RE PET FOODS PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL Docket No. 1850<br>Master Docket: 3:07 CV 2867 (NLH)(AMD)<br>ALL CASES |

**DECLARATION OF SCOTT A. KAMBER IN SUPPORT**
**OF THE MOTION OF NATIONAL PLAINTIFFS FOR APPROVAL OF SELECTION**
**OF LEAD COUNSEL PURSUANT TO THIS COURT'S AUGUST 14, 2007 ORDER**

1

**Scott A. Kamber** declares under penalty of perjury this 5th day of September 2007:

1.     I am the managing partner at the law firm of Kamber & Associates, LLC. I submit this declaration in support of the motion for approval of the National Plaintiffs selection of lead counsel. I have personal knowledge of all statements contained herein. My CV and firm resume are attached as Exhibit 1.

2.     My firm concentrates on complex consumer law class action litigation on a national and international basis. We specialize in technology-related litigation and representing individuals and businesses domestically, as well as in complex international matters. Our practice brings the firms attorneys before federal and state courts throughout the United States and arbitration panels abroad.

3.     Presently, Kamber & Associates serves as lead or co-lead counsel in numerous litigations including *In re Netflix Antitrust Litigation*; *In re Network Commerce Securities Litigation; In re ATI HDCP Litigation*; and *In re Power Plug Litigation* (Hewlett Packard). My firm regularly serves in leadership roles in numerous litigations including suits on behalf of consumers, shareholders, and private corporations in the United States and abroad. I have served as lead counsel and in other leadership roles for numerous class actions that have achieved significant results, including In re Sony BMG CD Technologies (ground-breaking settlement providing injunctive relief and refunds to customers who purchased music CD's which could compromise computer security); Wormley v. GeoCities (consumer class action for privacy violations that is believed to be the first internet privacy case to recover a benefit for impacted class members); In re Starlink Growers (represented sub-class of farmers who grew Starlink in a consolidated

settlement of federal class action valued in excess of $100 million); In re Loch Harris (derivative action that successfully obtained dissolution of corporation and distribution of assets to shareholders); In re Command Systems (securities class action in which participating shareholders recovered over 80% of their losses); and In re WebTV (consumer class action for false advertising). In addition to these commercial litigations, I have been involved in the efforts of African torture victims to bring their persecutors to justice under the Alien Tort Claims Act and has achieved significant decisions for his clients before the United States Court of Appeals for the Second Circuit and the Southern District of New York. One such result, Cabiri v. Ghana, 165 F.3d 193 (1999), is a leading Second Circuit case under the Foreign Sovereign Immunities Act.

4. In 1991 I graduated cum laude from University of California, Hastings College of the Law in 1991 where I was Order of the Coif, Articles Editor for Hastings Constitutional Law Quarterly and a member of the Moot Court Board. Prior to that I graduated with University and Departmental Honors from The Johns Hopkins University.

5. During my career, I have gained extensive court room experience and have taken approximately 20 cases to trial. I am admitted to practice in the State of New York as well as the United States Supreme Court, the United States Court of Appeals for the Second Circuit and Eighth Circuit, and the United States District Courts for the Southern and Eastern Districts of New York. Prior to practicing law, I was a financial consultant.

6. This lead application is submitted not only on behalf of the attorneys who have appeared before this Court in the litigation, but is also presented on behalf of each of more than a dozen law firms who filed, throughout the United States, similar class-

wide claims against Defendants, relating to the Menu Foods recall. The Consumer Counsel Group worked together to ensure that this litigation would be prosecuted in an efficient and cost-effective manner.

7. Since early April 2007, attorneys at my firm and I have been involved in investigating and prosecuting the case against Menu Foods and other defendants almost on a daily basis. Among other client-related activities, we been retained by in excess of 500 individual clients; and gathered critical information about the case, including interviews with our clients and others with claims.

8. When the first of the Menu Foods class actions were filed, the Consumer Counsel Group was far from being a defined group, let alone a cohesive one. At no time prior to the filing of our own respective cases, did this group of firms meet to discuss a group strategy regarding either the representation of their respective clients, or their decision to file their cases. The separate filings resulted from the considered judgment of the respective attorneys from each group regarding how best to pursue their respective clients' claims.

9. To my knowledge, the proposed leadership of the Consumer Counsel Group has made *no* promises of work to other law firms, *no* promises of committee assignments, *no* promises of an attorney fee division and *no* quid pro quo agreements of any kind in order to obtain the support of any attorney.

10. It was not until after the Peninsula Meeting that the firms that now comprise the Consumer Counsel Group began to work together. From my perspective, the group was initially brought together by a fundamental belief that this type of organization strategy was inefficient, contrary to the intentions of Rule 23 and not

appropriate. Myself and several of the firms I worked with at the time believed that there would be limited resources for recovery and thus efficiency by counsel was critical. Further, attorneys at my firm and attorneys from several other firms that would become part of the Group had spent hours each day on the phone with pet owners who were dealing with an intense personal tragedy. It struck me as wrong that in a case such as this 100 lawyers from all over the country should fly to Chicago to meet in a luxury ballroom to discuss patronage.

11.     Since mid-April I was in contact with counsel for Menu Foods to discuss a variety of issues regarding the litigation. As a result, I have spent a considerable amount of time and energy devoted to working on a host of issues with Menu Foods and other defendants in this case. Initially, I met with Menu Foods in house and outside counsel, as well as with its Canadian attorneys. I have also met with Canadian Plaintiffs attorneys in Toronto who have filed a number of class action cases in Canada.

12.     With help from other lawyers from the Consumer Counsel Group, I played a key role in opening up a productive dialogue with defense counsel in order to deal with a broad range of issues, including spoliation of evidence and storage of evidence.

13.     These discussions have led to a productive rapport with opposing counsel. These discussions have been expanded to include members of the Wexler Group, leading to several productive meetings between the parties.

14.     Notwithstanding our group's disagreement with the "Berger/Wexler" group's approach to leadership and committee assignments, over the past few months I have worked very constructively on a host of issues with certain members of that group. I have worked very well with Mark Tamblyn, in particular, over the past few months.

During our interactions, we have been able to work for the common good. Based on my contacts with him, Mr. Tamblyn is an excellent attorney with a great deal of case-specific knowledge. Despite our differences of opinion on the leadership and other issues, we have been able to put aside such differences to work on a unified front against the defendants.

15. My firm has also been involved in matters before this Court as well. Upon learning of pending motions in the *Workman* and *Sokolwski* matters, I worked in support of the Wexler Group's motion. These efforts included providing the Court with supporting affidavits from clients of the Consumer Counsel Group, arguing plaintiffs' positions before the Court, and being involved with Mr. Paul in each phase of negotiation with defendants regarding the terms of the consent orders and letters that resulted from the Court appearances. During these efforts, I worked closely with Mr. Paul in negotiations with defendants regarding the terms of the consent orders and letters resulting from the Court appearances. I found Mr. Paul professional in his approach and knowledgeable about the matters we had worked on together.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Date: September 5, 2007

_____
Scott A. Kamber

# EXHIBIT 1

**BIOGRAPHICAL INFORMATION FOR KAMBER & ASSOCIATES, LLC**

**SCOTT A. KAMBER** is the Managing Partner of Kamber & Associates, LLC and specializes in technology-related litigation and representing individuals and businesses domestically, as well as in complex international matters. Mr. Kamber has an extremely diverse practice before federal and state courts throughout the United States and arbitration panels abroad, with clients ranging from individuals to multinational corporations to classes of consumers and investors. Experienced in law and business, Mr. Kamber has a proven track record of addressing a client's needs in an individualized manner that is sensitive to budgetary requirements.

Presently, Kamber & Associates serves as lead or co-lead counsel in *In re Netflix Antitrust Litigation*; *In re Network Commerce Securities Litigation*; *In re ATI HDCP Litigation*; and *In re Power Plug Litigation (Hewlett Packard)*. Mr. Kamber and his firm regularly serve in leadership roles in numerous litigations including suits on behalf of shareholders, consumers and private corporations in the United States and abroad. Mr. Kamber has served as lead counsel and in other leadership roles for numerous class actions that have achieved significant results, including *In re Sony BMG CD Technologies* (ground-breaking settlement providing injunctive relief and refunds to customers who purchased music CD's which could compromise computer security); *Wormley v. GeoCities* (consumer class action for privacy violations that is believed to be the first internet privacy case to recover a benefit for impacted class members); *In re Starlink Growers* (represented sub-class of farmers who grew Starlink in a consolidated settlement of federal class action valued in excess of $100 million); *In re Loch Harris* (derivative action that successfully obtained dissolution of corporation and distribution of assets to shareholders); *In re Command Systems* (securities class action in which participating shareholders recovered over 80% of their losses); and *In re WebTV* (consumer class action for false advertising). In addition to these commercial litigations, Mr. Kamber has been involved in the efforts of African torture victims to bring their persecutors to justice under the Alien Tort Claims Act and has achieved significant decisions for his clients before the United States Court of Appeals for the Second Circuit and the Southern District of New York. One such result, *Cabiri v. Ghana*, 165 F.3d 193 (1999), is a leading Second Circuit case under the Foreign Sovereign Immunities Act.

Mr. Kamber graduated cum laude from University of California, Hastings College of the Law in 1991 where he was Order of the Coif, Articles Editor for Hastings Constitutional Law Quarterly and a member of the Moot Court Board. Mr. Kamber graduated with University and Departmental Honors from The Johns Hopkins University in 1986. Mr. Kamber has extensive courtroom experience and has tried over 20 cases to verdict. Prior to founding Kamber & Associates, LLC, Mr. Kamber represented both plaintiffs and defendants in a wide range of commercial litigation. Mr. Kamber is admitted to practice in the State of New York as well as the United States Supreme Court, the United States Court of Appeals for the Second Circuit and Eighth Circuit, and the United States District Courts for the Southern and Eastern Districts of New York. In addition, Mr. Kamber is well-versed in the procedures and practice of numerous arbitration forums, both domestic and international. Prior to practicing law, Mr. Kamber was a financial consultant.

**STUART D. WECHSLER** is Of Counsel to Kamber & Associates. The efforts of Mr. Wechsler in the area of securities litigation have received considerable judicial comment. U.S. District Court Judge Alvin K. Hellerstein commented in *Doney v. Command Systems*, (98 Civ. 3279), in an opinion dated August 10, 1999, "I don't think it needs my comment to note that, Mr. Wechsler, you are a senior and most respected and most competent member of the securities class action bar. I would take it as a given your hours are worth the rates that you charge and that the hours that you have put in reflect the efficiency with which you work." In a report dated May 23, 1977, in *Bucher v. Shumway*, 76 Civ. 2420 (S.D.N.Y.), United States Magistrate Leonard Bernikow stated that "Stuart Wechsler . . . is a leading expert in securities class action litigation." Mr. Wechsler also led the team of attorneys that successfully prosecuted the class action, *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979), to a landmark decision in federal civil procedure. He was also the responsible partner in *Van Gemert v. Boeing*, one of the earliest actions maintained as a class action under the then newly amended Federal Rules of Civil Procedure and one of the very few securities class actions ever to go to trial and judgment. Moreover, Mr. Wechsler played an integral role in obtaining a landmark Supreme Court decision in an important phase of that action. *See Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980).

Mr. Wechsler was admitted to the bar 1958, New York; Supreme Court; U.S. Court of Appeals, Second, Third and Fifth Circuits; U.S. District Court, District of Arizona; U.S. District Court, Western District of Michigan. Education: University of Pennsylvania (B.S., 1953); Yale University (J.D., 1955). Editor: "Prosecuting and Defending Stockholder Suits," Practicing Law Institute, Nov., 1973. Author: "The Securities Acts Amendments of 1964," Stock Market Magazine, November, 1964; "Notice to Debenture Holders," The Review of Securities Regulation, April 15, 1976. Chairman: PLI Programs regarding class actions and stockholder suits, 1970-1977, "New Trends in Securities Litigation," 1977-79 and "Exemptions from Registration: Spinoffs-Shells and other Devices," 1970. Faculty Member, Columbia Law School Continuing Education Programs, 1979-1982. Chairman: Practicing Law Institute program, "Stockholder Suits and Class Actions," 1986; University of Virginia seminar, "Trial of a Securities Case," 1989. Lecturer, Panels on Securities Litigation and Class Actions, American Bar Association, 1975; ALI-ABA Study Course, Civil Rico Member, Board of Directors, Concert Artists Guild, 1982-1984. Member, Board of Editors, "Class Action Reports," 1977. Chairman, Securities Law Committee, Federal Bar Council, 1980-1985. Member, Committee on Second Circuit Courts of the Federal Bar Council, 1986. Member: American Bar Association; Federal Bar Council.

**ETHAN PRESTON** is a class action attorney specializing in consumer technology. Mr. Preston received his Bachelor of Arts degree with honors from the Plan II honors program at the University of Texas at Austin, and his J.D. with distinction from the Georgetown University Law Center in 2001. Mr. Preston has taken substantial leadership roles in *In re Netflix Antitrust Litigation*; *In re Network Commerce Securities Litigation*; *In re ATI HDCP Litigation*; and *Johnson et. al v. Microsoft*.

Mr. Preston is admitted to practice before the Northern District of Illinois, the District of New Mexico, and Illinois state courts. Mr. Preston is an inactive member of the New Mexico state bar. Mr. Preston has authored articles for several law reviews and legal publications, including *The Global Rise of a Duty to Disclose Information Security Breaches*, 22 J. Marshall J. Computer & Info. L. 457 (2004) (with Paul Turner), *Computer Security Publications: Information Economics, Shifting Liability and the First Amendment*, 24 Whittier L. Rev. 71 (2002) (with John Lofton), and *The USA PATRIOT Act: New Adventures in American Extraterritoriality*, 10 J. Fin.Crime 104 (2002). Mr. Preston has lectured on copyright issues at the University of Illinois at Chicago, and on comparative law on attorneys' fees and costs for the Center for International Legal Studies.

**DANA B. RUBIN**, is a litigator who staffs a wide-range of cases at Kamber & Associates, LLC. She graduated with honors from the University of Maryland, College Park in 1993. She received her J.D. in 1999 from Fordham University School of Law, where she was an Associate Editor on the Intellectual Property, Media & Entertainment Law Journal.

Prior to joining Kamber & Associates, Ms. Rubin has played a role in numerous private and class actions on behalf of shareholders and consumers, including the In re Initial Public Offering Litigation. Ms. Rubin has also represented both plaintiffs and defendants in employment litigation and civil rights matters. Ms. Rubin is admitted in the State Courts of New York and the United States District Courts for the Southern and Eastern Districts of New York. She is a member of the New York State Bar Association and the American Bar Association.