UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: PET FOOD PRODUCTS LIABILITY LITIGATION | Civil Action No. 07-2867 (NLH) |
| | MDL Docket No. 1850 |
| THIS DOCUMENT RELATES TO: | |
| ALL CASES | Date: September 26, 2007<br>Time: 11:00 a.m.<br>Courtroom 3A |
| | The Honorable Noel L. Hillman |

## REPLY MEMORANDUM IN SUPPORT OF MOTION FOR APPOINTMENT OF INTERIM CO-LEAD AND LIASON COUNSEL PURSUANT TO FED.R.CIV. P. 23(g)

**TRUJILLO RODRIGUEZ & RICHARDS, LLC**
Lisa J. Rodriguez
8 Kings Highway West
Haddonfield, NJ 08033
Telephone: (856) 795-9002
Facsimile: (856) 795-9887

*Proposed Liaison Counsel for Plaintiffs*
*(Additional Counsel on Signature Page)*

Dated: September 19, 2007

## TABLE OF CONTENTS

                                                                                                                                    **PAGE**

INTRODUCTION ................................................................................................................ 1

ARGUMENT...................................................................................................................... 1

A      Proposed Co-Lead Counsel Draw Their Support From Hard Work, Inclusiveness, And The Respect Of Our Peers ................................................. 1

B.     Proposed Co-Lead Counsel Has The Broadest Support To Fairly And Adequately Represent The Class ........................................................................ 3

C.     Hagens Berman and Coughlin Stoia Have Immensely, Yet Efficiently, Contributed To All Of The Efforts Of Proposed Co-Lead Counsel ................. 6

D.     The Initiatives and Accomplishments of Proposed Co-Lead Counsel Are Unparalleled....................................................................................................... 11

CONCLUSION................................................................................................................. 12

# TABLE OF AUTHORITIES

## FEDERAL CASES

**PAGE**

*In re Cardinal Health, Inc. ERISA Litigation*,
225 F.R.D. 552 (quoting Manual § 10.221)....3

## DOCKETED CASES

*Sokolowski v. Menu Foods, Inc., et al.*,
Case No. 07-01709....9. 10

*Workman v. Menu Foods, et al.*,
Case No. 07-1338....8

## FEDERAL STATUTES

Fed. R. Civ. P. 23(g)....6

Fed. R. Civ. P. 23(g)....6, 8

# INTRODUCTION

The Kamber Group launches unsubstantiated *ad hominem* attacks in its opposition brief in a last-ditch effort to convince the Court that it should lead this litigation, despite the support of the majority of plaintiffs and plaintiffs' counsel for Proposed Lead Counsel and despite the clear leadership, proven expertise, demonstrated skills and tremendous results achieved by Proposed Lead Counsel in this litigation to date.[1] Each of these attacks is without merit. No matter which way you slice the numbers, Proposed Co-Lead Counsel have received significant majority support of both named plaintiffs and plaintiffs' counsel, and have done so based on reputation, demonstrated leadership and tenacity in pursuing the rights of putative class members. Furthermore, the Kamber Group's attack on the input of the Hagens Berman and Coughlin Stoia firms into the work and accomplishments of Proposed Co-Lead Counsel is mere conjecture and is directly contradicted by the facts. It is a transparent attempt to divide and conquer. Finally, Proposed Co-Lead Counsel, working as a unit, have shown themselves to be the leaders of this litigation to date, consistently initiating and making great strides on behalf of putative class members.

# ARGUMENT

**A    Proposed Co-Lead Counsel Draw Their Support From Hard Work, Inclusiveness, And The Respect Of Our Peers**

A substantial portion of the Kamber Group's opposition is devoted to accusing Proposed Co-Lead Counsel of "purchasing" their vast support through promises of committee assignments or other positions. The Kamber Group suggests that Proposed Co-Lead Counsel are effectively disabled from leading this case because of the alleged widespread deal-making. These accusations are baseless and wrong.

---

[1] *See* National Plaintiffs' Consolidated Opposition to the Applications For Lead Counsel Submitted By the Berger/Wexler Group and McLaughlin (hereinafter referred to as "Kamber Opp.")

Proposed Co-Lead Counsel have made no promises, guarantees or assurances to any attorneys in this case, beyond the assurance of opportunity for meaningful work for those qualified firms that intend to contribute to this case. *See* Declaration of Kenneth A. Wexler ("Wexler Decl."), ¶ 3. There have been no promises of financial protection, no fee deals, no guarantees of assignments, no meaningless "make work," and certainly no unseemly side arrangements. *Id*. The Kamber Group has conjured these accusations in their persistent refusal to recognize that our support comes from our hard work on the case and our reputations among our peers (which are among the finest complex litigation firms in the country).

The greatest extent to which a "committee" exists in this case is in the form of a working group of attorneys to address ongoing settlement issues. Messrs. Kamber, Audet and Edelson can certainly be said to work within this group. Wexler Decl., ¶ 4. In fact, soon after Menu Foods expressed its desire to resolve the litigation in open Court on June 27, 2007, we reached out to Mr. Audet to work together by way of a settlement committee. *Id*.

Proposed Co-Lead Counsel have also included Mr. Larry Drury, who is affiliated with The Progressive Law Group and the Wolf Haldenstein firm, who together represent over 500 clients in this litigation. Wexler Decl., ¶ 5. Well before the Majority Plaintiffs became organized to form the Proposed Co-Lead Counsel group, Mr. Drury was involved in discussions with Menu Foods' counsel, and he participated in an early meeting with Menu Foods' attorneys. Menu Foods made clear early on its intention to explore resolution of these cases. *Id*. After this meeting, Mr. Drury expressed his desire to have a voice in settlement, and in the interest of presenting a united front to the defendants, we told him that we wanted his participation. *Id*. His participation, as an attorney with many years of class action experience, benefits the class, and our inclusion of him (with nothing other than our commitment to involve him in settlement issues) demonstrates leadership. These facts do not come close to forming any sinister arrangement of the kind that the Kamber Group posits.

2

Regardless, as formal mediation is set to begin – in fact, the day before the hearing on this motion – Proposed Co-Lead Counsel anticipate the continuing inclusion of Mr. Drury in the settlement process, along with members of the Kamber Group, and the Stern Group to ensure continuity and representation of the various interests.

As shown below, the majority support Proposal Co-Lead Counsel have earned is broad based and not merely the function of duplicative filings, as the Kamber Group alleges. (Kamber Opp. at 5.)

### B. Proposed Co-Lead Counsel Has The Broadest Support To Fairly And Adequately Represent The Class

The MANUAL FOR COMPLEX LITIGATION § 10.221 (4th ed. 1995) (hereinafter, "MANUAL") advises that before appointing lead counsel, courts should "ensure that counsel appointed to leading roles . . . will fairly and adequately represent *all* of the parties on their side . . ." (emphasis added). "Additionally, the court should be confident that any counsel appointed will fulfill its obligation 'to act fairly, efficiently, and economically in the interest of *all* parties and parties' counsel.'" *In re Cardinal Health, Inc. ERISA Litig.*, 225 F.R.D. 552, 555 (S.D. Ohio) (2005) (quoting MANUAL § 10.221) (emphasis added). To this end, the overwhelming support that named plaintiffs and plaintiffs' counsel have demonstrated for Proposed Co-Lead Counsel's appointment is significant. Where approximately 75% of named plaintiffs support Proposed Co-Lead Counsel and Proposed Co-Lead Counsel have named 50 of the 60 defendants who are part of the consolidated cases, Proposed Co-Lead Counsel are well-positioned to represent *all* parties and parties' counsel in this litigation.

The Kamber Group dwells on undermining Proposed Co-Lead Counsel's support and accuses Majority Plaintiffs of filing "duplicative (and identical)" cases. Kamber Opp. at 5. This assertion is unfounded. The scope and complexity of the Recall is reflected by the number of

3

cases filed in this litigation. Complaints filed by Majority Plaintiffs assert a panoply of claims ranging from those based on state unfair business practices statutes, fraud, and products liability theories. Furthermore, the number of cases filed addresses the multitude of potentially responsible parties America's pet owners seek to hold accountable for the illness and death of their pets. Majority Plaintiffs should be commended for their thoroughness and for their zealous advocacy on behalf of pet owners. By contrast, this Court should question the lack of vigor with which the Kamber Group has pursued critical defendants in this litigation.

The Kamber Group argues that many of the cases filed by pet owners are identical and unnecessary (Kamber Opp. at 5). However, this is a case of great magnitude, with many possible theories of liability and dozens of defendants (many not named by the Kamber Group), requiring pet owners to file a significant number of complaints. Although a pared-down version of this case might be more manageable for the Kamber Group, given its relative resources and experience, such is simply not the reality. The magnitude and demands of this case (whether being litigated in the court or proceeding through the settlement process) must not be diminished, but met by the firms with the most initiative, support from the plaintiffs' bar, experience and resources.

The Kamber Group continues to criticize Proposed Co-Lead Counsel for engaging in a "popularity contest" (Kamber Opp. at 5) and "vote" counting (Kamber Opp. at 1), yet admits that the support of named plaintiffs and cases is an important factor to be considered in the appointment of lead counsel. For instance, while the Kamber Group attempts to minimize the importance of this support, at the same time, it stresses to the Court that "[Proposed Co-Lead Counsel] has a very small margin of more 'votes' than the Consumer Counsel Group." *Id.* Thus, while Proposed Co-Lead Counsel do not indulge the Kamber Group's characterization of

4

Majority Plaintiffs support as mere "votes," the Kamber Group's assertion that their application enjoys only slightly less support than Proposed Co-Lead Counsel's is not only hypocritical, but entirely false.

Indeed, the Kamber Group attempts to diminish Proposed Co-Lead Counsel's margin of support by employing mathematical gymnastics and absurd depictions of Majority Plaintiffs' cases. The Kamber Group finds its way to being only slightly disadvantaged "once [Majority Plaintiffs are] stripped of the duplicative filings of identical class actions, and only allowing one vote per case filed to date, . . ." Kamber Opp. at 1. However, even after stripping away any possibility of duplicative filings by counting only once each firm that filed its own complaint, Proposed Co-Lead Counsel would still have the support of *more than twice* the firms and cases as the Kamber Group.

Furthermore, if we also include in our count of supportive firms those firms that only filed a case in conjunction with another firm, Proposed Co-Lead Counsel would enjoy the support of 60 firms. In comparison, the Kamber Group would represent only 16 firms.

The Kamber Group also accuses Majority Plaintiffs of submitting complaints "with multiple firms on each of the groups [sic] . . . filings." Kamber Opp. at 6. Yet, nearly half of the firms supporting the Kamber Group have filed complaints that list multiple firms. Furthermore, although the Kamber Group singles out Hagens Berman and Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") for filing multiple actions in this litigation, (Kamber Group Opp. at 5 n.2), the Kamber Group fails to call attention to Milberg Weiss & Bershad, LLP, which supports the Kamber Group and filed no less than five complaints, more than that filed by Kaplan Fox.

5

### C.   Hagens Berman and Coughlin Stoia Have Immensely, Yet Efficiently, Contributed To All Of The Efforts Of Proposed Co-Lead Counsel

The Kamber Group argues that Coughlin Stoia and Hagens Berman "seem to offer little more than their resumes" and "promises" "to contribute in the future" and "have made a limited contribution to the litigation." Kamber Opp. at 8-9. The unsupported attack ignores the two firms' obvious and significant contributions to the advancement of the case and reflects a basic misunderstanding of how complex cases can and should be managed to maximize resources for the benefit of the class. The work Proposed Co-Lead Counsel have accomplished together demonstrates the ability of the firms to work collaboratively in the best interests of the class without duplicative effort or generating needless expense. It also underscores the appropriateness of appointing Proposed Co-Lead Counsel, with liaison counsel Lisa Rodriguez, as interim lead counsel in this case. Although the work of Proposed Co-Lead Counsel has been fully briefed in previous submissions, Majority Plaintiffs address the Kamber Group's claims about Coughlin Stoia and Hagens Berman in summary here.

Coughlin Stoia and Hagens Berman have been intimately involved in this litigation – and the protection of aggrieved pet owners – since each firm was independently contacted and retained by pet owners and initiated lawsuits in the weeks after the initial recall, filing two of the first cases against the Menu Foods defendants on March 26, 2007 and March 27, 2007 respectively.[2]

---

[2] *See* Declaration of Paul J. Geller In Reply to Kamber Group's Opposition to Majority Plaintiffs' Motion for Appointment of Interim Co-Lead Counsel and Liaison Counsel Pursuant to Fed. R. Civ. P. 23(g) ("Geller Decl."), ¶ 8; Declaration of Steve W. Berman In Reply to Kamber Group's Motion for Appointment of Interim Co-Lead Counsel and Liaison Counsel Pursuant to Fed. R. Civ. P. 23(g) ("Berman Decl."), ¶¶ 7, 9-10 In contrast, Mr. Kamber *did not appear to even represent a plaintiff in this litigation* until Mr. Audet associated with him to object to one of Proposed Co-Lead Counsel's show cause motions in late-May 2007.

Immediately after filing suit on March 26, 2007, Coughlin Stoia reached out to the law firms of Wexler Toriseva and Berger & Montague to ascertain whether those firms would be interested in combining all three firms' substantial class action experience and resources to protect the interests of aggrieved pet owners in this case. It quickly became clear that, given the number of potentially responsible parties and the expansiveness of the pet food recalls, a multiple firm leadership group would be the best structure to protect the interests of the putative class. Accordingly, as early as late-March/early-April 2007, Coughlin Stoia, Wexler Toriseva and Berger & Montague agreed to work together. Geller Decl., ¶ 9.

Over the course of the next few weeks, Coughlin Stoia, with Wexler Toriseva and Berger & Montague, worked to organize the plaintiffs' law firms involved in the litigation. The three firms collectively proposed that counsel for the then over 80 plaintiffs meet in Chicago in an attempt to reach a consensus regarding a number of outstanding issues, including evidence preservation and expert retention, as well as to discuss the factual and legal aspects of the case. Geller Decl., ¶ 10. Hagens Berman, which had been also working vigorously to prosecute its own cases on behalf of aggrieved pet owners, also participated in the organizational meeting in Chicago. Berman Decl., ¶ 11. Coughlin Stoia, Wexler Toriseva and Berger & Montague were each contacted by several law firms representing several plaintiffs in this litigation each of whom indicated their appreciation of and support for the work performed to date by our group. Geller Decl., ¶ 10. Shortly thereafter, based upon its unique contributions and vast expertise in litigating complex consumer class actions, Hagens Berman joined the Majority Plaintiffs' group. Berman Decl., ¶ 10.

In April 2007, Coughlin Stoia, along with Wexler Toriseva and Berger & Montague, also coordinated a meeting with national counsel for the Menu Foods defendants in Chicago to

7

discuss, among other things, Menu Foods' insurance coverage, and Menu Foods' thoughts on which district court should oversee the multidistrict litigation. Geller Decl., ¶ 11. This meeting began a substantive dialogue with counsel for Menu Foods that, despite recent changes in defense counsel, continues to the present.

Also in April, the Menu Foods defendants filed motions to stay every case pending against them in light of the pending MDL proceedings. Following the filing of these motions, including those filed in all five of Coughlin Stoia's cases, Coughlin Stoia was instrumental in obtaining the first stipulations with the Menu Foods defendants to preserve evidence during the pendency of the stay. Geller Decl., ¶ 12. This order served as the model for similar orders entered in a substantial number of the pet food cases in other federal district courts. *Id.*

In early May 2007, the Majority Plaintiffs learned that Menu Foods, through its hired claims administrator, had been engaging in improper communications with members of the putative class in an attempt to obtain information and, eventually, to settle their individual claims. Together many of the firms of the Majority Plaintiffs' group investigated the facts behind the reports and researched the law concerning communications with class members and with represented parties and concluded that Menu Foods' communications required immediate court intervention. Geller Decl., ¶ 13; Berman Decl., ¶ 13. Coughlin Stoia and Hagens Berman attorneys conferred extensively on the objectives of the motion and the legal support for the objectives with attorneys from Wexler Toriseva and Berger & Montague  The four firms jointly drafted the show cause motion against Menu Foods in *Workman v. Menu Foods, et al.*, Case No. 07-1338 (NLH) (D.N.J.). *Id.* The Court heard the matter on May 18, 2007.

Although they were directly involved in the research and briefing of the issues and development of the strategy, Coughlin Stoia and Hagens Berman attorneys did not personally

8

attend this and other hearings related to Menu Foods' improper communications for three reasons: (1) Berger & Montague's proximity to the courthouse; (2) Coughlin Stoia and Hagens Berman's belief that dispatching additional firms to the hearing would be an unnecessary waste of resources, the type of waste for which lawyers are routinely assailed, and, most importantly; (3) the firms' absolute confidence in co-counsel's ability to address the issues raised by the motion. Geller Decl., ¶ 13; Berman Decl., ¶ 13.

After the Court ordered that a proposed curative communication to class members be issued, Coughlin Stoia and Hagens Berman worked closely with Wexler Toriseva and Berger & Montague over a very short period of time to draft a proposed communication. In addition, following a subsequent hearing on the show cause motion held on May 24, 2007, Coughlin Stoia and Hagens Berman worked closely with Wexler Toriseva and Berger & Montague to draft and negotiate with Menu Foods over the form of a proposed Consent Order, which was entered by the Court in the *Workman* action on June 4, 2007. Geller Decl., ¶ 14; Berman Decl., ¶ 14. Coughlin Stoia and Hagens Berman performed similar substantive work with respect to the Majority Plaintiffs Groups' show cause motion against Procter & Gamble in the action styled *Sokolowski v. Menu Foods, Inc., et al.*, Case No. 07-01709 (NLH) (D.N.J.), which this Court granted on June 27, 2007, and the negotiating and drafting of the curative letter eventually issued by Procter & Gamble as a result. Geller Decl., ¶ 14; Berman Decl., ¶ 15. In sum, Coughlin Stoia and Hagens Berman attorneys have worked tirelessly with attorneys at Wexler Toriseva and Berger & Montague to ensure that putative class members are protected from misleading and improper contacts by certain defendants in this litigation.

In addition, as described in previous filings with this Court, Hagens Berman has affiliated itself with the Animal Law Offices of Adam P. Karp because of Mr. Karp's excellent credentials

9

and position at the forefront of the developing field of animal law. Berman Decl., ¶ 8. This affiliation clearly enhances Hagens Berman's representation of the class because of Mr. Karp's experience, knowledge and qualifications, particularly in the areas of animal damage, loss and valuation. Indeed, since Hagens Berman's initial affiliation, the firm has tapped into his expertise. *Id.* Likewise, in mid-May 2007, Coughlin Stoia was contacted by attorneys at the California law firm of Berding & Weil who advised Coughlin Stoia that they had been retained by hundreds of pet owners seeking to hold Menu Foods and others responsible for injuries to or the death of their pet(s). Geller Decl., ¶ 15, Berding & Weil, who now represents 913 pet owners and maintains contact with thousands more, sought out Coughlin Stoia in connection with the pet food litigation because of the firm's leadership in this litigation, as well as its preeminence in the field of class action litigation. *Id.*

Further, Hagens Berman has taken the lead on working with many defendants on evidence preservation issues posed by the volume of recalled product for each of the defendants and negotiating site visits for each of the warehouses affected. Berman Decl., ¶ 17. The work includes consulting with biostatisticians concerning the creation of a valid sampling plan for the products and negotiating the terms of any sampling plan. Hagens Berman has worked directly and cooperatively with the Kamber Group on this issue. *Id.*

Coughlin Stoia and Hagens Berman have also not waited to begin the necessary research concerning many of the key legal issues confronting the plaintiff class in this case. Coughlin Stoia and Hagens Berman attorneys, working collaboratively with other lawyers in the group, have conducted a significant amount of research on the questions of the effect of indemnity agreements purportedly in existence between Menu Foods and its vendors, and the ability of aggrieved pet owners to obtain "special damages" for the loss of their pets as a result of the

10

defendants' negligence and breach of warranty, among other issues. Geller Decl., ¶ 16; Berman Decl., ¶ 16.

In sum, it is noteworthy that the Kamber Group's criticism of Coughlin Stoia and Hagens Berman does not address the firms' respective successes, abilities and resources – the factors that courts are bound to consider in appointing lead counsel - because they cannot. Instead, the Kamber Group offers an empty attack on the constructive professional relationship, a relationship premised on collaborative leadership, without duplication and squandering of resources.

### D. The Initiatives and Accomplishments of Proposed Co-Lead Counsel Are Unparalleled

Proposed Co-Lead Counsel believe we have always acted in the best interests of putative class members, whether attempting to organize the large amount of cases, information and plaintiffs' lawyers, including the Kamber Group when appropriate, or to ensure that affected pet owners received all relevant information before deciding to settle with defendants. It is our intention to continue to do so. But when it comes down to who should lead this case, this Court has seen how proactive we are, how tenacious and how skilled. This Court has read our briefs, heard our oral arguments before it, witnessed how we effectively negotiate and reach resolution and seen how we include others in the process. The four firms that comprise the Proposed Co-Lead Counsel Group have worked together cohesively and efficiently thus far, and believe they have shown that they comprise the group most able and most capable of continuing to pursue the rights of all affected pet owners.[3]

---

[3] Proposed Co-Lead Counsel take note that the Stern Group has filed the Reply Declaration of Alan Sash in support of its initial Rule 23(g) motion. In that Declaration, the Stern Group evades proffering any substantive arguments in support of its Lead Plaintiff Motion and fails to indicate that it has support from *any* of the plaintiffs or firms in this case. Instead, it argues that this complex and integrated case be divvied up among the 3 moving groups. This is no more than a ploy to secure for itself a lead position in this case which it has not earned through contributions to the

11

## CONCLUSION

For the foregoing reasons, the Court should appoint the law firms of Berger & Montague, P.C., Wexler Toriseva Wallace LLP, Coughlin Stoia Geller Rudman & Robbins LLP and Hagens Berman Sobol Shapiro LLP as interim co-lead counsel in this case.

DATED: September 19, 2007   **TRUJILLO RODRIGUEZ & RICHARDS, LLC**

By    s/ Lisa J. Rodriguez
Lisa J. Rodriguez
8 Kings Highway West
Haddonfield, NJ 08033
Telephone: (856) 795-9002
Facsimile: (856) 795-9887

*Proposed Liaison Counsel for Plaintiffs*

Kenneth W. Wexler
Mark J. Tamblyn
WEXLER TORISEVA WALLACE LLP
55 West Monroe Street, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Sherrie R. Savett
Russell D. Paul
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4636

---

case, established expertise and reputation, or support from other plaintiffs and plaintiffs' counsel. Furthermore, granting the Stern Group a lead position would be a tremendous injustice to the dozens of highly-experienced firms that have worked months collaboratively on this case and put their support behind the lead applicants. Unlike the Stern Group, these firms chose to not "strike out" on their own and file their own lead plaintiff papers on the gambit that they might be given some leadership role through a split-the-baby selection process. In addition, the Stern Group's "confidential" non-class settlement achieved recently for 10 pet owners does not lend any credibility to its argument that it has the sufficient experience and knowledge to lead this multi-defendant, multi-product line, complex class action.

Paul J. Geller
Stuart A. Davidson
COUGHLIN STOIA GELLER
RUDMAN & ROBBINS, LLP
120 E. Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
Telephone: (561) 750-3000
Facsimile: (561) 750-3364

Steve W. Berman
Jeniphr Breckenridge
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

***Proposed Interim Co-Lead Counsel for Plaintiffs***