UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: PET FOOD PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL CASES | Civil Action No. 07-2867 (NLH)<br><br>MDL Docket No. 1850<br><br>**DECLARATION OF STEVE W. BERMAN IN REPLY TO APPOINTMENT OF INTERIM LEAD COUNSEL OPPOSITION BRIEF OF THE KAMBER GROUP**<br><br>Date: September 26, 2007<br>Time: 11:00 a.m.<br>Courtroom: 3A<br><br>The Honorable Noel L. Hillman |

Pursuant to 28 U.S.C. § 1746, I, Steve W. Berman, declare as follows:

1. I am the managing partner of the law firm of Hagens Berman Sobol Shapiro LLP ("Hagens Berman"). The matters set forth herein are within my personal knowledge and, if called and sworn as a witness, I could competently testify regarding them.

2. Hagens Berman filed a class action lawsuit on behalf of Stacey Heller, Toinette Robinson, David Rapp and Cecily and Terrence Mitchell within weeks of the first Menu Foods recall, on March 27, 2007, in the United States District Court, Western District of Washington, *Heller v. Menu Foods* (CV 07-0453).

3. Hagens Berman subsequently filed other class action lawsuits in the United States District Court, Western District of Washington. Hagens Berman is counsel for the named plaintiffs in a number of actions now pending before this Court and consolidated into the above-captioned action.

4.  Hagens Berman seeks to be appointed Interim Co-Lead Counsel for the putative class in this action pursuant to Rule 23(g) of the Federal Rules of Civil Procedure, along with the law firms of Berger & Montague, P.C. ("Berger Montague"), Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia") and Wexler Toriseva Wallace LLP("Wexler Toriseva") (collectively "Proposed Co-Lead Counsel").

5.  I previously submitted a declaration [Dkt. No. 32-9] in support of Majority Plaintiffs' Motion for Appointment of Interim Lead Co-Lead Counsel and Liaison Counsel Pursuant to Fed. R. Civ. P. 23(g) (the "Majority Plaintiffs' Motion") [Dkt. No. 32]. That declaration and the Hagens Berman resume, attached thereto as Exhibit A, detailed the experience and credentials that qualify my firm for appointment as interim co-lead counsel in this action.

6.  Lawyers Scott A. Kamber, Jay Edelson and William A. Audet (collectively the "Kamber Group") filed a joint opposition brief (the "Kamber Opp. Br.") [Dkt. No. 52] opposing the Majority Plaintiffs' Motion. As part of that motion, the Kamber Group submitted the *unsupported* arguments that the law firms of Hagens Berman and Coughlin Stoia "seem to offer little more than their resumes and 'promises' to contribute in the future" and "have made a limited contribution to the litigation." Kamber Opp. Br. at 8-9.

7.  These statements are untrue. I submit this declaration to refute these statements. In fact, the work of Hagens Berman on these cases – from the firm's pre-filing investigation to the present – demonstrates the opposite. Hagens Berman has played a central role in this litigation, both independently and together with the other firms comprising Proposed Co-Lead Counsel. Because Hagens Berman's involvement in the cases has been extensive and daily, it would be impossible to outline everything we have done since our first filing. This declaration is a summary of some of our more significant work.

8.  In my earlier declaration, I described my firm's decision to affiliate with the Animal Law Offices of Adam P. Karp. The decision to affiliate with Mr. Karp was made because of Mr. Karp's excellent credentials and position at the forefront of the developing field

001958-12 196955 V1

of animal law. Mr. Karp's resume was attached to my first declaration as Exhibit B. We believed – and continue to believe – that affiliating with Mr. Karp would enhance our representation of the class because of his experience, knowledge and qualifications. This has proved true. Mr. Karp brings extensive expertise in animal damage, loss and valuation to the case. Since our initial affiliation, lawyers from my firm have spent considerable time working with Mr. Karp and tapping into his expertise.

9. Following the filing of the *Heller* action, Hagens Berman was one of the first law firms to move to consolidate the pet food litigation cases on March 28, 2007. Based on our extensive experience in MDL proceedings, we recognized early on that given the number of cases filed nationwide on behalf of aggrieved pet owners, consolidation into one forum would be important.

10. Throughout this time period, continuing to the present, my firm has responded to calls from pet owners whose pets had been injured or killed by the contaminated pet food. We have interviewed most of the pet owners who have called in and collected their information. We have created our own database of hundreds of pet owners. Our broad client base gives us a unique understanding of the spectrum of issues facing the class.

11. Hagens Berman also participated in the organizational meeting in Chicago in April 2007. I spoke to and agreed with lawyers from Berger Montague, Coughlin Stoia, and Wexler Toriseva who organized the meeting that a coordinating meeting would be beneficial and could help eliminate counsel's duplication of efforts on behalf of the class. A lawyer from the Hagens Berman Chicago office participated in the meeting.

12. After conferring with the Berger Montague, Coughlin Stoia lawyers representing plaintiffs in the pet food cases and discussing case organization and strategy with them, we agreed that the four firms could work well together to advance the interests of the class. I and other lawyers in my firm have worked on many cases with lawyers from Berger Montague, Coughlin Stoia, and Wexler Toriseva. We have always worked constructively and effectively

together. Our constructive, longstanding working relationships with each other and other firms allows us to avoid duplicative work.

13. In May 2007, we – along with Berger Montague, Coughlin Stoia and Wexler Toriseva – learned that Menu Foods and its claims administrator were communicating directly with members of the putative class in an effort to gather information from them and ultimately to settle their claims. Together our firms investigated the facts behind the reports and researched the law concerning communications with class members and with represented parties and concluded that the Menu Foods communications required immediate court intervention. Hagens Berman with Berger & Montague, Coughlin Stoia and Wexler Toriseva then jointly drafted the show cause motion against Menu Foods in *Workman v. Menu Foods, et al.*, Case No. 07-1338 (NLH) (D. N.J.) (the "*Workman* Action"). The Court heard the matter on May 18, 2007. Hagens Berman did not personally attend this and other hearings related to communications issues for three reasons: Berger & Montague's proximity to the courthouse and, *most importantly*, our confidence in our co-counsel's ability to address the issues raised by the motion and our belief that dispatching additional firms to the hearing would be an unnecessary waste of resources, the type of unnecessary and expensive waste for which lawyers are routinely assailed.

14. Pre-hearing we discussed extensively the objectives of the motion and the legal support for the objectives with Proposed Co-Lead Counsel – *by telephone*. We also contributed substantively to the drafting and negotiations with Menu Foods over the Consent Order, which was entered by the Court in the *Workman* Action on June 4, 2007.

15. Shortly after Proposed Lead Counsel raised the Menu Foods communications issue with the Court and worked with Menu Foods to resolve it, my firm discovered that Proctor & Gamble was engaging in similar improper communications with putative class members. Hagens Berman performed the same substantive work described in paragraph 13, *supra*, in connection with raising this issue by motion in *Sokolowski v. Menu Foods, Inc., et al.*, Case No. 07-01709 (NLH) (D. N.J.). The Court granted this motion on June 27, 2007 by directing Proctor & Gamble to issue curative letters to class members and to suspend its

communications program. Berger & Montague, Coughlin Stoia, Hagens Berman and Wexler Toriseva spent considerable time on all of these efforts to ensure that all *aggrieved pet owners* would be protected from improper contacts by certain defendants in this case.

16. Hagens Berman has also participated in numerous other substantive efforts to advance the prosecution of the cases against Menu Foods and other defendants. Hagens Berman has been involved in factual research and legal research into key issues raised by the facts of these cases. Our work, with Proposed Co-Lead Counsel, has lead to the identification of additional potentially-liable defendants in these cases. The legal research includes the effect of indemnity agreements between Menu Foods and other defendants, the respective liabilities of defendants at each stage of the distribution chain, alternate theories of liability, and the valuation of pet owners' damages.

17. Jeniphr Breckenridge, my partner, has also taken the lead on working with defendants on evidence preservation issues posed by the volume of recalled product for each of the defendants and negotiating site visits for each of the warehouses affected. The work includes consulting with biostatisticians concerning the creation of a valid sampling plan for the product and negotiating the terms of any sampling plan. Ms. Breckenridge has worked directly with the Kamber Group on this issue.

18. In summary, Hagens Berman has taken a full and proactive role in these cases. Proposed Lead Counsel communicate regularly and coordinate their efforts to avoid the duplication of efforts and, again, the waste of resources that can result if numerous qualified firms complete the same work. There have been other meetings among plaintiffs' and defendants' counsel that Hagens Berman has not attended because of its confidence in the competency and leadership of other members of the Proposed Co-Lead counsel group. In each instance, however, Hagens Berman has conferred with Berger & Montague, Coughlin Stoia and Wexler Toriseva in advance of the meetings and afterwards and offered substantive comments and underlying to advance the best interests of the class. This is an example of how Proposed Co-Lead Counsel groups can and should work together. It is one of many measures of Proposed

Co-Lead Counsel's ability to work together to lead the case to the benefit of the class, without waste. It is an example of why a four-firm lead counsel structure is appropriate here. I declare under penalty of perjury under the laws of the State of Washington and the United States that the foregoing is true and correct.

FURTHER DECLARANT SAYETH NAUGHT.

Executed September 19, 2007

_____
Steve W. Berman

001958-12 196955 V1