UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: PET FOOD PRODUCTS LIABILITY LITIGATION | Hon. Noel L. Hillman<br><br>Civil No. 07-2867 (NLH/AMD)<br><br>MDL Docket No. 1850<br><br><u>ALL CASES</u> |

### AGREEMENT REGARDING PRESERVATION OF RECORDS

The Parties hereby enter into the following agreement (the "Agreement") with respect to preservation of records:

**I.   SCOPE OF AGREEMENT**

This Agreement does not address, limit, or determine the relevance, discoverability, confidentiality, or admission into evidence of any Retained Records, regardless of whether the Retained Records are required to be preserved pursuant to the terms of this Agreement.

**II.   DEFINITIONS**

   A. **Party or Parties**: "Party" or "Parties" means Menu Foods, Inc.; Menu Foods Income Fund, Menu Food General Partnership Ltd; Menu Foods Holding, Inc., Menu Foods Ltd.; Menu Foods Ltd Partnership; Menu Foods Midwest Corp.; Menu Foods Operating Partnership; Menu Foods South Dakota, Inc.; Menu Foods Operating Trust; Menu Foods Acquisition Inc.; Iams Co.; Del Monte Foods, Co.; Nestle Purina PetCare Company; Nutro Products, Inc.; PETCO Animal Supplies, Inc.; PETCO Southwest, Inc.; PETCO Animal Supplies Stores, Inc.; PetSmart, Inc.; Target Corp.; Wal-Mart Stores, Inc.; WalMart, Inc.; ChemNutra, Inc.; ChemNutra LLC,

(collectively, the "Defendants"),[1] as well as all named plaintiffs in This Litigation (collectively the "Plaintiffs"). Additional parties may be added to this Agreement pursuant to the provisions of Section VI.D. of this Agreement.

B. **This Litigation**: "This Litigation" means the civil actions included in MDL Docket No. 1850, pending in the United States District Court for the District of New Jersey and collectively captioned *In re: Pet Food Products Liability Litigation*, Civil No. 07-2867 (NLH/AMD) as of the date of this Agreement. Additional actions transferred to MDL Docket No. 1850 after the date of this Agreement shall be considered part of This Litigation provided that the named plaintiffs and defendants in those actions are Parties to the Agreement as of the time the action is transferred or do not object to being added as Parties to the Agreement pursuant to the provisions of Section VI.D. below.

C. **Retained Records**: For purposes of this Agreement, the term "Retained Records" shall mean (1) the documents or ESI (including writings, drawings, graphs, charts, photographs, images, and other data or data compilations, including metadata to the extent it exists) that are specified in Attachment A, which existed as of the date of this Agreement and that were generated after September 1, 2006 ("Historic Records") and (2) the documents or ESI (including writings, drawings, graphs, charts, photographs, images, and other data or data compilations, including metadata to the extent it exists) that are specified in Attachment B, which are created after the date of this Agreement ("Future Records").

---

[1] This Agreement does not apply to those named defendants in This Litigation that do not do business in the pet food industry, including Procter and Gamble Company, Colgate-Palmolive Company, Nestle Holdings Inc., and Nestle USA, Inc. This Agreement also does not apply to those named defendants that have not been served in This Litigation and will not apply to those defendants unless they later agree in writing to be bound by this Agreement.

-2-

D. **ESI**: For purposes of this Agreement, "ESI" shall mean all electronically stored Retained Records.

E. **Applicable Job Functions**: Under this Agreement, only the job functions in Attachment C are considered to be Applicable Job Functions (hereinafter referred to as "Applicable Job Functions").

F. **Snapshot**: For purposes of this Agreement, the term "Snapshot" shall mean an electronic file-by-file copy of all electronic Retained Records; such copies shall be searchable to the extent that the Retained Records are searchable in their native format. A Snapshot shall capture all Retained Records, including metadata that exist on the relevant data storage device (*i.e.*, network system, computer hard drive, etc.) as of the day the Snapshot is taken. A Snapshot shall take into account the provisions of this Agreement and the Federal Rule of Civil Procedure 34(b) regarding the right of the requesting party "to designate the form or forms in which it wants electronically stored information produced."

G. **Export**: For purposes of this Agreement, the term "Export" shall mean a file-by-file transfer of the electronic Retained Records from one environment to another using either a native format copy of the original file or a representation of the original file in single-page Group IV TIFF format with all file data and metadata that exist in an agreed-upon common field export.

H. **Data Archiving Environment**: For purposes of this Agreement, the term "Data Archiving Environment" shall mean an electronic archiving database that has been designed to receive and retain the electronic Retained Records in a structured and searchable form.

I. **Automated Litigation Preservation/Review Environment**: For purposes of this Agreement, the term "Automated Litigation Preservation/Review Environment" shall mean a

Data Archiving Environment that contains integrated litigation discovery tools; for example, Summation® or Concordance®.

J. **Backup Systems:** For purposes of this Agreement, the term "Backup Systems" shall mean computer systems that periodically store electronic information on tapes or comparable media.

K. **Backup Tapes**: For purposes of this Agreement, the term "Backup Tapes" shall mean magnetic tapes or other electronic media used to store copies of electronic data used to store copies of electronic data, for use when restoration or recovery of data is required. Data on magnetic Backup Tapes are generally recorded and stored sequentially, rather than randomly. Accordingly, in order to locate and access a specific file or data set, all data on the tape preceding the target must first be read, which may be a time consuming and inefficient process. Backup Tapes typically use data compression, which increases restoration time and expense, given the lack of uniform standards governing data compression.

L. **Preservation and Preserve**: For purposes of this Agreement, the terms "preservation" and "preserve" shall mean taking reasonable steps to prevent the partial or full destruction, deletion, or alteration of Retained Records.

M. **TIFF** (Tagged Image File Format): "TIFF" means one of the most widely used and supported graphic file formats for storing bit-mapped images, with many different compression formats and resolutions. Images are stored in tagged fields, and the programs use the tags to accept or ignore fields, depending on the application.

III. **RECORDS TO BE PRESERVED**

A. During the time each Party is a party to This Litigation, including any appeals, through the date of entry of any verdict, judgment, or final order, or until a time certain as determined by agreement of the Parties, each such Party shall take reasonable steps to preserve

- 4 -

Historic Retained Records and final versions of Future Retained Records as set forth in Section III.E in their custody or control that the Parties are required to preserve under this Agreement.

B. The Parties do *not* waive any objections as to the production, discoverability, confidentiality, relevance, or admissibility of any Retained Records preserved under this Agreement.

C. The Parties may retain paper Retained Records in either their original form, or in single-page Group IV TIFF format. All electronic Retained Records shall be preserved in either their native format or a representation of the electronic Retained Record in single-page Group IV TIFF format with all file data and metadata that exist.

D. This Agreement does *not* obligate Parties to segregate such Retained Records from other records on the computer backup medium where they reside.

E. While all parties agree to be subject to the provisions of this Agreement and the Federal Rules of Civil Procedure with respect to preserving Retained Records, given the number of Parties and the wide range of approaches used by the Parties to manage documents and electronic information and to allow for its recovery in the event of disaster, it is not practical to attempt to define a single detailed process that all Parties must follow to preserve Retained Records.

F. The Parties shall take reasonable steps to preserve, in accordance with the following specifications, the following types of Retained Records in the categories set forth in Attachments A and B, except as otherwise noted.

    1. **Paper Records:**

For Retained Records maintained in the normal course of business in paper form, at least one copy of the existing drafts and final versions of Historic Retained Records and at least one

WASH1\4936119.1

copy of final versions of Future Retained Records for each person in the Applicable Job Functions for whom Retained Records are retained in either paper or electronic media in single-page Group IV TIFF format.

2. **Electronic Mail:**

For electronic mail, at least one copy of all Retained Records in their live format, including any attachments, but only for people in the Applicable Job Functions, located in the e-mail server(s) and personal computer dedicated to that person. As an alternative, for electronic mail Historic Records, Parties may preserve one copy of either (1) a one-time Snapshot of the electronic mail Historic Records of people in the Applicable Job Functions, including any attachments and the metadata fields specified below (to the extent they exist), or (2) a one-time Export of such electronic mail Historic Records of people in the Applicable Job Functions, provided the Snapshot or Export already has been performed or is performed no later than 30 days from the date of this Agreement. As an alternative, for electronic mail Future Records, Parties may preserve one copy of either (1) quarterly Snapshots of the electronic mail Future Records of people in the Applicable Job Functions, including any attachments and the metadata fields specified below (to the extent they exist), or (2) quarterly Exports of such electronic mail Future Records of people in the Applicable Job Functions. Parties, in the alternative, may save electronic mail Retained Records and corresponding attachments required to be preserved to (1) a Data Archiving Environment or (2) an Automated Litigation Preservation/Review Environment. As used in this paragraph, "metadata fields" shall include the fields set forth in Table 1 hereto, to the extent they exist.

3.     **Electronic Data on Computer Systems Saved to Networks:**

For all electronic Retained Records (other than electronic mail Retained Records) maintained on a network in the custody and control of the Party, at least one copy of all such Retained Records in their live format, but only for people in the Applicable Job Functions. As an alternative, for electronic Historic Records, Parties may preserve one copy of either (1) a one-time Snapshot of the electronic Historic Records on the network for people in the Applicable Job Functions, or (2) a one-time Export of those Historic Records for people in the Applicable Job Functions, provided the Snapshot or Export already has been performed or is performed no later than 30 days from the date of this Agreement. As an alternative, for electronic Future Records, Parties may preserve one copy of either (1) quarterly Snapshots of the electronic Future Records on the network for people in the Applicable Job Functions, or (2) quarterly Exports of those Future Records for people in the Applicable Job Functions. Parties may also, in the alternative, save electronic Retained Records required to be preserved to (1) a Data Archiving Environment or (2) an Automated Litigation Preservation/Review Environment.

4.     **Electronic Data on Computers Not Saved to Networks:**

For all electronic Retained Records (other than electronic mail Retained Records) maintained on a non-networked computer system where such Retained Records are not saved to a network, at least one copy of all final versions of all such Retained Records in their live format, but only for people in the Applicable Job Functions. As an alternative, for all electronic Historic Records maintained on a non-networked computer system and not saved to a network, Parties may preserve one copy of either (1) a one-time Snapshot of the non-networked computer's hard drive for Historic Records for people in the Applicable Job Functions or (2) a one-time Export of those Historic Records for people in the Applicable Job Functions, provided the Snapshot or

Export already has been performed or is performed no later than 30 days from the date of this Agreement. As an alternative, for all electronic Future Records maintained on a non-networked computer system and not saved to a network, Parties may preserve one copy of either (1) quarterly Snapshots of the non-networked computer's hard drive for Future Records for people in the Applicable Job Functions or (2) quarterly Exports of those Future Records for people in the Applicable Job Functions. Parties may also, in the alternative, save electronic Retained Records required to be preserved to (1) a Data Archiving Environment or (2) an Automated Litigation Preservation/Review Environment. Parties also have the option of ceasing to maintain Retained Records for people in the Applicable Job Functions on non-networked computers, and instead saving to a network the Retained Records for people in the Applicable Job Functions. At the time such Parties cease to maintain the Retained Records for people in the Applicable Job Functions on the non-networked computers, those Parties must preserve a Snapshot of the non-networked computers' hard drives.

## IV. <u>RECORDS NOT REQUIRED TO BE PRESERVED</u>

Any records not specified above as Retained Records are not required to be preserved under this Agreement. By a way of example, and without limiting the preceding sentence, Parties have no obligation to preserve the following:

A. Records of voice mail or telephone conversations in any electronic form, including analog or digital, or in a stand-alone system;

B. Disaster recovery files or tapes, unless the disaster recovery files and tapes are known to be the only source of the Retained Records;

C. Duplicative data records, including replicant data, embedded data, cache files, cookie files, and temporary files;

D. Records outside the possession, custody, or control of Parties to this Agreement;

E. Instant messaging or text messaging programs, or any records containing data communicated over an instant messaging or text messaging program;

F. Legacy data contained on computers or information storage systems or software that is no longer used or supported by the Party and thus no longer reasonably accessible by it;

G. Deleted data, file fragments, or any residual data to the extent it exists on any computer or information storage system; and

H. Backup Tapes or other information stored in its Backup System as long as a Party has employed one of the means of preserving electronic Retained Records as discussed above. The Parties may recycle, erase, reuse, delete, purge or otherwise destroy these Backup Tapes and other information stored in their Backup Systems, as long as a Party has employed one of the means of preserving electronic Retained Records as discussed above.

V.  **PERMISSIBLE MODIFICATIONS AND ALTERATIONS OF RECORDS**

Parties shall not be considered to have violated this Agreement if ESI is destroyed by computer viruses, hackers or other events beyond their control provided that they have taken reasonable efforts to prevent such destruction. Parties shall *not* be considered to have violated this Agreement if they take any of the following actions in the ordinary course of business:

A. Inputting data into a database resulting in the database being modified or altered;

B. Drafting, editing, or revising Future Retained Records resulting in such Future Retained Records being modified or altered;

C. Upgrading, loading, reprogramming, customizing, or migrating software, even if such actions modify or alter the way data is maintained or stored, but does not modify or alter any Historic Retained Records; and

  D. Revising the contents of an internet or intranet site.

## VI.   IMPLEMENTATION AND/OR MODIFICATION OF AGREEMENT

  A. The Parties shall communicate the existence and substance of this Agreement to those employees responsible for carrying out the Parties' obligations hereunder.

  B. Notwithstanding a Party's obligation to preserve Retained Records in accordance with this Agreement, a Party may send written notice to the other Parties of its intention to alter or modify its routine policies and programs that would result in Retained Records being impacted, not retained, lost, or otherwise altered. Service of notice of such intention must be provided to counsel of record for the Parties. If, within 30 days after receiving such written notice, a Party fails to indicate in writing its objection, then that Party shall be deemed to have agreed to such alteration or modification.

  C. If the Parties are unable to agree as to what records: (1) are outside the scope of this Agreement, or (2) may be destroyed, lost, or otherwise altered pursuant to routine policies and programs, or (3) otherwise need not be preserved, any Party may apply to the Court where This Litigation is pending for clarification or relief from this Agreement upon reasonable notice.

  D. In the event that another action with an additional named plaintiff or additional named defendant is transferred to MDL Docket No. 1850, the additional named plaintiff and/or additional named defendant shall become subject to the provisions of this Agreement within thirty days of being added to the MDL, unless the additional named plaintiff or defendant informs the parties in writing that it objects to being subject to the Agreement in which case that party will be required to meet and confer with opposing counsel on the preservation issues governed by this Agreement.

  E. Plaintiffs and Defendants have actively participated in the negotiation and drafting of this Agreement. Accordingly, neither Plaintiffs nor Defendants shall be considered the author of

this Agreement, nor shall any section be strictly construed against any Party, since all Parties have participated in extensive negotiations and drafting of this document to arrive at a final Agreement.

PLAINTIFFS:

_____
William M. Audet
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco, CA 94105
Telephone: (415) 568-2555
Facsimile: (415) 568-2556

_____
Scott A. Kamber
KAMBER & ASSOCIATES, LLC
11 Broadway, 22nd Floor
New York, NY 10004
Telephone: (212) 920-3072
Facsimile: (212) 202-6364

_____
Jay Edelson
BLIM & EDELSON, LLC
53 West Jackson Blvd., Suite 1642
Chicago, IL 60604
Telephone: (312) 913-9400
Facsimile: (312) 913-9401

_____
Lisa J. Rodriguez
TRUJILLO RODRIGUEZ & RICHARDS, LLC
8 Kings Highway West
Haddonfield, NJ 08033
(856) 795-9002

_____
Kenneth A. Wexler
Mark J. Tamblyn
WEXLER TORISEVA WALLACE LLP
55 West Monroe Street, Suite 3300
Chicago, Il 60603
Telephone: (313) 346-2222
Facsimile: (312) 346-0022

_____
Sherrie R. Savett
Russell D. Paul
BERGER & MONTAGUE PC
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604

- 11 -

WASH1\4936119.1

*[signature]*  *[signature]*

Paul J. Geller  
Stuart A. Davidson  
COUGHLIN STOIA GELLER  
RUDMAN & ROBBINS LLP  
120 E. Palmetto Park Road, Suite 500  
Boca Raton, FL 33432-4809  
Telephone: (561) 750-3000  
Facsimile: (561) 750-3364  

Steve W. Berman  
Jeniphr Breckenridge  
HAGENS BERMAN SOBOL SHAPIRO LLP  
1301 Fifth Avenue, Suite 2900  
Seattle, WA 98101  
Telephone: (206) 623-7292  
Facsimile: (206) 623-0594  

DEFENDANTS:

| *[signature]* <br><br> Amy W. Schulman, Esq. <br> Mary E. Gately, Esq. <br> Matthew Lepore, Esq. <br> DLA Piper US LLP <br> 1251 Avenue of the Americas <br> New York, New York 10020 <br> Telephone: (212) 335-4500 <br> Facsimile: (212) 335-4501 <br><br> Counsel for the Menu Foods Defendants | *[signature]* <br><br> Craig A. Hoover, Esq. <br> Robert C. Troyer, Esq. <br> HOGAN & HARTSON LLP <br> Columbia Square <br> 555 Thirteenth Street, NW <br> Washington, D.C. 20004-1109 <br> Telephone: (202) 637-5600 <br> Facsimile: (202) 637-5910 <br><br> Counsel for Nestle Purina PetCare Company |
| --- | --- |
| *[signature]* <br><br> D. Jeffrey Ireland, Esq. <br> FARUKI, IRELAND & COX, P.L.L. <br> 500 Courthouse Plaza, S.W. <br> 10 North Ludlow Street <br> Dayton, OH 45402 <br> Telephone: (937) 227-3710 <br> Facsimile: (937) 227-3749 <br><br> Counsel for Iams Co. | *[signature]* <br><br> Richard Rama, Esq. <br> COZEN O'CONNOR <br> 45 Broadway, 16th Floor <br> New York, NY 10006 <br> Telephone: (212) 509-9400 <br> Facsimile: (212) 509-9492 <br><br> Del Monte Foods Co. |

| | |
|---|---|
| *[signature]*<br>Gary L. Justice, Esq.<br>GIBSON, DUNN & CRUTCHER LLP<br>333 South Grand Avenue, 49th Floor<br>Los Angeles, CA 90071<br>Telephone: (213) 229-7508<br>Facsimile: (213) 229-6508<br><br>Counsel for Nutro Products, Inc. | *[signature]*<br>Anthony G. Brazil, Esq.<br>Morris Polich & Purdy<br>1055 W. 7th Street<br>Los Angeles, CA 90017<br>Telephone: (213) 417-5120<br>Facsimile: (213) 488-1178<br><br>Counsel for ChemNutra, Inc. and ChemNutra LLC |
| *[signature]*<br>Mark C. Goodman, Esq.<br>SQUIRE, SANDERS & DEMPSEY L.L.P.<br>One Maritime Plaza, Suite 300<br>San Francisco, CA 94111-3492<br>Telephone: (415) 954-0289<br>Facsimile: (415) 393-9887<br><br>Counsel for PETCO Animal Supplies, Inc.; PETCO Southwest, Inc.; PETCO Animal Supplies Stores, Inc.; PetSmart, Inc.; Target Corp.; Wal-Mart Stores, Inc. and WalMart, Inc. | |

WASH1\4936119.1

## ATTACHMENT A

## HISTORIC RECORDS CATEGORIES

1. Records in Defendants' possession relating to their purchase, receipt, and use of wheat gluten used in the formulations of products subject to Defendants' recalls relating to possible melamine contamination (hereinafter the "Recalled Products");[2]

2. Records in Defendants' possession relating to representations, product specifications, or other communications concerning any of the wheat gluten that may have been used in the manufacture of the Recalled Products;

3. Records in Defendants' possession relating to testing conducted by or on behalf of Defendants of the Recalled Products or the bulk wheat gluten used in the Recalled Products;

4. Records in Defendants' possession relating to any quality assurance or quality control review of the Recalled Products;

5. Records in Defendants' possession relating to the Defendants' purchase, sale, and distribution of the Recalled Products;

6. Records in Defendants' possession relating to the recall and product withdrawal activities relating to the Recalled Products, including, but not limited to, Defendants' records relating to communications or contacts with regulatory organizations or governmental agencies on such subjects;

7. Records in Defendants' possession relating to consumer contacts, complaints, or inquiries related to the Recalled Products, whether handled by Defendants or any entity retained or hired by Defendants;

8. Records in Defendants' possession relating to communications or contacts with consumers, vendors, and contractors relating to the recall and product withdrawal activities relating to the Recalled Products, whether handled by Defendants or any entity retained or hired by Defendants;

9. Plaintiffs' records related to the purchase by any Plaintiffs of any of the pet food challenged in This Litigation;

10. Plaintiffs' records related to veterinary records including billing records and prescriptions for any of Plaintiffs' pets that allegedly ingested any of the pet food challenged in This Litigation;

---

[2] This Agreement relates only to contaminated wheat gluten because the undersigned defendants have represented to plaintiffs that they did not recall any pet food product due to contamination of rice protein concentrate or wheat flour included in such product during the timeframe covered in this lawsuit.

- 1 -

11. Plaintiffs' records related to the Plaintiffs' receipt or review of any alleged warranties for the pet food products that Plaintiffs specify they purchased and challenge in This Litigation;

12. Plaintiffs' records related to Plaintiffs communicating about, monitoring, or investigating either the allegations that give rise to this Litigation or the legal proceedings that occur in this Litigation;

13. Plaintiffs' records relating to testing conducted by or on behalf of Plaintiffs of the Recalled Products or the bulk wheat gluten used in the Recalled Products.

## ATTACHMENT B

## FUTURE RECORDS CATEGORIES

1. Records in Defendants' possession relating to continuing product withdrawal activities, if any, relating to the Recalled Products; and

2. Records in Defendants' possession relating to consumer contacts, complaints, or inquiries related to the Recalled Products, whether handled by Defendants or any entity retained or hired by Defendants.

## ATTACHMENT C

## APPLICABLE JOB FUNCTIONS

1. Key personnel directly employed by Defendants who were primarily responsible for the oversight and management of the purchase, receipt, and use of wheat gluten used in the Recalled Products (as defined in Attachment A hereto);

2. Key personnel directly employed by Defendants who were primarily responsible for maintaining records relating to representations, product specifications, or other communications concerning any of the wheat gluten that may have been used in the manufacture of the Recalled Products;

3. Key personnel directly employed by Defendants who were primarily responsible for the oversight and management of testing, or maintaining records of testing, of the Recalled Product and the wheat gluten used in the Recalled Products;

4. Key personnel directly employed by Defendants who were primarily responsible for the oversight and management of any inventory review of the Recalled Products;

5. Key personnel directly employed by Defendants who were primarily responsible for the decision to initiate Defendants' recall of the Recalled Products;

6. Key personnel directly employed by Defendants who were primarily responsible for the oversight and management of product withdrawal activities relating to the Recalled Products;

7. Key personnel directly employed by Defendants who were primarily responsible for maintaining records of Defendants' purchase, sale, and distribution of the Recalled Products;

8. Key personnel directly employed by Defendants who were primarily responsible for maintaining records relating to consumer contacts, complaints, or inquiries related to the Recalled Products; and,

9. The Plaintiffs and their agents who possess information in support of the allegations contained in the complaint in This Litigation.

TABLE 1

| Field | Sub-field | Format | Type | Description |
|---|---|---|---|---|
| BegDoc | Unique ID | Paragraph | Unlimited | Single Value | Beg Bates Number | The Document ID number associated with the first page of a document. |
| EndDoc | Unique ID | Paragraph | Unlimited | End Bates Number | Single Value | The Document ID number associated with the last page of a document. |
| BegAttach | Unique ID Parent-Child Relationships | Paragraph | Unlimited | Begin Attachment Number | Single Value | The Document ID number associated with the first page of a parent document. |
| EndAttach | Unique ID Parent-Child Relationships | Paragraph | Unlimited | End Attachment Number | Single Value | The Document ID number associated with the last page of the last attachment to a parent document. |
| Doc Pages | Pages | Paragraph | Unlimited | Page Count | Integer | The number of pages for a document. |
| RecordType | | Paragraph | Unlimited | | | The record type of a document (e.g. attachment, e-file, e-mail, etc.) |
| Master_Date | | Date | MM/DD/YYYY | | | The date of a parent document (GMT). For attachments to e-mails, this field will be populated with the date sent of the e-mail transmitting the attachment. |

Comments:
Date fields cannot contain zero values for month, day, or year.
Fields containing multiple values, i.e. Recipient, should have each entry separated by a tilde delimiter.

| Field | Display Name | Type | Format | Combined With | Value | Description |
|---|---|---|---|---|---|---|
| SentOn_Time | Time Sent | Paragraph | Unlimited | | | The time a document was sent (GMT). |
| Create_Date | Date Created | Date | MM/DD/YYYY | | | The date a document was created (GMT). |
| Create_Time | Time Created | Paragraph | Unlimited | | | The time a document was created (GMT). |
| LastMod_Date | Date Last Modified | Date | MM/DD/YYYY | | | The date the document was last modified (GMT). |
| LastMod_Time | Time Last Modified | Paragraph | Unlimited | | | The time the document was last modified (GMT). |
| Received_Date | Date Received | Date | MM/DD/YYYY | | | The date a document was received (GMT). |
| Received_Time | Time Received | Paragraph | Unlimited | | | The time a document was received (GMT). |
| ParentFolder | File Path Folder Name | Paragraph | Unlimited | Folder | Single Value | Denotes the full path folder information for a document. |
| Author | Author Display Name (e-mail) | Paragraph | Unlimited | Author | Multivalue | Combine Author and Author_Email field into one Author field. The author of a document from entered metadata. |
| To | Recipient | Paragraph | Unlimited | Recipient | Multivalue | Combine TO and Recip_Email field into one TO field. The display name of the recipient(s) of a document. |
| CC | CC | Paragraph | Unlimited | CC | Multivalue | Combine CC and CC_Email field into one CC field. The display name of the copyee(s) of a document. |
| BCC | BCC | Paragraph | Unlimited | BCC | Multivalue | Combine BCC and BCC_Email field into one BCC field. The display name of the blind copyee(s) of a document. |

2

| | | | | | |
|---|---|---|---|---|---|
| Subject | Subject (e-mail) | Paragraph | Unlimited | Subject | The subject of a document. |
| OriginalSource | Original Name | Paragraph | Unlimited | | The file name of an e-mail store (e.g., Outlook.pst, MyMail.nsf, etc.) |
| Custodian | Custodian | Paragraph | Unlimited | Custodian | The custodian of a document (if applicable). |
| NativePath | | Paragraph | Unlimited | | The full path to a native copy of a document (if applicable). |
| AttachCount | Numbered Attachments | Paragraph | Unlimited | | The number of attachments to a document. |
| FileExt | File Extension | Paragraph | Unlimited | | The file extension of a document. |
| FileName | Original Name | Paragraph | Unlimited | | The file name of a document. |
| FileType | File Type | Paragraph | Unlimited | | The file type of a document. |
| FileSize | File Size | Paragraph | Unlimited | | The file size of a document (including embedded attachments). |
| Application | Application Name | Paragraph | Unlimited | | The application type of a document. |
| MD5Hash | MD5 Hash | Paragraph | Unlimited | | The MD5 Hash value or "de-duplication key" assigned to a document |
| FullText | Text | | | | The full text of the e-mail/attachment. |

3