UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IN RE PET FOOD PRODUCTS LIABILITY LITIGATION | : : : : : : : : : : : : : : : | MDL Docket No. 1850<br><br>Case No. 07-2867<br><br>Judge Noel Lawrence Hillman<br><br>**DECLARATION OF DR. GEORGE P. McCABE IN SUPPORT OF DEFENDANTS' UNOPPOSED MOTION TO LIMIT THE RETENTION OF ORGANIZED RECALLED PRODUCT, RAW WHEAT GLUTEN AND <u>UNORGANIZED INVENTORY</u>** |

STATE OF INDIANA　　　　）
　　　　　　　　　　　　　） SS:
COUNTY OF TIPPECANOE　）

**DR. GEORGE P. McCABE**, affirms the following under penalty of perjury:

1.　　I am currently Professor of Statistics at Purdue University, and a Fellow of the American Statistical Association. I received a B.S. in Mathematics from Providence College and a Ph.D. in Mathematical Statistics from Columbia University. I have continuously taught statistics at Purdue University from 1970 until the present day. I have authored three textbooks and one hundred fifty seven articles on issues related to statistics. Among other courses, I have taught sampling and sampling techniques at the graduate and undergraduate level. Attachment A to this Declaration is a copy of my curriculum vitae.

2.　　I was retained by several Defendants, including The Iams Company ("Iams"); Hill's Pet Nutrition ("Hill's"); Nutro Products, Inc. ("Nutro"); Nestle Purina PetCare

Exhibit 10

Company ("Purina"); Del Monte Foods Company ("Del Monte"); Menu Foods, Inc.; Menu Foods Income Fund; Menu Foods GenPar Limited; Menu Foods Holdings, Inc.; Menu Foods Limited; Menu Foods Limited Partnership; Menu Foods Midwest Corporation.; Menu Foods Operating Limited Partnership; Menu Foods South Dakota, Inc.; Menu Foods Operating Trust; and Menu Foods Acquisitions Inc. (collectively, "Menu Foods"); and ChemNutra Inc. ("ChemNutra") in order to identify a "sampling plan." The purpose of the sampling plan is to preserve certain products which will later be tested to determine the percent of contamination, if any, in the original populations. I also have been asked to ensure that test results on the samples, when analyzed by a statistician, will enable accurate inferences to be drawn about the distribution of the percent of contamination in the original populations. Specifically, these results will be used to estimate the mean percent of contamination, plus or minus two standard deviations, in the original populations. In effect, I have been asked to answer the statistical question -- how much product does each Defendant need to retain in order for the parties and the Court to have a sufficient sample that is representative of the whole in a statistically significant manner.

3. In this Declaration, I set forth the sampling plan for Defendants Iams, Hill's, Nutro, Purina, Del Monte, Menu Foods and ChemNutra.

4. I understand that there are three types of product to be sampled. First, Defendants possess a large quantity of recalled pet treats and food stored in cans, bags and pouches. Second, Defendants ChemNutra, Menu Foods and Del Monte have recalled raw wheat gluten, the allegedly contaminated ingredient, supplied by ChemNutra. Finally, Del Monte has "work-in-progress." I am informed work-in-progress is a dry mix of ingredients that was pulled

off the production line by Del Monte at the time of the recalls. This dry mix contains, in part, recalled wheat gluten purchased from ChemNutra.

5. The sampling plan I have designed and describe here will be sufficient to determine the mean percent of contamination, plus or minus two standard deviations, for each SKU date of recalled pet treats and food, each batch number of recalled raw wheat gluten, and each recipe of work-in-progress, respectively.

6. An SKU date is the total number of pet treats or food of the same recipe produced by each Defendant on the same production day. Each SKU date will be a separate population in my plan. Similarly, each batch number of raw wheat gluten and each recipe of work-in-progress will be a separate population in my plan. The sampling plan and opinions I set forth here are true and accurate to a reasonable degree of statistical certainty.

7. I made three assumptions in arriving at this sampling plan for each of the Defendants.

8. The first assumption is that each sample can be viewed as a simple random sample from a large population. As described below, each of the actual sampling plans I have created for each Defendant is a multi-stage sample, which is a type of cluster sampling. This technique will ensure that variability within each population will be taken into account when calculating margins of error for the estimates.

9. The second assumption is that to determine the population's standard deviation, the coefficient of variation is 50%. This assumption is reasonable based on different possible scenarios for the populations of interest. First, we assume that the range of contamination is 0 to 10 percent and that this range corresponds to population values of the mean plus or minus two standard deviations. In this case, the mean will be 5.0% and the standard

deviation will be 2.5%. Therefore, the coefficient of variation will be 2.5/5.0 or 50%. Similarly, if the range of contamination is 0 to 1 percent, the same framework gives a mean of .50% with a standard deviation of .25% and the same coefficient of variation, .25/.50 = 50%. In lay terms, this means that when calculating the margin of error, it will be relatively the same depending on the range of contamination found in the population. For example, if the range of contamination is 0 to 1 percent, the margin of error is .022%. If, however, the range of contamination is 0 to 10 percent, the margin of error will be .22%.

10. The third assumption is that the margin of error for the sample mean propagates to the margin of error for the range (the mean plus or minus two standard deviations). This assumption is a mathematical consequence of assuming that the percent of melamine or other contaminant, in the sample, is normally distributed, i.e., a bell curve as opposed to uniform distribution. See Appendix A for details.

11. With these assumptions, I recommend the preservation of 500 units[1] per SKU date, 500 samples per batch number of raw wheat gluten, and 500 samples per recipe of work-in-progress. With these sample sizes, 95% margins of error will be 0.39 percent if the range is 0 to 10 percent. Similarly, the margin of error will be 0.039 if the range is 0 to 1 percent, and it will be 0.039 times the maximum value if the range is 0 to this maximum value. See Appendix A for details. These margins of error correspond to 95% statistical confidence, the usual level of confidence used in applied work.

12. As discussed above, even if the range of melamine contamination (or other contaminant) is different than the assumed 0 to 10 percent, then the relative error in my estimate will not change.

---

[1] Units means an individual can, bag or pouch of pet food or treats as packaged by the manufacturer for individual retail sale.

13. I have been informed about the quantity of organized pet treats and food and raw wheat gluten that each Defendant is storing.

14. I am informed that Iams is currently storing organized pet food from 265 SKU dates. I have obtained this information from the data contained in Iams SKU date inventory, attached to the Iams Declaration in support of this Motion. With respect to these SKU dates, Iams has sufficient quantity in its organized inventory to carry out the sampling plan I describe here, which will enable any interested party to estimate the mean percent of contamination, plus or minus two standard deviations for each SKU date. While Iams has a limited quantity or no product on some SKU dates, I understand that Menu Foods has product for most of those same SKU dates. I further conclude there is sufficient product on surrounding similar SKU dates to make reasonable inferences about the contamination, if any, on those SKU dates.

15. I am informed that Hill's is currently storing organized pet food from 15 SKU dates. I have obtained this information from the data contained in Hill's SKU date inventory, attached to the Hill's Declaration in support of this Motion. With respect to these SKU dates, Hill's has sufficient quantity of its organized inventory to carry out the sampling plan I describe here, which will enable any interested party to estimate the mean percent of contamination, plus or minus two standard deviations for each SKU date.

16. I am informed that Purina is currently storing organized pet food from 64 SKU dates. I have obtained this information from the data contained in Purina's SKU date inventory, attached to the Purina Declaration in support of this Motion. With respect to these SKU dates, Purina has sufficient quantity in its organized inventory to carry out the sampling

plan I describe here, which will enable any interested party to estimate the mean percent of contamination, plus or minus two standard deviations for each SKU date.

17. I am informed that Nutro is currently storing organized pet food and unorganized inventory from 151 SKU dates. I have obtained this information from the data contained in Nutro's SKU date inventory, attached to the Nutro Declaration in support of this Motion. With respect to these SKU dates, Nutro has sufficient quantity in its organized inventory to carry out the sampling plan I describe here, which will enable any interested party to estimate the mean percent of contamination, plus or minus two standard deviations for each SKU date. While Nutro has a limited quantity or no product on some SKU dates, I understand that Menu Foods has product for most of those same SKU dates. I further conclude there is sufficient product on surrounding similar SKU dates to make reasonable inferences about the contamination, if any, on those SKU dates.

18. I am informed that Menu Foods is currently storing organized pet food from 2,118 SKU dates. I have obtained this information from the data contained in Menu Foods' SKU date inventory, attached to Menu Foods' Declaration in support of this Motion. With respect to these SKU dates, Menu Foods has sufficient quantity in its organized inventory to carry out the sampling plan I describe here, which will enable any interested party to estimate the mean percent of contamination, plus or minus two standard deviations for each SKU date. While Menu Foods has a limited quantity or no product on some SKU dates, I understand that other Defendants have product for many of those same SKU dates. I further conclude there is sufficient product on surrounding similar SKU dates to make reasonable inferences about the contamination, if any, on those SKU dates.

19. I am also informed that Menu Foods is currently storing (1) 1,623 full bags of ChemNutra wheat gluten in Emporia, Kansas (37 bags of Chem Nutra batch number 20061101; 1 bag of ChemNutra batch number 20061027; 636 bags of ChemNutra batch number 20061108; 70 bags of ChemNutra batch number 20061122; 213 bags of ChemNutra batch number 20061126; 116 bags of ChemNutra batch number 20061201; 42 bags of ChemNutra batch number 20061202; and 508 bags of ChemNutra batch number 20061203) and 127 grams of ChemNutra batch number 20061006; (2) 528 bags of ChemNutra wheat gluten at its Pennsauken, New Jersey location (all of which are from ChemNutra batch number 20070116) and 511 grams of ChemNutra batch number 20061108; and (3) an additional 9,000 pounds of ChemNutra wheat gluten for which it does not have a batch number.

20. I am informed that Del Monte is currently storing organized pet treats and food from 47 SKU dates. I have obtained this information from the data contained in Del Monte's SKU date inventory, attached to Del Monte's Declaration in support of this Motion. With respect to these SKU dates, Del Monte has sufficient quantity in its organized inventory to carry out the sampling plan I describe here, which will enable any interested party to estimate the mean percent of contamination, plus or minus two standard deviations for each SKU date.

21. I am also informed that Del Monte is currently storing 932 full and 15 partial 55-pound bags of wheat gluten (21 full and 5 partial bags of ChemNutra batch number 20061101; 17 full and 5 partial bags of ChemNutra batch number 20061027; 7 full and 5 partial bags of ChemNutra batch number 20061108; 1 full bag without a ChemNutra batch number; 60 55-pound bags of ChemNutra batch number 20061202; and 779 55-pound bags of ChemNutra batch number 20070116).

7

22. It is also my understanding that Del Monte is storing 6 different recipes of work-in-progress. I am informed that Del Monte is storing 4,400 pounds of recipe "A" in 6 totes; 6,000 pounds of recipe "B" in 4 totes; 12,000 pounds of recipe "C" in 12 totes; 7,210 pounds of recipe "D" in 5 totes; 4,000 pounds of recipe "E" in 4 totes; and 9,000 pounds of recipe "F" in 9 totes. Totes are large sacks made of durable material.

23. I am informed that ChemNutra is currently storing (1) approximately 13,556 55-pound bags of wheat gluten (approximately 100 bags of ChemNutra batch number 20061108; 80 bags of ChemNutra batch number 20061122; 3,200 bags of ChemNutra batch number 20061126; 800 bags of ChemNutra batch number 20061201; 1,640 bags of ChemNutra batch number 20061202; 200 bags of ChemNutra batch number 20061203; approximately 700 bags of ChemNutra batch number 20061206; 1,280 bags of ChemNutra batch number 20070111; 2,400 bags of ChemNutra batch number 20070116; and 3,196 bags of ChemNutra batch number 20070126); and (2) 80 900-kilogram totes of wheat gluten of ChemNutra batch number 20070106.

24. With respect to the retrieval of the 500 units per SKU date for each Defendant, the sampling plan requires that the samples be retrieved randomly in multiple stages. First, the pallets will be labeled, and a random sampling of pallets will be taken. Next, a random sample of cases from the sampled pallets will be taken. Finally, units within the sampled cases will be randomly selected. To the extent a particular SKU date consists of less than 500 units, 500 samples will be evenly distributed throughout the units in each Defendant's possession.

25. Menu Foods' sampling plan will differ, but also will be random and carried out in multiple stages. Menu Foods will randomly select cases, under my direction pursuant to a computer generated program, from each of its pallets of Organized Product, and

8

then perform a similar random selection of a total of 500 units from the cases containing product for each SKU date. In the event that Menu Foods does not possess 500 units for a SKU date, Menu Foods will retain all units in its possession for such SKU date, if any.

26. With respect to the retrieval of the 500 samples of wheat gluten per batch number, my plan requires that the samples be retrieved randomly. To randomly retrieve 500 samples, all bags of wheat gluten will be labeled, and a computer program will randomly select a sample of bags. 500 samples of wheat gluten will then be taken from the sampled bags. This sampling plan identifies only the samples to be taken, and I will defer to a person with knowledge of the testing required with respect to the amount of sample necessary for testing purposes.

27. With respect to the retrieval of the 500 samples of work-in-progress per recipe, my plan requires that the samples be retrieved randomly. Because of the small number of totes currently storing each recipe, I would recommend evenly distributing the 500 samples across all totes. The location of each sample within each tote will also be randomized in the most practical fashion. This sampling plan identifies the samples to be taken, and I will defer to a person with knowledge of the testing required with respect to the amount of sample necessary for testing purposes.

28. Upon approval of this sampling plan, I will devise a specific, detailed retrieval plan for each Defendant to ensure a random sampling is retrieved for each SKU date, batch or recipe that will identify each case, sample and/or unit to be retrieved and retained. I intend to be personally involved in the execution of each Defendant's sampling and retrieval plan to ensure that the execution is conducted in an acceptable manner so that I can attest to the results at a later time. Because the retrieval plans at some of Defendants' warehouses will take a

long time, it is impractical for me to be physically present, but I would be available by cell phone if any questions or issues arise during the course of the executions of the retrieval plans.

29. Finally, the opinions expressed in this Declaration are my own and do not reflect those of Purdue University.

*George P. McCabe*
GEORGE P. McCABE

Sworn to and subscribed in my presence by the said George P. McCabe, this ____ day of December 2007.

*Norma L. Lucas*
Notary Public

My Commission expires: January 11, 2010
I reside in Tippecanoe County

190294.1

10