### Page 1

BEFORE THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

IN RE: PET FOOD PRODUCTS  ) CIVIL ACTION NO.
LIABILITY LITIGATION      ) 07-2867 (NLH)
                          ) MDL DOCKET NO. 1850
                          ) ALL CASES

SEALED PURSUANT TO PROTECTIVE ORDER
and/or CONFIDENTIALITY AGREEMENTS

The deposition upon oral examination of GEORGE P. McCABE, Ph.D., an expert witness produced and sworn before me, John R. Baker, RPR, Notary Public in and for the County of Hamilton, State of Indiana, taken on behalf of the Plaintiffs at the Adam's Mark Hotel, 2544 Executive Drive, Indianapolis, Indiana, on November 30, 2007, at 10:00 a.m., pursuant to the applicable rules.

STEWART RICHARDSON & ASSOCIATES
Registered Professional Reporters
One Indiana Square
Suite 2425
Indianapolis, IN 46204
(317)237-3773

### Page 2

1  APPEARANCES
2  FOR THE PLAINTIFFS:
     Kenneth A. Wexler, Esq.
3    Mark J. Tamblyn, Esq. (appearing telephonically)
     WEXLER TORISEVA WALLACE, LLP
4    55 West Monroe Street
     Suite 3300
5    Chicago, IL 60603
6
   FOR THE PLAINTIFFS:
7    Jennifer Reba Thomaidis, Esq.
     James Thomaidis, Esq.
8    THOMAIDIS LAW OFFICES
     1866 Vine Street
9    Denver, CO 80206
10
   FOR THE PLAINTIFFS:
11   Jeniphr Breckenridge, Esq. (appearing telephonically)
     HAGENS BERMAN SOBOL SHAPIRO, LLP
12   1301 Fifth Avenue
     Suite 2900
13   Seattle, WA 98101
14
   FOR THE DEFENDANT DEL MONTE FOODS COMPANY:
15   Richard Fama, Esq.
     Alexander Sikoscow, Esq.
16   COZEN O'CONNOR
     45 Broadway
17   16th Floor
     New York, NY 10006
18
19 FOR THE DEFENDANTS THE IAMS COMPANY and
   PROCTER & GAMBLE:
20   Laura A. Sanom, Esq.
     FARUKI IRELAND & COX, PLL
21   568 Lakeland Avenue
     Grosse Pointe, MI 48230
22
23
24
25

### Page 3

1
2  FOR THE DEFENDANT MENU FOODS, INC.:
     Mary Elizabeth Gately, Esq.
3    DLA PIPER US, LLP
     500 8th Street, NW
4    Washington, DC 20004
5
   FOR THE DEFENDANT NESTLE PURINA PET CARE COMPANY:
6    Robert C. Troyer, Esq.
     HOGAN & HARTSON, LLP
7    1200 17th Street
     Suite 1500
8    Denver, CO 80202
9
   FOR THE DEFENDANT NUTRO PRODUCTS, INC.:
10   David M. Herzog, Esq. (appearing telephonically)
     GIBSON DUNN & CRUTCHER, LLP
11   333 South Grand Avenue
     Suite 4600
12   Los Angeles, CA 90071
13
14         INDEX OF EXAMINATION
15                                    PAGE
   DIRECT EXAMINATION
16   Questions By Mr. Wexler:            5
17 CROSS-EXAMINATION
18   Questions By Mr. Fama:             78
19 REDIRECT EXAMINATION
20   Questions By Mr. Wexler:           87
21
22
23
24
25

### Page 4

1        INDEX OF PLAINTIFFS' EXHIBITS
2  NUM.        DESCRIPTION           PAGE
3  Exhibit 1  Document entitled Declaration of   5
              Dr. George P. McCabe In Support
4             of Del Monte's Motion
5  Exhibit 2  8/30/07 Sanom fax/letter to        8
              McCabe, with attachments
6
   Exhibit 3  Mathematical formula              39
7
8
...
25

Exhibit 11                    1 (Pages 1 to 4)

Page 9

1  Q  Okay. So you're referring to the first date of
2     August 30th, 2007?
3  A  Yes. That's when I was first contacted.
4  Q  And before August 30, 2007, were you contacted by
5     any Defendant in this case other than Del Monte?
6  A  Yes.
7  Q  Who?
8  A  I was contacted by Laura Sanom.
9  Q  Approximately when?
10 A  August 30th.
11 Q  Okay.
12 A  Oh, you're saying before then?
13 Q  Before then.
14 A  I believe I was called and asked if I would be
15    interested in working on this project --
16 Q  And --
17 A  -- before that date, and I said yes. As a result
18    of that conversation, this particular call
19    occurred.
20 Q  Was any material sent to you before the first
21    conversation to review?
22 A  I don't think so.
23 Q  Now just in reference to that August 30th entry,
24    was anyone else on the call besides Laura Sanom?
25 A  I don't recall.

Page 10

1  Q  To the best of your recollection, did your first
2     substantive work on this matter begin August 30,
3     2007?
4  A  That's correct.
5  Q  With regard to the sampling plan contained in
6     Exhibit No. 1 for Del Monte, have you developed
7     sampling plans for any other Defendant in this
8     case?
9  A  Could you refer me to a particular part in here --
10 Q  No.
11 A  -- that would talk about it?
12 Q  No.
13 A  Then I'm not sure I can answer your question.
14 Q  Does --
15 A  I could look through the document.
16 Q  Does Exhibit No. 1 contain a sampling plan for Del
17    Monte?
18    MR. FAMA: Note my objection to the form.
19 A  Yes.
20 BY MR. WEXLER:
21 Q  Does it contain a sampling plan for any other
22    Defendant?
23 A  The sampling plans have the same structure for each
24    of the Defendants. So to that extent, yes.
25    The precise details of how samples will be

Page 11

1     collected depend upon the particular circumstance
2     of how they're stored, and it's my understanding
3     that not everybody stored the product in the same
4     way. It's my understanding that the process that
5     produced product is similar or identical across the
6     different groups.
7  Q  What's your understanding of the differences in how
8     the Defendants have stored the product?
9  A  They're stored in warehouses, on pallets. Some
10    products have a large number of cases per pallet.
11    Some have a smaller number. There are some
12    inventory systems that allow you to locate a
13    particular pallet in some cases, and in other cases
14    you would have to look at the pallet to determine
15    what the product is.
16 Q  All right. So when you say that the structure of
17    the sampling plans for each Defendant is the same,
18    what do you mean?
19 A  I mean my recommendation is that 500 samples be
20    taken for each subpopulation of interest.
21 Q  And is it for the same reasons that are contained
22    in your declaration, Exhibit No. 1?
23 A  Yes.
24 Q  Have you conducted any site visits?
25 A  No.

Page 12

1  Q  Now with regard to the sampling plan contained in
2     Exhibit No. 1, would you consider this to be a
3     random sampling plan?
4  A  I would qualify it, but I would say in layman's
5     terms you could call it a random sampling.
6  Q  Okay.
7  A  It's not a simple --
8  Q  And the --
9     MR. FAMA: Let him finish.
10 A  I said it's not a simple random sampling.
11 BY MR. WEXLER:
12 Q  Okay. Explain that to me.
13 A  For a simple random sample, every possible subset
14    of the given sample size is equally likely to be
15    the sample.
16 Q  And how does this differ?
17 A  This sampling plan takes into account the structure
18    of the population of interest.
19    For example, if we have products stored on
20    pallets, we can efficiently take that into account
21    in the plan. If pallets consist of cases, if cases
22    consist of pouches or cans, those characteristics
23    of the population are useful in constructing the
24    sampling plan, which in this case then would not be
25    a simple random sample.

Page 13

1  Q  Okay. Now would you agree with me that in general
2     a sampling plan provides specific details regarding
3     how certain units in a population will be selected
4     for measurement of one or more characteristics?
5        MR. FAMA: Note my objection to the form.
6  A  Could you repeat that?
7        MR. WEXLER: Can you read it back to him?
8        (The requested material was read back by the
9     reporter.)
10 A  We might distinguish between the general principles
11    of the sampling plan which are described here, and
12    then the fine details which would be a list of
13    actually which particular items are selected.
14       MR. WEXLER: Can you read his answer back?
15       (The requested material was read back by the
16    reporter.)
17 BY MR. WEXLER:
18 Q  So by "fine details," you're referring to the
19    random sample from the pallets versus random sample
20    from cans or pouches, the various subsets of what's
21    contained in the sample itself?
22       MR. FAMA: Note my observation.
23 A  The fine details of the plan would be the list of
24    the selected items.
25 BY MR. WEXLER:

Page 14

1  Q  Would you need a sampling plan for each of the
2     selected items?
3        MR. FAMA: Note my objection to the form.
4  A  The sampling plan is what gives you the items.
5  BY MR. WEXLER:
6  Q  All right. So what are the items in this case with
7     regard to your declaration?
8  A  I believe there are three types of populations of
9     interest.
10       The first would be the SKU, S-K-U, date. So
11    all product of a particular type produced in a
12    particular run, the run could actually run past
13    midnight, but that would be part of the same batch,
14    and that's what we would call a SKU date.
15 Q  Uh-huh.
16 A  There's also wheat gluten stored in bags. The bags
17    have different batch numbers. So those would be
18    other populations of interest. So bags of wheat
19    gluten for different batch numbers.
20       Finally, the third set of populations of
21    interest would be referred to as work in progress
22    or WIP, and these are stored in totes.
23 Q  And why is there not a fourth category called
24    unorganized product?
25 A  Because that's not a population where we were asked

Page 15

1     to -- I was not asked to develop a plan to estimate
2     unorganized product.
3        My understanding was that the interests were
4     product specific, the SKU dates, the batches, and
5     the work in progression.
6  Q  And your understanding is based on what?
7  A  The questions of interest.
8  Q  To whom?
9  A  To you and to the other attorneys.
10 Q  And this was relayed to you by whom?
11 A  I believe in several conversations that I had on
12    the phone.
13 Q  With Defense counsel?
14 A  Yes.
15 Q  Do you recall any conversation at all regarding
16    unorganized product?
17 A  Yes.
18 Q  What do you recall?
19 A  My understanding is that the product is a mixture
20    of populations. So it contains many different
21    kinds. It's not inventoried as far as I know. So
22    it doesn't correspond to the kind of thing that I
23    would call a population.
24 Q  And what do you mean when you say that it doesn't
25    correspond to what you would call a population?

Page 16

1  A  The population is the first part of what you need
2     to define when you develop a sampling plan. So we
3     talk about a population of interest or, in this
4     case, many populations of interest.
5  Q  Now why wouldn't unorganized product be of
6     interest, unless I'm not using it in a statistical
7     sense?
8  A  My understanding is that the products have
9     different recipes. Some are for dogs. Some may be
10    for cats. We would call that a mixture of
11    populations.
12       Now my understanding is that the interest is
13    in particular products, not in a mixture of
14    products.
15 Q  Could you develop a sampling plan for a mixture of
16    products?
17       MR. FAMA: Note my objection.
18 A  Yes.
19       MR. WEXLER: What? Did you say something?
20       MR. FAMA: I just said, "Note my objection."
21       MR. WEXLER: All right.
22 BY MR. WEXLER:
23 Q  What would you need to do to do that?
24 A  I don't think in this case it would be advisable to
25    do it because I don't see how it would be used in

Page 17

1  the final, uhhh --
2      Well, I don't see how I would analyze the data
3  for it, a sample, that is from that kind of mixture
4  with so much, ummm, without the structure that I
5  could use to build the plan.
6  Q All right. So you don't think it could be done?
7  A I would not recommend it.
8  Q I didn't ask what you would recommend.
9  A Anything can be done.
10 Q All right. So how would you go about doing it?
11 A I wouldn't do it.
12 Q If you were asked to do it, what would you do?
13     MR. FAMA: Just note my objection.
14     MR. WEXLER: It's noted.
15 A I don't have enough of the details because I didn't
16 ask a lot of questions about that. So I would need
17 to sit down and understand how much of the product
18 is there, what are the particular products that are
19 represented, are those products represented in
20 other ways, do we already have products organized
21 on pallets from the same SKU dates. So it's all
22 that kind of information that I don't have that
23 would be needed to say whether or not there's
24 potentially any useful information from doing such
25 a plan.

Page 18

1  BY MR. WEXLER:
2  Q Okay. So although you said you wouldn't recommend
3  doing it --
4  A Yes.
5  Q -- do you have enough information right now to say
6  that you would either recommend doing it or not
7  recommend doing it?
8      MR. FAMA: Note my objection.
9  A From the information I have now, I would not
10 recommend doing it.
11 BY MR. WEXLER:
12 Q Okay, but you don't have a complete set of
13 information, right?
14 A I have sufficient information to give you my
15 opinion.
16 Q What information do you have that you say is
17 sufficient to give me your opinion?
18 A The information that I have is that the, uhhh --
19     What we were calling it, the unorganized --
20 Q Yes.
21 A -- product, ummm, is not inventoried. So I don't
22 know how I would make a list to do the sampling
23 without an incredible amount of work. That would
24 not be justified in my opinion.
25 Q What do you mean it wouldn't be justified?

Page 19

1  A Well, there are different ways which we could do
2  it. We could take each particular pouch or can,
3  assign it to a SKU date, and then create the list
4  from which we would do the random selection. We
5  may be operating on a SKU date that already has
6  organized product.
7  Q In which case you could use the organized product
8  as your proxy?
9  A Yes.
10 Q If it was inventoried, what would you then do?
11 A What I just said. I would first check to see
12 whether I have something in an organized way where
13 I could do the sampling plan as I described in
14 here.
15 Q And what other steps would you take after that?
16     MR. FAMA: Note my objection.
17 A Yeah, I'm really having trouble answering your
18 question because it's something I would not
19 recommend to do.
20 BY MR. WEXLER:
21 Q Well, I'm not asking whether you would recommend to
22 do it. I am asking what you would do as a
23 statistician.
24 A I wouldn't do it.
25 Q You wouldn't do it?

Page 20

1  A I would not do it.
2  Q If you were asked to do that, even if given the
3  information requested, you wouldn't do it?
4  A From what I understand, I would not be doing a good
5  job as a statistician to recommend something like
6  that.
7  Q And why is that?
8  A Because there's no cost benefit. It's not even
9  close to being reasonable to suggest something like
10 that.
11 Q Why?
12 A I make judgments like this all the time. I've been
13 doing it for 30 years in a variety of fields, and
14 that's my opinion.
15 Q And your opinion is based upon what?
16 A 30 years of experience.
17 Q Anything else?
18 A What I know about the framework here.
19 Q And what you know about the framework was told to
20 you by the Defense?
21 A Yes.
22 Q Would you agree with me that the sampling plan that
23 you devised here in Exhibit No. 1 requires multiple
24 levels of sampling?
25 A Yes.

Page 93

```
 1   Kenneth A. Wexler, Esq.(Originating Party)
     WEXLER TORISEVA WALLACE, LLP
 2   55 West Monroe Street
     Suite 3300
 3   Chicago, IL  60603
 4
           NOTICE OF DEPOSITION SUBMISSION
 5              JOB NO. 39748
 6   In the United States District Court
     District of New Jersey
 7   In Re: Pet Food Products Liability Litigation
     Civil Action No. 07-2867 (NLH)
 8   MDL Docket No. 1850
     ALL CASES
 9
         In compliance with Indiana Rules of Procedure,
10   Rules of the Industrial Board, or Federal Rules of
     Civil Procedure, pursuant to the Indiana Supreme
11   Court Order dated 10-1-86, you are notified the
     signed original deposition of GEORGE P. MCCABE,
12   Ph.D. has been sealed and submitted to the
     originating party.
13
14   _____
15   (Date of submission or mailing by certified mail)
16   cc:  Richard Fama, Esq.
          COZEN O'CONNOR
17   cc:  Laura A. Sanom, Esq.
          FARUKI IRELAND & COX, PLL
18   cc:  Mary Elizabeth Gately, Esq.
          DLA PIPER US, LLP
19   cc:  Robert TROYER, Esq.
          HOGAN & HARTSON, LLP
20   cc:  David M. Herzog, Esq.
          GIBSON DUNN & CRUTCHER, LLP
21   cc:  Jeniphr Breckenridge, Esq.
          HAGENS BERMAN SOBOL SHAPIRO, LLP
22
          STEWART RICHARDSON & ASSOCIATES
23          Registered Professional Reporters
                  One Indiana Square
24                  Suite 2425
                Indianapolis, IN  46204
25               (317)237-3773
```