UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
|  | : | MDL Docket No. 1850 (All Cases) |
|  | : |  |
| IN RE PET FOOD PRODUCTS | : | Case No. 07-2867 (NLH) |
| LIABILITY LITIGATION | : |  |
|  | : | Judge Noel L. Hillman |
|  | : |  |
|  | : | **DEFENDANTS' UNOPPOSED** |
|  | : | **MOTION TO ADOPT THE** |
|  | : | **RETRIEVAL PLANS FOR** |
|  | : | **ORGANIZED RECALLED** |
|  | : | **PRODUCT RECOMMENDED** |
|  | : | **BY DEFENDANTS' EXPERT** |
|  | : |  |
|  | : |  |

_____

Pursuant to Fed. R. Civ. P. 26(b) and (c) and for good cause shown,

the moving Defendants[1] request an Order adopting the retrieval plans described by

Defendants' expert, Dr. George P. McCabe,[2] for the organized recalled pet food

_____

[1] The moving Defendants are the companies possessing cases of organized recalled product that is stored on pallets, including:  (1) The Iams Company ("Iams"); (2) Hill's Pet Nutrition, Inc. ("Hill's"); (3) Nutro Products, Inc. ("Nutro"); (4) Nestle Purina PetCare Company ("Purina"); (5) Del Monte Foods Company ("Del Monte"); and (6) Menu Foods, Inc.; Menu Foods Income Fund; Menu Foods GenPar Limited; Menu Foods Holdings, Inc.; Menu Foods Limited; Menu Foods Limited Partnership; Menu Foods Midwest Corporation; Menu Foods Operating Limited Partnership; Menu Foods South Dakota, Inc.; Menu Foods Operating Trust; and Menu Foods Acquisitions Inc. (collectively, "Menu Foods") (collectively referred to as "Defendants").  Iams is a wholly-owned subsidiary of The Procter & Gamble Company and does business as P&G Pet Care.

[2] Dr. McCabe is a Professor of Statistics and the Associate Dean for Academic Affairs, College of Science, at Purdue University.

stored by Defendants.  By executing his retrieval plans, Defendants will select and

retain a statistically representative sample of recalled product that satisfies the

future testing needs of Plaintiffs and other interested parties.  The test results from

such a sample will accurately determine the extent of contamination, if any, of the

entire population of recalled pet food to a reasonable degree of statistical certainty.

For over one year, Defendants have stored and maintained over 3.4

million cases of recalled product in their warehouses.  On December 18, 2007, this

Court agreed with Defendants and their expert that the continued storage of such

enormous quantities of product is unnecessary, and concluded that Defendants may

retain only 500 units (which are cans, pouches or bags) of the organized recalled

pet food for each date of manufacture of a particular recipe of pet food (i.e., "SKU

Date").  During the three months since the December 18 Order (Doc. No. 106),

Dr. McCabe has developed detailed retrieval plans for each Defendant, instructing

them on the specific method of retrieval of the 500 units for each SKU Date based

on statistically sound retrieval methods.

This Court should permit Defendants to implement the retrieval plans

recommended by Dr. McCabe.  Dr. McCabe's retrieval plans are a

statistically-acceptable means for Plaintiffs and other interested parties to obtain

the necessary information about the extent of contamination, if any, of the

organized recalled food to a reasonable degree of statistical certainty. Dr. McCabe developed his retrieval plans by analyzing the production processes for the recalled pet food, which was produced in a systematic and uniform process. Under his retrieval plans, Defendants will collect the 500 units per SKU Date by selecting at least one case from the top of <u>every</u> full and partial pallet containing Organized Product for each of the 2,578 SKU Dates, resulting in the retention and preservation of over 94,000 cases of recalled pet food.[3] Dr. McCabe's recommendations conform with Plaintiffs' position that the 500 units should be selected from numerous pallets.

Dr. McCabe's plans are more accurate than alternative statistical retrieval methods. Dr. McCabe concludes that his retrieval plans, compared to alternative retrieval plans (for example, a retrieval method that requires randomly selecting units from pallets or that requires collecting units from substantially more cases per pallet), would more accurately reflect the population of recalled product because of the systematic production and palletization of the product. Indeed, Dr. McCabe opines that his chosen method would reduce the margin of error.

_____

[3] These retrieval plans do not address the sampling of raw wheat gluten or work-in-progress recipes.

Moreover, Dr. McCabe's retrieval plans are far less burdensome to Defendants to execute than alternative methods. The alterative methods would be impractical, enormously expensive and impose an undue burden on Defendants without adding to the statistical precision of the estimates. The alternative methods would require Defendants to unwrap and completely deconstruct every pallet (a pallet may contain up to 220 cases), randomly retrieve cases from within each pallet, and then restack and reseal every pallet before disposing of the extra product. This process will take some Defendants over <u>four</u> months to implement. This time-consuming process would not improve the precision of the estimate of product contamination, if any, for future researchers. Moreover, any potential benefit to future researchers, although none is apparent, resulting from this time-consuming process is substantially outweighed by the time and cost to Defendants of having to break down over 24,000 pallets.

In sum, Dr. McCabe's recommendations will result in a valid and reliable statistical sample of product for each and every recalled recipe on each day of manufacture during the recall period. For the reasons stated in this Motion, in the attached Memorandum in Support of this Motion and in the attached supporting declarations, the moving Defendants respectfully ask the Court to approve of Dr. McCabe's retrieval plans.

A proposed Order is attached as Exhibit H to the accompanying

Memorandum in Support.

Respectfully submitted,


_s/ D. Jeffrey Ireland_
D. Jeffrey Ireland (Ohio Bar No. 0010443)
Laura A. Sanom (Ohio Bar No. 0039451)
Brian D. Wright (Ohio Bar No. 0075359)
FARUKI IRELAND & COX P.L.L.
500 Courthouse Plaza, S.W.
10 North Ludlow Street
Dayton, OH  45402
Telephone:  (937) 227-3710
Telecopier:  (937) 227-3717
Email:  djireland@ficlaw.com

Attorneys for Defendant
The Iams Company


_s/ Warren W. Faulk_
Warren W. Faulk
BROWN & CONNERY, LLP
360 Haddon Avenue
P.O. Box 539
Westmont, NJ  08108
Telephone:  (856) 854-8900
Telecopier:  (856) 858-4967
Email:  wfaulk@brownconnery.com

_s/ Craig A. Hoover_
Craig A. Hoover
HOGAN & HARTSON L.L.P
555 Thirteenth Street, N.W.
Washington, D.C.  20004-1109
Telephone:  (202) 637-5600
Telecopier:  (202) 637-5910
Email:  cahoover@hhlaw.com

_s/ Robert C. Troyer_
Robert C. Troyer
HOGAN & HARTSON L.L.P
One Tabor Center
1200 Seventeenth Street, Suite 1500
Denver, CO  80202
Telephone:  (303) 899-7300
Telecopier:  (303) 899-7333
Email:  rctroyer@hhlaw.com

Attorneys for Defendant
Nestle Purina PetCare Company

_s/ Amy W. Schulman_
Amy W. Schulman
DLA PIPER LLP
1251 Avenue of the Americas
New York, NY  10020
Telephone:  (212) 335-4500
Telecopier:  (212) 335-4501
Email:  amy.schulman@dlapiper.com


_s/ Matthew Lepore_
Matthew Lepore
DLA PIPER LLP
1200 Nineteenth Street, NW
Washington, D.C.  20036-2412
Telephone:  (202) 861-3891
Telecopier:  (202) 689-7615
Email:  matthew.lepore@dlapiper.com

Attorneys for Defendants
Menu Foods, Inc.; Menu Foods Income Fund;
Menu Foods GenPar Limited; Menu Foods
Holdings, Inc.; Menu Foods Limited; Menu
Foods Limited Partnership; Menu Foods
Midwest Corporation.; Menu Foods Operating
Limited Partnership; Menu Foods South
Dakota, Inc.; Menu Foods Operating Trust; and
Menu Foods Acquisitions Inc.

*s/ James D. Arden*
James D. Arden
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY  10019
Telephone:  (212) 839-5300
Telecopier:  (212) 839-5599
Email:  jarden@sidley.com

Attorney for Defendant
Hill's Pet Nutrition, Inc.


*s/ Gary L. Justice*
Gary L. Justice
Lindsay Pennington
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  (213) 229-7508
Facsimile:  (213) 229-6508

Attorneys for Defendant
Nutro Products, Inc.


*s/ Richard Fama*
Richard Fama
COZEN O'CONNOR
45 Broadway Atrium - 16th Floor
New York, NY  10006
Telephone:  (212) 509-9400
Telecopier:  (212) 509-9492
Email:  rfama@cozen.com

Attorneys for Defendant
Del Monte Foods Company

**MEMORANDUM IN SUPPORT OF DEFENDANTS' UNOPPOSED
MOTION TO ADOPT THE RETRIEVAL PLANS FOR ORGANIZED
<u>RECALLED PRODUCT RECOMMENDED BY DEFENDANTS' EXPERT</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   INTRODUCTION AND SUMMARY OF ARGUMENT .................................................1

II.  DR. McCABE BASES HIS RETRIEVAL PLANS ON THE FACT THAT
     DEFENDANTS PRODUCED THE ORGANIZED PRODUCT IN A
     SYSTEMATIC AND UNIFORM MANNER ...................................................................7

III. DR. McCABE'S RETRIEVAL PLANS SHOULD BE ADOPTED..............................13

IV.  CONCLUSION ...........................................................................................................19

**<u>TABLE OF AUTHORITIES</u>**

Page(s)

**I.   <u>CASES</u>**

<u>In re Air Crash Disaster at Sioux City, Iowa</u>, No. MDL-817, No. 89 C
     8082, 1991 U.S. Dist. LEXIS 10372 (N.D. Ill. July 25, 1991)...............17

<u>In re Auto. Refinishing Paint Antitrust Litig.</u>, MDL Dkt. No. 1426,
     2004 U.S. Dist. LEXIS 29160 (E.D. Pa. Oct. 29, 2004) .......................14

<u>Donohoe v.  Am. Isuzu Motors</u>, 157 F.R.D. 238
     (M.D. Pa. 1994) ........................................................................13-14, 16

<u>Hall v. Keller</u>, No. 06-16116, 2007 U.S. App. LEXIS 27770
     (9th Cir. Nov. 27, 2007)...........................................................................19

<u>Munoz-Santana v. U.S. Immigration & Naturalization Serv.</u>,
     742 F.2d 561 (9th Cir. 1984)...................................................................16

<u>Palomba v. Barish</u>, No. 85-1278, 1986 U.S. Dist. LEXIS 22236
     (E.D. Pa. July 28, 1986) ..........................................................................13

<u>Quadrant EPP USA, Inc. v. Menasha Corp.</u>, No. 06-356, 2007 U.S.
     Dist. LEXIS 6539 (E.D. Pa. Jan. 29, 2007) .......................................18-19

<u>Thompson v. U.S. Dep't of Housing & Urban Dev.</u>, 219 F.R.D. 93
     (D. Md. 2003) ..........................................................................................19

<u>United States v. Clean Harbors of Natick, Inc.</u>, No. C-89-109-L, 1995
     U.S. Dist. LEXIS 4683 (D.N.H. Feb. 21, 1995) .....................................19

**II.   <u>STATUTES</u>**

Fed. R. Civ. P. 26.....................................................................................1, 13

## III.   <u>OTHER AUTHORITIES</u>

Matthew D. Bunker et al., <u>Proving Dilution:  Survey Evidence in Trademark Dilution Actions</u>, 13 U. Balt. Intell. Prop. L.J. 37 (2004) ...................................................................................................10

Martin Frankel, <u>Sampling Theory</u>, <u>Handbook of Survey Research</u> (Peter H. Rossi, <u>et</u> <u>a</u>l. eds., 1983) .....................................................12-13

John E. Freund, <u>Modern Elementary Statistics</u> (7th ed. 1988) .....................15

6 James Wm. Moore et al., <u>Moore's Federal Practice</u>, § 26.105[4] (3d ed. 2008)...........................................................................................17

<u>Reference Manual on Scientific Evidence</u> (2d ed. 2000).......................10, 14

Seymour Sudman, <u>Applied Sampling</u>, <u>Handbook of Survey Research</u> (Peter H. Rossi, <u>et</u> <u>a</u>l. eds., 1983) ......................................................14-15

I.           INTRODUCTION AND SUMMARY OF ARGUMENT

Pursuant to Fed. R. Civ. P. 26(b) and (c) and for good cause shown, the moving Defendants[1] seek an Order approving of the retrieval plans set forth by Defendants' expert, Dr. George P. McCabe, a Professor of Statistics and the Associate Dean for Academic Affairs, College of Science, at Purdue University.[2] Under Dr. McCabe's plans, the resulting representative sample of organized recalled pet food would be statistically acceptable to a reasonable degree of statistical certainty for any future testing requirements of Plaintiffs or other interested parties.  Dr. McCabe's retrieval plans will produce a sample that accurately represents the entire population of recalled pet food at a 95% confidence level.

---

[1] The moving Defendants are the companies possessing cases of organized recalled product that is stored on pallets, including:  (1) The Iams Company ("Iams"); (2) Hill's Pet Nutrition, Inc. ("Hill's"); (3) Nutro Products, Inc. ("Nutro"); (4) Nestle Purina PetCare Company ("Purina"); (5) Del Monte Foods Company ("Del Monte"); and (6) Menu Foods, Inc.; Menu Foods Income Fund; Menu Foods GenPar Limited; Menu Foods Holdings, Inc.; Menu Foods Limited; Menu Foods Limited Partnership; Menu Foods Midwest Corporation; Menu Foods Operating Limited Partnership; Menu Foods South Dakota, Inc.; Menu Foods Operating Trust; and Menu Foods Acquisitions Inc. (collectively, "Menu Foods") (collectively referred to as "Defendants").  Iams is a wholly-owned subsidiary of The Procter & Gamble Company and does business as P&G Pet Care.

[2] Dr. McCabe's curriculum vitae was previously filed with this Court on December 11, 2007 and is attached as Exhibit 10 to Defendants' Unopposed Motion to Limit the Retention of Organized Recalled Product, Raw Wheat Gluten and Unorganized Inventory ("Defendants' Sampling Motion") (Doc. No. 103).

On December 18, 2007, this Court issued an Order (Doc. No. 106) limiting discovery of Defendants' 3.4 million cases of "Organized Product," which Defendants have now been storing in their warehouses for over one year. Defendants' Sampling Decls., ¶¶ 3-5.[3]  The "Organized Product," as previously defined in Defendants' Sampling Motion (pp. 5-6), is recalled pet food contained in cans, bags or pouches placed in cases and stored on full or partial pallets in Defendants' warehouses.  Such product consists of pet food that remained in Defendants' possession or that was distributed to retailers and then returned to Defendants in unopened cases and/or pallets.  The Organized Product is identifiable by brand and product type (such as Iams Chicken in Gravy) and by date of production (collectively, the "SKU Date").[4]  Defendants' Sampling Decls., ¶¶ 4, 5, 7.  The Court's December 18, 2007 Order allows Defendants to retain a representative sample of the Organized Product -- only 500 units of Organized Product per SKU Date -- as recommended by Dr. McCabe.  McCabe Sampling

---

[3] These declarations from representatives of Defendants were used in support of Defendants' Sampling Motion, which was filed on December 11, 2007.  All six declarations (collectively, "Defendants' Sampling Decls.") were attached as Exhibits 3 through 8 to Defendants' Sampling Motion.

[4] SKU is an acronym for Stock Keeping Unit, and it is the identifier used by the retailer and supplier to locate an individual product as it appears on the retailer's shelf.

Decl., ¶¶ 11, 24-28.[5]  The December 18 Order, however, reserved the issue of how Defendants should select the 500 units from the Organized Product, so the parties could resolve it.  To date, Defendants have not disposed of any Organized Product, and they continue to store over 3.4 million cases.  See Defendants' Sampling Decls., ¶¶ 3, 4, 5.

Since the issuance of the Court's December 18, 2007 Order, Dr. McCabe has developed specific retrieval plans for each Defendant to collect the 500 units per SKU Date,[6] and he describes these plans in his March 26, 2008 Declaration ("McCabe Retrieval Decl.") and his April 8, 2008 Declaration ("McCabe Suppl. Retrieval Decl.") (both Declarations are attached to this Memorandum in Support as Exhibits A and B, respectively).[7]  Dr. McCabe opines that Defendants should select at least one case from the top of every full and partial pallet containing Organized Product (Defendants currently have over 24,000

---

[5] The Declaration of Dr. George P. McCabe in Support of Defendants' Unopposed Motion to Limit the Retention of Organized Recalled Product, Raw Wheat Gluten and Unorganized Inventory ("McCabe Sampling Decl.") was attached as Exhibit 10 to Defendants' Sampling Motion.  Dr. McCabe's sampling plan is described in detail in the McCabe Sampling Decl.

[6] His retrieval plans do not address the sampling of raw wheat gluten or work-in-progress recipes.

[7] Attached as Exhibits 1 through 6 to the McCabe Retrieval Decl. are spreadsheets for each Defendant that set forth the exact number of cases per SKU Date to be retrieved from each pallet.

pallets) to collect the representative sample permitted by the Court's December 18, 2007 Order.  McCabe Retrieval Decl., ¶¶ 11, 14; McCabe Suppl. Retrieval Decl., ¶ 4.  His recommendations were developed by reviewing and analyzing the manufacturing processes for Defendants' Organized Product, which was produced in a systematic and uniform manner.  McCabe Retrieval Decl., ¶ 8; Manufacturing Defendants' Retrieval Decls., ¶¶ 4-5, 12-14.[8]  His methodology is statistically acceptable to a reasonable degree of statistical certainty and is practical for Defendants to implement.

Defendants respectfully ask the Court to adopt Dr. McCabe's retrieval plans for collecting the 500 units per SKU Date that will comprise the representative sample.  First, by following Dr. McCabe's recommendations, Plaintiffs and future researchers can determine whether any of the Organized Product is contaminated and the extent of contamination.  McCabe Suppl. Retrieval Decl., ¶ 6.  The representative sample of Organized Product will consist of over 94,000 cases and will provide estimates with margins of error at a 95%

---

[8] The Manufacturing Defendants' Retrieval Decls. are declarations from representatives of each manufacturing Defendant (Menu Foods, Hill's, Purina and Del Monte) regarding its methods and processes of production relevant to the recalled product.  The Manufacturing Defendants' Retrieval Decls. are attached as follows:  Menu Foods Decl. (Exhibit C); Hill's Decl. (Exhibit D); Purina Decl. (Exhibit E); and Del Monte Decl. (Exhibit F).

confidence level.  Id. ¶ 3; McCabe Sampling Decl., ¶ 11; McCabe Retrieval Decl.,

¶¶ 4-5, 20.

Second, Dr. McCabe's retrieval plans are a more statistically accurate

methodology than alternative retrieval methods.  For example, an alternative

retrieval method may require the random selection of 2 units per case, resulting in

the retention of over 500,000 cases of recalled product as opposed to the 94,000

cases required by Dr. McCabe's plans.  McCabe Suppl. Retrieval Decl., ¶¶ 4-5.

Although such an alternative retrieval plan would result in over 5 times the number

of cases retained, it would not improve the precision of the estimate of product

contamination, if any, for future researchers.  Indeed, Dr. McCabe determined that

his retrieval methodology would result in a representative sample that is more

scientifically accurate than a simple random sampling method, resulting in a net

reduction of the margin of error by 42%.  McCabe Retrieval Decl., ¶ 18; McCabe

Suppl. Retrieval Decl., ¶ 3.  He further opines that the 94,000 cases from which

units will be retrieved will yield statistically sufficient samples, and increasing the

number of cases to over 500,000 (retrieving two units per case) "will have a

negligible effect on the final margin of error" and is "unnecessary to achieve the

goals of the[] sampling and retrieval plans."  McCabe Suppl. Retrieval Decl.,

¶¶ 4-5 (emphases added).  Thus, there is no apparent benefit from using other

retrieval methods.

Moreover, the alternative retrieval methods discussed in the preceding paragraph are significantly more burdensome for Defendants to implement than Dr. McCabe's plans. Such alternative methods would require Defendants to unwrap and completely deconstruct over 24,000 pallets, randomly retrieve cases from within each pallet, and then restack and reseal every pallet before disposing of the remaining cases on the pallet. Manufacturing Defendants' Retrieval Decls., ¶¶ 5, 9, 11, 14-17; Iams Decl., ¶ 5.[9] For Iams to comply with the alternative methods of retrieval to deconstruct and repack each of Iams' 5,500 pallets (which store roughly 593,000 cases), Iams would need <u>over 4 months</u> of dedicated labor to implement the plan. Iams Decl., ¶¶ 3, 6-7. Menu Foods would need even more time because it has over 15,000 pallets storing approximately 2.1 million cases. Menu Foods Decl., ¶¶ 5, 10. This enormous burden substantially outweighs any benefit to be derived from an alternative retrieval plan (and none is apparent). In fact, a simple random retrieval plan would not improve precision, and Dr. McCabe's retrieval plans are actually more statistically accurate than alternative plans. Defendants, therefore, should be allowed to follow the retrieval plans recommended by Dr. McCabe.[10]

---

[9] The "Iams Decl." is the declaration of Thomas Robinson of Iams, which is attached to this Memorandum in Support as Exhibit G.

[10] Plaintiffs do not oppose this Motion based on Defendants' representations

(footnote cont'd . . .)

II.        DR. McCABE BASES HIS RETRIEVAL PLANS ON THE FACT
           THAT DEFENDANTS PRODUCED THE ORGANIZED
           PRODUCT IN A SYSTEMATIC AND UNIFORM MANNER

Under Dr. McCabe's retrieval plans (McCabe Retrieval Decl., ¶¶ 11,

14), each Defendant will select the requisite 500 units per SKU Date by collecting

and retaining cases of Organized Product from the top of every full and partial

pallet storing recalled pet food.  As a result, Plaintiffs or other interested parties

will have a statistically sufficient representative sample for any future testing to

determine the extent, if any, of contamination of the Organized Product.

The pet food comprising the Organized Product was produced by four

of the moving Defendants:  Menu Foods, Hill's, Purina and Del Monte

(collectively, the "manufacturing Defendants").  Most of the recalled pet food was

manufactured by Menu Foods on behalf of Defendants Iams, Hill's, Nutro and

---

(. . . footnote cont'd)
concerning the retained Organized Product, including but not limited to
representations concerning uniformity of the product.  Such representations are
consistent with the documents and information provided by Defendants and
requested by Plaintiffs, including but not limited to the declarations attached to this
Motion and Memorandum in Support.  The parties expressly incorporate here the
Agreement Regarding the Preservation and Distribution of Organized Product and
the Distribution of Unorganized Inventory, filed with this Court on December 11,
2007 as Exhibit 1 to Defendants' Sampling Motion.  The parties expressly restate
all recitals and reserve all rights, remedies and obligations as stated in that
Agreement and agree that such remedies are applicable to all representations made
by Defendants herein, including but not limited to the above-stated representations
concerning the Organized Product.

Purina (collectively, the "purchasing Defendants").  Iams Decl., ¶ 4; Del Monte

Decl., ¶¶ 5-6; Hill's Decl., ¶¶ 8-9, 13.  Menu Foods' production processes for the

purchasing Defendants were designed to provide consistent product with little or

no variation between or within batches of a recipe.  Menu Foods Decl., ¶¶ 8-9;

Hill's Decl., ¶¶ 12-13.  In addition, Hill's, Purina and Del Monte produced their

own Organized Product.  Hill's Decl., ¶¶ 8-9; Purina Decl., ¶ 7; Del Monte Decl.,

¶¶ 4-6.  For each manufacturing Defendant, the production processes were similar

as they relate to the analysis underlying Dr. McCabe's retrieval plans.  Each

manufacturing Defendant's production process was designed to provide consistent

product with little or no variation.  Hill's Decl., ¶¶ 8-9, 12; Purina Decl., ¶ 12; Del

Monte Decl., ¶¶ 4-6; Menu Foods Decl., ¶ 15.

> To develop his retrieval plans, Dr. McCabe interviewed employees of

Defendants with personal knowledge of their production processes and the

uniformity, consistency and lack of variability in production of the pet food

comprising the Organized Product.  McCabe Retrieval Decl., ¶¶ 6-8.  The

Organized Product was made in batches of the same recipe.  Each mixing of raw

materials was considered one batch, and there were generally 2 to 6 batches per

SKU Date (except Purina typically produced 16 batches).  Menu Foods Decl., ¶ 7;

Del Monte Decl., ¶ 4; Hill's Decl., ¶ 8; Purina Decl., ¶ 7; McCabe Retrieval Decl.,

¶ 8.  For instance, to manufacture one batch of a recipe, the manufacturing

Defendant places all raw ingredients into a large mixing vat at the start of the mixing process and mixes those ingredients until they are uniformly distributed throughout the batch.  The manufacturing Defendants liken the mixing process to completely incorporating an egg into a cake batter.  Menu Foods Decl., ¶ 8.  After a batch is thoroughly mixed, the batch is extruded into individual units (i.e., cans, pouches or bags) and then systematically placed into a heating and sterilization unit called a "retort."  The units are then placed into cases (cases usually contained 12 or 24 units) in either the order in which they entered or exited the retort.  The cases are then placed on pallets in the order in which they were cased.[11]  An individual batch is quite large, producing enough units to fill multiple pallets.  Menu Foods Decl., ¶¶ 8, 10; Del Monte Decl., ¶ 7; Hill's Decl., ¶ 11; Purina Decl., ¶ 11; McCabe Retrieval Decl., ¶¶ 7-8.  Pallets store between 112 to 220 cases.  McCabe Retrieval Decl., ¶ 8.

    Uniformity within and among batches during the production of the Organized Product was essential to each manufacturing Defendant for each product.  The production process was designed to ensure no variation among units from the same batch, and only slight variation (0.5% or less) among different

---

[11] The production of bags of pet food was slightly different.  Bags are not placed into a retort and are not placed into cases.  Rather, bags are placed directly on the pallet, in the order in which the batch is extruded into the individual units.  Hill's Decl., ¶ 9.

batches.  Menu Foods Decl., ¶ 15; Iams Decl., ¶ 4; Del Monte Decl., ¶ 6; Hill's Decl., ¶ 12; Purina Decl., ¶ 12; McCabe Retrieval Decl., ¶¶ 7-8.  Further, the pallets were filled with cases in a sequential and continuous order.  Units from the same individual batch are contained in cases stored at the top of one pallet and the bottom of the very next pallet in the production process.  Menu Foods Decl., ¶ 9; Del Monte Decl., ¶ 7; Hill's Decl., ¶ 9; Purina Decl., ¶ 8; McCabe Retrieval Decl., ¶ 8.  Because of the manufacturing Defendants' uniform processes, cases stored at the top, middle and bottom of the same pallet have units within them from the same batch and with identical ingredients mixed thoroughly so that there is no variability of ingredients from unit to unit.  McCabe Retrieval Decl., ¶¶ 8, 14.

Dr. McCabe's retrieval plans use the statistical method called systematic sampling where every nth unit from the population is sampled (here, a case or cases from the top of every pallet).[12]  Systematic sampling is a "standard practice of the scientific community."  Matthew D. Bunker, et al., Proving Dilution:  Survey Evidence in Trademark Dilution Actions, 13 U. Balt. Intell. Prop. L.J. 37, 50 (2004).  Such sampling is proper when, as here, the sampled units were produced in a systematic and uniform manner.  McCabe Retrieval Decl., ¶ 18.  Specifically, Dr. McCabe's retrieval plans for Defendants are based on the fact that

---

[12] Reference Manual on Scientific Evidence, at 243 n.55 (2d ed. 2000).

all the Organized Product stored on the same pallet has negligible or no variation in ingredients and only slight variation among pallets.  In his March 26, 2008 Declaration (and attached Exhibits 1 through 6), Dr. McCabe concludes that Defendants should select at least 1 case per pallet per SKU Date (and multiple cases per pallet for most SKU Dates).  McCabe Retrieval Decl., ¶¶ 11, 14.  By following his recommendations, Defendants will choose the requisite 500 units for each SKU Date from the top of every full and partial pallet.  Id. ¶ 14.  There is no need for Defendants to choose cases from within pallets (e.g., from the bottom of a pallet).  Id.  Moreover, there is no need to limit the number of units retrieved from a case (e.g., taking 2 units from each of 24 cases on a pallet instead of taking 12 units from each of 4 cases).  McCabe Suppl. Retrieval Decl. ¶¶ 4-5.

        Under Dr. McCabe's plans, the number of selected cases per pallet for each SKU Date (as well as the number of total units retained) is based on the number of pallets that have cases stored on them for each SKU Date.  On a given SKU Date, Defendants initially will select at least one case from every pallet containing Organized Product.  If the chosen cases do not yield 500 units for that date, then Defendants will choose additional cases from the same pallet(s) until 500 units are retrieved.  McCabe Retrieval Decl., ¶¶ 11-12.  If the selection of one case per pallet for a given SKU Date yields at least 500 units, then no additional cases will be chosen for that date.  Thus, regardless of the number of pallets per

SKU Date, the total number of units selected and retained for each SKU Date will equal at least 500 and likely will exceed 500 units when a Defendants is storing numerous partially-filled pallets for one SKU Date (because one case must be chosen from each pallet being stored). The only exception is for the SKU Dates with fewer than 500 units being stored. Under that situation, all units will be retained. Id.[13]

In short, the representative sample resulting from executing Dr. McCabe's retrieval plans will consist of at least one case of Organized Product per SKU Date, and most SKU Dates have many more cases per pallet. Accordingly, Defendants will retain over 94,000 cases of Organized Product (equating to over 1.7 million units), and these cases will be selected from Defendants' over 24,000 pallets. Id. ¶ 20; McCabe Suppl. Retrieval Decl., ¶ 4.[14]

---

[13] To illustrate, Nutro is retaining recalled product that is both palletized (organized product stored in cases and stacked on full or partial pallets) and non-palletized (product not stored on pallets but inventoried). Nutro Decl., ¶¶ 3-5 (attached as Exhibit 8 to Defendants' Sampling Motion). Nutro may have fewer than 500 units for some SKU Dates of its palletized product. For those dates, Nutro will retain all units of its non-palletized product in accordance with Dr. McCabe's retrieval plans. See Exhibit 3 (fn. i) to the McCabe Retrieval Decl.

[14] Technically, Dr. McCabe's retrieval plans involve both systematic and cluster sampling: systematic sampling to retrieve the cases, and cluster sampling to retrieve the units. McCabe Suppl. Retrieval Decl., ¶ 6. Cluster sampling involves grouping the population into clusters and sampling the clusters. Martin Frankel, Sampling Theory, in Handbook of Survey Research 47 (Peter H. Rossi, et al. eds.,

(footnote cont'd . . .)

III.          DR. McCABE'S RETRIEVAL PLANS SHOULD BE ADOPTED

The moving Defendants respectfully ask this Court to allow

Defendants to retrieve units from cases as recommended by Dr. McCabe.  As

previously established (Defendants' Sampling Motion, pp. 9-10), under Fed. R.

Civ. P. 26(b) and (c), this Court has broad power to restrict discovery.  Palomba v.

Barish, No. 85-1278, 1986 U.S. Dist. LEXIS 22236, at *8-9 (E.D. Pa. July 28,

1986) (denying motion to compel; "[j]udges should not hesitate to exercise

appropriate control over the discovery processes").  Under the recent amendments

to Rule 26(c), the Court may limit discovery by (a) "prescribing a discovery

method other than the one selected by the party seeking discovery," (b) "limiting

the scope of disclosure or discovery to certain matters," or (c) "forbidding the

disclosure or discovery."  Fed. R. Civ. P. 26(c)(A), (C), (D).  Discovery should be

limited if there is an "adequate substitute" to the proposed discovery (Donohoe v.

_____

(. . . footnote cont'd)
1983).  The cluster here is the units of pet food (cans, bags or pouches) that are
contained in each case selected from the top of each pallet.  While some precision
in the estimate could be lost by retrieving units through cluster sampling, any loss
in the margin of error would be "negligible" (McCabe Suppl. Retrieval Decl., ¶ 4)
and is outweighed by the costs of time and labor to deconstruct pallets and
retrieve units by alternative methods.  See Iams Decl., ¶¶ 3, 6-7 (explaining that
Iams would need over 4 months to break down its 5,500 pallets if required to select
cases based on alternative sampling methods).  The "corresponding decrease in
costs will more than make up for [any negligible loss in precision of the
estimate]." Frankel, Sampling Theory at 47 & n.10 (stating that "rather than
examining design effects we must examine effective sample sizes per unit cost").

Am. Isuzu Motors, 157 F.R.D. 238, 246 (M.D. Pa. 1994)), or if the "discovery

sought can be obtained through some less burdensome process" (In re Auto.

Refinishing Paint Antitrust Litig., MDL Dkt. No. 1426, 2004 U.S. Dist. LEXIS

29160, at *17 (E.D. Pa. Oct. 29, 2004) (emphasis added)).

   First, Dr. McCabe's retrieval plans are a reliable statistical method to

retain the information necessary for Plaintiffs' claims and those of future interested

parties -- namely, the amount of contamination, if any, in the Organized Product.

By executing Dr. McCabe's recommendations, Defendants will retain a

representative sample of 500 units for each SKU Date that accurately reflects the

entire population of Organized Product.  Thus, Dr. McCabe's retrieval plans are a

scientifically acceptable method for collecting the 500 units and should be

implemented by Defendants.

   Dr. McCabe's systematic sampling plans are appropriate here because

the Organized Product was produced in a systematic and uniform manner.

Reference Manual on Scientific Evidence at 243 n.55 (2d ed. 2000) (in most cases,

"systematic samples and simple random samples generally produce the same

results").[15]  In this instance, systematic sampling is an improvement over other

---

[15] Accord:  Seymour Sudman, Applied Sampling, in Handbook of Survey Research
169 (Peter H. Rossi, et al. eds., 1983) (same).

retrieval methods because of the uniform production process and systematic palletization.  McCabe Retrieval Decl., ¶ 18; John E. Freund, <u>Modern Elementary Statistics</u> (7th ed. 1988), at 250 ("[S]ystematic samples actually provide an improvement over simple random samples inasmuch as the samples are spread more evenly over the entire populations.").

        The total population of Organized Product was manufactured and placed onto pallets in a deliberate, systematic manner.  Each batch was mixed in a manner where the raw ingredients throughout a single batch are uniform.  Menu Foods Decl., ¶¶ 8-9; Del Monte Decl., ¶¶ 5-6; Hill's Decl., ¶¶ 9, 12; Purina Decl., ¶ 8; McCabe Retrieval Decl., ¶¶ 7-8.  If tested, all samples from the same mixed batch would yield the same composition and proportions of raw ingredients.  The only variation of ingredients in the Organized Product is from batch to batch, and even that variation is very small (0.5% or less).  Menu Foods Decl., ¶ 15; Del Monte Decl., ¶ 6; Hill's Decl., ¶ 12; Purina Decl., ¶ 12; McCabe Retrieval Decl., ¶ 8.  Dr. McCabe's recommendations capture this small variation by requiring Defendants to select at least one case from the top of <u>each</u> pallet.  McCabe Retrieval Decl., ¶¶ 9, 11, 14.  Thus, the use of systematic sampling here, compared to other methods, ensures that the first and last batch (and all batches in between) of recalled product will be sampled.  Dr. McCabe's retrieval plans will yield a representative sample that provides estimates with margins of error at the 95%

confidence level, a level commonly used in statistics and for applied research.
McCabe Sampling Decl., ¶ 11; McCabe Retrieval Decl., ¶¶ 4-5; McCabe Suppl.
Retrieval Decl., ¶ 3.

Defendants should be permitted to execute Dr. McCabe's
recommendations.  His plans require Defendants to select and retain over 94,000
cases of Organized Product -- over 400,000 more units than necessary under this
Court's December 18, 2007 Order.[16]  Dr. McCabe's systematic retrieval plans allow
any interested party to address the issue of whether and to what extent any
Organized Product is contaminated.  Accordingly, Defendants request that the
Court adopt Dr. McCabe's recommendations, which are more than an "adequate
substitute" to the alternatives of using pure simple random sampling or requiring
retention of 2 units per case, where possible.  Donohoe, 157 F.R.D. at 246
(refusing to order defendant to allow a representative of plaintiff to personally
observe the vehicle test to be performed by defendant's experts because the
publication of the results in the expert report would be an "adequate substitute");
Munoz-Santana v. U.S. Immigration & Naturalization Serv., 742 F.2d 561, 563

---

[16] Here, among all six Defendants, the Organized Product contains pet food for
2,578 SKU dates.  McCabe Retrieval Decl., ¶ 20.  If Defendants choose 500 units
for each SKU date and no more (as permitted by the December 18, 2007 Order),
then they would retain approximately 1.3 million units (500 units x 2,578 SKU
dates).  Under Dr. McCabe's plans, however, Defendants are retaining over 1.7
million units.  Id.

(9th Cir. 1984) (ruling that the District Court abused its discretion by compelling the production of documents because requesting party had an "adequate substitute for the documents" and because responding party already had spent "266 man-hours" to partially comply with the discovery request).[17]  This Court can enforce one method of discovery over more burdensome alternatives.  6 James Wm. Moore, et al., Moore's Federal Practice, § 26.105[4] (3d ed. 2008) (stating that a court may order discovery to be had "by a method . . . other than that selected by the party seeking discovery").

Second, Dr. McCabe's recommendations are substantially "less burdensome" to Defendants than alternative, less reliable, retrieval methods.  Any possible benefit to future researchers under alternative retrieval methods are not apparent and, at any rate, are outweighed by the burden of time and cost involved to break down Defendants' over 24,000 pallets.  E.g., Purina Decl., ¶¶ 13-14; Menu Foods Decl., ¶¶ 5, 10, 16-17.  As Dr. McCabe opines, the simple random retrieval method is less scientifically accurate than Dr. McCabe's systematic approach, and requiring retrieval of 2 units per case will have only "negligible effect on the final

---

[17] Accord:  In re Air Crash Disaster at Sioux City, Iowa, No. MDL-817, No. 89 C 8082, 1991 U.S. Dist. LEXIS 10372, at *4-5, *7 (N.D. Ill. July 25, 1991) (denying motion to compel because plaintiffs had "a less burdensome alternative" available to them; determining that plaintiffs' request to fly one of United Airlines' aircrafts to recreate an earlier crash was "unduly burdensome").

margin of error" and is "unnecessary" to the goals of the sampling plan here. McCabe Suppl. Retrieval Decl., ¶¶ 4-5.  Moreover, implementing these alternate methods would require Defendants with large quantities of Organized Product to spend numerous months (and possibly more than a year).  For instance, Iams has 593,293 cases stored on 5,500 pallets, and Iams would need over 4 months of labor to break down all those pallets to retrieve units randomly.  Iams Decl., ¶¶ 3, 6-7. By contrast, Iams estimates it could implement Dr. McCabe's plan in roughly two weeks.  Id. ¶¶ 7-8.  Menu Foods has 4 times more pallets than Iams (over 15,000 pallets) and would need well over 4 months to execute an alternative plan.  See Menu Foods Decl., ¶¶ 5, 10.

As explained above, Dr. McCabe's retrieval methodology will result in a representative sample that is more scientifically accurate than alternative methodologies.  McCabe Retrieval Decl., ¶ 18.  Thus, it is unnecessary to impose an undue burden on the retrieving Defendants.  Courts have limited discovery to save a responding party, such as Defendants here, from the undue burdens of time and cost necessary to comply with a discovery request where the likely benefit of the discovery is low.  Quadrant EPP USA, Inc. v. Menasha Corp., No. 06-356, 2007 U.S. Dist. LEXIS 6539, at *5-6 (E.D. Pa. Jan. 29, 2007) (denying motion to compel the discovery of 50,000 paper documents and 2,000 electronic documents; explaining that the time necessary for the responding party to review and sort those

documents "would be unmanageable and extremely costly, especially when the benefit . . . is so limited"); <u>Hall v. Keller</u>, No. 06-16116, 2007 U.S. App. LEXIS 27770, at *3 (9th Cir. Nov. 27, 2007) (affirming the denial of "motion to compel production of over 150,000 paper documents where the request would have been unduly burdensome to defendants").[18]

IV.        <u>CONCLUSION</u>

The moving Defendants respectfully request that the Court permit Defendants to select the requisite 500 units per SKU Date per the retrieval methodology recommended by Dr. McCabe.  Under his retrieval plans, Plaintiffs or other interested parties will be able to estimate the level of contamination, if any, contained in the Organized Product.

A proposed Order is attached as Exhibit H to this Memorandum in Support.

---

[18] <u>Accord</u>:  <u>United States v. Clean Harbors of Natick, Inc.</u>, No. C-89-109-L, 1995 U.S. Dist. LEXIS 4683, at *10-12 (D.N.H. Feb. 21, 1995) (restricting discovery and concluding that the requests for documents were unduly burdensome because they potentially would require the review of "tens of thousands of files at a potential expense of thousands of person hours"); <u>Thompson v. U.S. Dep't of Housing & Urban Dev.</u>, 219 F.R.D. 93, 99 (D. Md. 2003) (explaining that a court may "limit the number of hours required by the producing party to search for electronic records").

Respectfully submitted,


*s/ D. Jeffrey Ireland*
D. Jeffrey Ireland (Ohio Bar No. 0010443)
Laura A. Sanom (Ohio Bar No. 0039451)
Brian D. Wright (Ohio Bar No. 0075359)
FARUKI IRELAND & COX P.L.L.
500 Courthouse Plaza, S.W.
10 North Ludlow Street
Dayton, OH  45402
Telephone:  (937) 227-3710
Telecopier:  (937) 227-3717
Email:  djireland@ficlaw.com

Attorneys for Defendant
The Iams Company


*s/ Warren W. Faulk*
Warren W. Faulk
BROWN & CONNERY, LLP
360 Haddon Avenue
P.O. Box 539
Westmont, NJ  08108
Telephone:  (856) 854-8900
Telecopier:  (856) 858-4967
Email:  wfaulk@brownconnery.com

_s/ Craig A. Hoover_
Craig A. Hoover
HOGAN & HARTSON L.L.P
555 Thirteenth Street, N.W.
Washington, D.C.  20004-1109
Telephone:  (202) 637-5600
Telecopier:  (202) 637-5910
Email:  cahoover@hhlaw.com

_s/ Robert C. Troyer_
Robert C. Troyer
HOGAN & HARTSON L.L.P
One Tabor Center
1200 Seventeenth Street, Suite 1500
Denver, CO  80202
Telephone:  (303) 899-7300
Telecopier:  (303) 899-7333
Email:  rctroyer@hhlaw.com

Attorneys for Defendant
Nestle Purina PetCare Company

_s/ Amy W. Schulman_
Amy W. Schulman
DLA PIPER LLP
1251 Avenue of the Americas
New York, NY  10020
Telephone:  (212) 335-4500
Telecopier:  (212) 335-4501
Email:  amy.schulman@dlapiper.com


_s/ Matthew Lepore_
Matthew Lepore
DLA PIPER LLP
1200 Nineteenth Street, NW
Washington, D.C.  20036-2412
Telephone:  (202) 861-3891
Telecopier:  (202) 689-7615
Email:  matthew.lepore@dlapiper.com

Attorneys for Defendants
Menu Foods, Inc.; Menu Foods Income Fund;
Menu Foods GenPar Limited; Menu Foods
Holdings, Inc.; Menu Foods Limited; Menu
Foods Limited Partnership; Menu Foods
Midwest Corporation.; Menu Foods Operating
Limited Partnership; Menu Foods South
Dakota, Inc.; Menu Foods Operating Trust; and
Menu Foods Acquisitions Inc.

*s/ James D. Arden*
James D. Arden
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY  10019
Telephone:  (212) 839-5300
Telecopier:  (212) 839-5599
Email:  jarden@sidley.com

Attorney for Defendant
Hill's Pet Nutrition, Inc.

*s/ Gary L. Justice*
Gary L. Justice
Lindsay Pennington
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  (213) 229-7508
Facsimile:  (213) 229-6508

Attorneys for Defendant
Nutro Products, Inc.

*s/ Richard Fama*
Richard Fama
COZEN O'CONNOR
45 Broadway Atrium - 16th Floor
New York, NY  10006
Telephone:  (212) 509-9400
Telecopier:  (212) 509-9492
Email:  rfama@cozen.com

Attorneys for Defendant
Del Monte Foods Company

23

## CERTIFICATE OF SERVICE

I certify that on the 10th day of April, 2008, I electronically filed the foregoing Defendants' Unopposed Motion to Adopt the Retrieval Plans for Organized Recalled Product Recommended by Defendants' Expert with the Clerk of Courts using the CM/ECF system, which will send notification of such filing to CM/ECF participants.


*s/ Laura A. Sanom*
Laura A. Sanom

193031.1