UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE PET FOOD PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1850 (All Cases)<br><br>Case No. 07-2867 (NLH)<br><br>The Honorable Noel L. Hillman<br><br>**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, APPROVAL OF PROPOSED FORM OF NOTICE, AND PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS** |

## I.  <u>INTRODUCTION</u>

After over seven months of arm's length negotiations by experienced, capable counsel on all sides of the table, the parties have reached a settlement that resolves the claims of consumers in the United States and Canada who purchased, or whose pets consumed, pet food and/or treat products that were recalled because they allegedly contained contaminated wheat gluten and/or rice protein concentrate ("Recalled Pet Food Products").  The parties jointly move the Court for preliminary approval of that settlement.

The settlement creates a $24 million cash Settlement Fund that will allow a potential recovery of *up to 100% of all economic damages incurred* by Settlement Class Members that are reasonable and supported by documentation, subject to certain limitations described below.  In addition, the Claims Administrator has authority and discretion to pay Settlement Class Members up to $900 from the Settlement Fund for claims for economic damages submitted without documentation, provided the Claims Administrator determines that the claims otherwise are valid and the expenses are reasonable.  The settlement further provides for the agreement by those

Defendants that manufactured the recalled pet food products and treats to continue for a period of one year Quality Assurance Programs that were undertaken in the wake of the recall and to continue the testing of wheat gluten or rice protein concentrate imported from China.  Any settlement funds remaining after payment of valid claims will be donated to animal welfare-related charities.

The settlement takes into account the risks of litigation, including the risks inherent in certifying a litigation class, the expense of protracted litigation, difficulties proving damages, the necessity of expensive expert analysis and testimony, and the prospect of appeals of certain decisions.  Throughout the protracted settlement negotiations, which were conducted in the presence of a neutral mediator, the parties were candid in exchanging information concerning their cases.  The proposed settlement is the best means by which to ensure that Settlement Class Members receive the relief to which they are entitled in a prompt and efficient manner.  And, if certain Settlement Class Members desire an alternate form of relief than that provided in the settlement, they will be given the right to opt out of the settlement and pursue such relief.

The relief delivered in the settlement will be substantial.  Under the Settlement Agreement, Settlement Class Members may receive full reimbursement for all reasonable, documented economic damages that relate to their purchase of Recalled Pet Food Products or their pet's consumption of Recalled Pet Food Products, including expenses arising from injury to or death of any of their pets as a result of consuming the Recalled Pet Food Products.  In addition, for any economic damages that are *undocumented*, Settlement Class Members are eligible to receive a payment of up to $900 for valid and reasonable claims.  As described more fully below, reimbursement of Settlement Class Members submitting eligible claims will be reduced, and on a pro rata basis, only if the claims to be paid exceed the total amounts available to Settlement Class

2

Members in three different categories: product reimbursement (limited to $250,000), healthy screens (limited to $400,000), and all other economic damages, including those relating to the injury or death of a pet (all remaining funds from the Settlement Fund).

Because the Settlement Agreement is fair, reasonable, and adequate, it should be preliminarily approved by this Court under Fed. R. Civ. P. 23(e). In addition, because the proposed Settlement Class meets the requirements of Fed. R. Civ. P. 23 ("Rule 23"), and the proposed Notice Plan would provide the best notice practicable under the circumstances, and complies with constitutional due process requirements, this Court should preliminarily certify the Settlement Class and approve the dissemination of Notice in the manner and form proposed herein.

## II.   BACKGROUND

### A.   The Litigation

Consumers across the country, and in Canada, filed over 100 lawsuits arising out of the 2007 recall of contaminated pet food. The recall began with Menu Foods' March 2007 announcement, and quickly expanded to ultimately cover approximately 180 brands of pet food and pet treats produced by twelve different manufacturers and distributed, marketed and sold by dozens of retailers.

Specifically, on March 16, 2007, Menu Foods began a recall of more than 50 brands of dog food and more than 40 brands of cat food. Menu Foods' recall covered pet food it produced between November 8, 2006 and March 6, 2007. It was later determined that wheat gluten and rice protein concentrate supplied to multiple pet food manufacturers by ChemNutra, Inc. and Wilbur Ellis may have been contaminated. The Chinese company Xuzhou Anying Biologic Technology Development Co. Ltd. was the source of this wheat gluten and rice protein

concentrate.[1]  Within a month after Menu Food's initial recall, four other pet food manufacturers

initiated recalls of their own pet food and treat products that may have been contaminated –

Hill's Pet Nutrition on March 30, 2007; Nestle Purina Pet Care Company on March 30, 2007;

Del Monte Pet Products on April 2, 2007; and Sunshine Mills, Inc. on April 5, 2007.  The recalls

expanded through 2007.  It was the largest pet food recall in history, drawing FDA review,

congressional inquiry, United States Attorney investigations, and the attention of media and the

public across the globe.

     Within days of the recall, the first class action complaints were filed against Menu Foods

and other pet food manufacturers and various affiliates in the distribution chain, including

distributors, repackagers and retailers.  Eventually, dozens of putative class actions were filed in

federal and state courts throughout the United States by over 250 named plaintiffs.  Plaintiffs

brought claims on behalf of all persons who purchased, used or obtained, or whose pets

consumed, any cat or dog food or treats that allegedly contained contaminated wheat gluten or

rice protein concentrate.  The lawsuits alleged, among other things, violations of state consumer

---

[1]     Representatives of the FDA traveled to China on April 30, 2007 to conduct an investigation, in conjunction with the Chinese government, of Chinese melamine suppliers. David Barboza, *China Makes Arrest in Pet Food Case*, N.Y. Times, May 4, 2007.  The FDA's findings were incorporated into an investigation conducted by the U.S. Attorney's Office that, on February 6, 2008, resulted in a 26-count indictment against Xuzhou Anying, its owner as well as Suzhou Textiles, Silk, Light Industrial Products, Arts and Crafts I/E Co., LTD. (SSC) and its president.  U.S. Food and Drug Administration (FDA), *FDA Investigation Leads to Several Indictments for Importing Contaminated Ingredients Used In Pet Food*, Feb. 6, 2008, *at* http://www.fda.gov/bbs/topics/NEWS/2008/NEW01792.html.  The Chinese government has since shut down Xuzhou Anying and "Chinese officials signed an agreement in December increasing inspections on a number of products, including pet food ingredients." www.News24.com, *Tainted Pet Food: Firms Charged*, Feb. 7, 2008, *at* www.news24.com/News24/World/News/0,,2-10-1462_2265949,00.html.  In addition, SSC no longer ships food to the United States. *See*, *e.g.*, Louise Story, *Pet Food Indictments for 3 Firms*, N.Y. Times, Feb. 7, 2008.

protection and deceptive trade practice statutes, product liability and common law claims against dozens of defendants spanning the entire chain of pet food distribution.

On June 19, 2007, the Judicial Panel on Multidistrict Litigation consolidated the actions and transferred them to this Court for pretrial proceedings.  The Court held an initial practice and procedure conference on September 26, 2007, at which time the Court stayed the litigation to facilitate formal mediation.  Mediation of both the U.S. lawsuits and the lawsuits that had been filed in Canada proceeded over the months that followed, as the parties have periodically reported to the Court.

**B.    The Mediation**

The parties began to discuss the possibility of resolution of the pet food recall litigation in early September 2007, before the Court's first hearing in this matter.  They selected an experienced complex litigation mediator to facilitate settlement discussions, as they reported to this Court during the initial practice and procedure conference on September 26, 2007.

The mediation began on September 25, 2007, and numerous sessions followed between October 2007 and March 2008.  In total, more than ten days of mediation were held.  These sessions were complicated by the involvement of a large number of defendants and the need to represent the interests of various plaintiffs, including Canadian plaintiffs and their counsel. Outside the formal mediation sessions, the parties engaged in extensive cross-country and cross-border negotiations and drafting. The negotiations covered a substantial number of issues, which, through the parties' extensive efforts, ultimately were resolved, culminating in the Settlement Agreement attached as Exhibit 1.

## C.    The Settlement

The Settlement Agreement includes the following material terms:

### 1.    The Settlement Class

In connection with preliminary approval, Plaintiffs request that the Court certify the

following class pursuant to Rule 23(a) and Rule 23(b)(3) for purposes of the settlement only:

> [A]ll persons and entities who purchased, used or obtained, or whose pets used or
> consumed Recalled Pet Foods Product(s),[2] and excluding Released Entities and the *Lum*
> Class.[3]

Settlement Agreement ¶ I.VV.

### 2.    The Settlement Fund

The Settlement Agreement creates a $24 million cash settlement fund, which is in

addition to the at least $8 million in Historic Payments already paid by certain Defendants and/or

---

[2]    The Settlement Agreement defines "Recalled Pet Food Product(s)" as "any pet food
product and/or treat product or ingredient thereof that were recalled by any Released Entity
between March 16, 2007 and the present because of allegedly contaminated wheat gluten and/or
rice protein and purchased, obtained, used, made available, or intended to be purchased or
obtained by Class Members in the United States or Canada."  Settlement Agreement ¶ I.OO.

[3]    The "Lum Class" is the settlement class certified and preliminarily approved by the
Circuit Court of Hawaii in the action *Lum v. Menu Foods, Inc. ,Menu Foods Income Fund, and
Menu Foods Holdings, Inc.*, formerly *Ortiz v. Menu Foods, Inc., Menu Foods Income Fund, and
Menu Foods Holdings, Inc.*, in the Circuit Court for the State of Hawai'i, Civil No. 07-1-0849-05
(EEH), comprised of all residents of the State of Hawai'i who purchased pet food in the State of
Hawai'i that was manufactured by Menu Foods on or between November 8, 2006 and March 7,
2007 and that was recalled on or between March 16, 2007 and the present, excluding (i) Menu
Foods, Inc., Menu Foods Income Fund, and Menu Foods Holdings, Inc (collectively, the "Menu
Foods *Lum* Defendants"); (ii) the Menu Foods *Lum* Defendants' subsidiaries, parents, and
affiliates, including all directors, officers, and employees thereof; (iii) members of the immediate
family of any of the foregoing, if natural persons; (iv) the legal representatives, heirs, successors,
and assigns of any of the foregoing; (v) any Person in which any of the foregoing has a
controlling interest; and (vi) all "Deceased Animal Claims" and/or "Injury Claims" and claims of
whatever nature asserted by any person with a "Deceased Animal Claim" and/or "Injury Claim,"
including but not limited to the persons and claims in *Sylvester et al v. Menu Foods, Inc. et al.*, in
the Circuit Court for the State of Hawai'i, Civil No. 07-1-0848-05 (as the terms "Deceased
Animal Claims" and "Injury Claims" are defined in the *Lum* Settlement Agreement).  Settlement
Agreement § II.BB.

their insurers in settlement or reimbursement of claims for injury, death or healthy screening expenses associated with a pet's consumption of Recalled Pet Food Products.

The Settlement Fund will pay Settlement Class Members up to 100% of the economic damages they incurred due to their purchase of a Recalled Pet Food Products, including those for the healthy screening, illness or death of their pets after the consumption of a Recalled Pet Food Product. Economic damages supported by documentation accepted by the Claims Administrator may, to the extent they are reasonable, be paid in full. In addition, the Claims Administrator has authority to pay Settlement Class Members up to $900 from the Settlement Fund for claims for reasonable economic damages submitted without documentation. This amount is *in addition to* payment for economic damages that are documented. There are a few limitations on payments for certain types of damages, which are described below. Payments to Settlement Class Members are only subject to pro rata reductions if the total amounts of valid claims exceed the Settlement Fund, which sets aside certain amounts for product reimbursement and healthy screening, as detailed below. Reimbursement of Settlement Class Members submitting eligible claims will be reduced, and on a pro rata basis, only if the claims to be paid exceed the total amounts available to Settlement Class Members in three different categories: product reimbursement (limited to $250,000), healthy screens (limited to $400,000), and all other economic damages, including those relating to the injury or death of a pet (all remaining funds from the Settlement Fund).

### 3.    The Notice Program

The proposed Notice Program is fully described in Section II.E and Exhibit B to the Declaration of Edward J. Sincavage to the Settlement Agreement.

7

Notice will be by both publication and by direct mail.  Notice by publication will be made by publication in both the United States and Canada in newspapers, periodicals, or other sources, including electronic media.  Notice will also be provided to national veterinary organizations, including the American Veterinarian Medical Association and the Canadian Veterinary Medical Association, for further dissemination at their option to their members and veterinarians.  Notice will also be disseminated by direct mail to (1) all persons who were paid as part of a Historic Payment program and (2) all persons who completed and returned a claim form to Crawford & Company and whose names and addresses are in a readily accessible database maintained by Crawford & Company.[4]  Defendants and Crawford & Company shall provide the TPA on a confidential basis the names and address of all such persons.  The cost of Class Notice will be paid from the Settlement Fund.

There will be a toll-free number and a settlement website available through which Settlement Class Members can obtain additional information or copies of settlement documents, including claim forms and a list of the Recalled Pet Food Products.  Class Counsel will also post information, including a link to the settlement website, on their respective firm websites.  The claim form will be available in English, French and Spanish.

### 4.    The Claims Process

The claims process will conform to the following basic structure.  Claimants will submit a claim form along with their available documentation, if any.  The Claims Administrator will review the claim form, any accompanying documentation, explanations of claimants for

---

[4]      Crawford & Company was retained on behalf of Menu Foods shortly after the announcement of the Recall to intake and adjust claims presented to Menu Foods.  This program was terminated following proceedings before this Court concerning communications with potential class members.

8

economic damages that are not supported by documentation, evaluate the validity of claim, and

determine any amounts to be paid.  The payments are subject to the following criteria.

Recoverable economic damages include the following:

A.  Injury Claims.  These are claims for damages where a pet used or consumed a Recalled Pet Food Product and was treated for related symptoms or injuries of acute renal or kidney failure (exhibited by symptoms of vomiting, lethargy, decreased appetite, increased urination, and/or increased water intake) related to the use or consumption of a Recalled Pet Food Product but the pet did not die.  Such damages include the reasonable costs of veterinary treatment.

B.  Deceased Animal Claims.  These are claims for damages where a pet used or consumed a Recalled Pet Food Product and died of acute kidney or renal failure (exhibited by symptoms of vomiting, lethargy, decreased appetite, increased urination, and/or increased water intake) related to such use or consumption, or as a result of treatment for acute kidney or renal failure (exhibited by symptoms of vomiting, lethargy, decreased appetite, increased urination, and/or increased water intake).  Such damages include: the reasonable costs of veterinary treatment; reasonable necropsy or pet autopsy costs; euthanasia costs; reasonable cremation or burial costs; and the cost or fair market value of the deceased pet, whichever is higher, or, for those pets purchased before May 22, 2008, the reasonable cost to purchase a new pet.

C.  Healthy Screening Claims.  These are claims for the costs incurred by a Settlement Class Member to screen or test a pet for injury or illness after the use or consumption of a Recalled Pet Food Product, where the screening or testing proved negative. Payments from the Settlement Fund for Healthy Screening Claims are limited to an aggregate maximum of $400,000.  If valid Healthy Screening Claims for Settlement Class Members exceed $400,000, awards for Healthy Screening Claims will be pro rated.

D.  Consumer Food Purchase Claims.  These are claims for reimbursement of the cost of Recalled Pet Food Products.  Payments from the Settlement Fund for Consumer Food Purchase Claims are limited to an aggregate maximum of $250,000.  If valid Consumer Food Purchase Claims exceed $250,000, awards for such claims will be pro rated.

E.  Other economic damages are also recoverable.  All other types of economic damages are potentially recoverable.  Such additional economic damages may include travel and transportation expenses, property damage such as damage to carpets as a result of the pet's illness, lost wages or any other expense related to the pet's illness or death.  Settlement Class Members will have ample space on the Claim Form to state and explain these additional economic damages, if any.  If they are unable to provide documentation for these additional economic damages, they may still recover damages actually incurred, based on the information provided about the nature and value of such claims and subject to the $900 per pet limitation for all undocumented

9

economic damages, if the claims are valid in the discretion of the Claims Administrator.

If valid claims for Injury, Deceased Pet, and other economic damages (categories A, B, and E above) exceed the amount available from the Settlement Fund for such claims, the combined awards for such claims will be pro rated.

### 5.   The Claims Administrator.

Heffler, Radetich & Saitta L.L.P. is the Claims Administrator selected by Plaintiffs' counsel after issuing a Request for Proposal to eight different Claims Administration firms and comparing and evaluating the responses received. Defendants have consented to Plaintiffs' selection. The Claims Administrator will oversee the Notice program and will evaluate all claims received to determine whether they are reasonable, valid and payable from the Settlement Fund. The Claims Administrator will have the authority to contact the claimant or his or her veterinarian to confirm information provided in the Claim Form and to seek additional information if necessary. The Claims Administrator will have complete and final authority to determine the amount to be paid on each claim and its decision will be final, binding and not subject to appeal.

### 6.   Claim Form Submission

Settlement Class Members will have up to 160 days from the Notice Date to file their Claim Forms.[5] This schedule grants Settlement Class Members ample time to gather documentation from their veterinarians and other sources.

_____

[5]   Under Section II.E.2 of the Settlement Agreement, in the United States and subject to approval by this Court, Class Notice shall be reasonably disseminated within fifteen (15) days of the entry of the Preliminary Approval Order by the Court (the "U.S. Notice Date"). In Canada, subject to approval by the Canadian Courts, the Class Notice shall be reasonably disseminated within seven (7) days of the last order approving the Class Notice being granted by the Canadian Courts ("Canadian Notice Date").

There are many acceptable forms of proof for claims made.  Settlement Class Members may submit veterinarian bills, veterinary records, cancelled checks, receipts, credit card receipts, and/or credit card statements as documentation to support their claims for economic damages. Statements from veterinarians can also be submitted to support certain expenses related to the injury or death of a pet.  For reimbursement for the cost of a pet, Settlement Class Members may also submit AKC registrations or Cat Fancier's Association Certificates.  For reimbursement of the cost of the recalled pet food, copies of product labels or other records that prove purchase are also acceptable forms of documentation.  In addition, the Claims Administrator will be provided with agreed-upon guidelines on the costs of various types of economic damages, specifically necropsy/autopsy, euthanasia, cremation, burial/Specialty Services, costs of new pets, and the number of Healthy Pet Screenings that are presumptively reasonable.

### 7.   **Charitable Donations**

The settlement further provides for charitable distributions to animal welfare-related organizations of any funds remaining after the administration of the settlement and payment of all valid claims timely made.

### 8.   **The Release**

Pursuant to the settlement, Plaintiffs will release all claims, demands, actions, suits, and/or causes of action that have been brought or could have been brought, are currently pending or were pending, or are ever brought in the future by any Settlement Class Member against any Defendant or Released Entity in any forum in Canada or the United States (including their territories and, in the case of the United States, Puerto Rico), whether known or unknown, asserted or unasserted, under or pursuant to any statute, regulation, common law or equity, that relate in any way, directly or indirectly, to facts, acts, events, transactions, occurrences, courses

11

of conduct, representations, omissions, circumstances or other matters referenced in any claim

raised (including, but not limited to, any claim that was raised against any Released Entity) in the

Pet Food Recall Litigation.  Settlement Agreement, ¶ III.A.

## III.   **ARGUMENT**

### A.   **THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED**

#### 1.   **The Standard For Preliminary Approval**

It is established that there is an overriding public interest in settling litigation, particularly

complex litigation.  Alba & Conte, *4 Newberg on Class Actions* § 11:41 (4th ed. 2002)

("*Newberg*").  This principle is well recognized in the Third Circuit.  *Lazy Oil Co. v. Witco Corp.*,

95 F. Supp. 2d 290, 329-330 (W.D. Pa. 1997), *aff'd, Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581

(3d Cir. 1999); *Austin v. Penn. Dept. of Corrections*, 876 F. Supp 1437, 1455 (E.D. Pa. 1995)

(explaining that "the extraordinary amount of judicial and private resources consumed by

massive class action litigation elevates the general policy encouraging settlements to 'an

overriding public interest.'") (citation omitted); *see also Eichenholtz v. Brennan*, 52 F.3d 478,

486 (3d Cir. 1995) ("[T]he settlement of complex litigation before trial is favored by the federal

courts.").  In fact, "settlement should be facilitated at as early a stage of the litigation as

possible."  6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1522,

at 225-26 (2d ed. 1990) (citing 1983 Advisory Committee Notes); *see also Manual for Complex

Litigation* (Fourth) § 13.12 (2004) ("*Manual*") ("settlement should be explored early in the

case.").

The decision to approve a settlement is committed to the sound discretion of the Court.

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004).  Judicial review of a

proposed class action settlement proceeds in two steps.  *Smith v. Prof. Billing and Mgmt. Serv.,*

12

*Inc.*, 2007 U.S. Dist. LEXIS 86189, at *3-4 (D.N.J. Nov. 21, 2007). First, the Court makes a preliminary evaluation of the fairness of the settlement before directing that notice be given to the settlement class. *Id.* at *4, (*citing Jones v. Commerce Bancorp, Inc.*, 2007 U.S. Dist. LEXIS 52144 (D.N.J. July 16, 2007). Second, after notice of the settlement is provided to the class and the Court conducts a fairness hearing, the Court may grant final approval of the settlement. *See Manual*, § 21.632 (2006). *In re NASDAQ Mkt. Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

Preliminary approval "is granted unless a proposed settlement is obviously deficient." *Jones*, 2007 U.S. Dist. LEXIS at *4. There is an initial presumption of fairness when a proposed settlement that has been negotiated at arm's length by experienced counsel is presented to the court for preliminary approval. *In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d 484, 491 (E.D. Pa. 2003); *Newberg* at § 11.41, p. 90.[6]

When deciding preliminary approval, a court does not conduct a "definitive proceeding on the fairness of the proposed settlement, and the judge must be careful to make clear that the determination permitting notice to members of the class is not a finding that the settlement is fair, reasonable and adequate." *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (citing *Manual* § 1.46 (5th ed.) (1982); *see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) (holding that the "preliminary determination establishes an initial presumption of fairness"). Instead, on preliminary approval, courts in this circuit have recognized that:

---

[6]     *See also Petruzzi 's, Inc. v. Darling-Delaware Co., Inc.,* 880 F. Supp. 292, 301 (M.D. Pa. 1995) (finding that "[t]he opinions and recommendation of such experienced counsel are indeed entitled to considerable weight"); *Lake v. First Nationwide Bank,* 156 F.R.D. 615, 628 (E.D. Pa. 1994) (giving "due regard to the recommendations of the experienced counsel in this case, who

> [T]he Court is required to determine only whether the proposed settlement
> discloses grounds to doubt its fairness or other obvious deficiencies such
> as unduly preferential treatment of class representatives or segments of the
> class, or excessive compensation of attorneys, and whether it appears to
> fall within the range of possible approval.

*Mehling v. N.Y. Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007) (internal citations omitted)

(quoting *Thomas v. NCO Fin. Sys.*, 2002 U.S. Dist. LEXIS 14157, at *14 (E.D. Pa. July 31,

2002)). In sum, the final assessment of the fairness, reasonableness, and adequacy of a proposed

settlement is a matter for determination at the final approval hearing, *see In re Linerboard*

*Antitrust Litig.*, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003), whereas the standard for preliminary

approval is simply whether the settlement is free of "obvious defects" and "falls within the range

of possible approval" so as to warrant issuance of notice to the class and the scheduling of a final

approval hearing.

2. **The Proposed Settlement Meets the Standard for Preliminary Approval**

Class actions involving multiple defendants like this one are complex and difficult, and

the results of litigation are uncertain. The Court is not called upon to determine whether the

settlement reached by the parties is ideal and must recognize that settlement is a compromise, a

yielding of the highest hopes in exchange for certainty and resolution." *In re Gen. Motors Corp.*

*Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 806. Courts challenged with evaluating

a proposed class action settlement recognize that the "essence of settlement is compromise" and

will not typically represent a total win for either side. *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir.

1996) (quoting *Armstrong v. Bd. Of Sch. Dirs., Etc.*, 616 F.2d 305, 315 (7th Cir. 1980)).

---

have negotiated this settlement at arms-length and in good faith" in assessing whether a
settlement was fair, adequate, and reasonable).

The settlement will create a cash fund of $24 million – in addition to the over $8 million already paid by Defendants to pet owners who participated in their Historic Payment Programs – from which all Settlement Class Members are *potentially eligible for a 100% recovery of their economic damages*.  This settlement provides Settlement Class Members with substantial relief, particularly in light of the complexity of the claims at issue in this litigation.  In the absence of this settlement, this litigation would continue to involve contentious, vigorously contested, and costly litigation over class certification, liability, causation and damages issues.  The consideration paid by the Defendants, when balanced against the complex questions remaining to be litigated, demonstrates that the settlement falls well within the range of what is fair, reasonable and adequate, and clearly merits preliminary approval.   The parties respectfully submit, as they will demonstrate at final approval, that: (i) the settlement is in all respects fair, reasonable and adequate; (ii) they have investigated the pertinent legal and factual issues; (iii) continued litigation will consume enormous resources of the parties and the Court; and (iv) settlement negotiations have been extraordinarily hard-fought and protracted.

### a.   The Settlement is the Product of Serious, Informed, and Non-Collusive Negotiations

The Settlement Agreement was negotiated over a period of more than 7 months through over 10 formal mediation sessions, under the auspices of an experienced class action mediator.

To prepare for the negotiations, Plaintiffs' Lead Counsel extensively researched the pet food recall, the Defendants, the alleged contaminants, the etiology of pet conditions attributed to the Recalled Pet Food Products, expenses associated with treatment, and expected damages.  As part of their research efforts, Plaintiffs' Lead Counsel consulted with veterinary experts, consultants concerning the financial condition of the Menu Foods defendants, their own clients and numerous other plaintiffs' counsel in the litigation.  They conducted exhaustive legal

research into the viability of all legal claims and the availability of potential damages (with

particular attention to cases of deceased animals and pets) in all jurisdictions.  Plaintiffs' Lead

Counsel became immersed in the nature of the evidence of the case, particularly in the course of

lengthy negotiations over certain of the Defendants' evidence preservation plans, with which this

Court was involved and which required extensive consultation with their retained biostatistician,

Dr. Nicholas Jewell.  In sum, Plaintiffs' Lead Counsel were well-informed as to the facts of the

case and the strength of the claims asserted when the terms of the Settlement Agreement were

negotiated.  *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y 2004)

("Formal discovery is not a prerequisite; the questions is whether the parties had adequate

information about their claims") (citing *In re Corrugated Container Antitrust Litig.*, 643 F.2d

195, 211 (5th Cir. 1981)).

Unquestionably, the settlement process overseen by the mediator was non-collusive.  *See*

*In re Cigna Corp. Sec. Litig*, 2007 U.S. Dist. LEXIS 51089, at *12 (E.D. Pa. July 13, 2007) ("[I]t

is clear that negotiations for the settlement occurred at arm's length, as the parties were assisted

by a retired federal district judge who was privately retained and served as a mediator."); *In re*

*Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (involvement of a

mediator or other third parties in settlement discussions is "further evidence of the arm's length ...

nature" of the settlement); *Rolland v. Cellucci*, 191 F.R.D. 3, 6 (D. Mass. 2000) (approving a

settlement where mediation kept "the parties . . .at significantly greater than arm['s] length").

These negotiations were contentious, and at all times hard-fought.

In light of their prior collective experience in complex consumer class actions, their

knowledge of the strengths and weaknesses of their case, and their assessment of the class's

likely recovery following trial and appeal, Plaintiffs' Lead Counsel have concluded that the

proposed Settlement Agreement is fair, reasonable and adequate, and is in the best interests of the Settlement Class.  There is nothing in the course of the negotiations or the substance of the settlement that "disclose[s] grounds to doubt its fairness." *Manual for Complex Litigation* (Fourth) § 30.41 (2004).  Plaintiffs' decision to submit the proposed settlement for Court approval reflects their consideration of the very real benefits conferred on the Settlement Class by the proposed settlement weighed against the very real risks of continued litigation.

**b.      The Settlement Has No "Obvious Deficiencies" and Falls Within the Range for Approval**

The settlement has no "obvious deficiencies" and is well within the "range of reason." *See Smith v. Prof'l Billing & Mgmt. Servs.*, 2007 U.S. Dist. LEXIS 86189, at *4 (D.N.J. Nov. 21, 2007) (citing *Jones v. Commerce Bancorp., Inc.*, 2007 U.S. Dist. LEXIS 52144, at *2 (D.N.J. July 16, 2007)).  The settlement provides for the potential cash payment of up to 100% of all reasonable, documented economic damages suffered by the Settlement Class as a result of their purchase or their pet's consumption of Recalled Pet Food Products.  Payments may cover all costs associated with screening healthy pets for injury, veterinary treatment of pets, costs associated with deceased pets and other economic damage, so long as such costs are reasonable and documented.  Settlement Agreement, ¶ V.D.  Settlement Class Members are, in addition, eligible for payment up to $900 for economic damages that are not supported by documentation, so long as they are valid and reasonable.  *Id.*, ¶ V.A.3, V.C.8.  The only limitations, as set forth in the Settlement Agreement, are: (i) a $400,000 limitation on aggregate payments for veterinary screening of healthy pets; and (ii) a $250,000 limitation on aggregate payments for the pet food purchase reimbursements.  In addition, there is a pro rata reduction of payments for all other economic damages if the combined amount of all claims to be paid exceeds the total remaining amount of the $24 million Settlement Fund, after deduction for healthy screenings payments, pet

17

food product reimbursements, notice and administration costs, attorneys' fees and expenses. *Id.*, ¶'s V.A.1., V.A.2., V.B. The claim process is straight-forward. There are no coupons or unreasonable barriers to making a claim for payment.

The length and complexity of settlement negotiations are but one barometer of the adversary proceedings in which the parties were engaged. There can be no doubt that continuing this litigation would entail a lengthy and highly expensive legal battle, involving complex legal and factual issues. For instance, the Defendants would oppose certification of a litigation class. Even if a litigation class were certified and such certification withstood appeal, Defendants would present various defenses at the liability and damages phases of the proceedings and would bring motions for summary judgment. If the case were to proceed to trial, a jury trial might well turn on questions of causation, many of which would be the subject of expert testimony, making the outcome of trial uncertain for all parties. Further, even after trial were concluded, there would likely be lengthy appeals. *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 65 (S.D.N.Y. 1993) (noting that "[i]t must also be recognized that victory even at the trial stage is not a guarantee of ultimate success"). Given these many uncertainties, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa 1995).

The non-monetary benefits of the settlement, in the form of Defendants' agreement to continue Quality Assurance Programs that provide for testing for melamine and cyanuric acid in wheat gluten and rice protein concentrate imported from China by those Defendants that

manufacture pet food products,[7] also have meaningful value to the Settlement Class and to consumers at large.

Against this background, an early settlement providing the substantial benefits afforded here represents an excellent result for the Settlement Class. Defendants' $24 million all-cash payment, which is in addition to the over $8 million that various Defendants have previously paid to resolve claims related to the pet food recall, provides for significant compensation to the Settlement Class that will be available earlier – perhaps years earlier – than would be the case if litigation against Defendants continued through class certification, trial and appeal and were ultimately successful.

**c.      The Settlement does not Improperly Grant Preferential Treatment to Class Representatives or Segments of the Class**

The relief provided by the settlement will benefit all Settlement Class Members, based on straight-forward eligibility requirements. No preference is given to any particular segment of the Settlement Class or to any named class representative. Similarly, all non-monetary benefits apply to the Settlement Class on an equal basis.

**B.      The Proposed Notice Plan Should Be Approved**

Rule 23 requires that the best notice practicable under the circumstances be given to class members who would be bound by a proposed settlement prior to final approval. *See* Fed. R. Civ. P. 23. Where, as here, notice of certification of the Settlement Class and notice of a proposed settlement are combined, the more detailed provisions contained in Rule 23(c)(2)(B) apply: "The Court must direct to the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ.

---

[7]      This provision does not apply to Defendants for whom the recalled pet food products are exclusively co-packed or private labeled.

P. 23(c)(2)(B); *see also Carlough v. Amchem Prods., Inc.,* 158 F.R.D. 314, 324-25 (E.D. Pa. 1993) (citing *Newberg* §§ 8.04, 8.21 (3d ed. 1992)); *Manual* § 21.31 (2004) (when a judge simultaneously certifies a class action and preliminarily approves a class-wide settlement, notice is commonly combined).  In particular, notice of a proposed settlement:

> [M]ust concisely and clearly state in plain, easily understood language; the nature of the action, the definition of the class certified, the class claims, issues or defenses, that a class member may enter an appearance through counsel if the member so desires, that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and the binding effect of a class judgment on class members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2).

Notice regarding a proposed settlement is adequate under both Rule 23 and due process standards if it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," as well as if it can "be understood by the average class member."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 114 (2d Cir. 2005), *cert. denied,* 544 U.S. 1044 (2005) (internal quotation marks and citation omitted); *In re WorldCom Inc. Secs. Litig.,* 388 F. Supp. 2d 319, 340 (S.D.N.Y. 2005).

The proposed forms of Notice, attached to the Settlement Agreement as Exhibits 3A (Publication Notice) and 3B (Full Notice), both satisfy the requirements of Rule 23 and due process standards.  The Notices fully apprise the Settlement Class of the essential settlement terms, and clearly and accurately disclose the information material to a Settlement Class Member's decision whether to accept, object to, or opt out of the settlement.  The proposed Notices provide information on the proposed Settlement Class; the terms and provisions of the Settlement Agreement; the relief the settlement will provide; the terms of allocation and payment

of settlement funds; the date, time and place of the final approval hearing; and the procedures and deadlines for opting out of the settlement or submitting comments or objections.  The Notice also contains express reference to the settlement website (www.petfoodsettlement.com) for the download of a claim form or to obtain additional information, along with a toll-free number for contacting the Claims Administrator.

The manner of notice also satisfies due process standards.  The parties, through the assistance of the Claims Administrator, have selected a comprehensive list of publications both with diverse, national readership and with specific interest of pet owners.

As stated above, the Full Notice (Exhibit 3B to the Settlement Agreement) will be available for download from the settlement website and, upon request, to the Claims Administrator.  Direct notice will also be provided by first class mailing of the Full Notice to (1) all persons who were paid as part of a Historic Payment program[8] and (2) all persons who completed and returned a claim form to Crawford & Company and whose names and addresses are in a readily accessible database maintained by Crawford & Company.  Defendants and Crawford & Company shall provide the TPA on a confidential basis the names and address of all such persons. All costs of Class Notice will be paid from the Settlement Fund.

---

[8]    "Historic Payments" means those amounts already paid to some Settlement Class Members by certain of the Defendants, Released Entities and/or their insurers in settlement or reimbursement of certain injury, death or screening expenses associated with a pet's consumption of Recalled Pet Food Products, which Defendants represent to equal at least $8,000,000.  Settlement Agreement, ¶ II.Z.

**C.      The Proposed Settlement Class Should Be Preliminarily Certified Pursuant to Rule 23**

In connection with preliminary approval, the Parties[9] request that the Court certify the following settlement class pursuant to Rule 23(a) and Rule 23(b)(3).

> [A]ll persons and entities who purchased, used or obtained, or whose pets used or consumed Recalled Pet Foods Product(s), and excluding Released Entities and the Lum Class.

*See* Settlement Agreement, at ¶ I.VV.

A class may be "conditionally certified even for the purpose of settlement only if it conforms to the requirements of Rule 23." *See Hall v. Midland Group*, 1999 U.S.Dist. LEXIS 17832, at *2 (E.D. Pa. Nov. 22, 1999). A court deciding whether to certify a class for settlement purposes only must engage in a two-step analysis to determine whether the class (1) meets the requirements of Rule 23(a) and (2) one of the sub-sections of Rule 23(b). *See In re Ins. Brokerage Antitrust Litig.*, 2007 U.S. Dist. LEXIS 65037, at *59 (D.N.J. Sept. 4, 2007); *see also In re Remeron End-Payor Antitrust Litig.*, 2005 U.S. Dist. LEXIS 27011, at *20 (D.N.J. Sept. 13, 2005). Though both of these requirements must be met, "the fact of the settlement is relevant to a determination of whether the proposed class meets the requirements imposed by the Rule." *Hall*, 1999 U.S. Dist. LEXIS 17832 at *2 (citation omitted). Further, in certifying a class for settlement purposes only, the Court need not determine "whether the case, if tried, would present

---

[9]      It is the position of the Defendants that there remain substantial obstacles to certification of a litigation class under Federal Rule of Civil Procedure Rule 23 (*see, e.g.*, *In re Paine Webber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997) (uncertainty that class certification will survive is consideration in settlement approval), *aff'd* 117 F.3d 721 (2d Cir. 1997)), and that any certification of a preliminary or final Settlement Class is for settlement purposes only and shall not constitute, nor be construed as, an admission on the part of any Defendant that this action, or any other proposed or certified class action, is appropriate for any other purpose, including, without limitation, for trial class treatment.  Settlement Agreement, §II.D.2.

intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial." *In re Remeron End-Payor Antitrust Litig.*, 2005 U.S. Dist. LEXIS 27011, at *21.

> **1.    Fed. R. Civ. P. 23(a)(1):  The Class is So Numerous That Joinder of All Members Is Impracticable**

The numerosity requirement is satisfied where the traditional joinder of parties would be "impracticable."  No magic number exits for satisfying the numerosity requirement, nor must the plaintiff allege the exact number or identity of class members. *See, e.g.*, *Gross v. Wash. Mut. Bank, F.A.*, 2006 U.S. Dist. LEXIS 16975, at *5  (E.D.N.Y. Feb. 9, 2006).  Courts generally consider the estimated number of parties in the proposed class, the expediency of joinder, and similar considerations when determining whether the numerosity requirement is met.  *See, e.g.*, *Mehling v. New York Life Ins. Co.,*, 246 F.R.D. 467, 474 (E.D. Pa. 2007).

Here, the proposed Settlement Class consists of persons and entities geographically dispersed throughout the United States who purchased, used or obtained, or whose pets consumed, the Recalled Pet Food Products.  There is no doubt that the Settlement Class consists of sufficient numbers for certification.  Plaintiffs named in the filed cases alone number more than 200.  Joinder of these parties is not just impracticable, it is virtually impossible. Accordingly, the numerosity requirement is satisfied.

> **2.    Fed. R. Civ. P. 23(a)(2):  There are Questions of Law and Fact Common to Members of the Class**

Rule 23(a)(2) requires the existence of "questions of law or fact common to the members of the class."  In the Third Circuit, "[c]ommonality does not require an identity of require an identity of claims or facts among class members." *In re Ins. Brokerage Antitrust Litig.*, 2007 U.S. Dist. Lexis 65037, at *61 (citation and internal punctuation omitted).  Moreover, "[b]ecause

the [commonality] requirement may be satisfied by a single common issue, it is easily met."

*Mehling*, 246 F.R.D. at 474.

Here, Plaintiffs assert that there are certain common issues of both fact and law

concerning the recalled pet food. *See, e.g., Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 112

(E.D. Pa. 2005) (holding the commonality requirement satisfied where the defendant allegedly

"treated the class members in a standardized fashion"). For purposes of the proposed settlement

class, Rule 23(a)(2) is satisfied under the circumstances presented here.

### 3.    Fed. R. Civ. P. 23(a)(3): Plaintiffs' Claims are Typical of the Claims of the Members of the Class

Rule 23(a)(3) requires that "the claims . . . of the representative parties are typical of the

claims . . . of the class." The typicality factor examines "whether the named plaintiffs' claims

are typical, in common-sense terms, of the class, thus suggesting that the incentive of the

plaintiffs are aligned with those of the class." *Smith v. Prof'l Billing & Mgmt. Servs.*, 2007 U.S.

Dist. Lexis 86189, at *11 (D.N.J. Nov. 21, 2007). The typicality requirement is satisfied where,

as here, the Plaintiffs' "legal claims, defenses or circumstances are not markedly different from

the claims of other class members." *Id.* (citation and internal quotation marks omitted). Indeed,

when the same alleged conduct affected both the named plaintiff and the class sought to be

represented, "the typicality requirement is usually met irrespective of minor variations in the fact

patterns underlying individual claims.'" *In re Global Crossing*, 225 F.R.D. at 452.

Where the claims of Settlement Class Members generally arise from the same alleged

conduct and core facts surrounding the recall of contaminated pet food, the interests of all

Settlement Class Members are aligned. Thus, for purposes of this proposed settlement class, the

requirement of Rule 23(b)(3) is satisfied as well.

### 4. Fed. R. Civ. P. 23(a)(4): Class Counsel and Representative Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a) requires that the representative parties fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a)(4). The Third Circuit has held that adequacy of representation is measured by two standards. First, class counsel must be "'qualified, experienced and generally able to conduct the proposed litigation [and second] the plaintiff must not have interests antagonistic to those of the class.'" *Smith*, 2007 U.S. Dist. Lexis 86189, at *12.

Both requirements are satisfied here. Class Counsel is qualified, experienced and thoroughly familiar with complex class action litigation. They have successfully litigated many significant consumer class actions and have prosecuted and will continue to vigorously prosecute this lawsuit.[10] Moreover, in reaching this Settlement Agreement, the interests of the Class Members were adequately protected and were not in conflict. All Class Members share an overriding interest in obtaining substantial monetary and other relief. *See Global Crossing*, 225 F.R.D. at 453 (certifying settlement class and finding that "[t]here is no conflict between the class representatives and the other class members. All share the common goal of maximizing recovery."); *Ahearn v. Fibreboard Corp.*, 1995 U.S. Dist. LEXIS 11523, at *16 (E.D. Tex. July 27, 1995) (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes") (citation and internal quotation marks omitted). No conflict of interest exists among Plaintiffs and the Settlement Class, let alone a conflict that presents an obstacle to certification of the proposed class for settlement purposes. *See, e.g., In re Ins. Brokerage Antitrust Litig.*, 2007 U.S. Dist. Lexis 65037, at *66

---

[10]      The firm resumes of the firms appointed by this Court as Plaintiffs' interim Co-Lead Counsel are attached hereto as Exhibits 5-10.

(conflict precludes certification only if "apparent, imminent, and on an issue at the very heart of the suit") (citation omitted).

### 5.   The Requirements of Rule 23(b)(3) Are Satisfied

Once the four prerequisites of Rule 23(a) are met, as in this case, Plaintiffs must also show that the proposed settlement class satisfies the requirements of either Rule 23(b)(2) or Rule 23(b)(3). *See, e.g., id.* at *67. For certification of a settlement class under Rule 23(b)(3), Plaintiffs must first demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members . . . ." Fed. R. Civ. P. 23(b)(3). Second, Plaintiffs must show that a "class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.*

### a.   Common Issues Predominate

"Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *In re Global Crossing*, 225 F.R.D. at 454. Thus, that common issues must be shown to "predominate" does not mean that individual issues do not exist. *See, e.g., Ins. Brokerage Antitrust Litig.*, 2007 U.S. Dist. Lexis 65037, at *67 (holding that the mere "presence of individual questions . . . does not mean that the common questions of law and fact do not predominate"). Under the circumstances presented here with respect to the proposed settlement class, and while individualized issues exist, the predominance requirements of Rule 23 are satisfied. .

26

### b.    A Class Action is the Superior Method to Adjudicate These Claims

The Court must "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *See, e.g., Hall*, 1999 U.S. Dist. Lexis 17832, at *5 (citation and internal quotation marks omitted); *see also* Fed. R. Civ. P. 23(b)(3) (listing four considerations relevant to this determination). Rule 23(b)(3) requires that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy," and sets forth the following factors to be considered in that context: "the interest of members of the class individually controlling the prosecution . . . of separate actions; the extent and nature of any litigation concerning the controversy already commenced by . . . members of the class; the desirability . . . of concentrating the litigation of the claims in the particular forum; and the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3).

Here, the interests of Settlement Class Members in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism. It is estimated that thousands of persons and entities purchased recalled pet food during the class period; settling these claims in the context of a class action would conserve both judicial and private resources and would hasten Settlement Class Members' recovery. *See See In re Ins. Brokerage Antitrust Litig.*, 2007 U.S. Dist. Lexis 65037, at *70 ("In a case with many thousands . . . of class members . . . the balance may weigh heavily in favor of the class action") (citation and internal quotation marks omitted); *In re Remeron End-Payor Antitrust Litig.*, 2005 U.S. Dist. Lexis 27011, at *34-*35 (certifying settlement class and noting that "[t]he class action mechanism offers substantial economies of time, effort and expense for the litigants as well as the Court") (citation and internal quotation marks omitted). Moreover, as previously discussed,

the mechanism of a settlement class represents the best, most viable means for consumers to participate in an efficient settlement process for compensation that fully and best protects their rights.

## IV.    **CONCLUSION**

For the foregoing reasons, the proposed settlement has no obvious deficiencies and falls within the range of possible approval. Accordingly, the parties jointly submit that the Court should grant preliminary approval of the proposed settlement and enter an order substantially in the form of the accompanying Proposed Order Granting Preliminary Approval of Proposed Settlement, Provisionally Certifying the Class, And Directing Dissemination of Notice to the Class.

DATED:  May 22, 2008          Respectfully submitted,

**TRUJILLO RODRIGUEZ & RICHARDS, LLC**


By____/s Lisa J. Rodriguez_____
          Lisa J. Rodriguez
          8 Kings Highway West
          Haddonfield, New Jersey  08033
          Telephone: (856) 795-9002
          Facsimile: (856) 795-9887

          *Liaison Counsel for Plaintiffs*

          Kenneth A. Wexler
          Mark J. Tamblyn
          **WEXLER TORISEVA WALLACE LLP**
          55 West Monroe Street, Suite 3300
          Chicago, Illinois  60603
          Telephone: (312) 346-2222
          Facsimile:  (312) 346-0022

Sherrie R. Savett
Russell D. Paul
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, Pennsylvania  19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4636

William M. Audet
**AUDET & PARTNERS LLP**
221 Main Street, Suite 1460
San Francisco, California
Telephone: (415) 568-2555
Facsimile: (415) 568-2556

Scott A. Kamber
Jay Edelson
**KAMBEREDELSON, LLC**
11 Broadway, 22nd Floor
New York, New York 10004
Telephone: (212) 920-3072
Facsimile: (212) 202-6364

Stuart A. Davidson
**COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP**
120 E. Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
Telephone: (561) 750-3000
Facsimile: (561) 750-3364

Steve W. Berman
Jeniphr Breckenridge
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Fifth Avenue, Suite 2900
Seattle, Washington  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

***Co-Lead Counsel for Plaintiffs***

Amy W. Schulman, Esq.
**DLA Piper US LLP**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile:  (212) 335-4501

*Counsel for the Menu Foods Defendants and Liaison*
*Counsel for Defendants*


Craig A. Hoover, Esq.
**HOGAN & HARTSON LLP**
Columbia Square
555 Thirteenth Street, NW
Washington, D.C. 20004-1109
Telephone: (202) 637-5600
Facsimile:  (202) 637-5910

*Counsel for Nestle Purina PetCare Company and Liaison*
*Counsel for Defendants*


D. Jeffrey Ireland, Esq.
**FARUKI, IRELAND & COX, P.L.L.**
500 Courthouse Plaza, S.W.
10 North Ludlow Street
Dayton, OH  45402
Telephone: (937) 227-3710
Facsimile:  (937) 227-3749

*Counsel for The Iams Company and Liaison Counsel for*
*Defendants*


Mark C. Goodman, Esq.
**Squire, Sanders & Dempsey L.L.P.**
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492
Telephone: (415) 954-0289
Facsimile:  (415) 393-9887

*Counsel for PETCO Animal Supplies, Inc.; PETCO*
*Southwest, Inc.; PETCO Animal Supplies Stores, Inc.;*
*PetSmart, Inc.; Target Corp.; Wal-Mart Stores, Inc. and*
*WalMart, Inc., and Liaison Counsel for Defendants*

30