**LAW OFFICES OF DANIEL I. WARD**
Daniel I. Ward, Esq. (NJ Bar No. 033581986)
118 White Horse Road W.
Voorhees, NJ 08043
Tel: (856) 566-6614
Fax: (856) 566-7373

**BLUMENTHAL & NORDREHAUG**
Kyle R. Nordrehaug (Cal. State Bar #205975)
2255 Calle Clara
La Jolla, California 92037
Tel: (858)551-1223
Fax: (858) 551-1232

Attorneys for Settlement Class Member
DANIEL KAFFER

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: PET FOOD PRODUCTS LITIGATION | CIVIL ACTION No. 07-2867<br>CASE No. **MDL No. 1850**<br><br>SETTLEMENT CLASS MEMBER DANIEL KAFFER'S OBJECTION TO CLASS SETTLEMENT AND OPPOSITION TO MOTION FOR FINAL APPROVAL<br><br>Hearing Date:    October 14, 2008<br>Hearing Time:    9:30 a.m.<br><br>Dist. Judge:   Hon. Noel L. Hillman |

1

OBJECTION TO THE CLASS SETTLEMENT AND OPPOSITION TO MOTION FOR APPROVAL
Civil Action No. 07-2867 (NLH) (All Cases) / MDL Docket No. 1850

Dockets.Justia.com

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL AND PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

OBJECTION AND OPPOSITION TO SETTLEMENT APPROVAL . . . . . . . . . . . . . . . . 6

I.    The Settlement Improperly Releases "Made in the USA" Claims Which
      Were Expressly Excluded from This MDL Proceeding and Do Not Arise From
      the Same Core Operative Facts Liability for Certain Claims without Providing
      any Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II.   There Is a Conflict of Interest Between the MDL Plaintiffs, on the One Hand,
      and Daniel Kaffer and Similarly Situated Class Members With Mislabeling Claims,
      on the Other Hand . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

III.  The Class Representatives and Class Counsel Do Not and Cannot Adequately
      Represent Class Members with Mislabeling Claims . . . . . . . . . . . . . . . . . . . . . . . 11

IV.   The Proponents of the Settlement Have Failed to Show that the Total Settlement
      Amount  or the $ 250,000 Allocated to Product Purchase Claims Are Reasonable
      When Compared to the Maximum Potential Recovery . . . . . . . . . . . . . . . . . . . . . . 14

V.    The Investigation and Discovery Performed Was Inadequate to Permit the
      Parties to Intelligently Settle the"Made in the USA" Claims . . . . . . . . . . . . . . . . . 16

VI.   The Settlement Notice Fails to Warn Class Members that By Participating in the
      Settlement They Will Release All Claims Based on Purchases Prior to the Recall
      Period Without Any Additional Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

i

OBJECTION TO THE CLASS SETTLEMENT AND OPPOSITION TO MOTION FOR APPROVAL
Civil Action No.  07-2867 (NLH) (All Cases) / MDL Docket No. 1850

# TABLE OF AUTHORITIES

**Cases:**

*Alloway v. Gen. Marine Indus.,*
    149 N.J. 620, 695 A.2d 264 (N.J. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

*Grimes v. Vitalink Communications Corp.,*
    17 F.3d 1553 (3rd Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*HDM Flugservice GmbH v. Parker Hannifin Corp.,*
    332 F.3d 1025 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Auction Houses Antitrust Litig.,*
    2001 WL 170792 S.D.N.Y. (Feb. 22, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Community Bank of N. Va.,*
    418 F.3d 277 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
    55 F.3d 768 (3d Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re K-Dur Antitrust Litig.,*
    2007 WL 5297757 (D.N.J. Oct 10, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Karvaly v. eBay, Inc.,*
    245 F.R.D. 71 (E.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*KB Home v. Super. Ct.,*
    112 Cal. App. 4th 1076, 5 Cal. Rptr. 3d 587 (Ct. App. 2003) . . . . . . . . . . . . . . . 5

*Mandujano v. Basic Vegetable Products, Inc.,*
    541 F.2d 832 (9th Cir.1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*National Super Spuds, Inc. v. New York Mercantile Exchange,*
    660 F.2d 9 (2d Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 10, 17

*Ortiz v. Fibreboard Corp.,*
    527 U.S. 815 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

*Piambino v. Bailey,*
    757 F.2d 1112 (11th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Reynolds v. Beneficial National Bank,*
    288 F.3d 277 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Schwartz v. Dallas Cowboys Football Club,*
    Ltd., 157 F.Supp.2d 561 (E.D.Pa. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*UniSuper Ltd. v. News Corp.,*
    898 A.2d 344 (Del.Ch. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

# INTRODUCTION

Daniel Kaffer, as a member of the proposed settlement class, hereby respectfully objects to the proposed class settlement and opposes the motion for final approval of the class settlement. Daniel Kaffer objects and intends to appear at the final approval hearing through counsel and assert her objections. In addition, Daniel Kaffer has separately moved herewith to formally intervene and for leave to obtain limited discovery relevant to the objections asserted herein and the Defendants responses thereto.

The objection of Daniel Kaffer is based upon the fact that the release in the Settlement Agreement purports to release, without any compensation, certain claims which are unrelated to the pet food recall and are outside the scope of the MDL as expressly determined by the MDL Panel Order dated October 7, 2007. A true and correct copy of this MDL order is attached hereto as Exhibit #1. Further, Daniel Kaffer objects because there is no adequate representation of the members of the class who assert only product purchase claims. Daniel Kaffer also objects because, as a result of this lack of adequate representation, only $250,000 of the $24 million settlement has been allocated to the product purchase claims.

Since April 2007, Natural Balance has been litigating claims relating to the "Made in the USA" designation on certain Natural balance pet food products which is alleged to be improper and in violation of state and federal law in the *Kennedy v. Natural Balance* action. The MDL Settlement, in resolving the claims relating to recalled pet food, improperly attempts to release the "Made in the USA" claims brought in the *Kennedy* on behalf of a class of similarly situated consumers, including Daniel Kaffer, even though these claims were expressly excluded from the scope of the MDL by the Panel's Order. (Exhibit #1).

The specific grounds for the objection and opposition are as follows: (i) the release is overly broad in that the settlement provides for a release of liability for certain claims without providing any consideration ; (ii) the settlement purports to release "Made in the USA" claims which are outside the scope of the MDL; (iii) there is a conflict of interest between those members of the class with Injury Claims and those consumers with product

1

purchase claims only; (iv) the class representatives do not adequately represent those members of the class with product purchase claims only; (v) the counsel for the settlement class failed to perform adequate investigation and discovery with respect to the mislabeling claims being released by the proposed settlement; (vi) the settlement is unfair, unreasonable and inadequate with respect to those members of the settlement class who have mislabeling claims for products that were not recalled in addition to the claims relating to recalled purchases; (vii) the settlement amount of $250,000 for payment of the claims of purchasers of recalled pet food is grossly inadequate when considering that the release applies to all product sales which exceed $20 million for Ol' Roy and Natural Balance pet food products alone; (viii) the Settlement Notice fails to clearly warn class members that if they participate in the Settlement they will release all claims based on purchases outside of the recall period without receiving any compensation for such claims.

For all these reasons discussed herein, Daniel Kaffer respectfully submits that final approval of the Settlement and certification of the Settlement Class should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

The instant MDL litigation involves product liability actions brought against North American pet food retailers and manufacturers from "one of the most massive tainted food recalls ever seen." (Lead Counsel Memorandum at p.1 [Doc. No. 32].) "Consumers across the country, and in Canada, filed over 100 lawsuits arising out of the 2007 recall of contaminated pet food." (Preliminary Approval Memorandum at p. 3 [Doc. No. 151-1].) "In March 2007, Menu Foods recalled more than 50 bands of dog food and more than 40 brands of cat food that had sickened and/or killed dogs and cats." (Lead Counsel Memorandum at p.2 [Doc. No. 32].) "Menu Foods' recall covered pet food it produced between November 8, 2006 and March 6, 2007." (Preliminary Approval Memorandum at p. 3 [Doc. No. 151-1].) The recall ultimately expanded to "cover approximately 180 brands of pet food and pet treats produced by twelve different manufacturers and distributed, marketed and sold by dozens

of retailers." (Preliminary Approval Memorandum at p. 3 [Doc. No. 151-1].)

The MDL lawsuits alleged "that wheat gluten and rice protein concentrate supplied to multiple pet food manufacturers by Chem Nutra, Inc. and Wilbur Ellis may have been contaminated." (Preliminary Approval Memorandum at p. 3 [Doc. No. 151-1].) "Plaintiffs brought claims on behalf of all persons who purchased any cat or dog food that was produced by Menu Foods (or produced and/or sold by any entity using melamine-contaminated wheat gluten or rice protein), **and** whose cat or dog became ill or died or sought veterinary treatment as a result of eating these products." (Lead Counsel Memorandum at pp. 2-3 [Doc. No. 32].)

Daniel Kaffer is a member of the Settlement Class and is a member of the putative class alleged in a second action entitled *Kennedy v. Natural Balance*, Case No. 07cv1082, filed in the United States District Court for the Southern District of California. (See Declaration of Daniel Kaffer at ¶1, submitted herewith). Daniel Kaffer purchased Natural Balance pet food products both before and after the contamination class period. (See Declaration of Daniel Kaffer at ¶4). Natural Balance is a Defendant in this MDL litigation.

The *Kennedy* action alleged claims similar to the case entitled *Picus v. Wal-Mart Stores, et al.*, Case No. 2:07-CV-00682- PMP-LRL ("*Picus*"), currently pending in the United States District Court for the District of Nevada, that predicated solely on the mislabeling of certain pet food products as "Made in the USA." The *Kennedy* action, as in *Picus*, alleges that Natural Balance mislabeled their pet food products during the 2005 through 2007 time period. (See *Kennedy* Complaint at ¶¶ 1-10, a true and correct copy of which is attached as Exhibit #4 to the Declaration of Kyle Nordrehaug, submitted herewith). The Court in *Kennedy* denied the Defendant's motion to dismiss ruling that the claims were sufficiently pled. (A true and correct copy of the District Court Order is attached to as Exhibit #5 to the Declaration of Kyle Nordrehaug.)

In the *Kennedy* action, the Plaintiff moved for class certification on behalf of the class of Natural Balance purchasers during the period May 3, 2003 to May 14, 2008, which

included Daniel Kaffer. In opposing class certification, Defendant Natural Balance took the position that the class could not be certified because of the settlement in this MDL litigation. Natural Balance argued that "the four products at issue in this case are among those defined as "Recalled Pet Food Products" and therefore "each and every person who purchased one of the four (4) identified products (including Mr. Kennedy) is a member of the Settlement Class." (Natural Balance's Opposition at p.5, a true and correct copy of which is attached as Exhibit #6 to the Declaration of Kyle Nordrehaug). As a result, Natural Balance argued that irrespective of contamination or time, "there is no question that the claims asserted here are included in the Released Claims in the MDL Settlement." (Natural Balance's Opposition at p.5, Exhibit #6).

**Faced with a broad release, the District Court ruled that the class could not be certified because the "Made in the USA" claims were released by the MDL settlement, irrespective of contamination or time.** The District Court dismissed the *Kennedy* action, and Plaintiff Kennedy appealed. Therefore, as a direct result of this MDL settlement, Daniel Kaffer is receiving nothing for his mislabeling claims. Because the District Court accepted this reading of the release, these Settlement Class members have no other option but to appear in this Court and challenge the scope of the release and the MDL settlement.

Importantly, on June 28, 2007, the Judicial Panel on Multidistrict Litigation ("JPML") conditionally transferred the *Picus* case to this District Court for consolidated pretrial proceedings in the In Re Pet Food Products Liability Litigation, MDL No. 1850. Margaret Picus opposed the conditional transfer before the JPML. The JPML agreed with Margaret Picus, vacated the transfer and ruled as follows:

> After considering all argument of counsel, we find that transfer of this action to the District of New Jersey would not necessarily serve the convenience of the parties and witnesses or furter the just and efficient conduct of this litigation. The actions pending in MDL No. 1850 relate to a number of brands of allegedly contaminated pet food products, and the voluntary recalls of those products. **The complaint in the action before us alleges that defendants intentionally mislabeled one particular brand of pet food products as "MADE IN USA" when, in fact, a major component of the pet food was manufactured in China.** These allegations will likely require unique

discovery and other pretrial proceedings.  Accordingly, we are persuaded that inclusion of this action in MDL No. 1850 is not presently warranted.

(Order Vacating Conditional Transfer Order, dated October 9, 2007, attached as <u>Exhibit #1</u> to the Declaration of Kyle Nordrehaug.)[1]

Notably, this tension between the "Made in the USA" mislabeling cases which the JPML ordered excluded from the MDL and the MDL litigation did not always exist.  When this MDL litigation was initiated, the MDL litigation asserted pursuant to the Economic Loss Rule "claims on behalf of all persons who purchased any cat or dog food that was produced by Menu Foods (or produced and/or sold by any entity using melamine-contaminated wheat gluten or rice protein), **and** whose cat or dog became ill or died or sought veterinary treatment as a result of eating these products."  (Lead Counsel Memorandum at pp. 2-3 [Doc. No. 32].)  Clearly, the injury to the pet was required because such injury is a required element for tort recovery and product liability claims.[2]  Thus, the members of this class only included the thousands of pet owners with injured pets or other damages.

However, when a settlement was reached, the scope of the claims was expanded dramatically.  The "and" was switched to an "or."  The MDL class definition was changed to all persons who purchased recalled pet food <u>or</u>  whose pet was injured thereby. (Settlement Agreement at p.16).  This switch in language expanded the Settlement Class to include millions of consumers who purchased Defendants' products, irrespective of pet injury.  The effect of this change from **"and"** to **"or"** now includes pet food product purchasers without an injured pet claim and then releases all claims of such purchasers.

---

[1]  Unless otherwise indicated, all emphasis added and internal citations omitted.

[2] The "Economic Loss Rule" bars tort recovery for economic damages caused by a defective product unless those losses are accompanied by personal injury or damage to property other than the defective product itself.  *See e.g. KB Home v. Super. Ct.*, 112 Cal. App. 4th 1076, 5 Cal. Rptr. 3d 587, 590 (Ct. App. 2003); *Alloway v. Gen. Marine Indus.,* 149 N.J. 620, 695 A.2d 264, 267-68 (N.J. 1997); *HDM Flugservice GmbH v. Parker Hannifin Corp.*, 332 F.3d 1025, 1028-30 (6th Cir. 2003).

There is, however, no class representation of those purchasers without injured pet claims who cannot recover under a tort or product liability theory because of the Economic Loss Rule.

While the MDL Settlement purports to provide monetary recovery for contaminated pet food purchases and damages resulting from pet consumption, the release in the MDL settlement applies to all claims, even those sales as in *Picus* and *Kennedy* which occurred years before the contamination. Further, while the MDL Settlement is represented by plaintiffs claiming damages resulting from contaminated pet food consumption, there is no representation of consumers, like Margaret Picus and Daniel Kaffer, who assert no claim for resulting damages. The result of this switch to an "or" and the lack of representation is notable because of the $24 million settlement, only $250,000 is allocated to the purchase claims, even though purchasers without an injured pet claim are the vast majority of the Settlement Class and number in the millions of individuals. Although the contamination and recall of the Settling Defendants' pet food covers only a four month period, the overbroad release would require certain class members to sacrifice their claims based on the mislabeling of pet food by certain Settling Defendants over a period of at least four years without receiving any compensation for such claims.

Accordingly the Settlement should not be approved, unless and until the Settlement Terms are modified to either narrow the scope of the release to the claims for which adequate compensation is being provided or to provide compensation for all the claims included in the release once these claimants are adequately represented.


## OBJECTION AND OPPOSITION TO SETTLEMENT APPROVAL

**I.      The Settlement Improperly Releases "Made in the USA" Claims Which Were Expressly Excluded from This MDL Proceeding and Do Not Arise From the Same Core Operative Facts Liability for Certain Claims without Providing any Compensation**

The proposed MDL Settlement provides for a monetary recovery with respect to "Consumer Food Purchase Claims" but is limited to reimbursement of the costs a Recalled

Pet Food Product in the aggregate amount of $250,000 for the entire class. (Settlement Agreement at pp. 8 and 39). The release, however, is not limited to claims for these purchases Recalled Pet Food Product, but instead applies to "all claims, demands, actions, suits and/or causes of action that have been brought or could have been brought" ...by any Settlement Class Member, "whether known or unknown, asserted or unasserted, under or pursuant to any statute, regulation..."

This release purports to include the "Made in the USA" mislabeling claim asserted in *Kennedy*, even with respect to non-recalled product purchases, and yet, no consideration is being provided for the release of these claims. This release violates the fundamental rule that a class settlement should not provide for a release of liability without consideration. See *Reynolds v. Beneficial National Bank*, 288 F.3d 277, 284 (7th Cir. 2002). Indeed, in *Managing Class Action Litigation: A Pocket Guide for Judges*, published by the Federal Judicial Center in 2005 at p. 15, provides that the release of liability without providing a remedy is a "hot button indicator" establishing unfairness of a class settlement. (A true and correct copy of this publication is attached to the Declaration of Nordrehaug as Exhibit #7).

Thus, either the release must be limited to claims for purchases of Recalled Pet Food Product, or a remedy must be provided for those purchases of non-recalled purchases for which there is a "Made in the USA" claim asserted, as is alleged in the *Kennedy* action.

The overly broad release purports to release "Made in the USA" claims which were alleged in *Kennedy*. The MDL Panel, however, expressly excluded these claims from the scope of MDL No. 1850. A conditional order of transfer was initially issued in the *Picus* action, however, the order was vacated based upon the opposition of both Plaintiff Picus and the defendants. As a result, the MDL Panel expressly held:

> The complaint in the action before us alleges that defendants intentionally mislabeled one particular brand of pet food products as "MADE IN USA" when, in fact, a major component of the pet food was manufactured in China. **These allegations will likely require unique discovery and other pretrial proceedings. Accordingly, we are persuaded that inclusion of this action in MDL No. 1850 is not presently warranted.**

7

(*See* Order Vacating Conditional Transfer Order, dated October 9, 2007, attached as <u>Exhibit #1</u>.)

The release is fatally overbroad because it extends to the "Made in the U.S.A" mislabeling claims which have an entirely different factual predicate than the contaminated pet food tort claims. *National Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9, 19 (2d Cir. 1981); *Grimes v. Vitalink Communications Corp*., 17 F.3d 1553, (3rd Cir. 1994) (recognizing that under *National Super Spuds* a release cannot extend to unpleaded claims that do not arise from the "same nucleus of operative fact [as the pleaded claims]."); See also *Karvaly v. eBay, Inc*., 245 F.R.D. 71, 82-83 (E.D.N.Y. 2007) (denying certification of settlement class denied where "the primary effect of certifying the broadly-defined class that the parties propose would be to facilitate the execution of an expansive general release that would potentially extinguish many claims unrelated to the claims alleged in the Second Amended Complaint....") *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F.Supp.2d 561, 577-78 (E.D.Pa. 2001) ("Because the court concludes that bundling practices regarding cable television and the Internet were not at the core of this class action, the court finds the release provided by the Settlement Agreement is too broad."); *UniSuper Ltd. v. News Corp*., 898 A.2d 344, f.n. 8 (Del.Ch. 2006) ( "a release is overly broad if it releases claims based on a common set of tangential facts, as opposed to operative or core facts.").

In *National Super Spuds* the court held that the release was overbroad and the settlement unfair because the release extended to claims on unliquidated contracts for which no compensation was provided in the settlement:

> It thus appears that the judge's third reason for approving the settlement, namely, that it is fair and reasonable to the class as a whole, will not pass muster. **An advantage to the class, no matter how great, simply cannot be bought by the uncompensated sacrifice of claims of members, whether few or many, which were not within the description of claims assertable by the class**. Under the settlement a class member holding one liquidated and one unliquidated contract receives no more than another class member holding only one liquidated contract. Mere statement suffices to show how far this departs from principles of equity.

660 F.2d 9, 19.

The situation is the same here, the settlement would require the uncompensated sacrifice of claims by Daniel Kaffer and other purchasers of mislabeled pet food prior to the recall period. Indeed, individuals who purchased mislabeled pet food both prior to and during the recall period will receive no more than individuals who purchased pet food only during the class period.

The *National Super Spuds* holding that a release cannot extend to claims for which no compensation is provided was *In re Auction Houses Antitrust Litig.*, 2001 WL 170792 S.D.N.Y. (Feb. 22, 2001) where the court denied approval of a settlement that would have released claims based on price fixing at foreign auctions although the settlement provided no compensation for such claims. As Judge Kaplan concluded:

> "[T]here is no reason why some class members should be forced to give up something of value to enable other class members to benefit from a settlement made richer at their expense....**Thus, the key point is that an expanded release requires the allocation of at least some of the settlement consideration to the holders of the claims prejudiced by the expansion unless the class action judgment would bar the released claims by application of principles of former adjudication**.

2001 WL 170792 at *12 -*13.

This case is also like *Reynolds v. Beneficial National Bank*, *supra*, 288 F.3d 277, 284 (7th Cir. 2002) where the Seventh Circuit reversed approval of a class settlement because the release extended to claims for which no compensation was provided.

Here, the nucleus of operative facts on which the MDL claims are based is the contamination of the pet food and the resulting injury to the Class Members' pets under the Economic Loss Rule. Daniel Kaffer's claim is based on the mislabeling of pet food by certain Settling Defendants as "Made in the USA" and her claim is not based on either contamination or injury to pets, which are the factual predicates for the MDL actions under the Economic Loss Rule.

Accordingly the release included in the settlement cannot extend to "Made in the USA" claims which are expressly excluded from the MDL and do not arise from the same operative facts as the MDL.

## II. There Is a Conflict of Interest Between the MDL Plaintiffs, on the One Hand, and Daniel Kaffer and Similarly Situated Class Members With Mislabeling Claims, on the Other Hand

There is an irreconcilable conflict of interest between the MDL Class Representatives, whose claims involve injured and/or deceased pets resulting from the consumption of the recalled pet food along with their counsel, and the class members who have only refund claims with respect to their purchase of Defendants' pet food products without any pet injury. Every step taken to advance the interests and obtain benefits for the injured pet subclass has the potential to deplete the benefits available for class members with only purchase claims. Thus, the attorneys would violate the duty of undivided loyalty by acting against the interests of the purchase only class members seeking to maximize the recovery of the injured pet class members, and thereby diluting the recovery of the purchase only class members. See e.g. *Piambino v. Bailey*, 757 F.2d 1112, 1143-45 (11th Cir. 1985); *Mandujano v. Basic Vegetable Products, Inc*., 541 F.2d 832, 835 (9th Cir.1976) ("The class attorney continues to have responsibilities to each individual member of the class even when negotiating a settlement.")

Here, the settlement agreement illustrates the irreconcilable conflict and the dilution of the recovery for the purchase-only class members. Out of the $24 million dollar settlement, only $250,000 is allocated for reimbursement of product purchases, and then, that amount is to be divided *pro rata* among the millions of purchasers. In contrast, the remaining $23,750,000 of the settlement is allocated to pay for veterinary costs, deceased animal claims and attorneys' fees. The irreconcilable conflict of interest caused the interests of the purchase only class members to be diluted and compromised to advance the recovery to the class members with injured or deceased pets and their attorneys, who filed and prosecuted the action. See *National Super Spuds, Inc. v. New York Mercantile Exchange*, *supra*, 660 F.2d 9, 18 (2d Cir. 1981) ("The inadequacy of the representation provided by the named plaintiffs is apparent from examination of the settlement itself.")

As a result there is a manifest conflict of interest which requires rejection of the

Settlement as presently crafted and independent representation for Daniel Kaffer and similarly situated class members.

### III. The Class Representatives and Class Counsel Do Not and Cannot Adequately Represent Class Members with Mislabeling Claims

The United States Class Representatives, Mark Cohen, Shirley Sexton, Steve Freeman, Christina Troiano, Michelle Suggett, Don James, Nancy Ghuthrie, Michelle Adams, Dawn Majerczyk and Janice Bonier, are not adequate representatives of the purchase only subclass of settlement class members who do not have injured or deceased pet claims. As represented by the Lead Plaintiffs' counsel in their brief to the Court, the named Plaintiffs "brought claims on behalf of all persons who purchased any cat or dog food that was produced by Menu Foods (or produced and/or sold by any entity using melamine contaminated wheat gluten or rice protein), **and** whose cat or dog became ill or died or sought veterinary treatment as a result of eating these products." (Motion for Appointment of Lead Counsel at pp. 2-3 [Doc. No. 32].)

The Settlement, by contrast, now asserts a different class composed of two distinct subclasses as follows: "'Settlement Class'" means the class to be certified by the MDL Court and Canadian Courts pursuant to this Agreement of all persons and entities who purchased, used or obtained, or whose pets used or consumed Recalled Pet Foods Products(s)". (Settlement Agreement at p.16 [Doc. No. 151-3].) Thus, there is now effectively a subclass of persons with a injured or deceased pet, and a new subclass of persons who merely purchased the Recalled Pet Food Products.

While the named Plaintiffs can adequately represent persons with a injured or deceased pet, there is no adequate representation of the persons who merely purchased the Recalled Pet Food Products but do not have a claim for and injured or deceased pet. Under the terms of the Settlement Agreement, the vast majority of the settlement fund is going to the former who are the class representatives that retained the Lead Counsel, and very little

11

of the fund is allocated to the unrepresented class members who did not have Lead Counsel negotiating on their behalf with undivided loyalty.

Under *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) and *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 852 (1999), the adequacy of representation of the rights of absent class members requires heightened scrutiny in the settlement context and courts must carefully consider whether subclasses are required to protect the disparate interest of certain class members. Rules "designed to protect absentee class members by blocking unwarranted or overbroad class definitions demand undiluted, even heightened, attention in the settlement context." *Amchem*, 521 U.S. at 620; *In re Community Bank of N. Va.*, 418 F.3d 277, 299 (3d Cir. 2005).

As the Supreme Court held in *Amchem*:

> Nor can the class approved by the District Court satisfy Rule 23(a)(4)'s requirement that the named parties "will fairly and adequately protect the interests of the class." **The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent**....As the Third Circuit pointed out, named parties with diverse medical conditions sought to act on behalf of a single giant class rather than on behalf of discrete subclasses. In significant respects, the interests of those within the single class are not aligned....**The settling parties, in sum, achieved a global compromise with no structural assurance of fair and adequate representation for the diverse groups and individuals affected**. Although the named parties alleged a range of complaints, each served generally as representative for the whole, not for a separate constituency.

521 U.S. at 626-27.

In *Ortiz* the Supreme Court held that conflicts of interest require the creation of subclasses with independent representation:

> First, it is obvious after *Amchem* that a class divided between holders of present and future claims (some of the latter involving no physical injury and attributable to claimants not yet born) requires **division into homogeneous subclasses under Rule 23(c)(4)(B), with separate representation to eliminate conflicting interests of counsel**. See *Amchem,* 521 U.S., at 627, 117 S.Ct. 2231 (class settlements must provide "structural assurance of fair and adequate representation for the diverse groups and individuals affected"); cf. 5 J. Moore, T. Chorvat, D. Feinberg, R. Marmer, & J. Solovy, Moore's Federal Practice § 23.25[5][e], p. 23-149 (3d ed.1998) (an attorney who represents another class against the same defendant may not serve as class counsel).

527 U.S. at 2319.

Here the divergent interests of the class members with only purchase claims requires the creation of a subclass and appointment of a class representative and counsel for that subclass who can adequately represent these members of the Class and protect their interests.

*In re Community Bank of N. Va., supra*, 418 F.3d 277 (3d Cir. 2005) the Third Circuit reversed and vacated approval of a class settlement because certain members of the settlement class who had additional claims under TILA or the Home Ownership and Equity Protection Act ('HOEPA') were not adequately represented:

> [W]e are not convinced based on the present record that the named plaintiffs adequately represent the interests of the entire class. **At the very least, consideration should have been given to the feasibility of dividing the class into sub-classes so that a court examining the proposed settlement could have judged the fairness of the settlement as it applied to similarly situated class members**....There is also some question whether the absent class members' interests were sufficiently pursued by class counsel. We have already noted that class counsel never asserted colorable TILA and HOEPA claims. However, those claims were part of the settlement release. Failure to pursue such claims may suggest that class counsel subrogated their duty to the class in favor of the enormous class-action fee offered by defendants.

*Id*. at 307-308.

The same problems that led the Third Circuit to vacate the settlement in *Community Bank* exist with respect to the instant settlement. The current representatives and their counsel, who assert distinguishable product liability claims to recover pet injury damages, cannot adequately represent the interests of the millions of members of the class asserting only product purchase claims. By settling these claims of this unrepresented subclass for the grossly inadequate compensation of $250,000 and imposing an overly broad release that extends far beyond claims for contaminated products without obtaining additional compensation, the current Settlement is unfair and inadequate to unrepresented class members like Daniel Kaffer.

The interests of Mr. Kaffer and those of the other members of the Class asserting only product purchase claims are being adversely impacted by this inadequate representation which resulted in a *de minimis* monetary recovery for the contaminated purchases and no

consideration at all for the released purchase claims for mislabeled, non-contaminated purchases. For this reason alone, the Settlement cannot be approved.

## IV. The Proponents of the Settlement Have Failed to Show that the Total Settlement Amount or the $250,000 Allocated to Product Purchase Claims Are Reasonable When Compared to the Maximum Potential Recovery

The settlement allocates only $250,000 to pay for the product purchase claims. Though the parties provide no evidence to this Court regarding the total product sales for which this amount is supposed to compensate, the Lead Plaintiffs have stated in pleadings that the contamination involved in excess of 60 million units solely for Menu Foods, and there are several other manufacturers. (Lead Counsel Memorandum at p.2 [Doc. No. 32].) A common sense estimate therefore reasonably leads to the conclusion that total sales for the products exceeded $100 million.[3] Therefore, the allocated amount of $250,000 is grossly inadequate.

The inadequacy of this settlement allocation is compounded by the release which also releases claims involving the purchases of non-recalled products. **Thus, the $100 million sales figure for the contamination period, if extrapolated to a four year sales period, would balloon to more than $500 million of purchases which are being released by virtue of this settlement.** With respect to the Ol' Roy products and the Natural Balance products, for which "Made in the USA" claims are being asserted for non-contaminated product sales, this settlement directly releases claims with significant value. (See Declaration of Robert Klein, filed herewith).

The sales of the Ol' Roy products at issue in *Picus* are estimated to be millions of dollars. The wholesale sales of the Natural Balance products alone were verified in the *Kennedy* action and are known to be $963,183.00 for the contamination period, and

---

[3] Daniel Kaffer will file a request herewith for discovery as to the total amount of sales for the products at issue, which evidence was not provided to this Court to determine whether the amount of $250,000 was sufficient when compared to total sales.

$9,753,645.00 in total sales. (A true and correct copy of the Natural Balance discovery responses are attached to the Declaration of Nordrehaug as Exhibit #8). Expert Robert Klein estimates this to correlate to about $12 million in retail sales for these mislabeled products by Natural Balance alone. (Decl. Klein ¶ 10.) This Settlement, however, only allocates $250,000 as the aggregate recovery for product purchases out of the $24 million settlement, which is grossly inadequate when considering the scope of the claims being released. This amount cannot be justified when considering the total sales of the pet food products by Defendants during the contaminated period, and with respect to Ol' Roy and Natural Balance, outside of the contamination period as well, all of which are being released by the settlement.

"In determining whether to certify a settlement class and approve a proposed class settlement, "the court plays the important role of protector of the absentees' interests, in a sort of fiduciary capacity...." *In re K-Dur Antitrust Litig.*, 2007 WL 5297757 at *4 (D.N.J. Oct 10, 2007) quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784-85 (3d Cir.1995).

> Thus, the court must " 'independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished.' " *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir.1995) (quoting 2 Newberg & Conte § 11.41 at 11-88-11-89).

*In re K-Dur Antitrust Litig.*, supra, 2007 WL 5297757 at *4.

As the Supreme Court held in *Ortiz*, absent at least some consideration of the "value" of absent class members' claims-a certifying court cannot assure "fair and adequate representation." 527 U.S. at 856 quoting *Amchem*, 521 U.S. at 627.

In deciding whether a settlement is fair and adequate is "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir.1995). While the settling parties have vastly expanded the overall damages potentially

recoverable on the claims subject to the proposed release by including claims that are not based on contamination, injury to pets or recalled pet food, they have failed to provide the Court with any indication of the actual amount that could potentially be recovered for all these released claims. This failure makes it impossible for the Court to fulfil its fiduciary duty of determining whether the total settlement falls in the range of reasonableness when compared to the maximum possible recovery.

The radical expansion of the release beyond the claims litigated in this action coupled with the parties' failure to quantify the maximum value of the expanded claims makes approval of the overall adequacy and fairness of the settlement impossible. Moreover, common sense dictates that the paltry allocation of only $ 250,000 to all product purchase claims is neither fair nor adequate. The total sales of pet food products sold by defendants to consumers whose pets were not injured that was either mislabeled and/or sold during the recall period is likely to be over $ 100 million, which would obviously make the $ 250,000 allocated to purchaser claims grossly inadequate.[4] These sales figures are readily available to the Settling Defendants and their failure to provide them to the Court in moving for settlement approval speaks volumes.

## V. The Investigation and Discovery Performed Was Inadequate to Permit the Parties to Intelligently Settle the "Made in the USA" Claims

The Settlement Agreement purports to release "Made in the USA" claims from any product purchase, and yet, as this Court is aware, there has been no discovery or investigation of the "Made in the USA" claims that would permit the parties to intelligently settle such claims. Lead Counsel have provided nothing to this Court to allow this Court to intelligently evaluate the value of the "Made in the USA" claims which are being released. Indeed, the motion for preliminary approval to this Court made no mention of the fact that this settlement

---

[4] Even assuming the settlement value of these claims were only 5% of the total sales volume, the value of these claims would be at least $ 5 million.

OBJECTION TO THE CLASS SETTLEMENT AND OPPOSITION TO MOTION FOR APPROVAL
Civil Action No. 07-2867 (NLH) (All Cases) / MDL Docket No. 1850

contrived to settle and dismiss "Made in the USA" claims pending in other jurisdictions that were expressly excluded from the MDL No. 1850 by Order of the Judicial Panel and the MDL expressly recognized the need for different discovery on these claims.

Moreover, the proponents of the Settlement fail to even discuss the strength of the mislabeling claims, the risks of such claims or the extent of discovery completed with respect to such claims.[5] Accordingly, the Settlement cannot be approved because Lead Counsel has completely failed to investigate or evaluate the mislabeling claims included within the scope of the release.


**VI.    The Settlement Notice Fails to Warn Class Members that By Participating in the Settlement They Will Release All Claims Based on Purchases Prior to the Recall Period Without Any Additional Compensation**

In *National Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9, 17 (2d Cir. 1981) the Second Circuit ruled that the manifest unfairness of a settlement that released additional claims of certain class members without compensation was exacerbated by the failure of the Settlement notice to clearly apprise class members that they would be releasing such rights.

Here, likewise, although the release is quoted in the Settlement Notice, the Notice fails to advise Class Members that the release extends to claims that are not based on contaminated pet food and has no temporal limit extending to purchases that predate the recall period. The scope of the release is not obvious to an unsophisticated class member without legal training and the Notice therefore fails to provide class members with information necessary to make an intelligent decision concerning whether to participate in

---

[5] Counsel in the *Picus* action expects that Lead Counsel will be forced to admit that **no discovery** was performed with respect to the "Made in the USA" claims. This is true because the MDL Panel expressly ruled that the "Made in the USA" claims would "require unique discovery" as compared to the claims involving contaminated pet food. (Exhibit #1). Thus, such discovery would have been outside the scope of MDL No. 1850.

the Settlement.

## **CONCLUSION**

Counsel for Daniel Kaffer attempted to resolve this dispute informally with the parties to the settlement, but the settlement parties have taken the position that they may release claims without providing relief or representation for such claims and that no separate representation of the newly-added subclass of product purchasers is required. Lead Counsel refused to modify the settlement to address these obvious problems. As a result, Margaret Picus has been left with no choice other than objecting to the settlement on the grounds set forth herein.

Based upon the foregoing, Daniel Kaffer respectfully submits that approval of the Settlement be denied and that she be granted leave to intervene so that adequate representation can be provided for the purchase only subclass. The parties should then be directed to renegotiate the Settlement in order to  provide adequate compensation for all released claims, including claims for purchases of mislabeled products.

Respectfully submitted,

DATED: September 12, 2008

LAW OFFICE OF DANIEL I. WARD

By: _____
Daniel I. Ward, Esq.
118 White Horse Road W.
Voorhees, NJ 08043
Tel: (856) 566-6614
Fax: (856) 566-7373

BLUMENTHAL & NORDREHAUG

By:___/s/ Kyle R. Nordrehaug_____
Kyle R. Nordrehaug

Attorneys for Settlement Class members
Margaret Picus and Daniel Kaffer

K:\D\NBB\Picus v. Wal-Mart\MDL\p-objection-Kaffer-final.wpd

OBJECTION TO THE CLASS SETTLEMENT AND OPPOSITION TO MOTION FOR APPROVAL
Civil Action No.  07-2867 (NLH) (All Cases) / MDL Docket No. 1850