**LAW OFFICES OF DANIEL I. WARD**
Daniel I. Ward, Esq. (NJ Bar No. 033581986)
118 White Horse Road W.
Voorhees, NJ 08043
Tel: (856) 566-6614
Fax: (856) 566-7373

**BLUMENTHAL & NORDREHAUG**
Kyle R. Nordrehaug (Cal. State Bar #205975)
2255 Calle Clara
La Jolla, California 92037
Tel: (858)551-1223
Fax: (858) 551-1232

Attorneys for Proposed Intervenors and Settlement Class Members,
MARGARET PICUS and DANIEL KAFFER

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE PET FOOD PRODUCTS LIABILITY LITIGATION | Civil Action No.  07-2867 (NLH) (All Cases)<br>MDL Docket No. 1850<br><br>DECLARATION OF KYLE NORDREHAUG IN SUPPORT OF MOTION TO INTERVENE AND THE OBJECTIONS TO CLASS SETTLEMENT BY MARGARET PICUS AND DANIEL KAFFER<br><br>Date:      October 14, 2008<br>Time:      9:30  a.m.<br><br>Judge:     Hon. Noel L. Hillman<br>Courtroom:  3A |

I, KYLE R. NORDREHAUG, declare, under penalty of perjury, as follows:

      1.      I am an attorney licensed to practice law in the state of California and the Ninth

Dockets.Justia.com

Circuit, and I submit this Declaration to the Court in support of the motion to intervene and the objections to the Class Settlement by Settlement Class Members Margaret Picus and Daniel Kaffer.

2. Attached hereto as <u>Exhibit #1</u> is a true and correct copy of the MDL Order Vacating Conditional Transfer Order of the *Picus* action, dated October 9, 2007.

3. Attached hereto as <u>Exhibit #2</u> is a true and correct copy of the Complaint in *Picus v. Wal-Mart Stores, et al.*, Case No. 2:07-CV-00682- PMP-LRL ("*Picus*"), currently pending in the United States District Court for the District of Nevada.

4. Attached hereto as <u>Exhibit #3</u> is a true and correct copy of the District Court Order in *Picus* which denied Defendants' Motion to Dismiss.

5. Attached hereto as <u>Exhibit #4</u> is a true and correct copy of the Complaint in *Kennedy v. Natural Balance*, Case No. 07cv1082, filed in the United States District Court for the Southern District of California, currently pending before the Ninth Circuit Court of Appeals.

6. Attached hereto as <u>Exhibit #5</u> is a true and correct copy of the District Court Order in *Kennedy* which denied Defendants' Motion to Dismiss.

7. Attached hereto as <u>Exhibit #6</u> is a true and correct copy of the Opposition to Class Certification filed by Defendant Natural Balance.

8. Attached hereto as <u>Exhibit #7</u> is a true and correct copy of *Managing Class Action Litigation: A Pocket Guide for Judges*, published by the Federal Judicial Center in 2005.

9. Attached hereto as <u>Exhibit #8</u> is a true and correct copy of Settling Defendant Natural Balance's discovery responses in *Kennedy v. Natural Balance* which verify the sales of Natural Balance pet food products for the contamination period and for the period 2005 to the present.

10. Other lawyers at my firm and I have extensive class litigation experience and can adequately represent the subclass of consumers asserting only purchase claims in the instant

DECLARATION OF KYLE NORDREHAUG IN SUPPORT OF MOTION TO INTERVENE AND OBJECTIONS TO THE CLASS SETTLEMENT

action.  We have handled a number of class actions and complex commercial cases and have acted both as counsel and as lead and co-lead counsel in a variety of these matters.  We have successfully prosecuted and obtained significant recoveries in numerous class action lawsuits and other lawsuits involving complex issues of law and fact.  Blumenthal & Nordrehaug are experienced in prosecuting consumer class action lawsuits and refund claims for deceptive, unfair and unlawful business practices, and can competently represent the Class.  A true and correct copy of my firm's resume is attached hereto as <u>Exhibit #9</u>.

I declare under penalty of perjury under the laws of the United States, the State of California and the State of New Jersey that the foregoing is true and correct.  Executed this 11th day of September, 2008 at La Jolla, California.


By:  */s/ Kle R. Nordrehaug*
   Kyle R. Nordrehaug, Esq.
   BLUMENTHAL & NORDREHAUG
   2255 Calle Clara
   La Jolla, CA 92037
   Tel: (858) 551-1223
   Fax: (858) 551-1232
   Email: kyle@bamlawlj.com

   Attorneys for Settlement Class members
   Margaret Picus and Daniel Kaffer


K:\D\NBB\Picus v. Wal-Mart\MDL\p-motion to intervene-Decl-KRN.wpd

DECLARATION OF KYLE NORDREHAUG IN SUPPORT OF MOTION TO INTERVENE
AND OBJECTIONS TO THE CLASS SETTLEMENT

Civil Action No.  07-2867 (NLH) (All Cases) / MDL Docket No. 1850



**EXHIBIT #1**

# NITED STATES JUDICIAL PANE. )
## on
# MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge John G. Heyburn II
United States District Court
Western District of Kentucky

**MEMBERS:**
Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

Judge David R. Hansen
United States Court of Appeals
Eighth Circuit

Judge Anthony J. Scirica
United States Court of Appeals
Third Circuit

**DIRECT REPLY TO:**

Jeffery N. Lüthi
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone: [202] 502-2800
Fax:          [202] 502-2888
http://www.jpml.uscourts.gov

October 9, 2007


TO INVOLVED COUNSEL

Re:  MDL No. 1850 -- IN RE: Pet Food Products Liability Litigation

      Margaret Picus v. Wal-Mart Stores, Inc., et al., D. Nevada, C.A. No. 2:07-686

Dear Counsel:

      For your information, I am enclosing a copy of an order filed today by the Panel in the above-captioned matter.

                Very truly,

                Jeffery N. Lüthi
                Clerk of the Panel


                By _Dana L. Stewart_
                    Deputy Clerk

Enclosure

JPML Form 34B

# UNITED STATES JUDICIAL PANEL
## on
## MULTIDISTRICT LITIGATION

**IN RE: PET FOODS PRODUCTS
LIABILITY LITIGATION**
Margaret Picus v. Wal-Mart Stores, Inc., et al.,      )
D. Nevada, C.A. No. 2:07-686               )      MDL No. 1850

## ORDER VACATING CONDITIONAL TRANSFER ORDER

**Before the entire Panel**: Plaintiff and three defendants[1] move, pursuant to Rule 7.4, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001), to vacate our order conditionally transferring the action to the District of New Jersey for inclusion in MDL No. 1850. Defendant ChemNutra, Inc., did not respond to, and defendant Del-Monte Foods Company has stated that it takes no position on, the motion to vacate.

After considering all argument of counsel, we find that transfer of this action to the District of New Jersey would not necessarily serve the convenience of the parties and witnesses or further the just and efficient conduct of this litigation. The actions pending in MDL No. 1850 relate to a number of brands of allegedly contaminated pet food products, and the voluntary recalls of those products. The complaint in the action before us alleges that defendants intentionally mislabeled one particular brand of pet food products as "MADE IN USA" when, in fact, a major component of the pet food was manufactured in China. These allegations will likely require unique discovery and other pretrial proceedings. Accordingly, we are persuaded that inclusion of this action in MDL No. 1850 is not presently warranted.

IT IS THEREFORE ORDERED that our conditional transfer order designated as "CTO-1" is vacated insofar as it relates to this action.

---

[1] Menu Foods, Inc., Wal-Mart Stores, Inc., and Sunshine Mills, Inc.

PANEL ON MULTIDISTRICT LITIGATION

John G. Heyburn II
Chairman

D. Lowell Jensen      J. Frederick Motz
Robert L. Miller, Jr.    Kathryn H. Vratil
David R. Hansen      Anthony J. Scirica

**EXHIBIT #2**

1  **COM**
Robert B. Gerard, Esq.
2  Nevada State Bar #005323
Lawrence T. Osuch, Esq.
3  Nevada State Bar #006771
Gerard & Osuch, LLP
4  2840 South Jones Boulevard
Building D, Suite #4
5  Las Vegas, Nevada 89146
Telephone:  (702) 251-0093
6  Facsimile:  (702) 251-0094

7  Norman Blumenthal, Esq.
California State Bar #068687
8  Blumenthal & Nordrehaug
2255 Calle Clara
9  La Jolla, California 92037
Telephone:  (858) 551-1223
10  Facsimile:  (858) 551-1232

11  Attorneys for Plaintiffs

12

**EIGHTH JUDICIAL DISTRICT COURT**

13

**CLARK COUNTY, NEVADA**

14

15  MARGARET PICUS, an individual; on behalf )   CASE NO.:
of herself, and on behalf of all others similarly )   **A 5 4 0 3 1 5**
16  situated,                                      )
                                                   )   **COMPLAINT**  XXIII
17              Plaintiffs,                         )
                                                   )   **(JURY DEMAND)**
18      vs.                                         )
                                                   )   **ARBITRATION EXEMPTION**
19  WAL-MART STORES, INC; MENU FOODS )   **(CLASS ACTION)**
    INC.; DEL MONTE FOODS COMPANY;      )
20  SUNSHINE MILLS, INC.; CHEMNUTRA     )
    INC.; and DOES 1 through 100, Inclusive, )
21                  Defendants.              )
                                             )
22                                           )
                                             )
23                                           )
                                             )
24  _____ )

25

26

27

28                                          1

FILED

Apr 30  11 21 AM '07

CLERK OF THE COURT

# CLASS ACTION COMPLAINT

COMES NOW, Plaintiff MARGARET PICUS ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action as a class action against Defendants WAL-MART STORES, INC; MENU FOODS INC.; DEL MONTE FOODS COMPANY; SUNSHINE MILLS, INC.; CHEMNUTRA INC., and DOES 1 through 100, inclusive (hereinafter collectively referred to as "Defendants"), for violations of applicable consumer fraud statutes, for unjust enrichment, and for fraud by omission and concealment. Plaintiff alleges, based upon information and belief, except where otherwise stated, as follows:

## NATURE OF THE ACTION

1.     The instant Class Action Complaint involves a scheme among the Defendants through which Ol' Roy brand pet food products were expressly sold to consumers as "Made in USA," when in fact components of the Ol' Roy brand pet food products were made and/or manufactured in China.  Plaintiffs seek restitution and/or damages for all consumers throughout the United States who purchased "Ol' Roy" brand pet food products which represent on the product label to have been "Made in USA" during the applicable Class Period.  The Ol' Roy brand pet food products which are the subject of this suit are the following specific products:

   a. Pouch with Beef
   b. Pouch with Chicken
   c.  Pouch with Filet Mignon
   d. Pouch with Chicken Teriyaki
   e. Pouch with Beef/Noodle/Vegetable
   f. Pouch with Lamb/Rice/Gravy
   g. Pouch with Stew
   h. Pouch with Turkey
   I. Can SI Beef
   j. Can SI Chicken
   k. Ol' Roy Beef Flavor Jerky Strips Dog Treats
   l. Ol' Roy County Stew Hearty Cuts in Gravy Dog Food
   m. Ol' Roy with Beef Hearty Cuts in Gravy Dog Food
   n. Ol' Roy with Beef Hearty Strips in Gravy Dog Food
   o. 4-Flavor Large Biscuits
   p. Peanut Butter Biscuits

In addition, there may be other Ol' Roy brand pet food products that were similarly labeled as "Made in USA" but contained components that were imported from outside of the United States.

1    Plaintiff will therefore amend to list any additional Ol' Roy brand pet food products which were
2    sold as "Made in USA" but contained components that were imported from outside the United
3    States as such additional Ol' Roy brand pet food products are identified through discovery.

4        2.    Central to the Defendants' marketing of certain of their products is the
5    representation and designation that such products were and are "Made in USA." Defendants
6    package these products with the designation on the label or packaging, in capital and bold
7    lettering, that the products were "MADE IN USA." Studies show that the "MADE IN USA" is a
8    substantial factor in consumer purchasing decisions. Moreover, in the context of food products,
9    the designation that the products were "Made in USA" becomes a central and primary concern
10   because of concerns about the health and safety of the pet and the differences in health and safety
11   procedures in foreign countries.

12       3.    At all relevant times, Defendant Wal-Mart Stores, Inc. operated a nationwide
13   chain of retail stores selling a wide variety of consumer goods including pet food products under
14   the brand name "Ol' Roy" after the famous Wal-Mart founder Sam Walton's bird dog, Ol' Roy.
15   Defendant Wal-Mart Stores, Inc. operated these retail stores in Nevada and sold pet food
16   products under the brand name "Ol' Roy" to consumers in Nevada and throughout the United
17   States

18       4.    All of the pet food products under the brand name "Ol' Roy" sold to consumers in
19   Nevada and nationwide have substantially the same product label. On each package of Ol' Roy
20   pet food, the label uniformly represents that the product was "MADE IN USA" in capital letters.
21   A true and correct exemplar copy of an Ol' Roy pet food label attached hereto as Exhibit #1,
22   evidencing the uniform representations regarding geographic origin of the product. All of the Ol'
23   Roy pet food sold by Wal-Mart Stores, Inc. contains identical or substantively similar
24   representations as to the geographic origin of the product being "Made in USA."

25       5.    At all relevant times, Ol' Roy brand pet foods were not "Made in USA" as falsely
26   advertised, but instead, were manufactured either in whole or in part, in China. On or after
27   March 16, 2007, as a result of the FDA investigation into these products, Defendants disclosed
28   for the first time that the Ol' Roy brand pet food products contained ingredients manufactured in

3

China.

6. At all relevant times, Defendants WAL-MART STORES, INC. ("Wal-Mart") MENU FOODS INC. ("Menu"), DEL MONTE FOODS COMPANY ("Del Monte"), and SUNSHINE MILLS, INC. ("Sunshine") were companies that each participated in the manufacture and/or distribution of an Ol' Roy brand pet food product and were responsible in some part, for the misrepresentation that the Ol' Roy product was "Made in USA." Wal-Mart, Menu, Del Monte and Sunshine each participated in the packaging or labeling of different Ol' Roy brand pet food products, each with the fraudulent representation of geographic origin. Wal-Mart, Menu, Del Monte and Sunshine each knew or exercised conscious disregard for the truth that Ol' Roy brand pet food products were not "Made in USA," but instead, were manufactured either in whole or in part, in China. Despite this knowledge, they nevertheless participated with Wal-Mart in the fraudulent labeling of Ol' Roy pet food products as "Made in USA." Wal-Mart, Menu, Del Monte and Sunshine each knew that the fraudulent labeling of Ol' Roy brand pet food products as "Made in USA" would be reasonably relied upon by end consumers. Despite this knowledge, they nevertheless participated in fraudulent labeling of Ol' Roy brand pet food products, distributing Ol' Roy products to Wal-Mart for the intended purpose of sales to the consumers in Nevada and nationwide, without any reasonable grounds to believe that the products were "Made in USA."

7. At all relevant times, Defendant CHEMNUTRA INC. ("Chemnutra") is the company responsible, whole or in part, for importing the manufactured wheat gluten ingredient in Ol' Roy brand pet food products from China and supplying the same for use in the Ol' Roy brand pet food products. The Chinese product imported by CHEMNUTRA was actually used in the Ol' Roy brand pet food products. Although importing the manufactured wheat gluten ingredient from China, CHEMNUTRA nevertheless participated in the scheme and practice of labeling the Ol' Roy brand pet food products as "Made in USA" and/or were responsible for the mislabeling of the Ol' Roy brand pet food products as "Made in USA."

8. Under the federal regulations established by the Federal Trade Commission, for a product to be called "Made in USA," the product must be "all or virtually all" made in the U.S.

4

The term "United States," includes the 50 states, the District of Columbia, and the U.S. territories and possessions. Under this standard, "All or virtually all" means that "all significant parts and processing that go into the product must be of U.S. origin. That is, the product should contain no — or negligible — foreign content." *See* Federal Trade Commission Statement "Complying with the Made In the USA Standard."

9. The Ol' Roy brand pet food products that were imported, manufactured and sold by Defendants were comprised of components that were manufactured outside of the United States, including but not limited to China. At all relevant times prior to March 16, 2007, Defendants failed to disclose and concealed the fact that Ol' Roy brand pet food products contained ingredients or components that were manufactured and/or made in China and failed to exercise the necessary skill and care required to determine the accuracy of this statement.

10. Contrary to Defendants' packaging of Ol' Roy brand pet food products, (a) the Ol' Roy products contain certain components that have been entirely or substantially made, manufactured or produced outside of the United States, and (b) not all, or virtually all, of each Ol' Roy product is "Made in USA." Defendants have fraudulently concealed the material facts at issue herein by failing to disclose to the general public the true facts regarding the country of origin designation appearing on the Ol' Roy brand pet food products. The disclosure of this information was necessary in order to make the Defendants' representations regarding product origin not misleading. Defendants possess superior knowledge of the true facts, including knowledge that certain components were imported under a "Made in China" designation, which was not disclosed and which was necessary to discover the wrongful conduct, thereby tolling the running of any applicable statute of limitation.

11. Consumers and users of these products are particularly vulnerable to these deceptive and fraudulent practices. Defendants were in the exclusive possession of information regarding the country of origin for Ol' Roy brand pet food products. Most consumers possess very limited knowledge of the likelihood that products claimed to be "Made in USA" are in fact made, in whole or in part, in foreign countries. This is a material factor in many people's purchasing decisions, as they believe they are buying truly American products and supporting

5

American companies and American jobs. Consumers generally believe that "Made in USA" products are higher quality products than those of other countries. Unaware of the falsity of the Defendants' country-of-origin claims, Plaintiff and the other members of the Class were fraudulently induced to purchase Ol' Roy brand pet food products under false pretenses and at premium prices. State and federal laws are uniformly designed to protect consumers from this type of false advertising and predatory conduct. Defendants' deception of consumers is ongoing and will victimize consumers every day until it is altered by judicial intervention.

12. The country-of-origin designation is especially important and material in the context of food products because of the protections afforded by the Food and Drug Administration, and local health agencies, over food products made in the United States. For example, food products made in foreign countries can be grown or made using banned pesticides and/or chemicals, which one would not expect to find in Made in USA food products. Consumers who purchase food products designated with the "Made in USA" reasonably believe that they are purchasing product which has been grown and made in accordance with state and federal regulations. These same regulations are not present in foreign countries where unsafe and deleterious chemicals may be used without regulatory oversight. This concern is evidenced by the 2007 recall of many Ol' Roy brand pet food products, which was ordered because of the presence of chemicals which were illegal for use in food in the United States. This would not have occurred if the products were in fact "Made in USA" as represented.

**THE PARTIES**

13. The Plaintiff MARGARET PICUS is, and at all time mentioned herein was, a resident of Nevada, who purchased Ol' Roy brand pet food products at a Wal-Mart retail store located in Henderson, Nevada during the Class Period. The Plaintiff purchased Ol' Roy brand pet food products as a consumer for the household purpose of feeding the product to her beloved pet.

14. Defendant WAL-MART STORES, INC. is and at all times mentioned herein was,

a corporation organized under the laws of Delaware, authorized to conduct business in Nevada, and has a principal place of business in Arkansas. At all relevant times, Wal-Mart conducted and conducts substantial business in the State of Nevada and substantially availed and avails itself of the consumer pet food market in Nevada and the United States.

15. Defendant MENU FOODS INC. is and at all times mentioned herein was, a corporation organized under the laws of New Jersey with a principal place of business in Ontario, Canada. At all relevant times, Menu conducted and conducts substantial business in the State of Nevada and substantially availed and avails itself of the consumer pet food market in Nevada and the United States.

16. DEL MONTE FOODS COMPANY is and at all times mentioned herein was, a corporation organized under the laws of Delaware with a principal place of business in San Francisco, California. At all relevant times, Del Monte conducted and conducts substantial business in the State of Nevada and substantially availed and avails itself of the consumer pet food market in Nevada and the United States.

17. SUNSHINE MILLS, INC. is and at all times mentioned herein was, a corporation organized under the laws of Delaware with a principal place of business in Alabama. At all relevant times, Sunshine conducted and conducts substantial business in the State of Nevada and substantially availed and avails itself of the consumer pet food market in Nevada and the United States.

18. CHEMNUTRA INC. is and at all times mentioned herein was, a corporation residing in and with a principal place of business in Nevada. At all relevant times, Chemnutra conducted and conducts substantial business in the State of Nevada and substantially availed and avails itself of the consumer pet food market in Nevada and the United States.

19. Plaintiffs are ignorant of the true names and capacities of the Defendants sued herein as DOES 1 through 100, inclusive, and therefore sued these Defendants by fictitious names. Plaintiffs will amend further this Class Action Complaint to allege the true names and capacities of these Defendants if and when they are ascertained. Each of these Defendants, sued by the fictitious DOE designation, was in some manner responsible for the acts, omissions,

7

misrepresentations, non-disclosures, breach of warranties, fraud, unjust enrichment, deceptive

business practices, violation of statutes, aiding and abetting the scheme, and other wrongdoing as

alleged herein, all of which directly and proximately caused damage to Plaintiffs. Plaintiffs are

further informed and believe that said Defendants, some of them, each of them and/or all or them

were the knowing and willful participants in a scheme to promote, market, sell, advertise, or

otherwise benefit from the sale of mislabeled Ol' Roy brand pet food products.

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over this action, and venue is proper in Clark County,

Nevada, because (1) the Plaintiff's purchases of Ol' Roy brand pet food products occurred in

Clark County, (2) the Plaintiff resides in Clark County, (3) sale of Ol' Roy brand pet food

products to members of the Class occurred in Clark County, (4) Chemnutra is located in Las

Vegas, Nevada, and (5) the deceptive trade practices that give rise to this claim emanated from

and occurred, in whole or in part, in Nevada.

## CLASS ALLEGATIONS

21.     Plaintiff brings this action pursuant to Rule 23 of the Nevada Rules of Civil

Procedure as a nationwide class action on her own and on behalf of a class defined as:

> ALL INDIVIDUALS IN THE UNITED STATES WHO PURCHASED ONE OR
> MORE OL' ROY BRAND PET FOOD PRODUCTS PRIOR TO MARCH 16,
> 2007

The OL' ROY BRAND PET FOOD PRODUCTS which are the subject of this suit are the

following specific products:

> a. Pouch with Beef
> b. Pouch with Chicken
> c.  Pouch with Filet Mignon
> d. Pouch with Chicken Teriyaki
> e. Pouch with Beef/Noodle/Vegetable
> f. Pouch with Lamb/Rice/Gravy
> g. Pouch with Stew
> h. Pouch with Turkey
> I. Can SI Beef
> j. Can SI Chicken
> k. Ol' Roy Beef Flavor Jerky Strips Dog Treats
> l. Ol' Roy County Stew Hearty Cuts in Gravy Dog Food
> m. Ol' Roy with Beef Hearty Cuts in Gravy Dog Food

8

n. Ol' Roy with Beef Hearty Strips in Gravy Dog Food
o. 4-Flavor Large Biscuits
p. Peanut Butter Biscuits

In addition, other Ol' Roy brand pet food products may also have been similarly labeled as "Made in USA" but contained components that were imported from outside of the United States. Plaintiff will therefore amend to list any additional Ol' Roy brand pet food products which were sold as "Made in USA" but contained components that were imported from outside the United States as such additional Ol' Roy brand pet food products are identified through discovery. Excluded from the Class are Defendants, any parent, subsidiary or affiliate of Defendants, and their officers, directors, and employees of Defendants, and any judicial officer who may preside over this cause of action.

22.    The requirements for maintaining this action as a class action are satisfied in that:

a.    It is impracticable to bring all members of the Class before the Court. Plaintiff estimates that there are thousands of Class Members geographically spread throughout Nevada and that there are millions of Class Members, geographically spread throughout the United States. Attempting to join and name each Class member as a Co-Plaintiff would be unreasonable and impracticable.

b.    There are questions of law and fact common to the Class, which are identical for each member of the Class and which predominate over the questions affecting the individual Class members, if any. Among these common questions of law and fact are:

(I)    Whether Defendants made deceptive representations or designations of geographic origin in connection with Ol' Roy brand pet food products;

(I)    Whether the representations or designations of geographic origin in connection with Ol' Roy brand pet food products violated 15 U.S.C. §45a;

(ii)    Whether Ol' Roy brand pet food products were represented on the package labeling to have been "MADE IN USA";

9

(iii)    Whether all, or virtually all, of the Ol' Roy brand pet food products were "Made in USA"; ;

(Iv)    Whether Defendants were unjustly enriched through the distribution and/or sale of Ol' Roy brand pet food products as "Made in USA";

(v)    Whether Defendants concealed the true origin of Ol' Roy brand pet food products and omitted the fact that Ol' Roy brand pet food products contained components that were manufactured and made, in whole or in part, outside the United States;

(vi)    Whether Defendants participated in the alleged mislabeling of Ol' Roy brand pet food products as "Made in USA";

(vii)    Whether Defendants knew or should have known that Ol' Roy brand pet food products contained components that were manufactured and made, in whole or in part, outside the United States;

(viii)    Whether the members of the Class sustained damage as a result of the Defendants' conduct;

(ix)    Whether the Defendants unfairly or unlawfully received and/or retained revenue acquired through the scheme alleged herein;

(x)    Whether the Defendants engaged in a uniform corporate policy of marketing Ol' Roy brand pet food products as "Made in USA";

(xi)    Whether the applicable statute of limitations was tolled by virtue of Defendant's concealment and fraud;

(xii)    Whether the Defendants committed fraud in the marketing, distribution and/or sale of Ol' Roy brand pet food products and whether Defendants participated in such fraud.

c.    The claims of the representative Plaintiff are typical of the claims of the

Class in that the Plaintiff purchased Ol' Roy brand pet food products prior to March 16, 2007. The claims of both the named Plaintiff and the claims of all other Class members result from Defendants' actions in marketing and/or labeling Ol' Roy brand pet food products as "Made in USA" which were in fact made, manufactured or produced with certain components made outside of the United States.

        d.     The claims of the representative Plaintiff will fairly and adequately protect the interests of the Class. The Class interests are coincident with, and not antagonistic to, those of the Plaintiff. Furthermore, Plaintiff has retained and is represented by experienced class action counsel.

     23.     In this action, Plaintiff and the Class seek all relief authorized under Nevada law for which class-wide relief is available, disgorgement, restitution and reasonable attorneys' fees and costs incurred in the prosecution of this action. There are no manageability problems due to variations in state laws or choice of law provisions, because the representations of "Made in USA" were uniform and systematic and the laws of the United States and of all 50 states prohibit and make unlawful the designation of "Made in USA" on a product that is not made in the U.S.A. Further, the deceptive or false designation of geographic origin is actionable in all 50 states, and there are no relevant variations in the law of the states which impact the claims asserted herein. The performance of applicable choice of law or conflict of law analysis does not render the class unmanageable, moreover, any manageability issue which may arise can be handled through the use of a subclass.

     24.     A class action is superior to any other available methods for the fair and efficient adjudication of this controversy. The amount of each individual claim is too small to warrant individual litigation. Even if any group of class members itself could afford individual litigation, such a multitude of individual litigation would be unduly burdensome to the courts in which the individual litigation would proceed. The class action device is preferable to individual litigation because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single court. Finally, class wide litigation will insure that wrong doers do not retain the ill-gotten gains acquired through their wrongful conduct.

11

25.    A certified Class for injunctive relief is appropriate because Defendants have uniformly acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the Class as a whole. Conjunctively, or alternatively, a class certified for restitution and/or damages is also appropriate. The common questions of law and fact predominate over individual questions because all injuries sustained by any member of the Class arise out of the singular conduct of the defendant in uniformly providing deceptive representations regarding the Ol' Roy brand pet food products and selling such products to the Class through deceptive and unlawful representations regarding the geographic origin of the products.

## COUNT I

### VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT AND SIMILAR STATUTES IN OTHER STATES
### (Against All Defendants)

26.    Plaintiff repeats, incorporates by reference and realleges the allegations contained in Paragraphs 1-25 above as if fully set forth herein.

27.    Plaintiff brings this claim under Nevada consumer fraud laws, particularly NRS Sections 41.600 and 598.0915, on behalf of herself and the Class who purchased Ol' Roy brand pet food products and who were thus uniformly subject to Defendants' above-described deceptive, unlawful and fraudulent conduct. The laws of every other state are identical to and/or substantively similar to Nevada consumer fraud laws in that federal law and the laws of every state prohibit the use of deceptive representations regarding the geographic origin of products, and every state similarly authorizes an action by consumers for such conduct. In addition, the laws of the state of Delaware, and in particular 6 Del. C. § 2532(a)(4) is identical to that of Nevada N.R.S. §598.0915.

28.    The Ol' Roy brand pet food products, as described above, were purchased by the Plaintiff and by other consumers similarly situated primarily for personal, family, or household purposes. Millions of units of Ol' Roy brand pet food products were sold in the United States prior to March 16, 2007.

12

29.     The Defendants violated their statutory duty by working in concert and each participating in an elaborate scheme wherein Defendants deliberately mislabeled products or caused products to be mislabeled as to their geographic origin for the purpose of deceiving consumers, increasing sales and reducing costs. Defendants also acted deceptively and unfairly because all of the Ol' Roy brand pet food products had the deceptive appearance of a product that was made in the USA.

30.     The Defendants violated their duty under the aforementioned statutes, including but not limited to, N.R.S § 598.0915 (4), by, among other things, making false representations and/or designations as to the geographic origin of the Ol' Roy brand pet food products. This conduct violates Nevada law, and the law of every other state, including but not limited to California (Cal. Civil Code §1770(a)(4)), Arkansas (Ark. Stat. Ann. §4-88-107(a)(1)), Alabama (Code of Ala. §8-19-5(4)), and Delaware (6 Del. C. §2532), all of which laws are identical in prohibiting deceptive representations or designations of geographic origin in the marketing and sales of goods.

31.     The Defendants' actions as alleged herein were unfair and deceptive and constituted fraud, misrepresentation and the concealment, suppression and omission of material facts with the intent that Plaintiff and the Class would rely upon the fraudulent misrepresentation, concealment, suppression and omission of such material facts, all in violation of the applicable Consumer Fraud and Deceptive Business Practices Acts.

32.     Each Ol' Roy brand pet food product represented to the Plaintiff and every other member of the Class, at the time of purchase, that the Ol' Roy brand pet food product was "MADE IN USA" without qualification. Contrary to such representation, each Ol' Roy brand pet food product purchased by the Plaintiff and by every other member of the Class uniformly contained component(s) that were made and/or manufactured outside of the United States.

33.     These representations were made by Defendants to Plaintiff and the Class in writing on the label of each Ol' Roy brand pet food product purchased by the Plaintiff and by every other member of the Class, at the time of their respective purchases. Because the true facts concerning the use component(s) that were made and/or manufactured outside of the United

13

States were concealed by Defendants and never disclosed until after March 16, 2007, the true facts concerning the geographic origin of the products were not and could not have been known to Plaintiff or any other member of the Class.

34. When making the representations on the label that the products were "Made in USA", the Defendants intended that the representations be relied upon by all consumers in making their purchase.

35. All other states have consumer fraud statutes which are substantially similar to the Nevada Consumer Fraud Act. To the extent that the Nevada Consumer Fraud Act my be found not to protect the residents of other states, the consumer fraud acts of the Defendants' forum state could be applied to all members of the Class.

36. Plaintiff was injured by the many violations of the Nevada Consumer Fraud Act, and parallel sister state statutes, and Plaintiff has thereby been damaged in an amount to be proven at trial. As a direct and proximate result of the acts and practices alleged above, members of the general public who purchased the subject Ol' Roy brand pet food products from Defendants, including the Plaintiff, lost monies in a sum currently unknown but subject to proof at the time of trial. This Court is empowered to, and should, order restitution to all persons from whom Defendants deceptively, unfairly and/or unlawfully took money in order to accomplish complete justice.

## COUNT II

## FRAUD-INTENTIONAL NON-DISCLOSURE OF MATERIAL FACTS

### (Against All Defendants)

37. Plaintiff repeats, incorporates by reference and realleges the allegations contained in Paragraphs 1-36, above as if fully set forth herein.

38. The Defendants, working in concert under the above-described elaborate, fraudulent scheme, intentionally concealed and failed to disclose material facts about Ol' Roy brand pet food products and the true facts that should have been made known to the public and the Plaintiff Class prior to their purchase of Ol' Roy brand pet food product. In particular, the Defendants failed to

14

1  disclose the material facts alleged herein above with regard to the true geographic origin of important
2  and substantial component(s) of Ol' Roy brand pet food products. By way of further information,
3  Plaintiff further allege as follows:

4  **Defendants:**

5      39.    The Defendants participation in the fraudulent scheme is set forth as follows:

6          a.    Who: The Defendants each participated in the labeling of Ol' Roy brand pet
7  food products as "Made in the USA" when they each knew that the Ol' Roy brand pet food products
8  were not made in USA and contained important and substantial component(s) that were made and/or
9  manufactured outside of the United States.

10         b.    When: The Ol' Roy brand pet food products deceptively represented their
11  geographic origin as herein alleged at all times prior to March 16, 2007, when the true origin of these
12  products were disclosed for the first time as a result of an investigation by the Food and Drug
13  Administration.

14         c.    Where: On the label and/or packaging of the Ol' Roy brand pet food products
15  sold in Nevada and throughout the United States.

16         d.    Nature of Fraud: This was a fraud as to the geographic origin where "Made
17  in USA" designation was used on each package to give the appearance that the product was made
18  in the USA, by United States workers and farmers, and under the protection of United States laws,
19  when in fact, the Defendants knew or should have known the Ol' Roy brand pet food products were
20  comprised of component(s) that were made and/or manufactured outside of the United States. In
21  fact, Chemnutra admitted in its recall notices that the component(s) of Ol' Roy brand pet food
22  products were originally labeled as "Made in China", which designation apparently was changed
23  and/or altered by Defendants before sale to consumers.

24         e.    How and When Were Material Facts Concealed From The Plaintiffs:
25  Defendants failed to disclose and concealed the true geographic origin of component(s) of the Ol'
26  Roy brand pet food products.

27      40.    These non-disclosures of material fact were made intentionally in order to deceive
28  the Plaintiff and the other Class members, to induce their reliance, and in order to enrich the

Defendants by using sub-standard foreign components and passing such components off to the public as "MADE IN USA." Said non-disclosures were made for the purpose of facilitating and/or aiding and abetting the scheme to market and sell these products to the public using deceptive representations of geographic origin.

41.     If Plaintiff and the other members of the Class had known of the facts which Defendants and each of them failed to disclose, they would never have purchased the Ol' Roy brand pet food products as they did.

42.     Defendants' non-disclosures of material facts have caused damage to Plaintiff and the other members of the Class.

## COUNT III

### Unjust Enrichment

### (Against All Defendants)

43.     Plaintiff repeats, incorporates by reference and realleges the allegations contained in Paragraphs 1-42 above as if fully set forth herein.

44.     By labeling products as "Made in USA", Defendants represented that the subject "Made in USA" products have the characteristic of being made in America and the benefits of American-made products, which they do not have. Defendants have represented that the subject "Made in USA" products have the status of American-made products and the affiliation and connection with America, which they do not have. Moreover, Defendants have represented that the subject "Made in USA" products have the standard, quality, and grade of American-made products, which is not true. This "Made in USA" designation is a material and substantial factor in consumers' purchasing decisions, because consumers believe they are buying truly American products and supporting American companies and American jobs. Consumers generally believe that "Made in USA" products are higher quality products than those of other countries. Further, this "Made in USA" designation is especially important with respect to food products, because only through the Made in the USA designation can consumers insure that the products were not produced using illegal or banned chemicals or pesticides. This concern is evidenced by the recall of Ol' Roy

16

brand pet food products which was ordered because the products were found to contain substances which are not approved for use in food products in the United States, and the reason they contained such deleterious chemicals is because component(s) of the subject products were not made and/or manufactured in the United States, but instead were imported from countries with no such health protections.

45.     In reality, the Ol' Roy brand pet food products were not made of all or substantially all American-made products. In particular, component(s) of the products were imported from outside the United States, including but not limited to wheat gluten imported from China. In the example of the wheat gluten from China, such components were imported as "Made in China" however, the Defendants changed and/or altered such designation to falsely state "Made in USA."

46.     Defendants have benefitted and been enriched by the above-alleged conduct. Defendants sold the Ol' Roy brand pet food products with the false designation that the Ol' Roy brand pet food products were "Made in USA" and thereby unjustly reaped benefits and profits from consumers and the Class as a result of these representations. Defendants received and continues to receive sale benefits and profits at the expense of Plaintiff and the Class using such deceptive representation and designations.

47.     Defendants used the aforementioned representations to induce Plaintiff and the other members of the Class to purchase the Ol' Roy brand pet food products. Accordingly, Defendants received benefits which they have unjustly retained at the expense of Plaintiff and the Class members. Defendants have knowledge of this benefit, voluntarily accepted such benefit, and retained the benefit. Plaintiff, and other consumers similarly situated, did not receive the benefits of American-made products and the added health protection flowing from such products, for which they bargained and paid a premium price. As a direct and proximate result of this conduct, Plaintiff and the other members of the Class were deprived of the benefits and money they expended which were improperly retained by Defendants, and are therefore entitled to restitution in an amount equivalent to the value of the benefit.

48.     As a direct and proximate result of the Defendants conduct and unjust enrichment,

17

Plaintiff and the Class Members have suffered injury and seek relief in an amount necessary to restore them to the positions they would be in had Defendants not been unjustly enriched.

## REQUEST AND PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants as follows:

1. Certify this action as a class action;

2. Award damages and/or restitution in an amount to be proven at trial;

3. Order declaratory relief finding that Defendants have engaged in deceptive trade practices or practices in violation of federal and state law.

4. Order injunctive relief enjoining Defendants and their officers, directors, agents, distributors, servants, employees, attorneys, and all others in active concert or participation with Defendants, or any of them, jointly and severally, during the pendency of this action and permanently thereafter from falsely representing the origin of the products;

5. Award pre-judgment and post-judgment interest at the maximum rate allowed by law and costs of suit;

6. Award Plaintiff attorneys' fees and all litigation expenses as allowable by law. Alternatively, for all attorneys' fees and all litigation expenses to be awarded pursuant to the substantial benefit doctrine or other authority requiring Defendants to pay Plaintiff's attorneys' fees and litigation expenses. Alternatively, for attorneys' fees and other litigation expenses to be paid under the common fund doctrine or any other provision of law; and

7. Order such other and further relief as the Court may deem just and proper.

//
//
//
//
//
//

18

DATED this the 30 day of April, 2007.

GERARD & OSUCH, LLP

By: _____
Robert B. Gerard, Esq
Nevada State Bar #005323
Lawrence T. Osuch, Esq.
Nevada State Bar #006771
2840 South Jones Blvd. D-4
Las Vegas, NV 89146
Telephone:    (702) 251-0093
Facsimile:     (702) 251-0094

Norman Blumenthal, Esq.
California State Bar #068687
Blumenthal & Nordrehaug
2255 Calle Clara
La Jolla, California 92037
Telephone:    (858) 551-1223
Facsimile:     (858) 551-1232

***Attorneys For The Plaintiffs***

19

## DEMAND FOR JURY TRIAL

PLAINTIFFS demand jury trial on issues triable to a jury.

Dated: April 30, 2007
49.

GERARD & OSUCH, LLP

By: _____
Robert B. Gerard, Esq
Nevada State Bar #005323
Lawrence T. Osuch, Esq.
Nevada State Bar #006771
530 Las Vegas Blvd. South, Fourth Floor
Las Vegas, Nevada 89101

Norman Blumenthal, Esq.
California State Bar #068687
Blumenthal & Nordrehaug
2255 Calle Clara
La Jolla, California 92037
Telephone:     (858) 551-1223
Facsimile:     (858) 551-1232

***Attorneys For The Plaintiffs***

**EXHIBIT #1**



Ol'Roy™
DOG FOOD

WITH BEEF IN GRAVY



with depend on yo...
...temperature and...
...clean fresh wa...

...ent, and bre...
...portion. Alwa...

...NG INSTRUCTI...
...Feed 3 to 4 p...
... lbs of body
...ay.
...y. Feed as m...
...will eat in
...s per da...

...TIONS OR ...
...03-673...
...n-4 p...

Marketed...
Wal-Mart Sto...
Bentonville...
MADE IN ...

5 13 13 63331 4

**EXHIBIT #3**

1

2

3

4                          UNITED STATES DISTRICT COURT

5                               DISTRICT OF NEVADA

6                                      * * *
                                        )
7   MARGARET PICUS, on behalf of herself )
    and all others similarly situated,  )
8                                       )          2:07-CV-00682-PMP-LRL
                    Plaintiffs,         )          BASE FILE
9                                       )
    v.                                  )          2:07-CV-00686-PMP-LRL
10                                      )          2:07-CV-00689-PMP-LRL
    WAL-MART STORES, INC.; MENU         )
11  FOODS INC.; DEL MONTE FOODS         )
    COMPANY; SUNSHINE MILLS, INC.;      )          <u>ORDER</u>
12  CHEMNUTRA, INC.; and DOES 1         )
    through 100, inclusive,             )
13                                      )
                    Defendants.         )
14  _____ )

15          Presently before the Court is Defendant Del Monte Foods Company's Partial

16  Motion to Dismiss (Doc. #9) with supporting memorandum of law (Doc. #10) and affidavit

17  (Doc. #11), filed on June 21, 2007.  Defendant Sunshine Mills, Inc. filed a Joinder in Del

18  Monte's Partial Motion to Dismiss (Doc. #19) on July 5, 2007.  Plaintiff filed an Opposition

19  (Doc. #20) on July 5, 2007.  Defendants Del Monte Foods Company and Sunshine Mills,

20  Inc. did not file a reply.

21          Also before the Court is Defendant Menu Foods, Inc.'s Motion to Dismiss (Doc.

22  #18), filed on July 5, 2007.  Defendant ChemNutra, Inc. filed a Joinder to Menu Foods,

23  Inc.'s Motion to Dismiss (Doc. #21) on July 13, 2007.  Plaintiff filed an Opposition (Doc.

24  #22) and Objection to Exhibit A (Doc. #22) on July 13, 2007.  Defendant Menu Foods, Inc.

25  filed a Reply (Doc. #24) and Response to the Objection (Doc. #23) on July 26, 2007.

26  Defendant ChemNutra, Inc. filed a Joinder in the Reply (Doc. #25) on July 27, 2007.

1    Plaintiff filed a Reply (Doc. #30) in support of her Objection on August 8, 2007.

2    **I.  BACKGROUND**

3              Plaintiff filed a class action Complaint in Nevada state court on April 20, 2007,

4    alleging Defendants sold consumers "Ol' Roy" brand pet food products labeled as "Made in

5    USA" when in fact "components of the Ol' Roy brand pet food products were made and/or

6    manufactured in China."  (Notice of Removal [Doc. #1], Compl. at 2.)  Plaintiff asserts

7    claims for violation of the Nevada Deceptive Trade Practices Act ("NDTPA") and similar

8    statutes in other states (count one); fraud through intentional non-disclosure of material

9    facts (count two); and unjust enrichment (count three).  (Id. at 12-18.)  Plaintiff seeks relief

10   on behalf of herself and all consumers throughout the United States who purchased such

11   products prior to March 16, 2007.  (Id. at 2, 8.)

12             Defendant Wal-Mart Stores, Inc. ("Wal-Mart") removed the action to this Court

13   on May 25, 2007.  (Notice of Removal.)  On June 20, 2007, the Court consolidated Plaintiff

14   Picus' Complaint with three other complaints removed to the Court within days of each

15   other.  (Order [Doc. #15].)  On June 28, 2007, the Judicial Panel on Multidistrict Litigation

16   ("JPML") conditionally transferred the case to the Northern District of New Jersey for

17   consolidated pretrial proceedings in the In re Pet Foods Product Liability Litigation.  (Joint

18   Motion to Vacate Conditional Transfer Order [Doc. #28].)  Defendant Del Monte Foods

19   Company ("Del Monte") thereafter requested a stay of all proceedings pending a ruling on

20   transfer from the JPML.  (Del Monte Foods Co.'s Emergency Mot. & Mem. of P. & A. in

21   Support of Mot. to Stay Proceedings [Doc. #38].)  Magistrate Judge Lawrence R. Leavitt

22   granted the motion to stay with respect to discovery and scheduling obligations under

23   Federal Rules of Civil Procedure 16 and 26.  (Order [Doc. #42].)

24             Defendant Del Monte moves for partial dismissal for failure to state a claim.  Del

25   Monte argues Plaintiff fails to state a claim for relief under the Federal Trade Commission

26   Act or related regulations because no private right of action exists under the Act or its

1    regulations.  Del Monte also argues Plaintiff fails to state a claim for restitution,

2    disgorgement, or injunctive relief under the NDTPA because the NDTPA does not permit

3    such remedies.  Del Monte further argues that Plaintiff has failed to state a claim for unjust

4    enrichment because the Complaint alleges an adequate remedy at law and the claim fails on

5    the merits because unjust enrichment requires showing the defendant retained a benefit.

6    However, Del Monte argues it did not retain a benefit where the product recall permitted

7    Plaintiff to return the product for a refund of the purchase price.  Finally, Del Monte argues

8    Plaintiff has failed to state a claim for deceptive trade practices under the statutory law of

9    California, Arkansas, Alabama, and Delaware because she has failed to plead facts showing

10   these states have any connection to Plaintiff's purchase of pet food in Nevada.

11           Defendant Menu Foods, Inc. ("Menu Foods") moves to dismiss the Complaint,

12   arguing that because the pet food at issue was manufactured in the United States, the words

13   "Made in USA" on the packaging were not deceptive.  Additionally, Menu Foods argues

14   Plaintiff lacks standing to assert relief under the laws of any jurisdiction other than Nevada

15   because she purchased the food only in Nevada.  Menu Foods further argues Plaintiff failed

16   to plead her fraud claim with particularity by failing to specify each Defendant's alleged

17   role in the fraudulent scheme.  Finally, Menu Foods argues Plaintiff fails to state a claim for

18   unjust enrichment because she cannot establish Menu Foods retained a benefit where

19   Plaintiff could receive a refund pursuant to the voluntary recall of the pet food.

20           Plaintiff responds that although the Complaint mentions federal law, her first

21   claim arises under state unfair practice laws, which may prohibit the same conduct as

22   federal laws and regulations.  The reference to federal law in Plaintiff's Complaint therefore

23   is for the purpose of determining what "Made in USA" means, but does not attempt to

24   allege a federal claim.  Plaintiff contends that deceptive designations of geographic origin

25   violate Nevada deceptive trade practices law and Defendants labeled the Ol' Roy pet food

26   as "Made in USA" when it was not.  As to the unjust enrichment claim, Plaintiff argues she

3

can plead remedies at law and her unjust enrichment claim in the alternative, and thus
dismissal is inappropriate.  On the merits, Plaintiff argues the recall notice does not negate
any element of her unjust enrichment claim because the recall was for products containing
contaminated ingredients from China, which are not coextensive with the mislabeled but
uncontaminated products.  With respect to restitution and injunctive relief, Plaintiff argues
she is entitled to these remedies for at least two of her three claims, and therefore striking
the remedies from the Complaint is unwarranted.

As to Defendant's jurisdictional arguments, Plaintiff contends that because each
state's law prohibits the use of deceptive representations of geographic origin, there is no
conflict of law and no obstacle to using Nevada law, or, alternatively, the law of
Defendants' home states, for a nationwide class.  Additionally, Plaintiff contends this issue
relates to class manageability and should not be decided on a motion to dismiss.  Finally,
Plaintiff contends the Complaint adequately alleges fraud, and, to the extent it does not, the
Court should apply a relaxed pleading standard because information detailing the precise
role each Defendant played is within Defendants' exclusive control.  Plaintiff requests leave
to amend should the Court grant Defendants' motion to dismiss.

Plaintiff also objects to Exhibit A to Menu Foods' motion, arguing the exhibit is
unauthenticated, irrelevant, hearsay, and evidence not properly considered under the motion
to dismiss standard.  Menu Foods responds by attaching an affidavit authenticating the
exhibit and argues that because Plaintiff referred to the product recall in the Complaint, the
exhibit is not extrinsic evidence.

## II. DISCUSSION

In considering a motion to dismiss, "the court must construe the complaint in the
light most favorable to the plaintiff, taking all her allegations as true and drawing all
reasonable inferences from the complaint in her favor." Doe v. United States, 419 F.3d
1058, 1062 (9th Cir. 2005).  However, the Court does not necessarily assume the truth of

1  legal conclusions merely because they are cast in the form of factual allegations in the

2  plaintiff's complaint.  See Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir.

3  1994).  There is a strong presumption against dismissing an action for failure to state a

4  claim.  Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003).  "'The issue is not whether

5  a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

6  support the claims.'"  Hydrick v. Hunter, --- F.3d ----, 2007 WL 2445998, *3 (9th Cir.

7  2007) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

8  **A.  Objection to Defendant Menu Foods' Exhibit A**

9  Defendant Menu Foods attached as Exhibit A to its motion to dismiss a March

10  16, 2007 recall notice announcing the recall of certain cat and dog food manufactured in

11  late 2006 and early 2007.  Plaintiff objects to the Court's consideration of this evidence in

12  conjunction with the motion to dismiss.  Plaintiff argues the recall notice is unauthenticated,

13  irrelevant, hearsay, and evidence not properly considered under the motion to dismiss

14  standard.  Menu Foods responds by attaching an affidavit authenticating the exhibit and

15  argues that because Plaintiff referred to the product recall in the Complaint, the exhibit is

16  not extrinsic evidence.

17  Federal Rule of Civil Procedure 12(b) provides that if the parties present to the

18  court matters outside the pleadings in conjunction with a motion to dismiss for failure to

19  state a claim under Rule 12(b)(6) and the court does not exclude the materials, the court

20  shall treat the motion as one for summary judgment and shall give all parties reasonable

21  opportunity to present pertinent materials in support.  "A court may, however, consider

22  certain materials--documents attached to the complaint, documents incorporated by

23  reference in the complaint, or matters of judicial notice--without converting the motion to

24  dismiss into a motion for summary judgment."  United States v. Ritchie, 342 F.3d 903, 908

25  (9th Cir. 2003).  Where the plaintiff refers extensively to a document or the document forms

26  the basis of the plaintiff's claim, the court may consider the document incorporated by

reference into the complaint, even if the plaintiff does not attach the document to the complaint.  Id.

The Court will not consider Exhibit A in ruling on Defendant Menu Foods' motion to dismiss.  The recall notice is not attached to the Complaint nor incorporated by reference therein.  Although the Complaint refers to Defendants disclosing the use of ingredients manufactured in China on or after March 16, 2007, and refers generally to the 2007 recall of Ol' Roy brand products, the Complaint does not refer extensively to Menu Foods' March 16, 2007 recall notice nor do Plaintiff's claims rely upon the recall notice. Plaintiff asserts injuries arising from the alleged mislabeling of the products as "Made in USA," not from the purchase and use of contaminated or recalled products.  While the Court may take judicial notice of the fact that such a recall notice was issued on March 16, 2007, the Court cannot take judicial notice of the truth of the facts asserted therein.  See Fed. R. Evid. 201; Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001). Because the Complaint pleads that such a recall took place, the Court need not take judicial notice of Exhibit A.  The Court therefore sustains Plaintiff's objection to Exhibit A.

## B.  Federal Trade Commission Act

Del Monte argues Plaintiff fails to state a claim for relief under the Federal Trade Commission Act or related regulations because no private right of action exists under the Act or its regulations.  Plaintiff clarifies that she does not assert a separate claim under federal law.  Rather, the Complaint refers to federal law as a source of authority to determine when a product properly is labeled "Made in USA."  The Court therefore will deny as moot Defendant Del Monte's motion to dismiss on this basis.

## C.  Remedies Under the NDTPA

Del Monte argues Plaintiff fails to state a claim for restitution, disgorgement, or injunctive relief under the NDTPA because the NDTPA does not permit such remedies. Plaintiff responds that a requested remedy is not the proper subject of a Rule 12(b)(6)

1   motion, and, in any event, she is entitled to these remedies for at least two of her three

2   claims so the Court should not strike the requested relief from the Complaint.

3       Nevada law permits a victim of consumer fraud, which includes a victim of

4   deceptive trade practices, to bring a private cause of action.  Nev. Rev. Stat. § 41.600(1)-

5   (2).  Upon prevailing on such a claim, the court "shall award" the plaintiff "[a]ny damages

6   that he has sustained" plus costs and reasonable attorney's fees.  Id. § 41.600(3).  Section

7   41.600 does not specifically permit a private party to obtain injunctive or other equitable

8   relief in pursuing such a claim.  In contrast, the NDTPA authorizes the State's

9   commissioner of consumer affairs, attorney general, and district attorneys to pursue claims

10  for injunctive and equitable relief.  See Nev. Rev. Stat. § 598.0963, § 598.0971, § 598.0985.

11      The parties have not identified a case in which the Nevada Supreme Court has

12  addressed whether a private party is entitled to pursue injunctive relief or other equitable

13  remedies under § 41.600, and the Court could locate none.  Where a state has not addressed

14  a particular issue, a federal court must use its best judgment to predict how the highest state

15  court would resolve it "using intermediate appellate court decisions, decisions from other

16  jurisdictions, statutes, treatises, and restatements as guidance."  Strother v. S. Cal.

17  Permanente Med. Group, 79 F.3d 859, 865 (9th Cir. 1996) (quotation omitted); Med. Lab.

18  Mgmt. Consultants v. Am. Broad. Cos., Inc., 306 F.3d 806, 812 (9th Cir. 2002).  In making

19  that prediction, federal courts look to existing state law without predicting potential changes

20  in that law.  Moore v. R.G. Indus., Inc., 789 F.2d 1326, 1327 (9th Cir. 1986).  Although

21  federal courts should not predict changes in a state's law, they "are not precluded from

22  affording relief simply because neither the state Supreme Court nor the state legislature has

23  enunciated a clear rule governing a particular type of controversy."  Air-Sea Forwarders,

24  Inc. v. Air Asia Co., 880 F.2d 176, 186 (9th Cir. 1989) (quotation omitted).    The Court

25  looks to Nevada rules of statutory construction to determine the meaning of a Nevada

26  statute.  In re First T.D. & Inv., Inc., 253 F.3d 520, 527 (9th Cir. 2001).

Under Nevada law, a court should construe a statute to give effect to the legislature's intent. <u>Richardson Constr., Inc. v. Clark County Sch. Dist.</u>, 156 P.3d 21, 23 (Nev. 2007). If the statute's plain language is unambiguous, that language controls. <u>Id.</u> If the statute's language is ambiguous, the Court "must examine the statute in the context of the entire statutory scheme, reason, and public policy to effect a construction that reflects the Legislature's intent." <u>Id.</u> "If a statute expressly provides a remedy, courts should be cautious in reading other remedies into the statute." <u>Builders Ass'n of N. Nev. v. City of Reno</u>, 776 P.2d 1234, 1235 (Nev. 1989); <u>see also</u> <u>Chavez v. Sievers</u>, 43 P.3d 1022, 1025-26 & n.10 (Nev. 2002). Additionally, a court may infer the legislature's intent to limit remedies where it provides for a remedy in one section but fails to do so in a related provision. <u>Cf.</u> <u>Hamm v. Carson City Nugget, Inc.</u>, 450 P.2d 358, 360 (Nev. 1969) ("By providing for civil liability in one section and failing to do so in the section immediately following, the legislature made its intention clear.").

Here, the Nevada legislature expressly provided for a remedy for private litigants pursuing deceptive practices claims in the form of damages plus costs and attorney's fees. The Court therefore will not read into the statute other remedies, particularly where the overall statutory structure suggests the Nevada legislature intended otherwise. The Nevada legislature specifically authorized the commissioner of consumer affairs, the attorney general, and district attorneys to pursue injunctive and other equitable relief to remedy deceptive trade practices but declined to include those same remedies in the section referring to private causes of action for consumer fraud. Having expressly provided for those remedies for state officials but not for private actors, the Nevada legislature expressed its intent to permit victims of consumer fraud to recover damages, but placed enforcement of Nevada deceptive practices law through injunctions and other equitable remedies in the hands of state officials.

///

8

Accordingly, the Court will grant Defendant Del Monte's motion to dismiss Plaintiff's request for injunctive and other equitable relief under the NDTPA. However, Plaintiff may proceed on her NDTPA claim for damages, costs, and attorney's fees. Additionally, this ruling does not preclude Plaintiff from seeking injunctive or equitable relief on her other claims.

**D. Unjust Enrichment**

Defendants argue Plaintiff has failed to state a claim for unjust enrichment because the Complaint alleges an adequate remedy at law; therefore Plaintiff may not pursue an equitable remedy. Additionally, Defendants argue the claim fails on the merits because Defendants did not retain a benefit where the product recall permitted Plaintiff to return the product for a refund of the purchase price. Plaintiff argues she can plead in the alternative and thus dismissal is inappropriate. On the merits, Plaintiff argues the recall notice does not negate any element of her unjust enrichment claim because the recall was for products containing contaminated ingredients from China, which are not coextensive with the mislabeled but uncontaminated products.

Under Nevada law, unjust enrichment is "the unjust retention . . . of money or property of another against the fundamental principles of justice or equity and good conscience." Asphalt Prods. Corp. v. All Star Ready Mix, Inc., 898 P.2d 699, 701 (Nev. 1995) (quotations omitted). Nevada recognizes the general rule that equitable remedies are not available where the plaintiff has a full and adequate remedy at law. State v. Second Judicial Dist. Court in & for Washoe County, 241 P. 317, 322 (Nev. 1925).

Federal Rule of Civil Procedure 8(e)(2) provides that a party may state claims alternately, and may "state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds." The liberal policy reflected in Rule 8(e)(2) instructs courts not to construe a pleading "'as an admission against another alternative or inconsistent pleading in the same case.'" McCalden v. Cal.

Library Ass'n, 955 F.2d 1214, 1219 (9th Cir. 1990) (quoting Molsbergen v. United States, 757 F.2d 1016, 1019 (9th Cir. 1985)).  Thus, although a plaintiff may not recover on both theories, "a plaintiff may claim . . . remedies as alternatives, leaving the ultimate election for the court."  E.H. Boly & Son, Inc. v. Schneider, 525 F.2d 20, 23 n.3 (9th Cir. 1975); see also Hubbard Bus. Plaza v. Lincoln Liberty Life Ins. Co., 596 F. Supp. 344, 347 (D. Nev. 1984) (stating a "claimant is entitled to introduce his evidence in support of all his claims for relief; if he doesn't make an election among them, the trier of fact decides which, if any, to sustain.").

The Court will not dismiss Plaintiff's unjust enrichment claim even though Plaintiff also has alleged claims for legal relief.  Under Rule 8(e)(2), Plaintiff may plead the unjust enrichment claim in the alternative to her legal claims.

The Court also will not dismiss the claim on the merits.  Defendants argue they did not "retain" a benefit because, pursuant to the recall, Plaintiff could have returned her pet food for a refund.  However, Plaintiff's claim potentially encompasses more than the contaminated pet food recalled in late 2006 and early 2007.  Rather, Plaintiff's claim relates to all Ol' Roy pet food products Defendants labeled as "Made in USA" which allegedly were manufactured in whole or in part in China, whether subject to the recall or not.  The Court therefore will deny Defendants' motion to dismiss Plaintiff's unjust enrichment claim.

**E.  Law of Other Jurisdictions**

Plaintiff's Complaint seeks to assert claims on behalf of a nationwide class and alleges all states' laws are substantively similar in that all would prohibit deceptive representations of a product's geographic origin.  (Compl. at 12.)  The Complaint specifically refers to the laws of Delaware, California, Arkansas, and Alabama, in addition to Nevada.  (Id. at 12-13.)  Defendants argue Plaintiff has failed to state a claim for deceptive trade practices under the statutory law of states other than Nevada because she

has failed to plead facts showing these states have any connection to Plaintiff's purchase of pet food in Nevada. Defendants also argue Plaintiff has failed to show Nevada law can apply to potential class members who purchased the pet food outside Nevada. Plaintiff responds that because each state's law prohibits the use of deceptive representations of geographic origin, there is no conflict of law and no obstacle to using Nevada law, or, alternatively, the law of Defendants' home states, for a nationwide class. Additionally, Plaintiff contends this issue relates to class manageability and should not be decided on a motion to dismiss.

Plaintiff's Complaint seeks to initiate a nationwide class action which would apply relevant state deceptive practices laws to class members' claims. Which law to apply to which class members is a question suited for determination at the class certification stage. Variances in applicable state laws may make class litigation unmanageable or defeat the predominance of common issues necessary for class certification. See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022-23 (9th Cir. 1998) (considering the effect of variations in state law on the predominance of common issues for class certification); see also In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 529 (3d Cir. 2004) (instructing district courts to consider variations in state laws in evaluating manageability of class litigation); In re Bridgestone/Firestone, Inc., 288 F.3d 1012, 1018 (7th Cir. 2002) (finding a proposed nationwide class unmanageable because the claims would have to be adjudicated under the laws of many different jurisdictions). Such considerations are premature at this stage, where Plaintiff has not yet moved for certification of her proposed nationwide class. The Court therefore will deny Defendants' motion to dismiss on this basis, without prejudice to renew these arguments at the class certification stage.

### F. Packaging Was Not Deceptive

Defendant Menu Foods argues that because the pet food was manufactured in the United States, the packaging was not deceptive. The Complaint, however, alleges the pet

11

food was "manufactured either in whole or in part, in China."  (Compl. at ¶ 5.)  At the

motion to dismiss stage, the Court must take Plaintiff's allegations as true.  Defendants'

argument raises a factual dispute not appropriate for resolution in deciding a motion to

dismiss.  The Court therefore will deny Defendant Menu Foods' motion to dismiss on this

basis.

### G.  Pleading Fraud With Particularity

Defendant Menu Foods argues Plaintiff failed to plead her fraud claim with

particularity by failing to specify each Defendant's alleged role in the fraudulent scheme.

Plaintiff responds that the Complaint adequately alleges fraud, and, to the extent it does not,

the Court should apply a relaxed pleading standard because information detailing the

precise role each Defendant played is within Defendants' exclusive control.  Plaintiff

requests leave to amend should the Court grant Defendants' motion to dismiss.

Federal Rule of Civil Procedure 9(b) requires a plaintiff alleging fraud to state

with particularity in the complaint the circumstances constituting fraud.  Fed. R. Civ. P.

9(b).  To satisfy this burden, the complaint "'must set forth more than the neutral facts

necessary to identify the transaction.'"  Yourish v. Cal. Amplifier, 191 F.3d 983, 993 (9th

Cir. 1999) (footnote omitted) (quoting In re GlenFed Sec. Litig., 42 F.3d 1541, 1548 (9th

Cir. 1994) (en banc)).  The United States Court of Appeals for the Ninth Circuit has defined

"neutral facts" to mean the "'time, place, and content of an alleged misrepresentation.'"  Id.

at 993 n.10 (quoting GlenFed, 42 F.3d at 1547-48).  In addition to the neutral facts, a

plaintiff also must explain what is false about a statement and why it is false.  Id. at 993.

"[M]ere conclusory allegations of fraud are insufficient."  Moore v. Kayport Package Exp.,

Inc., 885 F.2d 531, 540 (9th Cir. 1989).

A complaint does not satisfy Rule 9(b) where it "merely lump[s] multiple

defendants together."  Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007).

Rather, when suing more than one defendant, the complaint's allegations must differentiate

among the defendants and inform each defendant separately of the allegations surrounding

his alleged participation in the fraud.  Id.  "In the context of a fraud suit involving multiple

defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[ ] in the

alleged fraudulent scheme.'"  Id. at 765 (quoting Moore, 885 F.2d at 541).  However, courts

must not "make Rule 9(b) carry more weight than it was meant to bear."  GlenFed, 42 F.3d

at 1554.  So long as the complaint sufficiently describes the circumstances of the alleged

fraud so that the defendant adequately is able to respond, the complaint meets the

particularity requirement of Rule 9(b).  Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir.

1997).

Plaintiff's Complaint alleges the time, place, and content of the alleged

misrepresentations as the labels of specified Ol' Roy brand pet products labeled as "Made

in USA" prior to March 16, 2007.  The Complaint also identifies the content of the alleged

misrepresentation as the labeling of the Ol' Roy products as "Made in USA" in capital

letters on the product packaging.  Finally, Plaintiff's Complaint identifies why this

statement is false by alleging that in fact the pet food contained components manufactured

in whole or in part outside the United States, and despite knowing the source of these

components was outside the United States, Defendants nevertheless labeled the pet food

"Made in USA."

The Complaint does not lump Defendants together or make blanket allegations

referring only to "defendants" as a group.  Rather, the Complaint identifies each Defendant

separately by name and alleges Defendants Menu Foods, Del Monte, and Sunshine Mills

"each participated in the packaging or labeling of different Ol' Roy brand pet food

products," and "participated with Wal-Mart in the fraudulent labeling of Ol' Roy pet food

products."  (Compl. at ¶ 6.)  With respect to Defendant ChemNutra, the Complaint alleges

ChemNutra imported wheat gluten manufactured in China to be used as an ingredient in the

Ol' Roy pet food.  (Id.)  The Complaint also alleges ChemNutra "participated in the scheme

and practice of labeling the Ol' Roy brand pet food products as 'Made in USA' and/or were responsible for the mislabeling of the Ol' Roy brand pet food products as 'Made in USA.'" (Id.)

The Complaint contains specific allegations as to each Defendant and identifies the neutral facts of the alleged fraud as well as allegations explaining why the alleged misstatements are false. The Complaint's allegations are sufficiently particular to permit Defendants to respond adequately, and the Court therefore will deny Defendants' motion to dismiss for failure to plead fraud with particularity.

**III. CONCLUSION**

IT IS THEREFORE ORDERED that Defendant Del Monte Foods Company's Partial Motion to Dismiss (Doc. #9) is hereby GRANTED in part and DENIED in part. The motion is granted with respect to Plaintiff's request for injunctive and other equitable relief under the NDTPA. The motion is denied in all other respects.

IT IS FURTHER ORDERED that Defendant Sunshine Mills, Inc.'s Joinder in Del Monte's Partial Motion to Dismiss (Doc. #19) is hereby GRANTED in part and DENIED in part. The motion is granted with respect to Plaintiff's request for injunctive and other equitable relief under the NDTPA. The motion is denied in all other respects.

IT IS FURTHER ORDERED that Defendant Menu Foods, Inc.'s Motion to Dismiss (Doc. #18) is hereby DENIED.

IT IS FURTHER ORDERED that Defendant ChemNutra, Inc.'s Joinder to Menu Foods, Inc.'s Motion to Dismiss (Doc. #21) is hereby DENIED.

DATED:  October 12, 2007

PHILIP M. PRO
United States District Judge

14



**EXHIBIT #4**

1  **BLUMENTHAL & NORDREHAUG**
   Norman B. Blumenthal (State Bar #068687)
2     Kyle R. Nordrehaug (State Bar #205975)
   Aparajit Bhowmik (State Bar #248066)
3  2255 Calle Clara
La Jolla, CA 92037
4  Telephone: (858)551-1223
Facsimile: (858) 551-1232
5
Attorneys for Plaintiffs
6

7

8

9            **UNITED STATES DISTRICT COURT**

10        **SOUTHERN DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| 12 ROBERT ADAM KENNEDY, an individual, on behalf of himself, and on behalf of all persons similarly situated, | CASE No. **07 CV 1082  H (RBB)** |
| 13 | <u>CLASS ACTION</u> |
| 14        Plaintiff, | |
| 15 vs. | FIRST AMENDED COMPLAINT FOR: |
| 16 NATURAL BALANCE PET FOODS, INC., a California corporation, | (1) VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT (CIVIL CODE §1770, *et seq.*, and |
| 17 | |
| 18        Defendant. | (2) UNFAIR COMPETITION IN VIOLATION OF CAL. BUS. & PROF. CODE § 17200 *et seq.*, |
| 19 | |
| 20 | DEMAND FOR A JURY TRIAL |
| 21 | *[Filed in Accordance with Order of August 8, 2007]* |

22

23

24

25

26

27                 1

28            FIRST AMENDED COMPLAINT

**INTRODUCTION**

1.     COMES NOW, Plaintiff Robert Adam Kennedy ("Plaintiff"), individually and on behalf of all others similarly situated, bring this action as a class action against Defendant NATURAL BALANCE PET FOODS, INC. (hereinafter collectively referred to as "DEFENDANT"), for violations of the Consumer Legal Remedies Act  and for Unfair Competition.  Plaintiff alleges, based upon information and belief, except where otherwise stated or with respect to matters within his own personal knowledge, as follows:

**NATURE OF THE ACTION**

2.     The instant Class Action Complaint involves a scheme by the DEFENDANT through which Natural Balance brand pet food products were expressly sold to consumers as "Made in the USA," when in fact components of the Natural Balance brand pet food products were made and/or manufactured in China.  Plaintiff seeks restitution for all consumers throughout the United States who purchased "Natural Balance" brand pet food products which represents on the product label to have been "Made in the USA" during the applicable Class Period.  The Natural Balance brand pet food products which are the subject of this suit are the following specific products:

         a. Venison and Brown Rice Dry Dog Formula,

         b. Venison and Brown Rice Canned Dog Food

         c. Venison and Brown Rice Formula Dog Treats

         d. Venison and Green Pea Dry Cat Formula

In addition, there may be other Natural Balance brand pet food products that were similarly labeled as "Made in the USA" but contained components that were manufactured and imported from outside of the United States.  Plaintiff will therefore amend to list any additional Natural Balance brand pet food products which were sold as "Made in the USA" but contained components that were imported from outside the United States as such additional Natural Balance brand pet food products are identified through discovery.

3.     Central to the DEFENDANT's marketing of certain of their products is the

2

1  representation and designation that such products were and are "Made in the USA."

2  DEFENDANT packages these products with the designation on the label or packaging, in capital

3  and bold lettering, that the products were "Made in the USA." Studies show that the "Made in

4  the USA" is a substantial factor in consumer purchasing decisions. Moreover, in the context of

5  food products, the designation that the products were "Made in the USA" becomes a central and

6  primary concern because of concerns about the health and safety of the pet and the differences in

7  health and safety procedures and regulations in foreign countries, especially China.

8      4.    All of the pet food products under the brand name "Natural Balance" sold to

9  consumers in California and nationwide have substantially the same product label. On each

10  package of Natural Balance pet food, the label uniformly represents that the product was "Made

11  in the USA" in capital letters. True and correct exemplar copy of an Natural Balance pet food

12  label attached hereto as <u>Exhibit #1</u>, evidencing the uniform representations regarding geographic

13  origin of the product. All of the Natural Balance pet food sold contains identical or substantively

14  similar representations as to the geographic origin of the product being "Made in the USA."

15      5.    At all relevant times, Natural Balance brand pet foods were not "Made in the

16  USA" as falsely advertised, but instead, were manufactured either in whole or in part, in China.

17  On or after April 17, 2007, as a result of the FDA investigation into these products,

18  DEFENDANT disclosed for the first time that the Natural Balance brand pet food products

19  contained components and/or parts that were manufactured in China.

20      6.    At all relevant times, Defendant NATURAL BALANCE PET FOODS, INC.

21  ("Natural Balance") is the company that participated in the manufacture and/or distribution of an

22  Natural Balance brand pet food product, ratified the designation of the products as "Made in the

23  USA" and were responsible for the false representations to the public that the Natural Balance

24  product was "Made in the USA." Natural Balance ratified and/or participated in the packaging or

25  labeling of Natural Balance brand pet food products, each with the fraudulent representation of

26  geographic origin. Natural Balance knew or exercised conscious disregard for the truth that

27  Natural Balance brand pet food products were not "Made in the USA," but instead, were

28  assembled with one or more components manufactured in China and imported into the United

3

FIRST AMENDED COMPLAINT

1    States. Despite this knowledge, DEFENDANT participated in and controlled the fraudulent

2    labeling of Natural Balance pet food products as "Made in the USA." Natural Balance knew that

3    the fraudulent labeling of Natural Balance brand pet food products as "Made in the USA" would

4    be reasonably relied upon by end consumers. Despite this knowledge, they nevertheless

5    participated in fraudulent labeling of Natural Balance brand pet food products, distributing

6    Natural Balance products to retail stores for the intended purpose of sales to the consumers in

7    California and nationwide, without any reasonable grounds to believe that the products were

8    "Made in the USA."

9        7.    At all relevant times, Wilbur-Ellis imported the manufactured rice protein

10    component used in Natural Balance brand pet food products from China and supplying the same

11    for use in the Natural Balance brand pet food products. The Chinese component(s) imported by

12    Wilbur-Ellis was actually used in the Natural Balance brand pet food products. Because Wilbur-

13    Ellis imported the manufactured rice protein component from China, Wilbur-Ellis labeled the

14    components as made in China and supplied the same to DEFENDANT and/or DEFENDANT's

15    agent for inclusion in the Natural Balance brand pet food products designated as "Made in the

16    USA." After the delivery of the Chinese component(s), the designation of China as the country

17    of origin for the component was changed by DEFENDANT or DEFENDANT's agent to read

18    "Made in the USA" on the face of the finished products.

19        8.    Under the federal regulations established the Federal Trade Commission, for a

20    product to be called "Made in the USA," the product must be "all or virtually all" made in the

21    U.S." The term "United States," includes the 50 states, the District of Columbia, and the U.S.

22    territories and possessions. Under this standard, "All or virtually all" means that "all significant

23    parts and processing that go into the product must be of U.S. origin. That is, the product should

24    contain no — or negligible — foreign content." See Federal Trade Commission Statement

25    "Complying with the Made In the USA Standard."

26        9.    The Natural Balance brand pet food products that were imported, manufactured

27    and sold by DEFENDANT were comprised of components  that were manufactured outside of

28    the United States, including but not limited to China. At all relevant times prior to April 17,

4

1  2007, DEFENDANT failed to disclose and concealed the fact that Natural Balance brand pet

2  food products contained ingredients or components that were manufactured and/or made in

3  China and failed to exercise the necessary skill and case required to determine the accuracy of

4  this statement.

5        10.     Contrary to DEFENDANT'S packaging of Natural Balance brand pet food

6  products, (a) the Natural Balance products contain certain components that have been entirely or

7  substantially made, manufactured or produced outside of the United States, and (b) not all, or

8  virtually all, of each Natural Balance product is "Made in the USA." DEFENDANT fraudulently

9  concealed the material facts at issue herein by failing to disclose to the general public the true

10 facts regarding the country of origin designation appearing on the Natural Balance brand pet food

11 products. The disclosure of this information was necessary in order to make the DEFENDANT's

12 representations regarding product origin not misleading. DEFENDANT possesses superior

13 knowledge of the true facts, including knowledge that certain components were imported under a

14 "Made in China" designation, which were not disclosed and which were necessary to discover

15 the wrongful conduct, thereby tolling the running of any applicable statute of limitation.

16       11.     Consumers and users of these products are particularly vulnerable to these

17 deceptive and fraudulent practices. DEFENDANT was in the exclusive possession of

18 information regarding the country of origin for Natural Balance brand pet food products. Most

19 consumers possess very limited knowledge of the likelihood that products claimed to be "Made

20 in the USA" are in fact made, in whole or in part, in foreign countries. This is a material factor

21 in many people's purchasing decisions, as they believe they are buying truly American products

22 and supporting American companies and American jobs. Consumers generally believe that

23 "Made in the USA" products are higher quality products than those of other countries. Unaware

24 of the falsity of the Defendant's country-of-origin claims, Plaintiff and the other members of the

25 Class were fraudulently induced to purchase Natural Balance brand pet food products under false

26 pretenses and at premium prices. State and federal laws are uniformly designed to protect

27 consumers from this type of false advertising and predatory conduct. Defendant's deception of

28 consumers is ongoing and will victimize consumers every day until it is altered by judicial

1  intervention.

2      12.    The country-of-origin designation is especially important and material in the

3  context of food products because of the protections afforded by the Food and Drug

4  Administration, and local health agencies, over food products made in the United States.  For

5  example, food products made in foreign countries can be grown or made using banned pesticides

6  and/or chemicals, which one would not expect to find in Made in the USA food products.

7  Consumers who purchase food products designated with the "Made in the USA" reasonably

8  believe that they are purchasing product which has been grown and made in accordance with

9  state and federal regulations.  These same regulations are not present in foreign countries where

10  unsafe and deleterious chemicals may be used without regulatory oversight.  This concern is

11  evidenced by the 2007 recall of many Natural Balance brand pet food products, which was

12  ordered because of the presence of chemicals which were illegal for use in food in the United

13  States.  This would not have occurred if the products were in fact "Made in the USA" as

14  represented.

15

16                                    **THE PARTIES**

17      13.    The Plaintiff ROBERT ADAM KENNEDY is, and at all time mentioned herein

18  was, a resident of San Diego County, California, who purchased Natural Balance brand pet food

19  products at a Petco  retail store located in California on multiple occasions during the Class

20  Period.  The Plaintiff purchased Natural Balance brand pet food products as a consumer for the

21  household purpose of feeding the product to his beloved pet.

22      14.    Defendant NATURAL BALANCE PET FOODS, INC. is and at all times

23  mentioned herein was, a corporation organized under the laws of California, authorized to

24  conduct business in California, and having a principal place of business in California.  At all

25  relevant times, Natural Balance conducted and conducts substantial business in the State of

26  California and substantially availed and avails itself of the consumer pet food market in

27  California and the United States.

28      15.    Plaintiffs are ignorant of the true names and capacities of the DEFENDANT's

                                         6

1  agents that were in some manner responsible for the acts, omissions, misrepresentations, non-

2  disclosures, deception, violation of statutes, furtherance of the scheme, and other wrongdoing as

3  alleged herein, all of which directly and proximately caused injury to Plaintiff.  Plaintiffs are

4  further informed and believe that said persons or entities, some of them, each of them and/or all

5  or them were the knowing and willful participants in a scheme to promote, market, sell,

6  advertise, or otherwise benefit from the sale of mislabeled Natural Balance brand pet food

7  products and have retained monies obtained from consumers through such conduct.

8

9                                          **JURISDICTION AND VENUE**

10      16.      This Court has jurisdiction over this action, and venue is proper in San Diego

11  County, California, because (1) the Plaintiff's purchases of Natural Balance brand pet food

12  products occurred in San Diego County, (2) the Plaintiff resides in San Diego County, (3) sale of

13  Natural Balance brand pet food products to members of the Class occurred in San Diego County,

14  (4) the DEFENDANT resides in California, and (5) the deceptive trade practices that give rise to

15  this claim emanated from and occurred, in whole or in part, in California.

16

17                                          **CLASS ALLEGATIONS**

18      17.      Plaintiffs bring this action pursuant to Section 382 of the California Code of Civil

19  Procedure and Section 1781 of the California Civil Code as a nationwide class action on his own

20  claim and on behalf of a class defined as:

21          ALL INDIVIDUALS IN THE UNITED STATES WHO PURCHASED ONE OR MORE
            NATURAL BALANCE BRAND PET FOOD PRODUCTS BETWEEN MAY 3, 2003
22          AND APRIL 17, 2007

23  The Natural Balance Brand Pet Food Products which are the subject of this suit are the following

24  specific products:

25              a.  Venison and Brown Rice Dry Dog Formula,

26              b.  Venison and Brown Rice Canned Dog Food

27              c.  Venison and Brown Rice Formula Dog Treats

28              d.  Venison and Green Pea Dry Cat Formula

                                                    7

1    Other Natural Balance brand pet food products may also have been similarly labeled as "Made in
2    the USA" but contained components that were imported from outside of the United States.
3    Plaintiff will therefore amend to list any additional Natural Balance brand pet food products
4    which were sold as "Made in the USA" but contained components that were imported from
5    outside the United States as such additional Natural Balance brand pet food products are
6    identified through discovery.  Excluded from this Class are those specific purchases of Natural
7    Balance products for which a full refund was paid to the consumer.  Also excluded from the
8    Class are Defendant, any parent, subsidiary of affiliate of Defendant, and the officers, directors,
9    and employees of Defendant, and any judicial officer who may preside over this cause of action.

10          18.     The requirements for maintaining this action as a class action are satisfied in that:

11          a.     It is impracticable to bring all members of the Class before the Court.
12    Plaintiff estimates that there are thousands of Class Members geographically spread throughout
13    California and throughout the United States.  Attempting to join and name each Class member as
14    a co-plaintiff would be unreasonable and impracticable.

15          b.     There are questions of law and fact common to the Class, which are
16    identical for each member of the Class and which predominate over the questions affecting the
17    individual Class members, if any.  Among these common questions of law and fact are:

18                      (i)     Whether DEFENDANT made deceptive representations or
19                              designations of geographic origin in connection with Natural
20                              Balance brand pet food products;
21                      (ii)    Whether the representations or designations of geographic origin in
22                              connection with Natural Balance brand pet food products violated
23                              15 U.S.C. §45a and/or Cal. Bus. & Prof. Code § 17533.7;
24                      (iii)   Whether Natural Balance brand pet food products were represented
25                              on the package labeling to have been "Made in the USA";
26                      (iv)    Whether all, or virtually all, of the Natural Balance brand pet food
27                              products were "Made in the USA";
28

8

FIRST AMENDED COMPLAINT

1     (v)  Whether DEFENDANT concealed the true origin of Natural

2         Balance brand pet food products and omitted the fact that Natural

3         Balance brand pet food products contained components that were

4         manufactured and made, in whole or in part, outside the United

5         States;

6     (vi)  Whether DEFENDANT knew or should have known that Natural

7         Balance brand pet food products contained parts or components

8         that were manufactured and made, in whole or in part, outside the

9         United States;

10     (vii)  Whether DEFENDANT is continuing to sell Natural Balance

11         products as "Made in the USA"

12     (viii) Whether the members of the Class sustained injury as a result of

13         the DEFENDANT's conduct;

14     (ix)  Whether DEFENDANT  unfairly or unlawfully received and/or

15         retained revenue acquired through the scheme alleged herein;

16     (x)  Whether the DEFENDANT engaged in a uniform corporate policy

17         of marketing Natural Balance brand pet food products as "Made in

18         the USA"; and/or,

19     (xi)  Whether the applicable statute of limitations was tolled by virtue of

20         DEFENDANT's concealment and non-disclosure of material facts;

21   c.  The claims of the representative Plaintiff are typical of the claims of the

22 Class in that the Plaintiff purchased Natural Balance brand pet food products between April 26,

23 2003 and April 17, 2007.  The claims of both the named Plaintiff and the claims of all other

24 Class members result from Defendant's actions in marketing and/or labeling Natural Balance

25 brand pet food products as "Made in the USA" which were in fact made, manufactured or

26 produced with certain components made outside of the United States.

27   d.  The claims of the representative Plaintiff will fairly and adequately protect

28 the interests of the Class.  The Class interests are coincident with, and not antagonistic to, those

of the Plaintiff. Furthermore, Plaintiff have retained and are represented by experienced class action counsel.

19.     In this action, Plaintiff and the Class seek all relief authorized under California law for which class-wide relief is available, disgorgement, restitution and reasonable attorneys' fees and costs incurred in the prosecution of this action. The law of California is uniformly applicable to all members of the Class because the Defendant resides in California and the unlawful conduct emanated from California. Therefore, California has a strong interest in preventing and providing relief for fraudulent and unlawful conduct emanating from California. Further, there can be no manageability problems due to variations in state laws or choice of law provisions, because the representations of "Made in the USA" were uniform and systematic and the laws of the United States and of all 50 states prohibit and make unlawful the designation of "Made in the USA" on a product that is not entirely made in the United States. Further, the deceptive or false designation of geographic origin is actionable in all 50 states, and there are no relevant variations in the law of the states which impact the claims asserted herein. The performance of applicable choice of law or conflict of law analysis does not render the class unmanageable, moreover, any manageability issue which may arise can be handled through the use of a subclass.

20.     A class action is superior to any other available methods for the fair and efficient adjudication of this controversy. The amount of each individual claim is too small to warrant individual litigation. Even if any group of class members itself could afford individual litigation, such a multitude of individual litigation would be unduly burdensome to the courts in which the individual litigation would proceed. The class action device is preferable to individual litigation because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single court. Finally, class wide litigation will insure that wrong doers do not retain the ill-gotten gains acquired through their wrongful conduct.

21.     A certified Class for injunctive relief is appropriate because DEFENDANT has uniformly acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the Class as a whole. Conjunctively, or

FIRST AMENDED COMPLAINT

1  alternatively, a class certified for restitution is also appropriate. The common questions of law

2  and fact predominate over individual questions because all injuries sustained by any member of

3  the Class arise out of the singular conduct of the defendant in uniformly providing deceptive

4  representations regarding the Natural Balance brand pet food products and selling such products

5  to the Class through deceptive and unlawful representations regarding the geographic origin of

6  the products.

7

8                                        **CLAIM ONE**

9            **VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT**
                        **(CIVIL CODE § 1770 *et seq.*)**

10      22.     Plaintiff repeats, incorporates by reference and realleges the allegations contained

11  in Paragraphs 1-21 above as if fully set forth herein.

12      23.     Plaintiff brings this claim under California consumer fraud laws, particularly

13  Civil Code § 1770, *et seq.*, on behalf of himself and the Class who purchased Natural Balance

14  brand pet food products and who were thus uniformly subject to DEFENDANT's above-

15  described conduct. The laws of every other state are identical to and/or substantively similar to

16  California consumer fraud laws in that federal law and the laws of every state prohibit the use of

17  deceptive representations regarding the geographic origin of products, and every state similarly

18  authorizes an action by consumers for such conduct. In addition, the laws of the state of

19  California can be properly applied to the conduct of DEFENDANT and to all claims arising

20  therefrom.

21      24.     The Natural Balance brand pet food products, as described above, were purchased

22  by the Plaintiff and by other consumers similarly situated primarily for personal, family, or

23  household purposes. Thousands of units of Natural Balance brand pet food products were sold in

24  the United States between April 26, 2003 and April 17, 2007.

25      25.     DEFENDANT violated its statutory duty by orchestrating, controlling and

26  participating in an elaborate scheme wherein DEFENDANT deliberately mislabeled products or

27  caused products to be mislabeled as to their geographic origin for the purpose of deceiving

28

11

1    consumers, increasing sales and reducing costs. DEFENDANT also acted deceptively and

2    unfairly because all of the Natural Balance brand pet food products had the deceptive appearance

3    of a product that was "Made in the USA."

4         26.    DEFENDANT violated its duty under the aforementioned statutes, including

5    but not limited to, Civil Code § 1770(a)(4), by, among other things, making false representations

6    and/or designations as to the geographic origin of the Natural Balance brand pet food products.

7    This conduct violates California law, and the law of every other state, all of which laws are

8    identical in prohibiting deceptive representations or designations of geographic origin in the

9    marketing and sales of goods.

10        27.    The DEFENDANT's actions as alleged herein were unfair and deceptive and

11   constituted the concealment, suppression and omission of material facts with the intent that

12   Plaintiffs and the Class would rely upon the false statement through the concealment,

13   suppression and omission of such material facts, all in violation of the applicable Consumer

14   Legal Remedies Act.

15        28.    Each Natural Balance brand pet food product represented to the Plaintiff and

16   every other member of the Class, at the time of purchase, that the Natural Balance brand pet food

17   product was "Made in the USA" without qualification. Contrary to such representation, each

18   Natural Balance brand pet food product purchased by the Plaintiff and by every other member of

19   the Class uniformly contained component(s) that were made and/or manufactured outside of the

20   United States.

21        29.    These representations were made by DEFENDANT to Plaintiff and the Class in

22   prominent writing on the face and label of each Natural Balance brand pet food product

23   purchased by the Plaintiff and by every other member of the Class, at the time of their respective

24   purchases. Because the true facts concerning the use component(s) that were made and/or

25   manufactured outside of the United States were concealed by DEFENDANT and never disclosed

26   until after April 17, 2007, the true facts concerning the geographic origin of the products were

27   not and could not have been known to Plaintiff or any other member of the Class.

28   DEFENDANT continues to unlawfully sell Natural Balance products as "Made in the USA."

FIRST AMENDED COMPLAINT

30.    When making the representations on the label that the products were "Made in the USA", DEFENDANT intended that the representations be relied upon by all consumers in making their purchase and provided no information to the contrary.

31.    All other states have consumer fraud statutes which are substantially similar to the California Consumer Legal Remedies Act.  To the extent that the California Consumer Legal Remedies Act my be found not to protect the residents of other states, the consumer fraud acts of the Defendant's forum state could be applied to all members of the Class.

32.    Plaintiff was injured by the many violations of the Consumer Legal Remedies Act, and parallel sister state statutes.  As a direct and proximate result of the acts and practices alleged above, members of the Class who purchased the subject Natural Balance brand pet food products from DEFENDANT, including the Plaintiff, lost monies in a sum currently unknown but subject to proof at the time of trial.  This Court is empowered to, and should, order restitution to all persons from whom the DEFENDANT deceptively, unfairly and/or unlawfully took money in order to accomplish complete justice.  Plaintiff seeks injunctive relief to enjoin further violations of the Consumer Legal Remedies Act.

## CLAIM TWO

### FOR UNFAIR COMPETITION IN VIOLATION OF

### BUSINESS & PROFESSIONS CODE §17200, *et seq.* and § 17500, *et seq.*

33.    Plaintiff alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 33 above, as if set forth at this point.

34.    California law defines unfair competition to include any "unfair," "unlawful," or "fraudulent" business act or practice.  California Business & Professions Code § 17200.  Unlawful business acts are those which are in violation of federal, state, county, or municipal statutes or codes, as well as federal and state regulations.

35.    The acts, practices, misrepresentations and omissions of Defendant violated California Business & Professions Code § 17533.7, which makes it unlawful for any person to sell in California products which contain the statement "Made in USA," "Made in America,"

13

FIRST AMENDED COMPLAINT

1  "USA" or similar words when the merchandise or any part thereof has been substantially made,

2  manufactured or produced outside the United States. As alleged above, during the relevant time

3  period, the subject Natural Balance brand pet food products were unlawfully labeled "Made in

4  the USA," or the equivalent, because certain components of such products were substantially

5  made, manufactured or produced outside the United States. This conduct also violates federal

6  law, and in particular, 15 U.S.C. § 45a.

7          36.    The acts, practices, misrepresentations and omissions of DEFENDANT were

8  intended to result and did result in the sale of the subject Natural Balance brand pet food

9  products to the consuming public and violated and continue to violate the Consumers Legal

10 Remedies Act, California Civil Code § 1750, et seq., by violating at least Civil Code §

11 1770(a)(2), (3), (4), (5), (7), (9) and (16). Defendant has misrepresented the source of the subject

12 "Made in the USA" pet food products and have misrepresented the affiliation, connection, and

13 association of such "Made in the USA"pet food products with America. Defendant has

14 represented that the subject "Made in the USA" pet food products have the characteristic of being

15 made in America and the benefits of American-made products, which they did not have.

16 Defendant has represented that the subject "Made in the USA" Natural Balance brand pet food

17 products had the standard, quality, and grade of American-made products, which they did not

18 have. Defendant has advertised, marketed and/or labeled the subject "Made in the USA" pet

19 food products as made in America with the intent not to sell them as so advertised.

20         37.    The acts, practices, misrepresentations and omissions of DEFENDANT violated

21 California Business & Professions Code § 17500, et seq. because DEFENDANT's conduct was

22 intended to, and did, induce the sale of misrepresented pet food products to the consuming

23 public. DEFENDANT caused to be made, published, disseminated, circulated or placed before

24 the public, advertisements and/or packaging concerning the Natural Balance pet food products at

25 issue which contained U.S. origin statements which were untrue, deceptive, misleading, or

26 materially incomplete, which were known, or which by the exercise of reasonable care should

27 have been known, by Defendant to be untrue, deceptive, misleading, or materially incomplete, as

28 part of a plan or scheme with the intent, design or purpose not to sell such products as advertised.

14

---

FIRST AMENDED COMPLAINT

1    38.    DEFENDANT's actions constituted unfair business acts and practices by

2 misrepresenting the origin of the subject Natural Balance products containing certain components

3 not of U.S. origin, which was likely to mislead and did mislead the general public.  Defendant

4 have unfairly taken advantage of American consumers' favorable reaction to products labeled

5 Made in America, given the desire of many American consumers to support fellow American

6 workers and job growth in the United States, and their ignorance of the fact that the Defendant

7 has mislabeled its products as made in America.  The justification for selling the products as

8 being "Made in the USA" absent the critical disclosures detailed above is outweighed by the

9 gravity of the harm the sale of such products could cause, particularly considering the alternatives

10 available to Defendant, such as truthfully informing the public.  Such conduct offends public

11 policy and causes substantial injury to consumers.

12    39.    DEFENDANT maintained an unfair business advantage over its competitors who

13 would otherwise be forced to sell products made in the United States at much lower profit

14 margins, if not at a loss, in order to compete with Defendant in the marketplace.

15    40.    DEFENDANT's actions constitute fraudulent business acts and/or practices by

16 misrepresenting that the subject Natural Balance pet food products were entirely made in

17 America.  Members of the public were likely to be misled, and have been misled, to believe the

18 subject products marketed and/or labeled by Defendant as "Made in USA" were, in fact,

19 American made, when certain components of those products were actually purchased,

20 manufactured or developed in foreign countries, including China.  Such business acts and

21 practices are fraudulent and likely to deceive consumers.

22    41.    Plaintiff, as a representative of a class of persons with common or general interest,

23 is entitled to bring an action to enjoin DEFENDANT's wrongful practices and to obtain

24 restitution for the monies acquired by DEFENDANT through such wrongful practices.  Plaintiff

25 is authorized to bring such action on behalf of the class of people with common or general

26 interest, pursuant to California Business & Professions Code § 17200, et. seq.

27    42.    As a direct and proximate result of DEFENDANT's acts of unfair competition in

28 violation of the California law, Plaintiff individually lost money, and the members of the public

who have purchased the subject products have lost money in sums exceeding the jurisdictional minimum of this Court, to be proven at the time of trial. Plaintiff requests this Court order, as it is empowered to order, restitution to all persons from whom Defendant deceptively, unfairly and/or unlawfully took money through such purchases.

43.    DEFENDANT's unfair competition in violation of California law presents a continuing threat to members of the general public in that Defendant is continuing, and will continue, unless enjoined, to commit unlawful, unfair, and/or fraudulent business acts or practices. Plaintiff requests that this Court order, as it is empowered to order, a preliminary and/or permanent injunction against such acts and practices.

## PRAYER

WHEREFORE, Plaintiff respectfully request that the Court enter judgment in their favor and against DEFENDANT as follows:

1. Certify this action to proceed as a class action;

2. Award restitution in an amount to be proven at trial;

3. Order declaratory relief finding that Defendant has engaged in unlawful, unfair and/or deceptive business practices.

4. Order injunctive relief enjoining Defendant and its officers, directors, agents, distributors, servants, employees, attorneys, and all others in active concert or participation with Defendant, or any of them, jointly and severally, during the pendency of this action and permanently thereafter from falsely and unlawfully representing the origin of the products as "Made in the USA";

5. Award pre-judgment and post-judgment interest at the maximum rate allowed by law and costs of suit;

6. Award Plaintiff attorneys' fees and all litigation expenses as allowable by law. Alternatively, for all attorneys' fees and all litigation expenses to be awarded pursuant to the substantial benefit doctrine or other authority requiring Defendant to pay Plaintiff's attorneys'

16

1    fees and litigation expenses.  Alternatively, for attorneys' fees and other litigation expenses to be

2    paid under the common fund doctrine or any other provision of law; and

3         7.  Order such other and further relief as the Court may deem just and proper.

4

5    Dated:  <u>August 24, 2007</u>              **BLUMENTHAL & NORDREHAUG**

6

7                       By:       <u>/s/ Norman Blumenthal</u>

8                                Norman B. Blumenthal, Esq.
                                   Attorneys for Plaintiff

9

   K:\D\NBB\Kennedy v. Natural Balance\Complaint-Pet Food-Amended.wpd

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17

---

FIRST AMENDED COMPLAINT

1

2                          **DEMAND FOR JURY TRIAL**

3
        PLAINTIFF demands jury trial on issues triable to a jury.
4

5   Dated: August 24, 2007                **BLUMENTHAL & NORDREHAUG**

6

7                                  By:      /s/ Norman Blumenthal
                                          Norman B. Blumenthal, Esq.
8                                         Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT


**EXHIBIT #5**

1

2

3

4

5

6

7

8                      **UNITED STATES DISTRICT COURT**

9                      **SOUTHERN DISTRICT OF CALIFORNIA**

10

11    ROBERT ADAM KENNEDY, an                    CASE NO. 07-CV-1082 H
      individual, on behalf of himself, and       (RBB)
12    on behalf of all persons similarly
      situated,                                    ORDER:
13                                                 (1) GRANTING IN PART AND
                                 Plaintiff,        DENYING IN PART
14         vs.                                     NATURAL BALANCE'S
                                                   MOTION TO DISMISS;
15                                                 (2) GRANTING IN PART AND
                                                   DENYING IN PART WILBUR-
16    NATURAL BALANCE PET FOODS,                   ELLIS' MOTION TO DISMISS
      INC., a California corporation;
17    WILBUR-ELLIS COMPANY, a
      California corporation; and DOES 2
18    through 100, inclusive,

19                                Defendants.
      _____

20         Plaintiff, Robert Adam Kennedy, initially filed suit in state court on May 2,

21    2007.  On June 13, 2007, Defendant Wilbur-Ellis Company removed the case to this

22    Court. (Doc. No. 1.)  On July 2, 2007, Defendant Natural Balance Pet Foods, Inc. filed

23    a motion to dismiss.  (Doc. Nos. 7-8.)  Also on July 2, 2007, Defendant Wilbur-Ellis

24    filed a motion to dismiss.  (Doc. No. 10.)  Additionally, Wilbur-Ellis filed a notice of

25    joinder in Natural Balance's motion on July 10, 2007.  (Doc. No. 11.)

26         Plaintiff filed a response in opposition to Natural Balance's motion on July 23,

27    2007.  (Doc. No. 12.)  Natural Balance filed a reply in support of its motion on July 30,

28    2007.  (Doc. No. 15.)  Plaintiff filed a response in opposition to Wilbur-Ellis' motion

07cv1082

1   on July 23, 2007.  (Doc. No. 13.)  Wilbur-Ellis filed a reply in support of its motion on

2   July 30, 2007.  (Doc. No. 14.)

3       For the reasons stated below, the Court **GRANTS in part and DENIES in part**

4   Natural Balance's motion to dismiss and **GRANTS in part and DENIES in part**

5   Wilbur-Ellis' motion to dismiss.  The Plaintiff grants the motions without prejudice,

6   and Plaintiff shall file any amended complaint no later than August 27, 2007.

7                                  **Background**

8       According to the complaint, Defendants engaged in a scheme through which

9   several varieties of Natural Balance pet food were sold to consumers with the label

10  "Made in the USA" despite the fact that the products were manufactured either in

11  whole or in part in China.  (Compl. ¶¶ 2-5.)  Plaintiff alleges that Defendants

12  fraudulently concealed the true facts regarding the origin of the pet foods.  (Id. ¶ 10.)

13  Plaintiff alleges that Defendants only disclosed that components of the products came

14  from China on or after April 17, 2007 as a result of an FDA investigation.  (Id. ¶ 5.)

15  According to the complaint, each Defendant company participated in the manufacture

16  and/or distribution of a Natural Balance brand pet food product containing a false

17  representation that the product was "Made in the USA."  (Id. ¶ 6.)

18      Plaintiff alleges that Wilbur-Ellis imported from China the manufactured rice

19  protein ingredient in Natural Balance brand pet foods.  (Id. ¶ 7.)  According to the

20  complaint, Wilbur-Ellis participated in the scheme of marketing and labeling the pet

21  food products or was responsible for the mislabeling of the pet food products.  (Id.)

22      Plaintiff brings his complaint as a class action, and he asserts two claims in the

23  complaint against both Defendants.  First, he brings a claim for violation of the

24  California Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1770 et

25  seq.  Second, Plaintiff brings a claim for unfair competition in violation of California

26  Business and Professions Code § 17200 et seq. and § 17500 et seq. ("UCL").

27                                **Legal Standard**

28      Rule 12(b)(6) permits dismissal of a claim either where that claim lacks a

cognizable legal theory, or where plaintiff alleges insufficient facts to support his theory.  See Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).  In resolving a Rule 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true. See Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). Although a plaintiff need not give "detailed factual allegations," mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action" are not sufficient to survive a motion to dismiss.  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007). Instead, a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level."  Id.

Dismissal for failure to state a claim  upon which relief can be granted is proper if a complaint is vague, conclusory, and fails to set forth any material facts in support of the allegation.  See  N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 583 (9th Cir. 1983).  Furthermore, a court may not "supply essential elements of the claim that were not initially pled."  Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).  If a court finds that a complaint fails to state a claim, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts.  See Doe v. United States, 58 F.3d 494, 497 (9th Cir.1995).

As a general matter, a court may not consider any material beyond the pleadings in deciding a Rule 12(b)(6) motion.  See Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  If the court considers matters outside of the pleadings, the court must treat the motion to dismiss as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure "and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56."  See Fed. R. Civ. P. 12(b); see also Hal Roach Studios, Inc., 896 F.2d at 1555 n.19.

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>Analysis</u>**

Defendants argue for dismissal on several grounds.  First, Defendants contend that the Court should dismiss Plaintiff's CLRA claim because he failed to provide the required notice prior to bringing suit.  Second, Defendants argue that Plaintiff has not stated a claim against them under California's UCL because alleged use of foreign rice protein is insufficient to preclude labeling a product as "Made in the USA."  Finally, Wilbur-Ellis argues that Plaintiff has not, and cannot, plead facts stating a claim under either the CLRA or UCL against it.

**A.    Notice Requirements Under the CLRA**

The CLRA allows individual consumers to bring suit to obtain relief for specified unlawful conduct.  In "an action for damages" under the CLRA, a plaintiff must provide the defendant with written notice at least thirty days prior to bringing suit.  Cal. Civil Code § 1782(a).  The notice must specify the alleged violations, demand correction, and be sent via certified or registered mail.  <u>Id.</u>  In contrast to an action for damages, the CLRA expressly provides that "an action for injunctive relief . . . may be commenced without compliance with" the notice requirements in § 1782(a).  Cal. Civil Code § 1782(d).  Additionally, at least thirty days following commencement of an action for injunctive relief, and after compliance with the notice requirements in § 1782(a), a plaintiff may amend the complaint without leave of court to include a request for damages.  Cal. Civil Code § 1782(d).

Defendants argue that, because Plaintiff seeks damages in his complaint and because he did not provide the required presuit notice, the Court must dismiss Plaintiff's claim under the CLRA.  In opposition, Plaintiff agrees that he cannot seek damages under the CLRA at this time, states that he is not seeking damages under the CLRA, but argues that his requests for injunctive relief and restitution under the CLRA may proceed.

Plaintiff has not connected all of his various prayers for relief to particular claims, and it is unclear what remedies Plaintiff seeks under the CLRA.  Nevertheless,

07cv1082

examining Plaintiff's complaint, he states in general terms that he seeks damages, injunctive relief, and restitution. (Compl. ¶ 2, 4.) In his opposition, however, Plaintiff notes that the prayer for damages was part of boilerplate pleading language and states that he does not seek damages under the CLRA. To the extent the complaint prays for damages under the CLRA, that claim fails for failure to give presuit notice. Courts have reached different conclusions as to whether a premature claim for damages under the CLRA requires dismissal with or without prejudice. Compare Laster v. T-Mobile USA, Inc., 407 F. Supp. 2d 1181, 1195-96 (S.D. Cal. 2005) (describing statutory policy of fostering early settlement of disputes and dismissing CLRA damages claim with prejudice for lack of presuit notice), with Deitz v. Comcast Corp., 2006 WL 3782902, *6-*7 (N.D. Cal. Dec. 21, 2006) (dismissing CLRA damages claim without prejudice where complaint "alluded" to damages). Here, the complaint is unclear as to whether Plaintiff seeks damages under the CLRA. Under the circumstances of this case, the Court dismisses any damages allegation under the CLRA without prejudice.

To the extent the complaint seeks injunctive relief, that claim may proceed in light of § 1782(d). See Kagan v. Gibraltar Sav. & Loan Assoc., 35 Cal. 3d 582, 591 (1984) ("This notice requirement need not be complied with in order to bring an action for injunctive relief.").

As to requests for other equitable relief, such as restitution, however, the CLRA does not specify any presuit notice requirement. In numerous cases California courts have relied on the rule of statutory construction that expression in a statute of certain things necessarily involves the exclusion of other things not expressed. See, e.g., Mut. Life Ins. Co. v. City of Los Angeles, 50 Cal. 3d 402, 410 (1990) (describing this familiar rule of statutory construction encompassed by the Latin phrase *expressio unius est exclusio alterius*); Gilkas v. Zolin, 6 Cal. 4th 841, 852 (1993) (noting the common rule of statutory construction and stating that court may not expand application of a statute beyond that specified by the legislature). Accordingly, this rule of construction counsels against implying a requirement for written presuit notice in suits seeking

1   equitable relief given that the legislature only specified a notice requirement in actions

2   seeking damages.

3          This appropriateness of this interpretation is strengthened by the California

4   legislature's specific enumeration of different types of CLRA actions in California

5   Civil Code § 1781, which distinguishes between actions seeking "damages,"

6   "injunctive relief," and "restitution," and the legislature's specific requirement of notice

7   only in actions "for damages" in § 1782(a).  Additionally, California courts have noted

8   that they have "authority to order restitution as a form of ancillary relief in an

9   injunctive action."  See Fletcher v. Sec. Pac. Nat'l Bank, 23 Cal. 3d 442, 453-54

10  (1979).  Accordingly, absent statutory language requiring presuit notice, the Court

11  declines to imply a notice requirement to Plaintiff's claim for restitution under the

12  CLRA.

13         In sum, to the extent Plaintiff brings a claim under the CLRA for damages, the

14  Court **DISMISSES** that claim without prejudice.  Plaintiff's claim for injunctive relief

15  under the CLRA may proceed.  Finally, absent statutory language to the contrary, the

16  Court declines to dismiss Plaintiff's CLRA claim seeking injunctive relief and

17  restitution for failure to give presuit notice.

18  **B.    Unfair Competition Claims Against Natural Balance**

19         Natural Balance, joined by Wilbur-Ellis, argues that Plaintiff's complaint fails

20  to state a claim under California's UCL arising out of false representations that pet

21  food was "Made in the USA."  According to Defendants, Plaintiff's second claim fails

22  because the alleged foreign components of the pet food are simply foreign-sourced raw

23  ingredients that were not made, manufactured, or produced outside the United States

24  within the meaning of California Business and Professions Code § 17533.7.   In

25  response, Plaintiff contends that Defendants improperly dispute factual allegations, and

26  he argues that, at the motion to dismiss stage, the Court must view the allegations in

27  the complaint in the light most favorable to Plaintiff.

28  / / /

California Business and Profession Code § 17533.7 provides:

> It is unlawful for any person, firm, corporation or association to sell or offer for sale in this State any merchandise on which merchandise or its container there appears the words "Made in U.S.A.," "Made in America," "U.S.A." or similar words when the merchandise or any article, unit, or part thereof, has been entirely or substantially made, manufactured, or produced outside of the United States.

According to the California appellate court, the terms "made" and "manufacture" describe the physical process of turning raw materials into goods. <u>See</u> <u>Colgan v. Leatherman Tool Group, Inc.</u>, 135 Cal. App. 4th 663, 685 (Ct. App. 2006).

Defendants contend that the rice protein identified in the complaint as coming from China is a raw ingredient that was not "made and/or manufactured" within the meaning of § 17533.7. Looking at the allegations in the complaint, however, Plaintiff has sufficiently alleged this claim on this ground. The complaint sufficiently alleges that components of the pet food were "made and/or manufactured" outside of the United States. According to the complaint, one of the foreign components of the pet food was a "manufactured rice protein ingredient." (Compl. ¶ 7.) Additionally, Plaintiff alleges that components of the pet foods were entirely or substantially made, manufactured, or produced outside of the United States. (<u>Id.</u> ¶¶ 9-10.) Although Defendants dispute the underlying facts and characterize the rice protein product as simply a "raw ingredient," the Court must construe all allegations in the light most favorable to Plaintiff. Therefore, Defendants' factual disputes do not provide a ground upon which to dismiss Plaintiff's claim.

Moreover, Defendants argue in the reply that the manufactured rice protein cannot be considered an "article, unit, or part" of the finished pet food product. Without citation to legal authority, Defendants state that ingredients generally do not fit within the statutory definition. At the motion to dismiss stage, however, Plaintiff has sufficiently alleged that a part of the pet food product was manufactured outside of the United States. Additionally, although the parties dispute the applicability of Federal Trade Commission standards concerning whether a product may be labeled

"Made in the USA" to interpretation of § 17533.7, Plaintiff's allegations are sufficient at this stage under both § 17533.7 itself and the federal standards.  Therefore, the Court need not decide whether it may consider the federal standard as a guide in interpreting the California statute.  Defendants may renew their arguments at a later stage of the proceedings.

**C.    Sufficiency of Allegations Against Wilbur-Ellis**

Plaintiff brings claims against Wilbur-Ellis under both the CLRA and the UCL based on labeling of Natural Balance pet food products as "Made in the USA." Wilbur-Ellis contends that it imported the rice protein but had no role in labeling the pet food products at issue.  Further, it argues that Plaintiff's complaint relies on conclusory allegations and fails to state a claim under either the CLRA or UCL.

In support of its argument that it plays no role in the marketing and labeling of Natural Balance pet foods, Wilbur-Ellis attaches a declaration from Joey Herrick, the president of Natural Balance, in which he states that Wilbur-Ellis does not take part in marketing or labeling Natural Balance pet foods.  The Court may not consider Herrick's declaration, however, without converting the motion to dismiss into one for summary judgment.  See Fed. R. Civ. P. 12(b).  At this early stage of the proceedings, the Court declines to convert the motion to dismiss into one for summary judgment and, thus, does not consider the Herrick declaration.

Nevertheless, examining the allegations against Wilbur-Ellis in the complaint, Plaintiff has failed to state a claim under either the CLRA or the UCL.  In particular, the complaint does not contain any factual allegations regarding how Wilbur-Ellis played a role in the marketing or labeling of the Natural Balance brand pet food as "Made in the USA."  Instead, Plaintiff simply alleges in vague and conclusory terms that Wilbur-Ellis "participated in" the manufacturing and labeling of the Natural Balance pet food products.  (See, e.g., Compl. ¶ 6.)  Further, the complaint states that Wilbur-Ellis was "responsible, whole or in part, for importing the manufactured rice protein ingredient in Natural Balance brand pet food products from China and

1    supplying the same for use in the" products.  (Id. ¶ 7.)  While these statements allege
2    that Wilbur-Ellis imported and supplied the rice protein ingredient, they do not connect
3    it to any marketing or labeling decisions.  Accordingly, the allegations are insufficient
4    to state a claim under the CLRA or UCL arising out of the labeling of the pet food
5    products because they are insufficient to put Wilbur-Ellis on notice of the nature of the
6    claims pending against it.  See Fed. R. Civ. P. 8(e).   Plaintiff has not pleaded facts
7    sufficient to "raise a right to relief above the speculative level" as to Wilbur-Ellis.  Bell
8    Atlantic Corp., 127 S. Ct. at 1964.

9        Moreover, Plaintiff alleges in conclusory terms that Wilbur-Ellis participated in
10   a fraudulent scheme to misrepresent the country of origin of the pet food products.
11   (See, e.g., id. ¶¶ 6, 7, 10.)  Under Rule 9(b) of the Federal Rules of Civil Procedure all
12   averments of fraud must state the circumstances constituting fraud with particularity.
13   Rule 9(b)'s particularity requirement applies to state law causes of action.  Vess v.
14   Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003).  Moreover, even in cases
15   in which fraud is not an essential element of a claim, Rule 9(b)'s particularity
16   requirement applies to any averments of fraud.  Id.  Where a plaintiff alleges a uniform
17   course of fraudulent conduct and relies on that conduct as the basis of a claim, the
18   claim "sounds in fraud" and the plaintiff must plead the whole claim with particularity.
19   Id. at 1103-04.  In contrast, in cases in which the plaintiff does not allege a unified
20   course of fraudulent conduct but alleges both fraudulent and non-fraudulent conduct,
21   Rule 9(b)'s heightened pleading standard applies to allegations of fraud but not to the
22   entire claim.  Id. at 1104-05.  If a plaintiff makes averments of fraud in a claim in
23   which fraud is not an element, the court should "disregard the averments of fraud not
24   meeting Rule 9(b)'s standard and then ask whether a claim has been stated."  Id. at
25   1105 (emphasis omitted).  The Ninth Circuit has noted that fraud is not an essential
26   element under either the CLRA or the UCL.  Id.

27       Here, the Court need not determine whether Plaintiff's complaint sounds in fraud
28   such that Rule 9(b) applies to the entire claims, or simply contains some allegations of

1   fraudulent conduct.  To the extent Plaintiff's claims sound in fraud as to Wilbur-Ellis,

2   he has failed to plead those claims with the particularity required by Rule 9(b).  He

3   provides no details whatsoever, but simply states that Wilbur-Ellis acted fraudulently

4   or with fraudulent intent.  See Vess, 317 F.3d at 1106 (any averments of fraud must

5   include the who, what, when, where, and how of the alleged misconduct).  Further,

6   given that fraud is not an essential element of Plaintiff's claims, Plaintiff similarly fails

7   to state a claim under either the CLRA or the UCL against Wilbur-Ellis if the Court

8   disregards the fraud allegations not meeting Rule 9(b)'s requirements.

9       In sum, Plaintiff has failed to allege sufficiently his CLRA and UCL claims

10  against Wilbur-Ellis.  Therefore, the Court **DISMISSES** those claims as to Wilbur-

11  Ellis.  It is not clear, however, that Plaintiff could not sufficiently plead a cause of

12  action against Wilbur-Ellis.  Therefore, the Court grants the motion to dismiss on this

13  ground without prejudice and allows Plaintiff an attempt to amend.  See Doe, 58 F.3d

14  at 497.

15                          **Conclusion**

16      For the reasons discussed, the Court **GRANTS in part** and **DENIES in part**

17  Natural Balance's motion to dismiss.  The Court **DISMISSES** without prejudice any

18  claim for damages under the CLRA.  Further, the Court **GRANTS in part** and

19  **DENIES in part** Wilbur-Ellis' motion to dismiss.  The Court **DISMISSES** without

20  prejudice Plaintiff's claims against Wilbur-Ellis.  Plaintiff shall file any amended

21  complaint no later than August 27, 2007.

22      IT IS SO ORDERED.

23  DATED:  August 7, 2007

24                          _Marilyn L. Huff_
                            _____
25                          MARILYN L. HUFF, District Judge
                            UNITED STATES DISTRICT COURT
26

27  COPIES TO:
    All parties of record.
28

- 10 -                                          07cv1082