UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MEGAN CONNERTON and KIMBERLY MELLO, individually and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. |
| MENU FOODS MIDWEST CORPORATION, MENU FOODS INCOME FUND, MENU FOODS LIMITED, MENU FOODS, INC., MENU FOODS HOLDINGS, INC., THE IAMS COMPANY, NUTRO PRODUCTS, INC., TARGET CORPORATION, CHEMNUTRA INC. and XUZHOU ANYING BIOLOGIC TECHNOLOGY DEVELOPMENT COMPANY LTD. Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) | |

## CLASS ACTION COMPLAINT AND JURY DEMAND

### INTRODUCTION

1.    This is a class action seeking monetary damages and/or other redress for consumers who purchased pet food products designed, manufactured, marketed, distributed, labeled, promoted and/or sold by the Defendants and recalled in or after March 2007 (the "Pet Food").

2.    Plaintiffs and similarly situated persons own pets that either died or suffered kidney failure or other injury as a result of consuming the Pet Food.

3.    The Defendants could have prevented the losses which Plaintiffs and affected Class members sustained as a result of their purchase and use of the Pet Food.

4.     Menu Foods learned of the dangerous nature of the Pet Food well prior to March 16, 2007, but did not announce a recall or provide any public notice of such dangers until that date.

5.     Due to Defendants' conduct, Plaintiffs and affected Class members have experienced as a result of their purchase and use of the Pet Food emotional distress and/or incurred monetary damages, including but not necessarily limited to veterinarian bills, cremation/burial expenses, and pet food costs.

## PARTIES

6.     Plaintiff Megan Connerton is a resident and citizen of the Commonwealth of Massachusetts.

7.     Plaintiff Kimberly Mello is a resident and citizen of the Commonwealth of Massachusetts

8.     Defendant Menu Foods Midwest Corporation is a corporation organized under the laws of the State of Delaware with a principal place of business in Emporia, Kansas.

9.     Defendant Menu Foods Income Fund (the "Fund") is an unincorporated open-ended trust with a principal place of business in Ontario, Canada.

10.     Defendant Menu Foods Limited is a Canadian company with a principal place of business in Ontario, Canada.

11.     Defendant Menu Foods, Inc. is a corporation organized under the laws of the State of New Jersey with a principal place of business in Pennsauken, New Jersey.

12.     Defendant Menu Foods Holdings, Inc. is a corporation organized under the laws of the State of Delaware with a principal place of business located outside the Commonwealth of Massachusetts.

13.     Defendants Menu Foods Midwest Corporation, Menu Foods Income Fund, Menu Foods Limited, Menu Foods, Inc. and Menu Foods Holdings, Inc. (hereinafter, collectively referred to as "the Menu Foods Defendants") individually and collectively do business under the name "Menu Foods".

14.     The Menu Foods Defendants produced the Pet Food and distributed it to other Defendants in this action, as well as to numerous other retailers of pet food, for sale to consumers in Massachusetts and in other states nationwide.

15.     The Menu Foods Defendants caused the Pet Food to be placed in the stream of commerce in the Commonwealth of Massachusetts and in the United States.

16.     Defendant Xuzhou Anying Biologic Technology Development Company Ltd. (hereinafter referred to as "Xuzhou") is a foreign company with a principal place of business in Peixan, China.  Xuzhou sold wheat gluten which contaminated the Pet Food and caused the losses sustained by Plaintiffs and the affected Class members.

17.     Defendant ChemNutra Inc. (hereinafter referred to as "ChemNutra") is a corporation organized under the laws of the State of Delaware with a principal place of business in Las Vegas, Nevada.  ChemNutra imported and supplied the Menu Foods Defendants with wheat gluten which contaminated the Pet Food.

18.     Defendant The Iams Company (hereinafter referred to as "Iams") is a corporation organized under the laws of the State of Ohio with a principal place of business in Lewisburg, Ohio.  Iams caused Pet Food, including the Pet Food purchased

by Plaintiff Connerton and consumed by her pet, to be produced, distributed, marketed and sold to Plaintiff Connerton and the Iams Class.

19.     Defendant Nutro Products, Inc. (hereinafter referred to as "Nutro") is a corporation organized under the laws of the State of California with a principal place of business in City of Industry, California.  Nutro caused Pet Food, including the Pet Food purchased by Plaintiff Mello and consumed by her pet, to be produced, distributed, marketed and sold to Plaintiff Mello and the Nutro Class.

20.     Defendant Target Corporation (hereinafter referred to as "Target") is a corporation organized under the laws of the State of Minnesota with a principal place of business in Minneapolis, Minnesota.  Target marketed and sold Pet Food at their Target and Super Target retail stores which they operate in Massachusetts and nationwide.

## JURISDICTION AND VENUE

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391.

22.     This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332.  The total amount at issue in this case exceeds $5,000,000.00.

## STATEMENT OF FACTS

### *The Conduct of the Menu Foods Defendants.*

23.     The Menu Foods Defendants prepare and produce numerous varieties of pet food which are sold to the public under numerous trade names, including the Pet Food at issue herein.

24.     The Fund's self-styled operating tenets are to "manufacture the private-label wet pet food industry's most comprehensive product program with the highest

4

standards of quality" and to "satisfy the requirements of the ultimate consumers (i.e., dogs and cats)."

25.     The Fund announced, on March 16, 2007, a recall of "cuts and gravy" style pet food in cans and pouches, produced by the Menu Foods Defendants at two of their United States facilities between December 3, 2006 and March 6, 2007 (hereinafter, the "Recall"). The Recall covered more than ninety (90) pet food brands, including the "Iams" and "Nutro" brands pet food purchased by Plaintiffs and fed by Plaintiffs to their respective pets.

26.     At the same time the Fund announced the Recall, the Fund also informed consumers that: (a) products not identified in the Recall could continue to be used safely; (b) the Recall dates coincided with the introduction of an ingredient from a new supplier; and (c) the Fund had received complaints of renal problems experienced by pets who had consumed products covered by the Recall.

27.     More than a week prior to its public announcement of the Recall, the Menu Foods Defendants had discontinued purchases from the supplier of the ingredient identified at the time of the Recall as the probable source of contamination of the Pet Food.

28.     Well before the Recall and, upon information and belief, as early as December 2006, the Menu Foods Defendants had received complaints of death and kidney (renal) failure in cats and dogs who had consumed pet food produced by Menu Foods Defendants.

29.     As a result of user complaints, and weeks before the public announcement of the Recall, the Menu Foods Defendants initiated feeding tests which resulted in the deaths of several dogs and cats fed Menu Foods produced pet food.

30.     Despite such warnings and notice well before the Recall, the Menu Foods Defendants delayed announcement of the Recall until March 16, 2007, and at that time announced that the Recall was purely precautionary and merely a "proactive step out of an abundance of caution, because the health and well being of pets is paramount to the Fund."

31.     Not until March 24, 2007, did the Menu Foods Defendants expand the Recall to include all of their previously recalled brands prepared at any time, including prior to December 3, 2006.

32.     On April 5, 2007, the Menu Foods Defendants once again expanded the Recall, this time announcing in a press release "an expansion of its recall to include all products manufactured with wheat gluten purchased from ChemNutra Inc. which Menu Foods' records show was first used on November 8, 2006 and last used on March 6, 2007."

33.     The expanded Recall was announced after Defendant ChemNutra Inc., which supplied the contaminated wheat gluten at issue to Menu Foods, announced its own recall of wheat gluten ChemNutra had imported from Defendant Xuzhou.

### *Allegations as to Plaintiff Connerton*

34.     In or before March 2007, Plaintiff Connerton purchased Iams brand Pet Food ("Iams Pet Food") from Target retails stores located in Massachusetts.

35.     Plaintiff Connerton fed Iams Pet Food to her pet cat, Molly.

36.     Plaintiff Connerton's pet cat Molly consumed the Iams Pet Food.

37.     Prior to the announcement of the Recall, Plaintiff Connerton had no reason to suspect that the Iams Pet Food was contaminated or otherwise unfit to feed to her pet.

38.     Prior to the announcement of the Recall, Plaintiff Connerton in fact did not suspect that the Iams Pet Food was contaminated or otherwise unfit to feed to her pet.

39.     On or about March 11, 2007, Plaintiff Connerton's pet cat, Molly, began to vomit profusely and Plaintiff Connerton brought Molly to the Veterinary Emergency & Specialty Center of New England in Waltham, Massachusetts, for examination.  After numerous tests, the veterinarian diagnosed Molly with renal failure.

40.     To a reasonable degree of certainty the precipitating cause of Molly's renal failure was consumption of contaminated Pet Food.

41.     Plaintiff Connerton's pet cat Molly was admitted to the Veterinary Emergency & Specialty Center of New England and underwent treatment for renal failure.

42.     Molly was released from the Veterinary Emergency & Specialty Center of New England and Plaintiff Connerton has continued with outpatient care, including daily injections of IV fluids.

43.     Plaintiff Connerton brought Molly to her veterinarian for several follow-up treatments and examinations.

44.     Molly is recovering from her renal failure, but Plaintiff Connerton has incurred monetary damages for veterinary examinations and treatments, medication, and new pet food.  Molly will also require follow-up care and observation.

7

*Allegations as to Plaintiff Mello*

45.     From September 2006 to March 16, 2007, Plaintiff Mello purchased Nutro brand Pet Food ("Nutro Pet Food") from retail stores located in Massachusetts.

46.     Plaintiff Mello fed the Nutro Pet Food to her two-year old pet cat, Gemini.

47.     Plaintiff Mello's pet cat, Gemini, consumed the Nutro Pet Food.

48.     Prior to announcement of the Recall, Plaintiff Mello had no reason to suspect that the Nutro Pet Food was contaminated or otherwise unfit to feed to her pet.

49.     Prior to announcement of the Recall, Plaintiff Mello in fact did not suspect that the Nutro Pet Food was contaminated or otherwise unfit to feed to her pet.

50.     In or about early March, 2007, Plaintiff Mello's pet cat, Gemini, began to exhibit symptoms of distress, including lethargy, lack of appetite, and vomiting.

51.     On or about March 12, 2007, Plaintiff Mello brought Gemini to the Animal Hospital of Lynnfield, Lynnfield, Massachusetts, for examination.  After numerous tests, including but not limited to urinalysis, x-ray, ultrasound, and bloodwork, the veterinarian diagnosed Gemini as suffering from kidney failure.

52.     Kidney failure is unusual to find in a two-year old cat that had previously otherwise been healthy.

53.     To a reasonable degree of certainty, the precipitating cause of Gemini's kidney failure was consumption of contaminated Pet Food.

54.     Gemini remained at the Animal Hospital of Lynnfield for three days, and underwent treatment that included administration of fluids, medicine, and an IV catheter.

55.     Gemini was released from the Animal Hospital of Lynnfield on March 14, 2007, and Plaintiff Mello continued outpatient care with fluids, medications, and the use

8

of "kidney-friendly" pet food. However, Gemini refused to eat the kidney-friendly food, so Plaintiff Mello, upon the veterinarian's instruction, fed Gemini her usual Nutro Pet Food.

56.    When Plaintiff Mello heard about the Recall, Plaintiff Mello immediately recognized that Gemini's kidney failure was consistent with reports attributing pet injury and death to the contaminated Pet Food and stopped feeding Gemini the Nutro Pet Food.

57.    Plaintiff Mello brought Gemini to her veterinarian for several follow-up treatments and examinations.

58.    Plaintiff Mello has incurred monetary damages for veterinary examinations and treatments, medication, and new pet food. Gemini will also require follow-up care and observation.

### *General Allegations*

59.    The Pet Food is defectively produced and prepared, and is toxic, poisonous and/or unreasonably dangerous for consumption by pets. The Pet Food is not usable for its intended purposes, and when used, causes a significant risk of bodily harm, including severe or fatal bodily harm (such as renal/kidney failure, and/or death), to the pet.

60.    The Pet Food was defective and dangerous at the time of purchase by Plaintiffs and affected Class members; when the products left the possession of the manufacturer, distributor, marketer and seller of said products; and/or at the time tainted or contaminated wheat gluten ingredient left the possession of the importer, exporter and supplier.

61.     Defendants owed a duty of care to Plaintiffs and purchasers of the Pet Food; Defendants had a duty to design, prepare, test, market, distribute, label, promote, and sell a safe product and/or ingredient; and Defendants had a duty to warn or disclaim any potential dangers regarding normal usage of the Pet Food and/or any of its ingredient.

62.     As a result of the Defendants' acts and omissions alleged herein, Plaintiffs and other members of each Class have been damaged, in amounts including but not limited to the cost of the Pet Food, veterinarian services and expenses, cremation and/or burial expenses, compensatory and other damages.

## CLASS ALLEGATIONS

63.     Plaintiffs bring each Cause of Action herein individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of following presently defined Classes:

Menu Foods Class:  All persons who purchased, in the Commonwealth of Massachusetts, the pet food products at issue, defined herein as any "cuts and gravy" style pet food in a can or pouch and recalled by Menu Foods Income Fund in March or April 2007.

Iams Class:  All persons who purchased, in the Commonwealth of Massachusetts, pet food products at issue produced by or distributed by the Iams Company.

Nutro Class:  All persons who purchased, in the Commonwealth of Massachusetts, pet food products at issue produced by or distributed by Nutro Products, Inc.

Target Class:  All persons who purchased, in the Commonwealth of Massachusetts, pet food products at issue from Target and SuperTarget retail stores.

64.     Excluded from each Class are the officers and employees of each of the Defendants, Plaintiffs' counsel, and any judge presiding over this action.

65.     Plaintiffs meet the requirements of Rules 23(a), 23(b)(1), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

66.     Plaintiffs do not know the exact size of the Classes, since this information is largely in Defendants' exclusive control, but Plaintiffs reasonably believe that each Class' number is at least in the thousands and that the members of each Class are geographically dispersed throughout the Commonwealth of Massachusetts, and that therefore joinder of the members of each Class would be impracticable and class treatment is the superior method for fairly and efficiently adjudicating this controversy.

67.     Plaintiffs' claims are typical of other Class members' claims because all the respective Class members were injured through the uniform misconduct described herein.

68.     Common legal and factual questions among and within the respective Classes exist, such as:

       a.     Whether the respective Defendants caused to be manufactured, prepared, distributed, marketed and/or sold, the pet food products at issue;

       b.     Whether the pet food products at issue are unreasonably dangerous or unfit for consumption;

       c.     Whether Defendants' conduct caused injury in fact to Plaintiffs and the members of each Class.

69.     Plaintiffs can and will fairly and adequately represent and protect the respective Class members' interests, and has no interests that conflict with or are antagonistic to any of the Class members' interests.  Plaintiffs' attorneys are competent in class action litigation.

70.     Class certification of the respective classes is appropriate under Rule

23(b)(3) of the Federal Rules of Civil Procedure because a class action is the superior

procedural vehicle for the fair and efficient adjudication of the claims asserted given that:

    a.  Common questions of law and fact overwhelmingly predominate over any individual questions that may arise among or within the respective classes and, consequently, enormous economies to the court and parties exist in litigating the common issues, for each class, on a class-wide basis  instead of on a repetitive individual basis;

    b.  Class treatment is required for optimal deterrence against, and compensation for, Defendants' wrongful conduct alleged herein; and

    c.  The aggregate volume of the claims of each Class, whether considered in a national class or, alternatively, in a Massachusetts class, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost-effective basis, especially when compared with repetitive individual litigation, and no unusual difficulties are likely to be encountered in this class action's management in that all legal and factual questions are common to each Class.

71.     Plaintiffs' claims are typical of the other Class members' claims because

all of their claims arise out of the Defendants' common courses of conduct.

72.     Class certification is appropriate pursuant to Rule 23(b)(1) of the Federal

Rules of Civil Procedure because prosecution of separate actions would create a risk of

adjudication with respect to individual members of the respective classes, which may, as

a practical matter, dispose of other class members' interests who are not parties to the

adjudication or which may substantially impair or impede individual class members'

ability to protect their interests.  Separate actions prosecuted by individual class members

would also create a risk of inconsistent or varying adjudications, which would establish

incompatible standards of conduct for Defendants.

73.     Certification of the Menu Foods Class, the Iams Class, the Nutro Class, and the Target Class is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendants as described herein have acted on grounds generally applicable to the members of each class.

## CAUSES OF ACTION

74.     Each of the preceding paragraphs are re-alleged and incorporated as if set forth in full in each of the following Causes of Action, which are alleged in the alternative.

## FIRST CAUSE OF ACTION – NEGLIGENCE

(On Behalf of the Menu Foods Class and the Iams Class, Against the Menu Foods Defendants, the Iams Company and ChemNutra Inc.)

75.     The Menu Foods Defendants manufactured and prepared the Pet Food.

76.     Defendant Iams produced, distributed, marketed and sold Pet Food under "Iams" brand names.

77,     Defendant ChemNutra imported and supplied contaminated wheat gluten to Menu Foods, which incorporated the ingredient in producing and preparing the Pet Food.

78.     The Menu Foods Defendants, Iams and ChemNutra, each breached their respective duties and duties of care to Plaintiff Connerton and other purchasers of the Pet Food by failing to warn purchasers of the defective and dangerous nature of the Pet Food; and to design, manufacture, produce, market, distribute, supply and/or sell Pet Food and/or ingredients that were reasonably safe for pet consumption, for their intended purposes, and for purposes that do not injure the users of the products.

79. Each of said Defendants' respective breaches of the aforementioned duties in the course of failing to warn, and in designing, making, producing, distributing, supplying, marketing and/or selling the Pet Food and/or ingredients at issue, caused Plaintiff Connerton and members of the Menu Foods Class and the Iams Class actual and compensatory damages.

## SECOND CAUSE OF ACTION - NEGLIGENCE

### (On Behalf of the Menu Foods Class and the Nutro Class, Against the Menu Foods Defendants, Nutro Products, Inc. and ChemNutra Inc.)

80. The Menu Foods Defendants manufactured and prepared the Pet Food.

81. Defendant Nutro produced, distributed, marketed and sold the Pet Food under "Nutro" brand names.

82. Defendant ChemNutra imported and supplied contaminated wheat gluten to Menu Foods, which incorporated the ingredient in producing and preparing the Pet Food.

83. The Menu Foods Defendants, Nutro and ChemNutra each breached their respective duties and duties of care to Plaintiff Mello and other purchasers of the Pet Food by failing to warn purchasers of the defective and dangerous nature of the Pet Food; and to design, manufacture, produce, market, distribute, supply and/or sell Pet Food and/or ingredients that were reasonably safe for pet consumption, for their intended purposes, and for purposes that do not injure the users of the products.

84. Each of said Defendants' respective breaches of the aforementioned duties in the course of failing to warn, and in designing, making, producing, distributing, supplying, marketing and/or selling the Pet Food and/or ingredients at issue, caused

Plaintiff Mello and members of the Menu Foods Class and the Nutro Class actual and compensatory damages.

### THIRD CAUSE OF ACTION – NEGLIGENT MISREPRESENTATION

#### (On Behalf of Each Class Against Each Defendant)

85.     Each Defendant owed Plaintiffs and the Class members a duty to exercise reasonable care in representing the safety and healthfulness of the Pet Food and its ingredients.

86.     Defendants falsely represented that the Pet Food and its ingredients were safe and healthy for consumption by dogs and cats.

87.     In fact, Defendants' Pet Food was not safe, not healthy for consumption by dogs and cats, and caused large numbers of dogs and cats to become ill and, in some cases, to die.

88.     Plaintiffs and Class members reasonably relied on the information provided by Defendants regarding the safety and healthfulness of the Pet Food and its ingredients.

89.     As a proximate cause of Defendants' false representations, Plaintiffs and other Class members suffered damages in amounts to be proven at trial.

### FOURTH CAUSE OF ACTION – NEGLIGENCE PER SE

#### (On Behalf of Each Class Against Each Defendant)

90.     Defendants' acts and/or omissions alleged herein constitute negligence per se.

91.     Defendants had a duty to ensure that the Pet Food was labeled, designed, manufactured, produced, marketed, distributed, supplied and/or sold in a manner consistent with governmental regulations.

92.     Defendants breached this duty in violation of regulatory standards.

93.     Such breaches directly and proximately caused damages to the Plaintiffs and the Class members.

94.     Plaintiffs and the Class members have suffered damages due to Defendants' failure to conform to United States Food and Drug Administration regulations.

## FIFTH CAUSE OF ACTION – BREACH OF WARRANTIES

### (On Behalf of Each Class Against Each Defendant)

95.     Defendants caused and contributed to the Pet Food incorporating contaminated ingredients to be placed into the stream of commerce and sold to Plaintiff and Class members.

96.     Plaintiffs and Class members were damaged as a result of Defendants' action and/or inaction.

97.     Plaintiffs and Class members did not know that the Pet Food contained poisonous, toxic, unhealthy and/or abnormally dangerous ingredients.

98.     Plaintiffs and Class members in the exercise of reasonable diligence could not have known or suspected that the Pet Food contained poisonous, toxic, unhealthy and/or abnormally dangerous ingredients.

99.     Defendants, as a result of their above-alleged conduct, are liable to Plaintiffs and Class members for breach of implied warranties of merchantability and fitness for a particular purpose.

100.     Defendants also expressly warranted that the Pet Food and its ingredients were non-hazardous and suitable for consumption by animals.

101.     Defendants breached their express warranties.

102.     As a proximate result of Defendants' breaches of warranty and conduct, Plaintiff and Class members were damaged.

### SIXTH CAUSE OF ACTION – BREACH OF CONTRACT

(On Behalf of the Target Class Against Target Corporation)

103.     Plaintiff Connerton and Target Class members purchased Pet Food from Defendant Target between December 3, 2006 and March 16 2007.

104.     At the time of sale, the Defendant Target represented to purchasers that the Pet Food was safe and healthy for consumption by animals.

105.     However, the Pet Food sold by the Defendant Target was not healthy, or safe for consumption by animals.

106.     The Defendant Target breached its sales contract(s) with Plaintiff Connerton and Target Class members by selling Pet Food that was not, in fact, "food" for pets.

107.     As a result of said breach and/or material mutual mistake of fact of the parties, Plaintiff Connerton and other Target Class members sustained damages, for which the Defendant Target is liable.

17

## SEVENTH CAUSE OF ACTION – COMMON LAW FRAUD

(On Behalf of the Menu Foods Class Against the Menu Foods Defendants)

108.    For a significant period prior to announcement of the Recall, the Menu Foods Defendants knew and had a duty to disclose that the Pet Food was defective and unhealthy, dangerous and unfit for consumption by animals, and/or could cause pet injury or death.

109.    Despite such knowledge, and until announcement of the Recall and full disclosure to the public that the Pet Foods were unsafe for use, the Menu Foods Defendants continued to distribute unsafe and defective Pet Foods, and failed to disclose to members of the Menu Foods Class, including Plaintiffs, that the Pet Food was defective and unhealthy, dangerous and unfit for consumption by animals, and/or could cause pet injury or death.

110.    The Menu Foods Defendants intended for purchasers to rely on these omissions at the time they purchased Pet Food.

111.    Plaintiffs and the Menu Foods Class did in fact rely on the Menu Foods Defendants failure to disclose material facts, and would not have purchased or fed the Pet Food to their pets had they known the omitted facts or had Menu Foods earlier instituted a recall of effected Pet Food.

112.    Plaintiffs and the Menu Foods Class members sustained damages as a proximate result of the Menu Foods Defendants' acts and omissions.

## EIGHTH CAUSE OF ACTION – UNJUST ENRICHMENT

### (On Behalf of Each Class Against Each Defendant)

113.    Defendants have retained and benefited from revenues and profits they received from the sale of the Pet Food and/or its contaminated ingredients.

114.    Defendants' retention of revenues and profits from the sale of the Pet Food and/or its contaminated ingredients is unjust.

115.    Defendants' retention of revenues and profits from the sale of the Pet Food has unjustly enriched each of them at the expense of Plaintiffs and the members of each Class.

116.    Plaintiffs and the members of each Class are entitled to restitution and disgorgement of the monies received by Defendants from the sale of the Pet Food and/or its contaminated ingredients.

117.    Retention by Defendants of monies received by virtue of their causing the Pet Food to be sold to Plaintiffs and the other Class members violates principles of equity and good conscience.

### JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all matters so triable.

### PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter judgment in the respective Class members' favor and against Defendants, as follows:

A.    That this Court enter an order certifying this action as a class action for each Class defined above or that may be defined in the course of this action, appointing Plaintiff Megan Connerton and Plaintiff Kimberly Mello as class representatives for each Class, and appointing Plaintiffs' counsel as class counsel;

B.     That this Court find that the Defendants violated applicable law and are therefore liable under said laws as alleged above;

C.     That this Court declare that  Menu Foods acted with reckless disregard for Plaintiffs, members of the Menu Foods Class and their pets, and that Plaintiffs and the members of each Class are entitled to a purchase price refund of the pet food products at issue;

D.     That this Court award to Plaintiffs and the members of each Class damages, including actual, incidental, compensatory, consequential and future damages (e.g., cost of veterinarian bills, medication, cremation and funeral expenses) and/or refunds of the pet food products at issue, and injunctive relief including medical monitoring relief for affected surviving pets;

E.     That this Court award enhanced and/or punitive damages against Menu Foods for Causes of Action for which such damages may be had;

F.     That this Court determine that Defendants were unjustly enriched and award restitution and/or disgorgement of their respective ill-gotten gains;

G.     That this Court require each Defendant to account for all revenues and/or profits improperly received as a result of the aforementioned conduct, enjoin each Defendant from dispersing said monies, and impose a constructive trust on said monies;

H.     That this Court award Plaintiffs' counsel reasonable attorneys' fees and costs; and

I.     That this Court order any other relief as it deems just, equitable, and proper.

Dated:  April 25, 2007

Respectfully submitted,

MEGAN CONNERTON and KIMBERLY
MELLO, individually and on behalf of all
others similarly situated,

By: _____

Eugene R. Richard, BBO# 546781
Howard J. Wayne, BBO # 518160
WAYNE, RICHARD & HURWITZ LLP
One Boston Place, Suite 3620
Boston, MA 02108
Telephone: (617) 720-7870
Facsimile: (617) 720-7877


Ilan J. Chorowsky, Esq.
Progressive Law Group, LLC, Of Counsel
1130 North Dearborn Street, Suite 3110
Chicago, IL  60610
Telephone: (312) 643-5893
Facsimile:  (312) 643-5894