UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| | : | MDL Docket No. 1850 (All Cases) |
| | : | |
| IN RE PET FOOD PRODUCTS | : | Case No. 07-2867 (NLH) |
| LIABILITY LITIGATION | : | |
| | : | Judge Noel L. Hillman |
| | : | |
| | : | **PLAINTIFFS' OPPOSITION TO** |
| | : | **CHEMNUTRA'S MOTION TO** |
| | : | **DESTROY ITS INVENTORY OF** |
| | : | <u>**WHEAT GLUTEN**</u> |
| | : | |
| | : | |

ChemNutra, Inc.'s ("ChemNutra") motion of September 5, 2008 seeking Court permission to destroy its entire inventory of wheat gluten is both overbroad and inadequately supported and thus should be denied at this time. At a minimum, the Court should not grant ChemNutra's requested relief until it has been appropriately supported by the record and limited in its application. While Plaintiffs desired to reach an agreement with ChemNutra on the issue of the destruction and partial preservation of its inventory, such agreement was never reached and Plaintiffs must respectfully oppose the relief now sought.

In sum, Plaintiffs cannot agree to ChemNutra's plan to destroy its entire raw wheat gluten inventory for four reasons: 1) Unlike the earlier motions of other defendants, that were not opposed by Plaintiffs, ChemNutra does not seek to preserve *any* samples of product for an independent statistical sampling and has offered no evidence or expert affidavits that the FDA sampling is necessarily adequate for evidentiary purposes or would otherwise be admissible in this case; 2) ChemNutra represents that its motion is

1

Dockets.Justia.com

supported by the FDA and US Attorneys' Office, but it is clear that while these agencies evidently do not oppose the relief requested, there is no evidence that they "support" it. Indeed, while the FDA appears to have concluded that "the current quantity of raw wheat gluten stored" is a public health risk, it has never taken the position that *all* of the tainted wheat gluten should be destroyed. Moreover, despite its awareness of this litigation, the FDA has not considered the issue important enough to seek intervention and relief from this Court, making ChemNutra's insinuation of some sort of public health emergency suspect; 3) The case law cited in support of ChemNutra's wholesale destruction of evidence is off point or has been overturned; and finally 4) the timing of ChemNutra's motion is inappropriate. Simply put, it would be inappropriate for Plaintiffs to agree to ChemNutra's plan before the Court's ruling on final approval of the settlement and the exhaustion of any appeals stemming therefrom. It seems obvious that Plaintiffs' interest in opposing this motion will be impacted by whether the settlement in this case is concluded. Moreover, there have been a number of opt-outs from the settlement. These persons are no longer parties to these proceedings and deserve to be heard on evidence destruction that might impact their claims. ChemNutra has submitted no evidence that they have been notified.

I. **EARLIER MOTIONS REGARDING DESTRUCTION OF EVIDENCE WERE BASED ON PLANS DESIGNED BY A STATISTICIAN AND REQUIRED PRESERVATION OF A SUFFICIENT SAMPLE FOR FURTHER TESTING WHICH SAFEGUARDED CLASS MEMBERS' AND OTHERS' ABILITY TO PURSUE THEIR CLAIMS.**

The circumstances before the Court here are not the same as in the earlier destruction and retention motions. The prior unopposed motions for the destruction of existing pet food inventory and the implementation of an agreed retrieval plan, were the

result of a long and arduous process where the storing defendants and their expert statistician eventually designed a plan that provided for the destruction of the recalled pet food inventory in such a way as to not only eliminate the public health risk, *but* also preserve a statistically appropriate sample so as to allow testing that may be required by interested parties in the event of continued litigation. As this Court is aware, Plaintiffs ultimately did not oppose these requests because Plaintiffs and their expert were satisfied that adequate samples were preserved for an accurate and independent sampling should that be necessary for proof purposes. Even after the execution of the retrieval plan, it was agreed that:

> Defendants will select and retain a statistically representative sample of recalled product that satisfies the future testing needs of Plaintiffs and other interested parties. The test results from such a sample will accurately determine the extent of contamination, if any, of the entire population of recalled pet food to a reasonable degree of statistical certainty.

Because no such protections are provided here by ChemNutra, this Court should deny its instant motion for failure to show good cause. Indeed, Plaintiffs and their statistician have no basis to conclude that the FDA's testing protocol was sufficient to preserve admissible and probative evidence, as ChemNutra suggests. Plaintiffs cannot accept ChemNutra's position without additional support.

## II. THE DESTRUCTION OF THE ENTIRE STOCK OF WHEAT GLUTEN HAS *NOT* BEEN REQUIRED OR EVEN REQUESTED BY THE FDA AND US ATTORNEYS' OFFICE.

ChemNutra has not supported the proposition that either the FDA or the US Attorneys' office requires or even supports the destruction of *all remaining wheat gluten* so as to not even leave an appropriate statistical sample for testing by interested Parties. *See* Def. Mem p. 7. To be sure, the FDA made clear that, "the current quantity of raw

3

wheat gluten stored" poses a public health risk. *Id.* This is quite different, however, from the proposition of total destruction now advanced by ChemNutra. And, in any event, the FDA has never sought to be and is not a party to these proceedings and cannot, as a stranger to the litigation, purport to dictate what is or is not the appropriate preservation of evidence. While it is to be expected that the FDA would believe its own testing is reliable, as noted above, there is no support for the proposition that it precludes further testing by any interested Party, particularly without any contrary showing made to this Court.

### III. CHEMNUTRA's REQUEST IS NOT SUPPORTED BY THE LAW.

ChemNutra argues that courts have agreed to limit discovery to statistical samples in cases where the burden is great. *See* Def. Mem. p. 4 (citing *Benson v. St. Joseph Reg'l Health Ctr.*, No. H-04-04323, 2006 U.S. Dist. LEXIS 34815, at *4-7 (S.D. Tex. May 17, 2006)). Plaintiffs do not disagree. However, ChemNutra is not proposing to maintain a statistical sample. Rather, it is seeking to destroy everything. Nowhere in its papers does ChemNutra suggest retaining any wheat gluten for evidentiary purposes, but rather insists on a complete and total destruction of the remaining supply of wheat gluten.

ChemNutra relies on the fact that the wheat gluten at issue has already been tested by the FDA, and that those results are publicly available. However, ChemNutra points to no case law stating that Plaintiffs are not entitled to their own testing – if they so choose. Defendant ChemNutra's reliance on the fact that this Court granted the requests of Menu Foods and Del Monte ignores the fact that these defendants agreed to retain sufficient samples of the products to allow for testing and proposed sampling protocol designed by a statistician.

In its defense of the FDA sampling plan and tests, Defendant notes that courts allow the use of testing of representative samples. (Def. Mem p.6-7) ChemNutra relies on *United States v. Shonubi*, 895 F. Supp. 460, 465, 518, 519-21, 524 (E.D.N.Y. 1995) for the proposition that representative sampling is appropriate in this case (noting "relying on statistical data from representative samples, in part, in finding that defendant 'smuggled between 1,000 and 3,000 grams on his eight trips.'"). Although, as noted above, Plaintiffs agree with the general legal proposition set forth in *Shonubi*, ChemNutra utterly fails to mention that this decision was overturned by the Second Circuit. *United States v. Shonubi*, 103 F.3d 1085 (2d Cir. 1997). Specifically, the Second Circuit determined that the statistical evidence in *Shonubi* was not sufficient to prove the case. Contrary to all accepted authority and inconsistent with the prior Orders in this case, ChemNutra is requesting complete destruction of the remaining wheat gluten leaving no sample at all to subject to statistical analysis.

Every case, and defendant's own words, point to a "limit" on the discovery. ChemNutra is not asking for a limit, however. It is asking for **total** destruction of its remaining wheat gluten. Plaintiffs are not averse to allowing ChemNutra to destroy a portion of its remaining wheat gluten, provided protections consistent with those required of the other defendants are applied here. ChemNutra's extremist position of complete and total irreversible destruction of evidence is unsupported by law.
5

IV.  **LESS THAN A MONTH BEFORE THE FINAL APPROVAL HEARING IS AN INAPPROPRIATE TIME TO DESTROY EVIDENCE, PARTICULARLY WHEN SUCH DESTRUCTION MAY COMPROMISE THE ABILITY OF CLASS MEMBERS AND OTHERS TO LITIGATE THE CASE SHOULD FINAL APPROVAL OF THE SETTLEMENT BE DENIED OR OVERTURNED ON APPEAL.**

Less than two weeks from the return date of this motion, this Court will hear the Parties' motion for final approval of the settlement. Certainly, a final settlement of the litigation, upheld on appeal (if any is taken), would greatly impact the Plaintiffs' need to preserve evidence in this case in order to prove their case. The urgency of this request and the totality of the destruction proposed is not appropriate under the law and particularly inappropriate under the circumstances.

Moreover, pursuant to the notice issued to the Class beginning in June 2008, some 200 former class members have opted out of the litigation. One can only assume that most, if not all, of these opt-outs will be filing separate suits against one or more of the Defendants, including ChemNutra. Certainly, these people, who are no longer represented by Class Counsel, have some interest in the outcome of ChemNutra's motion and should be heard.

## CONCLUSION

For the foregoing reasons, this Court should deny the Motion of ChemNutra and refuse to permit the destruction of its complete inventory of Wheat Gluten until its request is appropriately narrowed and the evidentiary record makes clear that Plaintiffs' and others' ability to prove their claims will not be compromised by the proposed destruction. ChemNutra has failed to provide good cause for the complete and permanent destruction of all remaining wheat gluten.

DATED: September 19, 2008     Respectfully submitted,

TRUJILLO RODRIGUEZ & RICHARDS, LLC

By  /s Lisa J. Rodriguez
    Lisa J. Rodriguez
    258 Kings Highway East
    Haddonfield, New Jersey 08033
    Telephone: (856) 795-9002
    Facsimile: (856) 795-9887

*Liaison Counsel for Plaintiffs*

Sherrie R. Savett
Russell D. Paul
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4636

Kenneth A. Wexler
Mark J. Tamblyn
**WEXLER WALLACE LLP**
55 West Monroe Street, Suite 3300
Chicago, Illinois 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

William M. Audet
**AUDET & PARTNERS LLP**
221 Main Street, Suite 1460
San Francisco, California
Telephone: (415) 568-2555
Facsimile: (415) 568-2556

Scott A. Kamber
Jay Edelson
**KAMBEREDELSON, LLC**
11 Broadway, 22nd Floor
New York, New York 10004
Telephone: (212) 920-3072
Facsimile: (212) 202-6364

Stuart A. Davidson
**COUGHLIN STOIA GELLER**
  **RUDMAN & ROBBINS LLP**
120 E. Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
Telephone: (561) 750-3000
Facsimile: (561) 750-3364

Steve W. Berman
Jeniphr Breckenridge
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Fifth Avenue, Suite 2900
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

*Co-Lead Counsel for Plaintiffs*