# KEEGAN & BAKER, LLP

A LIMITED LIABILITY PARTNERSHIP
4370 LA JOLLA VILLAGE DRIVE • SUITE 640
SAN DIEGO, CALIFORNIA 92122

TELEPHONE – 858.552.6750
FACSIMILE – 858.552.6749

September 12, 2008

Clerk of the Court
Mitchell H. Cohen Building and
U.S. Courthouse
4th & Cooper Streets, Room 1050
Camden, NJ 08101

Re: **In Re Pet Food Product Liability Litigation**
    **Case No. 07-2867 (NLH)**

Dear Sir or Madam:

Objectors Renee Blaszkowski, Susan Peters, Jo-Ann Murphy, Yvonne Thomas, Ann Quinn and Cindy Tregoe, class members to this action, by and through their undersigned counsel of record, hereby file these Preliminary Objections to the Notice of Proposed Class Action Settlement and Final Fairness Hearing, and in support thereof state:

## PROOF OF MEMBERSHIP IN CLASS

Objectors Renee Blaszkowski, Susan Peters, Jo-Ann Murphy, Yvonne Thomas, Ann Quinn and Cindy Tregoe, (hereinafter, the "Blaszkowski Objectors") are class members as defined in the Notice of Proposed Class Action Settlement and Final Fairness Hearing (hereinafter, the "Notice"). The Blaszkowski Objectors each purchased pet food products of Defendant Manufacturers. Additionally, each of the Blaszkowski Objectors received the Notice in the mail, and, accordingly, pursuant to the Notice itself, are members of the settlement class.

## NOTICE OF INTENT TO APPEAR

Objectors hereby give notice they intend to appear by counsel at the Final Approval Hearing (sometimes referred to in the Notice as the "Final Fairness Hearing") that is presently scheduled to be held in this matter on October 14, 2008 at 9:30 a.m. before the Honorable Noel L/ Hillman at 4th & Cooper Streets, Room 1050, Camden, NJ 08101.

## BACKGROUND

Because the Court is aware of the lengthy history of this case, we set forth here only those facts necessary to understand the settlement and its deficiencies. This settlement arises out of a class action filed by numerous plaintiffs against numerous defendants due to the distribution, sale and recall of 60 million packages of contaminated pet food that resulted in illness and death of thousands of pets. This pet food recall was the largest in history beginning in March 2007. Shortly thereafter, some approximate 113 different lawsuits were filed across the United States with 200 plaintiffs in one class action suit alone and similar actions filed in Canada. Banfield, a nationwide veterinary chain, reported a 30% increase in kidney failure during the recall period. This is from a statistical universe of one million pets over the 3 month period. One study shows kidney failure to be the cause of death in 18.7% of cats, with 9 years as the average life span of a cat and 12% in dogs with the average lifespan being 11.5 years While sources vary, it is estimated there are 80 million cats and 70 million dogs in the US. At that rate, it would be expected that 415,000 cats and 182,000 dogs would die of kidney failure in any given 3 month period. A 30% increase caused by poisoned food would come to a total of 180,000 dogs and cats. the FDA has reported 18,000 cases of pet food related poisonings, with half of the reports entered into their systems resulting in death. The FDA alone has 9,000 reported pet food related deaths, and this accounts only for those willing to take time to file a complaint. The 180,000 figure is consistent with the FDA statistics if 5% of pet deaths have been reported. Considering how difficult it has been to get through to the FDA, and less than easy to find information on what number to call, 5% is probably high, and an estimate of 180,000 deaths is probably low. All of this resulted in companion dog and cat owners incurring thousands upon thousands of dollars in veterinary bills.

On or about June 19, 2007, the Judicial Panel on Multidistrict Litigation transferred thirteen (13) actions filed in various federal courts in the United States to In re Pet Food Products Liability Litigation, MDL No. 1850, in the United States District Court for the District of New Jersey (the "MDL") for coordinated pre-trial proceedings, and thereafter transferred approximately 100 additional actions to the MDL.

On or about May 22, 2008, without any formal discovery or filing of a consolidated complaint, the parties proposed class action settlement of all of the United States and Canadian actions for $24,000,000, inclusive of attorneys' fees and costs (the "Settlement"). The Court granted Preliminary Approval of the Settlement on May 30, 2008. Although the Settlement is framed as the settlement of contaminated pet food products that were manufactured and distributed over a short period of time, the proposed Settlement is so vague and overbroad that it arguably exceeds that scope and include claims in existence prior to and beyond the instant pet food recall, including claims not related to this particular instant of contaminated pet food.

## OBJECTIONS

The proposed Settlement in this case fails to meet the legal prerequisites of fairness, adequacy, or reasonableness to the putative class. As we explain further below, the Blaszkowski Objectors oppose the proposed Settlement as neither fair, adequate nor reasonable to the

settlement class for at least the following reasons:

1. The form of the proposed Settlement is so vague that putative class members are unable to ascertain the class definition, the identity of the parties to be released, the relevant class period and/or the nature and scope of relief proposed by the Settlement to make a meaningful analysis of whether the Settlement is fair, adequate and reasonable.

2. The form of the proposed Settlement is so overbroad that it unnecessarily releases claims not brought in the instant action and arguably precludes and waives any other unrelated litigation against these settling parties without adequate compensation to the settlement class for waiving these rights.

3. The amount of the Settlement is disproportionate to the damage caused to the settlement class.

4. The type of relief proposed in the Settlement is inadequate to remedy the harm caused to the class.

5. The amount and method of attorneys fees sought is unfair and unreasonable.

It is to the alleged failures, insufficiencies and unreasonable provisions of the proposed Settlement that these instant Objections are directed. Because of these legal failure and insufficiencies, The Blaszkowski Objectors respectfully request the Court (i) withdraw its preliminary approval of the Settlement; (ii) enter a supplemental Order requiring further proceedings in this action; and (iii) allowing the filing of a motion for intervenor by the Blaszkowski Objectors to serve as lead plaintiffs for the remainder of the MDL.

## ARGUMENT

I. **THE FORM OF THE PROPOSED SETTLEMENT IS SO VAGUE THAT PUTATIVE CLASS MEMBERS ARE UNABLE TO DETERMINE WHETHER THEY QUALIFY AS A CLASS MEMBER, THE RELEVANT CLASS PERIOD AND/OR THE NATURE AND SCOPE OF RELIEF PROPOSED BY THE SETTLEMENT TO MAKE A MEANINGFUL ANALYSIS OF WHETHER THE SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE.**

   A. **The Settlement Is Unfair, Inadequate And Unreasonable Because There Is No Ascertainable Class Definition Within the Proposed Settlement Nor Can Class Members Determine The Parties.**

Although the Order for Preliminary Approval certifies what appears to be a simply defined settlement class as follows:

All persons and entities who purchased, used or obtained, or whose pets used or consumed **Recalled Pet Food Product**(s). . . . (emphasis added for defined terms).

3

The use of defined terms throughout the Settlement Agreement makes ascertaining the class definition and the list of parties to be released wholly impossible.

From the Order for Preliminary Approval, for a class member to determine if they might be a class member, they have to first determine if they purchased a "**Recalled Pet Food Product.**" To determine if they purchased a "**Recalled Pet Food Product**," a class member must refer to Section I.PP of the Settlement Agreement, which begins defining a **Recalled Pet Food Product**," as any pet food product and/or treat products or any ingredient thereof that were recalled by any "**Released Entity**. . . and are subject of the **Pet Food Recall Litigation**."[1] Thus, putative class members have to determine if they purchased a "Recalled Pet Food Product" and then determine if they purchased it from a certain defined entity (a "**Released Entity**") and if that product was party of the recall litigation (the "**Pet Food Recall Litigation**").

However Section I.RR of the Settlement Agreement, does not include a definite list of potential defendants, but instead seeks to include in the definition of "**Released Entity**" such vague references "any and all entities and individuals that are alleged to have handled, distributed, purchased for resale and/or redistribution, supplied, manufactured, and/or sold or offered for sale "**Recalled Pet Food Products**". . . and "their respective insurers, parent companies, subsidiaries affiliates, and all of their respective franchisees. . . successors and heirs of all of them." Because "**Released Entity**" list is not specifically and definitely well defined, putative class members are unable to determine if other pet food manufacturers not specifically named are likewise included in the definition of "**Released Entity**."

Still further, even assuming, *arguendo*, a class member could determine he/she purchased a pet food product from a "**Released Entity**," then putative class member must then determine if that pet food product was subject to the "**Pet Food Recall Litigation**" – which is defined in section I.KK. of the Settlement Agreement as the "**U.S. Actions**" and the "**Canadian Actions**", with "**U.S. Actions**" defined at section I.YY as "each of the actions that are part of, or become part of, the Coordinated proceedings of In re Pet Food Products Liability Litigation, MDL No. 1850, in the United District Court for District of New Jersey" and the "**Canadian Actions**" defined at section I.F. as "the actions listed on Exhibit 1." There are, however, no actions listed on Exhibit 1 to the Settlement Agreement, nor is there a consolidated complaint for the MDL nor a list of "the U.S. Actions" comprising the MDL for class member to determine their applicability to the Settlement.

Thus, the proposed Settlement is so vague in that it does not provide a class member with enough information to determine if they are a member of the class, if they purchased a pet food product that is part of the Settlement or the parties to be released by this Settlement making it unfair, inadequate and unreasonable to imposed on the putative class.

---

[1] The Settlement Agreement itself does not include a list of "Recalled Pet Food Products."

4

B.  **The Settlement Is Unfair, Inadequate And Unreasonable Because There Is No Ascertainable Class Period.**

The Settlement Agreement does not provide a clear and definite ascertainable class period. In fact, by reference to the definition of "Recalled Pet Food Product" at section I.PP, a class member can only determine when the pet food product was recalled, but not when it was manufactured, sold, offered for sale, purchased or advertised. This broad attempt at a class definition could be argued to include, for example, claims against pet food brands that were subject to the recall, but expanded to claims that existed prior to the instant recall. This is unfair to the putative class because Class Counsel has not undertaken to analyze whether these clams are viable and such be carved out of this Settlement.

C.  **The Settlement is Unfair, Inadequate And Unreasonable Because It Purports To Release Claims Against And Benefit Unidentified Parties And Thus, Class Members Are Unable To Determine Who They Are Releasing By This Settlement.**

The Settlement Agreement purports to dismiss some approximate 58 defined pet food "Defendants," including some ill defined "any and all entities and individuals that are alleged to have handled, distributed, purchased for resale and/or redistribution, supplied, manufactured and/or sold or offered for sale Recalled Pet Food Products" including some approximate 210 specifically named "Released Entities" who were not named defendants as well as well as "their respective insurers, parent companies, subsidiaries, affiliates, and all of their respective franchisees, and the officers, directors, trustees, shareholders, unit holders, partners, governors, managers, employees, agents, assignees, successors and heirs of all of them." [See Stl. Agr. ¶1.T] [See Stl. Agr. ¶1.RR]. Without defining all of the parties to be released, the Settlement is unfair, inadequate and unreasonable to the putative class.

II.  **THE FORM OF THE PROPOSED SETTLEMENT IS SO OVERBROAD THAT IT UNNECESSARILY RELEASES UNRELATED CLAIMS.**

A.  **The Settlement is Unfair, Inadequate And Unreasonable Because There Is No Consolidated Complaint And Putative Class Members Are Unable To Determine What Claims Are To Be Released By This Settlement.**

The Settlement Agreement contains a broad waiver, release and dismissal with prejudice which extends beyond the instant action and is binding on class members that might have claims beyond the scope of this case. For example, paragraph 3.A. provides:

> Upon entry of the Final Approval Order and Judgment by the MDL Court and all Canadian Courts, the Releasing Parties forever release and discharge all Released Claims against all Defendants and all Released Entities. For purposes of this Settlement Agreement, "**Released Claims**" are all claims, demands, actions, suits, and/or causes of action that have been brought **or could have been brought, are currently pending** or were pending, or are ever brought in the

5

future, **by any Settlement Class Member against any Defendant or Released Entity, in any forum** in Canada or the United States (including their territories and, in the case of the United States, Puerto Rico), **whether known or unknown, asserted or unasserted, under or pursuant to any statute, regulation, common law or equity,** that relate **in any way**, directly **or indirectly**, to facts, acts, events, transactions, occurrences, courses of conduct, **representations, omissions**, circumstances or other matters referenced **in any claim raised (including, but not limited to, any claim that was raised against any Released Entity) in the Pet Food Recall Litigation.** (emphasis added).[2]

To determine if that pet food product was subject to the "Pet Food Recall Litigation" section I.KK. defines it as the "**U.S. Actions**" and the "**Canadian Actions**", with "**U.S. Actions**" defined at section I.YY as "each of the actions that are part of, or become part of, the Coordinated proceedings of In re Pet Food Products Liability Litigation, MDL No. 1850, in the United District Court for District of New Jersey" and "Canadian Actions" defined at section I.F. as "the actions listed on Exhibit 1." There are, however, no actions listed on Exhibit 1 to the Settlement Agreement, nor is there a consolidated complaint for the MDL nor a list of "the U.S. Actions" other than a vague reference in the recitals at page 2 of the Settlement Agreement to "thirteen actions filed in various courts" and "approximately 100 additional actions" comprising the MDL. Defendants seek to be released of any and all claims brought, or that could have been brought in some 113 cases brought in the United States and some unknown number of cases brought in Canada without ever consolidating those claims in a single complaint or providing a reasonable method for putative class members to determine if they have claims to be preserved, or whether Class Counsel obtained adequate relief for each claim to be released through the MDL. So for example, under this broad release, if in any one of the 113 actions, a plaintiff brought a false advertising claim that covered a period before the recall, that claim would arguably be released in the Settlement and binding upon all class members without adequate due diligence, analysis and just compensation. Consequently, the Settlement is unfair, inadequate and unreasonable because there is no consolidated complaint and putative class members are unable to determine all claims to be released by this Settlement.

---

[2] Because "**Pet Food Recall Litigation**" is defined at ¶1.KK. of the Settlement Agreement as the "**U.S. Actions**" and the "**Canadian Actions**" which are further defined as "each of the actions that are part of, or become part of, the coordinated proceedings of In re Pet Food Products Liability Litigation, MDL No. 1850, in the United District Court for District of New Jersey" and the "actions listed in Exhibit 1 to the Settlement Agreement," respectively (which, the publicly posted Settlement Agreement has no Exhibit 1), the Settlement Agreement purports to release and discharge any claim brought by our Plaintiffs if those claims was brought in <u>any</u> of the 113 actions brought within the United States and any claims brought in Canada.

## B. The Settlement Is Unfair, Inadequate And Unreasonable Because It Could Preclude Any Other Litigation Involving These Parties On Different Products Covering Different Time Periods.

The Settlement Agreement includes many restrictions aimed at insulating the "Defendants" and each "Released Entity" from further litigation from not only the named plaintiffs, but the entire settlement class. For example, paragraph 3.B of the Settlement Agreement contains a covenant not to sue against the "Releasing Parties" which is defined as "all Settlement Class Members and their respective heirs, executors, agents, legal representatives, professional corporations, partnerships, assigns, and successors, but only to the extent such claims are derived by contract or operation of law from the Claims of Settlement Class Members" and provides

> "The Releasing Parties and each of them agree and covenant not to sue or prosecute, institute or cooperate in the institution, commencement, filing or **prosecution of any suit or proceeding in any forum against any Released Entity**, or against any other person or entity who may claim contribution or indemnity from or against any Released Entity, based upon or related to any Released Claim.

Again, the definition is "Released Claim" is so overbroad that it could be interprested to include claims not involving the instant recall.

Additionally, paragraph 3.C. of the Settlement Agreement also provides:

> It is an essential element of the Agreement that the Released Entities obtain the fullest possible release from further liability to anyone relating to the Released Claims, and it is the intention of the Parties to this Agreement that the Agreement eliminate all further risk and liability of the Released Entities relating to the Released Claims. Accordingly, the Parties agree that the MDL Court and Canadian Courts shall include in the Final Approval Order and Judgment an injunction that permanently enjoins the Releasing Parties from (i) filing, commencing, prosecuting, **continuing, maintaining, intervening in, participating in (as class members or otherwise) or receiving any benefits from any lawsuit, arbitration, administrative or regulatory proceeding or order in any jurisdiction based on any or all Released Claims against one or more Released Entities** or against any person or entity who may claim over against any Released Entity for contribution or indemnity; (ii) instituting, continuing, maintaining, organizing class members in, or joining with class members in, any action or arbitration, including but not limited to a purported class action, in any jurisdiction, against one or more Released Entities, or against any person or entity who may claim over against any Released Entity for contribution or indemnity, based on, involving, or incorporating, directly or indirectly, any or all Released Claims; and (iii) filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise) or receiving any

7

benefits from any lawsuit, arbitration, administrative or regulatory proceeding, or order in any jurisdiction based on an allegation that an action taken by the Released Entities, which is in compliance with the provisions of the Settlement Agreement, violates any legal right of any Settlement Class Member.

Finally, in addition to a request for a dismissal with prejudice, the Settlement Agreement includes a waiver of the provisions of Section 1542 of the Civil Code of California, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

These releases are unduly overbroad and unfairly dismiss claims of the Settlement Class which are unlikely to have been evaluated.

### III. THE SETTLEMENT IS UNFAIR, INADEQUATE AND UNREASONABLE BECAUSE THE AMOUNT OF THE SETTLEMENT TO BE DISTRIBUTED TO THE SETTLEMENT CLASS IS DISPROPORTIONATE TO THE DAMAGE CAUSED.

Defendants' payment of $24,000,000 in Settlement is wholly inadequate to compensate the class. There are some approximate 58 defined pet food "Defendants," in this action and some approximate 210 specifically named entities as "Released Entities" as well as well as "their respective insurers, parent companies, subsidiaries, affiliates, and all of their respective franchisees, and the officers, directors, trustees, shareholders, unit holders, partners, governors, managers, employees, agents, assignees, successors and heirs of all of them" and "any and all entities and individuals that are alleged to have handled, distributed, purchased for resale and/or redistribution, supplied, manufactured and/or sold or offered for sale Recalled Pet Food Products" benefitting from this Settlement. [*See* Stl. Agr. ¶1.T] [*See* Stl. Agr. ¶1.RR]. In simple math, this breaks down to approximately $100,000 per released party for one of the biggest and most inclusive disasters ever in the pet food industry. Objectors Blaszkowski estimate that the pet food industry does $14.5 billion in annual sales, making this $24,000,000 settlement for all U.S. and Canadian class members little more than a rounding error.

Moreover, the proposed allocation of the $24,000,000 Settlement is grossly unfair to the putative class:

| | |
|---|---|
| U.S. Attorneys' Fees and Costs | $6,000,000 |
| Canadian Attorneys' Fees and Costs | $1,440,000 |
| <u>Documented</u> Healthy Pet Screenings Reimbursement | $400,000 (class maximum) |
| <u>Documented</u> Reimbursement for Recalled Pet Food | $250,000 (class maximum) |
| <u>Documented</u> Economic Damage Claims | $15,910,000 |

8

For any category in which insufficient documentation is provided, the maximum recovery is a mere $900.00. Any amounts not disbursed are distributed to two U.S. and several Canadian charities – essentially a tax deduction for charities that support the pet food industry. None of the monies are really going to the class for the harm caused – the sale of contaminated pet food.

## IV. THE SETTLEMENT IS UNFAIR, INADEQUATE AND UNREASONABLE BECAUSE TYPE OF RELIEF PROPOSED IN THE SETTLEMENT IS INADEQUATE TO REMEDY THE HARM CAUSED TO THE CLASS.

The Settling Parties created a U.S. Testing Agreement to give the appearance that the Plaintiffs obtained some hard fought industry changes that will benefit consumers and their pets. However, rather than enact some industry changing testing procedure that would prevent similar future harm, only some, but not all, of the Defendants have agreed to a three paragraph testing agreement that expires a mere one year from the date of Preliminary Approval. The Testing Agreement is wholly inadequate because it does not specify which defendants will participate in the testing, does not identify the products to be tested, the testing process and procedures, require any independent scrutiny or oversight, allow public access to the testing procedures or result, or is for any length of time to be effective. Rather, the Testing Agreement is fabricated to create the impression that the settlement was about something more than a pay-off.

## V. THE AMOUNT AND METHOD OF ATTORNEYS FEES IS UNFAIR AND UNREASONABLE.

The Notice fails to comply with the intention of the amendment to Fed.R.Civ.P. 23 regarding attorney's fees. Rule 23(h) states in pertinent part:

(1) Motion for Award of Attorney Fees.
A claim for an award of attorney fees and nontaxable costs must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision, at a time set by the court. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.
(2) Objections to Motion.
A class member, or a party from whom payment is sought, may object to the motion.

The Notice states that any objections to the settlement, but no mention of an objection to class counsel's request for attorney's fees must be filed by September 12, 2008. The Notice does not contain any information that supports a fee award, only that class counsel will apply for a fee of up to 25% of the Settlement and Canadian Counsel will seek 6% of the Settlement. .

Therefore, the Notice fails to convey the basis for class counsel's fee, in violation of Rule 23(h). Pursuant to Rule 23(h), the Court should have required that class counsel file their initial motion for fees prior to the Notice being prepared so that the fee information could have been included in the Notice.

9

## CONCLUSION

The above listed factors demonstrate the following governing criteria and elements that are material to these objections:

A. The instant class member has a legally protectable interest in the litigation;

B. The interest possessed thereby may be impacted by the proposed Settlement as unfavorable disposition of this case;

C. The above-listed facts and allegations as well as the contents of the proposed Settlement and general release show that Objectors and the other unnamed settlement class members have raised a sufficient number of issues for this Court to withhold its final approval of the proposed Settlement;

D. The instant objections are timely filed;

E. These objections and the accompanying documents are presented to the Court as a matter of right; and

F. All of the legally required prerequisites material to these objections have been met.

WHEREFORE, the Objectors respectfully request that this Court:

A. Upon proper hearing, sustain the instant objections;

B. Upon a proper hearing, enter such Orders as are necessary and just to adjudicate the instant objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed Settlement.

Sincerely,

*[signature]*
Patrick N. Keegan, Esq.
**For KEEGAN & BAKER, LLP**

*[signature]*
Jason E. Baker, Esq.
**For KEEGAN & BAKER, LLP**
Attorneys for Objectors Renee Blaszkowski, Susan Peters, Jo-Ann Murphy, Yvonne Thomas, Ann Quinn and Cindy Tregoe

# PROOF OF SERVICE

I, **Stacy Johnson**, declare that I am over the age of 18 years and am not a party to the case; I am employed in the County of San Diego, California, where the mailing occurs; and my business address is 4370 La Jolla Village Drive, Suite 640, San Diego, California, 92122. I further declare that I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service; and that the correspondence shall be deposited with the United States Postal Service via First Class Mail on that same day in the ordinary course of business.

I further declare that on the date hereof I served a copy of the following documents: **OBJECTION TO SETTLEMENT** on the interested parties listed below:

Kenneth A. Wexler, Esq.
WEXLER TORISEVA WALACE LLP
55 West Monroe Street, Suite 3300
Chicago, IL 60603

Craig A. Hover, Esq.
HOGAN & HARTSON
555 Thirteenth Street, NW
Washington, DC 20004

DATED: September 12, 2008

Stacy Johnson