UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE PET FOOD PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1850 (All Cases)<br><br>Case No. 07-2867 (NLH)<br><br>The Honorable Noel L. Hillman |

**PLAINTIFFS' CO-LEAD COUNSEL'S RESPONSE TO OBJECTION
FILED BY JEFFREY L. WEINSTEIN AND ROBERT E. MARGULIES**

Dockets.Justia.com

# TABLE OF CONTENTS

I.   INTRODUCTION ....................................................................................1

II.  ARGUMENT...........................................................................................2

   A.   The Weinstein Objection Is Another in a
        History of Frivolous Objections. .................................................2

   B.   The Objections to Certification of the
        Settlement Class Are Without Merit. ..........................................4

        1.   Variations in State Law Do Not Pose an Obstacle to
             Certifying the Proposed Settlement Class. .......................5

        2.   No Purported Intra-Class Conflicts Preclude Certification of the
             Settlement Class or Warrant Sub-Classes. ......................8

   C.   The *Cy Pres* Provision Is Appropriate......................................11

   D.   The Objection to the Claims Process Is Frivolous. ...................13

III. CONCLUSION .....................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................6, 7, 8

*Barnes v. Fleetboston Fin. Corp.*,
    No. 01–10395–NG 2006 U.S. Dist. LEXIS 71072 (D.Mass. Aug. 22, 2006) ...............2

*Bonnett v. Ed. Debt Servs., Inc.*,
    No. 01–6528 2003 U.S. Dist. Lexis 9757 (E.D. Pa. May 9, 2003) ..................7

*Chin v. Chrysler Corp.*,
    182 F.R.D. 448 (D.N.J. 1998) ...............................................5, 11

*Cole v. General Motors Corp.*,
    484 F.3d 717 (5th Cir. 2007) .....................................................5

*Fears v. Wilhelmina Model Agency, Inc.*,
    No. 02 Civ. 4911, 2007 WL 1944343 (S.D.N.Y. Jul. 5 2007) .....................13

*Gunnels v. Healthplan Servs., Inc.*,
    348 F.3d 417 (4th Cir. 2003) ....................................................7

*Haynes v. Shoneys, Inc.*,
    No. 89–30093–RV 1993 WL 19915 (N.D. Fla. 1993) ............................14

*Hoxworth v. Blinder, Robinson & Co.*,
    980 F.2d 912 (3d Cir. 1992) .....................................................8

*In re Agent Orange Prod. Liability Litig.*,
    818 F.2d 179 (2d Cir. 1987) ....................................................14

*In re Bridgestone/Firestone, Inc.*,
    288 F.3d 1012 (7th Cir. 2002) .................................................5, 6

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D.Mich. 2003) ................................................9

*In re Community Bank of N. Va. & Guar. Nat'l Bank of Tallahassee
Second Mortgage Loan Litig.*,
    418 F.3d 277 (3d Cir. 2005) .....................................................7

*In re Deutsche Telecom AG Sec. Litig.*,
    229 F. Supp. 2d 277 (S.D.N.Y. 2002) ............................................9

*In re Flat Glass Antitrust Litig.*,
    191 F.R.D. 472 (W.D. Pa. 1999) .................................................8

*In re Ford Explorer Cases*,
    Sacramento Superior Court No. JCCP 4266 & 4270 ................................4

*In re Ford Motor Co. Ignition Switch Prods. Liability Litig.*,
    174 F.R.D. 332 (D.N.J. 1997) ...................................................5

*In re General Motors Corp. Dex-Cool Prods. Liability Litig.*,
    241 F.R.D. 305 (S.D. Ill. 2007) .................................................5

*In re Grand Theft Auto Video Game Consumer Litig.,*
2008 WL 2971526 (S.D.N.Y. 2008) .................................................................5

*In re Ins. Brokerage Antitrust Litig.,*
Civ. No. 04-5184, 2007 WL 5422227 (D.N.J. Feb. 16, 2007) ......................8, 9, 11

*In re Mexico Money Transfer Litig.,*
267 F.3d 743 (7th Cir. 2001) ....................................................................5, 6

*In re MotorSports Merch. Antitrust Litig.,*
160 F. Supp. 2d 1392 (N.D. Ga. 2001).............................................................12

*In re Prudential Ins. Co. Am. Sales Practice Litig.,*
278 F.3d 175 (3d. Cir. 2002) ....................................................................1, 11

*In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions,*
148 F.3d 283 (3d Cir. 1998) ........................................................................7

*In re Warfarin Sodium Antitrust Litig.,*
391 F.3d 516 (3d Cir. 2004) ...................................................................passim

*Jordan v Commonwealth Fin. Sys., Inc.,*
237 F.R.D. 132 (E.D. Pa. 2006) .....................................................................8

*Kramer v. Scientific Control Corp.,*
534 F.2d 1085 (3d Cir.), *cert. denied,* 429 U.S. 830 (1976) ............................4

*Manners v. Am. Gen. Life Ins. Co.,*
No. Civ.A. 3-98-0266, 1999 WL 33581944 (M.D. Tenn. Aug. 11, 1999) ...............14

*Masters v. Wilhelmina Model Agency, Inc.,*
473 F.3d 423 (2d Cir. 2007) .......................................................................12

*McCoy v. HealthNet, Inc.,*
No. 03-1801, 2008 U.S.Dist. LEXIS 60446 (D.N.J. Aug. 8, 2008) ........................4

*McGee v. Continental Tire North America, Inc.,*
(D.N.J. No. 06-cv-06234) .........................................................................1, 3

*Ortiz v. Eichler,*
616 F. Supp. 1046 (D. Del. 1985) ..................................................................9

*Park v. The Thompson Corp.,*
No. 05-cv-2931 (S.D.N.Y.) ...........................................................................3

*Pathe Computer Control Systems Corp v. Kinmont Indus., Inc.,*
955 F.2d 94, 97 (1st Cir. 1992) ................................................................4

*Perry v. FleetBoston Fin. Corp.,*
229 F.R.D. 105, 117-18 (E.D. Pa. 2005) .........................................................12

*Schwartz v. Dallas Cowboys Football Club, Ltd.,*
362 F. Supp. 2d 574 (E.D. Pa. 2005) .............................................................12

*Shaw v. Toshiba Am. Info., Inc.,*
91 F. Supp. 2d. 942 (E.D. Tex. 2000) .......................................................1, 2, 3

*Smith v. Sprint Communications Co.,*
387 F.3d 612 (7th Cir. 2004) ......................................................................14

*The Progressive Corp. Ins. Corp. Ins. Underwriting and Rating Practices Litig.,*
MDL No. 1519 (N.D. Fla.)............................................................................4

*Turner v. General Electric Co.*,
    05-cv-186 (M.D. Fla) ...................................................................................4

*Varacallo v. Mass. Mutual Life Ins. Co.*,
    226 F.R.D. 207 (D.N.J. 2005) ...............................................................2, 7, 14

*Walsh v. Ford Motor Co.*,
    130 F.R.D. 260 (D.D.C. 1990) ...................................................................5

**Statutes**

28 U.S.C. § 1927 ..............................................................................................1

**Other Authorities**

7AA C. Wright & A. Miller, Federal Practice Procedure, Civil § 1790 (2006)...................9

ALI, "Principles of Law of Aggregate Litigation," Discussion Draft No. 2, § 3.07 (April
    6, 2007).........................................................................................13

**Rules**

Fed. R. Civ. P. 11..............................................................................................4

Fed. R. Civ. P. 23(a) ..........................................................................................8

**Treatises**

Conte & Newberg, *Newberg on Class Actions* (4th Ed.), § 11.55 (2002)............................2

# I.  INTRODUCTION

This Court is not the first to receive the canned objection filed by Messrs. Jeffrey Weinstein and Robert Margulies ("Weinstein Objection").[1]  Similar or virtually identical such objections, specifically by Mr. Weinstein, have surfaced in proposed class settlements for years in state and federal courts throughout the country.

This time, the improper motive is reprehensibly clear.  Messrs. Weinstein and Margulies filed the same objection, on the same day, to another proposed class settlement pending in the District of New Jersey entitled *McGee v. Continental Tire North America, Inc.*, (D.N.J. No. 06-cv-06234) (Hon. Garrett E. Brown).  Audet Decl., Ex. 2.  *McGee* involves premature wear on original equipment tires.  This explains why the objection he filed *in this case, when arguing against class certification*, references "tires," not pet food.  *Id.* at pg. 5; Ex. 1 at pg. 4.  The objections even share the same *typographical* error, when arguing "the fact that the underlying litigation class could not be certified created a very week [sic] bargaining position. . . ."  *Id.*

The record before this Court demonstrates that the Weinstein Objection is not premised on a sincere interest in protecting the Settlement Class, nor a genuine effort to identify any legitimate inadequacy of the Settlement.  This type of abusive conduct merits inquiry by the Court into the motive behind the Objection.  *See, e.g., Shaw v. Toshiba Am. Info., Inc.*, 91 F. Supp. 2d. 942, 973-75 n.18 (E.D. Tex. 2000) (admonishing professional objectors for "canned" objections and "negligently created" or "suspiciously manufactured" documents submitted to court).  Plaintiffs' Co-Lead Counsel respectfully submit that sanctions under 28 U.S.C. § 1927 may be appropriate by this Court.  *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 278 F.3d 175, 192-93 (3d. Cir. 2002) (affirming imposition of sanctions on objector under 28 U.S.C. § 1927); Conte &

---

[1] *See*, Declaration of William M. Audet In Support of Plaintiffs' Co-Lead Counsel's Response to Objection Filed By Jeffrey L. Weinstein and Robert E. Margulies ("Audet Decl."), Ex. 1.

Newberg, *Newberg on Class Actions* (4th Ed.), § 11.55 (2002) ("An attorney's willful abuse of the judicial process may justify the imposition of sanctions.")

To date, over 9,357 pet owners have submitted claims for relief in this Settlement, evidencing an overwhelmingly positive response from the Class. As this Court is undoubtedly aware, many experienced attorneys have worked extraordinarily hard to accomplish this Settlement. By contrast, the professional objector attorneys who filed this Objection did not even care to proofread their cut-and-paste objection before pulling it off the proverbial shelf for use in this case.

As discussed more fully below, the record demonstrates that the Weinstein Objection is frivolous and utterly without merit in all respects. The Objection should be overruled in its entirety.

## II. ARGUMENT

### A. The Weinstein Objection Is Another in a History of Frivolous Objections.

Courts have criticized the practice of filing canned objections by "professional objectors who seek out class actions to simply extract a fee by lodging generic, unhelpful protests." *Shaw*, 91 F. Supp. 2d at 973. Federal courts are "increasingly weary of professional objectors." *Varacallo v. Mass. Mutual Life Ins. Co.*, 226 F.R.D. 207, 240-41 (D.N.J. 2005) (citations omitted). As the Court observed in *Barnes v. Fleetboston Fin. Corp.*, No. 01–10395–NG 2006 U.S. Dist. LEXIS 71072, at *3-4 (D.Mass. Aug. 22, 2006) :

> Repeat objectors to class action settlements can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements. The larger the settlement, the more cost-effective it is to pay the objectors rather than suffer the delay of waiting for an appeal to be resolved (even an expedited appeal). Because of these economic realities, professional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than the objectors.

Thus, as more and more courts are finding, these types of objectors serve no useful

purpose in the settlement process, and have only one ulterior motive: to force the negotiating parties, who actually worked to resolve the dispute, to pay the objector or the objector will hold up — including through a possible appeal — implementation of the settlement benefits to thousands of worthy settlement class members. Mr. Weinstein is no stranger to the practice, as detailed below.

In this case, the Weinstein Objectors seek the denial of class-wide relief for thousands of aggrieved pet owners based on the filing of a recycled pleading that likely took no more than fifteen minutes to cut and paste, tailor the caption, and file. The sheer carelessness with which this objection was prepared, as mentioned earlier, is demonstrated by the failure to delete reference to the "tires" at issue in *McGee* (which is the *other* District of New Jersey case Messrs. Weinstein and Margulies objected to on September 2, 2008). Faced with identical conduct by a professional objector, the Court in *Shaw* observed:

> In a paragraph complaining about coupons, this objector argues: "it is abundantly clear that *Sears* will enjoy increased floor traffic in its stores from those class members who actually use the coupon thereby benefitting *Sears* even further." (citations omitted) Well, "Sears" has nothing to do with this particular lawsuit. Moreover, there is no evidence — nor did this objector offer any evidence — that there are Toshiba "stores" that would enjoy increased floor traffic" from class members using their coupons [ . . .]" . . . The Court would venture to say this particular language has previously been filed in another class-action lawsuit involving "Sears." Perhaps that's where it should have stayed.

*Shaw*, 91 F. Supp. 2d at 974 n.18.

Before addressing the "content" of the Weinstein Objection, the following history deserves mention:

(1)     In *Park v. The Thompson Corp.*, No. 05-cv-2931 (S.D.N.Y.), Mr. Weinstein filed objections similar to those here, which resulted in the filing of a motion

for sanctions under Federal Rule 11.[2] Audet Decl., Ex. 3. Plaintiffs' counsel's letter to the Court included an affidavit filed in *Turner v. General Electric Co.*, 05-cv-186 (M.D. Fla). *Id.* In that affidavit, *Turner* Class Counsel testified that Mr. Weinstein advised Class Counsel that the parties could "work around the rules" and the Weinstein objections could be withdrawn if "settlement Class Counsel agreed to make a $125,000 contribution to a charity of Mr. Jeffrey Weinstein's "choosing." *Id.* Based on this conversation, Class Counsel declared that "[Mr. Weinstein] is pursuing this for his own interest in obtaining compensation for himself." *Id.*

(2) In *The Progressive Corp. Ins. Corp. Ins. Underwriting and Rating Practices Litig.*, MDL No. 1519 (N.D. Fla.), Class Counsel testified to an identical attempt by Mr. Weinstein to be paid off in exchange for the withdrawal of his objection. Audet Decl., Ex. 4.

(3) Messrs. Weinstein and Margulies raised a similar broad array of objections in *McCoy v. HealthNet, Inc.*, No. 03-1801, 2008 U.S.Dist. LEXIS 60446, at *70 (D.N.J. Aug. 8, 2008) — all of which were rejected by Judge Hochberg. Audet Decl., Ex. 5 (Objection in *McCoy*).

(4) Mr. Weinstein recently objected to the settlement in the California state court action, *In re Ford Explorer Cases*, Sacramento Superior Court No. JCCP 4266 & 4270, in which his wife, Mrs. Christi Weinstein, also served as an objector. Audet Decl., Ex. 6. Mrs. Weinstein also served as the objector in the pleading filed before Judge Hochberg in *McCoy*.[3] Audet Decl., Ex. 6.

**B.     The Objections to Certification of the Settlement Class Are Without Merit.**

---

[2] Rule 11 sanctions against Mr. Margulies, the Weinstein Objectors' local counsel, were affirmed by the First Circuit in *Pathe Computer Control Systems Corp v. Kinmont Indus., Inc.*, 955 F.2d 94, 97 (1st Cir. 1992), for making a motion without plausible legal ground and "interposed for 'purposes of delay.'"

[3] *Kramer v. Scientific Control Corp.*, 534 F.2d 1085, 1093 (3d Cir.), *cert. denied*, 429 U.S. 830 (1976) (a motion for disqualification of an attorney acting as class counsel should be granted where even an appearance of improper conflict of interest exists because the close relationship of the putative class representatives and the putative class attorney).

1.   **Variations in State Law Do Not Pose an Obstacle to
     Certifying the Proposed Settlement Class.**

The Weinstein Objection contends that this Court may not certify a nationwide

class in the face of variations between state laws governing breach of warranty claims.

The Objection relies almost entirely on cases in which courts have refused to certify

nationwide litigation classes for trial in the face of such variations when ruling on a

contested motion for class certification. *See Cole v. General Motors Corp.*, 484 F.3d 717

(5th Cir. 2007); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002); *Walsh

v. Ford Motor Co.*, 130 F.R.D. 260 (D.D.C. 1990); *Chin v. Chrysler Corp.*, 182 F.R.D.

448 (D.N.J. 1998); *In re Ford Motor Co. Ignition Switch Prods. Liability Litig.*, 174

F.R.D. 332 (D.N.J. 1997); *In re General Motors Corp. Dex-Cool Prods. Liability Litig.*,

241 F.R.D. 305 (S.D. Ill. 2007).[4] In doing so, the Weinstein Objection misses the

distinction between litigation classes and settlement-only classes which both the Third

Circuit and other courts have recognized as key in this context.[5] This distinction is

dispositive, as courts throughout the country have certified classes for purposes of

settlement only, and the settlement-only class proposed here may be certified.

In fact, courts in the Third Circuit and elsewhere have recognized that, where

nationwide litigation classes might well fail in the face of state law variations such as

---

[4] In fact, when evaluating the issue of state law variations, this Court in *Chin* expressly distinguished other cases that dealt with certification of settlement-only classes. 182 F.R.D. at 459. The Southern District of Illinois in *In re General Motors Corp. Dex-Cool Products Liability Litig.* explicitly recognized this distinction as well. 241 F.R.D. at 324 (citing *In re Mexico Money Transfer Litig.*, 267 F.3d 743, 746-47 (7th Cir. 2001)).

[5] The Weinstein Objection also cites *In re Grand Theft Auto Video Game Consumer Litig.*, 2008 WL 2971526 (S.D.N.Y. 2008), which did evaluate a settlement-only class. Even the court in that case, however, recognized that there were two lines of cases, one line finding "the predominance requirement to be satisfied despite differences in the underlying state laws applicable to putative class members' claims" (citing *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 529 (3d Cir. 2004) (discussed below) and other cases) and the other line finding the predominance requirement was not met. *Id.* at *16-*17. The court further noted that "[a] common distinction separating these two lines of cases is the presence or absence of settlement." *Id.* The court simply held that, under the particular facts of that case, "differences in the applicable state laws [went] to the heart of Settlement Class members' substantive claims, and thus undermine[d] the Settlement Class's cohesiveness." *Id.* at *17. As shown below, any differences in state laws in the instant matter do not in any way undermine the cohesiveness of the proposed settlement-only class.

those complained of in the Weinstein Objection here, nationwide settlement-only classes may be suitable for certification despite such variations. For example, in *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 529 (3d Cir. 2004), the Third Circuit expressly rejected the argument of various objectors to the certification of a nationwide class that "variations in and inconsistencies between the state consumer fraud and antitrust laws of the fifty states defeat the commonality and predominance requirements of Rule 23." Like the Weinstein Objectors here, the objectors in *Warfarin* pointed to "the Seventh Circuit's decision in *In re Bridgestone/Firestone Inc.*, 288 F.3d 1012 (7th Cir. 2002). . . ." *Id.* However, the Third Circuit recognized immediately that "*Bridgestone* is distinguishable from the instant matter because that case concerned certification of a class for purposes of litigation, not a class solely for purposes of settlement, which is at issue in this case. . . . The difference is key." *Id. See also, In re Mexico Money Transfer Litig.*, 267 F.3d 743, 747 (7th Cir. 2001) ("Given the settlement, no one need draw fine lines among state-law theories of relief.").

The decision of the United States Supreme Court in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) does not alter this conclusion in the manner that the Weinstein Objection suggests. In fact, the Third Circuit in *Warfarin* took *Amchem* into full account in reaching its determinations (*see, e.g.*, 391 F.3d at 527-29), as did the Seventh Circuit in *In re Mexico Money Transfer Litigation* (*see, e.g.*, 267 F.3d at 747). Indeed, the Supreme Court in *Amchem* observed that "settlement is relevant to a class certification." 521 U.S. at 619. Although the Supreme Court only explicitly recognized a difference between litigation and settlement-only classes as it relates to questions of manageability (*see* 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems")), the Third Circuit has recognized that the distinction impacts issues such as commonality and predominance as well even in the wake of *Amchem. See, e.g., In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 530 ("We agree

with the District Court that the fact that there may be variations in the rights and remedies available to injured class members under the various laws of the fifty states in this matter does not defeat commonality and predominance. . . . In certifying a nationwide settlement class, the District Court was well within its discretion in determining that variations between the laws of the different states were insufficient to defeat the requirements of Rule 23."). *See also, Gunnels v. Healthplan Servs., Inc.*, 348 F.3d 417, 440 (4th Cir. 2003) (chastising the dissent for "disregard[ing] the import of the *Amchem* Court itself that 'settlement is relevant to a class certification,' and that Rule 23(e) affects a court's evaluation of predominance."); *Varacallo*, 226 F.R.D. at 232 ("Here, the case is not being certified for litigation purposes, thus, as in *Prudential*, predominance is not defeated by any differences in the various laws of the fifty states.").[6]

As the Third Circuit has repeatedly observed, the Supreme Court's primary concern in *Amchem* was whether even a settlement-only class might prove unwieldy if certain whole categories of absent class members lacked adequate representation. *See, e.g., In re Community Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortgage Loan Litig.*, 418 F.3d 277, 300 (3d Cir. 2005) ("In making this [certification] analysis, the district court may take the terms of the proposed settlement into consideration. The central inquiry, however, is the adequacy of representation."); *In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 308 (3d Cir. 1998) ("Indeed the key to *Amchem* appears to be the careful inquiry into adequacy of representation."). It was precisely this concern that led the Supreme Court to insist that "[s]ubdivisions (a) and (b) [of Rule 23] focus court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class

---

[6] Furthermore, as noted above, in the context of a settlement-only class certification, the predominance requirement "is readily satisfied, where the core claims asserted by each Class member all arise out of the same transaction or occurrence[.]" *Bonnett v. Ed. Debt Servs., Inc.*, No. 01–6528 2003 U.S. Dist. Lexis 9757, *12-13 (E.D. Pa. May 9, 2003). Here, all class claims arose by definition out of the circumstances surrounding the recall of various pet food products in early 2007.

representatives. That dominant concern persists when settlement, rather than trial, is proposed." *Amchem*, 521 U.S. at 621. In this case, as demonstrated below, no conflicts exist between absent class members that could disrupt the cohesiveness or unity of the proposed settlement-only class here.

## 2. No Purported Intra-Class Conflicts Preclude Certification of the Settlement Class or Warrant Sub-Classes.

The Weinstein Objection also argues, in essence, that purported intra-class conflicts exist that otherwise preclude a finding of adequate representation of the Settlement Class or now require the creation of separate subclasses. Specifically, the Objection challenges the fact that the Settlement Class does not expressly account for certain variations in state warranty laws, the alleged need for individual participation with regard to certain issues, or the inclusion in the Settlement Class of persons who have not suffered damages. *See* Weinstein Obj., ¶ 4 at 4. This objection is also without merit.

### a. The Settlement Class Is Adequately Represented

A class is adequately represented for purposes of certification under Fed. R. Civ. P. 23(a) where it is (1) represented by adequate class counsel and (2) the interests of the class representatives are not antagonistic to those of the rest of the class. *See In re Ins. Brokerage Antitrust Litig.*, Civ. No. 04-5184, 2007 WL 5422227, at *14 (D.N.J. Feb. 16, 2007) (citing *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992)). In order to find an "antagonism between [the named Plaintiffs'] objectives and the objectives of the [class]," warranting separate subclasses, there would need to be a "legally cognizable conflict of interest" between the two groups. *Id.* at 15 (citing *Jordan v Commonwealth Fin. Sys., Inc.*, 237 F.R.D. 132, 139 (E.D. Pa. 2006)). Indeed, the conflict must be substantial — courts have found that a conflict will not be sufficient to defeat a class action "unless [that] conflict is apparent, imminent, and on an issue at the very heart of the suit." *Id.* (citing *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 482 (W.D. Pa. 1999)). Thus, where the central questions regarding the defendants' alleged

conduct and the impact of that conduct on both the named plaintiffs and the absent class members animate "in an identical fashion" the claims of both groups, and where the class representatives have advocated as vigorously for themselves as for the absent class members, the adequacy requirement is met. *Id. C.f. In re Warfarin Sodium Antirust Litig.*, 212 F.R.D. 231 (D.Del. 2002) (adequacy of representation requirement met where named plaintiffs shared a strong interest in establishing liability of defendant and seeking the same types of damages for the same types of injuries); *In re Cardizem CD Antirust Litig.*, 218 F.R.D. 508, 518-19 (E.D.Mich. 2003) ("Each Class member … has a common interest in establishing that he, she or it was financially injured by the Defendants' conduct and in an aggregate damages computation.").

Moreover, "a class need not be divided into subclasses merely because different groups have alternative theories for recovery, or because those groups have different factual bases for relief." *See In re Ins. Brokerage*, 2007 WL 5422227, at *17 (citing 7AA C. Wright & A. Miller, Federal Practice Procedure, Civil § 1790 (2006); *Ortiz v. Eichler*, 616 F. Supp. 1046 (D. Del. 1985) (declining to create subclasses where different groups within a potential lass sought recovery under different legal theories, as no divergent interests existed among class members); *In re Deutsche Telecom AG Sec. Litig.*, 229 F. Supp. 2d 277, 283 (S.D.N.Y. 2002) (holding that subclasses would not be created despite the fact that the class encompassed plaintiffs whose claims rose from two different disclosures by defendants as the respective claims arose out of a "common core of facts and legal issues, deal with overlapping or intertwined defendants, and attacked various aspects of a uniform course of conduct."). Thus, the fact that a settlement may allocate different percentages of the settlement fund to different members of a settlement class based on the strengths and weaknesses of various claims is insufficient to demonstrate a conflict requiring the creation of subclasses. *In re Ins. Brokerage*, 2007 WL 5422227, at *18.

The standard for adequate representation is clearly met here. The putative Class Representatives all purchased and/or fed their pets one or more Recalled Pet Food Products during the same relatively short period of time, and they were united with the rest of the Settlement Class in seeking to establish the Defendants' liability for the contaminated products and to maximize recovery of all damages associated with the Recalled Pet Food Products. Accordingly, the interests of the putative Class Representatives are aligned with the rest of the Settlement Class and there are no legally cognizable antagonisms going to the heart of the litigation between class members. Therefore, there are no adequacy of representation issues precluding class certification or requiring the creation of subclasses.

### b. The Other Specific Objections to Certification Of the Settlement Class Also Are Without Merit.

#### i. Negligence Claims.

The Weinstein Objection contends that no class can be certified because "individual participation is required to prove a negligence claim ... to prove damages." Weinstein Obj., ¶ 4.1 at 4. That argument goes to predominance, not adequate representation, and does not preclude certification of a settlement class. *See, e.g., In re Warfarin Sodium*, 212 F.R.D. at 249 (need for individual damages calculations does not defeat class certification).

#### ii. Individual Participation for Warranty Claims.

The Weinstein Objection argues that individual participation is required to determine whether there has been a breach of warranty or, depending on governing law, reliance on any defendant's warranty. Weinstein Obj., ¶¶ 4.2 and 4.3, at 4. As with their negligence objection, these arguments go to predominance, not adequacy of representation. Further, such variations do not go to the core issues of this MDL and therefore do not preclude certification of the Settlement Class. *See In re Ins. Brokerage*,

2007 WL 5422227, at *15. *See also, In re Prudential*, 148 F.3d at 314 (individual issues of reliance did not preclude certification of settlement class).

### iii. Damages Subclasses.

Without explanation or citation to any authority, the Weinstein Objection contends that "separate subclasses are required to represent the interests of those class members that suffered damages and those that did not." Weinstein Obj., ¶¶ 4.1 and 4.2 at 4. This objection is meritless because there is no such requirement under the law. *See, e.g., In re Warfarin*, 212 F.R.D. at 249 (settlement class can be certified even where some individual, absentee class members may later prove not to be injured; individual damage determinations can be left to the damages phase of the litigation); *In re Prudential Ins. Co. Sales Practices Litig.,* 962 F. Supp. 550, 559 (D.N.J. 1997), *aff'd* 148 F.3d 283. ("class actions routinely include members who may or may not have suffered individualized damage").

### iv. Privity Requirements.

The Weinstein Objection also argues that variations in state warranty laws as to whether there must be privity with the defendant precludes class certification or requires subclasses. Weinstein Obj., ¶4.1 and 4.4 at 4. This argument also should be rejected. *Chin v. Chrysler Corp.*, 182 F.R.D. 448 (D.N.J. 1998), a case cited in the Weinstein Objection for the proposition that variations on the privity requirement preclude certification, is inapposite, as that case involved a litigation class and therefore presented manageability concerns not at issue for certification of a settlement class. *See* § B.1, *supra*. The argument also fails to explain how such variations go to the core issues of this MDL. *See In re Ins. Brokerage*, 2007 WL 5422227, at *15.

### C. The *Cy Pres* Provision Is Appropriate.

The Weinstein Objection further contends that the inclusion of a *cy pres* component in the Settlement Agreement renders the settlement unreasonable and unfair. *See* Weinstein Obj., at ¶ 5.3. This objection is not only groundless, but further

11

demonstrates the canned nature of the objection. The essence of the objection is that money should be going to class members instead of the designated animal-welfare charities. Yet, under *this* Settlement, the *cy pres* distribution is triggered only if there are residual funds, *after all deserving settlement class members have already been fully compensated.*

Apart from this fact, that is alone dispositive, it remains that approval of a settlement providing *cy pres* relief to dispose of unclaimed settlement funds is well within the discretion of this Court. *Cy pres* distributions in connection with class settlements are approved routinely as a mechanism to distribute unclaimed funds. *See Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 117-18 (E.D. Pa. 2005) (noting that "courts are not in disagreement that *cy pres* distributions are proper in connection with a class settlement, subject to court approval of the particular application of the funds"); *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 362 F. Supp. 2d 574, 577 (E.D. Pa. 2005) (ordering *cy pres* distribution of unclaimed funds); *In re MotorSports Merch. Antitrust Litig.*, 160 F. Supp. 2d 1392, 1394-96 (N.D. Ga. 2001) (same).

The Weinstein Objection's reliance on *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007) is misplaced. The court in *Wilhelmina* did not hold that *cy pres* distributions are inappropriate. Nor did it even "strongly hint," as the Weinstein Objection contends, that *cy pres* distributions are improper. To the contrary, that decision held that *cy pres*, along with various other means of distribution, are well within the Court's discretion. *Wilhelmina*, 473 F.3d at 435 ("we are not yet prepared to say that the District Court abused its discretion in allocating the Excess Funds under the Cy Pres doctrine.") Instead, the Second Circuit held that the district court erred in concluding that it lacked any discretion in determining how to distribute unclaimed portions remaining in the settlement fund, because, in fact, the district court had the discretion to distribute the unclaimed funds according to *cy pres* principles or to class members who had already claimed. *Id.* The Second Circuit remanded the case to the district court so that it could

consider whether to order *cy pres* or other relief. *Id.* And, having considered such

alternative relief on remand, the district court again approved the *cy pres* distribution

provision – a decision the Weinstein Objection fails to mention. *See Fears v. Wilhelmina*

*Model Agency, Inc.,* No. 02 Civ. 4911, 2007 WL 1944343, at *10-11 (S.D.N.Y. Jul. 5

2007) (ordering residual settlement fund to be distributed *cy pres* to independent

foundation).

 The Weinstein Objection also relies on a draft discussion paper, to be presented at

some undetermined time by the American Law Institute, that suggests that distributions

to class members, where appropriate, are preferable to *cy pres* distributions. *See*

Weinstein Obj. at ¶ 5.3 (citing ALI, "Principles of Law of Aggregate Litigation,"

Discussion Draft No. 2, § 3.07 (April 6, 2007)). This paper is not binding authority on

this Court, and even assuming *arguendo* that it was entitled to any consideration, the

discussion paper merely states that distribution to class members, *where feasible*, is

preferable to *cy pres* distribution. *Id.* Specifically, it proposes that *cy pres* be limited to

circumstances in which direct distribution to "individual class members is not

economically feasible, or where funds remain after class members are given a full

opportunity to make a claim." *Id. That is precisely the case here.* Settlement Class

Members have full opportunity to come forward and submit a claim for reasonable

economic damages, and only *after* that claim process is complete will any funds is

consistent with how *cy pres* has been used in other cases approved by Courts of Appeals

and is, therefore, perfectly appropriate.[7]

### D. <u>The Objection to the Claims Process Is Frivolous.</u>

 Lastly, the Weinstein Objection contends that the claims process denies due

process to Settlement Class Members because the determinations of the Third Party

---

[7] The charities selected by the parties are entirely appropriate for the unclaimed funds, if any. The Delta Society provides and directs services to promote human-animal bonding, especially for the sick and disabled. The North Share Animal League is the world's largest rescue organization for dogs and cats.

13

Administrator are final, binding and not subject to appeal. *See* Weinstein Obj. at ¶ 5.2.
Neither case cited in the Objection — *Smith v. Sprint Communications Co.*, 387 F.3d
612, 614 (7th Cir. 2004) and *In re Agent Orange Prod. Liability Litig.*, 818 F.2d 179, 185
(2d Cir. 1987) — supports rejection of the Settlement Agreement. The Seventh Circuit's
decision in *Smith* to overturn the district court's approval of a class action settlement had
*nothing* to do with whether the settlement provided for a right to appeal decisions made
by the claims administrator. Rather, the Seventh Circuit disapproved of the settlement
because of the presence of serious conflicts between settlement class members that could
not be remedied by having law professors make adjustments to the distribution of
settlement funds based on variations in state law, as the parties proposed. *Smith*, 387
F.3d at 614.

Likewise, the issue before the court in *Agent Orange* was *not* whether settlement
class members should have been provided with the right to appeal the decisions of the
claims administrator, but rather the degree of oversight by the court over the
administration of settlement funds by an independent foundation. *In re Agent Orange*,
818 F.2d at 185. Indeed, neither the *Smith* nor *Agent Orange* decision even *mentions*
whether the claims process was subject to appeal. Moreover, and most importantly, the
Weinstein Objection argument ignores numerous decisions by courts in this Circuit and
elsewhere approving class action settlements that provide no right to appeal the
determinations by claims administrators or other non-judicial persons as to the class
members' entitlement to relief. *See, e.g., Varacallo*, 226 F.R.D. at 243; *Manners v. Am.
Gen. Life Ins. Co.*, No. Civ.A. 3-98-0266, 1999 WL 33581944, at *23 (M.D. Tenn. Aug.
11, 1999); *Haynes v. Shoneys, Inc.*, No. 89–30093–RV 1993 WL 19915, at *40-41 (N.D.
Fla. 1993).

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Weinstein Objection be overruled in its entirety.

October 3, 2008                           **TRUJILLO RODRIGUEZ & RICHARDS, LLC**

By:    /s/ Lisa J. Rodriguez
       Lisa J. Rodriguez
       8 Kings Highway West
       Haddonfield, New Jersey  08033
       Telephone: (856) 795-9002
       Facsimile: (856) 795-9887

       *Liaison Counsel for Plaintiffs*

       William M. Audet
       **AUDET & PARTNERS LLP**
       221 Main Street, Suite 1460
       San Francisco, California
       Telephone: (415) 568-2555
       Facsimile: (415) 568-2556

       Kenneth A. Wexler
       Mark J. Tamblyn
       **WEXLER WALLACE LLP**
       55 West Monroe Street, Suite 3300
       Chicago, Illinois  60603
       Telephone: (312) 346-2222
       Facsimile:  (312) 346-0022

       Sherrie R. Savett
       Russell D. Paul
       **BERGER & MONTAGUE, P.C.**
       1622 Locust Street
       Philadelphia, Pennsylvania  19103
       Telephone: (215) 875-3000
       Facsimile: (215) 875-4636

       Scott A. Kamber
       **KAMBEREDELSON**
       11 Broadway, 22nd Floor

New York, New York 10004
Telephone: (212) 920-3072
Facsimile: (212) 202-6364

Stuart A. Davidson
**COUGHLIN STOIA GELLER**
  **RUDMAN & ROBBINS LLP**
120 E. Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
Telephone: (561) 750-3000
Facsimile: (561) 750-3364

Steve W. Berman
Jeniphr Breckenridge
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Fifth Avenue, Suite 2900
Seattle, Washington  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

*Co-Lead Counsel for Plaintiffs*