## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE:  PET FOOD PRODUCTS LIABILITY LITIGATION | Hon. Noel L. Hillman<br><br>**Civil No. 07-2867 (NLH/AMD)**<br><br>MDL Docket No. 1850<br><br>**JOINT OPPOSITION TO MOTION OF MARGARET PICUS AND DANIEL KAFFER TO INTERVENE**<br><br>Hearing Date:  October 14, 2008<br>Hearing Time:  9:30 a.m.<br>Judge:          Hon. Noel L. Hillman |

## **INTRODUCTION**

Margaret Picus and Daniel Kaffer (collectively "Objectors") are two individuals claiming to be members of the Settlement Class and claiming interests in separate lawsuits outside the Pet Food Recall MDL that assert claims based on alleged mislabeling of a variety of pet food products as "Made in the USA."  Both Objectors attempt to intervene in this MDL to object and to seek discovery based on the same objections each separately makes to the Settlement Agreement – that is, that the Settlement impermissibly releases claims that have nothing to do with the Pet Food Recall Litigation and that putative Settlement Class Members with product purchase claims were inadequately represented.  But the Objectors' rights with respect to the Settlement Agreement are fully preserved without intervention, and neither can demonstrate that intervention would be proper or discovery warranted.  Moreover, their objections to the Settlement are based on their motion on a mischaracterization of the scope of the Settlement Agreement.  Contrary to their assertions, the Pet Food Recall MDL Settlement will not release all of their alleged "Made in the USA" claims, but rather only the small subset of those claims

Dockets.Justia.com

that relate to the Recalled Pet Food Products, as defined in the Settlement Agreement. And, as to those claims, the Objectors' interests are adequately represented, making intervention and discovery unwarranted.

## BACKGROUND

### The *Picus* Action

Picus is the named plaintiff in a putative class action that expressly and purposefully **excludes the claims being settled in this action**. *See Picus v. Wal-Mart Stores, et al.*, Case No. 2:07-CV-00682- PMP-LRL ("*Picus*"), currently pending in the United States District Court for the District of Nevada. In *Picus*, plaintiff asserts claims on behalf of a putative class who purchased Ol' Roy brand dog food between April 2003 and March 2007. The gravamen of the case is that during this time period packages of certain varieties of Ol' Roy products were labeled "Made in USA" when they allegedly contained ingredients originating abroad. After the defendants filed a motion to deny class certification in that case, Ms. Picus amended her definition to expressly exclude those who asserted claims in the Pet Food Recall MDL. *Picus*, Doc. No. 56, Amd. to Compl. ("Excluded from this class are those persons who have received a full refund of their purchases of Ol' Roy pet food and those persons who have asserted a legal action in MDL 1850 or otherwise claim injury to their pet as a result of consumption of Ol' Roy brand pet food."). Discovery in the *Picus* case is currently stayed pending the District Court's decision regarding class certification. *Picus*, Doc. No. 55, 12/20/07 Stipulation and Order Concerning Amendment to Complaint and Briefing on Motion to Deny Class Certification.

### The *Kennedy* Action

Mr. Kaffer claims to be a former member of a putative class alleged in a case that has been dismissed entitled *Kennedy v. Natural Balance*, Case No. 07-CV-1082 (S.D. Cal.) ("*Kennedy*"). The *Kennedy* action also alleged claims against pet food manufacturer Natural

Balance based on its alleged mislabeling of certain of pet food products containing imported ingredients as being "Made in the USA." *See Kennedy*, Doc. No. 18, Amd. Compl. *Kennedy* was brought on behalf of a putative class of persons who purchased Natural Balance brand pet food products labeled as 'Made in the USA' since May 3, 2003. *Kennedy*, Doc. No. 60, 6/12/2008 Order Denying Class Cert.[1] In *Kennedy*, after some discovery was conducted, the district court denied class certification and dismissed the action. *Kennedy*, Doc. Nos. 60, 64, 6/12/2008 Order Denying Class Cert. and 8/13/08 Order Dismissing Case for Lack of Subject Matter Jurisdiction. Those decisions have been appealed. *Kennedy*, Doc. No. 66, 8/15/08 Notice of Appeal.

## ARGUMENT

### I. INTERVENTION AS OF RIGHT IN THE PET FOOD RECALL MDL IS UNWARRANTED.

An applicant seeking intervention as of right must show that: (1) he has a significant protectable interest relating to the property that is the subject matter of the litigation; (2) absent intervention, his interest will be impaired or impeded; (3) the existing parties to the action do not adequately represent his interest; and (4) the motion must be timely made. Fed. R. Civ. P. 24(a)(2); *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 365-66 (3rd Cir. 1995). The moving party bears the burden of establishing his right to intervene, and failure to satisfy any one of the criteria justifies denial of the application. *Id.* Here, Objectors fail to satisfy these criteria because, as explained below: (a) intervention is unnecessary to protect the Objectors' interests in prosecuting their "Made in the USA" claims because, to the extent those claims may be implicated here, they could have opted out of or objected to the Settlement; (b) intervention is unnecessary since Objectors already have raised their objections

---

[1] Mr. Kaffer was neither a named plaintiff in *Kennedy* nor an appointed representative of the class or any subclass. Because class certification was denied in *Kennedy*, Mr. Kaffer's rights are unaffected by that action. This renders *Kennedy* and any orders in that case (which Objectors note is currently on appeal) immaterial here.

without intervening; (c) the Objectors overstate their interests in the litigation; (d) the existing parties *do* adequately represent the Objectors' interests in the Pet Food Recall MDL; and (e) the Objectors' motion was not timely made.[2]  Accordingly, their request for intervention as of right should be denied.

## A. Intervention is Inappropriate Where a Class Member Can Opt Out of or Object to the Settlement.

Intervention is unnecessary because the Objectors had the right to opt out of the Settlement, they have exercised the right to object to it, and they have the right to appear at the hearing in support of their objections and the right to appeal.

Although the motion is couched in terms of "class representation," Ms. Picus and Mr. Kaffer seek to protect their interests in the so-called "Made in the USA" claims.  Like any members of the Pet Food Recall MDL Settlement Class, Ms. Picus and Mr. Kaffer had the right to opt out of the proposed Settlement if they found any of its terms unfair or otherwise unsatisfactory.  MDL Doc. 153, Order of 5/30/08; Settlement Agreement § II.F.1; *see, e.g., Hawaii-Pacific Venture Capital Corp. v. Rothbard,* 564 F.2d 1343, 1346 (9th Cir. 1977).[3]

Ms. Picus and Mr. Kaffer acknowledge that they received timely notice of the proposed Settlement and do not contend that they were unaware of their right to opt out or were given

---

[2]      More fundamentally, Objectors fail to explain what they think it would mean to intervene into an MDL consisting of over 100 putative class actions.  They do not seek to consolidate their actions into the Pet Food Recall MDL, nor do they identify any particular action into which they wish to intervene as parties.  At its core, their Motion to Intervene makes no sense.

[3]      Although Objectors claim to represent a putative "subclass" of purchase-only plaintiffs, no such "subclass" has ever been identified by the Court or the parties and no court has appointed either Mr. Kaffer or Ms. Picus as the representative of any purchaser of pet food products.  Mr. Kaffer was not a named plaintiff in the *Kennedy* action.  Because class certification was denied in *Kennedy*, neither Mr. Kaffer nor anyone else has been appointed a class representative for those claims.  *Kennedy*, Doc. No. 60, 6/12/2008 Order.  Class certification has not been adjudicated in *Picus*, so Ms. Picus has not been appointed a class representative either.  Consequently, Objectors lack standing to represent the purported "subclass" and, in any event, have no right to intervene on that basis.  *See Grilli v. Metropolitan Life Ins. Co.*, 78 F.3d 1533, 1536-38 & fn.5 (11th Cir. 1998) (intervention properly denied to class settlement objectors purporting to represent discrete subclass where no court "had appointed [them] as the representatives of any class of purchasers").  Moreover, as demonstrated in section I.C below and explained more fully in Plaintiffs' Memorandum of Law in Support of Motion for Final Approval of Class Action Settlement, there is no need for this Court to create a subclass of persons with purchase only claims, as such persons are already adequately represented in the Pet Food Recall MDL.

insufficient time to do so. Yet they make no attempt to explain why they did not take this simple step, which would have preserved their individual rights to pursue their "Made in the USA" claims based on purchases of Recalled Pet Food Products, whether in the *Picus* and *Kennedy* actions or elsewhere.[4] Because they chose not to protect their rights by opting out, the Objectors should not be permitted to intervene based on a purported need to protect those same rights. *See Grilli*, 78 F.3d at 1536-38 (affirming denial of motion to intervene by objectors to a class settlement who claimed to represent a distinct subclass but made a "tactical decision" not to opt out and protect their interests by opting out). Objectors cannot claim a need to intervene to protect rights now that they made the tactical decision not to protect.

Objectors' intervention motion also ignores the fact that Mr. Kaffer and Ms. Picus have filed objections to the proposed settlement, even though their Motion to Intervene does little more than parrot the arguments advanced in their objections. Objectors have been and will be afforded a full and fair opportunity to make their objections and argue them at the fairness hearing. Intervention is not a prerequisite for the right to appear at that hearing: "***Any member of the Settlement Class*** that has not properly filed a request to Opt Out in the manner set forth below may appear at the Fairness Hearing in person or by counsel and ***may be heard, to the extent allowed by the Court, either in support of or in opposition to the fairness, reasonableness and adequacy of the Settlement*** ..." MDL, Doc. No. 153, Order of 5/30/08, at 4 (emphasis added).

Finally, by asserting their objections, Mr. Kaffer and Ms. Picus also have preserved their right to appeal final approval of the Settlement, and denial of their request to intervene is

---

[4]     Indeed, Mr. Kennedy, the named plaintiff in *Kennedy* and Mr. Kaffer's one-time putative class representative, opted out of the Settlement for some of the same reasons expressed by Mr. Kaffer, namely "I am pursuing my own litigation against Natural Balance *for a much larger period of time* than just the recall." *Kennedy*, Doc. No. 54, Exh. 1, 6/2/08 Opt-Out Ltr. to Claims Administrator.

appropriate. *See Devlin v. Scardelletti*, 536 U.S. 1, 13 (2002); *Weinman v. Fid. Capital Appreciation Fund*, 354 F.3d 1246, 1257 (10th Cir. 2004); *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 69 (S.D.N.Y. 2003). The Supreme Court has explained that any rejected objections can be addressed easily by the court of appeals without adding an additional layer of complexity by requiring the unnamed class members to intervene before appeal of the settlement approval may be heard. *Devlin,* 536 U.S. at 12.[5] This reasoning applies with special force here, where the MDL parties have expended significant energies and assets to craft a landmark settlement.

**B.** **Objectors Exaggerate the Scope of the Release and the Degree to Which it Would Affect the *Picus* and *Kennedy* Actions.**

Ms. Picus and Mr. Kaffer seek to intervene to protect claims they wrongly argue are released by the Settlement. They contend that the Pet Food Recall MDL settlement will entirely eliminate their "Made in the USA" claims, arguing that "the release in the MDL settlement applies to all [mislabeling] claims, even those [claims arising from] sales as in *Picus* and *Kennedy* which occurred years before the contamination[,]" and relating to "mislabeled pet food that was not recalled[.]" Motion at 8, 14. As discussed in the Plaintiffs' Memorandum of Law in Support of Motion for Final Approval of Class Action Settlement, these arguments are flatly incorrect: the Settlement does not release "Made in the USA" claims relating to non-Recalled Pet Food Products.[6] Accordingly, the interests they claim to represent in the Pet Food Recall MDL –

---

[5]     Given the fact that the Objectors' right to appeal is not contingent on intervention, there is no reason for intervention in the event that the Settlement Agreement is finally approved by the Court. Should final approval be granted, the Objectors' Motion for Intervention clearly should be denied as moot.

[6]     Statements in both the *Picus* and *Kennedy* actions reveal that they fully appreciate the differences between those actions and this MDL. *See Kennedy*, Doc. No. 57, Pl. Reply in Support of Class Cert., at 3 ("Each of the products in this case that were sold between May 3, 2003 and March 16, 2007 are, therefore, not recalled products by definition. Consequently, a large portion of this class are not class members of the MDL Settlement Class...."); JPML, Picus Mot. to Vacate CTO (filed 7/24/07), at 8 ("the Picus Action involves a much longer class period (at least four years) and a much larger class than the MDL cases"); JPML, Picus Opposition to Conditional Transfer Order (filed 7/13/07), at 2 (objecting to transfer to MDL because "the questions of fact in this case are very different from those in the MDL actions and ... the legal issues in this case are also very different" because the MDL claims are "based on the contamination of specific lots of pet food sold by many companies during a six month period in 2006 and 2007" while Picus "addresses Defendants' misrepresentations during the entire class period beginning in 2003, four years prior to the filing of this action" and also noting that "this case is brought on

6

that is, "Made in the USA" claims based on non-Recalled Pet Food Products – are simply not at issue in this litigation.[7]

**C.    The Objectors' Interests Are Adequately Represented by the Current Class Representatives.**

Objectors incorrectly contend that they are not adequately represented with regard to their product reimbursement claims in this Settlement.  As a preliminary matter, it is hypocritical for Ms. Picus, who fought strenuously and successfully to have her putative class action be excluded from the Pet Food Recall MDL, to now claim inadequate representation.  More significantly, although Objectors cite several ostensible "grounds" for their claim of inadequate representation (Motion at 13), the driving force behind the claim is apparent:  They believe the Settlement amount allocated to reimbursing Settlement Class Members for their purchase of Recalled Pet Food Products is too small.  However, a dispute between class members and the class representative over the amount of a settlement is properly the subject of an objection, not a motion to intervene.  *See Thompson*, 216 F.R.D. at 70 ("Where class members' differences of opinion with class counsel on a negotiated settlement can be adequately addressed through the Court's consideration of the objections, invention is unnecessary and unwarranted").  In any event, the Objectors' arguments that their interests were not adequately represented are meritless and should be rejected.

---

behalf of a very different, and much broader, class of consumers based on a uniform statutory and common law claim under Nevada law.  In denying class certification, the *Kennedy* court found that because the putative class in *Kennedy* was alleged to have purchased Natural Balance products that were "Recalled Pet Food Products" under the Settlement -- and had not opted out of the MDL Settlement -- they were Settlement Class Members bound by this Court's Preliminary Approval Order.  Accordingly, the Court found, no class action could be maintained on their behalf.  *Kennedy*, Doc. No. 60, 6/12/2008 Order, at 4-5.  In addition, the court also found that the putative class in *Kennedy* could not be certified because the plaintiff in *Kennedy* failed to establish the commonality and typicality required by Rule 23.  *Id.*, at 7.

[7]    In any event, because the putative class in *Picus* specifically excludes "those persons who have asserted a legal action in MDL 1850," as well as any persons who have received a full refund for their purchases of certain brands of pet food or "otherwise claim injury to their pet as a result of consumption of Ol' Roy brand pet food," *Picus*, Doc. No. 56, Amd. to Compl., filed 12/23/2007, intervention is unnecessary to preserve the claims of the putative class she seeks to represent in the Nevada case.

Representation will be considered inadequate, and intervention warranted, if the applicant's interests "diverge sufficiently that the existing party cannot devote proper attention to the applicant's interests." *Brody v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1994). To show inadequacy of representation, the moving parties "must show that they bring something to the litigation that otherwise would be ignored or overlooked if the matter was left to the existing parties." Moore's Federal Practice 3d, § 24.03[4][a] (citing *Prete v. Bradbury*, 438 F.3d 949, 956-959 (9th Cir. 2006)).

Nothing raised by Ms. Picus on Mr. Kaffer has been ignored or overlooked. The Settlement Agreement allocates a quarter of a million dollars to settle Consumer Food Purchase Claims, defined as "claims solely for reimbursement the costs associated with a Recalled Pet Food Product by a Settlement Class Member who has not been reimbursed for such costs to date[.]" Settlement Agreement §§ V.A.2, I.Q. This provisions negates Objectors' assertions that claims based solely on the purchase of Recalled Pet Food Products (as opposed to claims based on injury to pets) are being released "for no consideration" (Motion at 14), and that they therefore are "receiving nothing" in exchange for the release of such claims (Motion at 7).[8]

As discussed more fully in Plaintiffs' Memorandum of Law in Support of Motion for Final Approval of Class Action Settlement, the allocation of $250,000 from the Settlement is a reasonable and adequate amount for claims for reimbursement for purchases of Recalled Pet Food Products. Quite simply, the Recall involves a limited range of products manufactured over a period of only a few months, and manufacturers and retailers already have provided refunds or

---

[8]     The Objectors' argument that the "current representation [failed] to limit the release to only claims relating to contaminated products for which compensation is being paid" and to "obtain relief for the Made in the USA claims for non-contaminated products that are being released[,]" demonstrates the same misunderstanding of the language and scope of the releases in the Agreement discussed above. Because the Settlement Class is defined to include only people who purchased (or whose pets used or consumed) Recalled Pet Food Products, *no* "Made in the USA claims" for non-Recalled Pet Food Products are being released. Settlement Agreement, §§ I.PP, VV. Objectors simply misapprehend the terms of the Settlement Agreement.

exchanges to countless consumers of Recalled Pet Food Products, leaving few today who qualify for but have not yet received reimbursement.

Finally, the Objectors' argument that Settlement Class Members with purchase only claims were not adequately represented in the Pet Food Recall MDL is also without merit. Whether or not there is a "current representative that asserts *only* product purchase claims" (Motion at 13 (emphasis added)) is beside the point. As explained, the current representatives have obtained a significant sum to settle "Consumer Food Purchase Claims," demonstrating their ability to adequately represent the interests of purchasers such as Ms. Picus and Mr. Kaffer. Moreover, Objectors ignore that current putative Class Representatives have product purchase claims *in addition to* claims for injury to pets. The interests of these putative Class Representatives are therefore aligned with those of Mr. Kaffer and Ms. Picus and other Settlement Class Members with product reimbursement claims, *i.e.*, to maximize the settlement amounts of all claims arising out of the Recall, including product reimbursement claims. Because there is an identity of interest between the Class Representatives and the rest of the Settlement Class, representation is adequate and intervention should be denied. *See, e.g., Washington Elec. Coop. v. Massachusetts Mun. Wholesale Elec. Co.*, 992 F.2d 92, 98 (2d Cir. 1990); *Southmark Corp. v. Cagan*, 950 F.2d 416, 419 (7th Cir. 1991); *In re Global Crossing Sec. Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004) (finding "no conflict between the class representative and other class members" where "[a]ll share the common goal of maximizing recovery"). For these reasons, the Court should reject the Objectors' arguments that their interests were not adequately represented in this litigation.

### D. The Objectors' Motion To Intervene Is Untimely.

A motion to intervene must be timely made. Fed. R. Civ. P. 24(a)(2); *Commonwealth of Pa. v. Rizzo*, 530 F.2d 501, 506 (3d Cir. 1976). Timeliness is to be determined from all the

circumstances, including the stage at which an applicant seeks to intervene, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, the prejudice to the other parties, and the reason for and length of delay. *See generally* Moore's Federal Practice 3d, §§ 24.21[1], [3]. Under the circumstances presented here, the Motion to Intervene is clearly untimely.

Here, the proceedings are drawing to a close, with the final approval hearing only two weeks away. The proposed settlement was first publicized nationally on May 22, 2008 (*see* www.usatoday.com/money/industries/2008-05-22-petfood-lawsuit-settled_N.htm.), and notice disseminated shortly thereafter. Ms. Picus and Mr. Kaffer waited until September 12, long after the opt-out period had expired, to file their motion to intervene, a delay of nearly four months since the Settlement was first announced. Courts have found equivalent delays under similar circumstances sufficient to render a motion to intervene untimely. *See, e.g., In re GMC Pickup Truck Fuel Tank Prods. Liab. Litig.*, 1996 U.S. Dist. LEXIS 17510, *16-17 (E.D. Pa. 1996) (finding objectors' motion to intervene untimely when filed "almost two months" after petitioners received notice of proposed class action settlement); *Thompson*, 216 F.R.D. at 69 (three-month delay between notice of settlement and motion to intervene).

The Parties have invested enormous time and expense in their efforts to construct a landmark settlement and, accordingly, would be substantially prejudiced if Ms. Picus and Mr. Kaffer are allowed to intervene as plaintiffs for purpose of obstructing – at the last minute – this Court's final approval of the Settlement Agreement. *See, e.g., U.S. v. Mid-State Disposal*, 131 F.R.D. 573, 576-77 (W.D. Wis. 1990) ("The intervenors' delay in this case would render the negotiations between the original parties a waste of time and stall the implementation of the remedy designed to benefit the public health and safety at the site. The original litigating parties as well as the public would be prejudiced. The Court finds that the prejudice to the original

parties makes the motion to intervene untimely."); *Sokaogon Chippewa Comty. v. Babbitt*, 214 F.3d 941, 948 (7th Cir. 2000) ("The St. Croix wants to intervene because it does not like the Settlement Agreement. The tribe believes that the terms of the Settlement Agreement violate statutes and regulations and unlawfully cut it out of the reconsideration of the Four Feathers application. The St. Croix, however, cannot use alleged legal problems with the Settlement Agreement to bootstrap itself into this litigation. That the St. Croix waited until settlement was imminent strongly suggests that the tribe was not interested in intervening in the *litigation* but in blocking a settlement between the parties-or, at a minimum, this settlement.") (emphasis in the original).

Ms. Picus and Mr. Kaffer had months to seek intervention, simply chose not to, and instead attempt to put the blame of the delay on the purported fact that they were too occupied retaining "local counsel" and "preparing objections" once they received the notice of settlement. Doc. No. 204-2, at 11. But the product purchase claims subject to settlement talks since September 2007 were well known to Objectors, the Settlement's preliminary approval on May 30, 2008 was highly publicized, and the Court-ordered notice was mailed out on or before June 16, 2008. *See* Doc. No. 153, at 7.

Moreover, contemplating objections to the settlement is simply no excuse for waiting until the eve of a final approval hearing to seek intervention. *See, e.g., Gen. Star Indem. Co. v. Virgin Islands Port Auth.*, 224 F.R.D. 372, 375 (D.V.I. 2004) ("[T]he Court further finds that Proposed Intervenors' statement that they learned of the above-captioned action only after the filing of the Second Amended Complaint and that they moved to intervene as soon as possible after learning of this action, ***disingenuous, at the very least.*** Proposed Intervenors did not file their Motion to Intervene until June 17, 2004, almost eighteen (18) months after they knew or should have known that their rights may be at risk. Consequently, the Court determines that the

Motion to Intervene is untimely."); *Aleut Corp. v. Tyonek Native Corp.*, 725 F.2d 527, 530 (9th Cir. 1984) (denying intervention "on the eve of settlement"). Accordingly, the Objectors' Motion should be denied as untimely.

## II.   PERMISSIVE INTERVENTION IN THE PET FOOD RECALL MDL IS NOT WARRANTED.

Because the analysis for permissive intervention is substantially similar to the analysis for intervention as of right (except that a district court is permitted to conduct additional, equitable factors), *see H.L. Hayden Co. of N.Y. v. Siemens Med. Sys.*, 797 F.2d 85, 89 (2d Cir. 1986), many of the same reasons that warrant denying intervention of right also warrant denying the Objectors' request for permissive intervention. As discussed above, their interests in this litigation were adequately represented, and the reimbursement allocated for reimbursing purchasers of Recalled Pet Food Products is sufficient. In addition, as with motions to intervene as of right, a motion for permissive intervention also will not be granted if not timely made. *See e.g. MasterCard Int'l*, 471 F.3d at 390-91. Because, as explained above, their Motion is untimely, the Objectors' request for permissive intervention should be denied on this ground as well.

## III.   THE OBJECTORS' REQUEST FOR DISCOVERY SHOULD BE DENIED.

Pursuant to the Preliminary Approval Order, "[n]o discovery with regard to the Settlement or Settlement Agreement shall be permitted as to any of the parties to the Settlement Agreement other than as may be directed by the Court ***upon a proper showing by the party seeking such discovery by motion properly noticed and served*** in accordance with applicable rules of this Court." MDL, Doc. 153, Order of 5/30/08, at 10 (emphasis added). Although having not filed an actual motion, the Objectors "request," in an attachment to a Declaration (Doc. No. 208-4), that the Court permit them to obtain discovery on the following "limited" topics:

1.    Verified total sales of Recalled Pet Food Products by all Settling Defendants;

2.    Verified total sales of Recalled Pet Food Products with the brand name of Ol'Roy by Settling Defendant Wal-Mart Stores;

3.    Verified total sales of Recalled Pet Food Products by Settling Defendant Natural Balance;

4.    Verified total sales of the following Ol'Roy pet food products during the period April 30, 2003 through the present: Pouch with Beef, Pouch with Chicken, Pouch with Filet Mignon, Pouch with Chicken Teriyaki, Pouch with Beef/Noodle/Vegetable, Pouch with Lamb/Rice/Gravy, Pouch with Stew, Pouch with Turkey, Can SI Beef, Can SI Chicken, Ol' Roy Beef Flavor Jerky Strips Dog Treats, Ol' Roy County Stew Hearty Cuts in Gravy Dog Food, Ol' Roy with Beef Hearty Cuts in Gravy Dog Food, Ol' Roy with Beef Hearty Strips in Gravy Dog Food, 4-Flavor Large Biscuits, and Peanut Butter Biscuits;

5.    All drafts of the Settlement Agreement exchanged between Settling Defendants and representatives of the Settlement Class;

6.    All correspondence or other documents exchanged between Settling Defendants and representatives of the Settlement Class which discusses any of the following: (i) the release or language of the release; (ii) the *Picus* or *Kennedy* lawsuits; (iii) allocation of the Settlement Fund; (iv) monetary payment for reimbursement of pet food purchases; (v) objections to the settlement; and/or (vi) Settlement Class definition.

7.    All documents provided by any Settling Defendant to the representatives of the Settlement Class which relate to "Made in the USA" claims;

8.    All documentation provided by any Settling Defendant to the representatives of the Settlement Class for the evaluation of the settlement amount and reasonableness thereof.

9.    Verified refunds of Recalled Pet Food Products paid by (i) all Settling Defendants for any Recalled Pet Food Product, (ii) Settling Defendant Natural Balance for any Natural Balance.

Req. for Disc. at pp. 2-3.

The entirety of Ms. Picus and Mr. Kaffer's basis for their request for discovery is that

"Courts routinely permit limited discovery by objectors to test the weakness of the settlement."

Req. for Disc. at p. 3. That is not the law, and it is plainly insufficient to warrant discovery

under the Court's Preliminary Approval Order.

In fact, in a decision on which the Objectors rely, the Third Circuit made explicitly clear: "We therefore conclude that [prior Third Circuit precedent[9]] cannot stand for the proposition that, as a general matter, objectors have an absolute right to discovery." *In re Comm. Bank of N. Va.*, 418 F.3d 277, 316 (3d Cir. 2005). The *In re Comm. Bank*, court went on to state that discovery "may be appropriate if lead counsel has not conducted adequate discovery or if the discovery conducted by lead counsel is not made available to objectors." *Id.* This exception, which is clearly only permissive, not mandatory, does not apply because Plaintiffs' Co-Lead Counsel and counsel for Defendants conducted extensive factual investigation prior to and during the course of the protracted settlement discussions over the course of nearly a year.[10] Thus, the discovery requested by Objectors is unnecessary to evaluate the fairness of the Settlement.

Indeed, there is a long line of cases where federal courts have refused objectors' requests for discovery absent any evidence of collusion, something which Ms. Picus and Mr. Kaffer have not even explicitly alleged, let alone supported with any evidence. *See, e.g., Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 834 F.2d 677, 684 (7th Cir. 1987) ("Such discovery is proper only where the party seeking it lays a foundation by adducing from other sources evidence indicating that the settlement may be collusive, as in the General Motors case, where negotiations with one class counsel were carried out in violation of the district court's order. ***There is no indication of such hanky-panky here.*** Nothing in the terms or timing or other circumstances of the Mars settlement-a settlement highly favorable to the class, as we have said-suggests that Torshen was selling out the class in an effort to beat Joyce and Kubasiak to the

---

[9]     In addition, the Third Circuit precedent the *In re Comm. Bank* court refers to is yet another case counsel for Picus and Kaffer cite, *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), in which the intervenor was ***denied access*** to discovery.

[10]    *See* Plaintiffs' Memorandum of Law in Support of Motion for Final Approval of Class Action Settlement; Joint Declaration of Co-Lead Counsel.

attorney's fee trough.") (Posner, J.); *Lobatz v. U.S. West Cellular of Cal., Inc.*, 222 F.3d 1142, 1148 (9th Cir. 2000) (same); *Thornton v. Syracuse Sav. Bank*, 961 F.2d 1042, 1046 (2d Cir. 1992) (same); *Bowling v. Pfizer*, 143 F.R.D. 141, 146 (S.D. Ohio 1992) ("Objectors may discover the details of a class counsel's negotiations with the defendants only where the objectors lay a foundation by adducing evidence from independent sources of evidence that the settlement may be collusive."); *In re Domestic Air Transp. Antitrust Litig.*, 144 F.R.D. 421, 424 (N.D. Ga. 1992) ("However, objectors are not entitled to discovery concerning settlement negotiations between the parties in the absence of evidence indicating that there was collusion between plaintiffs and defendants in the negotiating process."); *White v. Nat'l Football League*, 822 F. Supp. 1389, 1429 (D. Minn. 1993), *aff'd*, 41 F.3d 402 (8th Cir. 1994), *cert. denied sub nom. Jones v. Nat'l Football League*, 515 U.S. 1137, 115 S. Ct. 2569 (1995) ("Moreover, if there is no evidence of collusion in the negotiation process, objectors have no right to seek discovery concerning the negotiations of a class action settlement."); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 227 F.R.D. 553, 562 (W.D. Wash. 2004) ("In the absence of evidence of collusion, the court overrules these objections, and denies the Wiley Objectors' request for discovery."); *Hemphill v. San Diego Ass'n of Realtors*, 225 F.R.D. 616, 622 (S.D. Cal. 2005) ("As the Court has already found, Movants have not adduced evidence from other sources indicating that settlement is collusive. As a result, their central premise for this category of discovery fails, just as it did with respect to discovery of settlement negotiations.").

At bottom, the Objectors' request for discovery is really an attack on the fairness of the Settlement in that, by claiming "that there has been no formal discovery," Req. for Disc. at p.3, they imply that settlement was not resolved fairly and adequately. The Plaintiffs have extensively briefed this Court on the propriety of the Settlement with which this Court preliminarily agreed and the Objectors are free to raise any purported "fairness" concerns in the

appropriate venue on October 14, 2008. But Ms. Picus and Mr. Kaffer should not be allowed to obstruct the fairness hearing by improperly seeking discovery.

Moreover, the Objectors should not be allowed to use the intervention and objection process in this MDL to conduct discovery that they are precluded from conducting in their own cases. The *Kennedy* case, in which Mr. Kaffer was a putative class member, was dismissed for lack of subject matter jurisdiction and currently is under appeal. Discovery in *Picus* has been stayed since December 2007 and there has been virtually no activity since then. *Picus*, Doc. No. 55, 12/19/07 Stipulation and Order Concerning Amendment to Complaint and Briefing on Motion to Deny Class Certification. Notably, the sixteen varieties of Ol' Roy dog food about which Ms. Picus seeks discovery in this action happen to match the varieties that are the subject of her claims in the *Picus* litigation in Nevada, and some are not Recalled Pet Food Products. *See Picus* Compl. at ¶1. Further, the Objectors' seek information from April 2003 through the present, while the Settlement Agreement only applies to pet food products "that were recalled … between March 16, 2007 and the present." *See* Settlement Agreement, § I.PP. *See also* MDL, Doc. 208-4 (Request for Limited Discovery), at Nos. 2-3 (requesting discovery concerning total sales of Ol' Roy brand products by Wal-Mart and products by Natural Balance, defendants in *Picus* and *Kennedy*, respectively); *id.* at Nos. 6-7 (requesting documents discussing "the *Picus* or *Kennedy* lawsuits" and documents "which relate to 'Made in the USA' claims"). As such, the Objectors should be limited to seeking discovery in their separate actions – and not be allowed to request discovery in this action merely to circumvent restrictions in their own cases. *See, e.g., In re Cardinal Health Inc. Securities Litig.*, 365 F.Supp.2d 866, 875 (S.D. Ohio 2005) (discovery

in related case barred to give effect to stay in securities litigation); *In re Crompton Corp. Securities Litig.*, 2005 U.S. Dist. LEXIS 23001, at *12-13 (D. Conn. July 23, 2005) (same).[11]

## CONCLUSION

For the foregoing reasons, this Court should deny the Objectors' Motion to Intervene and request for leave to conduct discovery.

DATED: October 3, 2008

**TRUJILLO RODRIGUEZ & RICHARDS, LLC**


By_____
   Lisa J. Rodriguez
   8 Kings Highway West
   Haddonfield, New Jersey 08033
   Telephone: (856) 795-9002
   Facsimile: (856) 795-9887

   ***Liaison Counsel for Plaintiffs***

---

[11]   Counsel for the Objectors include a footnote on the last page of their request for discovery an alternative request for a continuance of the final settlement hearing. This alternative tactic of tying up the final approval hearing is absurd on it face, given that the Objectors do not have a right or standing to intervene and waited until the eve of the hearing to make this request.

| | |
|---|---|
| By: /s authorized for ECF filing<br>Kenneth A. Wexler<br>Mark J. Tamblyn<br>WEXLER WALLACE LLP<br>55 West Monroe Street, Suite 3300<br>Chicago, Illinois 60603<br>Telephone: (312) 346-2222<br>Facsimile: (312) 346-0022<br>kaw@wexlerwallace.com<br>mjt@wexlerwallace.com | By: /s authorized for ECF filing<br>Sherrie R. Savett<br>Russell D. Paul<br>BERGER & MONTAGUE, P.C.<br>1622 Locust Street<br>Philadelphia, Pennsylvania 19103<br>Telephone: (215) 875-3000<br>Facsimile: (215) 875-4636<br>ssavett@bm.net<br>rpaul@bm.net |
| By: /s authorized for ECF filing<br>Scott A. Kamber<br>KAMBEREDELSON, LLC<br>11 Broadway, 22nd Floor<br>New York, New York 10004<br>Telephone: (212) 920-3072<br>Facsimile: (212) 202-6364<br>skamber@kamberedelson.com | By: /s authorized for ECF filing<br>William M. Audet<br>AUDET & PARTNERS LLP<br>221 Main Street, Suite 1460<br>San Francisco, California<br>Telephone: (415) 568-2555<br>Facsimile: (415) 568-2556<br>waudet@audetlaw.com |
| By: /s authorized for ECF filing<br>Stuart A. Davidson<br>COUGHLIN STOIA GELLER<br>RUDMAN & ROBBINS LLP<br>120 E. Palmetto Park Road, Suite 500<br>Boca Raton, Florida 33432<br>Telephone: (561) 750-3000<br>Facsimile: (561) 750-3364<br>sdavidson@csgrr.com | By: /s authorized for ECF filing<br>Steve W. Berman<br>Jeniphr Breckenridge<br>HAGENS BERMAN SOBOL SHAPIRO LLP<br>1301 Fifth Avenue, Suite 2900<br>Seattle, Washington 98101<br>Telephone: (206) 623-7292<br>Facsimile: (206) 623-0594<br>steve@hbsslaw.com<br>jeniphr@hbsslaw.com |

***Co-Lead Counsel for Plaintiffs***

| | |
|---|---|
| By: /s authorized for ECF filing<br>Mark C. Goodman, Esq.<br>SQUIRE, SANDERS & DEMPSEY L.L.P.<br>One Maritime Plaza, Suite 300<br>San Francisco, CA 94111-3492<br>Telephone: (415) 954-0289<br>Facsimile: (415) 393-9887<br>mgoodman@ssd.com | By: /s authorized for ECF filing<br>Mary E. Gately, Esq.<br>DLA PIPER US LLP<br>500 8th Street, N.W.<br>Washington, D.C. 20004<br>Telephone: (202) 799-4000<br>Facsimile: (202) 799-5000<br>mary.gately@dlapiper.com |
| By: /s authorized for ECF filing<br>D. Jeffrey Ireland, Esq.<br>FARUKI, IRELAND & COX, P.L.L.<br>500 Courthouse Plaza, S.W.<br>10 North Ludlow Street<br>Dayton, OH 45402<br>Telephone: (937) 227-3710<br>Facsimile: (937) 227-3749<br>djireland@ficlaw.com | By: /s authorized for ECF filing<br>Craig A. Hoover, Esq.<br>HOGAN & HARTSON LLP<br>Columbia Square<br>555 Thirteenth Street, NW<br>Washington, D.C. 20004-1109<br>Telephone: (202) 637-5600<br>Facsimile: (202) 637-5910<br>cahoover@hhlaw.com |
| By: /s authorized for ECF filing<br>Richard Fama, Esq.<br>COZEN O'CONNOR<br>45 Broadway, 16th Floor<br>New York, NY 10006<br>Telephone: (212) 509-9400<br>Facsimile: (212) 509-9492<br>rfama@cozen.com | By: /s authorized for ECF filing<br>Gary L. Justice, Esq.<br>GIBSON, DUNN& CRUTCHER LLP<br>333 South Grand Avenue, 49th Floor<br>Los Angeles, CA 90071<br>Telephone: (213) 229-7508<br>Facsimile: (213) 229-6508<br>gjustice@gibsondunn.com |
| By: /s authorized for ECF filing<br>Anthony G. Brazil, Esq.<br>MORRIS POLICH & PURDY<br>1055 W. 7th Street<br>Los Angeles, CA 90017<br>Telephone: (213) 417-5120<br>Facsimile: (213) 488-1178<br>abrzil@mpplw.com | |

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of October, 2008 a true and correct copy of the foregoing was served on counsel for Margaret Picus and Daniel Kaffer and on all parties via the UNITED STATES DISTRICT COURT ELECTRONIC FILING SERVICE.