UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

IN RE:PET FOOD PRODUCTS
LIABILITY LITIGATION

MDL Docket No. 1850 (All Cases)

Case No. 07-2867 (NLH)

The Honorable Noel L. Hillman

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE APPLICATION BY NEWMAN, CREED & ASSOCIATES FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND EXPENSES**

IN RE: PET FOOD PRODUCTS LIABILITY LITIGATION                    Doc. 255

Dockets.Justia.com

TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................1

II. BACKGROUND ..................................................................................................2

III. THE COURT'S ORDERS, THE SETTLEMENT AGREEMENT
AND RELEVANT CASE LAW SUPPORT STRIKING THE NEWMAN
FIRM FEE APPLICATION ..................................................................................4

    A. The Separate Fee Application Violates the Court's Orders.....................4

    B. The Separate Fee Application Violates the Terms of the Settlement
       Agreement..................................................................................................5

    C. Case Law Supports Striking the Separate Fee Application .....................5

    D. Allowing A Separate Fee Application Would Only Promote
       Confusion and Result in Unnecessary Costs and Burden on the
       Parties and the Court ................................................................................8

CONCLUSION..................................................................................................................9

TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

232 F.3d 900 (10th Cir. 2000) ..........................................................................................9

*In re "Agent Orange" Prod. Liability Litigation,*
      818 F.2d 216 (2d Cir.1987).................................................................................9

*In re Ampicillin Antitrust Litigation,*
      81 F.R.D. 395 (D.D.C. 1978)....................................................................9, 10, 11

*In re Automobile Refinishing Paint,*
      2008 U.S. Dist. LEXIS at 20-21 ........................................................................8

*In re: Automobile Refinishing Paint Antitrust Litigation,*
      MDL No. 1426, 2008 U.S. Dist. LEXIS 569 (E.D. Pa. Jan. 3, 2008) .....................4

*In re Bausch & Lomb, Inc.,*
      183 F.R.D. 78 (W.D.N.Y. 1998).......................................................................10

*In re Cendant Corp. Sec. Litigation,*
      404 F.3d 173 (3d Cir. 2005)..........................................................................9, 10

*In Re Copley Pharm., Inc.,*
50 F. Supp. 2d 1141 (D. Wyo. 1999)..............................................................................9

*In re Diet Drug Products Liability Litigation,*
      401 F.3d 143 (3d Cir. 2005)...............................................................................4

*In re Domestic Air Transport Antitrust Litigation,*
      148 F.R.D. 297 (N.D. Ga. 1993).........................................................................9

*In re Eunice Train Derailment,*
      Civ. No. 6:00CV1267, 2005 U.S. Dist. LEXIS 46237
      (W.D. La. Mar. 29, 2005) ..................................................................................4

*Longden v. Sunderman,*
      979 F.2d 1095 (5th Cir. 1992) ...........................................................................9

*In re Prudential Securities Inc. Ltd. P'ships Litigation,*
      MDL No. 1005, 1995 U.S. Dist. LEXIS 22103 (S.D.N.Y. Nov. 20, 1995) ..........11

*In Re Royal Dutch/Shell Transport Sec. Litigation*,
    Civ. No. 04-374, 2008 U.S. Dist. LEXIS 32040 (D.N.J. Apr. 17, 2008) ................4

*In Re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire
    Litigation*,
    56 F.3d 295 (1st Cir. 1995) ........................................................................4

*In re Warfarin Sodium Antitrust Litigation*,
    212 F.R.D. 231 (D. Del. 2002), aff'd, 391 F.3d 516 (3d Cir. 2004) ........................8

## STATE CASES

*In re Auction Houses Antitrust Litigation, No. Civ. 0648*,
    2001 WL. 210697 (S.D.N.Y. Feb. 26, 2001) ...................................................9, 11,

*In re Enron Corp. Sec., Deriv. & Antitrust Litigation*,
    MDL Docket No. 1446, 2008 WL. 2566929 (S.D. Tex. Ju. 24, 2008) ..................10

## MISCELLANEOUS

*Manual For Complex Litigation*, §§14.21-14.212 (4th ed.) .............................................10

I.  **INTRODUCTION**

Court-appointed lead counsel is the only plaintiffs' counsel empowered to file attorneys' fees applications in class actions on behalf of the class and all plaintiffs' class counsel. *See In re: Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2008 U.S. Dist. LEXIS 569, at *20-*21 (E.D. Pa. Jan. 3, 2008) ("Courts generally approve joint fee applications which request a single aggregate fee award with allocations to specific firms to be determined by Co-Lead Counsel, who are most familiar with the work done by each firm and each firm's overall contribution to the litigation. As we previously noted, Co-Lead Counsel have directed this case from its inception and are best able to assess the weight and merit of each counsel's contribution."); *In Re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 310 (1st Cir. 1995) (discussing the "substantial" and "near plenary" authority class counsel have in typical class action litigation); *In Re Royal Dutch/Shell Transport Sec. Litig.*, Civ. No. 04-374, 2008 U.S. Dist. LEXIS 32040, at *32-*33 (D.N.J. Apr. 17, 2008) (court accepts lead counsel's contention that they traditionally determine fees); *In re Diet Drug Prods. Liab. Litig.*, 401 F.3d 143, 151-52 (3d Cir. 2005) (lead counsel vested with authority to allocate fees in class and non-class action cases); *In re Eunice Train Derailment*, Civ. No. 6:00CV1267, 2005 U.S. Dist. LEXIS 46237, at *27 (W.D. La. Mar. 29, 2005) (discusses the important role and contributions of class counsel and stating that only members of the "Plaintiffs' Liaison Committee" were allowed to submit application for attorneys' fees).

Ignoring well-established Rule 23 jurisprudence and this Court's order appointing Co-Lead Counsel, the law firm of Newman, Creed & Associates ("Newman Firm") has filed a motion for a separate award of attorneys' fees and costs. Setting aside the host of concerns that the Newman Firm's time records present on their face, under the terms of the Settlement Agreement, the Court's preliminary approval Order, the Court's Order appointing Co-Lead Counsel, and the law of this and all other Circuits, the Newman Firm

simply lacks standing to file a separate motion for attorneys' fees and costs. Indeed, to even consider the Newman Firm's application would only encourage all plaintiffs' firms, in this and other class actions, to file their own fee petitions, resulting in unnecessary costs, burdens and complications with respect to class action settlements.

Plaintiffs' Co-Lead Counsel respectfully request that the Newman Firm's application be stricken.

## II. BACKGROUND

Since the inception of this case, and prior to the Court's Order appointing lead counsel in December 2007, all plaintiffs' firms agreed that this MDL class action litigation would be managed by seven law firms. On December 18, 2007, the Court issued an order appointing a six-firm Co-Lead Counsel group [DE 107] after giving any interested party the right to be heard. [DE 100]. The December 18th Order specifically authorized Co-Lead Counsel "to delegate specific tasks to other co-counsel or committees of counsel that interim co-lead counsel may establish as appropriate" and "to collect and monitor time and expenses incurred by other plaintiffs' counsel for the efficient management of the litigation." *See* Consent Order Regarding Organization of Plaintiffs' Counsel [DE 107]. No firm, including the Newman Firm, objected to the Court's Order either prior to or after its entry.

Even prior to the Court's formal appointment of Co-Lead Counsel, those firms agreed to act as a cohesive and efficient six-firm group in order to effectively negotiate with Defendants. Each of the six firms, as required by the mediator, paid for, and attended, each mediation session conducted by Mediator Eric Green of Resolution, LLC. No other firm, including the Newman firm, paid any part of the mediation costs. Co-Lead Counsel also worked directly with representatives of Canadian counsel in order to achieve this landmark cross-border settlement.

By the terms of the Settlement Agreement, Co-Lead Counsel successfully

obtained a "common fund" settlement for class members. Under the terms of the Settlement Agreement, *Co-Lead Counsel* are to apply for attorneys' fees and costs, provided that the amount requested would not exceed twenty-five percent (25%) of the Settlement Fund, plus costs. *See* Settlement Agreement, § VII.C.

On May 30, 2008, the Court granted the parties' joint motion for preliminary approval of the Settlement. [DE 153] In addition to granting preliminary approval, the Court set a date for the final approval hearing, approved the notice plan and set the date to "determine whether Plaintiffs' Lead Counsel's application for attorneys' fees and reimbursement of expenses should be granted." May 30, 2008 Order ¶ 3(e). The Court instructed Plaintiffs' Co-Lead Counsel to be responsible for timely filing of "any application for an award of attorneys' fees and reimbursement of costs." *Id.* ¶ 4.

Consistent with the Court's May 30, 2008 Order, on June 20, 2008, Co-Lead Counsel requested that *all* plaintiffs' counsel submit detailed time and expense information to Co-Lead Counsel. Declaration of Russell D. Paul in Support of Motion to Strike Application by Newman, Creed & Associates for Award of Attorneys' Fees and Reimbursement of Expenses and Costs ("Paul Decl."), Ex. A. With the exception of the Newman Firm, 54 plaintiffs' firms complied with Co-Lead Counsel's request. Mr. Newman, however, responded with a letter (duplicated and separately sent to all six lead counsel and Liaison Counsel Lisa Rodriguez) demanding to know the amount of fees and expenses from any award in the case that would be allocated to his firm. Paul Decl., Ex. B. Mr. Newman threatened to separately apply for fees and expenses unless he was told how fees and expenses would be allocated to his firm. *Id.* According to Mr. Newman, unless Co-Lead Counsel agreed to his demand, Mr. Newman would file his own fee application and was "confident that the Court will not look favorably on the manner in which my firm has been treated...." Paul Decl., Ex. B. True to his threat, instead of complying with the Court's orders and Co-Lead Counsel's Court-authorized request for time and expense information from his firm, Mr. Newman has taken it upon himself to

3

separately apply for hundreds of thousands of dollars in fees and costs.

While Co-Lead Counsel have serious concerns with respect to the Newman Firm's reported time and expenses (as well as the firm's failure to follow directions from Co-Lead Counsel regarding the need to avoid duplication of work and to minimize the cost of the overall litigation), any allocation to the Newman Firm will be appropriately addressed in connection with Co-Lead Counsel's review and consideration of all plaintiffs' firms' time and expenses submitted.

### III. THE COURT'S ORDERS, THE SETTLEMENT AGREEMENT AND RELEVANT CASE LAW SUPPORT STRIKING THE NEWMAN FIRM FEE APPLICATION

#### A. The Separate Fee Application Violates the Court's Orders

In the Court's Pretrial Order appointing Co-Lead Counsel, the Court explicitly incorporated the provisions from the *Manual for Complex Litigation* (4th) and empowered Co-Lead Counsel to initiate and brief all issues and to "collect and monitor time and expenses incurred by other Plaintiffs' counsel for the efficient management of the litigation." (December 18, 2007 Order [DE 107] ¶¶ A, B(1), and B(8)). In direct contravention of this Order, Mr. Newman has refused to submit his time and expenses to Co-Lead Counsel.

The Court reaffirmed Co-Lead Counsel's authority in the case to implement the terms of the Settlement Agreement. As noted in the Preliminary Approval Order, "On or before October 3, 2008, Plaintiffs' Lead Counsel shall file with the Court:

(i) any memoranda or materials in support of final approval of the Settlement, and

(ii) any application for an award of attorneys' fees and reimbursement of costs."

(May 30, 2008 Order [DE 153] ¶ 4); *see also* ¶ 3 (at final approval hearing, Court will "determine whether Plaintiffs' Lead Counsel's application for attorneys' fees and

4

reimbursement of expenses should be granted.") Thus, only Co-Lead Counsel have been authorized by this Court to request attorneys' fees and expenses from the common fund.

### B. The Separate Fee Application Violates the Terms of the Settlement Agreement

The Settlement Agreement expressly states that Co-Lead Counsel, and only Co-Lead Counsel, are authorized to apply for attorneys' fees and costs:

Plaintiffs' Attorneys' Fees and Expenses

> 1. Application: Plaintiffs' Lead Counsel will apply to the Court for reimbursement of attorneys' fees in a total amount not to exceed 25% of the Settlement Fund, plus reimbursement of expenses incurred in the course of the litigation. Similarly, Counsel for Canadian Plaintiffs will apply to the Canadian Courts for attorneys' fees in a total amount not to exceed 6% of the Settlement Fund, plus reimbursement of expenses incurred in the course of the litigation.
>
> 2. Defendants' Position: Defendants will take no position on an application by Plaintiffs' Lead Counsel for attorneys' fees and expenses, or on fee applications by Counsel for Canadian Plaintiffs.

Settlement Agreement, § VII.C. Accordingly, under the terms of the Settlement Agreement, Mr. Newman has not been given any authority to separately request fees and expenses for his firm in this case.

### C. Case Law Supports Striking the Separate Fee Application

Almost without exception, in class settlements, lead counsel are charged with the duty of submitting to the court class counsel's fee petition and request for cost reimbursement. *See, e.g., In re Auto. Refinishing Paint,* 2008 U.S. Dist. LEXIS at *20-*21; *In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231, 262 (D. Del. 2002), *aff'd,* 391 F.3d 516 (3d Cir. 2004). Class counsel's fee application is generally made on behalf of *all* attorneys who filed initial or tag-along class action cases. Where, as here, the fee application is founded upon the "common fund" doctrine, lead counsel, and only lead counsel, are authorized to apply for the attorneys' fees from the "common fund" obtained by lead counsel's (and other plaintiffs' counsels' authorized) efforts in the litigation and

5

the ultimate settlement. Non-lead counsel, such as the Newman Firm, are generally not authorized to file their own fee application or to otherwise independently seek to be paid for conducting duplicative and otherwise unnecessary work. *In re Auction Houses Antitrust Litig.*, No. Civ. 0648, 2001 WL 210697 (S.D.N.Y. Feb. 26, 2001) (denying fee applications of non-lead counsel).

After a court approves lead counsels' application for all class counsels' fees and expenses, lead counsel then have the authority and responsibility to appropriately review the reported time and expenses of non-lead counsel and to objectively decide what firms, if any, deserve what level of compensation for work done on behalf of the class. *See In re Cendant Corp. Sec. Litig.*, 404 F.3d 173 (3d Cir. 2005); *Longden v. Sunderman*, 979 F.2d 1095, 1101 (5th Cir. 1992) (citing *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 216, 223 (2d Cir.1987) (authority for a court to award a lump sum fee to class counsel and then to permit counsel to divide this lodestar-based fee among themselves under the terms of a private fee sharing agreement.); *In Re Copley Pharm., Inc.*, 50 F. Supp. 2d 1141, 1148 (D. Wyo. 1999). *aff'd, remanded* 232 F.3d 900 (10th Cir. 2000) (attorney fee allocation is an unenviable task for any court: "It is a difficult matter that, frankly, even the trial court is often not in the best position to decide."). "Ideally, allocation is a private matter to be handled among class counsel." *In re Domestic Air Transp. Antitrust Litig.* 148 F.R.D. 297, 357 (N.D. Ga. 1993). As courts have repeatedly found, lead class counsel are better able to decide the weight and merit of plaintiffs' counsel's respective contributions. *In re Ampicillin Antitrust Litig.*, 81 F.R.D. 395, 400 (D.D.C. 1978).

Even where the work done by a firm was conducted prior to the actual appointment of lead counsel, this work is appropriately subject to review by subsequently-appointed lead counsel. As the Third Circuit noted, "[t]he mere fact that a non-designated counsel worked diligently and competently with the goal of benefiting the Class is not sufficient to merit compensation." *In re Cendant*, 404 F.3d at 197–98.

Here, putting aside the fact that the Newman Firm's separate application for attorneys' fees violated the Court's prior orders and the terms of the Settlement Agreement, the fact remains that Co-Lead Counsel will appropriately review the Newman Firm's time and expenses — like all other non-lead counsel's time and expenses — and objectively apply the guidelines outlined in relevant case law and the *Manual for Complex Litigation* (4th) to determine the amount of compensation to be awarded to that firm. *See In re Cendant,* 404 F.3d at 211 n.20 (court noted that lead counsel could appropriately seek non-lead counsel's time and expenses and had the responsibility for "approving fee requests" in the first instance); *In re Enron Corp. Sec., Deriv. & Antitrust Litig.,* MDL Docket No. 1446, 2008 WL 2566929, *4 (S.D. Tex. Ju. 24, 2008) (in securities class actions, non-lead counsel that seek compensation from the class recovery must submit their requests to the lead plaintiff).[1]

Plaintiffs' Co-Lead Counsel have worked side-by-side in the trenches and efficiently directed this litigation and settlement since spring of 2007, communicating frequently with other plaintiffs' counsel. As such they are clearly in the best position to assess the relative contribution of the other firms. *See Manual For Complex Litigation,* §§14.21-14.212 (4th ed.); *see also In re Bausch & Lomb, Inc.* 183 F.R.D. 78, 85 (W.D.N.Y. 1998) (a lump-sum fee award is to be allocated by co-lead counsel based on counsel's respective roles in resolving case); *In re Ampicillin,* 81 F.R.D. at 400 (D.D.C. 1978) (awarding lump-sum fee to be allocated based on relative contribution to the group effort). Unhappy with the fact that Co-Lead Counsel properly refused to "promise" payment of a certain amount of the Court-awarded fees, the Newman Firm now seeks to end run this Court's orders, well-established case law and the Settlement Agreement itself.

---

[1] To the extent the Newman Firm is able to show that the allocation of fees by Co-Lead Counsel to its firm was erroneous under applicable case law (*i.e. In re Cendant,* 404 F.3d at 199-200 (presumption that lead counsel's allocation was fair)), they may seek review of the allocation to their firm with this Court.

### D. Allowing A Separate Fee Application Would Only Promote Confusion and Result in Unnecessary Costs and Burden on the Parties and the Court

Unless the unauthorized application by the Newman Firm is stricken from the record (or otherwise rejected by the Court), there is nothing to prevent dozens of other firms from filing similar separate fee applications with this Court. Indeed, the underlying purpose of the Court's appointment of Co-Lead Counsel is avoid this very kind of disorder, and to place into qualified hands firms that are most able to steward the litigation and the Settlement. The Newman Firm's application should be stricken in order for Co-Lead Counsel to perform their duties and objectively consider *all* counsel's time and expenses *after* the Court rules on Co-Lead Counsel's application, on behalf of *all* plaintiffs' counsel, for attorneys' fees and reimbursement of costs. *See In re Ampicillin,* 81 F.R.D. at 400 (observing that "it is virtually impossible for the Court to determine as accurately as can the attorneys themselves the internal distribution of work, responsibility and risk."); *In re Auction Houses,* 2001 WL 210697, at *4 (noting that there was no reason why the class should compensate "large numbers" of firms for work for individual clients and duplicative efforts of lead counsel).

A contrary rule requiring (or even suggesting) separate applications and fee awards would only encourage non-lead counsel to engage in duplicative, unnecessary, non-compensable work outside of the supervision of lead counsel in the hope of later being able to claim that that work conferred some benefit on the class, thereby "justifying" a separate fee application. As courts recognize, such a process would *unnecessarily* increase the costs of litigation and complicate proceedings before the court. *See In re Prudential Secs. Inc. Ltd. P'ships Litig.,* MDL No. 1005, 1995 U.S. Dist. LEXIS 22103, at *6-7 (S.D.N.Y. Nov. 20, 1995) (because plaintiffs' counsel "organized themselves in order to provide for the efficient prosecution of the actions ... the time of the Court was not taken up with disputes over case management issues, unnecessary pleadings were eliminated and discovery and motion practice protocols were

8

established."); *In re Auction Houses,* 2001 WL 210697, at *4 ("Nor is there any reason for the class as a whole to compensate large numbers of lawyers for individual class members for keeping abreast of the case on behalf of their individual clients, keeping their individual clients informed, or duplicating the efforts of lead counsel. If individual class members wished to have the services of individual counsel in addition to class counsel, they should bear the expense themselves.")

IV. **CONCLUSION**

For the foregoing reasons, Plaintiffs' Co-Lead Counsel respectfully request that the separately-filed Newman Firm's application for attorneys' fees and reimbursement of costs and expenses be stricken (or otherwise rejected).

October 8, 2008

**TRUJILLO RODRIGUEZ & RICHARDS, LLC**

By: s/ Lisa J. Rodriguez
Lisa J. Rodriguez
258 Kings Highway East
Haddonfield, New Jersey 08033
Telephone: (856) 795-9002
Facsimile: (856) 795-9887

*Liaison Counsel for Plaintiffs*

William M. Audet
**AUDET & PARTNERS LLP**
221 Main Street, Suite 1460
San Francisco, California
Telephone: (415) 568-2555
Facsimile: (415) 568-2556

Kenneth A. Wexler
Mark J. Tamblyn
**WEXLER WALLACE LLP**
55 West Monroe Street, Suite 3300
Chicago, Illinois 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Sherrie R. Savett
Russell D. Paul
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4636

Scott A. Kamber
**KAMBEREDELSON**
11 Broadway, 22nd Floor
New York, New York 10004
Telephone: (212) 920-3072
Facsimile: (212) 202-6364

Stuart A. Davidson
**COUGHLIN STOIA GELLER
 RUDMAN & ROBBINS LLP**
120 E. Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
Telephone: (561) 750-3000
Facsimile: (561) 750-3364

Steve W. Berman
Jeniphr Breckenridge
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Fifth Avenue, Suite 2900
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

*Co-Lead Counsel for Plaintiffs*