**LAW OFFICES OF DANIEL I. WARD**
Daniel I. Ward, Esq. (NJ Bar No. 033581986)
118 White Horse Road W.
Voorhees, NJ 08043
Tel: (856) 566-6614
Fax: (856) 566-7373

**BLUMENTHAL & NORDREHAUG**
Kyle R. Nordrehaug (Cal.Bar #205975) *pro hac vice pending*
2255 Calle Clara
La Jolla, California 92037
Tel: (858)551-1223
Fax: (858) 551-1232

Attorneys for Settlement Class Members,
MARGARET PICUS and DANIEL KAFFER

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE PET FOOD PRODUCTS LIABILITY LITIGATION | Civil Action No. 07-2867 (NLH) (All Cases)<br>MDL Docket No. 1850<br><br>RESPONSE IN OPPOSITION BY CLASS MEMBERS MARGARET PICUS AND DANIEL KAFFER TO MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT<br><br>Date: October 14, 2008<br>Time: 9:30 a.m.<br><br>Judge: Hon. Noel L. Hillman<br>Courtroom: 3A |

1
RESPONSE IN OPPOSITION TO MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
Civil Action No. 07-2867 (NLH) (All Cases) / MDL Docket No. 1850

Dockets.Justia.com

# TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. SUMMARY OF THE OBJECTIONS ASSERTED BY CLASS MEMBERS
MARGARET PICUS AND DANIEL KAFFER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. PLAINTIFFS FAILED TO RESPOND TO THE OBJECTIONS . . . . . . . . . . . . . . . . . . . . 4

    A.    Plaintiffs Present No Evidence To Establish the Reasonableness
of the $250,000 Settlement for Product Purchase Claims . . . . . . . . . . . . . . . . . . . . . 4

    B.    Plaintiffs Concede That the Product Purchase Payments Are Limited to the
Recall of a Products Manufactured Over Only A Few Months, But the Release
Is Not Limited To Such Recalled Products . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    C.    Plaintiffs Do Not Accurately Describe the Scope of the Release . . . . . . . . . . . . . 7

    D.    There Is No Adequate Representation of Those Individuals With
Only Purchase Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# TABLE OF AUTHORITIES

*Alloway v. Gen. Marine Indus.,*
    149 N.J. 620, 695 A.2d 264 (N.J. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591, 620 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Elkins v. Equitable Life Ins. Co. Of Iowa*,
    1998 WL 133741 (M.D. Fla. Jan. 27, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Grimes v. Vitalink Communications Corp.*,
    17 F.3d 1553 (3rd Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*HDM Flugservice GmbH v. Parker Hannifin Corp.*,
    332 F.3d 1025 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Community Bank of N. Va.,*
    418 F.3d 277 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re K-Dur Antitrust Litig.*,
    2007 WL 5297757 (D.N.J. Oct 10, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Prudential Ins. Co. America Sales Practice Litig.*,
    148 F.3d 283 (3rd Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*KB Home v. Super. Ct.*,
    112 Cal. App. 4th 1076, 5 Cal. Rptr. 3d 587 (Ct. App. 2003) . . . . . . . . . . . . . . . . . . . . 9

*National Super Spuds, Inc. v. New York Mercantile Exchange*,
    660 F.2d 9 (2d Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8

*Ortiz v. Fibreboard Corp.,*
    527 U.S. 815 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Reynolds v. Beneficial National Bank*,
    288 F.3d 277 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.  **INTRODUCTION**

Margaret Picus and Daniel Kaffer ("Kaffer/Picus Objectors") are members of the proposed settlement class who respectfully submit that the motion for final approval of the proposed class settlement must be denied. The Kaffer/Picus Objectors have timely objected to the proposed settlement and will appear at the final approval hearing through counsel to assert their objections. In addition, the Kaffer/Picus Objectors have separately moved to formally intervene and for leave to obtain limited discovery.

Plaintiffs' Motion utterly fails to refute any of the objections raised by the Kaffer/Picus Objectors as members of the proposed settlement class. To the contrary, Plaintiffs make numerous admissions that underscore the validity of the objections and the legal infirmities of the settlement.

First, Plaintiffs assert that the $250,000 the $ 24 million settlement allocated to product purchase claims is reasonable compensation to the purchasers of more than "60 million containers of pet food products." (Motion at p.4 [Doc. No. 249].) In making this bald statement, Plaintiffs provide no analysis, discussion or evidence addressing the value or strength of the product purchase claims. As a result, Kaffer/Picus Objectors' evidence submitted with their objections stands unrebutted and demonstrates that the $250,000 is manifestly unreasonable compensation for the product purchase claims, for which there is no defense, no causation problems and no quantification difficulties.

Second, Plaintiffs argue that the release is not overly broad and does not apply to the fraudulent "Made in the USA" mislabeling claims for both contaminated and non-contaminated pet food asserted in the *Picus v. Wal-Mart Stores, et al.*, Case No. 2:07-CV-00682, and *Kennedy v. Natural Balance*, Case No. 07cv1082, actions. Plaintiffs' argument, however, is contradicted by the plan language of the release, which encompasses all claims of Settlement Class Members like Margaret Picus and Daniel Kaffer, including the mislabeling claims for non-contaminated pet food purchases, for which Plaintiffs' admit no compensation is being paid. Plaintiffs also completely ignore the fact that Defendants, as a co-party to the settlement, have represented to a different Court that as to claims for non-contaminated products, "there is no question that the claims asserted here

1

are included in the Released Claims in the MDL Settlement." (Defendant Natural Balance's Opposition at p.5, Exhibit #6 [Doc. No. 208].)

The parties to the settlement have Plaintiffs making one representation to this Court, and Defendants making a contrary representation to the District Court for the Southern District of California. This expedient inconsistency illustrates the fatal problem with the overbroad release which extends to purchases for which no compensation is being paid and requires denial of settlement approval. Defendants stay cleverly silent here so as to be able to assert a different understanding of the agreement in other courts, which has already been accepted by one federal District Court based upon a plain reading of the broad release. The Settlement cannot be approved unless or until the release is limited to claims for purchases of Recalled Pet Food Product, or a remedy is provided for those purchases of non-contaminated pet food for which there is a "Made in the USA" claim.

Third, Plaintiffs admit that there is no representation by any Plaintiff with only product purchase claims. Plaintiffs also admit that there is no representation by any Plaintiff with a mislabeling claim for non-contaminated pet food, which claims are being released without any consideration. These admission, coupled with the release of claims with inadequate or no consideration, establishes the conflict of interest and inadequacy of representation as a matter of law. See *National Super Spuds, Inc. v. New York Mercantile Exchange*, *supra*, 660 F.2d 9, 18 (2d Cir. 1981) ("The inadequacy of the representation provided by the named plaintiffs is apparent from examination of the settlement itself.") Boldly, Plaintiffs argue that the class representatives with injured pet claims also have product purchase mislabeling claims for contaminated pet food, and therefore can represent both types of claims. This argument, however, ignores the manifest conflict of interest evidenced by the settlement terms, whereby of the $24 million settlement, a paltry $250,000 is being allocated to product purchase claims for contaminated pet food, the remaining $23.75 million is allocated to injured pet claims, and nothing is allocated to the mislabeling claims for non-contaminated pet food which are being released. Given the difficulties of proof and causation inherent in the injured pet claims, and Defendants' clear liability to provide refunds for

all contaminated and non-contaminated mislabeled product claims, this allocation is most certainly unfair and inappropriate as a product of participation without separate representation.

The injured pet class representatives entered into a settlement that is patently unfair to the millions of product purchasers in the class and allocates more than 90% of the settlement to their injured pet claims. Unsurprisingly, the conflict of interest caused by the lack of representation is manifest because the injured pet class representatives chose to divide the lion's share of the $24 million settlement among the few thousand represented injured pet owners, rather than allocating a fair share to the millions of product purchasers who were not separately represented.

Fourth, Plaintiffs also fail to discuss the legerdemain whereby the class definition was radically expanded as part of the Settlement to include all the claims in the *Picus* and *Kennedy* cases, after the MDL Panel had ruled that those claims were not part of this case. This bait and switch allowed Defendants to settle the mislabeling claims for contaminated products for grossly inadequate consideration and obtain a release of the mislabeling claims for contaminated and uncontaminated products without any compensation because the class members with such claims had no independent representation to protect their interests in the MDL.

Plaintiffs have failed to provide any evidence demonstrating the reasonableness of the settlement of the product purchase claims based upon the total amount of contaminated products sold, and failed to rebut the serious issues concerning the overbroad release, the inadequate representation and the conflicts of interest raised by the Kaffer/Picus Objectors. Therefore, the Kaffer/Picus Objectors respectfully submit that final approval of the Settlement must be denied.

## II. SUMMARY OF THE OBJECTIONS ASSERTED BY CLASS MEMBERS MARGARET PICUS AND DANIEL KAFFER

The specific grounds for the objections and opposition are as follows: (i) the release is overly broad in that the settlement provides for a release of liability for certain mislabeling claims without providing any consideration ; (ii) the settlement purports to release "Made in the USA" claims which are outside the scope of the MDL; (iii) there is a conflict of interest between those members of the

class with Injury Claims and those consumers with product purchase claims only; (iv) the class representatives do not adequately represent those members of the class with product purchase claims only; (v) the counsel for the settlement class failed to perform adequate investigation and discovery with respect to the mislabeling claims being released by the proposed settlement; (vi) the settlement is unfair, unreasonable and inadequate with respect to those members of the settlement class who have mislabeling claims for products that were not recalled in addition to the claims relating to recalled purchases; and (vii) the settlement amount of $250,000 for payment of the claims of purchasers of recalled pet food and zero dollars for payment of mislabeling claims for non-contaminated product purchases is grossly inadequate when considering that the release applies to all product sales which exceed $20 million for Ol' Roy and Natural Balance pet food products alone and involves more than 60 million packages of contaminated products.

### III. PLAINTIFFS FAILED TO RESPOND TO THE OBJECTIONS

#### A. Plaintiffs Present No Evidence To Establish the Reasonableness of the $250,000 Settlement for Product Purchase Claims

Plaintiffs failed to submit any evidence which would enable this Court to accept the reasonableness of the allocation of only $250,000 to the product purchase claims. Plaintiffs discuss only the injured pet claims, and cannot dispute that there has been no discovery, analysis or evidence presented with respect to the product purchase claims.[1] Plaintiffs are unable to articulate any value to the claims of the millions of consumers who purchased contaminated and/or mislabeled products, but suffered no economic loss beyond the product purchase. Plaintiffs also do not dispute Defendants' clear liability to provide refunds to these consumers and fail to provide the Court with any information about the total value of these refund claims. The Kaffer/Picus Objectors have requested that this evidence be produced. [Doc. No. 208-3]. Plaintiffs' conspicuous failure to

---

[1] The Kaffer/Picus Objectors express no opinion as to whether the settlement for pet injuries is reasonable, although the Court should note that the Plaintiffs fail to even disclose the aggregate total insurance held by Defendants which would cover these claims.

produce this evidence warrants a strong inference that the evidence would be adverse their position that the settlement should be approved.

Plaintiffs concede that the $250,000 is intended to compensate consumers for "60 million containers of pet food products." (Motion at p.4 [Doc. No. 249].) In the case of Daniel Kaffer, the product purchased cost in excess of $30 per container. Even if these "60 million containers" cost only $1 apiece, however, the product purchase claims for contaminated pet food would still equal a minimum of $60 million. The mislabeling claims for non-contaminated pet food, which are being released without any consideration, make the total amount of the product purchase claims much higher. The Kaffer/Picus Objectors presented evidence that the value of the product purchase claims against one Defendant alone is over $12 million alone. Plaintiffs provide no contrary evidence. Accordingly, the product claims valued in excess of $60 million are being compensated by the $250,000 without any evidentiary support.

Given the obvious insufficiency of $250,000 for the release of over $60 million in product purchase refund claims for contaminated pet food, Plaintiffs falsely argue that the $250,000 settlement amount is augmented by the "$8 million in Historic Payments already paid to pet owners." (Motion at pp. 6 and 52 [Doc. No. 249].) The "Historic Payments," however are defined in the Settlement Agreement at page 10 as those "amounts already paid by certain of the Defendants, Released Entities, and/or their insurers in settlement or reimbursement of **claims for injury, death or screening expenses associated with a pet's consumption** of Recalled Pet Food Products, which Defendants represent to be equal to at least $8,000,000."[2] **Thus, by definition, the Historic Payments do not include any amount for product purchase refunds based on either contamination or mislabeling.**

As a result, the only evidence provided to this Court establishes that the settlement amount of $250,000 is grossly unreasonable and inadequate when compared to the value of the product purchaser claims. According to the unrebutted declaration of nationally recognized marketing

---

[2] Unless otherwise indicated, all emphasis added and internal citations omitted.

expert, Robert Klein, the mislabeled product purchase claims against Natural Balance alone involve $12,874.811 in retail sales. (Klein Decl., at ¶10 [Doc. No.208-3]. The amount allocated to product purchases would thus be inadequate when compared to the mislabeled sales of Natural Balance alone. Since Natural Balance's sales are a only small percentage of the released product purchase claims the settlement allocation of only $250,000 is grossly inadequate.

Plaintiffs cannot dispute that this Court has the duty and obligation to protect the interests of the absent class members by evaluating the reasonableness of the product purchase settlement based upon actual evidence, and not speculation. "In determining whether to certify a settlement class and approve a proposed class settlement, "the court plays the important role of protector of the absentees' interests, in a sort of fiduciary capacity....and must " 'independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished.'" *In re K-Dur Antitrust Litig.*, 2007 WL 5297757 at *4 (D.N.J. Oct 10, 2007). Accordingly settlement approval must be denied,

> **B.     Plaintiffs Concede That the Product Purchase Payments Are Limited to the Recall of a Products Manufactured Over Only A Few Months, But the Release Is Not Limited To Such Recalled Products**

Plaintiffs contend that **"the Recall involves a limited number of products manufactured over only a few months."** (Motion at p.52 [Doc. No. 249].) Plaintiffs concede, however, that more than than 60 million containers of contaminated pet food were sold by Defendants during this period.

More importantly, however, while this MDL involved only the contamination of pet food during a specified period, the release is not limited to this contamination period. And while refunds are limited to only contaminated purchases, the claims for purchases of non-contaminated products that were fraudulently mislabeled as "Made in the USA" are also included in the release. As a result certain Defendants successfully argued in *Kennedy*, that the claims for non-contaminated purchases that were falsely labeled as "Made in the USA" are released by virtue of this settlement.

Plaintiffs continue to ignore the MDL Panel Ruling which held:

6

> The complaint in the action before us alleges that defendants intentionally mislabeled one particular brand of pet food products as "MADE IN USA" when, in fact, a major component of the pet food was manufactured in China. **These allegations will likely require unique discovery and other pretrial proceedings. Accordingly, we are persuaded that inclusion of this action in MDL No. 1850 is not presently warranted.**

(Order Vacating Conditional Transfer Order, dated October 9, 2007, Exhibit #1 in Doc. No.208). The Settling Parties release these non-contaminated purchase claims for false labeling over the last several years, even though such claims, according to the MDL Panel, require "unique discovery." Indeed, Plaintiffs concede that they have not performed discovery with respect to the value of the product purchase claims, and they certainly have not performed the "unique discovery" required to evaluate the non-contaminated purchase claims based upon false "Made in the USA" labeling as addressed in the MDL Order.

### C. Plaintiffs Do Not Accurately Describe the Scope of the Release

Plaintiffs assert that the release does not include claims for non-contaminated purchases alleged in *Picus* and *Kennedy* lawsuits. Plaintiffs fail to mention, however, that one of the released entities, Defendant Natural Balance, has already successfully taken the position that the release applies to false labeling claims for non-contaminated purchases arising in 2005 or 2006. In opposing class certification, Defendant Natural Balance took the position that the class could not be certified because of the settlement in this MDL litigation. Natural Balance argued that "the four products at issue in this case are among those defined as "Recalled Pet Food Products" and therefore "**each and every person who purchased one of the four (4) identified products (including Mr. Kennedy) is a member of the Settlement Class."** (Natural Balance's Opposition at p.5, a true and correct copy of which is attached as Exhibit #6 to the Declaration of Kyle Nordrehaug). As a result, Natural Balance argued that irrespective of contamination or time, **"there is no question that the claims asserted here are included in the Released Claims in the MDL Settlement."** (Natural Balance's Opposition at p.5, Exhibit #6).

Faced with the plain expansive language of the release, which on its face applies to **"all**

**claims, demands, actions, suits and/or causes of action that have been brought or could have been brought" …by any Settlement Class Member, "whether known or unknown, asserted or unasserted, under or pursuant to any statute, regulation**...", the United States District Court held that Kennedy's "Made in the USA" mislabeling claims could not proceed on behalf of a class "because every member of Plaintiff's putative class appears to be subject to the MDL court's preliminary approval order enjoining other actions related to the recalled products" and **"based on the terms of MDL court's preliminary approval order, the only individuals who would be able to join a class in this action appear to be individuals who choose to opt out of the MDL settlement."** (Order dated June 12, 2008 at pp.4-5 in *Kennedy v. Natural Balance*, 07cv1082 [Doc. No. 60].) Thus, Settlement Class Members like Margaret Picus and Daniel Kaffer, as held by the U.S. District Court, are releasing and are barred from pursuing their "Made in the USA" claims for non-contaminated purchases, which were asserted in the *Picus v. Wal-Mart Stores, et al.*, Case No. 2:07-CV-00682, and *Kennedy v. Natural Balance*, Case No. 07cv1082, actions, but are receiving no consideration for the release of these claims.

Plaintiffs cannot dispute that such a release of liability without providing a remedy is a "hot button indicator" establishing unfairness of a class settlement. *Managing Class Action Litigation: A Pocket Guide for Judges*, published by the Federal Judicial Center in 2005 at p. 15, attached as Exhibit #7, to the Declaration of Nordrehaug [Doc. No. 208-1]. The broad release of non-contaminated mislabeling claims therefore violates the fundamental rule that a class settlement should not provide for a release of liability without consideration. See *Reynolds v. Beneficial National Bank*, 288 F.3d 277, 284 (7th Cir. 2002); *National Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9, 19 (2d Cir. 1981); *Grimes v. Vitalink Communications Corp.*, 17 F.3d 1553, (3rd Cir. 1994).

    **D.    There Is No Adequate Representation of Those Individuals With Only Purchase Claims**

Plaintiffs concede that not one of the class representatives have only product purchase claims.

8

RESPONSE IN OPPOSITION TO MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
Civil Action No. 07-2867 (NLH) (All Cases) / MDL Docket No. 1850

Instead, each of the class representatives have asserted injured pet claims. Plaintiffs argue, however, that class members with only product purchase claims are adequately represented because each of the class representatives has a product purchase claim as well as an injured pet claim. This sophistry, however, is contrary to both the governing law and common sense.

While the class representatives may also have incidental claims as purchasers of the tainted and mislablelled products, their tort claims for injury to their pets are obviously much more important to them, both in terms of money and emotion. These are the class representatives who agree to a settlement that allocates only $250,000 to the contaminated purchase claims, and the remainder of the $24 million is allocated to injured pet claims, while releasing the non-contaminated mislabeling claims without any consideration. There is no adequate representation of the majority of the Settlement Class which purchased one or more of the 60 million units, but did not suffer pet injuries. This inadequate representation is evidenced by the face of the settlement which allocated $250,000 of the $ 24 million the product purchase claims.

Indeed, there is no representation of those purchasers without injured pet claims who cannot recover under a tort or product liability theory because of the Economic Loss Rule.[3] Product purchase claims must be based on a contract or statutory theory, for which there is no representation, whereas the injured pet claims alleged under different tort theories to which nearly all of the settlement money have been allocated.

Moreover, Plaintiffs argument that representation is adequate is contrary to *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) and *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 852 (1999),

In *Ortiz* the Supreme Court held that conflicts of interest require the creation of subclasses

---

[3] The "Economic Loss Rule" bars tort recovery for economic damages caused by a defective product unless those losses are accompanied by personal injury or damage to property other than the defective product itself. *See e.g. KB Home v. Super. Ct.*, 112 Cal. App. 4th 1076, 5 Cal. Rptr. 3d 587, 590 (Ct. App. 2003); *Alloway v. Gen. Marine Indus.,* 149 N.J. 620, 695 A.2d 264, 267-68 (N.J. 1997); *HDM Flugservice GmbH v. Parker Hannifin Corp*., 332 F.3d 1025, 1028-30 (6th Cir. 2003).

with independent representation:

> First, it is obvious after *Amchem* that a class divided between holders of present and future claims (some of the latter involving no physical injury and attributable to claimants not yet born) requires **division into homogeneous subclasses under Rule 23(c)(4)(B), with separate representation to eliminate conflicting interests of counsel**.

527 U.S. at 2319.

Plaintiffs do not discuss *Ortiz* and argue that *Amchem* is limited to cases involving class members with latent injuries. (Motion at p.50 [Doc. No. 249].) *Amchem* cannot be limited to its own narrow facts, however, and requires subclassing and separate representation of class members with divergent interests, whenever an overbroad settlement class definition creates a conflict of interests.

Here the divergent interests of the class members with only product purchase claims, including class members with mislabeling claims that are being released without any compensation, requires the creation of a subclass and appointment of a class representative and counsel for that subclass who can adequately represent these members of the Class and protect their interests.

*In re Community Bank of N. Va., supra*, 418 F.3d 277, 307-08 (3d Cir. 2005), the Third Circuit reversed and vacated approval of a class settlement because certain members of the settlement class who had additional claims under TILA or the Home Ownership and Equity Protection Act were included in the release were not adequately represented:

> [W]e are not convinced based on the present record that the named plaintiffs adequately represent the interests of the entire class. **At the very least, consideration should have been given to the feasibility of dividing the class into sub-classes so that a court examining the proposed settlement could have judged the fairness of the settlement as it applied to similarly situated class members**....

*In re Community Bank of N. Va.* held that this conflict of interest was aggravated, where as here, class counsel failed to adequately investigate or prosecute claims that were part of the settlement release. *Id.* Plaintiffs argue that *Community Bank* is distinguishable because in that case these additional released "claims potentially gave rise to additional damages far in excess of the reimbursement to which settlement class members would be entitled under the Settlement" (Motion at p. 51 [Doc. No. 249].) That is exactly the case here, where, the released product purchaser claims give rise to over $60 million in potential additional damages which far exceeds the $ 250,000

reimbursement the class members would receive under the settlement.[4]

The cases Plaintiffs cite further demonstrate why representation is inadequate and the settlement cannot be approved. Plaintiffs argue approval is warranted under *In re Prudential Ins. Co. America Sales Practice Litig.*, 148 F.3d 283, 294-97 (3rd Cir. 1998) ("Prudential II") and *Elkins v. Equitable Life Ins. Co. Of Iowa*, 1998 WL 133741, at * 15 (M.D. Fla. Jan. 27, 1998) which hold that a settlement that compensates class members according to the relative strength and value of their claims does not create an inherent conflict of interest. Here, however, the product purchase claims were not properly investigated or litigated and are not being compensated in accordance with their relative value and strength. Plaintiffs failure to provide the Court with any evidence concerning the value and strength of these claims shows that they could not possibly have adequately represented the class members who have only product purchase claims.

The current representatives and their counsel, who assert product liability claims to recover pet injury damages, cannot adequately represent the interests of the millions of members of the class asserting only product purchase claims. By settling these claims of this unrepresented subclass for the grossly inadequate compensation of $250,000 and imposing an overly broad release that extends far beyond claims for contaminated products without obtaining additional compensation, the current Settlement is unfair and inadequate to unrepresented class members like Margaret Picus and Daniel Kaffer.

## IV.   CONCLUSION

While individuals with injured pet claims have suffered immensely and are entitled to compensation, they are not permitted to recover at the expense of the remainder of the class who only have product purchase claims. Not only is the allocation of the settlement unfair and evidences the

---

[4] Plaintiffs also argue that Community Banks is distinguishable because on remand the District Court reinstated the settlement after determining that the TILA and HOEPA were not viable. Here, however, Plaintiffs do not challenge the viability of the product purchase claims which have been upheld by the Nevada Court after multiple motions to dismiss in *Picus*.

11

inadequacy of representation, the broad release is further evidence. The proposed settlement is unfair and unreasonable with respect to Settlement Class Members like Margaret Picus and Daniel Kaffer whose interest have not been adequately represented.

    Respectfully submitted,

DATED: October 10, 2008                  BLUMENTHAL & NORDREHAUG

By: */s/ Kyle R. Nordrehaug*
      Kyle R. Nordrehaug

LAW OFFICE OF DANIEL I. WARD

By: */s/ Daniel S. Ward*
      Daniel I. Ward, Esq.
      118 White Horse Road W.
      Voorhees, NJ 08043
      Tel: (856) 566-6614
      Fax: (856) 566-7373

Attorneys for Settlement Class members
Margaret Picus and Daniel Kaffer

# CERTIFICATE OF SERVICE

I, am, at all relevant times, was a citizen of the United States and a resident of the County of San Diego and am employed by the attorney of record in this action located at 2255 Calle Clara, La Jolla, CA 92037. I hereby certify that on October 10, 2008, the following document(s):

(1) RESPONSE IN OPPOSITION BY CLASS MEMBERS MARGARET PICUS AND DANIEL KAFFER TO MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

_XX_ (BY ELECTRONIC SERVICE): I caused the listed documents to be electronically filed through the CM/ECF system at the United States District Court for the District of Nevada which generates a Notice of Electronic Filing to all parties and constitutes service of the electronically filed documents on all parties for purposes of the Federal Rules of Civil Procedure.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on October 10, 2008 at San Diego, California.

By: */s/ Kyle R. Nordrehaug*
     Kyle R. Nordrehaug

Attorneys for Settlement Class members
Margaret Picus and Daniel Kaffer