UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

IN RE PET FOOD PRODUCTS
LIABILITY LITIGATION

MDL Docket No. 1850 (All Cases)

Case No. 07-2867 (NLH)

The Honorable Noel L. Hillman

**ORAL ARGUMENT REQUESTED**

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
APPEAL BOND FROM OBJECTORS/APPELLANTS JIM W. JOHNSON AND
DUSTIN TURNER, AND FROM OBJECTORS/APPELLANTS
MARGARET PICUS AND DANIEL KAFFER**

---

IN RE: PET FOOD PRODUCTS LIABILITY LITIGATION                    Doc. 284

**TRUJILLO RODRIGUEZ & RICHARDS, LLC**
Lisa J. Rodriguez
258 Kings Highway East
Haddonfield, NJ 08033
(856) 795-9002

*Liaison Counsel for Plaintiffs*

Dated: December 29, 2008

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ..............................................................................................1

II.   STATEMENT OF FACTS ...............................................................................3

     A.    Picus and Kaffer's Appeal Is Without Merit ........................................3

     B.    The Professional Objectors, on Behalf of Johnson and Turner, Cannot
            Demonstrate That This Court Abused Its Discretion in Approving the
            Settlement .............................................................................................4

     C.    The Record Establishes That the Professional Objectors Have a Sordid
            History of Vexatious Litigation Conduct................................................6

           1.    *Park v. The Thompson Corp.*, No. 05-cv-2931 (S.D.N.Y. filed Mar.
                 16, 2005) and *Turner v. Gen. Elec. Co.*, 05-cv-186 (M.D. Fla. filed
                 Apr. 29, 2005) ............................................................................7

           2.    *Pathe Computer Control Sys. Corp. v. Kinmont Indus., Inc.*, 955
                 F.2d 94, 97 (1st Cir. 1992)........................................................7

           3.    *The Progressive Corp. Ins. Underwriting & Rating Practices
                 Litig.*, No. 03-CV-01519 (N.D. Fla. filed Apr. 16, 2003)...........8

           4.    *McCoy v. HealthNet, Inc.*, 569 F. Supp. 2d 448, 470-75 (D.N.J.
                 2008) ..........................................................................................8

           5.    *In re Ford Explorer Cases*, No. JCCP 4266 & 4270 (Sacramento
                 Super. Ct.) ..................................................................................8

III.  ARGUMENT...................................................................................................8

     A.    This Court Should Issue an Order Requiring the Two Sets of Objectors to
            Each Post an Appeal Bond........................................................................8

           1.    A $25,000 Bond Is Reasonable Under the Circumstances to Cover
                 the Expenses Required to Litigate the Appeal .........................10

           2.    Because the Appeal by the Professional Objectors Is Facially
                 Groundless, Their Appeal Bond Should Include an Additional
                 Amount for Attorneys' Fees ....................................................11

           3.    The Third Circuit's Decision in *Hirschensohn* Does Not Bar This
                 Court from Imposing an Appeal Bond for Plaintiffs' Attorneys'
                 Fees .........................................................................................12

4.      Post-Judgment Interest Should Also be Taken Into Account When Imposing an Appeal Bond ........................................................................14

B.      Plaintiffs Expressly Reserve Their Right to Seek the Issuance of an Order to Show Cause Under 28 U.S.C. §1927 Against the Professional Objectors ........15

IV.     CONCLUSION........................................................................................................17

# TABLE OF CITATIONS

## CASES

*Adsani v. Miller,*
   139 F.3d 67 (2d Cir. 1998)................................................................9, 11, 13

*Azizian v. Federated Dep't Stores, Inc.,*
   499 F.3d 950 (9th Cir. 2007) ...............................................................8, 13, 14

*Barnes v. Fleetboston Fin. Corp.,*
   No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072 (D. Mass. Aug. 22, 2006) ...............6, 7

*Beam v. Bauer,*
   383 F.3d 106 (3rd Cir. 2004) .................................................................5

*Beam v. Downey,*
   151 Fed. Appx. 142 (3d Cir. 2005)..............................................................5

*Chambers v. NASCO, Inc.,*
   501 U.S. 32 (1991).............................................................................13

*Creely v. Crestview Ctr.,*
   241 Fed. Appx. 58 (3d Cir. 2007)...............................................................16

*Downey v. Mortgage Guar. Ins. Corp.,*
   313 F.3d 1341 (11th Cir. 2002) .................................................................11

*Eaves v. County of Cape May,*
   239 F.3d 527 (3d Cir. 2001)....................................................................15

*Ford v. Alfaro,*
   785 F.2d 835 (9th Cir. 1986) ..................................................................15

*Girsh v. Jepson,*
   521 F.2d 153 (3d Cir. 1975).....................................................................6

*Hirschensohn v. Lawyers Title Ins. Corp.,*
   No. 96-7312, 1997 WL 307777 (3d Cir. June 10, 1997)......................................12, 13, 14

*In re Broadcom Corp. Sec. Litig.,*
   No. SACV 01-275 DT (MLGx) (C.D. Cal. Dec. 5, 2005)..................................................11

*In re Cardizem CD Antitrust Litig.,*
   391 F.3d 812 (6th Cir. 2004) .................................................................9, 11

*In re Compact Disc Minimum Advertised Price Antitrust Litig.,*
   No. MDL 1361, 2003 WL 22417252 (D. Me. Oct. 7, 2003)..................................9, 10, 11

*In re Diet Drugs,*
    MDL Docket No. 1203, 2001 WL 34133966 (E.D. Pa. Apr. 06, 2001)...........................10

*In re Ford Explorer Cases,*
    No. JCCP 4266 & 4270 (Sacramento Super. Ct.)................................................8

*In re Genesis Health Ventures,*
    362 B.R. 657 (D. Del. 2007)...........................................................................16

*In re Global Crossing Sec.& ERISA Litig.,*
    225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................................4

*In re Ins. Brokerage Antitrust Litig.,*
    MDL Docket No. 1663, Civ. No. 04-5184 (GEB) 2007 WL 1963063
    (D.N.J. July 02, 2007)...........................................................................10, 14

*In re NASDAQ Market-Makers Antitrust Litig.,*
    187 F.R.D. 124 (S.D.N.Y. 1999) .................................................................9, 11

*In re Pet Food Prods. Liab. Litig.,*
    MDL Docket No. 1850, No. 07-2867 (NLH) 2008 WL 4937632
    (D.N.J. Nov. 18, 2008)................................................................... *passim*

*In re PNC Fin. Servs. Group,*
    440 F. Supp. 2d 421 (W.D. Pa. 2006).............................................................4

*In re Prudential Ins. Co. Am. Sales Practice Litig. Actions,*
    278 F.3d 175 (3d Cir. 2002), *aff'd* 232 Fed. Appx. 161 (3d Cir. 2007) ....................15, 16

*Kramer v. Scientific Control Corp.,*
    534 F.2d 1085 (3d Cir. 1976)........................................................................8

*Lenahan v. Sears, Roebuck & Co.,*
    266 Fed. Appx. 114 (3rd Cir. 2008).................................................................4

*Livingston v. Toyota Motor Sales USA, Inc.,*
    Nos. C-94-1377-MHP, C-94-1359 MHP & C-94-1960 MHP,
    1997 U.S. Dist. LEXIS 24087 (N.D. Cal. Nov. 10, 1997) ...............................15

*Macheska v. Thomson Learning,*
    347 F. Supp. 2d 169 (M.D. Pa. 2004) .............................................................16

*Marek v. Chesny,*
    473 U.S. 1 (1985)......................................................................................13

*McCoy v. HealthNet, Inc.,*
    569 F. Supp. 2d 448 (D.N.J. 2008) .................................................................8

*McGee v. Cont'l Tire N. Am.,*
    Civil Action No. 06-CV-06234 (GEB) (D.N.J. filed Dec. 27, 2006) ................................6

*O'Keefe v. Mercedes-Benz USA, LLC,*
    No. Civ.A. 01-CV-2902, 2003 WL 22097451 (E.D. Pa. June 04, 2003) .........................13

*Park v. The Thompson Corp.,*
    No. 05-cv-2931 (S.D.N.Y. filed Mar. 16, 2005)...................................................................7

*Pathe Computer Control Sys. Corp. v. Kinmont Indus., Inc.,*
    955 F.2d 94 (1st Cir. 1992).................................................................................................7

*Pedraza v. United Guar. Corp.,*
    313 F.3d 1323 (11th Cir. 2002) ....................................................................................11, 13

*Sckolnick v. Harlow,*
    820 F.2d 13 (1st Cir. 1987)............................................................................................11, 13

*Shavers v. Shavers,*
    Civil Action Nos. 1:00-cv-522(DCB)(JMR), 1:01-cv-1(DCB)(JMR), 1:01-cv-
    160(WJG)(JMR) 2007 WL 312705 (S.D. Miss. Jan. 30, 2007) .......................................16

*Shaw v. Toshiba Am. Info., Inc.,*
    91 F. Supp. 2d 942 (E.D. Tex. 2000)..................................................................................6

*Spain v. Mountanos,*
    690 F.2d 742 (9th Cir. 1982) .............................................................................................15

*The Progressive Corp. Ins. Underwriting & Rating Practices Litig.,*
    No. 03-CV-01519 (N.D. Fla. filed Apr. 16, 2003) ............................................................7

*Turner v. Gen. Elec. Co.,*
    No. 05-cv-186 (M.D. Fla. filed Apr. 29, 2005) .................................................................7

*Veneziano v. Long Island Pipe Fabrication & Supply Corp.,*
    238 F. Supp. 2d 683 (D.N.J. 2002), *aff'd,* 79 Fed. Appx. 506 (3d Cir. 2003)..................17

*Young v. New Process Steel, LP,*
    419 F.3d 1201 (11th Cir. 2005), *cert. denied,* 547 U.S. 1003 (2006).....................9, 11, 13

## STATUTES, RULES AND REGULATIONS

28 U.S.C. §1927....................................................................................................................15, 16

28 U.S.C. §1961(a) .....................................................................................................................14

42 U.S.C. §1988..........................................................................................................................12

Civ. R. 78.1 ....................................................................................................17

Fed. R. App. P. 7 ........................................................................................ *passim*

Fed. R. App. P. 37(a) ....................................................................................15

Fed. R. App. P. 38 ..........................................................................................5

Fed. R. Civ. P. 11 ...........................................................................................7

Fed. R. Civ. P. 39 ....................................................................................12, 14

Pursuant to Federal Rule of Appellate Procedure 7, Plaintiffs, on behalf of themselves and the Settlement Class, through Settlement Class Co-Lead Counsel, respectfully submit the following memorandum of law in support of their Motion for an Appeal Bond From Objectors/Appellants Jim W. Johnson ("Johnson") and Dustin Turner ("Turner"), and from Objectors/Appellants Margaret Picus ("Picus") and Daniel Kaffer ("Kaffer") (collectively, the "Objectors"):

## I.    INTRODUCTION

On November 18, 2008, after a full day hearing on the matter, this Court issued a comprehensive 65-page opinion certifying the class for settlement purposes and granting final approval to the proposed $24 million settlement. The Court's approval provided much needed relief to thousands of aggrieved pet owners across two nations, many of whom were put under tremendous financial strain in having to lay out immediate funds to care for their ailing pets. *In re Pet Food Prods. Liab. Litig.*, MDL Docket No. 1850, No. 07-2867 (NLH), 2008 WL 4937632, at *1 (D.N.J. Nov. 18, 2008) (the "Final Approval Opinion"); *see also* October 14, 2008 Fairness Hearing Transcript ("Tr. at ___") [D.E. 267].

This Court thoroughly and meticulously considered all of the issues, including those raised in the motions and arguments from proposed intervenors and 28 objectors. Specifically, this Court considered and rejected the motion to intervene filed on behalf of Picus and Kaffer, [*See* D.E. 204; Tr. at 5:17-21, 23:13-34:8, 57:23-80:22, 85:2-19], and the objection brought by Johnson and Turner, represented by attorneys Robert E. Margulies ("Marguiles") and Jeffrey L. Weinstein ("Weinstein") (collectively, the "Professional Objectors"). [*See* D.E.s 190, 191; Tr. at 86:1-97:14].

Picus and Kaffer have now filed a notice of appeal of this Court's final approval order. [*See* D.E. 279, dated Dec. 12, 2008]. Likewise, the Professional Objectors have also filed a notice of appeal on behalf of Johnson and Turner. [*See* D.E. 277, dated Dec. 3, 2008].

Picus and Kaffer's appeal is without merit. As this Court carefully concluded, the settlement is fair and adequate, does not improperly release claims raised in the distinct "Made in the U.S.A." pet food litigation, and does not require Picus and Kaffer to intervene.

In addition, the appeal from the Professional Objectors is also without merit. This Court thoroughly analyzed the canned objection of the Professional Objectors and rejected the arguments raised therein based on a careful analysis of the settlement and the applicable law.

More importantly, the appeal from the Professional Objectors is frivolous and taken in bad faith as they cannot, *under any circumstances*, demonstrate that this Court abused its discretion in approving the settlement. Indeed, the Professional Objectors' appeal of this Court's order is similar to other vexatious litigation they have conducted in the past before other courts and should not be tolerated.

Furthermore, both appeals will also delay final execution of the landmark $24 million settlement achieved by the parties in this case and hold up much needed relief to the Class – over 23,000 of whom have submitted claim forms to the Third Party Administrator and await payment.

For the reasons more fully discussed below, this Court should require Objectors Picus and Kaffer, jointly and severally, to post an appeal bond of $12,500, and require Objectors Johnson and Turner, jointly and severally, to also post an appeal bond of $12,500, representing, in the aggregate, Plaintiffs' estimated litigation expenses of $25,000.

However, because the Professional Objectors, on behalf of Johnson and Turner, filed an appeal for vexatious purposes, Johnson and Turner should be required to post an additional bond to cover Plaintiffs' anticipated appellate attorneys' fees. Indeed, the Professional Objectors' appeal is intended to unreasonably delay the final execution of the settlement for the solitary goal of attempting to do that which the Professional Objectors have attempted in the past – extract a fee.

## II.    STATEMENT OF FACTS

### A.    Picus and Kaffer's Appeal Is Without Merit

Picus, Kaffer and Plaintiffs briefed their respective positions about the propriety of intervention by Picus and Kaffer.[1] Then, at the fairness hearing, this Court heard and considered extensive oral argument from counsel for Picus and Kaffer, among others, regarding its own concern that the settlement too broadly describes class claims and would unjustly overlap with class definitions in related pet food litigation. [*See* Tr. at 5:17-21, 23:13-34:8, 57:23-80:22, 85:2-19.] Ultimately, however, this Court soundly determined:

> And it's not a perfect world, and sometimes there's overlap, and sometimes you have to make your choices, and your choices – those who are asserting non, or claims not arising out of contaminated food and harm to pets can make their claims in some other courts, and those asserting those claims can participate in this settlement or had an option of opting out. And the relative range of individuals affected and the amount of their claims seems to be rather small. . . . My thought is perhaps that the final settlement order should include the list of contaminated products, the recalled products as defined, so that it's clear if you are buying something else and you have some other claim and you're outside that window, that you're not barred by this release. . . . I think it's important that while I feel comfortable in incorporating claims that are based on recalled products, I want to make sure that nothing in my final approval bars claims on whatever legal theory for products that are not subject to the product recall. And I would ask the parties to make sure that the final order submitted to me makes that as clear as humanly possible.

Tr. at 33:15-24, 79:19-25, 127:6-14.[2]

This Court went on to further elaborate why Picus and Kaffer's positions and arguments are unfounded:

---

[1]    Plaintiffs expressly incorporate herein by reference each and every argument made in response to Picus and Kaffer's motion to intervene, [D.E.s 204, 251], and in support of final approval of the settlement. [D.E. 249].

[2]    Indeed, even counsel for Picus and Kaffer told the Court at the fairness hearing that he no longer had concerns over the scope of the release. Tr. at 85:11-19.

Consequently, persons that did not purchase or whose pets did not consume Recalled Pet Food Products are not Settlement Class Members, and their claims are outside the scope of the Settlement Agreement.

Picus's and Kaffer's claims are based on their alleged purchase of mislabeled products over a period of more than four years, beginning in April 2003 through 2007 or 2008, and their lawsuits assert "Made in the USA" claims for various pet food products and varieties that were outside the scope of the pet food recalls (*i.e.*, all Ol' Roy products labeled "Made in USA," including unrecalled varieties). To the extent these claims relate to products *other than the Recalled Pet Food Products*, they are *not the subject of this Pet Food Recall MDL. Therefore, the Proposed Intervenors' claims in the state actions are not released by the Settlement and their motion to intervene will be denied*. . . . The Court does not find any conflict between the interests of the Proposed Intervenors and the Class representatives who purchased the Recalled Pet Food Products, as their interests in maximizing recovery of such damages for the purchase of such products are aligned with the interests of "mere purchasers" in maximizing recovery for such product purchase claims.

*In re Pet Food*, 2008 WL 4937632, at *8.

Picus and Kaffer will not be able to demonstrate on appeal that this Court abused its discretion in rejecting their arguments and approving of the settlement. *See, e.g., In re PNC Fin. Servs. Group*, 440 F. Supp. 2d 421, 451 (W.D. Pa. 2006). ("In fact, the courts have repeatedly observed that truly independent claims are beyond the scope of a settlement bar order and/or they have convinced the parties to designate such claims as being beyond the reach of the bar order in question."); *In re Global Crossing Sec.& ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004) (finding "no conflict between the class representative and other class members" where "[a]ll share the common goal of maximizing recovery").

### B. The Professional Objectors, on Behalf of Johnson and Turner, Cannot Demonstrate That This Court Abused Its Discretion in Approving the Settlement

The standard of review the Third Circuit will apply on appeal is abuse of discretion. *Lenahan v. Sears, Roebuck & Co.*, 266 Fed. Appx. 114, 117 (3rd Cir. 2008). However, a district court abuses its discretion only where its decision "'rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.'" *Id.*

The Professional Objectors, Johnson and Turner will be unable to show that this Court rested its decision on an erroneous finding of fact or errant conclusion of law or improper application of the law. To the contrary, they will attempt to recycle their objections to the settlement, [D.E.s 190, 191], each of which is utterly without merit and has been rejected. Accordingly, the only way that the Professional Objectors, Johnson and Turner will be able to overcome the clearly established legal and factual record that demonstrates that their position is unfounded is to either ignore binding precedent or to fabricate meritless legal arguments, neither of which the Third Circuit will allow. *See* Fed. R. App. P. 38 (**"Frivolous Appeal—Damages and Costs"**); *see also Beam v. Downey*, 151 Fed. Appx. 142, 144 (3d Cir. 2005) ("Beam asserts that the District Court erred because her suit was not frivolous or groundless. The Court correctly found each of Beam's claims meritless, without any grounds for support."); *Beam v. Bauer*, 383 F.3d 106, 109 (3rd Cir. 2004) ("Recently, when discussing Rule 38 damages, we cautioned counsel that a finding by a District Court that a lawsuit is frivolous should serve as notice to the parties and their attorney to exercise caution, pause, and 'devote additional examination to the legal validity and factual merit of his contentions.' Here, despite many cues from us and the District Court that her cause was wholly meritless, Beam and her counsel have persisted before the District Court and again before us.").

Indeed, this Court properly rejected each and every one of the Professional Objectors' arguments,[3] including their arguments regarding the propriety of certifying a settlement class (*In re Pet Food Prods. Liab. Litig.*, 2008 WL 4937632, at *2-*7), the adequacy of the settlement consideration (*id.* at *2-*11), the authority of the claims administrator to finally adjudicate claims

---

[3] Plaintiffs expressly incorporate herein by reference each and every argument made in response to the Professional Objectors' objections on behalf of Johnson and Turner, [D.E.s 190, 191, 250], and in support of final approval of the settlement. [D.E. 249].

(*id.* at *2 n.1), the fairness and adequacy of the settlement and this Court's application of the factors set forth in *Girsh*[4] (*In re Pet Food Prods. Liab. Litig.*, 2008 WL 4937632, at *12-*16), and the propriety of the *cy pres* disbursement to animal welfare charities (*id.* at *2), which, incidentally, is entirely conditional upon the settlement class first being ***fully compensated*** (a fact ignored by the Professional Objectors).

Perhaps just as important, it was clearly not an abuse of discretion for the Court to overrule objections which contained meritless canned arguments used by the same Professional Objectors in another class settlement pending in this District, *McGee v. Cont'l Tire N. Am.*, Civil Action No. 06-CV-06234 (GEB)(GCC) (D.N.J. filed Dec. 27, 2006), which was demonstrated by the fact that the Professional Objectors failed to replace the word "tires" in their Objection to class certification in this case when they did their undeniable "cut-and-paste" job from their *McGee* objection:

| *Objection in Pet Food Litigation* | *Objection in Tire Litigation* |
|---|---|
| **Breach v. no Breach.** . . . [A]n individual investigation of that class member's ***tires*** or paperwork would be necessary. | **Breach v. no Breach.** . . . [A]n individual investigation of that class member's tires or paperwork would be necessary. |
| [D.E. 190, at p. 4]. | [*McGee*, D.E.s 61, at p. 5; 62, at p. 5]. |

**C.     The Record Establishes That the Professional Objectors Have a Sordid History of Vexatious Litigation Conduct**[5]

Courts are weary of lawyers who object to otherwise proper settlements for the sole purpose of "a fee by lodging generic, unhelpful protests. . . ." *Shaw v. Toshiba Am. Info., Inc.*, 91 F. Supp. 2d

---

[4]     *Girsh v. Jepson*, 521 F.2d 153, 156-57 (3d Cir. 1975).

[5]     Plaintiffs incorporate by reference the factual recitation, the affidavit of William M. Audet, and argument submitted in their opposition, [D.E. 250], to the Professional Objectors' September 2, 2008 objection to the settlement, [D.E.s 190, 191].

942, 973 (E.D. Tex. 2000). For instance, in *Barnes v. Fleetboston Fin. Corp.*, No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072, at *3 (D. Mass. Aug. 22, 2006), the court found:

> Repeat objectors to class action settlements can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements. The larger the settlement, the more cost-effective it is to pay the objectors rather than suffer the delay of waiting for an appeal to be resolved (even an expedited appeal). Because of these economic realities, professional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than the objectors.

Professional Objectors Margulies and Weinstein are exactly the type of "repeat objectors" to whom the court in *Barnes* is referring. The following is a recitation of cases known to Plaintiffs in which the Professional Objectors have attempted to thwart the settlement process for the purposes of unreasonable delay for their own financial gain or other improper means:

1. ***Park v. The Thompson Corp.*, No. 05-cv-2931 (S.D.N.Y. filed Mar. 16, 2005) and *Turner v. Gen. Elec. Co.*, No. 05-cv-186 (M.D. Fla. filed Apr. 29, 2005)**

In *Park*, Weinstein filed objections similar to the objections here. [*Park*, D.E.s 105, 106, 118]. Subsequently, a motion for Federal Rule of Civil Procedure 11 sanctions was filed against Weinstein. [*Id.*, D.E. 115]. The motion included a sworn affidavit filed in *Turner*, in which the affiant swore that, based on Weinstein's admitted tactic of wanting to "work around the rules" and have settlement class counsel make a charitable contribution to a charity of Weinstein's "choosing," Weinstein pursued the litigation "for his own interest in obtaining compensation for himself." [*Id.*].

2. ***Pathe Computer Control Sys. Corp. v. Kinmont Indus., Inc.*, 955 F.2d 94, 97 (1st Cir. 1992)**

In *Pathe*, the Court approved the district court's order of Federal Rule 11 sanctions against Margulies for litigating with an "improper purpose." *Pathe*, 955 F.2d at 97.

### 3. *The Progressive Corp. Ins. Underwriting & Rating Practices Litig.*, No. 03-CV-01519 (N.D. Fla. filed Apr. 16, 2003)

Class counsel testified under oath to Weinstein's attempt to be "paid off" in exchange for the withdrawal of his objection to the class action settlement. [*See* D.E. 250-2, Audet. Decl., Ex. 4].

### 4. *McCoy v. HealthNet, Inc.*, 569 F. Supp. 2d 448, 470-75 (D.N.J. 2008)

In *McCoy*, Judge Hochberg rejected the identical boilerplate objections made by the Professional Objectors in this case. Even more troubling, Christine Weinstein, ***Weinstein's wife***,[6] served as the representative objector, *McCoy*, 569 F. Supp. 2d at 472, which should have disqualified Weinstein as counsel. *See Kramer v. Scientific Control Corp.*, 534 F.2d 1085, 1093 (3d Cir. 1976) (a motion for disqualification of an attorney acting as class counsel should be granted where even an appearance of improper conflict of interest exists because of the close relationship of the putative class representatives and the putative class attorney).

### 5. *In re Ford Explorer Cases*, No. JCCP 4266 & 4270 (Sacramento Super. Ct.)

Evidently unable to be retained by any other interested consumer, Weinstein's wife again served as a representative objector (along with Mr. Weinstein himself). [*See* D.E. 250-2, Audet Decl., Ex. 6]. Likewise, this should have disqualified Weinstein as counsel. *See Kramer, supra.*

## III. ARGUMENT

### A. This Court Should Issue an Order Requiring the Two Sets of Objectors to Each Post an Appeal Bond

Rule 7 provides, in pertinent part: "In a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of the

---

[6]     Citations are omitted and emphasis is added unless otherwise noted.

costs on appeal." Fed. R. App. P. 7. Pursuant to Rule 7, a district court may issue an appeal bond for litigation expenses, *i.e.*, pure "costs" involved in litigating the appeal; and, where there is an underlying asymmetrical fee-shifting statute *or where the appeal is taken in bad faith*, a district court may also exercise its discretion to impose a bond amount for attorney's fees on appeal. *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 959-60 (9th Cir. 2007); *Young v. New Process Steel, LP*, 419 F.3d 1201, 1202-03 (11th Cir. 2005), *cert. denied*, 547 U.S. 1003 (2006).

In determining whether to set a bond, this Court should take into account the likelihood that the appeal from the Objectors will be unsuccessful. *See, e.g., Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998) (affirming the district court's imposition of an appeal bond after "look[ing] to the merits of the appeal itself" and determining that appellant's case was found to be "objectively unreasonable"); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 124, 129 (S.D.N.Y. 1999) (class member who filed notice of appeal from settlement required to post an appeal bond because the court found the appellant's position "objectively unreasonable"); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, No. MDL 1361, 2003 WL 22417252, at *2 (D. Me. Oct. 7, 2003) (considering whether appeal "might be frivolous" in deciding whether to impose a bond). The Court has already given careful consideration to and rejected the arguments from the Objectors in its November 18, 2008 Opinion, which is reviewed under an abuse of discretion standard. It is thus very likely that each appeal will be denied. And, since the Court has already considered the arguments from the Objectors and has rejected all of their "criticisms," the Court should impose an appellate bond.

This case is similar to *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812 (6th Cir. 2004). There, the district court dismissed a class member's objections, concluded that the proposed settlement was fair, and issued its final approval of the settlement. The objector nonetheless filed a

notice of appeal. The Sixth Circuit affirmed the district court's imposition of an appeal bond based on its determination that the class member's "objections to the proposed settlement, which she repeats on appeal, were 'all without merit and border[ed] on frivolousness,'" suggesting that the court believed the appeal would likely be denied. *Id.* at 817-18.

### 1.    A $25,000 Bond Is Reasonable Under the Circumstances to Cover the Expenses Required to Litigate the Appeal

Under the pure litigation "costs" doctrine, courts routinely apply $25,000 as a minimum benchmark amount of costs for appeals to class action settlements. *See, e.g., In re Ins. Brokerage Antitrust Litig.*, MDL Docket No. 1663, Civ. No. 04-5184 (GEB), 2007 WL 1963063, at *3-*5 (D.N.J. July 02, 2007) (imposing a "reasonable" $25,000 appeal bond for objectors to class settlement based on line of precedent); *In re Compact Disc*, 2003 WL 22417252, at *2 ($35,000 appeal bond).

Courts also have discretion to increase the bond amount, since class action settlement appellate litigation expenses readily exceed $25,000. *See, e.g., In re Ins. Brokerage Antitrust Litig.*, 2007 WL 1963063, at *3 ("In addition to the printing and administrative costs associated with an appeal . . . it is possible that the Plaintiffs will face different issues from different appellants, which may increase the expenses."); *In re Diet Drugs*, MDL Docket No. 1203, 2001 WL 34133966, at *1 (E.D. Pa. Apr. 06, 2001) ("The Brown Class Representatives' Motion to Increase Appellate Bond (Doc. # 202389) is GRANTED. The Bond is increased from $25,000 to $68,000, for which all objectors with appeals pending shall be jointly and severally responsible. As $25,000.00 has already been posted, those objectors shall post an additional $43,000.").

Because Rule 7 does not require Plaintiffs to make any "showing of costs for a bond motion," *In re Ins. Brokerage Antitrust Litig.*, 2007 WL 1963063, at *3, and because courts routinely impose bonds of at least $25,000 in appeals to class action settlements, this Court should jointly and

conditionally impose on the Objectors an appeal bond of $25,000 to cover pure litigation expenses on appeal.[7] In accordance with that precedent, this Court should also grant Plaintiffs the ability to seek an additional bond amount in proportion to any increased complexities presented during the appeal.

> **2.      Because the Appeal by the Professional Objectors Is Facially Groundless, Their Appeal Bond Should Include an Additional Amount for Attorneys' Fees**

In addition to pure litigation expenses, courts also have discretion to impose appeal bonds *to prevent frivolous, unreasonable, or groundless litigation. See, e.g., Young*, 419 F.3d at 1202-03.

As demonstrated above, the Professional Objectors, on behalf of Johnson and Turner, have no good faith basis to appeal this Court's approval of the settlement. In their brief, the Professional Objectors will have to ignore binding precedent or concoct meritless legal arguments. This is precisely the case where appellate attorneys' fees are warranted. *See Sckolnick v. Harlow*, 820 F.2d 13, 15 (1st Cir. 1987) (affirming district court decision to set bond for costs and attorneys' fees where court implicitly found appeal might be frivolous and award of sanctions against plaintiff on appeal was a "real possibility."); *Cardizem*, 391 F.3d at 816-17; *Downey v. Mortgage Guar. Ins. Corp.*, 313 F.3d 1341,1342-44 (11th Cir. 2002); *Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1331-32 (11th Cir. 2002); *Adsani*, 139 F.3d at 74-75; *NASDAQ*, 187 F.R.D. at 128; *In re Compact Disc*, 2003 WL 22417252, at *1; *In re Broadcom Corp. Sec. Litig.*, No. SACV 01-275 DT (MLGx), slip op. at 8-11 (C.D. Cal. Dec. 5, 2005).[8]

---

[7]      *See* Declaration of Stuart A. Davidson In Support of Plaintiffs' Motion for an Appeal Bond From Objectors/Appellants Jim W. Johnson and Dustin Turner, and From Objectors/Appellants Margaret Picus and Daniel Kaffer ("Davidson Decl."), at ¶2, filed contemporaneously herewith.

[8]      A copy of the decision in *Broadcom* is attached as Exhibit 1 to the Davidson Declaration.

Accordingly, an additional bond of $180,000 should be required to be posted by Johnson and Turner to cover Plaintiffs' good faith estimate of their reasonable appellate attorneys' fees.[9]

### 3. The Third Circuit's Decision in *Hirschensohn* Does Not Bar This Court from Imposing an Appeal Bond for Plaintiffs' Attorneys' Fees

Plaintiffs anticipate that the Professional Objectors will argue that *Hirschensohn v. Lawyers Title Ins. Corp.*, No. 96-7312, 1997 WL 307777, at *1 (3d Cir. June 10, 1997), bars the imposition of an appeal bond to cover estimated appellate attorneys' fees. They would be wrong.

In *Hirschensohn*, the Third Circuit addressed "whether anticipated attorneys' fees, which are available under Virgin Islands law, may be considered as 'costs' on appeal and the subject of an appeal bond." 1997 WL 307777, at *1. The court looked in two places for an answer, first to Rule 39, *id.* at *1-*2, and second to "statutory authority," *id.* at *3. The court determined that, based on its reading of precedent deciding whether attorneys' fees can be awarded under a civil rights statute, 42 U.S.C. § 1988, because Congress did not explicitly include attorneys' fees as "costs" under Rule 39, attorneys' fees are not "costs" under Rule 39 and, *ergo*, not properly included in a bond under Rule 7. *Id.* at *1-*2. Likewise, the Court determined that the Virgin Island statutes authorizing attorney's fees did not apply on appeal. *Id.* at *3. Thus, the court in *Hirschensohn* ultimately stated "that Rule 7 does not authorize a bond to cover estimated costs of attorneys' fees." *Id.* at *3.

Nevertheless, *Hirschensohn* has been limited to its own unique facts and heavily criticized and contradicted by the Second, Sixth, Ninth and Eleventh Circuits, each of which has subsequently concluded that a bond to cover appellate attorneys' fees is available under Rule 7. The critique of *Hirschensohn* runs the gamut from it being an unreported decision with no precedential value, to it

---

[9] *See* Davidson Decl., at ¶3.

being a case decided under Virgin Islands law or a case that misapplied the civil rights litigation precedent upon which it purported to stand. *See, e.g., O'Keefe v. Mercedes-Benz USA, LLC*, No. Civ.A. 01-CV-2902, 2003 WL 22097451, at *1 n.2 (E.D. Pa. June 04, 2003) ("*Hirschensohn* is a non-precedential under Procedure 5.3 of the Third Circuit's Internal Operating Procedures . . . . In *Hirschensohn* the Third Circuit used two different tests to determine whether attorney's fees may be considered costs on appeal and subject to an appeal bond. These two tests, may provide conflicting answers, and the Third Circuit has not resolved the issue."); *Adsani v. Miller*, 139 F.3d 67, 74 (2d Cir. 1998) ("The [*Hirschensohn*] court, however, based its ruling on attorneys' fees that were assessed as part of Virgin Islands law, not federal law. In fact, the Third Circuit found that this Virgin Islands law 'did not authorize assessment of counsel fees on appeal to this Court.' Thus, *Hirschensohn* does not address the case where, as here, an independent federal statute explicitly authorizes attorneys' fees 'as part of the costs' both at trial and upon appeal which permits a district court to order a Rule 7 appeal bond including such costs."); *Azizian*, 499 F.3d at 956 ("The [*Hirschensohn*] court briefly noted *Marek v. Chesny*, 473 U.S. 1 (1985), but did not regard it as controlling."); *Pedraza*, 313 F.3d at 1330 n.12 ("Indeed, in our view, the *Hirschensohn* court did not adequately explain its application of the valid proposition expressed in McDonald in the context of Rule 7.").

More importantly, *Hirschensohn* did not address whether a bad faith appeal triggers the imposition of a bond to cover appellate attorneys' fees under Rule 7. As explained herein, circuit courts clearly authorize district courts to impose appellate attorneys' fees under Rule 7 where appeals are frivolous or taken in bad faith. *See, e.g., Sckolnick*, 820 F.2d at 15; *Adsani*, 139 F.3d at 73-74; *Azizian*, 499 F.3d at 955; *Young*, 419 F.3d at 1202-03. *Hirschensohn* did not change – and could not have changed – that long-standing precedent. *Accord Chambers v. NASCO, Inc.*, 501 U.S.

32, 50 (1991) ("There is, therefore, nothing in the other sanctioning mechanisms or prior cases interpreting them that warrants a conclusion that a federal court may not, as a matter of law, resort to its inherent power to impose attorneys' fees as a sanction for bad-faith conduct. This is plainly the case where the conduct at issue is not covered by one of the other sanctioning provisions. But neither is a federal court forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules. . . . But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power."). Thus, even if one were to somehow credit *Hirschensohn* as viable precedent, Johnson and Turner should still be required to post a Rule 7 bond under *Hirschensohn* to cover appellate attorneys' fees because their appeal is frivolous and being taken in bad faith.[10]

### 4. Post-Judgment Interest Should Also be Taken Into Account When Imposing an Appeal Bond

The imposition of a bond should also take into account post-judgment interest calculated pursuant to 28 U.S.C. §1961(a), which provides that:

> Interest shall be allowed on any money judgment in a civil case recovered in district
> court. . . . Such interest shall be calculated from the date of the entry of judgment, at

---

[10] In *In re Ins. Brokerage Antitrust Litig.*, Chief Judge Brown was reluctant to read *Hirschensohn* as a narrow case. 2007 WL 1963063, at *5 ("Despite some conflicting views regarding the Third Circuit's decision in *Hirschensohn*, this Court will follow the rationale set forth in that case. The cases in this Circuit have not included attorneys' fees as 'costs' under Rule 39, and, as such, this Court will not impose attorneys' fees as part of the appeal bond in this case."). However, Judge Brown wrote the opinion two months before the Ninth Circuit in *Azizian* pushed *Hirschensohn* into even deeper obscurity, as the *Azizian* case marked the fourth consecutive Circuit Court to reject *Hirschensohn* since it was decided in 1997. Decided today and in light of the Ninth Circuit's opinion, Judge Brown's allegiance to *Hirschensohn* would likely be too tenuous to objectively maintain. This is separate and apart from the fact that, faced with the vexatious litigation of the Professional Objectors, Johnson and Turner, Judge Brown would also likely have imposed a bond to cover appellate attorneys' fees since *Hirschensohn* does not prevent as much.

a rate equal to the weekly average 1-year constant maturity Treasury yield, as
published by the Board of Governors of the Federal Reserve System, for the calendar
week preceding the date of the judgment.

*See Livingston v. Toyota Motor Sales USA, Inc.*, Nos. C-94-1377-MHP, C-94-1359 MHP & C-94-

1960 MHP, 1997 U.S. Dist. LEXIS 24087, at *10 n.6 (N.D. Cal. Nov. 10, 1997).

Such interest is mandatory on any money judgment and is required to be computed at the

specified rate. *Ford v. Alfaro*, 785 F.2d 835, 842 (9th Cir. 1986). For purposes of the statute, a

money judgment encompasses a judgment awarding attorneys' fees. *Eaves v. County of Cape May*,

239 F.3d 527, 530 (3d Cir. 2001); *Spain v. Mountanos*, 690 F.2d 742, 748 (9th Cir. 1982). Plaintiffs,

once they prevail, would be entitled to recover this statutory rate, offset by any interest earned, from

the Objectors. *See* Fed. R. App. P. 37(a). That amount should be taken into account in the bond

imposed under Fed. R. App. P. 7.

### B. Plaintiffs Expressly Reserve Their Right to Seek the Issuance of an Order to Show Cause Under 28 U.S.C. §1927 Against the Professional Objectors

Section 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United
States or any Territory thereof who so multiplies the proceedings in any case
unreasonably and vexatiously may be required by the court to satisfy personally the
excess costs, expenses, and attorneys' fees reasonably incurred because of such
conduct.

28 U.S.C. §1927 ("§1927").

A district court's decision to impose sanctions under §1927 is reviewed for abuse of

discretion. *In re Prudential Ins. Co. Am. Sales Practice Litig. Actions*, 278 F.3d 175 (3d Cir. 2002),

*aff'd* 232 Fed. Appx. 161 (3d Cir. 2007). In addition to the legion of cases cited above, the Third

Circuit's decision in *Prudential* is directly on point and demonstrates why, even though Plaintiffs are

not currently seeking §1927 sanctions against the Professional Objectors and expressly reserve their

right to do so, it would be appropriate for this Court to issue an Order to Show Cause why the Professional Objectors should not be sanctioned.

In *Prudential*, the Third Circuit upheld the district court's imposition of sanctions on an attorney who objected, like the Professional Objectors here, to a class settlement. The attorney filed a frivolous motion that was devoid of factual basis and consisted purely of "spin," and filed repetitive affidavits that "merely restated already rejected arguments." *Id.* at 181-86. The attorney's motion and other conduct was exactly like the Professional Objector's canned objection to the class settlement that set-forth fabricated legal theories or arguments that have been rejected by controlling authority without even distinguishing, let alone acknowledging, contrary precedent. Therefore, just as the sanctions were appropriate in *Prudential*, they may be appropriate here. *See also Creely v. Crestview Ctr.*, 241 Fed. Appx. 58, 61 (3d Cir. 2007) (Sanctions ordered; "[W]e are nonetheless unpersuaded that the District Court abused its discretion in awarding sanctions for the costs and fees that Crestview incurred in filing its motion to dismiss and in replying to Creely's 'frivolous' response to that motion. The District Court explained that in opposing Crestview's motion to dismiss *Creely II*, Creely's 'counsel offered no case law in support of his argument for dismissal on the grounds of summary judgment' in lieu of *res judicata*.").[11]

---

[11]    *See also In re Genesis Health Ventures*, 362 B.R. 657, 662 (D. Del. 2007) (Sanctions ordered; "Suffice it to say that Mr. Hayes has turned the system inside and out to try to obtain this particular relief. Whether or not he has raised the constitutional dimensions, to the extent that there are any, of the issue he has had his chance, more than once and over the course of years, to assert this position and it is time to stop. There is no opportunity in this system to keep coming back to the same issue. ***The same party, the same issue, the same response.***"); *Shavers v. Shavers*, Civil Action Nos. 1:00-cv-522(DCB)(JMR), 1:01-cv-1(DCB)(JMR), 1:01-cv-160(WJG)(JMR), 2007 WL 312705, at *9 (S.D. Miss. Jan. 30, 2007) (Sanctions ordered; "[T]he Court finds that attorney B.G. Perry acted in bad faith for purposes of §1927 when he advanced claims he knew or should have known to be meritless"); *Macheska v. Thomson Learning*, 347 F. Supp. 2d 169, 180 (M.D. Pa. 2004) (Sanctions ordered; "The Third Circuit Court of Appeals has held that bad faith has an expansive definition and that it is a finding of fact to be made by the District Court. Bad faith is evident when

## IV.   CONCLUSION

The appeals from the Objectors are each without merit and, moreover, are delaying execution of an historic class action settlement.  Clearly, Rule 7 requires both sets of Objectors to post appeal bonds in the amount of $12,500.00 each to cover the minimum amount of pure appellate litigation expenses Plaintiffs currently anticipate.

In addition, Margulies and Weinstein are repeat, "professional" objectors who have a demonstrated history of attempting to impede class action settlements for a vexatious reason – to extract a fee.  The Professional Objectors are attempting to unreasonably delay the final execution of this monumental settlement for no good reason but their own gain by filing an appeal that merely reasserts their canned, unsubstantiated and patently erroneous arguments that were already rejected. For that reason, and given the Professional Objectors' bad faith, this Court should impose an additional bond amount of $180,000 against Johnson and Turner to cover Plaintiffs' good faith and highly conservative estimate of their reasonable appellate attorneys' fees, with pre-judgment interest thereon.  That amount is reasonable given the unnecessary additional legal work the meritless appeal will require.

Pursuant to Civil Rule 78.1, Plaintiffs respectfully request oral argument on their Motion.

A proposed Order is attached hereto.

---

'claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment.'"); *Veneziano v. Long Island Pipe Fabrication & Supply Corp.*, 238 F. Supp. 2d 683, 692 (D.N.J. 2002), *aff'd*, 79 Fed. Appx. 506 (3d Cir. 2003) (Sanctions ordered; "Veneziano's LAD claim against Aetna was expressly barred by the controlling law and unsupported by any facts. Still, Andreacchio pursued the claim, which unnecessarily and vexatiously multiplied the proceedings before this Court.").

DATED:  December 29, 2008       Respectfully submitted,

**TRUJILLO RODRIGUEZ & RICHARDS, LLC**


By: _____ s/ Lisa J. Rodriguez _____
     Lisa J. Rodriguez
     258 Kings Highway, East
     Haddonfield, New Jersey  08033
     Telephone: (856) 795-9002
     Facsimile: (856) 795-9887

     *Liaison Counsel for Plaintiffs*

     Kenneth A. Wexler
     Mark J. Tamblyn
     **WEXLER WALLACE LLP**
     55 West Monroe Street, Suite 3300
     Chicago, Illinois  60603
     Telephone: (312) 346-2222
     Facsimile:  (312) 346-0022

     Sherrie R. Savett
     Russell D. Paul
     **BERGER & MONTAGUE, P.C.**
     1622 Locust Street
     Philadelphia, Pennsylvania  19103
     Telephone: (215) 875-3000
     Facsimile: (215) 875-4636

     William M. Audet
     **AUDET & PARTNERS LLP**
     221 Main Street, Suite 1460
     San Francisco, California
     Telephone: (415) 568-2555
     Facsimile: (415) 568-2556

     Scott A. Kamber
     Jay Edelson
     **KAMBEREDELSON, LLC**
     11 Broadway, 22nd Floor
     New York, New York 10004
     Telephone: (212) 920-3072
     Facsimile: (212) 202-6364

Stuart A. Davidson
**COUGHLIN STOIA GELLER**
   **RUDMAN & ROBBINS LLP**
120 E. Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
Telephone: (561) 750-3000
Facsimile: (561) 750-3364

Steve W. Berman
Jeniphr Breckenridge
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Fifth Avenue, Suite 2900
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

*Co-Lead Counsel for Plaintiffs and the Settlement Class*