# THE UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

IN RE: Pet Food Products  ) Civil Action No. 07-2867 (NLH)
Liability Litigations ) MDL DOCKET NO. 1850
) 
) The Honorable Noel L. Hillman
)
) RULE 60 MOTION TO VACATE
) PRODUCT RETENTION ORDERS
) # 106 AND # 140
) BY DONALD R. EARL
)
) NOTE ON MOTION CALENDAR
) February 2, 2009

## 1. INTRODUCTION

COMES NOW, Donald R. Earl, a party in interest in evidence described as "unorganized inventory" subject to this Court's order of December 18, 2007, docket number 106, and subsequent related order of April 14, 2008, docket number 140.

The Movant is a non party, substantially prejudiced by this permitting destruction of evidence material to his lawsuit filed in Jefferson County, in the state of Washington, Superior Court number 07-2-00250-1.

The subject matter of Earl's action is unrecalled pet food, which forensic

laboratory tests found to be contaminated with the toxins cyanuric acid and acetaminophen. This unrecalled pet food was contained in the body of evidence known to this Court as "unorganized inventory".

The Defendants in the above named Washington State case are The Kroger Company and Menu Foods Income Fund, Inc.. Both of these parties are also named defendants in the action before this Court.

As a result of this Court's orders, Earl was denied discovery critical to his lawsuit, evidence material to his action was destroyed in its entirety, and Earl was ordered to pay sanctions in the amount of $4,491.09 for opposing the evidence destruction order. The basis of these rulings in the Washington State Superior Court is that this Court's orders were subject to the principal of comity. Litigation on these matters is currently pending in the Washington State Supreme Court. As the issue originated in this Court, it is appropriate to seek redress directly and ask this Court to vacate the orders allowing evidence to be destroyed.

## 2. FACTUAL BACKGROUND

Earl's previously healthy, 6 year old cat died from a sudden onset of acute kidney failure on January 6, 2007, after consuming pet food manufactured by Menu Foods.

Menu Foods announced a recall of its "cuts and gravy" style pet food in March of 2007. Earl, for the 6 years prior to his cat's death, fed his cat "cake style" pet food, which does not contain gluten as an ingredient, and which was not subject to the Menu Foods recall. Laboratory tests on the only two lots of this food Earl had in his possession, which were manufactured in September and April of 2006, showed the pet food was contaminated with cyanuric acid and acetaminophen. Both of these substances are known

to be potent kidney toxins. In short, the subject matter of Earl's action in Washington State involves the unrecalled pet food contained in the body of evidence known to this Court as "unorganized inventory".

One week after the Menu Foods recall was announced, The Kroger Company initiated its own recall, which included all its private labeled Menu Foods wet pet food.

According to Menu Foods' fourth quarter 2007 financial filings:

"Sales of the "cuts and gravy" style of pet food in cans and pouches (the style primarily impacted by the recalls) accounted for approximately 48% of Menu's volume in 2006"

Based on the above financial disclosure, the body of evidence known as "unorganized inventory", is presumed to have consisted of at least 52% unrecalled pet food relevant to Earl's lawsuit.

The summons and complaint in Earl's action was served on Menu Foods on July 31, 2007 as shown in Exhibit A. At the time Menu Foods and other manufacturing defendants presented the unopposed motion to this Court, asking for permission to destroy evidence material to Earl's action, Menu Foods was well aware this litigation was pending and that the subject matter of the action was unrecalled pet food contained in the body of evidence known as "unorganized inventory". Menu Foods knowingly misled this Court in statements it made in the motion (#103) that there was no party interested in conducting discovery on this "unorganized inventory".

That Menu Foods was fully aware of pending or potential litigation, both civil and criminal, is further documented in its first quarter 2007 financial filing, which was released on May 30, 2007. The document is available for download from the official Menu Foods

Income Fund's official website and reads in pertinent part as follows:

> "Lawsuits have been initiated against the Fund and certain of its subsidiaries in the United States and in Canada, which seek to recover damages on behalf of the named plaintiffs and a purported class of pet owners. Furthermore, the Fund is the target of a misdemeanor investigation by the U.S. Food and Drug Administration into whether the Food, Drug & Cosmetic Act has been violated. It is possible that additional actions or investigations may arise in the future."

Amy W. Schulman, counsel for Menu Foods in this Court, whom this Court has previously cautioned against professional misconduct, appeared pro hac vice on the motion to destroy evidence in Earl's case. The law firm DLA Piper represents Menu Foods in both cases.

Earl previously filed an objection in this Court related to destruction of the "unorganized inventory" (#115), which this Court denied without comment in document #121.

In an affidavit filed by Menu Foods in the state case, Menu Foods describes how it leveraged the evidence destruction order obtained in this Court as a basis for destroying evidence in a multitude of cases all across the U.S. and Canada, and subsequently did in fact destroy all unrecalled pet food evidence material to cases such as Earl's. (Exhibit B)

Earl has suffered extreme prejudice as a result of this Court's order permitting evidence critical to his case to be destroyed.

### 3. SUMMARY OF ARGUMENT

No court has subject matter jurisdiction to consider a motion to destroy evidence or the authority to enter an order permitting the destruction of evidence. An order permitting destruction of evidence is contrary to rule and law, is void, and must be vacated.

## 4. LEGAL AUTHORITY AND ARGUMENT

**a) Subject matter jurisdiction over a motion to destroy evidence is barred by the provisions of RPC 3.4(a).**

Washington law and civil rules are largely based on the Federal model. The following three Washington state cases well illustrate published opinion as it pertains to subject matter jurisdiction.

In Dike v. Dike, 75 Wn.2d 1, 7, 448 P.2d 490 (Wash. 1968), the court ruled:

> "A judgment is void if entered without personal jurisdiction, *subject matter jurisdiction, or if entered by a court which lacks the inherent power to enter the particular order involved.*" (emphasis added)

In Bour v. Johnson, 647 80 Wn. App. 643, 910 P.2d 548 (Wash. 1996), the court ruled on CR 60 motions as follows:

> "a judgment may be vacated if there was no subject matter jurisdiction, even though a mandate has been issued"

In J.A. v. State, 657 120 Wn. App. 654 (Wash. 2004), citing various cases, the court ruled:

> "the pivotal concept in subject matter jurisdiction is whether a court has the power to hear that type of controversy." (internal quotations omitted)

RPC 3.4(a) eliminates the possibility subject matter jurisdiction exists over a motion to destroy evidence. The rule reads as follows:

> "A lawyer shall not: unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. *A lawyer shall not counsel or assist another person to do any such act*" (emphasis added)

The Rules of Professional Conduct are identical under both Washington State and Federal court rules. RPC 3.4(a) shows a court lacks subject matter jurisdiction to consider

RULE 60 MOTION PAGE 5 OF 10

a motion filed in violation of the rule.

The motion to destroy evidence, filed by counsel for Menu Foods and other manufacturing defendants, and which is characterized as a "product retention" motion, is theoretically impossible except in violation of RPC 3.4(a). On its face, the motion shows attorneys for the manufacturing defendants counseled and assisted in the destruction of evidence. A court does not have authority to consider the merits of a motion which is filed in violation of the rule. The granting of such a motion amounts to a reward for professional misconduct.

There is a dearth of published opinion related to motions to destroy evidence, presumably because the overwhelming majority of practicing attorneys would prefer not to put their licenses at risk by filing such a motion in violation of the rule. The following Washington state case does, however, provide some guidance on the purpose of the rule.

In Sherman v. State, 128 Wn.2d 164, 905 P.2d 355, (Wash. 1995) citing "Hodes, The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct" 626-27 (Supp. 1992), the court quotes:

> "On its face, the rule [RPC 3.4(a)] merely requires the preservation of records-- presumably for disclosure *should such a duty arise from another source.*" (emphasis added)

The reasoning in the Hodes Handbook goes to the heart of this matter. A body of evidence not particularly relevant to a case before one court, was absolutely critical to actions pending in other jurisdictions. No court is in a position to be fully informed on the potential devastating impact an order permitting destruction of evidence may have on other civil cases, or pending or potential criminal investigations.

As subject matter jurisdiction over a motion to destroy evidence does not exist, the

order is void and must be vacated under the provisions of Rule 60.

**b) Rule 26 provides no authority for permitting destruction of evidence.**

The language throughout FRCP 26 refers exclusively to issues related to the "*production*" of discovery. No part of the rule gives a court authority to consider destruction of evidence not produced.

The circumstances in this case are perhaps unusual. The organized, recalled pet food consisted of a very large and duplicative body of evidence. The same is true of the wheat gluten evidence. No reasonable person could expect the entire mass of these two huge bodies of evidence to be produced on discovery in its entirety. It is certainly within a court's discretion to limit production under such circumstances. Never the less, a court cannot, and should not, relieve a litigant of the liability that would otherwise ensue if the production required for one case is not sufficient to meet the needs of other cases.

A legitimate motion under the rule would have asked this Court to limit "production" to that part of those two bodies of evidence which the manufacturing defendants subsequently retained, with no reference to destroying the remainder. Having made that part of the evidence available for discovery, and without aid or counsel from legal professionals, the manufacturing defendants, on their own initiative, could then decided whether or not it would be prudent to retain that part of the evidence not subject to production. Considering the scope of the evidence retained as far as the recalled pet food and wheat gluten is concerned, it's hard to imagine a circumstance where the remainder could not be disposed of, without a risk of future spoliation related liability.

As far as the "unorganized inventory" is concerned, it was undeniably within this

Court's discretion to say, "This evidence need not be produced on discovery in <u>this</u> case.". However, the Court exceeded the authority of the rule in granting permission to destroy the evidence. This evidence was unique and irreplaceable. This Court did not have authority to enter discovery orders affecting state cases where it does not have original jurisdiction, nor does it have the authority to relieve defendants of liabilities they would otherwise face as a result of destroying material evidence. As the order permitting destruction of evidence exceeds the Court's authority under Rule 26, the order is void and should be vacated.

**c) An order permitting destruction of evidence is contrary to law.**

18 U.S.C. §1503(a) and (b) provide in pertinent part:

"Whoever corruptly… influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in subsection (b)…"

"The punishment for an offense under this section is… imprisonment for not more than 10 years, a fine under this title, or both."

In *U.S. v. Lundwall*, 1 F.Supp.2d 249 (S.D.N.Y. 1998), the U.S. District Court for the Southern District of New York refused to dismiss an indictment under the provisions of 18 U.S.C. §1503(a) against officials of Texaco, Inc. for destruction of evidence in a civil case.

The actions of counsel for defendant manufacturers constitutes fraud on the court. 18 U.S.C. §1512(c) provides in pertinent part:

"Whoever *corruptly*— (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or (2) otherwise obstructs, influences, or impedes any *official proceeding*, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both." (emphasis added)

As used above, in pertinent part, 18 U.S.C. §1515 defines the relevant terms in the statute:

> "the term "*corruptly*" means acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information."

> "the term "*official proceeding*" mean… a proceeding before a judge or court of the United States"(emphasis added)

Compared to other Federal criminal statutes and penalties, this Court's order permitting destruction of evidence is on par with granting a motion to rob a bank in violation of 18 U.S.C. §2113. Both impose penalties of up to 20 years.

At page 14 of the motion to destroy evidence (#103), the manufacturing defendants, including the Menu Foods defendant, state:

> "This Unorganized Inventory is of no discernable use to any party interested in future testing of the product."

This statement was knowingly false and misleading, was made with the intent to corruptly influence this Court, and was made by counsel for Menu Foods with the intent to obstruct justice in numerous cases pending across the U.S. and Canada. Furthermore, public disclosures by Menu Foods show it was aware criminal investigations were underway by Federal authorities at the time the motion was presented to this Court. Rule 60 gives a court unlimited authority "to set aside a judgment for fraud upon the Court".

As criminal statutes unconditionally prohibit the destruction of evidence, and as no authority exists which would give a court discretion to grant a person or entity permission to engage in criminal conduct, and as the order was obtained as a result of fraud upon the court, the order is void as a matter of law and should be vacated.

## 5. CONCLUSION

For the foregoing reasons, this motion to vacate those portions of "product retention" orders #106 and #140, which permit destruction of evidence, should be granted. Furthermore, this Court should impose appropriate terms, sufficient to redress harm done to aggrieved non parties prejudiced by these orders.

Dated: January 6, 2009.
Respectfully submitted by:

*[signature: Donald R. Earl]*

Donald R. Earl (pro se)
3090 Discovery Road
Port Townsend, WA 98368
(360) 379-6604

# EXHIBIT A

Declaration of Service of Summons and Complaint



Court File No.: 07 2 00250 1

# THE SUPERIOR COURT OF THE STATE OF WASHINGTON
# IN AND FOR THE COUNTY OF JEFFERSON

**BETWEEN:**

DONALD R. EARL

PLAINTIFF

**AND**

MENU FOODS INCOME FUND, ET AL
THE KROGER CO.

DEFENDANTS

## AFFIDAVIT OF SERVICE

I, Richard Hoeg, of the City of Toronto, in the Province of Ontario, Process Server, make oath and say:

(1) On July 31, 2007, at 4:30 PM, I served MENU FOODS INCOME FUND with the SUMMONS AND COMPLAINT by leaving a copy with MARK WIENS, Chief Financial Officer and person appearing in care and control and/or management of MENU FOODS INCOME FUND at 8 Falconer Drive, Streetsville, Ontario, L5N 1B1.

(2) I was able to identify the person by means of:
(a) At the time and place of service, MARK WIENS identified himself to me.

(3) MARK WIENS is a white-skinned, brown-haired male who is approximately 50 years of age, stands approximately 6 feet 1 inches tall and weighs approximately 165 lbs.

(4) MARK WIENS informed me and I verily believe that he is not active in the United States Military.

SWORN BEFORE ME at the )
City of Toronto, in the Province of )
Ontario, this 13th day of August, )
2007. )
)
_____
A commissioner etc.

Steven Jack Kovacs, a Commissioner, etc.,
Province of Ontario, for Borg Process
Servers Inc., and for Process Serving and
Tenant Protection Act, 1997 matters only.
Expires June 23, 2009.

_____
(Richard Hoeg)

FILED

AUG 22 2007

JEFFERSON COUNTY
CLERK

# EXHIBIT B

Declaration of Christopher Mifflin

SUPERIOR COURT OF WASHINGTON

FOR JEFFERSON COUNTY

| | |
|---|---|
| DONALD R. EARL,<br><br>Plaintiff,<br><br>v.<br><br>MENU FOODS INCOME FUND and THE KROGER CO.,<br><br>Defendants. | The Honorable Craddock Verser<br><br>No. 07-2-00250-1<br><br>**DECLARATION OF CHRISTOPHER J. MIFFLIN IN SUPPORT OF MENU FOODS' RESPONSE TO PLAINTIFF'S (1) CR 60(b) MOTION TO VACATE PRODUCT RETENTION ORDER ENTERED ON 2/15/08, AND (2) CR 26(b) MOTION TO PRODUCE DISCOVERY**<br><br>Hearing Date: Friday, August 22, 2008<br><br>Hearing Time: 1:00 p.m. |

Christopher J. Mifflin hereby declares under penalty of perjury as follows:

1. I am over 18 years of age, I have personal knowledge of the facts set forth in this Declaration, and I am competent to testify to those facts.

2. I am the Executive Vice-President of Operations of Menu Foods GenPar Limited ("Menu Foods"), which is the administrator of the Defendant Menu Foods Income Fund. In my position as Executive Vice-President of Operations for Menu Foods, my duties included managing and overseeing the storage of recalled pet food, raw wheat gluten and other product and materials stored by Menu Foods relating to a March 2007 voluntary recall of

DECLARATION OF CHRISTOPHER J. MIFFLIN

certain pet food products by Menu Foods and other pet food manufacturers and retailers.

3. As of December 2007, Menu Foods possessed approximately 647,917 cases of unorganized product and material that was returned to Menu Foods from retailers in connection with the March 2007 recall in an unorganized, haphazard manner and was not well packaged in most instances (the "Unorganized Inventory"). The Unorganized Inventory comprised various items, including recalled pet food, non-recalled pet food, pet food that was not manufactured by Menu Foods, non-pet food items, and trash. The Unorganized Inventory was stored at certain warehouses located in Kansas, New Jersey and Canada. Menu Foods' cost for storing the Unorganized Inventory and other products and materials relating to the March 2007 voluntary recall was approximately $1,032,000 per year.

4. On December 18, 2007, the United States District Court for the District of New Jersey issued an Order in the multidistrict litigation captioned *In re Pet Food Products Liability Litigation*, No. 07-2867, MDL Docket No. 1850 (D.N.J.), which, among other things, permitted Menu Foods to dispose of all of the Unorganized Inventory in its possession (the "MDL Order").

5. After the entry of the MDL Order, Menu Foods immediately sought the entry of substantively identical orders, either by consent or by contested motion, in all stand-alone cases that were pending at the time of the MDL Order and in which Menu Foods was named as a defendant. Menu Foods also sought the entry of a substantively identical order in the Canadian courts.

6. In the majority of the stand-alone cases, Menu Foods obtained the consent of the plaintiffs to the entry of orders that are substantively identical to the MDL Order. The Canadian courts entered an order that is substantively identical to the MDL Order on January 23, 2008. Orders that are substantively identical to the MDL Order had been entered in all of the stand-alone cases as of May 9, 2008.

7. This Court issued an order that is substantively identical to the MDL Order in

this lawsuit on February 15, 2008. As of February 15, 2008, Menu Foods was actively seeking the entry of orders substantively identical to the MDL Order in all of the stand-alone cases. Given the costs of storing the Unorganized Inventory and other materials, it was imperative to Menu Foods to receive all such consents and orders as quickly as possible. I understand that the plaintiff in this lawsuit sought appellate review of this Court's February 15, 2008 Order.

8. Menu Foods completed its disposal of the Unorganized Inventory in its possession on July 30, 2008. Menu Foods no longer possesses any Unorganized Inventory.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Camden, this 15th day of August, 2008.

Christopher J. Mifflin

Sworn to and subscribed before me this 19 day of August, 20 08.

DEBRA M. SNYDER
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 4/25/13

DECLARATION OF CHRISTOPHER J. MIFFLIN

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 • Tel: 206.839.4800