**LAW OFFICES OF DANIEL I. WARD**
Daniel I. Ward, Esq. (NJ Bar No. 033581986)
118 White Horse Road W.
Voorhees, NJ 08043
Tel: (856) 566-6614
Fax: (856) 566-7373

**BLUMENTHAL & NORDREHAUG**
Kyle R. Nordrehaug (Cal.Bar #205975) *pro hac vice*
2255 Calle Clara
La Jolla, California 92037
Tel: (858)551-1223
Fax: (858) 551-1232

Attorneys for Settlement Class Members and Appellants,
MARGARET PICUS and DANIEL KAFFER

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE PET FOOD PRODUCTS LIABILITY LITIGATION | Civil Action No. 07-2867 (NLH) (All Cases)<br>MDL Docket No. 1850<br><br>MEMORANDUM IN OPPOSITION TO MOTION FOR APPEAL BOND BY MARGARET PICUS AND DANIEL KAFFER<br><br>Date:         February 2, 2009<br>                  [*No live hearing*]<br><br>Judge:        Hon. Noel L. Hillman<br>Courtroom: 3A |

MEMORANDUM IN OPPOSITION TO MOTION FOR APPEAL BOND BY MARGARET PICUS AND
DANIEL KAFFER
Civil Action No. 07-2867 (NLH) (All Cases) / MDL Docket No. 1850

Dockets.Justia.com

Settlement Class Members Margaret Picus and Daniel Kaffer hereby oppose the motion by Plaintiffs' for an appeal bond as follows:

I. **INTRODUCTION**

Settlement Class Members Margaret Picus and Daniel Kaffer ("Picus and Kaffer") appeared before this Court to oppose the settlement on various grounds. While the Court disagreed and overruled the objections, Picus and Kaffer appealed not only to address these objections, but more importantly to appeal the fraud perpetrated on this Court by the Settling Parties.

As demonstrated herein, the Settling Parties have improperly included undisputedly non-contaminated products in the release.[1] These non-contaminated products are the Natural Balance dog food products sold prior to March 28, 2007, which could not have been contaminated because Natural Balance did not even use the contaminated ingredient (rice protein) until March 28, 2007.[2] Because this Court already ruled that non-contaminated products should not be included in the release, the appeal by Picus and Kaffer is meritorious. Further, Picus and Kaffer also objected that (i) the $250,000 allocation is manifestly unreasonable compensation for the product purchase claims [Doc. No. 258 at p.4], and (ii) the representation was inadequate because there is no representation

---

[1] As the Final Order reveals [Doc. No. 272 at page 16], the Natural Balance dry dog food products listed are not confined to a date or contaminated production range, but instead list "All" as the product purchases being released. Natural Balance has verified under oath that these Natural Balance dog food products were sold from October 2005 through April 2007. (See Exhibits #3 submitted herewith). Thus, the sales of the Natural Balance dog food products from October 2005 through March 27, 2007 were all outside of the alleged contamination period, but are being improperly included in the settlement and release.

[2] See Deposition of Herrick, at 20:17-19 and 23:15-22. A true and correct copy of relevant excerpts of the Deposition of Herrick are submitted herewith as Exhibit #2. Mr. Herrick is the President of Natural Balance who was testifying on behalf of the company under F.R.C.P., rule 30(b)(6). See Deposition of Herrick at p.5.

by any Plaintiff with only product purchase claims [Doc. No. 258 at p. 5]. While the Court overruled these objections, these objections are by no means frivolous. As a result, the motion for an appeal bond for costs against Picus and Kaffer must be denied.

Moreover, even if this Court were to consider an appeal bond, the requested amount of $25,000, divided into $12,500 for each appeal, is unreasonable in amount. This is because the bond amount may only cover costs that are recoverable, which as admitted in the Declaration of Davidson, means the costs of copying briefs. See F.R.A.P, rules 7 and 39. In this case, the Third Circuit Court of Appeals requires briefs to be filed electronically, which means there is no copying cost for briefs, as the electronic filing covers both filing and service. Even if the copying cost is considered, (i) the Plaintiffs' rate of $0.25 per page exceeds the maximum rate set by Third Circuit Local Rule 39.3, which is $0.10 per page, and (ii) the total copying cost would only be $185.[3] Even in the decision attached to the Declaration of Davidson, the Court reduced the cost bond to $800. Therefore, this Court respectfully may not award a cost bond in the $25,000 amount requested by Plaintiffs, and if a cost bond is to be ordered, the amount should not exceed $185.

Plaintiffs argument that the Court should award an appeal cost bond because the appeals will delay the settlement is contrary to the decision in Vaughn v. Am. Honda Motor Co., 507 F.3d 295 (5th Cir. 2007), where the Court reversed a cost bond issued for such a purpose. As a result, the motion for a cost bond should be denied entirely because the issues raised by Picus and Kaffer, especially concerning the inclusion of undisputedly non-contaminated products in the release, are meritorious and because there are no recoverable costs for the filing of the electronic brief now required by the Third Circuit.

---

[3] This is because there are no more than 27 separately represented parties in the Plaintiffs' appellate service list, plus the 10 copies allowed for the Court, and assuming 50 pages per brief at $0.10 per page, results in a total cost of $185. Plaintiffs' appellate service list is attached hereto as Exhibit #5.

II. **THE APPEAL IS MERITORIOUS BECAUSE THE SETTLING PARTIES IMPROPERLY INCLUDED NON-CONTAMINATED NATURAL BALANCE PRODUCTS IN THE RELEASE**

The Plaintiffs fail to address the primary appellate issue to be argued by Picus and Kaffer, which is that the settlement improperly includes "All" Natural Balance products, without limitation as to time, even though Natural Balance admits that products sold before March 28, 2007 were never alleged to have been contaminated. At the hearing, this Court agreed with Picus and Kaffer that non-contaminated products should not be included in the settlement and release, and the Court took great lengths at the hearing to confirm that claims for products sold prior to contamination would not be affected. As a result, Picus and Kaffer have a meritorious basis for this appeal. Picus and Kaffer have raised certain other objections to the settlement, as set forth in their objections [Doc. No. 258], however, these objections are addressed in the Memorandum by Appellants Johnson and Turner [Doc. No.285-3], and therefore will not be repeated here.[4]

The Settling Parties violated the Court's instructions at the hearing that the release be limited to only those products alleged to be contaminated, and as a result, the appeal is appropriate. The release purports to apply to "All" Natural Balance Venison and Brown Rice dry dog food products, even those that were never alleged to be contaminated and were sold in 2005 and 2006. As Natural Balance testified, the contaminating ingredient (rice protein) was not even used in these products until March 28, 2007. (Deposition of Herrick at 20:17-19 and 23:15-22, Exhibit #2). Mr. Herrick clearly admitted that the allegedly contaminated rice protein component was only in the dry dog food product for less than a month:

> Q: So it is your position that the rice protein that was in the dry product – Diamond product, was only in the product that was manufactured for less than a month?
> A: Yes. It was manufactured, first batch, March 28th.

---

[4] For the sake of efficiency and economy, Picus and Kaffer will not repeat arguments, and instead incorporate the arguments regarding (i) reasonableness of the settlement amount, and (ii) the inadequacy of representation, as if set forth fully herein.

  Q: An discontinued on or about April 17th?
  A: Yeah.

(Deposition of Herrick at 23:15-22, Exhibit #2).

Therefore, the only sales of contaminated Natural Balance products occurred between March 28, 2007 and April 17, 2007, and yet the settlement purports to release "All" Natural Balance products sold, irrespective of date or alleged contamination. [See Doc. No. 272-2 at p.16].

  Because the Court stated that the release should be limited to only contaminated product sales and the Settling Parties agreed, the Settling Parties have defied the Court's instructions and procured the approval of this Court by fraud. As a result, Picus and Kaffer have a valid objection to the release of non-contaminated product purchases and will prevail on appeal.

  Indeed, this overbroad release is the exact concern raised by Picus and Kaffer at the hearing, in response to which this Court examined the Settling Parties at length to confirm that non-contaminated products would not be included when grating settlement approval. At the hearing, the Settling Parties expressly verified that the release would not apply to the Picus and Kaffer claims for Made in the USA violations relating to purchases of non-contaminated product, and on that basis, the Court approved the settlement. (Transcript at pp. 29-32, a copy of this transcript is submitted herewith as Exhibit #1). Nevertheless, these Settling Parties plainly included non-contaminated Natural Balance products in the Order Approving Class Action Settlement [Doc. No. 272 and 272-2]. As page 16 of Doc. No. 272-2 reveals, the Natural Balance dry dog food products listed are not confined to a date or contaminated production range, but instead list "All" as the product purchases being released. This deception of the Court was done in an overt attempt to foreclose the litigation pending elsewhere for Made in the USA violations by Defendant Natural Balance.

  As counsel for Picus and Kaffer stated at the hearing, a release that is limited to only contaminated products within the scope MDL may be appropriate, but the concern is that Natural

Balance is including non-contaminated products in the list to foreclose the Made in the USA litigation pending for non-contaminated products:

> COURT: My thought is perhaps that the final settlement order should include the list of contaminated productions, the recalled products as defined, so that it's clear if you are buying something else and you have some other claim and you are outside the window, that you're not barred by this release.
> MR. NORDREHAUG: **Assuming the defendants do not put in, you know, a period of time for which there's no contamination**...
>
> MR. WEXLER: As plaintiff lawyers, we would not let the defendants try to do that...
>
> THE COURT: I appreciate that. It is clear that that, those batch codes encompass the dates you previously described?

(October 14, 2008 Transcript, at 79:19-80:3, Exhibit #1).

The date ranges for the products being released were stated as "the bad stuff between November 8th of '06 and March 6th of '07." (Transcript at 24:7-8, Exhibit #1).

In approving the settlement and release, this Court expressly confirmed that purchases in periods **before** the alleged contamination were not being released. (Transcript at pages 29-32, Exhibit #1). The Settling Parties, however, in order to foreclose the pending litigation for Made in the USA violations against Natural Balance pending in California, included "All" Natural Balance products in the release, even those Natural Balance dog food products sold in 2005.[5]

There is no contention by any party that Natural Balance products sold in 2005 were contaminated, yet, inexcusably, these 2005 product purchases were fraudulently included in the

---

[5] According to the testimony of Natural Balance, the Natural Balance dog food products were sold from October 2005 through April 17, 2007. (See Exhibits #3 and #4). The contaminated rice protein only appeared in these Natural Balance products manufactured from March 28, 2007 through April 17, 2007, a period of less than one month. (Deposition of Herrick, at 20:17-19 and 23:15-22, Exhibit #2). Therefore, the vast majority of the Natural Balance product purchases being released involve non-contaminated product, which this Court has held is outside of the scope of this MDL and should not be released. In fact, the allegedly contaminated product sales for these products only totaled $203,551.00 (Exhibit #4), whereas the non-contaminated sales from 2005 to March 28, 2007 were $6,821,346.00 (Exhibits #3 and #4). (See Declaration of Nordrehaug, at ¶¶ 4-5).

release, contrary to the representations to this Court. In fact, Natural Balance testified that the company did not even begin to use "rice protein", which is the allegedly contaminated ingredient, until March 28, 2007. (Deposition of Herrick at 20:17-19, <u>Exhibit #2</u>). Thus, there can be no justification for including Natural Balance products sold prior to March 28, 2007 in the contaminated pet food settlement.

Picus and Kaffer will demonstrate to the Court of Appeals how the Settling Parties deceived this Court and improperly included the undisputedly non-contaminated Natural Balance products in the settlement and release to prevent the litigation pending in the Ninth Circuit. Therefore, Picus and Kaffer's objections to the release was well taken. [See Doc. No. 258 at p.4]. The Plaintiffs' motion fails to address this meritorious issue upon which the appeal was primarily taken.

Not only did Picus and Kaffer object to the release extending to non-contaminated product purchases, but Picus and Kaffer also objected that (i) the $250,000 allocation is manifestly unreasonable compensation for the product purchase claims [Doc. No. 258 at p.4], and (ii) the representation was inadequate because there is no representation by any Plaintiff with only product purchase claims [Doc. No. 258 at p. 5]. While the Court disagreed with Picus and Kaffer on these issues, the Court of Appeals may find for Picus and Kaffer, especially in light of the collusion by the Settling Parties to include non-contaminated product purchases in the release to defeat litigation pending in the Ninth Circuit. Even counsel for Plaintiffs conceded at the hearing that "as plaintiffs' attorneys" they should not let the Defendants include non-contaminated products in the release, which duty Plaintiffs have abdicated.

As a result, the appeal by Picus and Kaffer is meritorious, as even this Court has stated that the release should not extend to non-contaminated products, so no appeal bond should be ordered.[6]

---

[6] As Plaintiffs' motion admits, the likelihood of success militates against the imposition of an appeal bond. See <u>Adsani v. Miller</u>, 139 F.3d 67, 79 (2d Cir. 1998).

**III.     THE APPEAL BOND REQUESTED VIOLATES THE LAW**

Even if this Court were to consider an appeal bond, the requested amount of $25,000, divided into $12,500 for each appeal, is grossly overstated. The costs referred to in F.R.A.P., rule 7, are only those costs that may be taxed against an unsuccessful litigant on appeal. Under F.R.A.P., rule 39, the only costs that could be recovered by Plaintiffs are those associated with copying of the brief. The remaining costs are those already bourne by the Appellant (i.e. filing fee and reporter's transcript) The Declaration of Stuart Davidson merely states that the $25,000 figure is based upon the copying of the briefs at $0.25 per page.

First, this representation fails to account for the fact that to date, all filings in the Third Circuit Court of Appeals by the Plaintiffs have been electronic and electronic filings are now mandatory. (See Notice by the Court of Appeals, attached hereto as <u>Exhibit #6</u>). Thus, there is no recoverable copying cost for filing and service of Plaintiffs' electronic brief.

Second, even if copying costs are considered, Plaintiffs assert an unreasonable copying expense of $0.25 per page, which violates F.R.C.P. §39(c) and 3rd Cir. Local Rule 39.3(c), which limits reproduction to $0.10 per page. Moreover, the Plaintiffs' service list evidences no more than 27 separately represented parties on appeal, when assuming fifty pages per brief, would only calculate to $185 for recoverable copying costs.

Thus, the estimate of $25,000 is grossly overstated and intended to be a barrier to appellate rights when considering that there is no copying costs associated with the now mandatory electronic briefs, and even paper briefs would only result in recoverable copying costs of $185. Contrary to the argument by Plaintiffs, this Court may not simply order a appeal bond in the amount of $25,000 as a benchmark amount without evidence and analysis of the facts concerning recoverable costs. [7]

---

[7] See <u>In re American President Lines, Inc.</u>, 779 F.2d 714, 716 (D.C. Cir. 1985); <u>Vaughn v. Am. Honda Motor Co.</u>, 507 F.3d 295, 299 (5th Cir. 2007) (reversing amount of cost bond that was "not supported by any findings or reference to evidence in the record").

As a result, the motion should respectfully be denied.

## IV. THE PLAINTIFFS' ATTEMPT TO IMPOSE A PROHIBITIVE BOND BECAUSE OF "DELAY" IN THE SETTLEMENT IS IMPROPER

The Plaintiffs argue that the appeal bond for costs is warranted because the appeals will "delay final execution of the landmark $24 million settlement achieved by the parties." Again, Plaintiffs' argument ignores settled law. As explained in Vaughn v. Am. Honda Motor Co., 507 F.3d 295, 298-299 (5th Cir. 2007), an appeal bond cannot be justified because the appeal causes a purported delay in the settlement and distribution of funds.

In Vaughn, the Court of Appeals reversed the district court's imposition of a significant appeal bond, and reduced the amount of the bond to $1,000. The Court's decision expressly rejected the argument that the bond could be based upon a purported delay in the settlement. Id., at 298-99. As held by the Vaughn decision, the parties to the settlement agreed that the settlement is not final until appeals are resolved, and thus, the Court held that it was error to factor the delay in settlement, or interest for the delay, into the appeal bond for costs. Plaintiffs invitation for this Court to commit reversible error should be declined.

Indeed, the large appeal bond requested by Plaintiffs evidences the true motivation, which is to impose significant burdens to the litigation of opposing arguments on appeal. As addressed by the Memorandum filed by Appellants Johnson and Turner [Doc. No. 285-3], appeals by an objector play a "highly important role for the class and the court". This is especially true here, where Picus and Kaffer can affirmatively demonstrate that the parties improperly included "All" Natural Balance products in the release, even though Natural Balance products sold prior to March 28, 2007 did not contain the rice protein component which was the source of contamination and therefore, these Natural Balance products were never "allegedly contaminated."

## V. CONCLUSION

Picus and Kaffer are consumers who are understandable concerned by the settlement and the effects thereof. At the hearing, this Court understood their concerns that claims for non-contaminated products not be included in the settlement and conditioned approval on the representations by Plaintiffs "we would not let the defendants try to" include claims for non-contaminated products in the settlement and release. Despite this representation, the final documents plainly include sales of Natural Balance products far outside the alleged contamination period. As a result, the claims of Kaffer for Natural Balance purchases in 2006 and 2006 are being wiped out, despite the Court's lengthy discussion at the hearing that products purchases from outside the contamination period should not be released.

Because the primary issue raised on appeal is meritorious, even in the view of this Court's statements at the hearing, the motion for an appeal bond for costs should respectfully be denied. Moreover, even if the motion is considered, the Plaintiffs violate the law in seeking copying costs for mandatory electronic briefs, which require no copying costs, and in requesting an unreasonable amount for the bond by using a copying cost that far exceeds what is permissible under the law. The purpose is therefore clear, to discourage the litigation of this appeal, which is simply not the proper purpose for an appeal bond under F.R.A.P., rule 7.

Respectfully submitted,

DATED: January 19, 2009

BLUMENTHAL & NORDREHAUG

By: */s/ Kyle R. Nordrehaug*
Kyle R. Nordrehaug

LAW OFFICE OF DANIEL I. WARD

By: */s/ Daniel S. Ward*
Daniel I. Ward, Esq.

Attorneys for Settlement Class Members and Appellants Margaret Picus and Daniel Kaffer