UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: PET FOOD PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1850 (All Cases)<br><br>Case No. 07-2867 (NLH)<br><br>The Honorable Noel L. Hillman |

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR APPEAL BOND FROM OBJECTORS/APPELLANTS JIM W. JOHNSON AND DUSTIN TURNER

Pursuant to Federal Rule of Appellate Procedure 7, Plaintiffs, on behalf of themselves and the Settlement Class, through Settlement Class Co-Lead Counsel, respectfully submit the following Reply in support of their Motion for an Appeal Bond From Objectors/Appellants Jim W. Johnson ("Johnson") and Dustin Turner ("Turner"):[1]

## I.    INTRODUCTION

Plaintiffs seek an appeal bond first to cover the anticipated appellate litigation expenses Co-Lead Counsel will incur, a non-controversial and judicially recognized use of an appeal bond. In fact, Rule 7 was specifically drafted for this very purpose, *i.e.*, to provide a vehicle for district courts to "provide security in any form and amount necessary to ensure payment of costs on appeal." This security is exactly what Plaintiffs seek, with Johnson/Turner, as one of the two appellants, posting a bond for half of the anticipated expenses.

IN RE: PET FOOD PRODUCTS LIABILITY LITIGATION      Doc. 290

---

[1]    Plaintiffs will timely respond to the opposition brief of Objectors/Appellants Margaret Picus and Daniel Kaffer, filed January 19, 2009.  [D.E. 288].

Dockets.Justia.com

With respect only to appellants Johnson and Turner, and their counsel Robert E. Margulies ("Marguiles") and Jeffrey L. Weinstein ("Weinstein") (collectively, the "Professional Objectors"), Plaintiffs seek an additional amount of security – a bond to cover Plaintiffs' anticipated appellate attorneys' fees. This is another judicially-recognized use of an appellate bond, as district courts have repeatedly acknowledged their ability to impose a bond for appellate attorneys' fees, especially where, as here, a groundless and patently frivolous appeal is taken. *See* D.E. 284 at pp. 8-14. As they have done many times before in other cases, the Professional Objectors have appealed this Court's approval of the Settlement without any ability to demonstrate that this Court abused its discretion in approving the Settlement. Indeed, the Professional Objectors' have a clear record of baseless objections and groundless appeals in past class action litigation made solely in an attempt to extract unearned fees from class action settlements. Their appeal here is nothing more than a cut-and-paste job from another perfunctory appeal (as evidenced here by their reference to "tires" instead of "Recalled Pet Food" and failing to correct typographical errors from prior identical objections). The Professional Objectors' appeal is objectively meritless and vexatious, and supports the award of a bond for anticipated attorneys' fees.

## II.    ARGUMENT

### A.    Appellate Bonds Covering Litigation Expenses Are Axiomatic

It is black letter law, especially in class action cases, that a bond to cover pure litigation expenses is not controversial and virtually automatic. *See* D.E. 284 at pp.8-11; *In re Ins. Brokerage Antitrust Litig.*, Civ. No. 04-5184 (GEB), 2007 WL 1963063, at *3 (D.N.J. July 2, 2007) ($25,000 bond for appellate litigation expenses held reasonable). There is no reason – and other than making self-serving contentions that they have purportedly provided "benefits" in wholly unrelated cases, the Professional Objectors offer none – to depart from this general rule.

Accordingly, Johnson and Turner should be ordered to post an appeal bond in the amount of $12,500, representing one-half of Plaintiffs' estimated appellate litigation expenses.

**B.     Appellate Bonds May Cover Attorneys' Fees**

**1.     The Standard of Appellate Review**

The Professional Objectors' opposition to the request for a bond covering appellate attorneys' fees is misguided. It is, at its core, based on a misunderstanding of the standard of appellate review as being one of finding "errors in the court's judgment." *See* D.E. 285 at p.2. As Plaintiffs explain in their motion, however, "error" is not the standard of appellate review. *See* D.E. 284 at pp. 4-6. Rather, the standard is "abuse of discretion," which the Professional Objectors have a duty to show, but completely ignore. Moreover, the Professional Objectors' recitation of purported "error" ignores the comprehensive analysis set forth in this Court's 65-page Memorandum Opinion dated November 18, 2008 as to why the Settlement comports with clearly-established law. *In re Pet Food Products Liability Litig.*, MDL Docket No. 1850, Civil Action No. 07-2867 (NLH), 2008 WL 4937632 (D.N.J. Nov. 18, 2008). Thus, it is clear that the Professional Objectors can in no way meet the correct standard of review on appeal and their appeal lacks any semblance of good faith. Indeed, as is shown below, their appeal lacks any basis whatsoever.

**2.     The Professional Objectors Have No Good Faith Basis to Appeal This Court's Approval of the Settlement as They Cannot Show an Abuse of Discretion**

The Professional Objectors argue that the $250,000 set aside for the payment of Recalled Pet Food purchase price claims is inadequate because there has already been proven to be a total of $450,000 for such claims for refunds. D.E. 285 at pp. 5-6. However, $450,000 is not an accurate amount. The amount to be paid to claimants for the purchase price of Recalled Pet Food cannot and will not be known until the Claims Administrator has considered, analyzed

and vetted all such claims to determine which ones are payable and the exact amount of the payment. More importantly, the mere fact that claimants may not receive 100% of the amount they paid for Recalled Pet Food does not mean that the Settlement is unfair, unreasonable and inadequate to the Class as a whole. Nearly all class action settlements reimburse a portion of the claims made,[2] and such may be the case here with respect to product purchase price claims and claims for other economic damages as well, such as injured pet claims. In addition, the $250,000 cap for product purchase claims is fair and reasonable for all the reasons set forth in this Court's opinion. *In re Pet Food Products Liability Litig.*, 2008 WL 4937632, at \*8. Thus, this basis for the Professional Objectors' appeal is without merit and has little chance of success. Accordingly this Court should impose a bond that includes attorneys' fees.[3]

---

[2] *See, e.g., In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 539 (3d Cir. 2004) (noting that "the $44.5 million settlement fund is approximately 33% of available damages and well within a reasonable settlement range when compared with recovery percentages in other class actions."); *Bradburn Parent Teacher Store, Inc. v. 3M (Minn. Mining & Mfg. Co.)*, 513 F. Supp. 2d 322, 334 (E.D. Pa. 2007) (citing cases and holding that "[t]he proposed Settlement provides between approximately 41 and 48 percent of the damages calculated by Plaintiff's expert economist. . . . . This result is significantly above the typical antitrust settlement, and courts routinely grant approval to settlements that involve recoveries that represent a much lower percentage of the actual damages."); *In re Merrill Lynch & Co., Inc. Research Reports*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) (noting that "the Settlement Fund represents between approximately 3% and 7% of the claimed damages. A recovery of between approximately 3% and 7% of estimated damages is within the range of reasonableness. . . ."); *Nichols v. SmithKline Beecham Corp.*, No. Civ.A. 00-6222, 2005 WL 950616, at \*16 (E.D. Pa. Apr. 22, 2005) (holding that settlement of "between 9.3% and 13.9% of damages" was "consistent with those approved in other complex class action cases.") (citations omitted); *see also Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) (court approved settlement of 5.7% of total damages recoverable).

[3] The Professional Objectors also argue in their opposition to Plaintiffs' Motion for Appeal Bond that their appeal has merit because this Court erred by not requiring separate class representatives for the product purchase refund class and by certifying for settlement purposes a national breach-of-warranty class. However, the Professional Objectors do no more than reiterate the same arguments they made in their Objection that this Court previously rejected. They make no attempt in their Opposition to show how or in what way this Court abused its

### 3.    Rule 7 Allows Appellate Bonds to Include Attorneys' Fees

The Professional Objectors' argument that Rule 7 does not give this Court the authority to include attorneys' fees in an appellate bond is just plain wrong. Every single reported decision from a Circuit Court of Appeals to address the issue of a bond to cover appellate attorneys' fees under Rule 7 has determined that such a bond is proper. *See* D.E. 284 at pp. 12-13.

*First*, the Professional Objectors tellingly ignore the seminal cases Plaintiffs cite, including *Sckolnick v. Harlow*, 820 F.2d 13, 15 (1st Cir. 1987), and *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). Both of these cases stand for the proposition that a district court *would* have the authority to require litigants to post a bond to cover appellate attorneys' fees, whether Rule 7 existed or not.

*Second*, although the Third Circuit approached the issue differently in *Hirschensohn v. Lawyers Title Ins. Corp.*, No. 96-7312, 1997 WL 307777, at *1 (3d Cir. June 10, 1997), that unreported opinion should have no precedential value here. For, as Plaintiffs explained, many persuasive and well-reasoned authorities have stated that the Third Circuit's analysis in *Hirschensohn* is limited to its unique facts and addressed *only part* of the issue. *See* D.E. 284 at pp. 12-13. In addition, the Professional Objectors simply ignore the overwhelming body of law decided *since 1997* that allows for a bond to cover attorneys' fees under Rule 7, all of which is cited in Plaintiffs' motion. *See Sckolnick*, 820 F.2d at 15; *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 816-17 (6th Cir. 2004); *Downey v. Mortgage Guar. Ins. Corp.*, 313 F.3d 1341,1342-44 (11th Cir. 2002); *Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1331-32 (11th

---

discretion in deciding these issues such that their appeal of these issues could be considered to have any basis.

Cir. 2002); *Adsani v. Miller*, 139 F.3d 67, 74-75 (2d Cir. 1998); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 124, 128 (S.D.N.Y. 1999); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, No. MDL 1361, 2003 WL 22417252, at *1 (D. Me. Oct. 7, 2003); *In re Broadcom Corp. Sec. Litig.*, No. SACV 01-275 DT (MLGx), slip op. at 8-11 (C.D. Cal. Dec. 5, 2005).

Persuasively, in *O'Keefe v. Mercedes-Benz USA, LLC*, No. Civ.A. 01-CV-2902, 2003 WL 22097451 (E.D. Pa. June 04, 2003), cited in Plaintiffs' initial motion, D.E. 284 at p. 13, Judge Van Antwerpen, now a Senior Circuit Judge on the Third Circuit, coherently explained why the Third Circuit's unpublished decision in *Hirschensohn* was clearly limited to the facts before that court, was "not binding on this court," and *did not* operate as "a complete bar to including attorney's fees in an appeal bond." *O'Keefe*, 2003 WL 22097451, at *2. In rejecting the broad interpretation of *Hirschensohn* advocated by the Professional Objectors, the court explained how "Federal Rule of Appellate Procedure 39's limited definition of costs *is not exhaustive*, . . . because Rule 39's opening sentence states that the rule only applies '*unless the law provides otherwise or the court orders otherwise . . . .*'" *O'Keefe*, 2003 WL 22097451, at *2 (quoting *Adsani*, 139 F.3d at 74-75) (citing *Marek v. Chesney*, 473 U.S. 1 (1985)) (emphasis added).

Thus, the fact that a select few district court decisions – which either predate the wave of pertinent Circuit Court decisions or just plain got it wrong – have failed to require an appeal bond to include attorneys' fees is of no moment.

a. *Azizian* **Supports Including Attorneys' Fees In an Appeal Bond**

The Professional Objectors attempt an obtuse attack on Plaintiffs' citation to *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 959-60 (9th Cir. 2007), claiming that *Azizian* does

not stand for the proposition that, under Rule 7, a district court has the power to impose a bond to cover attorneys' fees for filing a frivolous appeal. However, under careful scrutiny their attack fails.

The Professional Objectors cite to a snippet from *Azizian* where the court states that a district court has no power *via* Rule of Appellate Procedure 38 to issue a bond to cover appellate attorneys' fees. *Azizian*, 499 F.3d at 960-61. Plaintiffs, however, are seeking imposition of a bond under Rule 7, not Rule 38. Indeed, Plaintiffs explicitly note in their motion that the Third Circuit alone, and not this Court, has the authority to sanction the Professional Objectors pursuant to Rule 38. *See* D.E. 284 at p. 5. However, this Court's authority is found exclusively in Rule 7.

Moreover, while a bond was denied in *Azizian*, the reasoning supports imposition of a bond here. The *Azizian* court explicitly traced the history of the pertinent case law, rejected *Hirschensohn*, acknowledged an Eleventh Circuit case in which "costs" were justified by bad faith, and agreed "with the Second, Sixth, and Eleventh Circuits . . . that the term 'costs on appeal' in Rule 7 includes all expenses defined as 'costs' by an applicable fee-shifting statute, including attorney's fees." *Azizian*, 499 F.3d at 958.

*Azizian,* therefore, accepts the imposition of a bond to cover appellate attorneys' fees under Rule 7 both by acknowledging the Eleventh Circuit's decision on the issue, and also by explicitly allowing it where there is an "applicable," underlying fee shifting statute. The purpose of any fee shifting statute, including the "applicable" antitrust fee shifting statute to which the Court was referring (*Azizian*, 499 F.3d at 959-60), is to punish bad conduct. It is for that precise reason that the *Azizian* court disallowed a bond to cover attorneys' fees in that case, since the bond was not sought against the person who "violated antitrust laws," *i.e.*, the bad actor, but

instead against a person the fee shifting statute was not designed to penalize. *Azizian*, 499 F.3d at 960. Thus, *Azizian* supports a bond to cover Plaintiffs' attorneys' fees here, to punish the Professional Objectors' bad faith conduct, *i.e.*, the act of filing their patently meritless appeal for no other purpose than delaying final execution of the Settlement in this case and possibly extorting an unearned fee.

**b.  The Professional Objectors' Conduct In Other Litigation Cannot Be Ignored**

The Professional Objectors' history of vexatious litigation conduct speaks for itself and is inextricably-linked to this case by the content of their meritless argument, which includes the assembly-line use of the word "*tires*." The Professional Objectors have only a confused and unsupported justification for filing an appeal in this case and no answer to the wisdom regarding "repeat objectors" pointed out by the courts in *Shaw v. Toshiba Am. Info.*, 91 F. Supp. 2d 942, 973 (E.D. Tex. 2000), and *Barnes v. Fleetboston Fin. Corp.*, No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072, at *3 (D. Mass. Aug. 22, 2006). *See* D.E. 284 at. pp. 6-7. Such wisdom is equally applicable here. Indeed, Plaintiffs' counsel recently learned that, on December 4, 2008, Professional Objector Weinstein filed *yet another* similar objection to a four-year-old, $92 million class action settlement in *Papadakis v. The Nw. Mutual Life Ins. Co.*, Case No. BC 322788 (Cal. Super. Ct., Los Angeles County),[4] a copy of which is attached hereto as **Exhibit A**.[5] It is time for a court to put a stop to such obstructionist and borderline unprofessional conduct.

---

[4]     *See* Paul Gores, *Northwestern Mutual agrees to pay $92 million in class action suit*, http://www.jsonline.com/business/34373844.html (last visited, Jan. 19, 2009).

[5]     This Court will note virtually identical objections to the settlement in *Papadakis* as the Professional Objectors made in this case.

### c. The Settlement Does Not Preclude Recovery of Attorneys' Fees For Defending the Settlement Against Frivolous Appeals

The Professional Objectors claim that the bond is prohibited by the class Settlement, in that the fees Plaintiffs' counsel received "already contemplates the obligation to defend the class in any appeal." *See* D.E. 285 at p. 20. This argument is completely without merit. Nowhere in the Settlement, in the discussions thereof, or in this Court's order were the fees awarded to Plaintiffs' counsel somehow meant to be extended to the litigation of appeals, much less frivolous ones. The Professional Objectors also claim that Plaintiffs will have to do little to no additional work in defending their appeal because the Picus appeal presents the same issue. *See* D.E. 285 at pp. 20-21. This is simply not true. The Professional Objectors' main argument on appeal is that there can be no class certification for a nationwide breach of warranty claim. The Picus appeal does not make this argument, and instead focuses primarily on the breadth of the release. Thus, Plaintiffs seek a bond to cover their appellate attorneys' fees to respond to the unsupported, groundless and frivolous arguments the Professional Objectors make on appeal, which will undoubtedly require work for which attorneys' fees will be incurred.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully ask this Court to grant their motion for an appeal bond with respect to Johnson and Turner.

DATED: January 26, 2009   Respectfully submitted,

        **TRUJILLO RODRIGUEZ & RICHARDS, LLC**

   By:   s/ Lisa J. Rodriguez
      Lisa J. Rodriguez
      258 Kings Highway, East
      Haddonfield, New Jersey 08033
      Telephone: (856) 795-9002
      Facsimile: (856) 795-9887

      *Liaison Counsel for Plaintiffs*

Kenneth A. Wexler
Mark J. Tamblyn
**WEXLER WALLACE LLP**
55 West Monroe Street, Suite 3300
Chicago, Illinois  60603
Telephone: (312) 346-2222
Facsimile:  (312) 346-0022

Sherrie R. Savett
Russell D. Paul
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, Pennsylvania  19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4636

William M. Audet
**AUDET & PARTNERS LLP**
221 Main Street, Suite 1460
San Francisco, California
Telephone: (415) 568-2555
Facsimile: (415) 568-2556

Scott A. Kamber
Jay Edelson
**KAMBEREDELSON, LLC**
11 Broadway, 22nd Floor
New York, New York 10004
Telephone: (212) 920-3072
Facsimile: (212) 202-6364

Stuart A. Davidson
**COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP**
120 E. Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
Telephone: (561) 750-3000
Facsimile: (561) 750-3364

Steve W. Berman
Jeniphr Breckenridge
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Fifth Avenue, Suite 2900
Seattle, Washington  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

*Co-Lead Counsel for Plaintiffs and the Settlement Class*

EXHIBIT A

1  Darrell Palmer (SBN 125147)
   Law Offices of Darrell Palmer
2  603 North Highway 101, Suite A
   Solana Beach, California 92075
3  Telephone: (858) 792-5600
   Facsimile: (858) 792-5655
4
   Jeffrey L. Weinstein (TX SBN 21096450 PHV Pending)
5  Jeffrey L. Weinstein, P.C.
   518 East Tyler Street
6  Athens, TX  75751
7  Telephone: (903) 677-5333
   Facsimile: (903) 677-3657
8
9  Attorneys for Objector Marci R. Frenkel

RECEIVED

DEC 0 4 2008

GIANELLI & MORRIS

10              SUPERIOR COURT OF CALIFORNIA

11      COUNTY OF LOS ANGELES – CENTRAL CIVIL WEST DISTRICT

12

13  NICHOLAS PAPADAKIS, Individually and on ) Case No.  BC 322788
    behalf of Himself and All Others Similarly )
14  Situated, and on behalf of the General Public ) CLASS ACTION
                   Plaintiff, )
15                             )  **NOTICE OF INTENT TO APPEAR and**
           vs.                 )  **OBJECTION TO PROPOSED SETTLEMENT**
16  THE NORTHWESTERN MUTUAL LIFE )  **and ATTORNEY FEES and EXPENSES by**
    INSURANCE COMPANY; and DOES 1 )  **MARCI R. FRENKEL**
17  through 10, Inclusive,       )
                   Defendants.   )
18                              )  Date: 12/24/08
                                )  Time: 10:00 a.m.
19                              )  Dept: CCW-322
                                )  Judge: Hon. Peter D. Lichtman
20                              )

21

22          **OBJECTIONS AND NOTICE OF INTENT TO APPEAR**

23      MARCI R. FRENKEL (Objector) files these objections to the proposed settlement and states her

24  intent to appear at the fairness hearing on December 24, 2008.

25          I.      **IDENTIFICATION OF OBJECTOR**

26      Objector is a member of the settlement class and received notice of the pending settlement.

27  Objector's contact information:  Marci R. Frenkel, 6109 Baymar Lane Dallas, Texas 75252, 214-265-

28  7770;  Northwestern Mutual Policy number: 12525575.

## II.  OBJECTIONS TO CERTIFICATION OF THE SETTLEMENT CLASS

A.  Inadequate Representation: Separate Counsel For Term And Disability Subclasses

The Court cannot certify the settlement class if the Class Counsel and named Plaintiff are not adequate representatives of the interests of class members.  If significant differences in interests exist between different groups within the class, the certification must create subclasses, with separate representatives and separate class counsel for each subclass.  MANUAL FOR COMPLEX LITIGATION 4th, §21.23, p. 272.  Each subclass should have its own class representative and lawyers representing their interests:

> If the certification decision includes the creation of subclasses reflecting divergent interests among class members, *each subclass must have separate counsel to represent its interests.* MANUAL FOR COMPLEX LITIGATION 4[th], §21.27, p. 278 (emphasis added).

The Court granted preliminary approval to a "settlement class" that consists of two subclasses, the Term class and the Disability class.  Preliminary Approval Order at 5.  The settlement itself defines the "settlement class" as consisting of both the Term and Disability classes.  Settlement Agreement, 2.31, p. 7.  There are clearly divergent interests between the subclasses.  According to Class Counsel, the claim of the Disability subclass is substantially weaker than that of the Term subclass. (October 7, 2008 Declaration of Timothy Morris, Para. 27, p. 12.)

Thus, there is a clear conflict between the two sub-classes.  Yet the same class representative, Nicholas Papadakis, and attorney, Timothy Morris, represent both the Term and Disability subclasses.  Because separate class representatives and counsel did not represent the separate subclasses, the subclasses have not been adequately represented and the Court should not certify the proposed settlement class.

B.  Inadequate representation: ERISA policies

In its answer to Plaintiff's complaint, the Defendant alleges that Nicholas Papadakis is not an adequate representative of the class because his policy is an ERISA policy.  (Answer p. 9.)  Thus, they argue, his claims are preempted by ERISA. *Id.*  Whether or not Mr. Papadakis' claim is an ERISA claim, the fact is that there is a substantial conflict between those class members whose claims are preempted by ERISA and those whose claims are not.  Yet the same class representative, Nicholas Papadakis, and attorney, Timothy Morris, represent both class members with and without ERISA

1   policies.  Because separate class representatives and counsel did not represent the separate subclasses,

 2   the subclasses have not been adequately represented and the Court should not certify the proposed

 3   settlement class.

 4         C.     Inadequate representation: lack of subclasses based on limitations

 5         There is also a substantial conflict between class members for whom Northwestern Mutual

 6   asserts a statute of limitations defense and class members for whom it does not.

 7         Class Counsel admits that there were serious statute of limitations issues regarding some class

 8   claims.  (October 7, 2008 Declaration of Timothy Morris, Para. 22, p. 10.)  Yet, the settlement class is

 9   extended back to 1983.  Thus, the class includes both class members for whom Northwestern Mutual

10   raised a limitations defense, and those for whom there is no such defense. (October 7, 2008 Declaration

11   of Timothy Morris, Para. 28, p. 12.)  Yet the same class representative, Nicholas Papadakis, and

12   attorney, Timothy Morris, represent both class members with and without statute of limitations issues.

13   Because separate class representatives and counsel did not represent the separate subclasses, the

14   subclasses have not been adequately represented and the Court should not certify the proposed

15   settlement class.

16         D.     Inadequate notice to the class

17         The notice in this case does not reasonably provide class members with notice of what rights

18   they will obtain under the settlement.  Indeed, the settlement itself fails to provide any amount or

19   formula for how class members' pro rata shares will be determined:

20         The exact allocation formula shall be determined by Northwestern Mutual and approved
           by the Court at the Final Settlement Hearing. (Settlement Agreement at 10.)
21

22         Thus, class members have no way of knowing what the allocation formula will be. As a

23   matter of law, the plan of allocation of the settlement proceeds is a material term to a class action

24   settlement.  A settlement that gives preferential treatment to some class members at the expense

25   of others is not fair, reasonable, or adequate. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

26   625-628 (1997).  Thus, to determine whether the settlement is fair, reasonable, or adequate, the

27   Court must consider the plan of allocation as a material part of the settlement.  The plan of

28

---

**NOTICE OF INTENT TO APPEAR and OBJECTION TO PROPOSED SETTLEMENT and ATTORNEY FEES
and EXPENSES by MARCI R. FRENKEL**

allocation is so important, the MANUAL FOR COMPLEX LITIGATION 4th lists it as the first item for consideration:

> Rule 23(e)(1)(C) establishes that the settlement must be fair, reasonable, and adequate. *Fairness calls for a comparative analysis of the treatment of class members vis-à-vis each other* ... MANUAL FOR COMPLEX LITIGATION 4th, §21.62, p. 315 (emphasis added).

Thus, the Plan of Allocation is a material term to the settlement and class members are entitled to notice of the plan. The parties failed to provide such notice, so the Court should not certify the class. Moreover, Objector was deprived of due process by the Court's requirement that objectors file all objections to the settlement before the plan of allocation was determined.

## III.    OBJECTIONS TO THE SETTLEMENT TERMS

A.    The Settlement Amount is inadequate for Disability class members

The settlement is not fair, reasonable, or adequate, and Objector objects to the settlement because Disability class members do not receive any monetary compensation, yet lose all their rights to the claims. In exchange for a complete release of their rights, Disability class member merely get a pamphlet "affirming" that they have no guaranteed dividend!

That pamphlet provides absolutely no consideration for the release of past claims. Moreover, it provides no benefit for the future because it merely confirms the same statement made in the notice that there is no guaranteed dividend. Thus, providing the pamphlet provides no benefits to class members.

Disability class members should not have to release any rights, for a variety of reasons. First, there is no consideration for the release. The settlement agreement is a contract and must be supported by consideration to be enforceable. Since there is no consideration as to Disability class members, the agreement is unenforceable as to them. Second, the release cuts off any claim these class members may have in the future. Statutes of limitation are tolled during the pendency of a class action in most states so many such claims would still be viable. Regardless of the strength of those possible future claims, it is unfair and unreasonable to cut off those class members' rights without getting anything in return. Third, class members would run the risk that the release may be construed as broader than this specific problem. For instance, if they raised another misrepresentation claim against Northwestern Mutual, the class members could be faced with additional litigation costs and potential losses arguing over whether this release applied to that particular issue.

---

1       Given the breadth of the release, discussed below, there is a good chance that they will lose their

2  rights regarding other misrepresentation claims.

3       The bottom line for Disability class members is that ***they undeniably and unequivocally come***

4  ***out worse off under this settlement then if there were no settlement or lawsuit.*** Regardless of the

5  existence or strength of any claims they may have against Northwestern Mutual, they are losing

6  *something* by the release. Yet, they get absolutely *nothing* in return. This complete lack of

7  consideration renders this settlement unfair, unreasonable, and inadequate as a matter of law.

8      B.    <u>The settlement fails to fairly take into account the strengths and weaknesses of the</u>

9          <u>claims of different groups within each subclass.</u>

10      The settlement is not fair, reasonable, or adequate, and Objector objects to the settlement because

11  it fails to take into account the significant differences between the claims of various class members

12  within each subclass, as discussed above. For instance, the settlement fails to take into account the

13  significant differences between members within each subclass, including but not limited to:

14      •  Policies preempted by ERISA versus those that are not preempted.

15      •  Class members with statute of limitations problems versus those without.

16      The parties failed to take these factors into account, although these issues presented significant

17  differences between class members.

18      C.    <u>The settlement fails to include the allocation formula</u>

19      The settlement is not fair, reasonable, or adequate, and Objector objects to the settlement because

20  it does not include the plan of allocation of the pro rata payments to class members: "The exact

21  allocation formula shall be determined by Northwestern Mutual and approved by the Court at the Final

22  Settlement Hearing." (Settlement Agreement at 10.)

23      As a matter of law, the plan of allocation of the settlement proceeds is a material term to a class

24  action settlement. A settlement that gives preferential treatment to some class members at the expense

25  of others is not fair, reasonable, or adequate. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-628

26  (1997). Thus, to determine whether the settlement is fair, reasonable, or adequate, the Court must

27  consider the plan of allocation as a material part of the settlement. The plan of allocation is so

28  important, the MANUAL FOR COMPLEX LITIGATION 4th lists it as the first item for consideration:

Rule 23(e)(1)(C) establishes that the settlement must be fair, reasonable, and adequate. *Fairness calls for a comparative analysis of the treatment of class members vis-à-vis each other* ...MANUAL FOR COMPLEX LITIGATION 4th, §21.62, p. 315 (emphasis added).

The settlement, therefore, is not complete. Moreover, class members should have notice and a fair opportunity to object to the plan of allocation. Thus, Objector hereby requests that the Court direct the settling parties to disclose the plan of allocation to class members and give class members at least 30 days to object to the plan.

D.    The release is overbroad

The settlement is not fair, reasonable, or adequate, and Objector objects to the settlement because the release is overbroad. The Release includes all claims that could have been asserted related to "(iii) any and all sales, marketing, illustrations, or advertising." The Release is not limited to representations regarding dividends.

As a simple example, assume that Northwestern Mutual misrepresented its A.M. Best rating to a class member when selling a term or disability policy. That claim would be included in the claims released. The settlement provides:

> In order to avoid any doubt, Released Claims shall include, but not be limited to, any and all claims connected with, related to, or arising from the Term Policies and/or the Disability Policies and one or more of the following: ... (iii) any and all sales, marketing, illustrations, or advertising. Settlement p. 12.

The settlement encompasses *any* misrepresentation claim regarding sales, marketing, illustrations, or advertising, *period*. Thus, the parties seek to ensure that there is "not any doubt" that class members will waive all misrepresentation claims related to the sale of the term and disability policies, even those that have nothing to do with dividends. Such an overbroad release is not fair, reasonable, or adequate.

E.    The parties failed to meet their burden of proof that the total settlement to the class would be fair, reasonable, or adequate.

Objector objects to the settlement because the parties have failed to meet their burden to prove that the amount of the settlement is fair, reasonable, and adequate. The burden of proof is on the settlement parties, not objectors:

At the fairness hearing, the proponents of the settlement must show that the proposed settlement is 'fair, reasonable, and adequate.' MANUAL FOR COMPLEX LITIGATION 4th, §21.634, p. 322; *see also, 7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal.App.4th 1135, 1165, 102 Cal.Rptr.2d 777 (2000).

## IV.    The Requested Attorneys' Fees and Expenses are Excessive.

The settlement is not fair, reasonable, or adequate, and Objector objects to the settlement because the requested amount of attorneys' fees and expenses to Class Counsel is excessive. The amount of the proposed attorneys' fees and expenses is an integral element in determining whether the settlement is fair, reasonable, and adequate:

> The court's settlement review should include provisions for the payment of Class Counsel. In class actions whose primary objective is to recover money damages, settlements may be negotiated on the basis of a lump sum that covers both class claims and attorney fees. Although there is no bar to such arrangements, the simultaneous negotiation of class relief and attorney fees creates a potential conflict … The judge can condition approval of the settlement on a separate review of the proposed attorneys' compensation. MANUAL FOR COMPLEX LITIGATION 4th § 21.7, p. 335. The requested amounts are excessive for the following reasons.

### A.    Mr. Caliri's services should come out of the attorney's fee, not expenses

Class counsel seeks to recover 6% of the settlement fund for expenses, on top of the 33% attorney's fee. The large bulk of that charge is for the services of a non-testifying expert, Frank Caliri. A non-testifying expert is part of the legal team and his work is protected from discovery the same as the work product of the attorneys. The non-testifying expert fills the gap in knowledge that the counsel lack.

Moreover, the contingent nature of the expert fee, with what is in effect a lodestar multiplier of two, looks exactly like an attorney's fee. As a general matter, the services of the non-testifying expert should be recovered as part of the attorneys' fee, not as an expense. Thus, the entire expense for Mr. Caliri's services should be excluded from the recovery of expenses.

But more importantly in this case, much of Mr. Caliri's work was clearly that of an associate attorney, and Class Counsel has failed to segregate those types of expenses. For instance, a large amount of his work was writing deposition summaries and outlines. (See, e.g. Caliri declaration at p. 9, paragraph 30.) That is work an associate attorney or law clerk would normally do. Indeed, at Mr. Caliri's rate of $1100 an hour ($550 an hour doubled), charging the class for his time on this would be a

1    gross injustice. Mr. Caliri has only provided a summary of the time he spent, so there is no evidence

2    before the Court as to what portion of Mr. Caliri's charges are appropriately charged to the class.

3    Therefore, the Court must deny the expense in it's entirely.

4            B.    Mr. Caliri's charges, even if properly considered an expense, are excessive

5            Even if Mr. Caliri's charges were properly considered as an expense, rather than coming out of

6    the attorneys' fee, the charges are clearly excessive. Mr. Caliri is charging $550 an hour, doubled to

7    $1100 an hour. His declaration, however, makes clear that his time included such secretarial tasks as

8    creating color coded manila files and creation of spiral notebooks. (Caliri declaration at 6.) He charged

9    his full rate for these relatively menial tasks. In addition, he charged his full rate, more than any

10   associate attorney would charge, for summarizing depositions. (*Id.* at 9.) He also charged his full rate

11   for "internet research." (*Id.* at 6.) Again, due to the lack of specific evidence regarding Mr. Caliri's

12   time expenditures, the Court cannot determine which services were worth the $550 rate and which were

13   not. Therefore, the Court must deny the entire expense.

14           C.    The requested attorneys' fees are unreasonable

15           Class counsel seeks a 33% fee from a $92 million fund. While a 33% fee could be reasonable

16   for substantially smaller common funds, 33% is excessive for a $92 million common fund.

17           First, in a classic study of class action fee awards that can be downloaded at

18   http://papers.ssrn.com/sol3/papers.cfm?abstract_id=456600#, Professors Eisenberg and Miller

19   performed a comprehensive study of class action fee awards and determined that the mean fee award in

20   common fund cases is well below the widely-quoted one-third figure, constituting 21.9 percent of the

21   recovery across all cases for a comprehensive data set of published cases.

22           Second, the study found that a scaling effect exists: fees constitute a lower percent of the client's

23   recovery as the client's recovery increases. Thus, for a case with a $92 million fund, an appropriate fee

24   would be less, not more, than the 21.9% mean. Finally, Class counsel's request cites cases at 33%, but

25   fails to show the size of the common fund for those cases. Anything above a 21.9% fee in this case

26   would be excessive.

27           Class counsel has failed to meet their burden of proof that the fee amount of fees and expenses is

28   reasonable. There is inadequate evidence to support the reasonableness of the fees or expenses, so

taking those fees from the class members' settlement fund would render the settlement unfair, unreasonable, and inadequate.

## V.    Adoption of All Other Objections

These Objectors adopt and subscribe to all bona fide objections filed by other Class Members in this case, that are not inconsistent with those contained herein, and incorporate them by reference as if they appeared in full herein.

## VI.    Incentive Awards for Objectors.

Just as objectors' counsel should be encouraged to assist the class-action process, so should individual class members be encouraged to participate. Accordingly, an incentive award is appropriate for Objector herein for her willingness to be a named party, promote fairness, and contribute to the common welfare of the Class.

**WHEREFORE**, These Objectors respectfully request that this Court:

    A.    Upon proper hearing, sustain these Objections;

    B.    Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

    C.    Award an incentive fee to these Objectors for their service as named representatives of Class Members.

Dated: December 3, 2008

Darrell Palmer, Attorney for Marci R. Frenkel

**IN RE PAPADAKIS v. The Northwestern Mutual Life Insurance Company et al**
**Los Angeles Superior Court Case nos. BC322788**

**DECLARATION OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF SAN DIEGO**

I, Alison Paul, declare as follows:

I am employed with the Law Offices of Darrell Palmer whose address is 603 N. Highway 101, Suite A. Solana Beach, CA 92075; I am readily familiar with the business practices of this office for collection and processing of correspondence for mailing with the United States Postal Service; I am over the age of eighteen (18) and I am not a party to this action. On December 3, 2008, I caused to be served the following:

**OBJECTION TO PROPOSED SETTLEMENT and ATTORNEY FEES and EXPENSES by MARCI R. FRENKEL**

| | |
|---|---|
| Timothy J. Morris, Esq. | Phillip R. Kaplan, Esq. |
| Gianelli & Morris, A Law Corp. | O'Melveny & Myers LLP |
| 626 Wilshire Boulevard, Suite 800 | 610 Newport Center Drive, 17th Floor |
| Los Angeles, CA 90017 | Newport Beach, CA 92660 |

____ by placing a copy in a separate envelope addressed to each addressee as indicated below and delivering to June's Attorney Service, for personal service.

**XX** by sending a copy via Federal Express. Airbill No. 858349599175 & 858349599164

**XX** by placing a copy in a separate envelope, with postage fully prepaid, for each address named on the attached service list for collection and mailing on the below indicated day following the ordinary business practices of our offices

____ by sending a copy via facsimile transmission to the facsimile number(s) indicated below. The facsimile machine I used complied with California Rules of Court, Rule 2003, and no error was reported by machine. Pursuant to California Rules of Court, Rule 2006(d), I caused the machine to print a transmission record of the transmission, a copy of which is attached to this declaration.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____
Alison Paul

THU - 04 DEC  A1
STANDARD OVERNIGHT
DSR
90017
CA-US
LAX

fedex.com 1.800.GoFedEx 1.800.463.3339

**WZ EMTA**

8583 4959 9164

Dept 180214 930X300 CLDA

**FedEx US Airbill**
Express

8583 4959 9164

1 From  12/3/08
Sender's Name  Derek Palmer  Phone  858 792-3500
Company  Law Offices of Darrell Palmer
Address  603 N Hwy 101  Suite A
City  Solana Beach  State  CA  ZIP  92075

2 Your Internal Billing Reference

3 To
Recipient's Name  Timothy Norris  Phone
Company  Girardi & Keese  A Law Corp
Address  626 Wilshire Blvd  Ste 300
City  Los Angeles  State  CA  ZIP  90017

369 B
9164
12.04

Go to fedex.com, or call 1.800.GoFedEx 1.800.463.3339 for U.S. domestic shipments, 1.800.247.4747 for international shipments. Call your local FedEx office if you are outside the U.S.