UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

IN RE: PET FOOD PRODUCTS
LIABILITY LITIGATION

MDL Docket No. 1850 (All Cases)

Case No. 07-2867 (NLH)

The Honorable Noel L. Hillman

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR
APPEAL BOND FROM OBJECTORS/APPELLANTS
<u>MARGARET PICUS AND DANIEL KAFFER</u>**

Pursuant to Federal Rule of Appellate Procedure 7, Plaintiffs, on behalf of themselves and the Settlement Class, through Settlement Class Co-Lead Counsel, respectfully submit the following Reply in support of their Motion for an Appeal Bond From Objectors/Appellants Margaret Picus ("Picus") and Daniel Kaffer ("Kaffer"):

### I.  INTRODUCTION

Plaintiffs seek an appeal bond first to cover the anticipated appellate litigation expenses Co-Lead Counsel will incur, a non-controversial and judicially recognized use of an appeal bond. In fact, Rule 7 was specifically drafted for this very purpose, *i.e.*, to provide a vehicle for district courts to "provide security in any form and amount necessary to ensure payment of costs on appeal." This security is exactly what Plaintiffs seek, with Picus/Kaffer, as one of the two appellants, posting a bond for half of the anticipated expenses.

### II.  ARGUMENT

#### A.  Appellate Bonds Covering Litigation Expenses Are Routine

It is black letter law, especially in class action cases, that a bond to cover pure litigation expenses is not controversial and virtually automatic. *See* D.E. 284 at pp. 8-11; *In re Ins. Brokerage Antitrust Litig.*, Civ. No. 04-5184 (GEB), 2007 WL 1963063, at *3 (D.N.J. July 2,

IN RE: PET FOOD PRODUCTS LIABILITY LITIGATION                      Doc. 291

2007) ($25,000 bond for appellate litigation expenses held reasonable). There is no reason to depart from this general rule. Accordingly, Picus and Kaffer should be ordered to post an appeal bond in the amount of $12,500, representing one-half of Plaintiffs' estimated appellate litigation expenses.

Picus and Kaffer contend that "an appeal bond cannot be justified because the appeal causes a purported delay in the settlement and distribution of funds, Opposition to Motion for Appeal Bond by Margaret Picus and Daniel Kaffer ("Opp.") at p. 2, 8, and offer in support only one case *Vaughn v. Am. Honda Motor Co.*, 507 F.3d 295 (5th Cir. 2007).

*Vaughn*, however, does not support Picus and Kaffer's position that this Court is somehow prohibited from requiring them to post an appeal bond to cover Plaintiffs' pure litigation expenses. Rather, *Vaughn* stands for the basic proposition that a court cannot disguise something that is not a Rule 7 bond as a Rule 7 bond. In other words, a court cannot make a ruling under Rule 38, a rule which only a Circuit Court of Appeals is allowed to enforce, or under any other distinct rule, and then attempt to bootstrap that ruling as justification for an order requiring an appeal bond under Rule 7. *See Vaughn*, 507 F.3d at 299 ("the court was essentially using a bond for costs on appeal as a surrogate for a supersedeas bond").

But that is not what Plaintiffs have asked this Court to do. Plaintiffs are simply asking this Court to require Picus and Kaffer to post a bond to cover half of Plaintiffs' anticipated litigation expenses for the appeal. And, in support, Plaintiffs cited the blackletter legal precedent that Rule 7 is specifically designed to allow this Court to impose such a bond, especially in this type of class action litigation. *See, e.g., In re Ins. Brokerage Antitrust Litig.*, MDL Docket No. 1663, Civ. No. 04-5184 (GEB), 2007 WL 1963063, at *3-*5 (D.N.J. July 02, 2007) (imposing a "reasonable" $25,000 appeal bond for objectors to class settlement based on line of precedent);

2

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*, No. MDL 1361, 2003 WL 22417252, at *2 (D. Me. Oct. 7, 2003) ($35,000 appeal bond); *In re Diet Drugs*, MDL Docket No. 1203, 2001 WL 34133966, at *1 (E.D. Pa. Apr. 06, 2001) ("The Brown Class Representatives' Motion to Increase Appellate Bond (Doc. # 202389) is GRANTED. The Bond is increased from $25,000 to $68,000, for which all objectors with appeals pending shall be jointly and severally responsible. As $25,000.00 has already been posted, those objectors shall post an additional $43,000.").

Tellingly, Picus and Kaffer completely ignore that precedent in their response to Plaintiffs' motion for an appeal bond and instead cite the *Vaughn* case, which has no applicability here. The precedent Plaintiffs cite speaks for itself and it is axiomatic for this Court to require Picus and Kaffer to post a bond of $12,500 to cover Plaintiffs' anticipated litigation expenses.

### B. The Appeal of Picus and Kaffer Lacks Merit

#### 1. Picus and Kaffer Cannot Show That This Court Abused its Discretion When It Approved the Release

The correct standard of appellate review of this Court's final approval of the Settlement is "abuse of discretion." *Lenahan v. Sears, Roebuck & Co.*, 266 Fed. Appx. 114, 117 (3rd Cir. 2008). Here, an appeal bond for Plaintiffs' Co-Lead Counsel's appellate litigation expenses should be imposed because Picus and Kaffer cannot show that this Court abused its discretion when it held that the scope of the release in this Settlement is appropriate and legally supported.

#### 2. "Made in the USA" Claims Based on Non-Contaminated Natural Balance Pet Food Products Are NOT Released.

Picus and Kaffer argue that their appeal is meritorious because Natural Balance pet food products that were not contaminated are included in the Release. *See* Opp. at pp. 3-6. Specifically, Picus and Kaffer argue that all sales of contaminated Natural Balance products

3

occurred only between March 28, 2007 and April 17, 2007, and that because the list of Recalled Pet Food Products attached to the Order Approving Class Action Settlement [DEs 272 and 272-2] includes "All" of certain Natural Balance products, including product that was not contaminated because it was sold prior to March 28, 2007 (the date Picus and Kaffer claim allegedly contaminated Rice Protein Concentrate ("RPC") was first used in the product), the Release operates to release the "Made in the USA" claims that are the subject of the *Kennedy* lawsuit for all Natural Balance product, even product that was not contaminated. *Id.* That is to say that consumers who purchased non-contaminated Natural Balance pet food may not bring "Made in the USA" claims in the *Kennedy* action because those claims are released in this Settlement. This argument is based on a gross distortion of the facts and a complete misunderstanding of the Release. As such, it is entirely without merit, and Picus and Kaffer's accusations of fraud on this Court are frivolous.

Picus and Kaffer go on to accuse the Settling Parties of having "defied the Court's instructions and procured the approval of this Court by fraud" "in an overt attempt to foreclose the litigation pending elsewhere for Made in the USA violations by Defendant Natural Balance." *Id.* at 4. These serious allegations are completely unfounded. As is shown below, Picus and Kaffer know, or need only have more carefully read the *Kennedy* discovery materials on which they rely to learn, that they have misrepresented to this Court the facts surrounding the Natural Balance products at issue.[1] Their accusations of fraud are better directed at themselves.

---

[1] References by Picus and Kaffer in this action to certain *Kennedy* discovery documents (Defendant Natural Balance's Supplemental Responses to Plaintiff's Special Interrogatories, Set One, attached as Exhibit 4 to the Declaration of Kyle Nordrehaug In Support of Opposition to Motion for Appeal Bond) represent a use of Confidential Information that violates the Protective Order entered in the *Kennedy* action. *See* Declaration of Kyle Kveton, Esq. ("Kveton Decl.") ¶ 5, filed herewith.

### a. The Natural Balance Products At Issue

On the list of Recalled Pet Food Products attached to the Order Approving Class Action Settlement, there are 14 entries for Natural Balance products. Those entries, with additional relevant information added, are replicated on Exhibit A attached hereto. Those entries relate to various package sizes for 10 distinct Natural Balance products.

Of the 10 distinct Natural Balance products listed, the following four products are at issue in the *Kennedy* litigation:

- Natural Balance Venison & Brown Rice Formula Baked Dog Treats
- Natural Balance Venison Formula (aka Venison & Brown Rice Canned Dog Food)
- Venison and Green Pea Dry Cat Food
- Venison and Brown Rice Dry Dog Food

These four products at issue in the *Kennedy* litigation appear as seven separate entries on the list of Recalled Pet Food Products because several of the four *Kennedy* products are available in more than one package size. Those seven entries for the four *Kennedy* products are as follows:

| Pet | Manufacturer | Brand | Product Description | Best Before Date | Packaging | Size | Product Code |
|---|---|---|---|---|---|---|---|
| Dog | American Nutrition | Natural Balance | Natural Balance Venison & Brown Rice Formula Baked Dog Treats | Aug. 21 07- Apr. 15 08 | Bag | 14 oz | |
| | | | | | | | |
| Dog | American Nutrition | Natural Balance | Natural Balance Venison Formula (aka Venison & Brown Rice Canned Dog Food) | All | Can | 13 oz | 723633001557 |
| | | | | | | | |
| Cat | Diamond Pet Food | Natural Balance | Venison and Green Pea Dry Cat Food | All | Bag | 5 lb | 723633614060 |
| Cat | Diamond Pet Food | Natural Balance | Venison and Green Pea Dry Cat Food | All | Bag | 10 lb | 723633004176 |

5

| Dog | Diamond Pet Food | Natural Balance | Venison and Brown Rice Dry Dog Food | All | Bag | 5 lb | 72363886550 |
|---|---|---|---|---|---|---|---|
| Dog | Diamond Pet Food | Natural Balance | Venison and Brown Rice Dry Dog Food | All | Bag | 17 lb | 723633886178 |
| Dog | Diamond Pet Food | Natural Balance | Venison and Brown Rice Dry Dog Food | All | Bag | 30 lb | 72363886307 |

### b. The Two Natural Balance Products Manufactured by ANI at Issue in *Kennedy* First Used Allegedly Contaminated RPC in July 2006 and Not March 28, 2007 as Picus and Kaffer Contend

Picus and Kaffer state that "the only sales of contaminated Natural Balance products occurred between March 28, 2007 and April 17, 2007." (Opp. at 4.) This statement is true with respect to the two Natural Balance products at issue in *Kennedy* that were manufactured by Diamond (Venison and Green Pea Dry Cat Food; and Venison and Brown Rice Dry Dog Food). However, the statement is false with respect to the two Natural Balance products at issue in *Kennedy* that were manufactured by ANI (Natural Balance Venison & Brown Rice Formula Baked Dog Treats; and Natural Balance Venison Formula (aka Venison & Brown Rice Canned Dog Food)). Those two Natural Balance products were manufactured by ANI with allegedly contaminated RPC beginning in or about July 2006. (*See* Kveton Decl. ¶ 11.) According to the Kveton Declaration (at ¶ 11), this correct information is contained in Mr. Herrick's deposition testimony (portions of which are attached as Exh. 2 to the Nordrehaug Decl.) and in Natural Balances' interrogatory responses in the *Kennedy* litigation (attached as Exh. 4 to the Nordrehaug Decl.). These facts eviscerate the arguments that Picus and Kaffer make on their appeal and in their Opposition to the Motion for Appeal Bond. However, this critical information either was overlooked entirely by counsel for Picus and Kaffer, Mr. Nordrehaug, or, more troubling, was disregarded intentionally.

Thus, when Mr. Nordrehaug, declares that "Mr. Herrick testified that the Natural Balance dog food products sold prior to March 28, 2007 could not have been contaminated because Natural Balance did not even use the contaminated ingredient (rice protein) until March 28, 2007," his declaration is false. (Nordrehaug Decl. ¶ 3.) In fact, the deposition testimony of Mr. Herrick that Mr. Nordrehaug includes in his Declaration specifically refers *only* to Diamond manufactured Natural Balance product as first including RPC on March 28, 2007. The two Natural Balance products manufactured by ANI, both of which are for dogs, contained allegedly contaminated RPC beginning in or about July 2006. (Kveton Decl. ¶11) Accordingly, Natural Balance certainly did use the contaminated ingredient before March 2008.

    c. **Claims Related To Non-Contaminated Natural Balance Products Are Not Released**

Picus and Kaffer argue that "the settlement purports to release 'All' Natural Balance products sold, irrespective of date or alleged contamination." (Opp. at 4) and that "the vast majority of Natural Balance product purchases being released involve non-contaminated product" (Opp. at 5 n. 5.) Reading the Release shows that this is false too.

Of the four Natural Balance products at issue in the *Kennedy* litigation, all were recalled, even if some of those products were manufactured before the allegedly contaminated RPC was used. This was done out of an abundance of caution to protect consumers from a clerk possibly misreading a SKU number or "Best By Date" and inadvertently leaving tainted product on store shelves (Kveton Decl. ¶ 13.) In addition, with regard to Natural Balance products manufactured by ANI, Natural Balance was not and is not 100% certain of when exactly ANI began using allegedly contaminated RPC. (Kveton Decl. ¶12.) Thus, all of the four Natural Balance products

7

at issue in the *Kennedy* litigation that were recalled are included on the settlement's list of Recalled Pet Food Products without regard to a "Best Before Date."[2] (*See* Kveton Decl. ¶ 11.)

However, claims related to Natural Balance products that do not contain allegedly contaminated RPC, including Made in the USA claims asserted in the *Kennedy* litigation related to non-contaminated product, are not released. The Release in Section III.A of the Settlement Agreement specifically reads as follows:

> Upon entry of the Final Approval Order and Judgment by the MDL Court and all Canadian Courts, the Releasing Parties forever release and discharge all Released Claims against all Defendants and all Released Entities. For purposes of this Settlement Agreement, "Released Claims" are all claims, demands, actions, suits, and/or causes of action that have been brought or could have been brought, are currently pending or were pending, or are ever brought in the future, by any Settlement Class Member against any Defendant or Released Entity, in any forum in Canada or the United States (including their territories and, in the case of the United States, Puerto Rico), whether known or unknown, asserted or unasserted, under or pursuant to any statute, regulation, common law or equity, **that relate in any way, directly or indirectly, to facts, acts, events, transactions, occurrences, courses of conduct, representations, omissions, circumstances or other matters referenced in any claim raised** (including, but not limited to, any claim that was raised against any Released Entity) **in the Pet Food Recall Litigation.**

(Emphasis added.)

Claims relating to non-contaminated Recalled Pet Food – pet food that appears on the list of Recalled Pet Food but that does not contain allegedly contaminated wheat gluten or RPC – are not "Released Claims" because they do not "relate in any way, directly or indirectly, to facts,

---

[2] In the entry for Natural Balance Venison & Brown Rice Formula Baked Dog Treats on the list of Recalled Pet Food Products, a date range is listed in the column "Best Before Date." That entry is incorrect. All Natural Balance Venison & Brown Rice Formula Baked Dog Treats were recalled, without any limitation by a "Best Before Date." That product was introduced in the marketplace in October 2006, and ANI had indicated it began using allegedly contaminated RPC in our about July 2006. Thus, all batches of natural Balance Venison & Brown Rice Formula Baked Dog Treats were manufactured with allegedly contaminated RPC and all batches were recalled.

acts, events, transactions, occurrences, courses of conduct, representations, omissions, circumstances or other matters referenced in any claim raised. . . in the Pet Food Recall Litigation." All the claims in the Pet Food Recall Litigation are specifically and solely related to pet food that contained allegedly contaminated wheat gluten and/or RPC, and, furthermore, contained wheat gluten and/or RPC that contained the harmful chemicals at issue here – melamine and/or cyanuric acid. Thus, non-contaminated pet food products, whether on the list of Recalled Pet Food or not, that did not contain allegedly contaminated wheat gluten and/or RPC simply are not related to this case and any and all claims based on such products, including any such Made in the USA claims asserted in the *Kennedy* litigation, are not released.

This interpretation is supported by the explanation of the Release given at the October 14, 2008 Final Approval Hearing by liaison counsel for defendants. As liaison counsel explained at the hearing, the Release is tethered to two key anchors that exclude from the Release claims related to non-contaminated products that appear on the list of Recalled Pet Food Products. First, the Release relates only to Settlement Class Members and Recalled Pet Food Products. *See* Transcript of Final Approval Hearing dated October 14, 2008 (Tr.) at 28 ("So you have the tether in the release to settle[ment] class members which in turn keys to the recalled pet food products"). The Settlement Agreement defines Recalled Pet Food Products as:

> [A]ny pet food product and/or treat products or any ingredient thereof that were recalled by any Released Entity between March 16, 2007, and the present because of *allegedly contaminated wheat gluten and/or rice protein concentrate,* and purchased, obtained or used by, or were made available to, or intended to be purchased or obtained by Class Member in the United States or Canada, and are the subject of the Pet Food Litigation.

Settlement Agreement §I.PP (emphasis added). As a result, pet food that does not contain "allegedly contaminated wheat gluten and/or rice protein concentrate" does not meet the definition of Recalled Pet Food Products, and claims related to such products cannot be released.

Second, Released Claims must specifically relate to "facts, acts, events, transactions, occurrences, courses of conduct, representations, omissions, circumstances or other matters referred in any claim raised…in the Pet Food Recall Litigation." Settlement Agreement §III.A. This second "tether" means that claims that are not related in any way to the facts, transactions, and circumstances involved in this case, including claims not related to allegedly contaminated pet food, are not released.

In this regard, the definition of Released Claims is not tied to the list of pet food that was recalled, but is instead tied to the substance of the Pet Food Recall Litigation generally. Claims related to non-contaminated Natural Balance products that may appear on the list of recalled products are not released. To the extent that that list contains some Natural Balance product that was not contaminated, but was recalled to ensure that every ounce of possibly contaminated Natural Balance product was removed from the marketplace, it is accurate in that it lists all product that was recalled. However, the inclusion of such non-contaminated product on the list does not in any way release claims based on it that are not related in any way to the Pet Food Recall Litigation.

### C. This Court May Impose An Appeal Bond Without Considering Whether or Not the Appeal of Picus and Kaffer Has Merit

Picus and Kaffer's opposition to the imposition of an appeal bond is premised on their argument that their appeal is meritorious, which it is not. Opp. at 3 ("The Appeal Is Meritorious Because the Settling Parties Improperly Included Non-Contaminated Natural Balance Products In The Release.") However, an appeal bond is also warranted where the appellant poses a

payment risk. *See Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998) ("a district court's imposition of any sort of cost bond (whether or not including attorney's fees) can always be described as an implicit finding that the appellant's appeal lacks merit, **or at least that the appellant poses a payment risk**") (emphasis added). The Picus and Kaffer appellants pose such a payment risk, as they have offered no evidence in the way of an affidavit, declaration or otherwise, demonstrating that they have the ability to pay litigation expenses should they lose their appeal.

### D. $12,500 Is a Reasonable, Initial Bond Amount

Picus and Kaffer claim that Plaintiffs' request for this Court to impose an initial bond in the amount of $12,500 somehow "violates the law" for two reasons. Opp. at pp. 7-8. First they contend that this Court is legally prohibited from estimating Plaintiffs' copying costs using a rate of 25 cents per page, but instead is required to apply a rate of 10 cents per page *per* the Third Circuit's Local Rule 39. *Id.* Secondly, they contend that an appellate bond would somehow be illegal because Plaintiffs are able to file their briefs electronically. Opp. at p. 7. These arguments are without merit.

#### 1. 25 Cents Per Page Is A Permissible Rate for Plaintiffs' Copying Costs

Picus and Kaffer cite no case law to support their contention that this Court must use a copying rate of 10 cents per page to estimate Plaintiffs copying costs when computing the amount of an Appeal Bond, and not a rate of 25 cents per page. Instead, they presume that Local Appellate Rule 39's 10 cents per page limit for copying costs applies to Rule 7 bonds.

However, the plain language of Local Rule 39 does not proscribe limitations to a district court's authority to impose a bond under Rule 7, but instead explicitly applies to the amount an appellate court, not a district court, may tax after an appeal. In fact, the Third Circuit has chosen not to similarly qualify or otherwise alter the broad language contained in Rule 7 with a local

appellate rule, much less a 10 cent per page copying rate limitation.[3] Thus, the plain language of Local Rule 39 does not support Picus and Kaffer's argument.

Moreover, courts in the Third Circuit acknowledge that Local Appellate Rule 39 does not bind actions of district courts. For instance, Judge Schiller explicitly rejected the notion that Local Appellate Rule 39 required him to assess a copying rate of 10 cents per page, and specifically allowed a copying rate of 25 cents per page:

> First, the Government suggests that duplicating costs should be billed at $.10 per page, rather than $.25 per page, pursuant to Rule 39.3(c)(2) of the Third Circuit Local Appellate Rules. ***This case is not governed, however, by the Third Circuit Local Appellate Rules. I find that charging $.25 per page for photocopying costs is reasonable.***

*James v. Norton*, 176 F. Supp. 2d 385, 400 (E.D. Pa. 2001) (emphasis added).

The Third Circuit addressed Judge Schiller's decision and confirmed that the Third Circuit's Local Rule 39 applied only to the Third Circuit and not to district courts in their decision to impose a bond under Rule 7. *Interfaith Cmty. Org. v. Honeywell Int'l.*, 426 F.3d 694, 717 n.20 (3d Cir. 2005).[4]

---

[3] Federal Rule of Appellate Procedure 7 provides, in pertinent part: "In a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal."

[4] The Third Circuit ultimately remanded for the district court to create a more clear record to substantiate the award of $150,000 in copying costs. *Interfaith*, 426 F.3d at 717. In contrast, and as is explained below, the affidavit of Stuart A. Davidson in support of Plaintiffs' motion provides a sufficient basis for this Court to assess a $12,500 Rule 7 bond against Picus and Kaffer. *Accord In re Ins. Brokerage Antitrust Litig.*, 2007 WL 1963063, at *3 ("Iaad O does not offer any case law in support of its argument that Plaintiffs be required to make some sort of delineated showing of costs for a bond motion. Plaintiffs contend that it is not possible to anticipate all of the potential costs of a multi-party appeal, and so $25,000 is a reasonable amount. . . . Accordingly, this Court concludes that a $25,000 bond is reasonable, and Iaad O and the objectors appealing the Zurich Settlement will be jointly and severally responsible for posting the bond.").

In sum, Picus and Kaffer's contention that the Third Circuit's Local Rule 39 in some way requires this Court to use a copying rate of 10 cents per page when calculating the amount of an appellate bond under Rule 7 is neither founded in the plain language of the rules or in pertinent case law. 25 cents per page is a judicially-accepted photocopying rate. *See James*, 176 F. Supp. 2d at 400; *Churchill v. Star Enters.*, No. CIV. A. 97-3527, 1998 WL 254080, at *10 (E.D. Pa. April 17, 1998) ("The defendants next contest costs which they claim are too vaguely described to ascertain whether or not they were expended in pursuit of the FMLA claim. These costs include . . . photocopying costs of $375 (1500 pages at .25 per page). . . The amounts requested appear very reasonable. They will be allowed."); *Saldana-Neily v. Taco Bell of Am., Inc.*, No. C04-04571 MJJ, 2008 WL 793872, at *11 (N.D. Cal. Mar. 24, 2008) (rejecting defendants' contention that 25 cents per page is an excessive charge for photocopies, and finding specifically that it was "reasonable"); *Gorelangton v. City of Reno*, 638 F. Supp. 1426, 1434 (D. Nev. 1986) (allowing reimbursement of 25 cents per copy because that was normal rate charged by area law firms when billing their fee paying clients).

In fact, 25 cents per page is the rate the State of New Jersey Government Records Counsel requires New Jersey public agencies to charge the public for copies.[5] Thus, this Court can and should estimate Plaintiffs' costs at 25 cents per page, the amount Plaintiffs will actually pay.

---

[5] *See* http://www.nj.gov/grc/public/complaints/fees.html, accessed January 26, 2009 ("Unless the agency sets a lower fee, or there is a state law or rule setting a different fee, paper copies of records cost $.75 a page for the first 10 pages; $.50 cents per copy for the next 10, and **$.25 per copy over 20 pages**. Requests that require extraordinary effort to fulfill may be subject to an additional charge that covers the public agency's costs of fulfilling the request." (Emphasis added.)

### 2. Plaintiffs Will Incur Appellate Litigation Expenses Despite Electronic Filing

Picus and Kaffer claim that the Rule 7 bond Plaintiffs seek is also illegal because "the Third Circuit Court of Appeals requires briefs to be filed electronically, which means there is no copying cost for briefs." Opp. at p. 2. They are wrong.

The Third Circuit's Local Rule 25.1(a) provides as follows:

> Except for original petitions such as a petition for writ of mandamus or petition for review of an agency order, counsel must file all documents electronically in accordance with the procedures of L.A.R. Misc. 113. In addition to electronically filing on cm/ecf, ten paper copies of briefs and four paper copies of the appendices must be filed with the clerk for the convenience of the court. No paper copies of motions or petitions for rehearing need be filed unless directed by the clerk.

Thus, the plain language of the local rule clearly demonstrates the need for Plaintiffs to generate ten (10) paper copies of briefs and four (4) paper copies of the appendices. In addition, there are 182 people on the district court service list who have not filed electronic notices of appearance in the Third Circuit and to whom Plaintiffs will need to send paper copies of the briefs. Furthermore, Plaintiffs reasonably anticipate that the same amount, if not more of, the class members and Co-Lead Counsel's clients who have consistently inquired about the status of the case during the litigation will also request paper copies of Plaintiffs' appellate briefs. Therefore, since the page length of the briefs will be approximately 90 pages, from cover to cover, and since there will be a voluminous appendix, $25,000 is a reasonable, initial estimate of Plaintiffs' costs. Plaintiffs will easily have to generate 100,000 pages of paper, at a cost of $.25 per page, to deal with the objectors' meritless appeals.

More importantly, as Plaintiffs may also seek a bond to cover additional costs. [C]ourts also have discretion to increase the bond amount, since class action settlement appellate litigation expenses readily exceed $25,000. *See, e.g., In re Ins. Brokerage Antitrust Litig.*, 2007 WL

14

1963063, at *3 ("In addition to the printing and administrative costs associated with an appeal . . . it is possible that the Plaintiffs will face different issues from different appellants, which may increase the expenses."); *In re Diet Drugs*, MDL Docket No. 1203, 2001 WL 34133966, at *1 (E.D. Pa. Apr. 06, 2001) ("The Brown Class Representatives' Motion to Increase Appellate Bond (Doc. # 202389) is GRANTED. The Bond is increased from $25,000 to $68,000, for which all objectors with appeals pending shall be jointly and severally responsible. As $25,000.00 has already been posted, those objectors shall post an additional $43,000.").

Conveniently, like the other legal maxims described above, Picus and Kaffer not only ignore the fact that $25,000 is a routine bond amount in cases like this, but also the fact that Plaintiffs can seek an increased bond as need be.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully ask this Court to grant their motion for an appeal bond with respect to Picus and Kaffer.

DATED: January 26, 2009         Respectfully submitted,

**TRUJILLO RODRIGUEZ & RICHARDS, LLC**

By: /s Lisa J. Rodriguez
Lisa J. Rodriguez
258 Kings Highway, East
Haddonfield, New Jersey 08033
Telephone: (856) 795-9002
Facsimile: (856) 795-9887

*Liaison Counsel for Plaintiffs*

Kenneth A. Wexler
Mark J. Tamblyn
**WEXLER WALLACE LLP**
55 West Monroe Street, Suite 3300
Chicago, Illinois 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

15

Sherrie R. Savett
Russell D. Paul
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4636

William M. Audet
**AUDET & PARTNERS LLP**
221 Main Street, Suite 1460
San Francisco, California
Telephone: (415) 568-2555
Facsimile: (415) 568-2556

Scott A. Kamber
Jay Edelson
**KAMBEREDELSON, LLC**
11 Broadway, 22nd Floor
New York, New York 10004
Telephone: (212) 920-3072
Facsimile: (212) 202-6364

Stuart A. Davidson
**COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP**
120 E. Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
Telephone: (561) 750-3000
Facsimile: (561) 750-3364

Steve W. Berman
Jeniphr Breckenridge
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Fifth Avenue, Suite 2900
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

*Co-Lead Counsel for Plaintiffs and the Settlement Class*



## Natural Balance List of Recalled Pet Food Products

| Pet | Manufacturer | Brand | Product Description | Best Before Date | Packaging 14 oz. | Size | Product Code |
|---|---|---|---|---|---|---|---|
| Cat | American Nutrition | Natural Balance | Natural Balance Ocean Fish Formula | Aug. 21 09-Apr. 15 09 | Can | 3 oz | 732633002530 |
| Cat | American Nutrition | Natural Balance | Natural Balance Ocean Fish Formula | Aug. 21 09-Apr. 15 09 | Can | 6 oz | 732633003537 |
| Dog | American Nutrition | Natural Balance | Natural Balance Venison & Brown Rice Formula Baked Dog Treats first sold Oct 06 contaminated RPC beginning July 06 | Aug. 21 07-Apr. 15 08 | Bag | 14 oz | |
| Dog | American Nutrition | Natural Balance | Dick Van Patten's Natural Balance Ultra Premium Beef | All | Can | 13 oz | 723633001526 |
| Dog | American Nutrition | Natural Balance | Dick Van Patten's Natural Balance Ultra Premium Chicken | All | Can | 13 oz | 723633001533 |
| Dog | American Nutrition | Natural Balance | Dick Van Patten's Natural Balance Ultra Premium Lamb | All | Can | 13 oz | 723633001519 |
| Dog | American Nutrition | Natural Balance | Natural Balance Venison Formula (aka Venison & Brown Rice Canned Dog Food) first sold Oct 05 contaminated RPC beginning July 06 | All | Can | 13 oz | 723633001557 |
| Cat | Diamond Pet Food | Natural Balance | Venison and Green Pea Dry Cat Food | All | Bag | 5 lb | 723633614060 |
| Cat | Diamond Pet Food | Natural Balance | Venison and Green Pea Dry Cat Food first sold Oct 05 contaminated beginning RPC 3/28/07 | All | Bag | 10 lb | 723633004176 |
| Dog | Diamond Pet Food | Natural Balance | Venison and Brown Rice Dog Treat | 08/21/07-04/15/08 | Bag | 14 oz | 723633614009 |
| Dog | Diamond Pet Food | Natural Balance | Venison and Brown Rice Canned | 08/21/09-04/15/10 | Can | 13 oz | all |

| | | | | | | |
|---|---|---|---|---|---|---|
| Dog | Diamond Pet Food | Natural Balance | Venison and Brown Rice Dry Dog Food | All | Bag | 5 lb | 72363886550 |
| Dog | Diamond Pet Food | Natural Balance | Venison and Brown Rice Dry Dog Food | All | Bag | 17 lb | 72363886178 |
| Dog | Diamond Pet Food | Natural Balance | Venison and Brown Rice Dry Dog Food | All | Bag | 30 lb | 72363886307 |
| | | | first sold Oct 05 contaminated RPC beginning 3/28/07 | | | | |
| malta4 | yellow highlight indicates NB product that is the subject of the *Kennedy* lawsuit | | | | | | |