UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
---------------------------------------------X
IN RE PET FOOD PRODUCTS
LIABILITY LITIGATION
---------------------------------------------X

COURT COPY
[ORIGINAL]

MDL docket no. 1850
Case No.:  07-2867 (NLH)

The Hon. Noel L. Hillman

**NOTICE OF CROSS MOTION**

STATE OF NEW YORK)
COUNTY OF NASSAU )        ss.

SIRS:

PLEASE TAKE NOTICE that upon the annexed affirmation of NORA

CONSTANCE MARINO, attorney for plaintiff Lois Slembecker, affirmed March 23,

2008, together with the affidavit of Lois Slembecker and all the exhibits annexed hereto,

the plaintiff will move this Court on the 23rd day of March, 2009, or as soon thereafter as

counsel can be heard, at the United States District Court for the District of New Jersey ,

before the Honorable Noel L. Hillman, for an order compelling the settlement claims

administrator for defendants Menu Foods, Inc. and The Iams Company to include Lois

Slembecker in the distribution of the class settlement fund and deem her claim filed

timely *nunc pro tunc* and to direct the settlement claims administrator to award her

$58,500.00 of the settlement fund due to the circumstances of her situation which were

not adequately represented in the class, and for such other relief as may be just under the

circumstances.

Dated:        Nassau County, New York
              March 23, 2009

Dockets.Justia.com

Yours, etc.,

NORA CONSTANCE MARINO, ESQ.
Attorney for Plaintiff Lois Slembecker
175 East Shore Road
Great Neck, NY 11023
516.829.8399
My File No.: 1302

TO:    Mary E. Gately, Esq.
Cristen Sikes Rose, Esq.
DLA PIPER U.S. LLP
Attorney for Defendants Menu Foods, Inc.
500 8th Street, N.W.
Washington, DC 20004

D. Jeffrey Ireland, Esq.
Laura A. Sanom, Esq.
Brian D. Wright, Esq.
FARUKI IRELAND & COX, PLL
Attorney for Defendants The Iams Company
500 Courthouse Plaza, S.W.
10 Ludlow Street
Dayton, OH 45402

William T. Anastasio, Esq.
Attorney for Plaintiff Cynthia Dotoli
141 Butler Parkway
Summit, NJ 07901

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
-------------------------------------------------X
IN RE PET FOOD PRODUCTS
LIABILITY LITIGATION
-------------------------------------------------X

MDL docket no. 1850
Case No.: 07-2867 (NLH)

The Hon. Noel L. Hillman

## ATTORNEY AFFIRMATION AND PLAINTIFF AFFIDAVIT:

### IN OPPOSITION TO DEFENDANTS'
### MENU FOODS CORPORATION AND THE
### IAMS COMPANY'S ORDER TO SHOW CAUSE WHY
### COUNSEL AND HER CLIENT LOIS SLEMBECKER
### SHOULD NOT BE HELD IN CONTEMPT,
### FOR ATTORNEYS' FEE, AND TO ENJOIN PLAINTIFF
### FROM PURSUING PENDING LITIGATION,

### AND

### IN SUPPORT OF CROSS-MOTION TO COMPEL DEFENDANTS
### MENU FOODS AND THE IAMS COMPANY TO INCLUDE LOIS
### SLEMBECKER IN THE DISTRIBUTION OF THE CLASS
### SETTLEMENT FUND AND DEEM HER CLAIM FILED TIMELY NUNC PRO
### TUNC AND TO GIVE HER $58,500.00 OF THE SETTLEMENT FUND DUE TO
### THE CIRCUMSTANCES OF HER SITUATION WHICH WERE NOT
### ADEQUATELY REPRESENTED IN THE CLASS

NORA CONSTANCE MARINO, an attorney duly admitted to practice in
the Federal Courts of the State of New York, hereby affirms under penalty of perjury:

1.      I am the attorney for the plaintiff Lois Slembecker (hereinafter, "plaintiff"
or "Slembecker") herein, and as such, am fully familiar with all of the pleadings and
proceedings heretofore had herein.

2.      This affirmation is submitted in opposition to defendants MENU FOODS
CORPORATION AND THE IAMS COMPANY'S (hereinafter, "Menu", "Iams, or
"defendants") order to show cause requesting this Court to enjoin Lois Slembecker from
pursuing her pending litigation against defendants and also to hold Lois Slembecker and

her attorney (the undersigned, your affiant) in contempt for refusing to discontinue plaintiff's case.

3.　　　　This affirmation is also submitted in support of plaintiff Lois Slembecker's cross-motion to compel defendants Menu Foods and The Iams Company to include Lois Slembecker in the distribution of the class settlement fund and deem her claim timely filed *nunc pro tunc*, and to direct the settlement claims administrator to award her $58,500.00 of the settlement fund due to the unusual circumstances of her situation, which were not adequately represented by the class.

4.　　　　Plaintiff initiated an action against defendants Menu and Iams on or about November 23, 2008. [See Exhibit A of defendant's motion.] Within a week or so, Cristen Sikes Rose of DLA Piper, LLP, contacted me and informed me of a class action suit that was previously settled by way of order dated November 17, 2008.

5.　　　　Upon learning about the class action and subsequent order of settlement, I immediately researched the settlement further, and found the claim form online that needed to be completed by class members and received by the claims administrator by November 24, 2008 for consideration. I spoke to someone at the class administrator's office, who told me to get the form in as soon as possible. I also spoke with Sherrie Savett. Esq., one of the lead plaintiff's counsel for the class, who told me the same thing.

6.　　　　On Friday, December 5, I faxed the claim form to my client, which she returned to me on Wednesday, December 10. That same day I submitted the form to the Claims Administrator for the settlement via two fax numbers, and also sent a copy to Sherrie Savett, Esq. [See Exhibit 1 annexed hereto, copy of claim form and three fax confirmation pages.]

7.     The claim form was submitted just fifteen days after the court-ordered deadline. The form was submitted without relinquishing any rights but merely to protect my client's rights.

8.     Ms. Rose emailed me a copy of several litigation documents regarding In Re Pet Food Products Liability Litigation. Contained within was a provision for notice to potential class members, which required that class member be notified via U.S. mail if possible, and if not, to be notified via certain publications.

9.     Ms. Rose asked that I voluntarily discontinue my action. After engaging in brief preliminary research which included the United States Constitution and the Due Process Clause of the Fourteenth Amendment, I decided to let my action stand. Defendants then moved in the Southern District of New York to dismiss my case. Following that, defendants also moved in this court via the subject order to show cause requesting the severe relief that your affiant and her client be held in contempt, and also for attorneys' fees.

10.    The basis of defendant's argument is that Slembecker and another plaintiff, Cynthia Dotoli, "are settlement class members who have not opted out of the settlement agreement" and "the claims in [plaintiff's] action are 'released claims'" pursuant to Your Honor's order.

11.    While your affiant respectfully understands that Your Honor was following the guidelines as set forth in FRCP 23, which governs class actions, it is respectfully submitted that those guidelines warrant further scrutiny, evaluation, and interpretation, and possibly even revamping. I am not the first person to make this observation, as is set forth in my memorandum of law. As is shown, numerous scholars,

law professors, lawyers, and judges have commented on the constitutional concerns, issues, and downfalls regarding adequate representation, notice, and personal jurisdiction, *inter alia*, when it comes to class actions.

## FACT OF LOIS SLEMBECKER'S LOSS:
### [Note: these facts are taken directly from plaintiff's affidavit, annexed hereto.]

12. Lois Slembecker purchased a purebred Scottish Terrier named C.H. Stonehedge Gallaway Gibbie (referred to as "Gally") in 1999 when she was approximately one year old for $2,500. Gally's grandfather was a famous Scottish Terrier imported from England for breeding purposes in the United States for a cost of over $10,000. The reason Gally's grandfather was so valuable was because he had won Crufts, the premier dog show in England.

13. Gally was licensed to plaintiff as her owner but Tom Natalini, from whom plaintiff purchased Gally, and also owner of Stonehedge Kennels and an American Kennel Club judge and expert on Scottish Terriers, was to be responsible for Gally's breeding.

14. Plaintiff trained Gally to participate in dog shows around the Untied States and she became a champion.

15. In order for a show dog to have "champion" status, she must earn a total of fifteen points including three major wins at dog shows. Gally accomplished this within two months, which is unusual and quite spectacular. At her second show, she took "Best of Breed" over existing prior champions.

16. In addition to Gally's champion show dog status, Gally lived with plaintiff and was a companion and friend to her; plaintiff loved her very much.

17. Plaintiff had every intention on breeding Gally with the assistance of Tom Natalini. Because of Gally's exquisite breeding and show record, there was a waiting list for her puppies which would have sold for a minimum of $2,500 each.

6

18. An average litter for a Scottish Terrier is four to six puppies. Plaintiff and Tom Natalini planned on breeding Gally twice, which would have yielded eight to twelve puppies.

19. Plaintiff always fed Gally Iams canned food for adult dogs.

20. On a Sunday in or about February of 2007, Gally exhibited symptoms including lethargy, not eating, vomiting, and excessive drinking of water. Plaintiff rushed Gally to Center for Veterinary Care in New York City, her regular vet. Because it was a Sunday night, plaintiff had to pay additional fees for emergency care.

21. Gally was diagnosed with a respiratory infection and was sent home with plaintiff with some antibiotics.

22. Gally did not eat for approximately two days. The following Tuesday, she appeared to be a little better, and ate Iams food that night.

23. By Wednesday night, Gally exhibited the same ill symptoms again. Plaintiff brought her back to her vet the following day. They did blood tests and were not sure what the diagnoses was and sent Gally home. They told plaintiff they would call when the blood test results were in.

24. The following Saturday, one of doctors called plaintiff and told her to get Gally to them immediately, that her blood levels were "off the charts". Plaintiff took her back to the Center for Veterinary Care, but the weekend staff really did not know what to do and her regular doctor was out of town. On Sunday, plaintiff then took Gally to Fifth Avenue Veterinary Specialists, which is a state of the art 24-hour emergency hospital.

25. Fifth Avenue immediately admitted her and began tests. They told plaintiff that Gally had the beginnings of kidney malfunction but at that time they thought it was treatable and asked plaintiff to leave Gally with them, which plaintiff did.

26. Gally's appetite was very poor, and as such, plaintiff went to see her twice a day with her food, which plaintiff did not know was poisonous at the time. Plaintiff tried to feed Gally out of her hands, and Gally ate a little, which obviously made her

7

much worse. This haunts plaintiff until this day, knowing that she was feeding Gally the poison that was making her sick and eventually killed her.

27.    There were eight doctors working on Gally's case. They were conferring with other veterinary specialists throughout the country trying to save her. Nobody knew what could be causing her illness, which was rapidly spreading throughout every organ of her body. On Thursday night of that week, Gally died. The cause of death was listed as "unknown toxin poisoning." She was six years old.

28.    Plaintiff spent approximately $20,000 on veterinary bills trying to save Gally's life. In addition, her puppies would have been valued between $20,000 and $30,000 and it cost plaintiff $6,000 to show her. This is in addition to the $2,500 plaintiff originally paid for her and the cost of care for her for the six years of her life.

29.    Of course, no one can put a price on what plaintiff's dog meant to her emotionally. Plaintiff thinks about her every day and continues to cry about her often.

30.    Plaintiff retained my legal services in or about August of 2007. At that time, plaintiff was in a high stress level job working for then-Governor Elliot Spitzer as his accounting manager. Further, her sister was diagnosed with cancer and she passed away in approximately November of 2007.

31.    Plaintiff left her job with the Governor and then moved to Maryland. She had many stressful things going on in her life and although she wanted to pursue litigation on behalf of Gally, she could not deal with it at the time.

32.    Plaintiff was never notified that there was a class action lawsuit for which she would have had to "opt out" of in order to maintain her own lawsuit.

33.    Plaintiff never affirmatively joined any class action suit, nor would she have wanted to, as her case was different and neither she nor I feels that she would have been adequately represented by the class.

34.     Plaintiff never received any notice that if she did not "opt out" of a class, that she would be barred from maintaining her own law suit. In fact, it never occurred to her, being a United States Citizen, that she would be deprived of my day in court.

35.     Your affiant filed an action in the Southern District of New York in or around November of 2008. This was well within the statute of limitations.

36.     Shortly thereafter, Cristen Sikes Rose, Esq. contacted me and informed m about the class settlement. I then spoke with Sherrie Savett, Esq., lead counsel for plaintiffs in that class action suit, who advised me to immediately file a claim form with the claims administrator. Only several days had passed since the November 24, 2008 deadline.

37.     Your affiant then obtained the form from the internet and faxed it to plaintiff on Friday, December 5, 2008. On Wednesday, December 10, 2008, I received the completed form back, and immediately faxed it to the claims administrator on that date, only two weeks passed the November 24 deadline.

38.     Plaintiff was subsequently informed by me that there is an order to show cause to hold my plaintiff and myself in contempt for filing our suit in the Southern District.

39.     Plaintiff has always had faith in this country and the rights it affords its citizens. Plaintiff is outraged that the defendants here knew that their food contained deadly toxins in or around November of 2006, and yet allowed the food to remain on the market for months. Plaintiff is further outraged that the defendants here killed over 6,000 dogs and cats, hers being one of them, and they are now suing plaintiff for contempt. Plaintiff feels both her rights and due process are being compromised and ignored.

40.     Plaintiff [and your affiant] prays to this Court to deny defendants' motion to hold she and I in contempt and to pay defendants' attorneys' fees. Plaintiff [and your affiant] further prays to this Court to deny defendants' motion to enjoin us from pursuing our case in the Southern District.

41. In the alternative, plaintiff [and your affiant] prays to this Court to grant our cross motion, and deem plaintiff's settlement fund claim form as received timely by the claims administrator, and direct the claims administrator to award plaintiff $58,500 out of the settlement funds.

42. To further punish plaintiff for simply trying to exert a constitutional right regarding a law that has been fraught with controversy and skepticism to begin with, by imposing any type of sanctions or costs, flies in the face of the very fabric of what the United States Constitution represents.

43. Plaintiff Lois Slembecker further joins in and concurs with the arguments set forth in the affirmation and memorandum of William Anastasio, Esq., attorney for plaintiff Cynthia Dotoli.

WHEREFORE, plaintiff Lois Slembecker and her attorney request an order denying defendants' Menu Foods Corporation and The Iams Company's order to show cause why counsel and her client Lois Slembecker should not be held in contempt, for attorneys' fee, and to enjoin plaintiff from pursuing pending litigation, or, in the alternative, granting plaintiff's cross-motion to compel the claims administrator for defendants Menu Foods and the Iams Company to include Lois Slembecker in the distribution of the class settlement fund and deem her claim filed timely *nunc pro tunc* and to direct the settlement claims administrator to award her $58,500.00 of the settlement fund due to the circumstances of her situation which were not adequately represented by the class.

Dated: March 23, 2009

_____
Nora Constance Marino
Attorney for Plaintiff Lois Slembecker

10

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

-------------------------------------------X

IN RE PET FOOD PRODUCTS
LIABILITY LITIGATION

-------------------------------------------X

MDL docket no. 1850
Case No.: 07-2867 (NLH)

The Hon. Noel L. Hillman

## MEMORANDUM:

### IN OPPOSITION TO DEFENDANTS'
### MENU FOODS CORPORATION AND THE IAMS COMPANY'S
### ORDER TO SHOW CAUSE WHY COUNSEL AND HER CLIENT
### LOIS SLEMBECKER SHOULD NOT BE HELD IN CONTEMPT, FOR
### ATTORNEYS' FEE, AND TO ENJOIN PLAINTIFF FROM PURSUING PENDING
### LITIGATION,

### AND

### IN SUPPORT OF CROSS-MOTION TO COMPEL DEFENDANTS
### MENU FOODS AND THE IAMS COMPANY TO INCLUDE LOIS
### SLEMBECKER IN THE DISTRIBUTION OF THE CLASS
### SETTLEMENT FUND AND DEEM HER CLAIM FILED TIMELY NUNC PRO
### TUNC AND TO GIVE HER $58,500.00 OF THE SETTLEMENT FUND DUE TO
### THE CIRCUMSTANCES OF HER SITUATION WHICH WERE NOT
### ADEQUATELY REPRESENTED IN THE CLASS

1.    Throughout this country's history, of the three branches of government, it has been the judiciary that has consistently reinvented and reinterpreted the law. It has been the judiciary that has bravely tackled issues and changed existing laws by way of judicial decisions to interpret the constitution in a way that does it justice and in validating the founding father's vision and intention. Just because things have always been a certain way does not mean that that particular way is constitutional or that it should continue. Had that been the case, we would still have racial segregation, or women would still not have the right to vote or obtain equal pay. It has been the mechanism of a lawsuit that has been the initiating factor to reach this country's goal of

due process for all Americans. I ask this Honorable Court to consider that when deliberating on its decision herein.

    2.    It is respectfully submitted that class action litigation which results in the random casting out of would-be litigants when their only failure was not being a reader of a particular periodical on a particular day is unconstitutional and violates The Due Process Clause of the Fourteenth Amendment. The Due Process Clause of the U.S. Constitution prevents government from taking away certain rights without notice and an opportunity to be heard. Class actions present unique personal jurisdiction concerns. My client Lois Slembecker has been deprived of certain rights and was not given notice or an opportunity to be heard based on the notice that was deemed acceptable in this Pet Food Litigation. She should not be further deprived of her due process rights.

    3.    Class actions present concerns under the Due Process clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution. These clauses prevent government from depriving a person of property without due process of law [Emanuel Law Outlines, Civil Procedure, Sixth Edition, p. 300.]

    4.    A plaintiff's right to recover money or specific relief against another person qualifies as property for purposes of due process [Emanuel Law Outlines, Civil Procedure, Sixth Edition, p. 300.]

    5.    The constitutional requirement of due process of law has several different facets. With regards to class actions, there are two important parts of the due process requirement. One, the process requires the government to provide the person in possession of the property with notice and an opportunity to be heard by a tribunal. Two,

due process also forms the constitutional basis for the requirement of personal jurisdiction.

6.    As such, it is well established that class actions present constitutional concerns. FRCP 23 is designed to deal with these constitutional concerns and places a number of strict controls on class actions. Rule 23 has been amended many times since it was first enacted. [Emanuel Law Outlines, Civil Procedure, Sixth Edition, p. 299.] It is respectfully submitted, Rule 23 is inadequate to comply with the constitution and the Fourteenth Amendment. The controls it imposes are insufficient and do not overcome the constitutional tribulations caused by class action litigation.

## NOTICE AND PERSONAL JURISDICTION

7.    Rule 23, as it applies to notice for a class such as this, reads as follows: B) *For (b)(3) Classes.* For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

8.    Is this adequate? How can one define "the best notice that is practicable under the circumstances"? What if there is no such thing, as, it is respectfully submitted,

was the case herein?  Is it reasonable to assume that by publishing a complicated legal notice in a periodical will, number one, reach all those it is intended to reach, and number two, will those it reaches even understand it?  Most people, even if they come across such notice, will just flip the page.  Notice by publication is not a reasonable way to notify potential class members.

9.     The United States Supreme Court discussed this in <u>Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, U.S. 1950</u>: "But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, compare <u>Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091</u>, with **658 <u>Wuchter v. Pizzutti, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446, 57 A.L.R. 1230</u>, or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes."

10.    Can publication of notice in random periodicals on random days seriously be considered as "reasonably certain to inform those affected"?  On the contrary, it is most <u>uncertain and random</u>.  There are absolutely no guarantees that anyone affected will be informed by this method.

11.    The Court in <u>Mullane</u> continues, "It would be idle to pretend that publication alone as prescribed here, is a reliable means of acquainting interested parties of the fact that their rights are before the courts. It is not an accident that the greater

14. "The two leading Supreme Court cases on notice, *Mullane* and *Eisen,* both prescribed first-class mail to identifiable individuals together with publication. *Eisen,* 417 U.S. at 176, 94 S.Ct. at 2151; *Mullane,* 339 U.S. at 318, 70 S.Ct. at 659. While the Supreme Court may not have intended this particular procedure to be taken as a hard and fast rule, it has nevertheless become common practice to send notice by first-class mail and publication. Our Court favors 'maximum notice' in class action contexts, but the cases establishing that policy themselves required only first-class mail and publication. *See Girsh v. Jepson,* 521 F.2d 153 (3d Cir.1975); *Greenfield v. Village Industries, Inc.,* 483 F.2d 824 (3d Cir.1973)." Zimmer Paper Products, Inc. v. Berger & Montague, P.C. *758 F.2d 86, C.A.3 (Pa.),1985.*

15. In Phillips Petroleum v. Shutts, *472 US 797 (1985),* the trial court certified a class consisting of 33,000 members. Respondents provided each class member with a notice by first-class mail describing the action and informing each member that he could appear in person or by counsel, that otherwise he would be represented by respondents, and that class members would be included in the class and bound by the judgment unless they "opted out" of the action by returning a "request for exclusion."

16. The trial court asserted personal jurisdiction over the absent plaintiff class members and their claims. The Due Process Clause requires notice, an opportunity to appear in person or by counsel, an opportunity to "opt out," and adequate representation. It does not require that absent class members affirmatively "opt in" to the class, rather than be deemed members of the class if they did not "opt out." The procedure followed by the trial court, where a fully descriptive notice is sent by first-class mail to each class member, with an explanation of the right to "opt out," was deemed to satisfy due process.

17. However, this is not what happened herein, regarding what could be thousands if not millions of additional unknown claims and potential class members. There was merely an ad put in various periodicals that were not read by plaintiff. While Shutts is the governing law to satisfy notice in a class action, the notice that was given in the subject class action litigation does not reach the level of personal notification that was reached in Shutts.

18. Concerns regarding the constitutionality of acceptable notice as set forth in Rule 23 were addressed in In re: Ann M. Veneman, Secretary of Agriculture, Petitioner, *No. 02-5021, United States Court of Appeals, District of Columbia Circuit, Argued September 6, 2002, 309 F.3d 789*: "the constitutional concerns raised in *Shutts* and *Ticor* may also implicate the concerns underlying Rule 23. The drafters of the 1966 amendments, which gave rise to the rule as we know it today, were concerned with the binding effect of class actions and the due process protections required for parties to be bound. FED. R. CIV. P. 23 advisory committee notes (noting the need to 'assure procedural fairness, particularly giving notice to members of the class, which may in turn be related in some instances to the extension of the judgment to the class'). They drafted the rule to clarify that 'all class actions maintained to the end as such will result in judgments including those whom the court finds to be members of the class, whether or not the judgment is favorable to the class.' *Id.* "

19. Does service by publication violate the Fourteenth Amendment? Under the Fourteen the Amendment, no state shall deprive any person of life, liberty, or property without "due process of law", which requires that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to

the nature of the case. *U.S.C.A. Const. Amend. 14.* Personal service of written notice within the jurisdiction is adequate notice in any type of proceeding under the requirement of due process of law. *U.S.C.A. Const. Amend. 14.* A fundamental requirement of due process of law in any proceeding which is to be accorded finality is notice reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action. The Fourteenth Amendment does not allow for notice by publication.

20.     In a case such as this, can notice be reasonably calculated to apprise all interested parties of the pendency of the action? Is it even possible? Perhaps in a case such as this, where potential class members are consumers who purchased a product from what could be any store and can reside anywhere in the nation, or even the world, without leaving any record of such purchase that can be reasonably discovered, it is impossible for those conditions set forth above to be met. Perhaps class notification in a case such as this is simply not practicable. Is notice by publication constitutional? Your affiant respectfully submits, it is not. Certain random periodicals were chosen and deemed to been adequate notice. But were they? Isn't the mere fact that neither Lois Slembecker nor Cynthia Dotoli knew about the action evidence in and of itself that the notice by publication was insufficient?

21.     Exceptions in the name of necessity do not abrogate the rule that, within limits of practicability, notice must be such as is reasonably calculated to reach interested parties to afford them due process of law. Notice reasonably certain to reach those beneficiaries most interested in objecting is required to satisfy the requirement of due process of law. *U.S.C.A. Const. Amend. 14.*

22. It is respectfully submitted that notice in the instant matter did not reach all interested parties. It did not reach Lois Slembecker or Cynthia Dotoli. That is a fact.

23. The Fourteenth Amendment provides: All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

24. This is entirely at odds with holding Lois Slembecker to a ruling from a court proceeding with which she had nothing to do, and even more so, did not even have knowledge of. How can this be permitted in light of the Fourteenth Amendment?

25. See also, *University Of Illinois Law Review Vol. 2003, By Nancy J. Moore, also Published In Boston University School Of Law, Working Paper Series, Public Law & Legal Theory Working Paper, No. 02-08:* "For a summary of the general requirements of Rule 23, as completely revised in 1966, see Charles A. Wright, *Class Actions*, 47 F.R.D. 169 (1970). Class action law also includes constitutional concerns; for example, due process requirements for binding absent members of the class. *See, e.g.,* Ortiz v. Fibreboard Corp., *527 U.S. 815, 846-47 (1999)* (stating that mandatory class actions implicate the due process principle that a person is not bound by a judgment *in personam* in litigation in which he is not designated as a party or to which he has not been made a party by service of process and that there is an applicable exception for class actions that depends on adequate representation by someone with same interests who is not a party); *see also* Koniak, *supra* note 2, at 1086–1126 (discussing Supreme Court's

due process jurisprudence as applied to district court opinion in class action involving attempted settlement of class composed of persons who had not yet suffered injury from asbestos exposure).

## ADEQUATE REPRESENTATION

26.     Lois Slembecker's rights were not adequately represented by the class. Gallaway was a show dog worth thousands of dollars. Her offspring would also have been worth thousands of dollars. In a desperate attempt to keep her dog alive, Slembecker spent approximately $20,000 on veterinary bills. This is not typical of the other class members, who, upon information and belief, lost just several hundred dollars each on veterinary bills, and thus, Slembecker's rights were not adequately represented by the class.

27.     In Hansberry v. Lee, *311 US 32 (1940)*, the United States Supreme Court held that defendants' right to due process would be violated if they were bound by a suit in which their interests were not really represented. If the interests of the members were not adequately represented, then it violated due process for the court to issue a judgment adjudicating their rights or obligations.

28.     In essence, a proper class action involves a situation where the interests of the representative and the class members are so closely aligned that the representative, by looking out for his own best interests, automatically also looks out for interests of the class members.

29.     See *The Rule of Law Problem: Unconstitutional Class Actions and Options for Reform, Journal article by Mark Moller; Harvard Journal of Law & Public*

*Policy, Vol. 28, 2005*:  "It is well known that rights are often ignored or changed when litigants assert claims on behalf of a class."

30.     Moller continues, "When claims are aggregated, courts are often tempted to change parties' burdens of proof to case management of the case, altering the rights of the parties in the process. Because courts alter rights in this fashion without reference to any intelligible principle, defendants, plaintiffs, and courts lack a common benchmark for identifying wrongdoing that deserves compensation. This is the rule of law problem at the heart of the class action debate."

31.     Moller continues, "The rule of law problem is of constitutional dimension. The Due Process Clause (1) protects individual autonomy (specifically, 'liberty'). (2) Yet parties cannot meaningfully exercise their autonomy unless they can apprehend what the law requires of them. Their apprehension, in turn, depends on the existence of predictable rules of conduct, including stable burdens of proof and advance warning of the conditions under which the burdens may be changed. For these reasons, I argue that the Due Process Clause limits courts' authority to unsettle the rules governing proof of claims in the class context."

32.     Commentary has also been had regarding the constitutionality of multi-state litigation and how affects litigants bound by the law of other states.  See, *Brief for Amici Curiae National Association Of Mutual Insurance Companies, Property Casualty Insurers Association Of America, and National Chamber Litigation Center, Inc. in Support of Petitioner, Supreme Court of the United States,* General Motors Corporation, Petitioner, v. Boyd Bryant, on behalf of himself and all others similarly situated, Respondent, No. 08-349, October 20, 2008, *On Petition for a Writ of Certiorari to the*

*Supreme Court of the State of Arkansas, Petition for writ of certiorari to the Supreme Court of Arkansas denied, U.S.,2009, General Motors Corp. v. Bryant, 129 S.Ct. 901, 77 USLW 3393, 77 USLW 3396, 77 USLW 3148*: "The Court should review and reverse the Arkansas Supreme Court's ruling that, in deciding to certify a nationwide class, a trial court need not take into account the effect of variations in state law. The Arkansas Supreme Court's decision raises important constitutional concerns under both the Due Process Clause and the Full Faith and Credit Clause. *See U.S. Const. art. IV, § 1; U.S. Const. amend XIV, § 1.* 'The class-action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 155 (1982) (citation omitted). In certifying a nationwide class, a trial court assumes jurisdiction over the claims of millions of persons whose transactions with the defendant have no connection to the forum state. Such an assumption of jurisdiction raises constitutional concerns as to the policy interests of the class members' home states in developing and deciding their own law and having that law applied to the claims of their own residents. It also raises constitutional concerns as to how to protect the fundamental fairness of the contemplated proceedings, from the standpoint of both absent class members and the defendant."

33.     The petition continues, "A judicial determination before class certification of what law applies to the claims of putative class members from different states and the effect of variations in state law on whether the requirements for class certification are met is a necessary means of ensuring fundamental fairness in the certification of nationwide or multi-state classes. Such an initial determination assures…out-of-state class members are not deprived of their due process right to have applied the law of a state with some

significant contact or aggregation of contacts to the claims of the particular class members. Without such a determination, a proper analysis of the prerequisites for class certification is impossible. These prerequisites have a significant due process component because they function to safeguard the fairness of class action proceedings. Thus, substantial due process concerns are raised by the procedure... of certifying a nationwide or multi-state class, and thereby assuming jurisdiction over the claims of out-of-state class members, without any consideration of the laws of the class members' home jurisdictions. ... The Arkansas Supreme Court's decision also raises substantial issues of full faith and credit. By requiring that 'Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State', the United States Constitution establishes '"barriers by which all the States are restricted within the orbits of their lawful authority and upon the preservation of which the Government under the Constitution depends.'" *BMW of North Am., Inc. v. Gore,* 517 U.S. 559, 572 (1996) (citation omitted). Certification of a multi-state or nationwide class necessarily implicates the Full Faith and Credit Clause, as that Clause requires that the class members' claims be governed by the law of a state having "a 'significant contact or significant aggregation of contacts'" to the transactions in question. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 821-22 (1985) (citation omitted)."

**FURTHER DISCUSSION**

34.     Many scholars have questioned the constitutionality of class action litigation, the adequacy of its representation, and its assumed personal jurisdiction over absent class members.  That is not surprising, since it flies in the face of common sense

and an ordinary sense of justice to accept publishing an ad in arbitrary periodicals as sufficient notice for potential class members. Who knows what periodicals people read? What if someone is blind, illiterate, mentally challenged, or otherwise disabled, and therefore unable to read at all? How can our judicial system, in good conscience, cast aside potential class members, when their only fault was failing to read a particular magazine or newspaper? This is not what the Fourteenth Amendment stands for.

35.     Similarly, how can the adequacy of representation be guaranteed for the individual in a massive class action involving thousands if not millions of plaintiffs with varying issues, where there is only one or two class representatives? Your affiant respectfully submits, it cannot.

36.     Even the United States Senate addressed the constitutional concerns of class actions in its Senate Report 108-123, The Class Action Fairness Act Of 2003, 19-010, Calendar No. 117, 108th Congress, *Report Senate* 1st Session, 108-123, The Class Action Fairness Act Of 2003, July 31 (legislative day, JULY 21), 2003- Ordered to be printed, *Mr. HATCH, from the Committee on the Judiciary, submitted the following report together with minority views,* "**constitutional due process rights are often ignored in class actions**".

37.     We are embarking on a slippery and dangerous slope when we readily adopt a law or rule that routinely ignores constitutional due process rights.

38.     See, also, *Class Action Defense Blog, Michael J. Hassen, Jefer Mangels Butler & Marmaro, LLP, Michael J. Hassen, Partner, Two Embarcadero Center, 5th Floor, San Francisco, California 94111 USA:* "Some courts have expressed concerns with the constitutionality of certifying a class action for monetary relief under Rule

23(b)(2) under this procedure. The constitutional concern is that certification under Rule 23(b)(2) is never appropriate because it binds all class members without the safeguards of notice and opportunity to be heard. [Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 164 (2nd Cir. 2001]. This concern arises from the Supreme Court cases Ticor v. Brown, 511 U.S. 117, 114 S.Ct. 1359, 128 L.Ed.2d 33 (1994) and Ortiz v. Fibreboard Corp., 527 U.S. 815, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999). In Ticor, the Supreme Court stated that there is at least a substantial possibility that in actions seeking monetary damages, classes can be certified only under Rule 23(b)(3), which permits opt-out. 511 U.S. at 121, 114 S.Ct. 1359. In Ortiz, the Supreme Court suggested that a mandatory class seeking monetary damages **should not be certified under Rule 23(b)(2) because such a class compromises the due process rights of absent class members**. See also, [Coleman v. General Motors Acceptance Corp., 296 F.3d 443, 447 (6th Cir. 2002]. Reeb v. Ohio Dep't of Rehab. & Corr., 435 F.3d 639, 658 (6th Cir. 2006) (Keith, J., dissenting)."

39.     A situation similar to the matter before the Court now arose in the Eastern District of Pennsylvania, where a show cause order was bought against a plaintiff for filing a suit outside the scope of a class action when plaintiff did not opt out of the class. I quote from the opposition of attorneys Masters and Majestro to defendant Acromed's motion for the show cause order:

> The only other notices were short-form advertisements appearing twice in the national edition of *USA Today*, once in *TV Guide*, once in *Parade Magazine* (an insert in some Sunday newspapers), and once in a Spanish-language newspaper in Puerto Rico. *Id*....
>
> Notice was important for at least two reasons. First, it gave affected people an opportunity to obtain materials relating to the settlement and to file objections if they thought the settlement was unfair or unlawful. Second, even if a class member did not want to object, because registration with

the settlement master was a prerequisite to obtaining cash settlement benefits, it was critical that class members receive complete notice of the settlement and its procedures well prior to the registration deadline.

Ms. Lloyd did not receive notice of the AcroMed class action settlement. *Id.* ¶ 5. She received nothing about the settlement in the mail, nor did her doctors or hospital inform her of the settlement. She did not read about the settlement in any of the national publications that contained a notice about the settlement. *Id.* Indeed, she did not hear of the class action settlement at any time prior to the filing of her West Virginia state court suit in April 1999. *Id.* She therefore was never informed of the May 15, 1997 registration deadline imposed by the settlement. *Id.* ¶¶ 2, 5-6. She did not appear before this Court in *Fanning v. AcroMed* or in any other proceeding in MDL 1014.

**A. This Court Lacks Personal Jurisdiction Over Ms. Lloyd...** There is no question that if AcroMed sued Ms. Lloyd individually in federal court in Philadelphia over conduct occurring in West Virginia, this Court would not have personal jurisdiction over her. Nor is there any question that Ms. Lloyd never voluntarily submitted herself to the jurisdiction of this Court during the AcroMed class action proceeding or otherwise during the course of MDL 1014. The only question is whether this Court's certification of a non-out-opt class somehow altered the ordinary rules and provided the Court jurisdiction over Ms. Lloyd. It did not.

\*　　　\*　　　\*

In The United States District Court For The Eastern District Of Pennsylvania, In Re Orthopedic Bone Screw Products Liability Litigation, Mdl Docket No. 1014, This Document Relates To *Fanning, Et Al. V. Acromed Corp., Et Al.,* Opposition Of Attorneys Masters And Majestro To Acromed's Motion For Order To Show Cause.

40.　　[It should be noted that while the District Court concluded that Lloyd was a class member, the only sanction they imposed was an injunction against further prosecution of the West Virginia case. In re Orthopedic Bone Screw Products Liability Litigation, *350 F.3d 360, C.A.3 (Pa.),2003.* It does not appear that Lloyd made the same cross motion that is made herein.]

## CONCLUSION:

41.　　What has happened to Lois Slembecker with the results of the certification of this class action ,without her knowledge or consent, and the proposed barring of her own day in court, simply flies in the face of what is fair, and it flies in the face of the Due Process Clause.

42.　　I ask this Honorable Court to make the decision that clearly lies with the intentions of our constitution and the idea of due process, and compare that to Rule 23, and the slippage through the cracks that Rule 23 permits and the denial of due process that is inherent in the concept of class actions.  Due process is a right afforded to all, regardless of what periodicals one reads.

WHEREFORE, plaintiff Lois Slembecker and her attorney request an order denying defendants' Menu Foods Corporation and The Iams Company's order to show cause why counsel and her client Lois Slembecker should not be held in contempt, for attorneys' fee, and to enjoin plaintiff from pursuing pending litigation, or, in the alternative, granting plaintiff's cross-motion to compel the claims administrator for defendants Menu Foods and the Iams Company to include Lois Slembecker in the distribution of the class settlement fund and deem her claim filed timely *nunc pro tunc* and to direct the settlement claims administrator to award her $58,500.00 of the settlement fund due to the circumstances of her situation which were not adequately represented by the class.

Dated:  March 23, 2009

Nora Constance Marino
Attorney for Plaintiff Lois Slembecker

27