UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

IN RE PET FOOD PRODUCTS
LIABILITY LITIGATION

MDL Docket No. 1850 (All Cases)

Case No. 07-2867 (NLH)

The Honorable Noel L. Hillman

**REPLY MEMORANDUM IN SUPPORT OF EXPEDITED MOTION TO SHOW CAUSE, AND MEMORANDUM IN OPPOSITION TO CROSS MOTION OF SETTLEMENT CLASS MEMBERS LOIS SLEMBECKER, AND RESPONSE OF COUNSEL TO SETTLEMENT CLASS MEMBER CYNTHIA DOTOLI**

Mary E. Gately
Cristen Sikes Rose
DLA PIPER U.S. LLP
500 8th Street, N.W.
Washington, D.C. 20004
Telephone: (202) 799-4507
Telecopier: (202) 799-5507
Email: mary.gately@dlapiper.com

Liaison Counsel for Defendants
and Counsel for the Menu Foods Defendants

D. Jeffrey Ireland
Laura A. Sanom
Brian D. Wright
FARUKI IRELAND & COX P.L.L.
500 Courthouse Plaza, S.W.
10 North Ludlow Street
Dayton, Ohio 45402
Telephone: (937) 227-3710
Telecopier: (937) 227-3749
Email: djireland@ficlaw.com

Liaison Counsel for Defendants and
Counsel for The Iams Company

I.	INTRODUCTION AND SUMMARY

On March 6, 2009, this Court issued an Order to Show Cause [Doc. No. 307] requiring Settlement Class Members[1] Lois Slembecker and Cynthia Dotoli, and their respective counsel Nora Constance Marino and William T. Anastasio, to show cause on March 20, 2009 why each of them should not be held in contempt for refusing to discontinue prosecution of their respective lawsuits in violation of the Final Approval Order and Judgment [Doc. Nos. 272, 273]. Pursuant to an extension granted to them by this Court, Ms. Slembecker and her counsel Ms. Marino responded to the Order to Show Cause on March 23, 2009 by objecting to this Court's Final Approval Order and Judgment or, alternatively, asking that Ms. Slembecker's untimely Claim Form be accepted and that she be paid the full alleged amount of her claim from the Settlement Fund [Doc. No. 327].[2] On March 27, 2009, counsel for Menu Foods received Mr. Anastasio's untimely response to this Court's Order to Show Cause via regular mail.[3] The Anastasio Response is in the form of an (unsigned) affidavit by Mr. Anastasio only, and largely consists of inappropriate subject matter for an affiant lacking personal knowledge of the statements made therein. The Anastasio Response also incorporates by

---

[1] All capitalized terms herein shall have the definitions provided in the Settlement Agreement unless otherwise indicated.

[2] Memorandum in Opposition to Defendants Menu Foods Corporation and The Iams Company's Order to Show Cause Why Counsel and Her Client Lois Slembecker Should Not Be Held in Contempt, for Attorneys' Fee, and to Enjoin Plaintiff from Pursuing Pending Litigation and Cross Motion to Compel Defendants Menu Foods and The Iams Company to Include Lois Slembecker in the Distribution of the Class Settlement Fund and Deem Her Claim Filed Timely Nunc Pro Tunc and to Give Her $58,500.00 of the Settlement Fund Due to the Circumstances of Her Situation Which Were Not Adequately Represented in the Class ("Slembecker Opposition and Cross Motion") [Doc. No. 327].

[3] Mr. Anastasio's response is titled Response to Defendants' Expedited Motion for Damages, ("Anastasio Response") and does not appear on this Court's docket. The Anastasio Response states that it was sent via fax and mail to counsel for Menu Foods, Iams and Settlement Class Member Slembecker, although that statement is neither dated nor signed by Mr. Anastasio. Neither counsel for Menu Foods nor counsel for Iams received the Anastasio Response by fax. Counsel for Menu Foods and Iams received the Anastasio Response by mail on March 27, 2009. The Anastasio Response does not include an affidavit or other response to this Court's Order to Show Cause from Ms. Dotoli explaining her actions and why she merits the relief requested in the Anastasio Response.

reference the Slembecker Opposition and Cross Motion, and requests that the Court deem Ms. Dotoli's Claim Form timely filed and direct the Claims Administrator to award her compensation from the Settlement Fund.

The objections to this Court's Final Approval Order and Judgment made by Ms. Slembecker (and incorporated in the Anasastio Response) are untimely. The Preliminary Approval Order established a deadline of September 12, 2008 for Objections to the proposed Settlement. Preliminary Approval Order, ¶ 5 [Doc. No. 153]. Ms. Slembecker (and Ms. Dotoli) did not raise any objection to the Settlement based on any of the issues raised in the Slembecker Opposition and Cross Motion. See Final Approval Order, Exhibit B (identifying Settlement Class Members who objected to the Settlement) [Doc. No. 272-2]. Further, after Menu Foods advised Ms. Slembecker through her counsel on December 5, 2008 that this Court's Orders require that she dismiss her action in the Southern District of New York, Ms. Slembecker did not seek relief under Fed. R. Civ. P. 60(b) from the Preliminary or Final Approval Orders or Final Judgment of Dismissal, even though such a motion would have been timely. In addition, Ms. Slembecker did not attempt to appeal the Final Approval Order and Judgment. The time to challenge this Court's Final Approval Order and Judgment passed a long time ago.

In any event, Ms. Slembecker, Ms. Marino, Ms. Dotoli and Mr. Anastasio fail to demonstrate why they should not be held in contempt for violating this Court's Orders. The Slembecker Opposition and Cross Motion raises several challenges to the constitutionality of Fed. R. Civ. P. 23, the adequacy of notice and the adequacy of the class representatives. However, this Court already found that the Settlement was consistent with Fed. R. Civ. P. 23, that class notice was reasonable and adequate, and that the Settlement Class was represented adequately. Preliminary Approval Order, ¶ 2; Final Approval Order, ¶¶ 1-2; Opinion, pp. 6-16 [Doc. No. 271].

Moreover, the issues related to class notice raised in the Slembecker Opposition and Cross Motion already have been heard and considered when this Court rejected a Motion for Declaratory Judgment by Settlement Class Member Robert M. Josephs,[4] who sought to opt out of the Settlement after the deadline to do so. This Court found that actual notice was not required for Mr. Josephs and that the Notice Plan, including published notice, provided pursuant to the Preliminary Approval Order was reasonable and adequate, and that Mr. Josephs was enjoined from proceeding against a Released Entity. Order dated September 18, 2008 [Doc. No. 233]. In denying Mr. Josephs' Motion, this Court articulated the correct legal standard:

> "I'm clear that <u>the law does not require actual notice</u>. That <u>constructive knowledge is enough</u>. This case received broad publicity both in print and broadcast media. There were national news reports about the preliminary settlement. <u>Anyone who engaged in</u> a minimum amount, and not trying to be critical of you, Mr. Josephs, it seems that you are fighting hard for your case, and I'm not suggesting that you had actual knowledge, but is seems to me that a <u>relatively easy amount of research would have found information about this settlement</u>…. So I'm going to deny the relief requested by Josephs that is relief from the stay. And, under the circumstances feel that it's equitable for him to be in the same position as other class members whose time to opt out has expired and who had not received actual notice, but rather the notice to the world that was carefully thought out, proposed by the plaintiffs and defendants and previously approved by the Court."

September 17, 2008 Hrg. Tr. at 18:3-14; 19:19-20:2 (attached as Exhibit A) (emphasis added).

The result should be no different here than in the matter involving Mr. Josephs. The Claims Administrator implemented the vast and extensive Notice Plan approved by this Court involving both individual and publication notice, and this case and the Settlement received broad publicity in print and broadcast media and on the internet. As this Court already found, this

---

[4] Interested Party's Motion for Declaratory Judgment and Relief from Stay ("Motion for Declaratory Judgment") [Doc. 188]; Order [Doc. No. 209].

broad published notice was reasonable and adequate, and provided sufficient class notice under the law. Opinion, pp. 6-7. Moreover, had Ms. Slembecker or Ms. Dotoli, or their counsel, engaged in even a modest amount of research prior to filing a complaint in the Southern District of New York, they easily would have discovered the Settlement and could have submitted a timely claim for reimbursement.[5] Neither the fact that Ms. Slembecker and Ms. Dotoli may not have received actual notice nor their failure to conduct basic research about their claims entitles them and their counsel to flout this Court's Final Approval Order and Judgment. Thus, pursuant to paragraph 9 of the Final Approval Order, Ms. Slembecker and Ms. Dotoli should be enjoined from pursuing their pending litigation in other courts, and they and their counsel should be held in contempt if they refuse to dismiss those actions.

Ms. Slembecker and Mr. Anastasio also ask this Court to compel the Claims Administrator to deem their Claim Forms timely filed. In addition, Ms. Slembecker asks the Court to direct the Claims Administrator to award her the full amount of her alleged claim from the Settlement Fund, while Ms. Dotoli asks the Court to direct the Claims Administrator to award her unspecified compensation from the Settlement Fund. These requests should be denied because Ms. Slembecker and Ms. Dotoli have not made any showing sufficient to justify their failure to meet this Court's deadlines and, in the case of Ms. Slembecker, there is no basis for this Court to order the Claims Administrator to make a specific award to a Settlement Class Member.

---

[5] Notably, Ms. Slembecker's counsel was able to gather the information about the settlement on the internet "immediately" upon learning of the settlement and "found the claim form online that needed to be completed by class members and received by the claims administrator by November 24, 2008," called the toll-free number and "spoke to someone at the class administrator's office." Attorney Affirmation of Nora Constance Marino, ¶ 5.

4

II.         THERE IS NO MERIT TO MS. SLEMBECKER'S CONSTITUTIONAL CHALLENGE TO RULE 23 AND CERTIFICATION OF CLASS ACTIONS

Ms. Slembecker argues that "Rule 23 is inadequate to comply with the constitution and the Fourteenth Amendment. The controls it imposes are insufficient and do not overcome the constitutional tribulations caused by class action litigation."[6] Not surprisingly, Ms. Slembecker fails to cite any precedent holding Rule 23 unconstitutional.

To the contrary, the Supreme Court approved the class action device where the requirements in Rule 23 are met, and it flatly rejected the argument that is unconstitutional to require class members to "opt out" of a class certified under Rule 23(b)(3).[7] See, e.g., Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812, 105 S. Ct. 2965, 2974-75 (1985) ("We reject petitioner's contention that the Due Process Clause of the Fourteenth Amendment requires that absent plaintiffs affirmatively 'opt in' to the class, rather than be deemed members of the class if they do not 'opt out'").[8] Ms. Slembecker's contention that Rule 23 is unconstitutional is unsupported by any law.

---

[6] Similarly, the Anastasio Response suggests that class action procedure is unconstitutional. See Anastasio Response, ¶ 9 ("Ms. Dotoli … was unaware that she had without her knowledge or permission been included in the litigation as a silent defendant [sic], without Notice and an opportunity to be heard as guaranteed her under the Due Process Clause of the Constitution").

[7] Ms. Slembecker's Opposition and Cross Motion includes a citation to a class action blog critiquing certification of classes that seek both injunctive relief and monetary damages under Rule 23(b)(2). See Slembecker Opposition and Cross Motion, ¶ 38 (citing Class Action Defense Blog, "Class Action Certification Under Rule 23 Part III: Defense of Class Actions" posted on July 1, 2006, http://classactiondefense.jmbm.com/2006/07/class_certification_under_rule.html). This critique is irrelevant to this case in which the Court certified the Settlement Class under Rule 23(b)(3).

[8] See also Shutts, 472 U.S. at 813 ("[T]he Constitution does not require more to protect what must be the somewhat rare species of class member who is unwilling to execute an 'opt out' form, but whose claim is nonetheless so important that he cannot be presumed to consent to being a member of the class by his failure to do so").

III. **THE NOTICE WAS CONSISTENT WITH RULE 23 AND DUE PROCESS CONCERNS**

    A. **The Notice Plan Previously Approved by this Court was Extensive and Targeted**

In the Preliminary Approval Order, this Court approved an extensive Notice Plan involving notice by both regular mail and by publication. Ms. Slembecker characterizes the Notice Plan approved by this Court as "uncertain and random,"[9] but offers no basis or expert opinion to support her characterization. Slembecker Opposition and Cross Motion, p. 15. As the record establishes, experienced experts in class notice and media campaigns developed and supported the Notice Plan, which was targeted to reach adults of all economic levels ages 18 and over who own or did own a dog or cat in 2007. Declaration of Alison Kauker in Support of Proposed Notice Plan ("Kauker Decl."), attached as Exhibit C to the Declaration of Edward J. Sincavage in Support of the Proposed Notice Plan ("Sincavage Notice Plan Decl."), ¶¶ 8-9 [Doc. No. 151-22].

Heffler Radetich & Saitta LLP developed the Notice Plan based on its extensive experience in implementing class action notification, research regarding the Pet Food Recall, the pet food industry, pet food purchaser and pet owner demographics in the United States and Canada, and in consultation with Plaintiffs' Lead Counsel and SK Advertising LLC. Proposed Notice Plan, attached as Exhibit B to the Sincavage Notice Plan Decl., p. 3 (Doc. No. 151-22).[10] The Notice Plan approved by this Court included both direct, individual notice and notice in an

---

[9] The Anastasio Response contradicts Ms. Slembecker's characterization of the Notice Plan. See Anastasio Response, ¶ 9 (acknowledging that the Court and Defendants employed "best efforts … with [their] use of media to inform the public of the deadline for claims").

[10] Heffler Radetich & Saitta LLP has over 47 years of experience in the field of Class Notice and Claims Administration, has been appointed settlement administrator in over 500 class action settlements, and handled the notification programs in most of those cases. Sincavage Notice Plan Decl., ¶¶ 3-4. SK Advertising LLC is an advertising agency specializing in the design and implementation of media-based Notice Plans that target class members in class actions and in Chapter 11 and Chapter 15 bankruptcy cases, and has conducting media noticing programs in hundreds of class actions. Kauker Decl., attached as Exhibit C to Sincavage Notice Plan Decl., ¶¶ 1-2, 5.

extensive list of publications with large circulations. Specifically, a Claim Form and individual notice were mailed to (1) persons paid as part of a Historic Payment Program, (2) persons who completed and returned a claim form to Menu Foods' former claim administrator Crawford & Company and whose names and addresses were in a readily accessible database maintained by Crawford & Company and (3) persons who were the subject of this Court's Order to Show Cause dated August 28, 2007. Preliminary Approval Order, ¶ 9(a); Sincavage Notice Plan Decl., ¶ 7(a).

As is routinely done in other class action cases, the publication portion of the Notice Plan was targeted to reach Settlement Class Members whose identities were unknown. Proposed Notice Plan, attached as Exhibit B to Sincavage Notice Plan Decl. In the United States, Notice of the Settlement was published in the following:

> Consumer Magazines: Parade Magazine (est. circulation 32,400,000); AARP Magazine (est. circulation 22,500,000); and People Magazine (est. circulation 3,750,548)
>
> Pet Magazines: Dog Fancy (est. circulation 237,614); Cat Fancy (est. circulation 232,042); AKC Family Dog (est. circulation 171,500); Bark (est. circulation 75,000); Best Friends (est. circulation 201,029); and Dog World (est. circulation 37,561)
>
> U.S. Veterinary Publications: DVM Magazine (est. circulation 171,595); Journal of American Veterinary Medical Association (est. circulation 71,871); Trends Magazine (est. circulation 32,000); Veterinary Forum (est. circulation 53,839); Veterinary Medicine (est. circulation 55,208); Veterinary Practice News (est. circulation 54,678)

Id. at 5-6; Declaration of Edward J. Sincavage, CPA Regarding the Dissemination of U.S. Notice to the Class ("Sincavage Notice Dissemination Decl.") [Doc. No. 249-12], Exhibit B, p. 1 [Doc. No. 249-14]. In addition, Notice of the Settlement was published in 15 newspapers across the United States that do not carry Parade Magazine, including the New York Times and USA Today. Sincavage Notice Dissemination Decl., Exhibit B, p. 1. Notice was released to PR Newswire and advertised via Google AdWords. Id. A settlement website, www.petfoodsettlement.com, and a

7

toll-free "800" telephone number also were established. Sincavage Notice Dissemination Decl., ¶¶ 11-12. Upon review of the Notice Plan, Alison Kauker of SK Advertising opined as follows:

> "Based on the foregoing and my experience, it is my opinion that the Proposed [Notice] Plan presented, in addition to direct mail, will be a comprehensive, effective, and cost-efficient plan for communicating notice to the target audience. Based on my more than 25 years of experience in designing publication plans for hundreds of class action settlements, the Proposed [Notice] Plan presents a system for building awareness of the recall and claims process through publications, newswire releases, and internet advertising. I believe the Plan, in conjunction with the direct notice plan, can provide the best notice that is reasonable and practicable under the circumstances to reach potential class members."

Kauker Decl., ¶ 17; see also Sincavage Notice Plan Decl. at ¶ 8 ("It is my opinion that the Notice Plan as outlined above and in Exhibit B is the best notice that is reasonable and practicable under the circumstances to reach potential Settlement Class members").

Further, as this Court previously observed, "This case received broad publicity both in print and broadcast media. There were national news reports about the preliminary settlement. Anyone who engaged in a minimum amount . . . [or] a relatively easy amount of research would have found the information about this settlement." September 17, 2008 Hrg. Tr. at 18:6-14. In addition, Menu Foods issued press releases and updates regarding Preliminary and Final Approval of the Settlement, all of which provided contact information for the Claims Administrator, and all of which remain available on its website under a webpage titled "Recall Information." See Menu Foods website, "Recall Information," available at http://www.menufoods.com/recall/index. html.

B. There is No Merit to Ms. Slembecker's Challenge to the Notice Previously Approved by this Court

Ms. Slembecker's challenges, including a constitutional challenge, to the Notice Plan lack any merit. Ms. Slembecker not only misunderstands (or misconstrues) the Notice Plan

8

by ignoring the individualized notice components,[11] her arguments about the reasonableness of the Notice Plan and the requirements of the law are without merit. This Court has twice approved the form and manner of Notice ─ finding "best notice practicable under the circumstances, constitute sufficient notice to all persons entitled to notice, and satisfy the constitutional due process requirements of notice." Preliminary Approval Order, ¶ 12; Opinion, pp. 6-7.

The Notice Plan approved by this Court and implemented by the Claims Administrator satisfies due process requirements and Fed. R. Civ. P. 23. "In order to satisfy due process, notice to class members must be reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." In re Remeron End-Payor Antitrust Litig., Nos. 02-2007, 04-5126, 2005 U.S. Dist. LEXIS 27011, at *40-41 (D.N.J. Sept. 13, 2005) (internal quotation marks and citations omitted). "Due process does not require that an individual receive actual notice for notice to have been sufficient; rather, due process merely requires adequate notice." Pyle v. New York Life Ins. Co., No. 07-00360, 2008 U.S. Dist. LEXIS 21638, at *32 (W.D. Pa. Mar. 19, 2008) (emphasis added). Courts also have stated expressly that the notice of proposed settlement agreement mandated by Rule 23(c)(2) does not require actual notice to every absent class member to meet due process requirements. See, e.g., Fry v. Hayt, 198 F.R.D. 461, 474 (E.D. Pa. 2000) ("Due process does not require that every class member receive actual notice, and, therefore, failure to receive notice is not fatal to the plan.") (citing, in part, In re Prudential Ins. Co. of Am. Sales Practices Litig., 177 F.R.D. 216, 233 (D.N.J. 2000)); see also US West, Inc. v. Bus. Discount Plan,

---

[11] Because Ms. Slembecker ignores the individual notice components of the settlement, her reliance on Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S. Ct. 652 (1950) and Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S. Ct. 2140 (1974) is misplaced. Ms. Slembecker acknowledges that "[t]he two leading Supreme Court cases on notice, Mullane and Eisen, both prescribed first-class mail to identifiable individuals together with publication." Slembecker Opposition and Cross Motion, ¶ 14. The Notice Plan approved by this Court involved both individual and publication notice, and is consistent with the notice provided in Mullane and Eisen.

9

Inc., 196 F.R.D. 576, 582-83 (D.C. Colo. 2000) (holding that Rule 23(c)(2) was satisfied despite some absent class members not receiving actual notice) (citing Silber v. Mabon, 18 F.3d 1449, 1453-54 (9th Cir. 1994)). "For those whose names and addresses cannot be determined by reasonable efforts, notice by publication suffices under both Rule 23(c)(2) and under the Due Process Clause." In re Remeron End-Payor Antitrust Litig., 2005 U.S. Dist. LEXIS 27011, at *42. The Notice Plan used in this case meets the requirement of Rule 23 and the Due Process Clause. Preliminary Approval Order, ¶ 12; Opinion, pp. 6-7.

IV. MS. SLEMBECKER WAS ADEQUATELY REPRESENTED

Ms. Slembecker argues that she should not be bound by this Court's Orders because she was not adequately represented by the class representatives. Ms. Slembecker alleges that because her dog was a "show dog" allegedly worth thousands of dollars and "her offspring would also have been worth thousands of dollars," her "rights were not adequately represented" by the class. Slembecker Opposition and Cross Motion, pp. 26-33. Contrary to Ms. Slembecker's assertions, she was adequately represented by the class representatives.

As this Court already found, the Settlement Class was adequately represented because "the representative plaintiffs were damaged as a result of defendants' allegedly unlawful conduct, and the plaintiffs would have had to prove the same wrongdoing as the absent Class members to establish defendants' liability. Thus, the representative plaintiffs' interests are directly aligned with those of other members of the Class." Opinion, p. 13. Ms. Slembecker offers speculation about the damages other Settlement Class Members seek and are entitled to receive, and unsupported assertions about her alleged entitlement to greater damages. However, any factual differences in the amount of damages between Ms. Slembecker and the rest of the class representatives would not defeat class certification (at least as to the adequacy requirement)

10

because representative plaintiffs and Settlement Class Members all are aligned interest in recovering from the same allegedly unlawful course of conduct affecting all members of the proposed settlement class.

A disparity in damages between class members does not preclude a finding of typicality and adequacy of representation. In re Orthopedic Bone Screw Prods. Liab. Litig., 176 F.R.D. 158, 175 (E.D. Pa. 1997) (finding that typicality and adequacy of representation requirements were met and stating that "[t]he existence of individual issues such as the extent of each class members' damages do not preclude the typicality requirement from being satisfied").[12] The representative class members (who like Ms. Slembecker claim to have been injured by Defendants' alleged conduct) were and continue to adequately represent Ms. Slembecker's and other Settlement Class Members' interest in this class action.

Finally, if Ms. Slembecker was dissatisfied with the relief made available through the Settlement, then she could have opted out of the Settlement.

V. AN ORDER ENJOINING FURTHER VIOLATIONS OF THIS COURT'S ORDERS IS APPROPRIATE

This Court has jurisdiction over the subject matter of this litigation pursuant to 28 U.S.C. § 1332, and it has jurisdiction over all parties, including Ms. Slembecker and Ms. Dotoli as Settlement Class Members. Final Approval Order, ¶ A. In the Final Approval Order and Judgment, this Court dismissed all claims against Menu Foods and Iams with prejudice, and expressly retained jurisdiction over this action and all Settlement Class Members "for purposes of

---

[12] See e.g., In re Prudential Ins. Co. of Am. Sales Practice Litig., 962 F. Supp 450, 517 (D.N.J. 1997). Quite simply, all Class Members shared an overriding interest in obtaining substantial monetary and other relief. See In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 453 (S.D.N.Y. 2004) (Certifying settlement class and finding that "[t]here is no conflict between the class representatives and other class members. All share common goal of maximum recovery.").

11

supervising, administering, implementing, enforcing and interpreting the Settlement . . . and over enforcement of the Final Approval Order and [Final] Judgment, including but not limited to the injunction [prohibiting Settlement Class Members from prosecuting Released Claims against Released Entities] described in Paragraph 9." Id., ¶ 22.

Ms. Slembecker, Ms. Marino and Mr. Anastasio concede that Ms. Slembecker and Ms. Dotoli did not opt out of the Settlement, and they do not dispute that the claims raised in their respective lawsuits involve Released Claims against Released Entities. Indeed, at Ms. Marino's direction, Ms. Slembecker submitted a Claim Form (albeit late) to the Claims Administrator, and Mr. Anastasio suggests that Ms. Dotoli also belatedly submitted a Claim Form. Affidavit of Lois Slembecker ("Slembecker Aff."), ¶¶ 30, 34; Anastasio Response, p. 5). As a Settlement Class Members, Ms. Slembecker and Ms. Dotoli are bound by this Court's Final Approval Order and Judgment, including paragraph 9, and are knowingly and willfully violating this Order by pursuing their actions in out courts.

This Court has the power to enforce its Final Approval Order and Judgment and enjoin Settlement Class Members ─ like Ms. Slembecker and Ms. Dotoli ─ from prosecuting Released Claims in other jurisdictions. In re Prudential Ins. Co. of Am. Sales Practices Litig., No. 06-3186, 232 F. Appx. 161, 165, 2007 U.S. App. LEXIS 10268, at *12 (3d Cir. May 1, 2007); 28 U.S.C. § 1651(a) (authorizing federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law"). Moreover, this Court may exercise its civil contempt powers against counsel for Settlement Class Members who continue to assert Released Claims in violation of this Court's Final Approval Order and Judgment. Georgine v. Anchem Prods., No. 93-0215, 1994 U.S. Dist. LEXIS 15287, at *24-25 (E.D. Pa. Oct. 21, 1994).

Despite admitting to being notified of this Court's Final Approval Order and Judgment, Ms. Slembecker, Ms. Dotoli, and their respective attorneys have refused to dismiss their actions involving Released Claims against Menu Foods and Iams (Released Entities). Perhaps more significantly, Ms. Slembecker and Ms. Dotoli have said nothing to dispute the fact that they are Settlement Class Members. By refusing to dismiss their actions (even after filing Claim Forms and acknowledging that they are Settlement Class Members), Ms. Slembecker, Ms. Dotoli, and their respective counsel are violating the Final Approval Order and Judgment from this Court. Further, by actively seeking to prosecute Ms. Slemebecker's action in the Southern District of New York, Ms. Slembecker and Ms. Marino are flouting and disobeying this Court's "exclusive and continuing jurisdiction over [the pet food litigation] and the Parties, including all Settlement Class members, for purposes of supervising, administering, implementing, enforcing and interpreting the Settlement . . . and enforcement of the Final Approval Order and Judgment." Final Approval Order, ¶ 22. Ms. Slembecker's, Ms. Marino's, Ms. Dotoli's and Mr. Anastasio's continued violations of this Court's Final Approval Order and Final Judgment through her refusal to dismiss their actions are knowing and willful. Accordingly, Menu Foods and Iams request that this Court issue an Order enjoining Ms. Slembecker, Ms. Marino, Ms. Dotoli and Mr. Anastasio from pursuing their pending litigation in other courts in violation of this Court's Orders.[13]

---

[13] While Menu Foods and Iams have requested attorneys' fees (Memorandum in Support of Expedited Motion of Defendants Menu Foods and The Iams Company for a Show Cause Order, p. 7 (citing <u>Wedgewood Vill. Pharm., Inc. v. United States</u>, 421 F.3d 263, 268 (3d Cir. 2005)), Menu Foods and Iams request that this Court reserve this request and award Menu Foods and Iams attorneys' fees related to this motion (and any future motion) only if Ms. Slembecker and Ms. Dotoli (and their counsel) continue to violate this Court's Final Approval Order and Judgment.

13

VI.        MS. SLEMBECKER'S AND MS. DOTOLI'S REQUESTS FOR RELIEF FROM THE CLAIMS DEADLINE SHOULD BE DENIED.

Alternatively, Ms. Slembecker and Mr. Anastasio ask this Court to compel Menu Foods and Iams or the Claims Administrator to accept Ms. Slembecker's and Ms. Dotoli's untimely Claim Forms. Ms. Slembecker also asks this Court to direct the Claims Administrator to pay in full her alleged claim of $58,500 from the Settlement Fund.[14] Mr. Anastasio asks that the Court direct the Claims Administrator award Ms. Dotoli unspecified compensation from the Settlement Fund. Notably, despite arguing this Court must address her claim on an individual basis and according to Ms. Dotoli's individual circumstances, the Anastasio Response does not include a declaration or affirmation from Ms. Dotoli stating the particular reasons she was unable to comply with this Court's deadline. Nor does the Anastasio Response include an affirmation from Ms. Dotoli (or even Mr. Anastasio) that she has, in fact, submitted a Claim Form and the date on which she did so.

In order to obtain relief from the claims deadline, Ms. Slembecker and Ms. Dotoli bear the burden of establishing that their failure to meet that deadline constituted excusable neglect. Jones v. Chemetron Corp., 212 F.3d 199, 205 (3d Cir. 2000); see also In re Prudential Ins. Co. of Am Sales Practices Litig., 177 F.R.D. at 237 ("To establish excusable neglect, a movant must show both good faith and a reasonable basis for not acting within the specified

---

[14] Ms. Slembecker's request that her alleged $58,500 claim be paid in full from the Settlement Fund violates the express terms of the Settlement Agreement agreed by the Parties and approved by this Court. The Settlement Agreement places evaluation of the validity of claims and determination of the amounts payable from the Settlement Fund in the sole discretion of the Claims Administrator, limits the amount payable for claims that lack supporting documentation to $900 (which appears to the case with Ms. Slembecker's untimely Claim Form sent to the Claims Administrator and attached to her Affidavit submitted to this Court), and provides for pro rata payment of valid claims of Settlement Class Members in the event the Settlement Fund is oversubscribed. See Settlement Agreement at §§ IV.B.1-2 and V.B, attached as Exhibit 1 to Memorandum of Law in Support of Joint Motion for Preliminary Approval of Class Action Settlement, Approval of Proposed Form of Notice, and Preliminary Certification of Settlement Class [Doc. No. 151-3]. While Ms. Slembecker's untimely claim should be rejected for all the reasons stated herein, she cannot receive relief that is contrary to the agreed and approved terms of the Settlement Agreement, nor can she receive preferential treatment over the thousands of Settlement Class Members who submitted Claim Forms with supporting documentation on a timely basis.

14

period") (citation omitted); Georgine v. AmChem Prods., Inc., 1995 WL 251402, * 4 (E.D. Pa. Apr. 26, 1995). Ms. Slembecker and Ms. Dotoli have not met her burden.

Ms. Slembecker's primary excuse for her failure to submit a timely Claim Form is that she did not receive individual notice of the Settlement (Slembecker Aff., ¶¶ 26-28); Mr. Anastasio also states Ms. Dotoli was not aware of this litigation and the Claims Deadline. As this Court previously held, and for the reasons shown above, notice to the Settlement Class was consistent with due process concerns and Fed. R. Civ. P. 23. Accordingly, the fact that Ms. Slembecker and Ms. Dotoli may not have received individual notice does not justify an exception for their untimely claims. See In re Prudential Ins. Co. of Am Sales Practices Litig., 177 F.R.D. at 238 (denying a request to be relieved of the opt out deadline "where movants allege that they did not receive notice, received notice late, or that Prudential mailed notice to the wrong address").

Ms. Slembecker also asserts that she had a "high stress level job" for some period of time, a death in her family approximately a year before the claims deadline, and moved to Maryland on an unidentified date. Slembecker Aff., ¶¶ 24-25. She fails to explain how these events precluded her from participating in a claims period that lasted almost six months, from June 2008 to November 24, 2008, especially when she retained counsel in or about August of 2007. Id. ¶ 24. See In re Diet Drugs Prods. Liab. Litig., 92 Fed. Appx. 890, 893, 2004 U.S. App. LEXIS 4712, at *8 (3d Cir. Mar. 10, 2004) ("In evaluating excusable neglect, 'clients must be held accountable for the acts and omissions of their attorneys'") (quoting Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 396 (1993)). More importantly, she does not explain how her personal circumstances permitted her to prepare and then file a complaint in the Southern District of New York on November 24, 2008 – which just happens to be the claims deadline – but prevented her from submitting a Claim Form by that same date. See In re Diet

15

Drugs, 92 Fed. Appx. At 894, 2004 US App. LEXIS 4712, at *12 ("Further, under Pioneer [Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 113 S.Ct. 1489 (1993)], Corley cannot shift responsibility for failure to timely file to her counsel, particularly when both had actual and constructive notice of the deadline").

This Court also has the discretion to deny Ms. Slembecker's and Mr. Anastasio's requests for exceptions to the Claims Deadline because of their lack of good faith. As noted above, despite Ms. Slembecker's views on this Court's Orders and her actual knowledge of them before the expiration of the time to appeal entry of the Final Approval Order and Final Judgment of Dismissal, she failed to seek reconsideration or appellate review in the Third Circuit. Further, in response to the Order to Show Cause, Ms. Slembecker has provided this Court with little, if any, legal precedent to support her arguments that Rule 23 is unconstitutional, notice was inadequate, this Court's certification of the Settlement Class was improper, and she is not bound by this Court's Orders. The Anastasio Response was untimely and largely consisted of inappropriate subject matter for an affidavit made by an affiant who lacks personal knowledge of most, if not all, of the statements made therein. Ms. Dotoli failed to submit an affirmation explaining her actions in response to this Court's Order to Show Cause. Nonetheless, Ms. Slembecker and Ms. Dotoli continue to ignore this Court's Orders by refusing to dismiss their actions, and Ms. Slembecker actively is attempting to litigate issues related Orders over which this Court retained exclusive jurisdiction. Ms. Slembecker and Ms. Dotoli are unjustifiably wasting judicial resources in multiple courts and causing the Defendants to incur attorneys fees and costs to enforcement of this Court's Orders, and Ms. Slembecker also is causing the Defendants to incur attorneys fees and costs to seek dismissal of her action in the Southern District of New York. Under these circumstances, Ms. Slembecker and Ms. Dotoli do not merit an exercise of this Court's discretion to relieve them of an expired deadline. See Georgine, 1995

16

U.S. Dist. LEXIS 5593, *13 ("The Supreme Court has stated that the determination of whether a party's neglect of a deadline is excusable is an equitable one, taking account of all relevant circumstances surrounding the party's lapse").

Finally, the interests in finality of this Court, Defendants and other Settlement Class Members strongly counsel against re-opening the claims period. There must be an end to the litigation and claims period, and all similarly situated Settlement Class Members must be treated the same. See In re Gypsum Antitrust Case, 565 F.2d 1123, 1128 (9th Cir. 1977) (in review of late claims, district judge cannot act arbitrarily). Excusing one Settlement Class Member from a deadline could open the gates to others who believe they too have a meritorious excuse for missing a deadline. See id. at 1127 (affirming district court's exercise of discretion to deny late-filed claim, noting that "[t]here is no question that in the distribution of a large class action settlement fund, 'a cutoff date is essential and at some point the matter must be terminated'") (quoting Report of the Conference for Dist. Judges, 63 F.R.D. 231, 262 (1973)). Continually revisiting lapsed deadlines could discourage defendants from settlements. See In re Prudential Ins. Co. of Am Sales Practices Litig., 177 F.R.D. at 235 ("The impetus for defendants to settle class action suits is the finality of the litigation"); In re Prudential Secs. Inc. Ltd. P'ship Litig., 164 F.R.D. 362, 371-72 (S.D.N.Y. 1996) ("Defendants would be loath to offer substantial sums of money in compromise settlements of class actions unless they can rely on the notice provisions of Rule 23 to bind class members").

VII. CONCLUSION

For the foregoing reasons, Menu Foods and Iams respectfully request that this Court find that the efforts of Ms. Slembecker and her counsel, Ms. Marino, and Ms. Dotoli and her counsel, Mr. Anastasio, violate this Court's Final Approval Order and Judgment. Menu Foods and Iams further respectfully request that this Court enjoin Ms. Slembecker and her counsel, and

17

Ms. Dotoli and her counsel, from further violations by requiring that they dismiss their respective actions in other courts and certify that they have done so within 5 business days of the issuance of an order requiring such dismissal, or hold them in contempt if they fail to take this action. Finally, Menu Foods and Iams respectfully request that this Court deny the requests that Ms. Slembecker's and Ms. Dotoli's untimely Claim Forms be accepted and paid from the Settlement Fund.

Dated March 27, 2009

Respectfully submitted,

| | |
|---|---|
| /s/ Mary E. Gately | /s/ D. Jeffrey Ireland |
| Mary E. Gately | D. Jeffrey Ireland |
| Cristen Sikes Rose | Laura A. Sanom |
| DLA PIPER U.S. LLP | Brian D. Wright |
| 500 8th Street, N.W. | FARUKI IRELAND & COX P.L.L. |
| Washington, D.C. 20004 | 500 Courthouse Plaza, S.W. |
| Telephone: (202) 799-4507 | 10 North Ludlow Street |
| Telecopier: (202) 799-5507 | Dayton, OH 45402 |
| Email: mary.gately@dlapiper.com | Telephone: (937) 227-3710 |
| | Telecopier: (937) 227-3717 |
| Liaison Counsel for Defendants | Email: djireland@ficlaw.com |
| and Attorneys for the Menu Foods | |
| Defendants | Liaison Counsel for Defendants and |
| | Attorneys for Defendant |
| | The Iams Company |

# CERTIFICATE OF SERVICE

I certify that on the 27th day of March, I caused the foregoing Reply Memorandum in Support of Expedited Motion to Show Cause, and Memorandum in Opposition to Cross Motion of Settlement Class Members Lois Slembecker, and Response of Counsel to Settlement Class Member Cynthia Dotoli to be filed electronically with the Clerk of Courts using the CM/ECF system, which will send notification of such filing to CM/ECF participants, and to be served via Federal Express upon the following counsel of record:

Nora Constance Marino
Law Offices of Nora Constance Marino
175 East Shore Road
Great Neck, NY 11023
*Counsel for Lois Slembecker*

William T. Anastasio
141 Butler Parkway
Summit, NJ 07901
*Counsel for Cynthia Dotoli*

/s/ Gerard Hanson
Gerard Hanson