1           **UNITED STATES DISTRICT COURT**

2          **FOR THE DISTRICT OF NEW JERSEY**

3

4       _____

5

6    **IN RE**

7     **PET FOOD PRODUCTS**

8                              **CIVIL ACTION NUMBER:**

9

10                          **MDL-07-02867 (NLH)**

11      _____

12

13                  ORDER TO SHOW CAUSE

14

15        DATE: APRIL 3, 2009

16

17   MITCHELL H. COHEN UNITED STATES COURTHOUSE

18   ONE JOHN F. GERRY PLAZA,

19   CAMDEN, NEW JERSEY, 08101

20

21   **B E F O R E:**

22   THE HONORABLE NOEL L. HILLMAN UNITED STATES DISTRICT

23   COURT, DISTRICT OF NEW JERSEY, AT CAMDEN, NEW JERSEY.

24

25   **A P P E A R A N C E S:**

Dockets.Justia.com

1   WEXLER, TORISEVA, WALLACE,

2   BY: KENNETH A. WEXLER, ESQUIRE,

3   ATTORNEY FOR PLAINTIFFS

4

5   BERGER & MONTAGUE,

6   BY:  RUSSELL PAUL, ESQUIRE,

7   ATTORNEY FOR PLAINTIFFS

8

9   NORA CONSTANCE MARINO, ESQUIRE,

10  ATTORNEY FOR PLAINTIFF, LOIS SLEMBECKER

11

12  WILLIAM T. ANASTASIO, ESQUIRE,

13  ATTORNEY FOR PLAINTIFF CYNTHIA DOTOLI

14

15  DLA PIPER,

16  BY:  MARY GATELY, ESQUIRE

17  ATTORNEY FOR DEFENDANT MENU FOODS

18

19  FARUKI, IRLEAND & COX,

20  BY:  BRIAN D. WRIGHT, ESQUIRE,

21  ATTORNEY FOR DEFENDANT IAMS COMPANY

22

23

24

25

1

2   SQUIRE, SANDERS, & DEMPSEY,

3   BY:  MARK G. GOODMAN, ESQUIRE,

4   ATTORNEY FOR DEFENDANTS PROCTOR & GAMBLE

5

6   HOGAN & HARTSON

7   BY: CRISTEN SIKES ROSE, ESQUIRE

8   ATTORNEY FOR NESTLE, PETCO, PURINA

9

10

11                  STEPHEN J. DANER, CCR, RPR,

12                  OFFICIAL COURT REPORTER

13

14

15

16

17

18

19

20

21

22

23

24

25

1    (The following takes place in open Court before the

2    Honorable Noel L. Hillman, United States District Court,

3    District of New Jersey, sitting at Camden, New Jersey, on

4    April 3, 2009)

5              THE COURT:  Good morning, everyone.

6              Please be seated.

7              This is Pet Food MDL -- I guess the original

8    docket, 07-2867, and it's MDL 1850.

9              Appearance, please?

10             MR. WEXLER: Ken Wexler, for plaintiffs in the

11   class.

12             THE COURT: All right.

13             How are you, Mr. Wexler?

14             MR. WEXLER: Great. Thank you.

15             MR. PAUL: Russell Paul, Berger & Montague on

16   behalf of --

17             THE COURT:  Welcome to you as well, sir.

18             MS. MARINO: Good morning, Your Honor, Nora

19   Constance Marino, representing plaintiff, Lois Slembecker.

20             THE COURT:  They found room at the table for

21   you.

22             MS. MARINO: I got here first.

23             MR. ANASTASIO: William Anastasio, representing

24   Cynthia Dotoli.

25             THE COURT:  Mr. Anastasio, you found us here in

1    Camden, all the way from Summit.

2              MR. ANASTASIO: Yes.

3              THE COURT:  All right.

4              Welcome.

5              MS. GATELY: Good morning, Your Honor.

6              Mary Gately, on behalf of Menu Foods and liaison

7    counsel for the defendants.

8              THE COURT:  Nice to see all of you in person.

9    After a while you were disembodied voices.

10             Welcome.

11             MR. WRIGHT: Brian Wright, on behalf of the Iams

12   Company.

13             THE COURT:  Welcome.

14             MR. GOODMAN: Mark Goodman for Wal-Mart, Petco,

15   Pet Smart, Target, liaison counsel for defendants.

16             THE COURT:  Welcome to you, Mr. Goodmen, as

17   well.

18             MR. GOODMAN: Thank you, Your Honor.

19             MS. BERGE: Good morning, Your Honor, Miranda

20   Berge.

21             MS. ROSE:  Cristen Rose, for Menu Foods.

22             THE COURT:  Yes, miss Rose. Sometimes we have

23   trouble hearing you, but we don't have trouble hearing you

24   because we have this wonderful new sound system here,

25   although it's highly sensitive.  But I guess it's a good

1      thing.

2              It is good to see all of you, although, I have

3      to say I'm not thrilled with the circumstances.

4              Let's see where we are here.

5              The only issue I'm going to address here, today,

6      and get an update from Mr. Wexler on the money issue, but

7      the issue for today is the order to show cause which I

8      issued, and the matter, Miss Marino 's filing in the

9      Southern District of New York before, I believe Judge

10     Rakoff, and Mr. Anastasio, you have a pending matter in

11     State Court here in New Jersey.

12              MR. ANASTASIO: Yes, Your Honor.

13              THE COURT:  Let me -- I have read the papers.

14     I'm of the view at this stage, in any event, after

15     reading the papers that both the plaintiffs in the Federal

16     and State matters appear to be class members.  Even

17     perhaps admitted they're class members, and I'm having a

18     difficulty understanding why I should not enjoin both you

19     Miss Marino, and you have Mr. Anastasio, from proceeding

20     in those respective Courts.

21              But, Miss Marino, you in particular make a great

22     -- a great deal out of the due process concerns, so it

23     would be incumbent upon me to hear you.  So you tell me

24     why it's wrong.

25              MS. MARINO: Well, Your Honor, you said you read

1    the papers.  I don't want to be repetitive.  We simply

2    didn't know about the action.  If, if we knew about it, we

3    would have either brought the action here or opted out so

4    we could maintain our separate action.  We didn't know.

5            As you can see I did an extensive amount of

6    research in the time that I had.  Rule 23.  And, I

7    understand that it is the law.  I believe it's

8    unconstitutional, and I mean segregation was once legal

9    and accepted.  I don't think it's fair for my client to be

10   cast aside.

11           As a separate matter I made the cross motion

12   that my claim form at least be deemed timely filed non pro

13   tunc, and I asked Miss Rose actually in the beginning of

14   this when she asked me to discontinue my case, I suggested

15   if we could sign a stip that they will accept my claim,

16   but that they were unable to do that. My hands were tied.

17   I had to keep my action alive in the Southern District.  I

18   understand this Court maintains jurisdiction.  I have a

19   client to protect, and I couldn't look my client in the

20   eye and tell her you are out of luck, there's nothing

21   there for you because you didn't affirmatively opt out,

22   which really flies in the face of logic. You should really

23   have to affirmatively opt-in.  I think people get hurt

24   with this type thing, and injustice is inevitable,  and

25   I'm sure my client is not the only person who has been

1    cast aside because of the notice, or the lack thereof.

2           And if Your Honor feels that my case should be

3    enjoined in the Southern District, I respect and

4    understand the decision, but I would ask my cross motion

5    be granted.

6           I also don't believe that the defendants have

7    sufficiently opposed my cross motion.  They mention Rule

8    60.  We meet all the requirement of rule 60.  No one

9    disputes my claim of, regarding the lack Constitutionality

10   or due process.

11          THE COURT:  I don't think that's quite true.

12   They plainly assert, and the law seems to be clear, the

13   Constitutionality of Rule 23 has been upheld.  And, that

14   the process that was given here is the process that's due

15   under the circumstances.

16          Miss Marino, the facts are that your client

17   retained you in August of '07.  You had 15 months to

18   research the existence of this, the matters pending here,

19   the fact of the recall, which had been months earlier; the

20   fact of the matters pending here, the preliminary

21   approval, the final approval.  None of that was discovered

22   by you.  If you had discover all that, it seems to me you

23   would have had the ability to opt out.  Rule 11, and I'm

24   not prejudging whatever motions may be made in the

25   Southern District of New York, but Rule 11 requires you to

1  engage in an inquiry into the nature of the claim, what

2  theories exist, what Courts may be proper venues and have

3  appropriate jurisdiction to hear those claims.  If you had

4  done any of that research prior to November 24th, you

5  would have been able to preserve the rights of your

6  client.  Your client is out of luck because of inaction

7  when you had an affirmative obligation during that period

8  of time to research her claim and file it in an

9  appropriate Court.

10  I don't have that case before me, and I don't

11  want to, you know, put you in a box.  That issue hasn't

12  been litigated here.  But it doesn't seem to me that you

13  served your client well.  And the suggestion that there

14  was a lack of due process in this Court, or by these

15  parties, could be construed as an effort to deflect the

16  focus away from your own malpractice.

17  MS. MARINO: Your Honor, we researched a lot

18  about the food and about the poison.  I did not research a

19  class action.  But we engaged --

20  THE COURT:  If you researched Iams, they were

21  the subject of the proceedings in this Court.  If you

22  googled Iams, you would have found the existence of this

23  case.  We put it up on the Court website.  It was in every

24  major newspaper.  It was on the nightly news.  You have to

25  have had your head in the sand not to know about this

1    case.

2          MS. MARINO: Be that as it may, Your Honor, we

3    didn't.

4          THE COURT:  I have already ruled in this case

5    that actual notice is not required.  That the rule doesn't

6    require it.  The Constitution doesn't require it. The

7    publications were not random as you described them, but

8    carefully thought out.  They were proposed to this Court,

9    considered by this Court.  They were targeted to both

10   general circulation papers, to industry newspapers.  You

11   say, yourself, that your client went to a well-renowned

12   vet, specialized hospitals.  This was, there was a

13   specific targeted notice to the veterinarians of the

14   world, of the United States.  Easily, could have, you

15   client could have easily received notice that way.

16         You cite cases suggesting that the lack of

17   mailing or direct notice would be a Constitutional

18   infirmity. We had mailings to all known claimants in an

19   effort to reach them as well.

20         Your papers to me present arguments which you

21   disagree with Supreme Court precedent.  This Court is

22   bound by the Supreme Court.  I don't have any authority to

23   reject a Supreme Court decision because its reasoning is

24   not consistent, in your view, with its decision.  I'm not

25   sure why the 14th Amendment is thrown up at me unless this

involves citation to case law that involves class actions

pending in State Courts.  The precise issue was ruled upon

by me in this Court.  You were aware at least by December

that this case could implicate your proceedings, and yet

you did nothing to come to me.  We had to come to you.  We

had to go track you down and bring you here to ask you why

you're continuing to proceed in a Court in which a fair

construction of my order would lead a reasonable attorney

to know that you were acting in actual contempt of my

order.  You didn't come here.

      MS. MARINO: I did contact the Court, Your Honor.

      THE COURT:  You didn't file a motion.  You

didn't seek to intervene or to contest the final judgment

or appeal this matter.  You continued to litigate in

another forum in what could be fairly construed as actual

contempt of my outstanding order, which you were given --

talk about actual notice, the defendants told you about

it.

      MS. MARINO: Yes.  At that time I said just let's

extend the time to answer and try to figure this out here.

      THE COURT:  You didn't come to me.

      MS. MARINO: That's true.  The defendants made an

order to show cause, and here I am.

      THE COURT: Here you are.

      You argue case law that has, talks about

settlements that don't have opt out provisions.  We had

opt out provisions here.  I just -- this is as close to

sanctionable conduct as I have seen in a long time.  And I

don't know what else to say about it other than I -- it

seems to me it was not the case with regard to the claims

that one could recover up to 100 percent of your vet bills

and actual damages, as part of that settlement here.

MR. WEXLER: That was our goal.

THE COURT:  And $900 for those who didn't have

documented damages.  You've asserted that there's no

provision in this to address your client's damages, which

is factually inaccurate.

MS. MARINO: I apologize.  There's not a lot of

time to prepare my papers.  I did the best that I could.

THE COURT:  You had 15 months, Miss Marino, 15

months between the -- the affidavit of your client that

says she retained you in August of '07. You had 15 months

to figure out what claims she had and where they could be

asserted.  And, you waited until literally the day that

the claims period expired, after extensive hearings in

this Court, carefully calculated notice and broad

publicity.

I think if your client's pet died as a result of

the food manufactured by Iams or Menu Foods, then she

perhaps was a victim.  But I think she was victimized

1    twice by your failure to adequately address the legal

2    remedies available to her, and I don't think it's fair for

3    you to attribute to these parties or to this Court a lack

4    of due process.

5              So, unless you have something else to add, I'm

6    inclined to enjoin you from proceeding in the Southern

7    District of New York.  At this point I'm not going to

8    direct you to dismiss the case.  It seems to me that it

9    would, I want to be respectful of Judge Rakoff and his

10   docket.  But if you continue to prosecute that case, you

11   will be in my mind in contempt of this Court and this

12   Court's orders.

13             I leave it to you what you need to do to be in

14   compliance.

15             MS. MARINO: I understand that, and the cross

16   motion, Your Honor?

17             THE COURT:  Well, let me ask Mr. Wexler if I

18   could what the status of the various claims are, here.  Do

19   the likely claim exceeds the fund?

20             MR. WEXLER: They do.  We have 25,000 claims and

21   we're in the middle of the adjusting process.  We get

22   periodic reports from Heffler, the administrator.  All the

23   claims have not been vetted, yet.  We don't know what the

24   end number will be.  There are, they're just in that

25   process.

1          Now typically what will happen at the end of the

2     process, Heffler will make a recommendation to us and give

3     us the reasons why they are rejecting certain claims or

4     accepting claims; this one was late; this one was not;

5     whatever their recommendation is, and we will confirm on

6     ourselves and come to the Court with a proposed

7     distribution order and recommendation, and ask for Your

8     Honor's blessing of the distribution.

9          It's really premature to be able to judge, even

10    whether this claim would have an impact because until the

11    vetting process is finished, we really don't know the

12    aggregate number that is going to be requested to be paid

13    out to people and how that, whether there is a serious pro

14    rata distribution or whether it's 100 percent or not.  We

15    can't tell, yet.

16         THE COURT:  Does the claim administrator have

17    the capacity to keep a record of claims filed out of time?

18         MR. WEXLER: Yes. And we asked them to do that

19    because it's not unusual for claims to have come in late.

20    It's just not in a class action, whether securities case,

21    consumer case, antitrust or anything else.  And, sometimes

22    the administrator rejects it out of hand for that reason.

23    Sometimes they make a recommendation it be rejected out of

24    hand or that it, you know, so long as -- the key in my

25    experience is whether or not consideration of the claim

1    will affect the overall administration process.  This
2    case, considering where we are in the process, I would
3    say, no, it would not.  But whether or not it would be
4    accepted is another matter.
5              THE COURT:  All right.
6              My thought was that there were -- there were
7    provisions to pay over the remainder to charitable
8    organizations.  One could argue that it would be more
9    fair, if there were in fact extra funds available, that
10   perhaps they would be best applied to actual out of time
11   claims.  But that's why I asked.
12             MR. WEXLER: I think it's a great idea, but I
13   think what we're looking at, realistically, based on the
14   number of claims which I think the last time we were here
15   we were, it was 13,000. When the doors closed it became,
16   it was 25,000.  They have to be, you know, there are
17   standards that the administrator has to apply to make sure
18   that these are all legitimate claims, and it appears now
19   that there will be no remainder for charities.  But we
20   don't know.
21             THE COURT:  Well -- I'm sorry, Miss Gately.
22             MS. GATELY: May I say something for a moment?
23             THE COURT:  Sure.
24             MS. GATELY: I would just note in our papers we
25   sort of set forth our position on the late filing of the

1  claims which was, we said under the circumstances, this

2  isn't the right case for the Court the exercise its

3  discretion in that way.

4          I would note for the Court that next week we

5  have a reply brief due in the Southern District of New

6  York and as recently as last week we had a brief filed by

7  Miss Marino requesting the Southern District to proceed

8  ahead full steam.

9          Under these circumstances, I wanted to note that

10  for the Court, because we are continuing to have to expend

11  money to, you know, fight on two fronts, and I think if we

12  turn back to the point in time when she embarked on this

13  filing her claim, on November 24th in the Southern

14  District of New York instead of coming here, what we told

15  her at that time was dismiss your case in the Southern

16  District of New York, make your application here to this

17  Court, and that wasn't done.  Under these circumstances, I

18  would present that I have an objection to the Court having

19  the late claim, but we are continuing to expend extensive

20  resources which is not fair to the defendants at this

21  stage of the case.

22          MR. WEXLER: With respect to that --

23          THE COURT:  I'm sorry.  I don't want to lose the

24  thought that I'm hoping it will end.

25          MS. GATELY: Me, too, Your Honor.

                    MS. MARINO: Your Honor, I do not believe a reply

brief will be necessary.  I will discontinue the case in

the Southern District.

                    MR. WEXLER: With respect to the continuation of

expenditures of costs, which I certainly sympathize with

under these circumstances, you know, the late claim and

how it's considered has no impact on the defendants at

all.

                    THE COURT:  They have a --

                    MR. WEXLER: They will pay.  It's a liquidated

amount.  It's, you know, we have to consider together the

impact of late claims on other payments to the class and

whether permitted or not.  At this juncture it's been

submitted to the administrator who has it.  So, it's a

question of whether it just gets considered with

everything else, but the lateness is noted.  We are aware

of this, the peculiarities attached to this claim, and at

the appropriate time we will be able to address it with a

recommendation.  But it's just premature.

                    THE COURT:  So there exists at least the

possibility that if one determined that the pro rata

impact on all of the other claimants was, is minimal, that

some recovery to this or other late claimants might be at

the end of the day some possible amendment of the overall

settlement, and in the interest of fairness.

1          MR. WEXLER: Yes.  I don't know it requires an

2    amendment, but, yes, we understand, and this is one of the

3    issue with notice.  Notice is not perfect. Sometimes

4    people are a little late.  Maybe a good reason.  Maybe

5    there isn't.  And, it has to be taken into account as

6    well.  But, and maybe under these circumstances it's not a

7    good reason.  But it's just like I said, it's premature.

8    It may be appropriate.  We well test the impact of the

9    late claims on pro rata distributions or full

10   distributions and be able to make a judgement at that

11   point.

12          I could just tell you the volume, though, and

13   how its been constructed that you can imagine,

14   particularly in the undocumented phase where the

15   administrator has to read the explanations.  Some are

16   very, very long.  Pull out the numbers.  It's a, it's a

17   longer process than we all would like, but it's, that's

18   what is taking place now, and it's premature to make a

19   judgment of the effect of late claims on distributions.

20          THE COURT:  All right.  I feel comfortable

21   exercising jurisdiction and enjoining further proceedings

22   that, by class members in violation of my previous order.

23   I would be, I would at least need briefing on the issue of

24   any possible amendment of the final plain or final orders

25   here because we do have a pending appeal, do we not?

1        MR. WEXLER:  We do.  I would not make a -- this

2    would come up, we will bring a motion to distribute the

3    funds at which time we will address this issue with Your

4    Honor.  That's what we do as class counsel.  Being here

5    today and hearing your concerns and the arguments and

6    talking to defense counsel, we're, you know, we deal with

7    late claims on a regular basis.  Sometimes we ask for them

8    to be permitted and sometimes we ask for them not to be.

9    We'll give an explanation and brief the issue.

10        THE COURT:  Perhaps one of the reasons why the

11   final order recognized the continuing jurisdiction of this

12   Court.

13        MR. WEXLER:  That's right.

14        THE COURT:  To see that settlement terms are

15   ultimately put in place; that the relief negotiated is

16   implemented; and to the extent this Court would exercise

17   such powers, the continuing equitable power of the Court

18   should insure a just result under the circumstance.

19        MR. WEXLER:  That's right.

20        THE COURT:  Mr. Anastasio hasn't been heard

21   from, yes, but has his client put in a claim, Mr. Wexler,

22   to your knowledge?

23        MR. WEXLER:  We don't know.

24        MR. ANASTASIO:  No, Your Honor.  Although we

25   would like the opportunity to do so.  My client was among

1    that group that had two dogs that died as a result of the

2    food.  My client psychologically spun out of control and

3    her entire life melted down with every characteristic you

4    could imagine associated with that, what I'm describing.

5          She did come to me with this matter.  I was

6    unaware of the claim.  Perhaps I'm in the same group as

7    Miss Constance Marino, with regard to the not making

8    adequate preparation.

9          THE COURT:  I'm not asking you to fall on your

10    sword, Mr. Anastasio. Your papers were --

11          MR. ANASTASIO: My client is among that group

12    also that the, this litigation and settlement was

13    specifically designed to assist.  She is among that group.

14    She has medical bills.  She has costs of purchase of her

15    dogs -- all of the information needed in order to

16    demonstrate that she in fact is among the group who this

17    entire litigation was designed to benefit, and to resolve

18    the issue that was the very issue that is in her case.

19          Failure by either counsel or through information

20    distribution, in not knowing that there were time limits

21    in the filings, and in the end, the result is that the

22    person who has been victimized is now victimized again.

23          I understand there needs to be on the part of

24    Menu Foods and the other defendants that an answer to the

25    solution to this to move on and an end to it as with all

1    Court proceedings.  Reviewing the Judge's order, reviewing

2    the fillings, and all of that, clearly there's ample legal

3    basis to overcome the objections raised by counsel.

4    However, in that the Menu Foods and other plaintiffs

5    really in no way would be harmed by my client being

6    included in on that class, and being that it would be an

7    additional devastation for my client after having lost the

8    two dog, having lost her family, and all of the other

9    things that occurred as a result of some of these actions,

10    that in the interest of true justice to the individual, I

11    think that it would be appropriate to include her in that

12    class of people who could at lease benefit, to the limited

13    extent that the settlement consent order allows.

14             THE COURT:  Well, are you familiar, Mr.

15    Anastasio, with the Chancellor's foot?

16             MR. ANASTASIO: No, Your Honor.

17             THE COURT:  The -- first of all I think Mr.

18    Wexler has recognized, and suggested to me that the

19    proceedings pending before me have some room for equitable

20    considerations at the end of the line.  There are limits

21    to equity.  There's value to the law.  You have rules and

22    they're followed.  Then there is, and there is adequate

23    notice then there is a fairness to the uniform application

24    of a known rule.  But if I exercised my equity and let a

25    couple people in the door after the door is closed, it

raises another equitable issue, and that is the equitable
issue associated with all those other people out there who
also didn't get it in time and also suffered a loss, and
also suffered harm.  This is an imperfect system.  But,
why should I cut the recovery for those who followed the
rule of law, followed the orders of the Court, and made
timely claims in order to benefit your clients when there
were other people similar situated who will recover
nothing.  The notion of the Chancellor's foot is equity is
in the, is in the power of the Court, but every Court
exercises it would, and sees it differently.  You might as
well measure the Chancellor's foot to determine the extent
of the equity that would be granted.  That has its own
inequities, its own unfairness.

So I'm going to leave it to another day, and Mr.
Wexler's advocacy and good judgment as this thing moves
forward to see how the claims play out.  Nothing that I
would do today here should be construed as any prejudice
to Miss Marino's application to the claims administrator
or to any that you might file, or indeed any that might
come in late.  But you will have to recognize that you're
late.  The issue of the adequacy of this, the notice and
adequacy of this settlement will be decided, it seems to
me, by the Court of Appeals, and if it's affirmed, then
this issue will be joined.  But in the interim you have

1    all the other remedies available to you at law, and my

2    suggestion is that you get in line and see how it plays

3    out.

4           MS. MARINO: For the record, we will withdraw our

5    State action.

6           THE COURT:  All right.  That would be consistent

7    with the orders previously ordered, entered by this Court.

8           MR. ANASTASIO: Yes, Your Honor.

9           THE COURT:  And any further prosecution of those

10   actions will be considered by this Court as a potential

11   act of contempt.

12          MR. ANASTASIO: I understand.

13          THE COURT:  Anything further, Miss Gately?

14          I see in your footnote that you are willing,

15   despite the positions you have taken, and I take no issue

16   with them, it seems to me you are gracious in your

17   footnote with regard to attorney fees, that you will give

18   Miss Marino and Mr. Anastasio another chance to do the

19   right thing.

20          MS. GATELY: That's right, Your Honor.

21          THE COURT:  Without prejudice.

22          MS. GATELY: Without prejudice to a future

23   application if they continue their cases.

24          The only remaining matter, I could give an

25   update relating to the status of the Canadian order when

1  you are ready.

2       THE COURT:  The Canadian order --

3       MS. GATELY: Of the Provinces.

4       THE COURT: Let's wrap this one up.

5       Miss Gately, I'll ask you to submit an order, a

6  final order enjoining the plaintiffs in the pending matter

7  in the Southern District, and the matter in the New Jersey

8  State Court from proceeding further in those, prosecuting

9  those claims in these Courts.  I'll ask you to draft it in

10  a way that makes -- I don't quite feel comfortable

11  ordering them to dismiss them.  I'm not sure there's much

12  of a distinction there, but I certainly feel comfortable

13  enjoining them from proceeding further.

14       MS. GATELY: I'm clear on how to do that.

15       THE COURT:  All right.

16       I'm going to deny, to the extent that the

17  requested relief includes attorney's fees, I'm going to

18  deny that without prejudice.  I'm going to deny the cross

19  motion to allow for the claims to be recognized as a

20  timely claim, to be filed timely, non pro tunc. And, I'll

21  deny the, that the sum certain be allowed for that claim.

22       Nothing in that ruling, as I indicated, will

23  preclude the claims administrator from acknowledging,

24  recording, and in essence placing on the shelf any out of

25  time claims, including any filed in the future by Mr.

1    Anastasio's client, and the one that has been claimed, and

2    perhaps further supplemented by submissions made by Miss

3    Marino.

4           Whether those are recognized by this Court at

5    the end of the day requires more proceedings, more

6    history, and a report by the claims administrator when we

7    come to the final distribution.  I will take up any legal

8    and equitable arguments regarding those claims when that

9    issue is properly joined.

10           Anything further, Miss Marino?

11           MS. MARINO: No, Your Honor.

12           THE COURT:  Mr. Anastasio?

13           MR. ANASTASIO: No, Your Honor.

14           THE COURT:  Anything further, Miss Gately?

15           MS. GATELY: No, Your Honor.

16           THE COURT:  Mr. Wexler, anything further on that

17    issue?

18           MR. WEXLER: No.  You covered it.

19           Thank you.

20           THE COURT:  All right.

21           Miss Gately, how many Provinces are there in

22    Canada?

23           MS. GATELY: We have 7 of 9. We're getting there

24    slowly, ever so slowly.  Alberta and New Brunswick are

25    still holding out.  Alberta, as I mentioned in one of the

1  prior telephonic status hearings, had raised an issue with

2  respect to the currency issue, that the Canadian

3  plaintiffs had raised, and there has been a back and forth

4  from the plaintiff's lawyers in Canada responding to the

5  Court's inquiry, and I think we expect that that has been

6  resolved, and that there's nothing that's stopping the

7  Court from issuing the order, but not -- New Brunswick is

8  just taking its time.

9       THE COURT:  An island unto itself. Or connected

10  to the mainland, but in any event, it's encouraging we

11  have 7 of 9.  A little bit frustrating we don't have the

12  other 2.  It's clear to me you have been working

13  diligently on it, consistently, and that it's once again

14  just a matter of time.  Is that a fair assessment?

15       MS. GATELY: Yes, Your Honor.  My Canadian

16  counsel again predicts a week, 10 days, hopefully, and

17  they expect to get the other orders.  They can't guarantee

18  that, but that's what they expect.

19       THE COURT:  All right.

20       Mr. Wexler, is that your understanding?

21       MR. WEXLER: We are hostage to the Canadians

22  right now.  It is my understanding.

23       THE COURT:  All right.

24       And nothing else that you can do that you

25  haven't already done in anticipation of those orders.

1    There's a place, once the orders are in place and no

2    longer in violation of the Canadian orders that the

3    mechanism is in place?

4         MR. WEXLER: We have an escrow set up as Wells

5    Fargo.  It's ready to receive funds as soon as the matter

6    is funded, which is after New Brunswick and Alberta weigh

7    in.

8         THE COURT:  Miss Gately on behalf of the

9    defendants and various contributors to the fund, there

10   continues to be no reason to believe that the money is not

11   still available and ready to be contributed to the fund at

12   the appropriate time.

13        MS. GATELY: We can't wait to get the funds in

14   there.  We've been ready, willing, and able to get it in

15   for quite some time.

16        THE COURT:  As Mr. Anastasio and Miss Marino's

17   presence make clear, there's a lot of people in line and

18   waiting.

19        So, I can continue to appreciate the efforts of

20   everyone to work through the difficult issue to deal with

21   the multi-jurisdictional wrinkles.  There's nothing more

22   I can do except thank you for your updates, and thank you,

23   and await the final word.

24        I suppose we should set it down for a telephone

25   conference.  Miss Neuvoa is right on the spot here.  April

1    20th, 2009, at 1:00 o'clock, if we could have our standard

2    telephone conference?  It's another 17 days, which even by

3    Canadian time should be all right.

4            MS. MARINO: It does not include myself and Mr.

5    Anastasio, correct?

6            THE COURT:  Subject to our jurisdiction, as a

7    result of the finally settlement order, and order to show

8    cause, but we have liaison counsel on the plaintiff's side

9    and on the defense side.  You have not formally intervened

10   in these proceedings, so although as a member of the class

11   you are entitled to all the rights attendant to that

12   status, and I ask you to confer with Mr. Wexler about the

13   status of the case so that you are aware of the nature of

14   the proceedings here, but this is conference for liaison

15   counsel only.

16           MS. MARINO: Thank you.

17           THE COURT:  All right.

18           Anything further for today?

19           I know I have some pending motions that I'll

20   take up shortly.  I may have you back here on one of them,

21   but -- they're t'd up.  One, I believe is an issue with

22   regard to the destruction of the inventory which was not

23   fully briefed.

24           MR. WEXLER: We are filing a brief, today.

25           THE COURT:  All right.  I'll take that up and

1    the other issue concerning the appeal in short order.

2           Please expect something soon or otherwise you'll

3    hear from the Court concerning the scheduling of a

4    hearing.

5

6           MR. WEXLER: Yes, sir.

7           MS. GATELY: Thank you, Your Honor.

8           THE COURT:  Thank you all for being here.

9           Mr. Anastasio and Miss Marino, I expect you'll

10   be getting in line.  Unfortunately it's the end of the

11   line, but you will be in line, and I'll sign the order

12   that I have asked for promptly when it's submitted.

13          The record will reflect the denial of the

14   motions.  If the order could also specify the ruling with

15   regard to the motions I would appreciate it.

16          MS. GATELY: Yes, Your Honor.

17          THE COURT:  Nice to see you all again.

18          Good luck, and see you again, soon.

19   (At which time the matter was adjourned)

20          *******

21

22

23

24

25

1 **C E R T I F I C A T E.**

2

3

4

5   I, Stephen J. Daner, C.C.R., Official United States Court

6   Reporter and Certified Court Reporter of the State of New

7   Jersey, do hereby certify that the foregoing is a true and

8   accurate transcript of the testimony as taken

9   stenographically by and before me at the time, place and

10   on the date hereinbefore set forth.

11   I do further certify that I am neither a relative nor

12   employee nor attorney nor counsel of any of the parties to

13   this action, and that I am neither a relative nor employee

14   of such attorney or counsel and that I am not financially

15   interested in this action.

16

17

18

19

20

21   S/STEPHEN J. DANER
   STEPHEN J. DANER, C.C.R.

22   Certificate No. 30X100151400
   Date: April 4, 2009

23

24

25

0

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

**$**

**$900** [1] - 12:9

**'**

**'07** [2] - 8:17, 12:17

**0**

**07-2867** [1] - 4:8
**08101** [1] - 1:19

**1**

**10** [1] - 26:16
**100** [2] - 12:6, 14:14
**11** [2] - 8:23, 8:25
**13,000** [1] - 15:15
**14th** [1] - 10:25
**15** [4] - 8:17, 12:15, 12:17
**17** [1] - 28:2
**1850** [1] - 4:8
**1:00** [1] - 28:1

**2**

**2** [1] - 26:12
**2009** [4] - 1:15, 4:4, 28:1, 30:22
**20th** [1] - 28:1
**23** [2] - 7:6, 8:13
**24th** [2] - 9:4, 16:13
**25,000** [2] - 13:20, 15:16

**3**

**3** [2] - 1:15, 4:4
**30X100151400** [1] - 30:22

**4**

**4** [1] - 30:22

**6**

**60** [2] - 8:8

**7**

**7** [2] - 25:23, 26:11

**9**

**9** [2] - 25:23, 26:11

**A**

**ability** [1] - 8:23
**able** [5] - 9:5, 14:9, 17:18, 18:10, 27:14
**accept** [1] - 7:15
**accepted** [2] - 7:9, 15:4
**accepting** [1] - 14:4
**account** [1] - 18:5
**accurate** [1] - 30:8
**acknowledging** [1] - 24:23
**act** [1] - 23:11
**acting** [1] - 11:9
**ACTION** [1] - 1:8
**action** [9] - 7:2, 7:3, 7:4, 7:17, 9:19, 14:20, 23:5, 30:13, 30:15
**actions** [3] - 11:1, 21:9, 23:10
**actual** [6] - 10:5, 11:9, 11:15, 11:17, 12:7, 15:10
**add** [1] - 13:5
**additional** [1] - 21:7
**address** [5] - 6:5, 12:11, 13:1, 17:18, 19:3
**adequacy** [2] - 22:22, 22:23
**adequate** [2] - 20:8, 21:22
**adequately** [1] - 13:1
**adjourned** [1] - 29:19
**adjusting** [1] - 13:21
**administration** [1] - 15:1
**administrator** [9] - 13:22, 14:16, 14:22, 15:17, 17:14, 18:15, 22:19, 24:23, 25:6
**admitted** [1] - 6:17
**advocacy** [2] - 22:16
**affect** [1] - 15:1
**affidavit** [1] - 12:16
**affirmatively** [2] - 7:21, 7:23
**affirmed** [1] - 22:24
**aggregate** [1] - 14:12
**ahead** [1] - 16:8
**Alberta** [3] - 25:24, 25:25, 27:6

**alive** [1] - 7:17
**allow** [1] - 24:19
**allowed** [1] - 24:21
**allows** [1] - 21:13
**Amendment** [1] - 10:25
**amendment** [3] - 17:24, 18:2, 18:24
**amount** [2] - 7:5, 17:11
**ample** [1] - 21:2
**Anastasio** [12] - 4:23, 4:25, 6:10, 6:19, 19:20, 20:10, 21:15, 23:18, 25:12, 27:16, 28:5, 29:9
**ANASTASIO** [10] - 2:12, 4:23, 5:2, 6:12, 19:24, 20:11, 21:16, 23:8, 23:12, 25:13
**Anastasio's** [1] - 25:1
**answer** [2] - 11:20, 20:24
**anticipation** [1] - 26:25
**antitrust** [1] - 14:21
**apologize** [1] - 12:13
**appeal** [3] - 11:14, 18:25, 29:1
**Appeals** [1] - 22:24
**appear** [1] - 6:16
**Appearance** [1] - 4:9
**application** [4] - 16:16, 21:23, 22:19, 23:23
**applied** [1] - 15:10
**apply** [1] - 15:17
**appreciate** [2] - 27:19, 29:15
**appropriate** [6] - 9:3, 9:9, 17:18, 18:8, 21:11, 27:12
**approval** [1] - 8:21
**April** [3] - 4:4, 27:25, 30:22
**APRIL** [1] - 1:15
**argue** [2] - 11:25, 15:8
**arguments** [3] - 10:20, 19:5, 25:8
**aside** [2] - 7:10, 8:1
**assert** [1] - 8:12
**asserted** [2] - 12:10, 12:19
**assessment** [1] - 26:14
**assist** [1] - 20:13
**associated** [2] - 20:4, 22:2

**AT** [1] - 1:23
**attached** [1] - 17:17
**attendant** [1] - 28:11
**ATTORNEY** [8] - 2:3, 2:7, 2:10, 2:13, 2:17, 2:21, 3:4, 3:8
**attorney** [4] - 11:8, 23:17, 30:12, 30:14
**attorney's** [1] - 24:17
**attribute** [1] - 13:3
**August** [2] - 8:17, 12:17
**authority** [1] - 10:22
**available** [4] - 13:2, 15:9, 23:1, 27:11
**await** [1] - 27:23
**aware** [3] - 11:3, 17:16, 28:13

**B**

**based** [1] - 15:13
**basis** [2] - 19:7, 21:3
**became** [1] - 15:15
**beginning** [1] - 7:13
**behalf** [4] - 4:16, 5:6, 5:11, 27:8
**benefit** [3] - 20:17, 21:12, 22:7
**BERGE** [1] - 5:19
**Berge** [1] - 5:20
**BERGER** [1] - 2:5
**Berger** [1] - 4:15
**best** [2] - 12:14, 15:10
**between** [1] - 12:16
**bills** [2] - 12:6, 20:14
**bit** [1] - 26:11
**blessing** [1] - 14:8
**bound** [1] - 10:22
**box** [1] - 9:11
**Brian** [1] - 5:11
**BRIAN** [1] - 2:20
**brief** [5] - 16:5, 16:6, 17:2, 19:9, 28:24
**briefed** [1] - 28:23
**briefing** [1] - 18:23
**bring** [2] - 11:6, 19:2
**broad** [1] - 12:21
**brought** [1] - 7:3
**Brunswick** [3] - 25:24, 26:7, 27:6
**BY** [6] - 2:2, 2:6, 2:16, 2:20, 3:3, 3:7

**C**

**C.C.R** [2] - 30:5,

30:21
**calculated** [1] - 12:21
**Camden** [2] - 4:3, 5:1
**CAMDEN** [2] - 1:19, 1:23
**Canada** [2] - 25:22, 26:4
**Canadian** [6] - 23:25, 24:2, 26:2, 26:15, 27:2, 28:3
**Canadians** [1] - 26:21
**capacity** [1] - 14:17
**carefully** [2] - 10:8, 12:21
**case** [21] - 7:14, 8:2, 9:10, 9:23, 10:1, 10:4, 11:1, 11:4, 11:25, 12:5, 13:8, 13:10, 14:20, 14:21, 15:2, 16:2, 16:15, 16:21, 17:2, 20:18, 28:13
**cases** [2] - 10:16, 23:23
**cast** [2] - 7:10, 8:1
**CAUSE** [1] - 1:13
**CCR** [1] - 3:11
**certain** [2] - 14:3, 24:21
**certainly** [2] - 17:5, 24:12
**Certificate** [1] - 30:22
**Certified** [1] - 30:6
**certify** [2] - 30:7, 30:11
**chance** [1] - 23:18
**Chancellor's** [3] - 21:15, 22:9, 22:12
**characteristic** [1] - 20:3
**charitable** [1] - 15:7
**charities** [1] - 15:19
**circulation** [1] - 10:10
**circumstance** [1] - 19:18
**circumstances** [7] - 6:3, 8:15, 16:1, 16:9, 16:17, 17:6, 18:6
**citation** [1] - 11:1
**cite** [1] - 10:16
**CIVIL** [1] - 1:8
**claim** [17] - 7:12, 7:15, 8:9, 9:1, 9:8, 13:19, 14:10, 14:16, 14:25, 16:13, 16:19, 17:6, 17:17, 19:21, 20:6, 24:20, 24:21

**claimants** [3] - 10:18, 17:22, 17:23
**claimed** [1] - 25:1
**claims** [28] - 9:3, 12:5, 12:18, 12:20, 13:18, 13:20, 13:23, 14:3, 14:4, 14:17, 14:19, 15:11, 15:14, 15:18, 16:1, 17:12, 18:9, 18:19, 19:7, 22:7, 22:17, 22:19, 24:9, 24:19, 24:23, 24:25, 25:6, 25:8
**class** [12] - 4:11, 6:16, 6:17, 9:19, 11:1, 14:20, 17:12, 18:22, 19:4, 21:6, 21:12, 28:10
**clear** [4] - 8:12, 24:14, 26:12, 27:17
**clearly** [1] - 21:2
**client** [18] - 7:9, 7:19, 7:25, 8:16, 9:6, 9:13, 10:11, 10:15, 12:16, 19:21, 19:25, 20:2, 20:11, 21:5, 21:7, 25:1
**client's** [2] - 12:11, 12:23
**clients** [2] - 22:7
**close** [1] - 12:2
**closed** [2] - 15:15, 21:25
**COHEN** [1] - 1:17
**comfortable** [3] - 18:20, 24:10, 24:12
**coming** [1] - 16:14
**COMPANY** [1] - 2:21
**Company** [1] - 5:12
**compliance** [1] - 13:14
**concerning** [2] - 29:1, 29:3
**concerns** [2] - 6:22, 19:5
**conduct** [1] - 12:3
**confer** [1] - 28:12
**conference** [3] - 27:25, 28:2, 28:14
**confirm** [1] - 14:5
**connected** [1] - 26:9
**consent** [1] - 21:13
**consider** [1] - 17:11
**consideration** [1] - 14:25
**considerations** [1] - 21:20
**considered** [4] - 10:9, 17:7, 17:15, 23:10

**considering** [1] - 15:2
**consistent** [2] - 10:24, 23:6
**consistently** [1] - 26:13
**CONSTANCE** [1] - 2:9
**Constance** [2] - 4:19, 20:7
**Constitution** [1] - 10:6
**Constitutional** [1] - 10:17
**Constitutionality** [2] - 8:9, 8:13
**constructed** [1] - 18:13
**construction** [1] - 11:8
**construed** [3] - 9:15, 11:15, 22:18
**consumer** [1] - 14:21
**contact** [1] - 11:11
**contempt** [4] - 11:9, 11:16, 13:11, 23:11
**contest** [1] - 11:13
**continuation** [1] - 17:4
**continue** [3] - 13:10, 23:23, 27:19
**continued** [1] - 11:14
**continues** [1] - 27:10
**continuing** [5] - 11:7, 16:10, 16:19, 19:11, 19:17
**contributed** [1] - 27:11
**contributors** [1] - 27:9
**control** [1] - 20:2
**correct** [1] - 28:5
**costs** [2] - 17:5, 20:14
**counsel** [11] - 5:7, 5:15, 19:4, 19:6, 20:19, 21:3, 26:16, 28:8, 28:15, 30:12, 30:14
**couple** [1] - 21:25
**Court** [42] - 4:1, 4:2, 6:11, 7:18, 9:9, 9:14, 9:21, 9:23, 10:8, 10:9, 10:21, 10:22, 10:23, 11:3, 11:7, 11:11, 12:21, 13:3, 13:11, 14:6, 16:2, 16:4, 16:10, 16:17, 16:18, 19:12, 19:16, 19:17, 21:1, 22:6, 22:10,

22:24, 23:7, 23:10, 24:8, 25:4, 26:7, 29:3, 30:5, 30:6
**COURT** [58] - 1:1, 1:23, 3:12, 4:5, 4:12, 4:17, 4:20, 4:25, 5:3, 5:8, 5:13, 5:16, 5:22, 6:13, 8:11, 9:20, 10:4, 11:12, 11:21, 11:24, 12:9, 12:15, 13:17, 14:16, 15:5, 15:21, 15:23, 16:23, 17:9, 17:20, 18:20, 19:10, 19:14, 19:20, 20:9, 21:14, 21:17, 23:6, 23:9, 23:13, 23:21, 24:2, 24:4, 24:15, 25:12, 25:14, 25:16, 25:20, 26:9, 26:19, 26:23, 27:8, 27:16, 28:6, 28:17, 28:25, 29:8, 29:17
**Court's** [2] - 13:12, 26:5
**COURTHOUSE** [1] - 1:17
**Courts** [4] - 6:20, 9:2, 11:2, 24:9
**covered** [1] - 25:18
**COX** [1] - 2:19
**Cristen** [1] - 5:21
**CRISTEN** [1] - 3:7
**cross** [5] - 7:11, 8:4, 8:7, 13:15, 24:18
**currency** [1] - 26:2
**cut** [1] - 22:5
**CYNTHIA** [1] - 2:13
**Cynthia** [1] - 4:24

# D

**damages** [3] - 12:7, 12:10, 12:11
**Daner** [1] - 30:5
**DANER** [3] - 3:11, 30:21, 30:21
**DATE** [1] - 1:15
**date** [1] - 30:10
**Date** [1] - 30:22
**days** [2] - 26:16, 28:2
**deal** [3] - 6:22, 19:6, 27:20
**December** [1] - 11:3
**decided** [1] - 22:23
**decision** [3] - 8:4, 10:23, 10:24
**deemed** [1] - 7:12
**DEFENDANT** [2] - 2:17, 2:21

**defendants** [9] - 5:7, 5:15, 8:6, 11:17, 11:22, 16:20, 17:7, 20:24, 27:9
**DEFENDANTS** [1] - 3:4
**defense** [2] - 19:6, 28:9
**deflect** [1] - 9:15
**demonstrate** [1] - 20:16
**DEMPSEY** [1] - 3:2
**denial** [1] - 29:13
**deny** [4] - 24:16, 24:18, 24:21
**described** [1] - 10:7
**describing** [1] - 20:4
**designed** [2] - 20:13, 20:17
**despite** [1] - 23:15
**destruction** [1] - 28:22
**determine** [1] - 22:12
**determined** [1] - 17:21
**devastation** [1] - 21:7
**died** [2] - 12:23, 20:1
**differently** [1] - 22:11
**difficult** [1] - 17:20
**difficulty** [1] - 6:18
**diligently** [1] - 26:13
**direct** [2] - 10:17, 13:8
**disagree** [1] - 10:21
**discontinue** [2] - 7:14, 17:2
**discover** [1] - 8:22
**discovered** [1] - 8:21
**discretion** [1] - 16:3
**disembodied** [1] - 5:9
**dismiss** [3] - 13:8, 16:15, 24:11
**disputes** [1] - 8:9
**distinction** [1] - 24:12
**distribute** [1] - 19:2
**distribution** [5] - 14:7, 14:8, 14:14, 20:20, 25:7
**distributions** [3] - 18:9, 18:10, 18:19
**District** [13] - 4:2, 4:3, 6:9, 7:17, 8:3, 8:25, 13:7, 16:5, 16:7, 16:14, 16:16, 17:3, 24:7
**DISTRICT** [4] - 1:1,

1:2, 1:22, 1:23
**DLA** [1] - 2:15
**docket** [2] - 4:8, 13:10
**documented** [1] - 12:10
**dog** [1] - 21:8
**dogs** [2] - 20:1, 20:15
**done** [3] - 9:4, 16:17, 26:25
**door** [2] - 21:25
**doors** [1] - 15:15
**Dotoli** [1] - 4:24
**DOTOLI** [1] - 2:13
**down** [3] - 11:6, 20:3, 27:24
**draft** [1] - 24:9
**due** [6] - 6:22, 8:10, 8:14, 9:14, 13:4, 16:5
**during** [1] - 9:7

# E

**Easily** [1] - 10:14
**easily** [1] - 10:15
**effect** [1] - 18:19
**effort** [2] - 9:15, 10:19
**efforts** [1] - 27:19
**either** [2] - 7:3, 20:19
**embarked** [1] - 16:12
**employee** [2] - 30:12, 30:13
**encouraging** [1] - 26:10
**end** [9] - 13:24, 14:1, 16:24, 17:24, 20:21, 20:25, 21:20, 25:5, 29:10
**engage** [1] - 9:1
**engaged** [1] - 9:19
**enjoin** [2] - 6:18, 13:6
**enjoined** [1] - 8:3
**enjoining** [3] - 18:21, 24:6, 24:13
**entered** [1] - 23:7
**entire** [2] - 20:3, 20:17
**entitled** [1] - 28:11
**equitable** [5] - 19:17, 21:19, 22:1, 25:8
**equity** [4] - 21:21, 21:24, 22:9, 22:13
**escrow** [1] - 27:4
**ESQUIRE** [8] - 2:2, 2:6, 2:9, 2:12, 2:16, 2:20, 3:3, 3:7

**essence** [1] - 24:24
**event** [2] - 6:14, 26:10
**exceeds** [1] - 13:19
**except** [1] - 27:22
**exercise** [2] - 16:2, 19:16
**exercised** [1] - 21:24
**exercises** [1] - 22:11
**exercising** - 18:21
**exist** [1] - 9:2
**existence** [2] - 8:18, 9:22
**exists** [1] - 17:20
**expect** [5] - 26:5, 26:17, 26:18, 29:2, 29:9
**expend** [2] - 16:10, 16:19
**expenditures** [1] - 17:5
**experience** [1] - 14:25
**expired** [1] - 12:20
**explanation** [1] - 19:9
**explanations** [1] - 18:15
**extend** [1] - 11:20
**extensive** [3] - 7:5, 12:20, 16:19
**extent** [4] - 19:16, 21:13, 22:12, 24:16
**extra** [1] - 15:9
**eye** [1] - 7:20

**F**

**face** [1] - 7:22
**fact** [4] - 8:19, 8:20, 15:9, 20:16
**facts** [1] - 8:16
**factually** [1] - 12:12
**Failure** [1] - 20:19
**failure** [1] - 13:1
**fair** [6] - 7:9, 11:7, 13:2, 15:9, 16:20, 26:14
**fairly** [1] - 11:15
**fairness** [2] - 17:25, 21:23
**fall** [1] - 20:9
**familiar** [1] - 21:14
**family** [1] - 21:8
**Fargo** [1] - 27:5
**FARUKI** [1] - 2:19
**Federal** [1] - 6:15
**fees** [2] - 23:17,

24:17
**fight** [1] - 16:11
**figure** [2] - 11:20, 12:18
**file** [3] - 9:8, 11:12, 22:20
**filed** [5] - 7:12, 14:17, 16:6, 24:20, 24:25
**filing** [4] - 6:8, 15:25, 16:13, 28:24
**filings** [1] - 20:21
**fillings** [1] - 21:2
**final** [8] - 8:21, 11:13, 18:24, 19:11, 24:6, 25:7, 27:23
**finally** [1] - 28:7
**financially** [1] - 30:14
**finished** [1] - 14:11
**first** [2] - 4:22, 21:17
**flies** [1] - 7:22
**focus** [1] - 9:16
**followed** [3] - 21:22, 22:5, 22:6
**following** [1] - 4:1
**FOOD** [1] - 1:7
**food** [3] - 9:18, 12:24, 20:2
**Food** [1] - 4:7
**Foods** [5] - 5:6, 5:21, 12:24, 20:24, 21:4
**FOODS** [1] - 2:17
**foot** [3] - 21:15, 22:9, 22:12
**footnote** [2] - 23:14, 23:17
**FOR** [9] - 1:2, 2:3, 2:7, 2:10, 2:13, 2:17, 2:21, 3:4, 3:8
**foregoing** [1] - 30:7
**form** [1] - 7:12
**formally** [1] - 28:9
**forth** [3] - 15:25, 26:3, 30:10
**forum** [1] - 11:15
**forward** [1] - 22:17
**fronts** [1] - 16:11
**frustrating** [1] - 26:11
**full** [2] - 16:8, 18:9
**fully** [1] - 28:23
**fund** [3] - 13:19, 27:9, 27:11
**funded** [1] - 27:6
**funds** [4] - 15:9, 19:3, 27:5, 27:13
**future** [2] - 23:22, 24:25

**G**

**GAMBLE** [1] - 3:4
**Gately** [7] - 5:6, 15:21, 23:13, 24:5, 25:14, 25:21, 27:8
**GATELY** [15] - 2:16, 5:5, 15:22, 15:24, 16:25, 23:20, 23:22, 24:3, 24:14, 25:15, 25:23, 26:15, 27:13, 29:7, 29:16
**general** [1] - 10:10
**GERRY** [1] - 1:18
**given** [2] - 8:14, 11:16
**goal** [1] - 12:8
**GOODMAN** [3] - 3:3, 5:14, 5:18
**Goodman** [1] - 5:14
**Goodmen** [1] - 5:16
**googled** [1] - 9:22
**gracious** [1] - 23:16
**granted** [2] - 8:5, 22:13
**great** [3] - 6:21, 6:22, 15:12
**Great** [1] - 4:14
**group** [5] - 20:1, 20:6, 20:11, 20:13, 20:16
**guarantee** [1] - 26:17
**guess** [2] - 4:7, 5:25

**H**

**hand** [2] - 14:22, 14:24
**hands** [1] - 7:16
**harm** [1] - 22:4
**harmed** [1] - 21:5
**HARTSON** [1] - 3:6
**head** [1] - 9:25
**hear** [3] - 6:23, 9:3, 29:3
**heard** [1] - 19:20
**hearing** [4] - 5:23, 19:5, 29:4
**hearings** [2] - 12:20, 26:1
**Heffler** [1] - 13:22, 14:2
**hereby** [1] - 30:7
**hereinbefore** [1] - 30:10
**highly** [1] - 5:25
**HILLMAN** [1] - 1:22
**Hillman** [1] - 4:2

**history** [1] - 25:6
**HOGAN** [1] - 3:6
**holding** [1] - 25:25
**Honor** [24] - 4:18, 5:5, 5:18, 5:19, 6:12, 6:25, 8:2, 9:17, 10:2, 11:11, 13:16, 16:25, 17:1, 19:4, 19:24, 21:16, 23:8, 23:20, 25:11, 25:13, 25:15, 26:15, 29:7, 29:16
**Honor's** [1] - 14:8
**Honorable** [1] - 4:2
**HONORABLE** [1] - 1:22
**hopefully** [1] - 26:16
**hoping** [1] - 16:24
**hospitals** [1] - 10:12
**hostage** [1] - 26:21
**hurt** [1] - 7:23

**I**

**IAMS** [1] - 2:21
**Iams** [4] - 5:11, 9:20, 9:22, 12:24
**idea** [1] - 15:12
**imagine** [2] - 18:13, 20:4
**impact** [5] - 14:10, 17:7, 17:12, 17:22, 18:8
**imperfect** [1] - 22:4
**implemented** [1] - 19:16
**implicate** [1] - 11:4
**IN** [1] - 1:6
**inaccurate** [1] - 12:12
**inaction** [1] - 9:6
**inclined** [1] - 13:6
**include** [2] - 21:11, 28:4
**included** [1] - 21:6
**includes** [1] - 24:17
**including** [1] - 24:25
**incumbent** [1] - 6:23
**indeed** [1] - 22:20
**indicated** [1] - 24:22
**individual** [1] - 21:10
**industry** [1] - 10:10
**inequities** [1] - 22:14
**inevitable** [1] - 7:24
**infirmity** [1] - 10:18
**information** [2] - 20:15, 20:19
**injustice** [1] - 7:24
**inquiry** [2] - 9:1, 26:5
**instead** [1] - 16:14

**insure** [1] - 19:18
**interest** [2] - 17:25, 21:10
**interested** [1] - 30:15
**interim** [1] - 22:25
**intervene** [1] - 11:13
**intervened** [1] - 28:9
**inventory** [1] - 28:22
**involves** [2] - 11:1
**IRLEAND** [1] - 2:19
**island** [1] - 26:9
**issue** [23] - 6:5, 6:6, 6:7, 9:11, 11:2, 18:3, 18:23, 19:3, 19:9, 20:18, 22:1, 22:2, 22:22, 22:25, 23:15, 25:9, 25:17, 26:1, 26:2, 27:20, 28:21, 29:1
**issued** [1] - 6:8
**issuing** [1] - 26:7
**itself** [1] - 26:9

**J**

**Jersey** [5] - 4:3, 6:11, 24:7, 30:7
**JERSEY** [4] - 1:2, 1:19, 1:23
**JOHN** [1] - 1:18
**joined** [2] - 22:25, 25:9
**judge** [1] - 14:9
**Judge** [2] - 6:9, 13:9
**Judge's** [1] - 21:1
**judgement** [1] - 18:10
**judgment** [3] - 11:13, 18:19, 22:16
**juncture** [1] - 17:13
**jurisdiction** [5] - 7:18, 9:3, 18:21, 19:11, 28:6
**jurisdictional** [1] - 27:21
**justice** [1] - 21:10

**K**

**keep** [2] - 7:17, 14:17
**Ken** [1] - 4:10
**KENNETH** [1] - 2:2
**key** [1] - 14:24
**knowing** [1] - 20:20
**knowledge** [1] - 19:22
**known** [2] - 10:18, 21:24

## L

**lack** [5] - 8:1, 8:9, 9:14, 10:16, 13:3
**last** [2] - 15:14, 6:6
**late** [13] - 14:4, 14:19, 15:25, 16:19, 17:6, 17:12, 17:23, 18:4, 18:9, 18:19, 19:7, 22:21, 22:22
**lateness** [1] - 17:16
**law** [7] - 7:7, 8:12, 11:1, 11:25, 21:21, 22:6, 23:1
**lawyers** [1] - 26:4
**lead** [1] - 11:8
**lease** [1] - 21:12
**least** [4] - 7:12, 11:3, 17:20, 18:23
**leave** [2] - 13:13, 22:15
**legal** [4] - 7:8, 13:1, 21:2, 25:7
**legitimate** [1] - 15:18
**liaison** [4] - 5:6, 5:15, 28:8, 28:14
**life** [1] - 20:3
**likely** [1] - 13:19
**limited** [1] - 21:12
**limits** [2] - 20:20, 21:20
**line** [6] - 21:20, 23:2, 27:17, 29:10, 29:11
**liquidated** [1] - 17:10
**literally** [1] - 12:19
**litigate** [1] - 11:14
**litigated** [1] - 14:2
**litigation** [2] - 20:12, 20:17
**logic** [1] - 7:22
**LOIS** [1] - 2:10
**Lois** [1] - 4:19
**look** [1] - 7:19
**looking** [1] - 15:13
**lose** [1] - 16:23
**loss** [1] - 22:3
**lost** [2] - 21:7, 21:8
**luck** [3] - 7:20, 9:6, 29:18

## M

**mailing** [1] - 10:17
**mailings** [1] - 10:18
**mainland** [1] - 26:10
**maintain** [1] - 7:4
**maintains** [1] - 7:18
**major** [1] - 9:24

**malpractice** [1] - 9:16
**manufactured** [1] - 12:24
**MARINO** [16] - 2:9, 4:18, 4:22, 6:25, 9:17, 10:2, 11:11, 11:19, 11:22, 12:13, 13:15, 17:1, 23:4, 25:11, 28:4, 28:16
**Marino** [12] - 4:19, 6:8, 6:19, 6:21, 8:16, 12:15, 16:7, 20:7, 23:18, 25:3, 25:10, 29:9
**Marino's** [2] - 22:19, 27:16
**Mark** [1] - 5:14
**MARK** [1] - 3:3
**Mart** [1] - 5:14
**MARY** [1] - 2:16
**Mary** [1] - 5:6
**matter** [12] - 6:8, 6:10, 7:11, 11:14, 15:4, 20:5, 23:24, 24:6, 24:7, 26:14, 27:5, 29:19
**matters** [3] - 6:16, 8:18, 8:20
**MDL** [2] - 4:7, 4:8
**MDL-07-02867** [1] - 1:10
**mean** [1] - 7:8
**measure** [1] - 22:12
**mechanism** [1] - 27:3
**medical** [1] - 20:14
**meet** [1] - 8:8
**melted** [1] - 20:3
**member** [1] - 28:10
**members** [3] - 6:16, 6:17, 18:22
**mention** [1] - 8:7
**mentioned** [1] - 25:25
**MENU** [1] - 2:17
**Menu** [5] - 5:6, 5:21, 12:24, 20:24, 21:4
**middle** [1] - 13:21
**might** [4] - 17:23, 22:11, 22:20
**mind** [1] - 13:11
**minimal** [1] - 12:24
**Miranda** [1] - 5:19
**Miss** [21] - 6:8, 6:19, 6:21, 7:13, 8:16, 12:15, 15:21, 16:7, 20:7, 22:19, 23:13, 23:18, 24:5, 25:2, 25:10, 25:14, 25:21,

27:8, 27:16, 27:25, 29:9
**miss** [1] - 5:22
**MITCHELL** [1] - 1:17
**moment** [1] - 15:22
**money** [3] - 6:6, 6:11, 27:10
**Montague** [1] - 4:15
**MONTAGUE** [1] - 2:5
**months** [5] - 8:17, 8:19, 12:15, 12:16, 12:17
**morning** [4] - 4:5, 4:18, 5:5, 5:19
**motion** [7] - 7:11, 8:4, 8:7, 11:12, 13:16, 19:2, 24:19
**motions** [4] - 8:24, 28:19, 29:14, 29:15
**move** [1] - 20:25
**moves** [1] - 22:16
**MR** [32] - 4:10, 4:14, 4:15, 4:23, 5:2, 5:11, 5:14, 5:18, 6:12, 12:8, 13:20, 14:18, 15:12, 16:22, 17:4, 17:10, 18:1, 19:1, 19:13, 19:19, 19:23, 19:24, 20:11, 21:16, 23:8, 23:12, 25:13, 25:18, 26:21, 27:4, 28:24, 29:6
**MS** [31] - 4:18, 4:22, 5:5, 5:19, 5:21, 6:25, 9:17, 10:2, 11:11, 11:19, 11:22, 12:13, 13:15, 15:22, 15:24, 16:25, 17:1, 23:4, 23:20, 23:22, 24:3, 24:14, 25:11, 25:15, 25:23, 26:15, 27:13, 28:4, 28:16, 29:7, 29:16
**multi** [1] - 27:21
**multi-jurisdictional** [1] - 27:21

## N

**nature** [2] - 9:1, 28:13
**necessary** [1] - 17:2
**need** [2] - 13:13, 18:23
**needed** [1] - 20:15
**needs** [1] - 20:23
**negotiated** [1] - 19:15
**NESTLE** [1] - 3:8

**Neuvoa** [1] - 27:25
**new** [1] - 5:24
**NEW** [4] - 1:2, 1:19, 1:23
**New** [14] - 4:3, 6:9, 6:11, 8:25, 13:7, 16:5, 16:14, 16:16, 24:7, 25:24, 26:7, 27:6, 30:6
**news** [1] - 9:24
**newspaper** [1] - 9:24
**newspapers** [1] - 10:10
**next** [1] - 16:4
**Nice** [2] - 5:8, 29:17
**nightly** [1] - 9:24
**NLH** [1] - 1:10
**Noel** [1] - 4:2
**NOEL** [1] - 1:22
**non** [2] - 7:12, 24:20
**None** [1] - 8:21
**Nora** [1] - 4:18
**NORA** [1] - 2:9
**note** [3] - 15:24, 16:4, 16:9
**noted** [1] - 17:16
**nothing** [6] - 7:20, 11:5, 22:9, 26:6, 26:24, 27:21
**Nothing** [1] - 22:17, 24:22
**Notice** [1] - 18:3
**notice** [10] - 8:1, 10:5, 10:13, 10:15, 10:17, 11:17, 12:21, 18:3, 21:23, 22:22
**notion** [1] - 22:9
**November** [2] - 9:4, 16:13
**NUMBER** [1] - 1:8
**number** [3] - 13:24, 14:12, 15:14
**numbers** [1] - 18:16

## O

**o'clock** [1] - 28:1
**objection** [1] - 16:18
**objections** [1] - 21:3
**obligation** [1] - 9:7
**occurred** [1] - 21:9
**OF** [2] - 1:2, 1:23
**OFFICIAL** [1] - 3:12
**Official** [1] - 30:5
**once** [3] - 7:8, 26:13, 27:1
**one** [11] - 8:8, 12:6, 14:4, 17:21, 18:2, 19:10, 24:4, 25:1,

25:25, 28:20
**ONE** [1] - 1:18
**One** [2] - 15:8, 28:21
**open** [1] - 4:1
**opportunity** [1] - 19:25
**opposed** [1] - 8:7
**opt** [5] - 7:21, 7:23, 8:23, 12:1, 12:2
**opt-in** [1] - 7:23
**opted** [1] - 7:3
**ORDER** [1] - 1:13
**order** [22] - 6:7, 11:8, 11:10, 11:16, 11:23, 14:7, 18:22, 19:11, 20:15, 21:1, 21:13, 22:7, 23:25, 24:2, 24:5, 24:6, 26:7, 28:7, 29:1, 29:11, 29:14
**ordered** [1] - 23:7
**ordering** [1] - 24:11
**orders** [8] - 13:12, 18:24, 22:6, 23:7, 26:17, 26:25, 27:1, 27:2
**organizations** [1] - 15:8
**original** [1] - 4:7
**otherwise** [1] - 29:2
**ourselves** [1] - 14:6
**outstanding** [1] - 11:16
**overall** [2] - 15:1, 17:24
**overcome** [1] - 21:3
**own** [3] - 9:16, 22:13, 22:14

## P

**paid** [1] - 14:12
**papers** [8] - 6:13, 6:15, 7:1, 10:10, 10:20, 12:14, 15:24, 20:10
**part** [2] - 12:7, 20:23
**particular** [1] - 6:21
**particularly** [1] - 18:14
**parties** [3] - 9:15, 13:3, 30:12
**PAUL** [2] - 2:6, 4:15
**Paul** [1] - 4:15
**pay** [2] - 15:7, 17:10
**payments** [1] - 17:12
**peculiarities** [1] - 17:17
**pending** [8] - 6:10, 8:18, 8:20, 11:2,

18:25, 21:19, 24:6, 28:19

**people** [8] - 7:23, 14:13, 18:4, 21:12, 21:25, 22:2, 22:8, 27:17

**percent** [2] - 12:6, 14:14

**perfect** [1] - 18:3

**Perhaps** [2] - 19:10, 20:6

**perhaps** [4] - 6:17, 12:25, 15:10, 25:2

**period** [2] - 9:7, 12:20

**periodic** [1] - 13:22

**permitted** [2] - 17:13, 19:8

**person** [3] - 5:8, 7:25, 20:22

**pet** [1] - 12:23

**Pet** [2] - 4:7, 5:15

**PET** [1] - 1:7

**Petco** [1] - 5:14

**PETCO** [1] - 3:8

**phase** [1] - 18:14

**PIPER** [1] - 2:15

**place** [7] - 4:1, 18:18, 19:15, 27:1, 27:3, 30:9

**placing** [1] - 24:24

**plain** [1] - 18:24

**plainly** [1] - 8:12

**plaintiff** [1] - 4:19

**PLAINTIFF** [2] - 2:10, 2:13

**plaintiff's** [1] - 26:4, 28:8

**PLAINTIFFS** [2] - 2:3, 2:7

**plaintiffs** [5] - 4:10, 6:15, 21:4, 24:6, 26:3

**play** [1] - 22:17

**plays** [1] - 23:2

**PLAZA** [1] - 1:18

**point** [3] - 13:7, 16:12, 18:11

**poison** [1] - 9:18

**position** [1] - 15:25

**positions** [1] - 23:15

**possibility** [1] - 17:21

**possible** [2] - 17:24, 18:24

**potential** [1] - 23:10

**power** [2] - 19:17, 22:10

**powers** [1] - 19:17

**precedent** [1] - 10:21

**precise** [1] - 11:2

**preclude** [1] - 24:23

**predicts** [1] - 26:16

**prejudging** [1] - 8:24

**prejudice** [4] - 22:18, 23:21, 23:22, 24:18

**preliminary** [1] - 8:20

**premature** [4] - 14:9, 17:19, 18:7, 18:18

**preparation** [1] - 20:8

**prepare** [1] - 12:14

**presence** [1] - 27:17

**present** [2] - 10:20, 16:18

**preserve** [1] - 9:5

**previous** [1] - 18:22

**previously** [1] - 23:7

**pro** [5] - 7:12, 14:13, 17:21, 18:9, 24:20

**proceed** [2] - 11:7, 16:7

**proceeding** [4] - 6:19, 13:6, 24:8, 24:13

**proceedings** [8] - 9:21, 11:4, 18:21, 21:1, 21:19, 25:5, 28:10, 28:14

**process** [13] - 6:22, 8:10, 8:14, 9:14, 13:4, 13:21, 13:25, 14:2, 14:11, 15:1, 15:2, 18:17

**PROCTOR** [1] - 3:4

**PRODUCTS** [1] - 1:7

**promptly** [1] - 29:12

**proper** [1] - 9:2

**properly** [1] - 25:9

**proposed** [2] - 10:8, 14:6

**prosecute** [1] - 13:10

**prosecuting** [1] - 24:8

**prosecution** [1] - 23:9

**protect** [1] - 7:19

**Provinces** [2] - 24:3, 25:21

**provision** [1] - 12:11

**provisions** [3] - 12:1, 12:2, 15:7

**psychologically** [1] - 20:2

**publications** [1] - 10:7

**publicity** [1] - 12:22

**Pull** [1] - 18:16

**purchase** [1] - 20:14

**PURINA** [1] - 3:8

**put** [4] - 9:11, 9:23, 19:15, 19:21

## Q

**quite** [3] - 8:11, 24:10, 27:15

## R

**raised** [3] - 21:3, 26:1, 26:3

**raises** [1] - 22:1

**Rakoff** [2] - 6:10, 13:9

**random** [1] - 10:7

**rata** [3] - 14:14, 17:21, 18:9

**RE** [1] - 1:6

**reach** [1] - 10:19

**read** [3] - 6:13, 6:25, 18:15

**reading** [1] - 6:15

**ready** [4] - 24:1, 27:5, 27:11, 27:14

**realistically** [1] - 15:13

**really** [5] - 7:22, 14:9, 14:11, 21:5

**reason** [4] - 14:22, 18:4, 18:7, 27:10

**reasonable** [1] - 11:8

**reasoning** [1] - 10:23

**reasons** [2] - 14:3, 19:10

**receive** [1] - 27:5

**received** [1] - 10:15

**recently** [1] - 16:6

**recognize** [1] - 22:21

**recognized** [4] - 19:11, 21:18, 24:19, 25:4

**recommendation** [5] - 14:2, 14:5, 14:7, 14:23, 17:19

**record** [3] - 14:17, 23:4, 29:13

**recording** [1] - 24:24

**recover** [2] - 12:6, 22:8

**recovery** [2] - 17:23, 22:5

**reflect** [1] - 29:13

**regard** [5] - 12:5, 20:7, 23:17, 28:22, 29:15

**regarding** [2] - 8:9, 25:8

**regular** [1] - 19:7

**reject** [1] - 10:23

**rejected** [1] - 14:23

**rejecting** [1] - 14:3

**rejects** [1] - 14:22

**relating** [1] - 23:25

**relative** [2] - 30:11, 30:13

**relief** [2] - 19:15, 24:17

**remainder** [2] - 15:7, 15:19

**remaining** [1] - 23:24

**remedies** [2] - 13:2, 23:1

**renowned** [1] - 10:11

**repetitive** [1] - 7:1

**reply** [2] - 16:5, 17:1

**report** [1] - 25:6

**REPORTER** [1] - 3:12

**Reporter** [2] - 30:6

**reports** [1] - 13:22

**representing** [2] - 4:19, 4:23

**requested** [2] - 14:12, 24:17

**requesting** [1] - 16:7

**require** [2] - 10:6

**required** [1] - 10:5

**requirement** [1] - 8:8

**requires** [3] - 8:25, 18:1, 25:5

**research** [5] - 7:6, 8:18, 9:4, 9:8, 9:18

**researched** [2] - 9:17, 9:20

**resolve** [1] - 20:17

**resolved** [1] - 26:6

**resources** [1] - 16:20

**respect** [4] - 8:3, 16:22, 17:4, 26:2

**respectful** [1] - 13:9

**respective** [1] - 6:20

**responding** [1] - 26:4

**result** [6] - 12:23, 19:18, 20:1, 20:21, 21:9, 28:7

**retained** [2] - 8:17, 12:17

**Reviewing** [1] - 21:1

**reviewing** [1] - 21:1

**rights** [2] - 9:5, 28:11

**room** [2] - 4:20, 21:19

**ROSE** [2] - 3:7, 5:21

**Rose** [3] - 5:21, 5:22, 7:13

**RPR** [1] - 3:11

**rule** [4] - 8:8, 10:5, 21:24, 22:6

**Rule** [5] - 7:6, 8:7, 8:13, 8:23, 8:25

**ruled** [2] - 10:4, 11:2

**rules** [1] - 21:21

**ruling** [2] - 24:22, 29:14

**RUSSELL** [1] - 2:6

**Russell** [1] - 4:15

## S

**S/STEPHEN** [1] - 30:21

**sanctionable** [1] - 12:3

**sand** [1] - 9:25

**SANDERS** [1] - 3:2

**scheduling** [1] - 29:3

**seated** [1] - 4:6

**securities** [1] - 14:20

**see** [10] - 5:8, 6:2, 6:4, 7:5, 19:14, 22:17, 23:2, 23:14, 29:17, 29:18

**seek** [1] - 11:13

**seem** [1] - 9:12

**sees** [1] - 22:11

**segregation** [1] - 7:8

**sensitive** [1] - 5:25

**separate** [2] - 7:4, 7:11

**serious** [1] - 14:13

**served** [1] - 9:13

**set** [4] - 15:25, 27:4, 27:24, 30:10

**settlement** [7] - 12:7, 17:25, 19:14, 20:12, 21:13, 22:23, 28:7

**settlements** [1] - 12:1

**shelf** [1] - 24:24

**short** [1] - 29:1

**shortly** [1] - 28:20

**SHOW** [1] - 1:13

**show** [3] - 6:7, 11:23, 28:7

**side** [2] - 28:8, 28:9

**sign** [2] - 7:15, 29:11

**SIKES** [1] - 3:7

**similar** [1] - 22:8

**simply** [1] - 7:1

**sitting** [1] - 4:3

**situated** [1] - 22:8

**Slembecker** [1] - 4:19

**SLEMBECKER** [1] -

2:10
**slowly** [2] - 25:24
**Smart** [1] - 5:15
**solution** [1] - 20:25
**Sometimes** [4] - 5:22, 14:23, 18:3, 19:7
**sometimes** [2] - 14:21, 19:8
**soon** [3] - 27:5, 29:2, 29:18
**sorry** [2] - 15:21, 16:23
**sort** [1] - 15:25
**sound** [1] - 5:24
**Southern** [11] - 6:9, 7:17, 8:3, 8:25, 13:6, 16:5, 16:7, 16:13, 16:15, 17:3, 24:7
**specialized** [1] - 10:12
**specific** [1] - 10:13
**specifically** [1] - 20:13
**specify** [1] - 29:14
**spot** [1] - 27:25
**spun** [1] - 20:2
**SQUIRE** [1] - 3:2
**stage** [2] - 6:14, 16:21
**standard** [1] - 28:1
**standards** [1] - 15:17
**State** [6] - 6:11, 6:16, 11:2, 23:5, 24:8, 30:6
**STATES** [3] - 1:1, 1:17, 1:22
**States** [3] - 4:2, 10:14, 30:5
**status** [5] - 13:18, 23:25, 26:1, 28:12, 28:13
**steam** [1] - 16:8
**stenographically** [1] - 30:9
**STEPHEN** [2] - 3:11, 30:21
**Stephen** [1] - 30:5
**still** [2] - 25:25, 27:11
**stip** [1] - 7:15
**stopping** [1] - 26:6
**subject** [1] - 9:21
**Subject** [1] - 28:6
**submissions** [1] - 25:2
**submit** [1] - 24:5
**submitted** [2] - 17:14, 29:12
**suffered** [2] - 22:3, 22:4
**sufficiently** [1] - 8:7

**suggested** [2] - 7:14, 21:18
**suggesting** [1] - 10:16
**suggestion** [2] - 9:13, 23:2
**sum** [1] - 24:21
**Summit** [1] - 5:1
**supplemented** [1] - 25:2
**suppose** [1] - 27:24
**Supreme** [3] - 10:21, 10:22, 10:23
**sword** [1] - 20:10
**sympathize** [1] - 17:5
**system** [2] - 5:24, 22:4

### T

**t'd** [1] - 28:21
**table** [1] - 4:20
**talks** [1] - 11:25
**Target** [1] - 5:15
**targeted** [2] - 10:9, 10:13
**telephone** [2] - 27:24, 28:2
**telephonic** [1] - 26:1
**terms** [1] - 19:14
**test** [1] - 18:8
**testimony** [1] - 30:8
**THE** [57] - 1:2, 1:22, 4:5, 4:12, 4:17, 4:20, 4:25, 5:3, 5:8, 5:13, 5:16, 5:22, 6:13, 8:11, 9:20, 10:4, 11:12, 11:21, 11:24, 12:9, 12:15, 13:17, 14:16, 15:5, 15:21, 15:23, 16:23, 17:9, 17:20, 18:20, 19:10, 19:14, 19:20, 20:9, 21:14, 21:17, 23:6, 23:9, 23:13, 23:21, 24:2, 24:4, 24:15, 25:12, 25:14, 25:16, 25:20, 26:9, 26:19, 26:23, 27:8, 27:16, 28:6, 28:17, 28:25, 29:8, 29:17
**theories** [1] - 9:2
**thereof** [1] - 8:1
**thrilled** [1] - 6:3
**thrown** [1] - 10:25
**tied** [1] - 7:16
**timely** [4] - 7:12, 22:7, 24:20

**TO** [1] - 1:13
**today** [6] - 6:5, 6:7, 19:5, 22:18, 28:18, 28:24
**together** [1] - 17:11
**TORISEVA** [1] - 2:1
**track** [1] - 11:6
**transcript** [1] - 30:8
**trouble** [2] - 5:23
**true** [4] - 8:11, 11:22, 21:10, 30:7
**try** [1] - 11:20
**tunc** [2] - 7:13, 24:20
**turn** [1] - 16:12
**twice** [1] - 13:1
**two** [3] - 16:11, 20:1, 21:8
**type** [1] - 7:24
**typically** [1] - 14:1

### U

**ultimately** [1] - 19:15
**unable** [1] - 7:16
**unaware** [1] - 20:6
**unconstitutional** [1] - 7:8
**under** [5] - 8:15, 16:1, 17:6, 18:6, 19:18
**Under** [2] - 16:9, 16:17
**undocumented** [1] - 18:14
**unfairness** [1] - 22:14
**Unfortunately** [1] - 29:10
**uniform** [1] - 21:23
**UNITED** [3] - 1:1, 1:17, 1:22
**United** [3] - 4:2, 10:14, 30:5
**unless** [2] - 10:25, 13:5
**unto** [1] - 26:9
**unusual** [1] - 14:19
**up** [10] - 9:23, 10:25, 12:6, 19:2, 24:4, 25:7, 27:4, 28:20, 28:21, 28:25
**update** [2] - 6:6, 23:25
**updates** [1] - 27:22
**upheld** [1] - 8:13

### V

**value** [1] - 21:21
**various** [2] - 13:18, 27:9
**venues** [1] - 9:2
**vet** [2] - 10:12, 12:6
**veterinarians** [1] - 10:13
**vetted** [1] - 13:23
**vetting** [1] - 14:11
**victim** [1] - 12:25
**victimized** [3] - 12:25, 20:22
**view** [2] - 6:14, 10:24
**violation** [2] - 18:22, 27:2
**voices** [1] - 5:9
**volume** [1] - 18:12

### W

**wait** [1] - 27:13
**waited** [1] - 12:19
**waiting** [1] - 27:18
**Wal** [1] - 5:14
**Wal-Mart** [1] - 5:14
**WALLACE** [1] - 2:1
**website** [1] - 9:23
**week** [3] - 16:4, 16:6, 26:16
**weigh** [1] - 27:6
**Welcome** [4] - 4:17, 5:4, 5:10, 5:13, 5:16
**well-renowned** [1] - 10:11
**Wells** [1] - 27:4
**Wexler** [9] - 4:10, 4:13, 6:6, 13:17, 19:21, 21:18, 25:16, 26:20, 28:12
**WEXLER** [21] - 2:1, 2:2, 4:10, 4:14, 12:8, 13:20, 14:18, 15:12, 16:22, 17:4, 17:10, 18:1, 19:1, 19:13, 19:19, 19:23, 25:18, 26:21, 27:4, 28:24, 29:6
**Wexler's** [1] - 22:16
**William** [1] - 4:23
**WILLIAM** [1] - 2:12
**willing** [2] - 23:14, 27:14
**withdraw** [1] - 23:4
**wonderful** [1] - 5:24
**word** [1] - 27:23
**world** [1] - 10:14

**wrap** [1] - 24:4
**WRIGHT** [2] - 2:20, 5:11
**Wright** [1] - 5:11
**wrinkles** [1] - 27:21

### Y

**York** [6] - 6:9, 8:25, 13:7, 16:6, 16:14, 16:16
**yourself** [1] - 10:11