**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE PET FOODS PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1850<br>Case No. 07-2867 (NLH)<br>Judge Noel L. Hillman<br><br>**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR ISSUANCE OF ORDER TO SHOW CAUSE FOR AN ORDER ALLOWING FOR THE DESTRUCTION OF RECALLED WHEAT GLUTEN, RECALLED RICE PROTEIN CONCENTRATE AND OTHER INGREDIENTS ALLEGEDLY CONTAINING MELAMINE BEING STORED BY DEFENDANTS IN THE POSSESSION OF SUCH INGREDIENTS** |

## I. **PRELIMINARY STATEMENT**

In their Opposition to the instant motion, Plaintiffs disclaim any "obstructionist or unreasonable" intention. [D.E. 332]. Such assurance, however, stands in stark contrast to the fact that Plaintiffs persist in opposing the relief sought by Defendants in the instant motion, despite an utter lack of persuasive support for such a position and their wholesale failure to address, in any substantive fashion, a number of critical arguments supporting Defendants' entitlement to the relief. The arguments not addressed by Plaintiffs, and their import to the issues relevant to Defendants' motion, are set forth below.

2

## II. ARGUMENT

### 1. The FDA Has Indicated That The Continued Retention Of Recalled Products and Ingredients Constitutes A Public Health Hazard And Should Be Destroyed

First, Plaintiffs' Opposition essentially ignores Defendants' argument that the recalled raw wheat gluten ("Wheat Gluten"), recalled raw rice protein concentrate ("RPC") and/or other ingredients allegedly containing melamine ("Work-in-Progress" or "WIP") must be destroyed because such materials were previously determined by the FDA—**not the Defendants**—to constitute a public health threat. Indeed, from their opposition papers, it is clear that Plaintiffs' counsel's sole interest is to protect the clearly defined settlement class at issue in this litigation. While such an interest is certainly an admirable objective, it is respectfully submitted that this Court should not lose sight of the interests of a larger group. That group is society as a whole. It is this much larger group of individuals (which includes the Settlement Class) whose health and well-being is at risk every minute of every day by the continued storage of allegedly contaminated products solely to protect the interests of a limited few in the unlikely event that class certification is not upheld by the Third Circuit.[1] As clearly stated by the FDA, the risk to society cannot be eliminated effectively until the allegedly contaminated products are destroyed. [D.E. 321, attach. 1; D.E. 322, attach. 2.] On this basis alone, the Defendants should be permitted to destroy the Wheat Gluten, RPC and WIP.

Nevertheless, Plaintiffs' Opposition attempts to minimize the public health threat posed by the continued storage of the allegedly contaminated products, as well as the directives of the

---

[1] Significantly, in their Opposition to the instant motion, Plaintiffs' counsel acknowledges that they "are confident that the Third Circuit will affirm this Court's decision…" [D.E. 332.]

FDA, by noting that it has never sought to intervene in this case. The implication intended by raising such an argument, of course, is that the health threat posed by the allegedly contaminated materials cannot be imminent or serious if the FDA has chosen not to intervene in this action. Plaintiffs' interpretation of the lack of active FDA involvement is no more than conjecture, unsupported by any objective evidence. Given the scope of FDA's regulatory responsibilities and its thinly-stretched resources, however, it comes as no surprise that the FDA has not done so. Indeed, according to a recent GAO report, the "FDA has reported that limited resources and authorities challenge its efforts to carry out its food safety responsibilities…" GAO-08-597, *FDA Food Labeling Oversight*, September 2008. It is clear that the FDA has chosen to more efficiently manage its limited resources by encouraging Del Monte and ChemNutra to take appropriate steps to destroy allegedly contaminated products rather than involving itself in civil litigation.

    **2.**    **The Implementation of Dr. McCabe's Plan For The Sampling Of Wheat Gluten And Wip Is Unduly Burdensome To The Public And Defendants Given The Posture Of This Case**

In opposition to the instant motion, Plaintiffs' counsel argues that "Defendants never 'provide[d] Plaintiffs with more specific details concerning the retrieval plans' for organized recalled product, wheat gluten or work-in-progress, " [D.E. 332] and that "Defendants appear to have done nothing to prepare, execute or implement the sampling and retrieval plans designed by Dr. McCabe," [D.E. 332]. This is simply not the case, particularly with respect to finished product. As the Court may recall, in response to a motion propounded by Defendants, on April 14, 2008 this Court issued an Order allowing those Defendants who sought relief from this Court to implement the specific retrieval plans for "organized recalled product stored on pallets and/or

within cardboard cases as recommended by Dr. George P. McCabe in his March 26 and April 8, 2008 Declarations." [D.E. 140.] In light of that Order, some Defendants have implemented Dr. McCabe's sampling plan, while at least one Defendant continues to store virtually all of its recalled finished product. In either event, adequate samples of finished products containing Wheat Gluten—those products that were actually manufactured for purchase by consumers and consumption by pets during the period of time covered by the recalls and arguably most relevant to Plaintiffs' claims—have been preserved by those Defendants that previously sought relief from this Honorable Court. Indeed, vast quantities of such products have been preserved.

Dr. McCabe's sampling plan with regard to Wheat Gluten and WIP is a much different story. Implementing Dr. McCabe's plan for sampling Wheat Gluten and WIP would prove extremely costly and would magnify the public health threat already posed by the allegedly contaminated materials. Virtually all of the Wheat Gluten in question now is contained in sealed bags. Executing Dr. McCabe's plan as to Wheat Gluten, however, would require that those sealed bags be opened and their contents poured into totes, thereby increasing the likelihood that allegedly contaminated Wheat Gluten might be introduced, by cross-contamination or other routes, into the stream of commerce or otherwise make its way into the public sphere.

Moreover, the financial burdens associated with the implementation of Dr. McCabe's sampling plan as to Wheat Gluten and WIP are now, more than ever, unreasonable. To be sure, a sampling plan resulting in some expense to the Defendants and some degree of additional risk to the public may have been warranted when litigation of Plaintiffs' claims appeared likely.[2] Given

---

[2] Because Defendants have borne all expenses associated with preservation of recalled product, it is submitted that Plaintiffs should have contributed to the expenses associated with product retention and sampling all along.

the present posture of the case and the acknowledged likelihood that the Third Circuit will affirm this Court's certification of the settlement class and approval of the Settlement Agreement, however, there exists no reason to increase the financial burden on the Defendants or threaten public welfare by forcing Defendants to either continue to preserve the allegedly contaminated products or to implement Dr. McCabe's sampling plan. Thus, it is respectfully submitted that this Honorable Court should carefully consider the substantial economic expenses and public health risks associated with the continued storage of Wheat Gluten, RPC and WIP in light of the nominal benefits, if any, that the continued storage of such ingredients might bestow upon the Plaintiffs at this stage of the case. *See McPeek v. Ashcroft*, 202 F.R.D. 31, 34 (D.D.C. 2001) (limiting additional discovery to a sampling or test run of data on backup tapes). *See also Powell v. S. Jersey Marina, Inc.,* No. 3:CV-04-2611, 2007 U.S. Dist. LEXIS 55849 at *18-20 (M.D. Pa. Aug. 1, 2007) (denying motion to compel deposition testimony of defendant's president because plaintiffs already had discovery on the issue, holding that the "benefit to [p]laintiffs' case appear[ed] non-existent.").

Moreover, many Defendants have been storing vast quantities of recalled finished product, Wheat Gluten, WIP and RPC since April, 2007. Concededly, the storage of such products has been for the benefit of both Plaintiffs and Defendants. Defendants, however, have fully borne all of the burdens associated with the storage of these recalled products. Such burdens extend far beyond the actual costs associated with the storage and sampling of recalled products. Indeed, Defendants seemingly would bear full responsibility for any consequences that might arise from such products' reintroduction to the stream of commerce, as is feared by the FDA. In essence, Plaintiffs have gotten a "free ride."

Plaintiffs have benefited substantially (and will continue to benefit) from Defendants' retention of finished product, Wheat Gluten and WIP, but have borne none of the associated expense or risk. Accordingly, should Plaintiffs persist in opposing the relief sought by Defendants herein, it is perfectly logical and only fair that they assume the cost of continued storage or sampling of the Wheat Gluten, WIP and RPC and agree to indemnify Defendants for any damages resulting from the inadvertent release of such materials into the stream of commerce. *See Oppenheimer Fund v. Sanders*, 437 U.S. 340, 358 (1978) (acknowledging District Court's discretion to condition discovery upon payment of costs by requesting party).

### 3. This Court Should Give Difference To The FDA's Sampling And Testing Of The Wheat Gluten

Finally, without offering a single criticism of the FDA's sampling and testing results or of the protocols and methodology it employed, Plaintiffs' counsel asserts that the instant motion should be denied because the FDA's sampling and testing has not been properly vetted to ascertain its reliability.

The FDA, however, is charged with protecting the health of the public and ensuring the safety of the country's food supply. The FDA is the preeminent entity responsible for identifying the cause and origin of food borne illnesses. And while the limited resources of the FDA may, at times, prevent it from acting proactively to prevent food borne illnesses, it enjoys a successful track record in reacting to major food recalls and identifying the sources of national food borne illness outbreaks. Thus, there exists no reason to question the testing methodology employed by the FDA in this case. Indeed, the FDA's sampling and testing was performed over two (2) years ago and, over those two (2) years, Plaintiff's counsel has been unable to identify a

7

single criticism of the FDA's sampling and testing results or the methodology and protocols it employed.

It is submitted, therefore, that this Court should recognize the FDA's experience and expertise and defer to its testing of the Wheat Gluten. *Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 230-31 (3rd Cir. 1990) ("Because 'agency decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first change to exercise that discretion or to apply that expertise.'" (quoting *McKart v. United States*, 395 U.S. 185, 194 (1969))).

### III. CONCLUSION

Accordingly, for all of the foregoing reasons, it is respectfully submitted that Plaintiffs' Opposition to the instant motion is unpersuasive and that the court grant defendants the relief requested in their Motion for Issuance of Order to Show Cause for an Order Allowing for the Destruction of Recalled Wheat Gluten, Recalled Rice Protein Concentrate and Other Ingredients Allegedly Containing Melamine Being Stored by Defendants in the Possession of Such Ingredients.

Dated: April 13, 2009

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of April, 2009, I caused a true and accurate copy of the foregoing Reply to be served by electronic means in accordance with the provisions of Fed. R. Civ. P. 5(b).and L. Civ. R. 5(1) upon all counsel of record in this matter.

/s_____
Richard Fama(5358)

NEWYORK_DOWNTOWN\2086653\1  205723.000