UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IN RE PET FOOD PRODUCTS<br>LIABILITY LITIGATION | )<br>)<br>)<br>)<br>)<br>)<br>) | MDL Docket No. 1850 (All Cases)<br>Case No. 07-2867 (NLH)<br><br>The Honorable Noel L. Hillman |

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO DISMISS AND/OR TO OPT OUT**

Respectfully submitted,

Paul N. Paquette
2016 Canyon Road
Arcadia, California 91006
*paul.paquette@ladwp.com*
Tel: (213) 367-4591
Fax: (213) 241-1421

Attorney for Moving Parties
PAUL PAQUETTE AND AVA PAQUETTE

Dockets.Justia.com

# TABLE OF CONTENTS

                                                                              **Page**

I. INTRODUCTION ............................................................................................1

II. LEGAL ARGUMENT .....................................................................................2

    A.    THE NOTICE PROVISIONS OF THE CLASS ACTION
           SETTLEMENT FAIL TO MEET THE REQUIREMENTS OF
           RULE 23 AND THE EISEN DECISION ...............................................2

    B.    THERE IS NO LEGAL AUTHORITY FOR THE PROPOSITION THAT
           INDIVIDUAL DIRECT MAIL NOTICE TO READILY IDENTIFIABLE
           CLASS MEMBERS MAY BE DISPENSED WITH THROUGH NOTICE
           PROVISIONS WHICH CATEGORIZE THEM WITH OTHER PERSONS
           WHO ARE NOT ENTITLED TO SUCH NOTICE........................................ 7

    C.    THERE IS NO LEGAL AUTHORITY FOR THE PROPOSITION THAT
           READILY IDENTIFIABLE CLASS MEMBERS WHO WERE NOT GIVEN
           DIRECT MAIL NOTICE ARE REQUIRED TO DO RESEARCH TO
           DISCOVER THE EXISTENCE OF A CLASS ACTION LAWSUIT
           INVOLVING THE PERSONS OR ENTITIES WITH WHOM THEY
           HAVE PREVIOUSLY FILED A CLAIM........................................................ 10

    D.    PLAINTIFFS HAVE ACTED EXPEDITIOUSLY AND IN GOOD FAITH
           AND ARE THEREFORE ENTITLED TO RELIEF FROM JUDGMENT
           AND TO OPT OUT OF THE SETTLEMENT CLASS........................................ 11

III. CONCLUSION ...............................................................................................12

# TABLE OF AUTHORITIES

**CASES**                                                                                                                              **Page**

Carlough v. Amchem Products
      158 F.R.D. 314 (E.D. Pa. 1993) ............................................................................. 4

Eisen v. Carlisle & Jacqueline
      417 U.S. 156 (1974) ............................................................................. Passim

In re Domestic Air Transportation Antitrust Litigation
      141 F.R.D. 534 (N.D. Ga. 1992) ......................................................................... 4-5

In re Elec. Carbon Prods. Antitrust Litigation
      447 F.Supp.2d 389 (D.N.J. 2006) ......................................................................... 3

In re Nissan Motor Corp. Antitrust Litigation
      552 F.2d 1088 (5th Cir. 1977) ........................................................................... 8, 9

In re Prudential Ins. Co. Am. Sales Practice Litigation
      148 F.3d 283 (3rd Cir. 1998) ................................................................................ 3

Mullane v. Central Hanover Bank & Trust Co.
      339 U.S. 306 (1950) ....................................................................................... 3, 8, 9

Schroeder v. City of N.Y.
      371 U.S. 208 (1962) ........................................................................................... 4, 9

Skelton v. General Motors Corp.
      1987 WL 6281 (N.D. Ill. 1987) ............................................................................ 4

Zimmer Paper Products, Inc. v. Berger & Montague, P.C.
      758 F.2d 86 (3rd Cir. 1985) .................................................................................. 3

# I.

# INTRODUCTION

Settling defendants, Nestle Purina and Menu Foods, having now filed an opposition to plaintiffs' motion to dismiss and/or to opt out of the class action settlement,[1] plaintiffs submit the following reply memorandum. This reply is made upon the following grounds:

1. Despite defendants' arguments to the contrary, the notice provisions of the class action settlement fail to meet the requirements of Rule 23 and the Eisen decision and its progeny.

2. There is no legal authority for the proposition that individual direct mail notice to readily identifiable class members may be dispensed with through notice provisions which categorize them with other persons who are not entitled to such notice.

3. There is no legal authority for the proposition that readily identifiable class members who were not given direct mail notice are required to do research to discover the existence of a class action lawsuit involving the persons or entities with whom they have previously filed a claim.

4. Plaintiffs have acted expeditiously and in good faith and are therefore entitled to relief from judgment and to opt out of the settlement class.

///

///

---

[1] Menu Foods has not been sued by plaintiffs in the California action and thus plaintiffs' position is that Menu Foods has no standing to participate in this briefing or any oral argument attendant thereto.

1

## II.

## LEGAL ARGUMENT

A. THE NOTICE PROVISIONS OF THE CLASS ACTION SETTLEMENT FAIL TO MEET THE REQUIREMENTS OF RULE 23 AND THE EISEN DECISION.

Defendants claim that the notice provisions of the class action settlement met the requirements of Rule 23 and the due process clause of the Constitution. They characterize the issue as follows:

> "While [plaintiffs] admit that they were not entitled to direct notice under the notice plan because they were not paid under Nestle Purina's Historic Payment program, they claim that they should have been provided with such notice because they had previously submitted a claim under that program."

(Defendants' brief, pg. 11.)

Defendants mischaracterize the issue. Plaintiffs have never admitted that they were not entitled to direct mail notice; in fact, as reflected in all previous briefs, plaintiffs' position has been and continues to be that, either (1) the notice provisions failed to require direct mail notice to readily identifiable class members, or (2) that such provisions do require such notice but the defendants failed to do so. It has also consistently been plaintiffs' position that, as readily identifiable class members, plaintiffs were entitled to individual direct mail notice. Further, plaintiffs have no idea what Nestle

2

Purina's "Historic Payment Program" was, and are only aware that they filed a claim for damages with Nestle Purina.[2]

Defendants also argue that the notice provisions were adequate because a notice plan which provides for a combination of individual and published notice meets the requirements of Rule 23 (defendants' brief, pg. 12). In this connection, defendants cite three cases, Zimmer Paper Products, Inc. v. Berger & Montague, P.C., 758 F.2d 86 (3rd Cir. 1985), In re Prudential Ins. Co. Am. Sales Practice Litigation, 148 F.3d 283 (3rd Cir. 1998), and In re Elec. Carbon Prods. Antitrust Litigation, 447 F.Supp.2d 389 (D.N.J. 2006), in support of this proposition. (See defendants' brief, pg. 12.) A close review of these cases, however, reveals that the assertion is an erroneous one. In Prudential, the court required individual direct mail notice to over 8 million policyholders because they were readily identifiable class members. Zimmer imposed the same requirement, although the plaintiff therein, who was on the mailing list, claimed he did not actually receive such notice. In re Electrical Carbon Products involved the issue of whether class members who had opted out were entitled to later, opt back in. There were no notice issues addressed in the case and thus it has no relevance here.

The remaining cases, cited at pg. 13 of defendants' brief, all support plaintiffs' position, not the defendants. Eisen v. Carlisle & Jacqueline, 417 U.S. 156 (1974) and Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950), (relied upon by

---

[2] Plaintiffs remain baffled as to how providing individual direct mail notice to persons who had already been paid, and therefore, have no further interest in the continued litigation, in any way satisfies the requirements of Rule 23 or the Eisen decision.

plaintiffs in their moving papers), both require individual direct mail notice to all persons whose identities can be ascertained and Schroeder v. City of N.Y., 371 U.S. 208 (1962), is in accord, as well.

Puzzling however, is defendants' discussion of those cases cited for the proposition that where the identity of settlement class members is not readily ascertainable publication notice will suffice. (Defendants' brief, pg. 14.) Although certainly a correct proposition of law, these cases have no application to this case, because plaintiffs were not unknown class members.

Significantly, each of the cases cited by the defendants are again, supportive of the plaintiffs' position. For example, in Carlough v. Amchem Products, 158 F.R.D. 314 (E.D. Pa. 1993) the notice provisions required individual notice, by first class mail, to over 9,000 plaintiffs whose identities were readily ascertainable, as well as a provision requiring substantial measures to find the names and addresses of other class members and to provide individual notice to them. These efforts included contacting 56 national and international unions and, if necessary, numerous affiliated local unions, seeking the same information. In Skelton v. General Motors Corp., 1987 WL 6281 (N.D. Ill. 1987), the notice provisions required individual direct mail notice to over 4 million individual people who had purchased General Motors' vehicles, subject to a recall. This constituted 88% of the class. Indeed, the only individual notice declined by the court was a proffered provision requiring GM to attempt to locate the additional 12% of the class who may own vehicles for which GM did not have any owner registration information. Hence, the latter group of people were not readily identifiable. Finally, In re Domestic Air Transportation

4

Antitrust Litigation, 141 F.R.D. 534 (N.D. Ga. 1992) is of no help to defendants. There, the court did not require individual direct mail notice to any of the purchasers of airline tickets because the airline had regularly represented to the court and to the plaintiffs that such persons could not be identified from the airline's records.

Accordingly, none of the cases cited by the defendants support the notion that notice provisions which include a combination of direct mail and publication notice automatically satisfy the requirements of Rule 23 or the Eisen decision. On the contrary, all of the cases support the plaintiffs' position that the notice provisions here, applied as they were by the settling parties, fall well short of what is required under Rule 23.

Another argument proffered by the defendants is that the notice provisions here must have been adequate under Rule 23 because this Court "has already found on multiple occasions that the notice plan amply complied with due process and was the best notice that was practicable under the circumstances." (Defendants' brief, pg. 11, quoting from Court's Approval Order) and because the Court has, on several occasions, rejected attempts by putative class members to opt out of the settlement class.

In this connection, defendants report three instances in which this Court has, in the past, rejected attempts by putative class members to opt out of the settlement class. However, by all accounts, it appears that these three plaintiffs (Slembecker, Dotoli, and Josephs) were all essentially unknown class members who contended that notice by publication was insufficient. None of them alleged, as do plaintiffs here, that they were readily identifiable class members. None alleged that their identities were known to one or more of the settling defendants prior to the initiation of the class action, as do plaintiffs

5

here. Finally, it appears that at least two of those plaintiffs had actual knowledge of the New Jersey class action before filing their cases. (See defendants' brief at page 21.) Accordingly, this Court's rulings as to those plaintiffs and under those circumstances, have absolutely no relevance to the issues raised here.[3]

Defendants go on to argue that further evidence of the adequacy of the notice provisions can be found in the presence of defendants' extremely knowledgeable cadre of experts. We are told, for example, that Heffler, Radetich & Saitta has over 47 years of experience in class action settlements and they are nothing short of wonderful experts. As a result, defendants urge this Court to accept their experts' view of the notice provisions as a substitute for its own analysis. Plaintiffs know of no legal authority for such an approach. In fact, plaintiffs understand that the Court has an independent obligation to make these determinations.

Lastly, in arguing that the notice provisions comply with due process requirements, defendants' brief is replete with paragraph after paragraph of the extensive service by publication that was conducted in this case. Indeed, according to the defendants, "the combination of individual and publication notice combined with the unsolicited news coverage the settlement received . . ." ensure that constitutional concerns are satisfied. Because service by publication is applicable only to unknown

---

[3] In fact, it appears clear that this Court, in the past, has determined no more than that the notice provisions, on their face, appear to give the best notice practicable and that notice by publication was sufficient for absent but unknown class members, Slembecker, Dotoli and Josephs. Conversely, it does not appear that the Court was aware, until now, that there actually were readily identifiable claimants who were not given individual direct mail notice.

absent class members, the extent to which service by publication was conducted is irrelevant to this case where plaintiffs are readily identifiable class members.

B. **THERE IS NO LEGAL AUTHORITY FOR THE PROPOSITION THAT INDIVIDUAL DIRECT MAIL NOTICE TO READILY IDENTIFIABLE CLASS MEMBERS MAY BE DISPENSED WITH THROUGH NOTICE PROVISIONS WHICH CATEGORIZE THEM WITH OTHER PERSONS WHO ARE NOT ENTITLED TO SUCH NOTICE.**

In perhaps the most undecipherable portion of their brief, the defendants attempt to "bridge the gap" by acknowledging, on the one hand, that readily identifiable claimants must be given individual direct mail notice while arguing, on the other, that plaintiffs were not entitled to such notice. In this connection, defendants stated the following:

> ". . . the law only requires individual class notice for persons whose identity as class members is known or can easily be ascertained through reasonable effort. Thus, the fact that the notice plan directed individual notice to those persons who had been paid as part of defendants' Historic Payment Programs -- as opposed to the thousands of people who had merely contacted or submitted a claim under such programs -- meant that individual notice was made to those persons whose identities as class members could be determined through reasonable efforts (and not to those persons who had been determined <u>not</u> to be class members or for whom no such determination could be made without reasonable effort.)"

(Defendants' brief, pgs. 11-12.)

Further, at pages 14 and 15 of their brief, defendants argue that a provision requiring individual notice to persons who had submitted claims but were not paid would have been overly inclusive and would have included thousands upon thousands of individuals who had been determined by defendants or their claims persons not to be likely persons who would have qualified as settlement class members based on

7

information provided. They reason that, since defendants were receiving hundreds of thousands of "contacts" from consumers, including inquiries to ask questions about the recall and its scope, whether it was limited to a particular type of food, to ask question about whether certain products were safe and presumably to seek reimbursement for product purchases in accordance with the wonderful money back guarantee that defendants were offering, that notice to all such persons would have been "overinclusive" and simply not required under Rule 23.

Although not altogether clear, it appears defendants are claiming that the notice provisions in the settlement incorporate a "categorization" scheme in which readily identifiable claimants, such as plaintiffs, have been "lumped together" with other persons who had merely contacted the defendants with questions about the litigation, rather than real claims. Thus, while plaintiffs are readily identifiable in their own right, the notice provisions have placed them in a category with other persons who would not be entitled to direct mail notice and therefore no individual notice is required for the entire category.

Plaintiffs are aware of no legal authority to support this proposition and indeed, believe that such a construction of Rule 23 violates the mandates in Eisen, Mullane, supra.

Defendants' brief goes on to cite In re Nissan Motor Corp. Antitrust Litigation, 552 F.2d 1088 (5th Cir. 1977), for the proposition that courts have refused to order identification efforts that would require impracticable and extended searches or would be unduly time consuming or expensive. Based thereon, the defendants argue that a notice plan which provided for individual mailed notice to every single person who left their

names and addresses with defendants would have been substantially overinclusive and inefficient and also would have resulted in substantial delay in distributing notice and the extremely generous settlement funds to bonafide class members. (Defendants' brief, pg. 16.) The difficulty with defendants' argument is that In re Nissan, supports the plaintiffs' position, not the defendants. There, the court, in reliance upon Eisen, Mullane, and Schroeder held that a search may be omitted only if its costs will significantly exceed anticipated benefits, and that even where burdensome, where it is the best available listing of the names and addresses of all class members, it must be performed. Accordingly, the plaintiffs in In re Nissan were required to extract the names and last known addresses of the absentee class members from defendants' business records and mail notice to each absentee class member:

> ". . . The key though, is a reasonable effort, and a large class requires a large effort. Subdivision (c)(2) mandates that each class member be given the 'best notice practicable under the circumstances.' While the mechanical process of examining the cards may prove to be expensive and time-consuming, the individual right of absentee class members to due process makes the cost and effort reasonable. Accordingly, the district court's class notice is vacated, and the court is directed to require individual notice to the class based on the information available on the RDR cards."

In re Nissan, at 1100.

Accordingly, In re Nissan, in fact, provides ample legal support for plaintiffs' position here.

C. **THERE IS NO LEGAL AUTHORITY FOR THE PROPOSITION THAT READILY IDENTIFIABLE CLASS MEMBERS WHO WERE NOT GIVEN DIRECT MAIL NOTICE ARE REQUIRED TO DO RESEARCH TO DISCOVER THE EXISTENCE OF A CLASS ACTION LAWSUIT INVOLVING THE PERSONS OR ENTITIES WITH WHOM THEY HAVE PREVIOUSLY FILED A CLAIM.**

In the first four pages of defendants' brief, they mention that plaintiffs are lawyers at least four or five times. Defendants apparently believe that such information is relevant and somehow lends support to their suggestion that it was not the responsibility of the settling parties to give notice to readily identifiable class members, but rather the obligation of the plaintiffs to somehow do the "research" and discover a class action three thousand miles away. Hence, they argue that if plaintiffs had engaged in even a "modicum" of research, they could have easily have learned of and objected to the settlement. Finally, in a generalized declaration, Ms. Berge, almost asserts that plaintiffs acknowledged that they had been aware of class action lawsuits related to the 2007 Pet Food recall. (See Declaration of Berge.)

While the latter assertion is clearly false (see Declaration of Paul Paquette attached), aside from that, plaintiffs are aware of no authority that a readily identifiable class member, who has not received direct mail notice, somehow has an obligation to perform legal research to discover a class action lawsuit over three thousand miles away. Indeed, F.R.C.P. 23, the Eisen decision, and all other authorities hold that it is the settling parties' responsibility to ensure that individual direct mail notice is provided to all class members whose identitites are readily ascertainable or actually known to them.

## D. PLAINTIFFS HAVE ACTED EXPEDITIOUSLY AND IN GOOD FAITH AND ARE THEREFORE ENTITLED TO RELIEF FROM JUDGMENT AND TO OPT OUT OF THE SETTLEMENT CLASS.

In opposing plaintiffs' efforts to opt out of the settlement class, defendants utilize an earth-scorching approach designed to inflame this Court against the plaintiffs. Indeed, their opposition is laced with colorful phrases such as, the plaintiffs have "repeatedly violated" this Court's orders, "flouted" this Court's exclusive jurisdiction, "improperly" filed a motion for relief in the Central District of California, and that all of this was done in an apparent attempt by plaintiffs to justify their "multiple, knowing, and willful contraventions" of this Court's orders. The defendants go on to allege that plaintiffs "sought to evade this Court's jurisdiction" and note that this Court has "expressed understandable skepticism that responsible counsel could fail to learn of this extremely well publicized settlement."

While these characterizations are for the Court to evaluate, the plain, straightforward facts are that the plaintiffs were readily identifiable class members who were not given the direct mail notice to which they were entitled under F.R.C.P. 23, that plaintiffs timely filed an action in the Central District of California which they were entitled to do, and at which time, they were unaware of the New Jersey class action settlement. That upon learning of the New Jersey action on March 4, 2009, plaintiffs acted expeditiously to bring these matters to the attention of the courts. Plaintiffs promptly scheduled a meet and confer session in the California action as the local rules require them to do and promptly thereafter brought the necessary motion seeking relief from the judgment and to opt out. Plaintiffs did that at the earliest possible date. Moreover, while plaintiffs do

contest personal jurisdiction in this Court, for the obvious reasons, plaintiffs have nonetheless participated to the extent possible in complying with this Court's orders, responding to its briefing requests and in providing the necessary information for this Court to make its rulings. Plaintiffs have thus clearly acted in good faith and they are entitled to relief from the judgment and to opt out of the settlement class.

## III.

## CONCLUSION

In view of the foregoing, it is abundantly clear that the notice provisions of the settlement, either on their face or as implemented, fail to comply with the requirements of F.R.C.P. Rule 23. Because of this, plaintiffs, readily identifiable class members were not given the notice they were entitled to under Rule 23. The failure to give direct mail notice to plaintiffs cannot be justified by placing plaintiffs in a "notice" category with other persons who were not entitled to direct mail notice.

It is also clear that readily identifiable class members, such as plaintiffs, who were not given direct mail notice, have no obligation to do research to discover the existence of a class action lawsuit against the person or entity with whom they had previously filed a claim.

/ / /

/ / /

/ / /

/ / /

/ / /

Finally, it is clear that plaintiffs have acted expeditiously and in good faith and are entitled to relief from the judgment and to opt out of the settlement class.

Respectfully submitted,

Paul N. Paquette
2016 Canyon Road
Arcadia, California 91006
*paul.paquette@ladwp.com*
Tel: (213) 367-4591
Fax: (213) 241-1421

Attorney for Moving Parties
PAUL PAQUETTE AND AVA PAQUETTE